# EXHIBIT C

```
 1                IN THE UNITED STATES DISTRICT COURT
                     FOR THE DISTRICT OF MARYLAND
 2                          SOUTHERN DIVISION

 3   ROCK SPRING PLAZA II, LLC,        )
                                       )
 4            Plaintiff,               )
         vs.                           )
 5                                     ) CIVIL NO.:
     INVESTORS WARRANTY OF             ) 8:20-cv-01502-PJM
 6   AMERICA, LLC, et al.,             )
                                       )
 7            Defendants.              )
     _____)
 8

 9                                    Greenbelt, Maryland
                                      August 6, 2021
10

11                   TRANSCRIPT OF PROCEEDINGS
12                 DISCOVERY DISPUTE HEARING
              BEFORE THE HONORABLE GINA L. SIMMS
13                     Via Teleconference

14

15   For the Plaintiff:

16        William M. Bosch, Esquire
            Pillsbury Winthrop Shaw Pittman
17          1200 Seventeenth Street, NW
            Washington, DC 20036
18

19
     For Defendant Investors Warranty of America:
20
          Anne V. Dunne, Esquire
21          Seyfarth Shaw LLP
            Suite 300
22          2 Seaport Lane
            Boston, MA 02210
23
          Rebecca A. Davis, Esquire
24          Seyfarth Shaw LLP
            1075 Peachtree St NE, Suite 2500
25          Atlanta, GA 30309
```

```
 1              A P P E A R A N C E S (Continued)

 2    For Defendant Investors Warranty of America:

 3         Edward V. Arnold, Esquire
             Seyfarth Shaw LLP
 4           975 F St NW
             Washington, DC 20004

 5

 6    For Defendant Rock Springs Drive, LLC:

 7         Sara Kropf, Esquire
             Kropf Moseley PLLC
 8           1100 H Street NW
             Suite 1220
 9           Washington, DC 20005

10

      For Defendant Transamerica Corporation:
11
           Anthony L. Meagher, Esquire
12           DLA Piper LLP (US)
             6225 Smith Avenue
13           Baltimore, MD 21209-3600

14

15

16
                 Proceedings recorded by audio recording.
17        Transcript produced by computer-aided transcription.

18

19

20

21

22

23

24

25
```

```
1                     P R O C E E D I N G S
2              THE COURT:  Good morning.  This is Judge Simms.  This
3      is the case of Rock Spring Plaza, LLC, versus Investors
4      Warranty of America, LLC, et al., Case No. PJM 20-1502.  If I
5      could have counsel for the plaintiff please identify
6      yourself.
7              MR. BOSCH:  Good morning, Judge Simms.  This is
8      William Bosch on behalf of the plaintiff and on behalf of
9      nonparty Rockledge Associates, LLC.
10             THE COURT:  Good morning, Mr. Bosch.  If I could have
11     counsel for Defendant Investors Warranty of America, please
12     identify yourselves.
13             MS. DUNNE:  Good morning, Judge Simms.  This is Anne
14     Dunne on behalf of Investors Warranty.
15             MR. ARNOLD:  Good morning, Judge.  This is Edward
16     Arnold also on behalf of Investors Warranty.
17             MS. DAVIS:  Good morning.  This is Rebecca Davis also
18     on behalf of Investors Warranty of America.
19             THE COURT:  Good morning.  So those are really the
20     two entities that are most relevant for today's purposes, but I
21     understand we also have counsel for some of the other entities
22     on the line.  If counsel for Defendant Rock Springs Drive,
23     could you please identify yourself.
24             MS. KROPF:  Good morning, Your Honor.  Sara Kropf for
25     Rock Springs Drive.
```

```
 1              THE COURT:  Good morning, Ms. Kropf.  If I could have
 2   counsel for Defendant Transamerica, please identify yourself.
 3              MR. MEAGHER:  Good morning, Your Honor.  This is
 4   Anthony Meagher for Transamerica Corporation.
 5              THE COURT:  Good morning, good morning.  All right,
 6   folks.  Let me just say this.  It is, frankly, unusual that I
 7   am able to try to get parties on the phone as expeditiously as
 8   I have in this case because, like all of us, we're
 9   extraordinarily busy.  I had really two reasons why I wanted
10   folks to assemble today.  One was to see whether or not counsel
11   for nonparty Rockledge Associates wanted to file a response or
12   a sur-reply to the reply, and I see that was done, I believe,
13   two days ago.  That's ECF No. 108.
14              The other was just to give everybody an opportunity
15   to be heard after I share with folks my view on discovery and
16   how I view these discovery disputes.  All right.  So just a
17   couple of logistical things.  First of all, I am recording this
18   call on my iPad, and it will be uploaded to the CM/ECF case
19   management system since I don't have a courtroom deputy
20   performing that function today.  So that ultimately if there is
21   a transcript generated, it will be generated off of this
22   recording, and you can certainly request the same from the
23   clerk's office.  That's number 1.
24              Number 2, Local Rule 506.1 applies which is no
25   recording of this conference is allowed because it's the rules,
```

5

1  and I know everybody is abundantly clear you could be subject

2  to sanctions if you violate that rule.

3          Next, I know we're not together and one of the

4  challenges of conference calls is sometimes people can't tell

5  when someone is done speaking.  So when I'm done speaking, if

6  you would just wait for a moment and pause just to make sure

7  that you're then not talking over me and not to have talked

8  over anybody else.  It's hard when we're not together.  So if

9  everyone could just pause, then that will cut down on that

10  speaking-over-each-other phenomenon that is attendant to being

11  on a phone conference and also will enable the court reporter,

12  again, if this ends up being transcribed, to be able to figure

13  out who was talking at what moment and who said what.

14          Lastly, you're going to need to identify yourself by

15  name before you speak.  I know it may be a bit of sort of

16  jarring or irritating to do that.  You're going to need to do

17  that the first couple of times until ultimately someone

18  listening to this would be comfortable with I know it's

19  Mr. Bosch speaking or Mr. Arnold speaking or Ms. Davis or

20  Ms. Dunne speaking, so you'll have to do that too.

21          I have read ECF 98, ECF 103, 105; 98 being the motion

22  to compel filed on July 2; 103 being the opposition filed on

23  July 16; 105, ECF 105 being the reply.  And ECF 108 I have not

24  read, in all candor.  It's been a very busy week, so I haven't

25  read the motion for leave to file sur-reply and then the facts

1   that are contained therein.

2           So let's take care of one more housekeeping matter

3   first.  I'm telling my staff we're going to grant ECF 108

4   allowing Rockledge Associates to file the sur-reply, so my

5   staff will take care of that.

6           All right, counsel.  Starting first, I guess, with

7   you -- I'm sorry, who is going to be speaking on behalf of --

8   may I call it IWA?  It's just an easier mouthful for me, less

9   of a mouthful.  Who's going to be speaking on behalf of IWA?

10          MS. DUNNE:  Good morning, Your Honor.  This is Anne

11  Dunne.  I will be speaking on behalf of IWA and, yes, I agree

12  IWA is a much easier mouthful.

13          THE COURT:  Great, okay.  Let's start first with you

14  because you're the one who filed the motion to compel.  So I

15  guess I just need to understand some of the facts.  I feel like

16  we've got sort of two different competing versions of facts

17  which are captured in the motions and some of the attachments

18  thereto.  But I'd like sort of a clear, sustained kind of

19  summary of two things.

20          One is what your position is and what are the

21  specific facts to kind of support that.  Those are really sort

22  of the two things I'm looking for.  Then for you, Mr. Bosch,

23  since you're representing Rockledge Associates -- and I will

24  call it Rockledge Associates because it's not that long -- I

25  have a couple of specific questions for you based on the

1   initial responses, and then I'll be hearing from you.

2           All right, counsel.  I did say that I would tell you

3   first what my view is on discovery disputes, all right?  So,

4   first of all, I understand and appreciate that litigators fancy

5   themselves as gladiators; I was one myself many years before.

6   I understand and appreciate everybody needs to zealously

7   represent their clients.  I understand the ethical rules quite

8   clearly.  But I really have to say that it is particularly

9   important to this Court that people engage in civil

10  interactions with each other, that we don't let it devolve into

11  fighting or sniping or accusations.  There's really sort of no

12  need for that.

13          There was a little bit of a hint of that in the

14  papers, a little bit.  Not as bad as I've seen, thankfully, but

15  I just want people to be mindful of that.  You can zealously

16  represent your client without letting it sort of do any attacks

17  against the other attorneys, if you will.  All right?

18          Next, my view on discovery is this.  Federal Rule of

19  Civil Procedure 26(b)(1) -- look, if it's not privileged, if

20  it's relevant, if it's proportional to the needs of the case,

21  the person gets it.  That's just my view.  Indeed we all know

22  that the rule changed in 2015, it doesn't even need to be

23  admissible at trial.  Relevance is defined consistent with

24  Federal Rule of Evidence 104, 103 -- I don't have it in front

25  of me right now -- but relevance is very, very expansive.  So

1    that's really my view.

2            So, you know, particularly for you, Mr. Bosch, I'm

3    going to need to hear from you as to why you think what they

4    seek is not relevant.  But we'll get to that in a minute.

5            All right.  So those are just my preliminary remarks.

6    Let's see what we can get done today.  So go ahead, Ms. Dunne.

7    I'm listening.

8            MS. DUNNE:  Thank you, Your Honor.  I'm going to

9    begin with a high-level overview of the parties and claims in

10   this action because I believe it will be both helpful and

11   informative for Your Honor.  With regards to property at issue

12   in the instant litigation, 6560 Rock Springs Drive in Bethesda,

13   the Camalier family formed Rock Spring II Limited Partnership,

14   a special purpose entity which entered into a ground lease with

15   plaintiff, Rock Spring Plaza II, another Camalier family

16   special purpose entity acting as the landlord for the 6560

17   property.  A loan was made by Monumental Life Insurance Company

18   using the ground leasehold interest as collateral.  That loan

19   was ultimately conveyed to my client IWA, and IWA became the

20   owner and holder of the note.

21           In 2008 while the 6560 property was still under

22   Camalier family control, the property became vacant.  Rather

23   than finding new subtenants, Rock Spring II Limited Partnership

24   defaulted on the loan, and IWA commenced a foreclosure action

25   and became owner of the leasehold interest in 2012.  After the

1    foreclosure, IWA paid rent under the ground lease to plaintiff.

2         In 2017 IWA assigned interest in the ground lease to

3    Rock Springs Drive, LLC, another defendant in this action.

4    Plaintiff here claims that the assignment was a fraudulent

5    conveyance and seeks to undo that assignment through the

6    instant litigation.  IWA has referred to a number of

7    affirmative defenses to those claims, including both unclean

8    hands and fraud, along with a counterclaim for declaratory

9    judgment that -- find is, in fact, valid.

10         By way of background with respect to Rockledge

11    Associates, if I could give you a little bit of background on

12    those parties.  There was a prior case, Rockledge Associates,

13    LLC, vs. Transamerica Life Insurance Company that was pending

14    in this court at docket No. 2016-710.  That case was decided by

15    Judge Grimm on summary judgment and affirmed by the Fourth

16    Circuit.  That action and this action are based on very similar

17    facts.  There Rockledge Associates, another Camalier family

18    special purposes entity, was the owner of the property located

19    at 6610 Rockledge Drive in Bethesda.  The 6610 property is how

20    we'll refer to it to try to keep the two separate.

21         It's important to note that the 6610 property and the

22    6560 property are in the same office park.  These buildings are

23    similar and they target the same type of commercial tenant.

24    They are, in fact, in competition with each other; Two

25    Rockledge Associates with the tenant under the ground lease

1    with Rockledge Associates as the landlord.  Again, using the

2    leasehold interest as collateral, Two Rockledge Associates took

3    out a loan for approximately $16 million which was ultimately

4    assigned to Transamerica Life Insurance Company.  Just like in

5    this case, Two Rockledge Associates defaulted under the ground

6    lease and failed to pay -- special purpose entity.  It walked

7    away from the loan owing nearly the entire principal

8    (indiscernible).  Transamerica Life Insurance Company stepped

9    in and cured the ground lease default and foreclosed upon the

10   leasehold interest.

11          In that case Judge Grimm ruled that the ground lease

12   had been terminated, and the leasehold interest merged with the

13   estate.  Since 2017 Rockledge Associates has been in control of

14   all assets of the 6610 property including leasing the competing

15   building.

16          By way of procedural history with respect to this

17   motion to compel, on December 29, 2020, IWA served a subpoena

18   on Rockledge Associates.  On January 14, 2021, Rockledge served

19   written objections and responses to the subpoena, and through

20   predecessor counsel, agreed to produce certain documents in

21   response to the subpoena.

22          On March 2, 2021, IWA sent correspondence to counsel

23   for Rockledge, requesting the documents that Rockledge had

24   agreed to produce in response to the subpoena.  And during a

25   subsequent meet-and-confer on March 15, 2021, counsel for

1    Rockledge reiterated its intent to produce documents.  At this

2    time just for clarification for Your Honor, Attorney Bosch was

3    with Arnold & Porter, and then he left and joined Pillsbury

4    which is where he is now.  And that happened at the beginning

5    of May.

6            On June 4, 2021, Rockledge through Pillsbury produced

7    71 documents in response to the subpoena.  None of the 71

8    documents produced by Rockledge were actually responsive to the

9    information requested in the subpoena.  They do not even

10   reference Rockledge.  Each of the documents appears to have the

11   custodian Robert Braunholer.  It appears Mr. Braunholer is the

12   chief operating officer of Rock Springs Property, LLC.  Rock

13   Springs Property, LLC, is another Camalier family special

14   entity.

15           IWA was informed, along with the Court, for the first

16   time in the opposition to the instant motion that the 71

17   documents that were produced on June 4, 2021, were, in fact, an

18   inadvertent production which means, to date, Rockledge has

19   actually not produced a single document in response to the

20   subpoena.

21           On June 21, 2021, IWA sent Rockledge a discovery

22   dispute letter and requested a meet-and-confer pursuant to the

23   local rules.  Rockledge did not respond to the letter that was

24   sent requesting the meet-and-confer.

25           On June 30, in advance of filing the instant motion,

1    IWA then requested a meet-and-confer with Rockledge pursuant to

2    the local rules.  Rockledge responded to that request, and the

3    meet-and-confer was conducted on July 1, 2021.  During the

4    July 1 meet-and-confer, counsel for Rockledge still would not

5    commit to a timely production of documents on behalf of

6    Rockledge.  Counsel suggested that IWA may be able to obtain

7    the documents it was seeking from other family or sources,

8    including Rock Springs Property.  And with respect to the

9    documents themselves, and Your Honor aptly noted a few moments

10   ago under Rule 26 of the Federal Rule of Civil Procedure,

11   parties are permitted broad factual discovery.  Under 26(b)(1)

12   parties are granted access to, quote, "any nonprivileged matter

13   that is relevant to any party's claim or defense and

14   proportional to the needs of the case."  Relevance for

15   discovery purposes, as Your Honor noted, is broadly construed.

16        Under Rule 26(b) information within the scope of

17   discovery need not be admissible in evidence to be

18   discoverable.  Federal courts recognize that the scope of

19   relevance standard discovery rules is broad such that relevancy

20   encompasses any matter that bears or may bear on any issue that

21   is or may be at issue in the case.

22        Here the scope of discovery for the Rule 45 subpoena

23   is the same as the scope of discovery permitted under 26(b).

24   Both Rule 26 and Rule 45 permit IWA to explore the narrow

25   requested categories of documents in Rockledge's possession

1   which includes, but are not limited to, documents related to

2   the common ownership and control of the 6610 property and the

3   6560 property, the corporate structure of Rockledge, the ground

4   lease on the 6610 property, and documents or communications

5   related to the 6560 property, including communications between

6   Rockledge Associates and plaintiff.

7          The documents sought are relevant despite Rockledge's

8   objections to the contrary.  First, Rockledge argues that these

9   documents are not relevant because it's a wholly separate

10  property --

11         THE COURT:  Right, okay, yes, I'm just going to cut

12  you off.  Remember I'm going to hear from Mr. Bosch, right, as

13  to what his arguments were.  I was just trying to give you a

14  chance to kind of be heard to sort of supplement, Ms. Dunne,

15  based on what you've said in the papers.  I'm going to hear

16  from him in a minute.  Is there anything else that you want to

17  say?

18         MS. DUNNE:  Yes.  One, we're arguing that these

19  documents are very relevant because plaintiff has previously

20  brought the litigation between 6610 Rockledge Associates and

21  Transamerica Life Insurance Company into issue at this action.

22  Second, we believe that these documents are relevant because

23  6610 acquired the property in 2017.  As such, Rockledge has

24  been in direct competition with Rock Springs Drive to lease

25  office space in neighboring buildings in the same office park.

1    The Camalier family is in direct competition with the property

2    that is paying above-market ground rent.  Additionally, the

3    Camalier family, through their special purpose entity, can

4    influence rent rate in the market to undercut its own ground

5    lease tenant.

6          We've learned from discovery in this case that

7    plaintiff, without any authority or rights to the property, has

8    been trying to market the 6560 property to tenants through

9    Rockledge Associates, and they have also through Rockledge

10    Associates advertised rent rates to potential tenants to the

11    6560 property.  Additionally, we believe that these documents

12    are relevant because of the identical management and possible

13    identical corporate structure of Rockledge and plaintiff.

14    Rockledge's activity may also be relevant to other assets of

15    this case as we dig into the special purpose entities and how

16    the Camalier family is marketing properties throughout the

17    office park which are in direct competition with 6560.

18          Here, plaintiff is arguing that one of the badges of

19    fraud is that the property is vacant, and there are no

20    tenants --

21          THE COURT:  Right.

22          MS. DUNNE:  Notably, 6610 is also vacant and has no

23    tenant.  Finally, these documents are material to defending

24    against a number of allegations (indiscernible) against IWA.

25    As I said before, plaintiff is alleging that certain conduct is

1   evidence of fraud or badges of fraud, and that includes demands

2   by plaintiff to provide proprietary information and Rock

3   Springs Drive's supposed refusal to provide it.  Attempts by

4   IWA and Rock Springs Drive to lease the property, Rock Springs

5   Drive's decision not to join plaintiff's efforts to pursue a

6   sublease with Marriott and the General Services Administration,

7   and the lack of commercial activity in general.

8            IWA is entitled to discovery as to what its

9   neighboring family of SPEs is doing with its property.  It

10  defies logic that vacancy and lack of commercial activity is a

11  badge of fraud at 6560 Rock Springs Drive, but the property

12  next door at 6610 Rockledge is just business as usual.

13           And then finally we have been told that Rock Springs

14  Properties, which is the management arm of the Camalier family

15  special purpose entities, will also be making a document

16  production which they have not done to date.  That's of no

17  import here and does not release third party Rockledge of its

18  obligations to produce under Rule 45.

19           THE COURT:  Right.  Here's what we're going to do.

20  Pull out ECF 98-1 for me, page 3 of 6.  I'm looking at and I'm

21  using -- when I refer to the page numbers, I mean ECF page

22  numbers at the top.  98-1, page 3 of 6, pull that out for me,

23  please.

24           MS. DUNNE:  Yes, Your Honor.

25           THE COURT:  Let's do this seriatim in a way that's

```
 1   bit more concise.  So No. 1.  Also pull out ECF 98-3 at the
 2   same time.  Let's do it this way.  All right.
 3          So starting first with 98-1, page 3, item 1 is you
 4   wanted any and all documents related to 6560, right?
 5          MS. DUNNE:  Yes.
 6          THE COURT:  Then when I read ECF 98-3, looks like it
 7   is ECF page no. 2, bottom of page 2 spilled over to page 3.
 8   They objected, sort of the boilerplate objections which we
 9   don't allow anymore, but they do the boilerplate objections.
10   Then they say subject to those objections and without waiving
11   them, they'll produce anything that's not privileged relating
12   to the negotiation and execution of the ground lease, estoppel
13   agreement, nonprivileged documents, et cetera.
14          So Question No. 1, with those caveats, were the
15   materials that they were proposing to produce, are those
16   responsive to your Request No. 1?  Yes or no.
17          MS. DUNNE:  Yes.
18          THE COURT:  All right.  Next question.  Did you get
19   any response?  Have you, to date, received any response like
20   those things that they reference?  Have you received those as
21   part of the 71 documents or otherwise?
22          MS. DUNNE:  We have not.  They are now asserting that
23   71 documents produced --
24          THE COURT:  I got you, just a yes or no question.
25   I'm trying to get through, I heard that part.  It's just a
```

1   yes-or-no question.  You've gotten it or not?  No; right?

2              MS. DUNNE:  No.

3              THE COURT:  Because I know relatedly they're saying

4   the 71 documents -- you've said two things.  One, it's the

5   wrong custodian, and also it's not responsive.  Those are your

6   corollary arguments, right?  So you've got nothing responsive

7   to No. 1 to date, right?

8              MS. DUNNE:  Right.  And their response was

9   self-limiting to certain categories.

10             THE COURT:  Right.  As they further identified it on

11  page 3 of ECF 98-3; is that what you're saying?

12             MS. DUNNE:  Yes.

13             THE COURT:  All right.  Let's go on to No. 2.  No. 2

14  is any documents including memorandum, letters, emails

15  received -- okay.  So then their response in 98-3 says --

16  again, sort of the boilerplate thing.  Then they say they'll

17  produce all nonprivileged documents related to ground lease,

18  estoppel -- I guess three questions.  One is:  You haven't

19  received this yet, right?

20             MS. DUNNE:  Yes, we have not.

21             THE COURT:  Two is:  It's self-limiting, to adopt

22  your nomenclature, right?

23             MS. DUNNE:  Yes, Your Honor.

24             THE COURT:  Anything else you want to tell me about

25  No. 2?  I think I've got it so far.

1          MS. DUNNE:  No, I think you have it.

2          THE COURT:  Let's go to No. 3.  All ground leases,

3     amendments -- for 6610 -- and their response is -- again, this

4     is 98-3, one second here.  So then their response which is at

5     the bottom of page 3, top of page 4 of 98-3, they say --

6     privilege -- okay, that's fine.  Materials unrelated to the

7     subject of this litigation and it's not reasonably calculated

8     to lead to the discovery of admissible evidence.

9          So, again, that's the old rule everybody knows,

10    right, got updated in Federal Civil Procedures in December

11    2015, and the last sentence of 26(b)(1) is abundantly clear:

12    Information within the scope of discovery need not be

13    admissible in evidence to be discoverable, right?  There is

14    also the -- again, it's nonprivileged, proportional to needs of

15    the case, relevance, of course, right?  And whether -- but

16    there's no more of this likely to lead to discovery of

17    admissible evidence.  That's just old verbiage.

18         All right.  So they kind of make a disproportion

19    argument.  Question No. 1, it's basically the response is we're

20    not giving you anything, and you've received nothing, right?

21         MS. DUNNE:  Yes, Your Honor.  You're correct.

22         THE COURT:  All right.  Let's go on to No. 4.  Four

23    is any and all documents relating to, concerning, reference to

24    corporate structure of Rockledge.  Now I have to confess I

25    didn't look at your definition page to see how you define

1  Rockledge, but in any event, their response is ECF 98-3,

2  attorney-client privilege, vague, just boilerplate.  So they

3  basically -- for 4 they're saying disproportionate... kind of

4  in a boilerplate way, vague, whatever.  So you've got nothing

5  for No. 4 either, right?

6          MS. DUNNE:  Correct, Your Honor.

7          THE COURT:  All right.  Five is any and all

8  documents -- blah, blah, blah -- relating to common ownership

9  and control of 6610.  Their response was attorney-client

10 privilege, disproportionate -- again, sort of boilerplate.

11 Again, not received anything, right, at all?

12         MS. DUNNE:  Correct, Your Honor.

13         THE COURT:  All right.  Now let's go to ECF 98-1, the

14 last paragraph on page 3 where it's the -- because I already

15 understand the issue with Mr. Braunholer.  So you're saying

16 predecessor counsel allegedly promised something to you, but

17 how is that consistent with or is it consistent with -- I'm

18 seeing 98-3 where he basically is saying we're not giving you,

19 you know, several of these things, right?  "We're not giving

20 you 3, 4 and 5, and we're giving you things on 1 and 2 as we

21 choose to define them."  What is it you're saying he promised

22 that's different from ECF 98-3?

23         MS. DUNNE:  We had meet-and-confers, and he promised

24 to produce documents responsive to the first three categories.

25 We were waiting for production of those documents before we

```
 1    sought further meet-and-confers and before we sought
 2    intervention from the Court.  Obviously we know the Court's
 3    time is very valuable, and I believe all parties here are
 4    trying not to waste the Court's time.
 5               THE COURT:  Sure, sure.
 6               MS. DUNNE:  So we've been waiting for that production
 7    to see what we did receive and then to prepare an omnibus
 8    motion to compel regarding all categories.  Since they're now
 9    claiming that their initial June 4 production was an
10    inadvertent production, we're still at ground zero on August 5
11    with zero documents from Rockledge Associates.
12               THE COURT:  Right, got it.  Again, to put a finer
13    point on it, during the meet-and-confers, he promised 1, 2 and
14    3 but was silent on 4 and 5?
15               MS. DUNNE:  Yes, Your Honor.  He did not promise
16    documents responsive to 4 and 5.
17               THE COURT:  All right.  Let me just take a look at a
18    couple things here.  On June 25, you served a subpoena on Rock
19    Spring Properties, LLC; is that correct?
20               MS. DUNNE:  Yes, Your Honor.
21               THE COURT:  I'm just going to call it RSP.  I am
22    trying to diagram all the Rock Spring entities, but we'll find
23    out in a moment how successful I am with that.  RSP, it says on
24    June 25 you served a separate subpoena on a different entity,
25    RSP.  Question No. 1 for you, does RSP -- I'm just curious,
```

1    it's ultimately not relevant necessarily because, frankly, if

2    Rockledge has the documents, they have an obligation to produce

3    them.  I'm just curious.  Has RSP, Rock Spring Properties,

4    produced -- one, were they asked to produce these same five

5    different things that we've gone over a moment ago?

6            MS. DUNNE:  They were asked to produce -- yes, I

7    believe the same five categories were encompassed in the Rock

8    Springs subpoena.  We are in the process of meeting and

9    conferring with Rock Springs property and preparing the motion

10   to compel with regards to that subpoena as well.  We have been

11   able to narrow some of the areas of dispute but not all of the

12   areas of dispute.  One of the major areas of dispute that Rock

13   Springs Property is standing on is that they will not produce

14   documents related to 6610 --

15           THE COURT:  Sure, okay.

16           MS. DUNNE:  -- for the other Camalier buildings in

17   the office park.

18           THE COURT:  Because ultimately that may or may not be

19   relevant under 26(b)(2)(C)(i) or (ii) analysis, right?

20   Discovery can be obtained from some other source or if you've

21   had ample opportunity to get it from somebody else.  That's why

22   I was asking, frankly, about RSP.  That's potentially two ways

23   in which it's relevant.

24           Okay.  Let's see here.  Let me look at one more

25   thing.

```
 1           (Audio interruption.)

 2               THE COURT:  Hi, this is Judge Simms.  Did someone

 3      join?  Or did we lose someone?  Ms. Dunne, are you still there?

 4               MS. DUNNE:  Yes, Your Honor, I'm still here.  Thank

 5      you.

 6               THE COURT:  Mr. Bosch, are you still there?

 7               MR. BOSCH:  Yes, Your Honor, I'm still here.

 8               THE COURT:  Okay, you two are the most important.  I

 9      can tell when people leave or join the call.  I was looking

10      away, didn't know which it was.  I just wanted to make sure the

11      two most important people are here.

12               All right.  Let me look at one more thing and then I

13      may turn to you, Mr. Bosch.  I think that's it for now for you.

14               Okay, Mr. Bosch, let me just go through my questions

15      first because I think it's going to be a bit more efficient.

16      And I'll certainly give you an opportunity to be heard.  If you

17      could pull out ECF No. 103 which is your opposition to the

18      motion to compel, please.

19               MR. BOSCH:  All right, Your Honor.  I have it.

20               THE COURT:  So page 1.  Question No. 1 for you

21      because you say -- second paragraph:  "Rockledge has no

22      interest in the property at issue in this lawsuit and therefore

23      has no responsive documents."  Those two things may not be in

24      harmony with each other.  You may have no interest in the

25      property unless you mean legally you have no interest in it.
```

```
 1    Let me ask you this:  Is your position that your entity,
 2    Rockledge Associates, does not have any responsive documents?
 3              MR. BOSCH:  Judge, if we go back to those five
 4    categories --
 5              THE COURT:  Yes.
 6              MR. BOSCH:  That's what I had up on my screen.  As
 7    you said, that's the most efficient way to address what's
 8    before the Court.
 9              THE COURT:  All right.
10              MR. BOSCH:  In connection with category 1 where the
11    request asks for any and all documents and communications
12    concerning, establishing, or related to the property at issue
13    in this litigation, located at 6560 Rock Springs Drive, the
14    property.  As to that specification, Rockledge does not have
15    any responsive documents.
16              I heard Ms. Dunne say today that the first they heard
17    that was in the opposition to the motion.  I think she
18    misspoke.  Because there was a meet-and-confer before they
19    filed their motion in which it was made abundantly clear that
20    the documents, the 71 documents that were produced were
21    produced inadvertently, and that Rockledge Associates has no
22    responsive documents --
23              THE COURT:  But here's --
24              MR. BOSCH:  -- specifications?
25              THE COURT:  Actually, hold on -- that was helpful but
```

1   let's go back to 98-3 for me.  Because if you're saying you

2   don't have any responsive documents, let's go back to 98-3

3   which was the response you wrote back in January or something

4   of 2021.  So you object to the first request, right?  And then

5   you say that you were going to produce all nonprivileged

6   documents related to the negotiation, execution of the ground

7   release, the estoppel agreement and nonprivileged document --

8   blah, blah, blah.

9          Can you see how if you stand in their shoes, that

10  makes a reasonable reader think, hey, we've got things that we

11  think are responsive, inter alia, the three things you've

12  named, and we're going to turn them over?  You do understand

13  how she could conclude that --

14          MR. BOSCH:  Judge --

15          THE COURT:  Remember, you have to abide by the rule.

16  Wait until I'm done speaking and pause for a moment, okay?  All

17  right.  So go ahead.

18          MR. BOSCH:  Forgive me, I'm learning.  It's hard.

19  Yes, Judge, I understand the point that if you were to review

20  the responses and objections, one might infer that there are

21  documents that Rockledge has.  But let me make this clear as

22  well.  All documents that the plaintiff has pertaining to the

23  ground lease, estoppel agreement, et cetera, have been

24  produced, and all documents -- the Court asked Ms. Dunne

25  whether the subsequent subpoena to RSP II asked for the same

1    categories of documents.  Well, in fact the 71 documents that

2    were produced inadvertently in response to the Rockledge

3    subpoena are being produced back to them because they're

4    insisting as much.  Those are the responsive documents to

5    categories 1 and 2.

6              THE COURT:  Okay.

7              MR. BOSCH:  So Judge, again, forgive me, as to

8    categories 1 and 2, Rockledge does not have any responsive

9    documents.  So notwithstanding the fact that they agreed to

10   produce them, they have none.  So there is nothing to be

11   produced.  The documents that were produced were actually in

12   the custody of RSP II.  And I think you saw from our

13   explanation why that is.

14             THE COURT:  Mm-hmm.

15             MR. BOSCH:  Because RSP II is the entity that manages

16   each of the interests in which the Camalier family has an

17   interest.

18             THE COURT:  Mm-hmm.

19             MR. BOSCH:  So again, as to categories 1 and 2, we

20   believe that the motion was frivolous because we made it clear

21   there are no responsive documents, and any documents that they

22   were seeking would properly be addressed to RSP II, and as to

23   that subpoena, we have produced the documents.

24             THE COURT:  Okay.  So here's what I need --

25             MR. BOSCH:  If there were any issues --

```
1              THE COURT:  Go ahead, Mr. Bosch.
2              MR. BOSCH:  I was just going to say as to the RSP II
3    subpoena, Ms. Dunne said that the parties are meeting and
4    conferring.  I don't know, as I sit here today, what the
5    outstanding issues are as to that subpoena.
6              THE COURT:  Okay, sure.
7              MR. BOSCH:  But now I'd like to address the three
8    remaining categories --
9              THE COURT:  Actually, not yet --
10             MR. BOSCH:  -- very lengthy recitation --
11             THE COURT:  -- not yet, not yet --
12             MR. BOSCH:  Go ahead --
13             THE COURT:  Not yet because I have some more
14   questions for you on 1 and 2.  So I understand your position.
15   Your client has nothing in response to 1 and 2.  So can we get
16   a 30(b)(6) witness together?  Can you do a declaration?  Can
17   you do something that then says that affirmatively squarely in
18   writing or you could do a declaration?  You could do a -- if
19   she wants to depose someone, a 30(b)(6) -- whatever it is, can
20   you get something to them that says that definitively?
21             MR. BOSCH:  Happy to, Judge, if that's going to be
22   the standard that applies to all of the parties and nonparties,
23   yes, of course.
24             THE COURT:  I don't think I understand your last
25   remark, "if that's going to be the standard that applies to all
```

```
 1    the parties and nonparties"?  I'm not sure I understand what
 2    you're trying to tell me, so be a bit less opaque, less vague
 3    about that.  I'm sorry, I don't understand what you're trying
 4    to tell me.
 5            MR. BOSCH:  So, Judge, there was a subpoena issued to
 6    a nonparty --
 7            THE COURT:  Got it.
 8            MR. BOSCH:  Counsel had represented they have no
 9    documents because they have no interest in the property.
10            THE COURT:  Mm-hmm.
11            MR. BOSCH:  What I'm saying is I'm happy to provide,
12    whether it's by way of 30(b)(6) deposition or a declaration,
13    affirmation.  But we've had representations from other entities
14    in this lawsuit, including Transamerica, and we've had
15    representations from other nonparties, including entities that
16    are affiliated with the defendants, like Algon and Long Shore
17    Ventures.  I just want to make sure if nonparty Rockledge
18    Associates, in making an affirmative representation it has no
19    documents is going to be required to submit a declaration or a
20    30(b)(6), then that should be the standard that applies to all
21    of the parties or nonparties that say they have no responsive
22    documents.  That's all --
23            THE COURT:  Got it.  So I understand.  First of all,
24    I don't do big picture, it's going to apply to everybody.  I'm
25    very much concerned about the facts and the specific arguments
```

1    articulated.  And, Mr. Bosch, I think it is -- it's basically,

2    as I said, because if you read ECF 98-3 like we've gone over, a

3    reasonable reader would infer that you're trying to tell them

4    you have things that are responsive.  It's literally because of

5    that that I think it's appropriate to do a 30(b)(6) deposition

6    or a declaration or something.  So it's literally in response

7    to the specific facts here, right?

8             So I'm not going to say that everybody else has to be

9    subject to a 30(b)(6) depo or declaration.  It's literally

10   because of the way the facts are unfolding here.  That's my

11   ruling on 1 and 2.

12            Now let's go to No. 3, Mr. Bosch.  So No. 3, any and

13   all ground leases, right?  I have to go back to what you said

14   for No. 3, let me look at 98-3.  You objected to 3 from the

15   very beginning.  Obviously, we assume you would not have to

16   turn over anything that's attorney-client privilege or work

17   product, and I appreciate why you asserted that on behalf of

18   your client.  I don't know if -- if the standard, Mr. Bosch, is

19   just one of relevance, right, and again if relevance is defined

20   expansively, why wouldn't they be entitled to any and all

21   ground leases and related... related to 6610 Rockledge Drive?

22   Why wouldn't they be entitled to that?

23            MR. BOSCH:  Well, Judge, I think what I heard from

24   Ms. Dunne is a lot of assertions and let's go back -- again,

25   I'm hopeful you'll give me the opportunity to express what the

1   case is about because we heard a long recitation.  This is a

2   fraudulent conveyance claim brought by my client, RSP II,

3   against IWA and RSD.  Those are two affiliated entities.  IWA

4   formed RSD for the purpose of, in our view, avoiding long-term

5   ground rent obligations.  That was done in 2017.  So the issues

6   in this case are whether there was a fraudulent conveyance of a

7   ground lease for the 6560 property.

8           What the defendants are arguing is that we're

9   entitled to discovery about other ground leases, including in

10  this instance, 6610 property.  I'm mindful of what the Court

11  just admonished me about not looking at the big picture, but I

12  do think the Court needs to understand that there are, I think,

13  13 other subpoenas that were issued by the defendants against a

14  whole range of entities.  And what Ms. Dunne says essentially

15  from her recitation, is it seems that the Camalier family is on

16  trial here but the Camalier family is not a party to this

17  lawsuit.

18          But, in any event, the 6610 ground lease is not

19  relevant to this lawsuit other than in one simple way that can

20  be addressed, I think, in elegant fashion and that can be

21  addressed as to categories 3, 4 and 5.

22          THE COURT:  Okay.

23          MR. BOSCH:  The sole relevance of the 6610 property

24  ground lease is that, as you heard Ms. Dunne say, there was a

25  lawsuit by a different plaintiff against a different ground

1    lessee involving a different ground lease.  And that lawsuit

2    was resolved in favor of the ground lessee because that ground

3    lease had different terms.

4              THE COURT:  Mm-hmm.

5              MR. BOSCH:  So what happened was that at the time of

6    that successful resolution, Transamerica, which controls IWA

7    and RSD, said, "Can we do the same thing at the other property

8    we own, 6560?"  And the answer was no because this ground lease

9    is different.

10             So I'm happy to provide a copy of the ground lease,

11   but the truth is that Ms. Davis, who's on the line, has it

12   because she represented Transamerica in that lawsuit.  So the

13   sole relevance of 6610, that property, is that the ground lease

14   is different and the timing of the Court's decision, all things

15   that we can stipulate to.

16             THE COURT:  Mm-hmm.

17             MR. BOSCH:  And, again, but what I'm concerned about

18   here is what they're arguing in their motion is far broader

19   than the discovery they're seeking as to the specific subpoena.

20   We saw it and that's why we filed our sur-reply.

21             THE COURT:  Got it.

22             MR. BOSCH:  Because the Court needs to understand --

23   forgive me -- it's the tip of the iceberg for what they're

24   seeking.

25             THE COURT:  Mm-hmm.

31

```
 1          MR. BOSCH:  So as we go back to these categories for
 2    specification 3, "any and all ground leases and related
 3    amendments, agreements, sub-ground leases entered into for the
 4    property located at 6610," that's vastly disproportionate to
 5    the needs of this case.  Happy to give Ms. Davis, again, a copy
 6    of the ground lease for 6610 that she already has.
 7          And as to 4, "any and all documents relating to,
 8    concerning, referring, evidencing or regarding the corporate
 9    structure of Rockledge," I still don't know how that pertains
10    at all to whether there was a fraudulent conveyance from IWA to
11    RSD for unrelated property.  I haven't heard it yet.
12          THE COURT:  Okay.
13          MR. BOSCH:  As to specification 5, "any and all
14    documents relating to, concerning, referring, evidencing or
15    regarding common ownership or control of the 6610 property,"
16    again, I don't know how at all that pertains to whether there
17    was a fraudulent conveyance of the ground lease from IWA to
18    RSD.  But regardless if they want to submit a request for
19    admissions or enter into a stipulation as to whether there is
20    some common ownership, happy to do it.  But we're not going to
21    subject ourselves to overly broad, burdensome, disproportionate
22    discovery of all of these other properties that don't go to the
23    issues that Judge Messitte is ultimately going to have to
24    decide, was there a fraudulent conveyance of a ground lease
25    from IWA to RSD.
```

1          So, Judge, I think you heard from the presentation of

2    the case by Ms. Dunne what they're trying to do here.  They're

3    trying to throw all manner of issues about the Camalier family

4    in front of the Court, none of which, even if true, would

5    constitute a defense to the fraudulent conveyance.

6          THE COURT:  Mm-hmm.

7          MR. BOSCH:  So what they're asking the Court to do is

8    basically to sanction a multiplication ten-fold times at least

9    of the discovery.  It's interesting it's happening now as we've

10   been asked by the Court to submit a proposed scheduling order

11   because they've asked for now initially an eight-month

12   extension.  Now they've agreed to compromise at a six-month

13   extension of the discovery deadline because what they want to

14   do is increase the burden and expense of this very narrow

15   issues in this case.

16         And as Judge Messitte has heard, because he's heard

17   already in the context of the motions to dismiss filed by IWA

18   and RSD and most recently by Transamerica, and we're not

19   relying any longer just on badges of fraud, we have evidence of

20   actual fraud.  So when I heard Ms. Dunne say they're

21   characterizing the relevance of this evidence to show, for

22   example, that there are other vacant properties, the badge of

23   fraud in the first instance isn't that there were vacancies.

24   It's that they weren't even trying to lease out the property.

25   Regardless, we don't need to rely on badges of fraud.

1          The badges of fraud were relevant to surviving

2    motions to dismiss, whether we have stated adequately a claim

3    for fraud.  Now the burden will be on us as plaintiffs to prove

4    that there was a fraudulent conveyance.  All of this evidence

5    about other properties and some grand scheme by the Camalier

6    family, I still don't even understand what their grand scheme

7    was.  All of that is not relevant, not reasonably proportionate

8    to the needs of this case, is designed solely and specifically

9    to increase the burden and expense on the plaintiff to avoid so

10   that it will not pursue its claim here.

11          THE COURT:  All right, Mr. Bosch.  So here's what I

12   wanted to make sure that I understood.  For No. 3, it sounds

13   like there are two things you'd be willing to do.  Although,

14   frankly, I understand your point that it is not an efficient

15   use of your time, but I appreciate your willingness in the

16   spirit of compromise to give to Ms. Davis another copy of the

17   lease that she already has from the prior litigation.

18          But, more importantly, you said you'd be willing to

19   do some sort of stipulation to No. 3?  Would you be willing to

20   sort of take the lead and do that, please.

21          MR. BOSCH:  To be clear, Judge, I was referring to

22   specification 5 --

23          THE COURT:  Oh, I wrote it down twice.  I have

24   stipulation for 5 but I also have stipulation for 3.  That's

25   the way I wrote it down because that's what you said first.  So

```
 1    you don't want to do a stipulation for 3?

 2              MR. BOSCH:  I don't know what a stipulation for 3

 3    would look like --

 4              THE COURT:  I don't either but you said it.

 5              MR. BOSCH:  -- ground rules.

 6              THE COURT:  I don't know.  Because I take verbatim

 7    notes when people talk and you said "I'd be willing to

 8    stipulate to" -- that's fine, you're not doing that.  I'll come

 9    back to No. 3 in a minute.

10              No. 5, you'd be willing to either respond under

11    request for admission or do some sort of stipulation about the

12    ownership of the property; is that right?  6610 and 6560, is

13    that what you're saying?

14              MR. BOSCH:  Correct.

15              THE COURT:  All right.  Would you take the lead on

16    that, please.

17              MR. BOSCH:  Yes, Your Honor.

18              THE COURT:  So you'll try a stipulation, request for

19    admission.  If it doesn't work, whatever, you can talk about

20    doing the RFA at the end later on.

21              So that really leaves 3 and 4.  So for 4, I

22    understand your point.  I guess, Ms. Dunne, why do you need

23    all -- first of all, any and all, of course, can be very

24    broad -- but any and all documents related to the corporate

25    structure of Rockledge?  How is that relevant to whether or not
```

1    there was a fraudulent conveyance of the ground lease related

2    to 6560?  I think that's your point, right, Mr. Bosch?

3              MR. BOSCH:  Yes, Your Honor.

4              THE COURT:  So how is getting the corporate structure

5    of Rockledge, how does that help you understand what's at issue

6    here?  I don't understand that.

7              MS. DUNNE:  That information will assist with our

8    affirmative defenses.

9              THE COURT:  How?

10             MS. DUNNE:  To date, Attorney Bosch has refused to

11   provide --

12             THE COURT:  No, no, the question is how.  We're not

13   going to do boilerplate.  How will that information help with

14   your affirmative defenses?  How?  You've got to give us

15   something.

16             MS. DUNNE:  Sure.  So we have affirmative defenses

17   for unclean hands and fraud, and we're arguing here that the

18   Camalier family, through special purpose entities, has been

19   engaged in a fraudulent scheme where they are taking out loans,

20   and they're entering into these ground leases with other

21   related entities.  So our argument here is they're entering

22   into these unfavorable ground leases with very high ground

23   rent.  They're then taking out loans, they're eventually

24   defaulting under the ground lease, and they are defaulting

25   under the loan.  And the lenders are stepping into these ground

1   leases with extremely high ground rent after foreclosing on

2   these properties and being saddled with debt in the millions,

3   $30 million, $15 million.

4            So we believe we are entitled to the corporate

5   structure of Rockledge Associates as we try to determine -- and

6   for No. 5 --

7            THE COURT:  No, stay with No. 4, though, because I

8   feel like you're doing a lot of really great flowery language

9   which is really not answering my question so let me try again.

10  How is -- you were on the right track, Ms. Dunne, and then you

11  sort of got a little bit lost there.

12           So how is knowing the corporate structure of

13  Rockledge helpful for you to be able to establish an unclean

14  hands defense?  How is knowing the corporate structure, i.e.,

15  knowing whether Rockledge consisted of these three entities or

16  these two entities or -- how is that helpful?

17           MS. DUNNE:  It's helpful because we are trying to

18  establish a pattern or practice among these related entities.

19  And if we can see the corporate structure and which entities

20  are controlling the different special purpose entities, it's

21  helpful to show that these parent entities are acting kind of

22  as puppet masters in controlling these special purpose entities

23  to conduct these frauds against lenders.

24           THE COURT:  I don't know if you're trying to head

25  into Federal Rule of Evidence of 404(b) land, but I understand

```
1    what you're saying.  All right, Mr. Bosch, do you want to
2    respond to that?
3              MR. BOSCH:  Well, Judge, what I heard is, again,
4    there's this unstructured claim of unclean hands and fraud
5    against various Camalier entities.  As I heard it, the notion
6    being that they have structured these transactions so that when
7    an entity that's not at issue in this lawsuit defaults on a
8    loan, every time it defaults on a loan, that must be part of a
9    pattern and practice of fraud; and that lenders like IWA, a
10   sophisticated company affiliated with Transamerica -- and we
11   have the documents -- that decided to foreclose on that loan
12   and take the ground lease subject to the obligations of
13   long-term ground rent payments -- all of this is in their
14   documents -- knowing full well that there would be millions of
15   dollars of exposure to them in having these ground lease
16   payments, that somehow they were defrauded.  Defrauded by whom?
17   Not by the plaintiff here because the plaintiff is the ground
18   lessor, it wasn't (indiscernible).
19              But in any event, even if it were a plausible defense
20   to a fraud, fraudulent conveyance, hey, you guys did it too --
21   which it isn't -- the specific question Your Honor asked is how
22   is the documentation reflecting the corporate structure of
23   unrelated entities, other entities?  How is that helpful to you
24   in proving this unstructured affirmative defense?  And it
25   isn't.  Here's the reason why, Judge.
```

1              Even unclean hands, Maryland law is clear that

2    unclean hands does not mandate that those seeking equitable

3    relief must have exhibited unblemished conduct in every

4    transaction to which they have ever been a party.  And here

5    they're not even saying that this particular plaintiff was a

6    party to those transactions.  But rather -- I'm going to quote

7    from the *Maxtena* lawsuit, case in the District of Maryland.

8              THE COURT:  Yes, it's Judge Chasanow, isn't it --

9              MR. BOSCH:  That's one --

10             THE COURT:  It's Judge Chasanow now, right --

11             MR. BOSCH:  -- rather that -- I'm sorry?

12             THE COURT:  *Maxtena* is one of Judge Chasanow's cases,

13   isn't it?

14             MR. BOSCH:  Yes, precisely.

15             THE COURT:  Yes, I'm familiar with it.  That's why I

16   was asking --

17             MR. BOSCH:  -- "rather that a particular matter for

18   which a litigant seeks equitable relief must not be marred by

19   any fraudulent, illegal or inequitable conduct" has to be tied

20   to the specific transaction at issue.

21             THE COURT:  Mm-hmm.

22             MR. BOSCH:  So, again, the specific transaction at

23   issue is the conveyance of a ground lease at 6560.  What

24   happens at other properties under other ground leases under

25   other loans involving other parties is not a defense to the

39

1  fraudulent conveyance at issue here.  So there has to be some

2  proportionality.

3          So I think to the extent that they're entitled to any

4  discovery on this unclean hands, unstructured fraud,

5  unparticularized fraud, affirmative defense -- mind you, we

6  don't think there's any basis to it whatsoever, nor do we think

7  it's properly pled.  Even if they're entitled to, within the

8  scope of the federal rules, broad discovery on that issue, it

9  has to be tied to the ground lease at issue in this lawsuit

10 that Judge Messitte ultimately will have to determine.  Is

11 there a defense to that fraudulent conveyance based on unclean

12 hands or fraud as to this ground lease?

13         THE COURT:  Yes.  Ms. Dunne, I agree with Mr. Bosch,

14 I really do.  I think he's absolutely right.  And I am familiar

15 with the *Maxtena* case that Judge Chasanow issued.  I'm not

16 seeing the relevance.  I think you're reaching on this one, I

17 really do.

18         MS. DUNNE:  But --

19         THE COURT:  I've ruled, you can appeal me if you

20 like.

21         MS. DUNNE:  Okay.

22         THE COURT:  With respect to No. 4, it's going to be

23 denied.

24         Let's go on to No. 5.  Mr. Bosch, for No. 5, that was

25 the one that you -- so talk to me a little bit about kind of

1  what the common ownership stipulation you're thinking about

2  would look like, or do you want to try to sort of draft

3  something?

4          MR. BOSCH:  I prefer to draft something, but I

5  think -- I don't think it will be all that problematic.

6  There's no dispute here that a Camalier family entity has an

7  interest in 6560, the property at issue in this lawsuit, and

8  has an interest in 6610.  We don't need all this discovery to

9  address that issue.  There's no dispute about that.

10          THE COURT:  All right.  So, Ms. Dunne, with respect

11 to No. 5, you've heard Mr. Bosch say he's going to work on a

12 stipulation.  Obviously you-all can discuss that further.

13          So where does that leave us?  I've already ruled on 1

14 and 2.  Mr. Bosch, whether it's a declaration, you make

15 somebody available for a 30(b)(6), we're doing that with

16 respect to 1 and 2.  With respect to No. 4, that's going to be

17 denied, Ms. Dunne, and if you want to appeal me to Judge

18 Messitte, please feel free to do that.  No. 5, Mr. Bosch is

19 going to work on some sort of stipulation to that.  Really that

20 kind of leaves No. 3.  Right, Mr. Bosch?  I think that leaves

21 No. 3 where I --

22          MS. DUNNE:  Your Honor?

23          THE COURT:  I'm still speaking --

24          MS. DUNNE:  I apologize.

25          THE COURT:  -- still speaking, still speaking.

1          That leaves No. 3 to resolve which I believe

2    Mr. Bosch could give Ms. Davis another copy of the lease

3    although I know that's not going to satisfy you, Ms. Dunne.

4    Now I'm ready to hear from you on No. 3, Ms. Dunne.

5          MS. DUNNE:  There is just one correction I wanted to

6    make with respect to No. 4 about something that Attorney Bosch

7    had stated.  The plaintiff has already moved to strike our

8    affirmative defenses, and they were upheld by Judge Messitte,

9    and those affirmative defenses have been allowed to proceed.

10   And while Attorney Bosch may not feel they are viable, they

11   are.  So for category No. 4, affirmative defenses of unclean

12   hands and fraud have been allowed to go forward.  Here

13   plaintiff is seeking a claim in equity, and we have a right to

14   defend against this based on their fraud.

15          So that is why we're seeking No. 4.  Those

16   affirmative defenses have been subject to challenge by motion

17   and upheld.  I just wanted to be sure the Court was clear on

18   that.

19          THE COURT:  Sure.  Very helpful, glad that you put

20   your position on the record.  I've heard your position.  I've

21   heard Mr. Bosch's argument.  I think his argument is a bit more

22   nuanced.  He's not saying that you're not entitled to raise

23   those defenses.  He's just saying, if you will, that the way

24   that you're arguing it and the facts that you think you need to

25   do it are not relevant and inter alia, right?  That's the

42

1    issue.  I don't think he's saying you don't have a right to

2    raise the defense.  You just have to look at *Maxtena* and a few

3    other cases.

4            So I've already ruled, but I appreciate you letting

5    me know so the record is clear.

6            Now No. 3, anything else on No. 3, Ms. Dunne?

7            MS. DUNNE:  With respect to No. 3, the fact that we

8    have a document from another case which is subject to a

9    protective order is not relevant, Your Honor.  We need those

10   documents from the custodian of record, so we need the ground

11   leases, the related amendments, any sub-ground leases that were

12   entered into.  It's not just a single ground lease.  There are

13   a number of interconnected and inter-related agreements with

14   these ground leases, so we believe we're entitled to the ground

15   lease and all of its attendant agreements.

16           THE COURT:  Mr. Bosch, I understand the objection you

17   made in 98-3, so let me ask you a pointed question.  Does your

18   client have any documents that are responsive to request No. 3

19   that are not attorney-client privilege or work product

20   protected?

21           MR. BOSCH:  Yes, Your Honor, they do, of course.  The

22   question that I haven't heard answered yet is how all those

23   related subleases for a different property bear on the issue of

24   whether there was a fraudulent conveyance or any defenses to

25   whether there was a fraudulent conveyance as to 6560.  As I

 1    said before, again, the only relevance that I can see of 6610

 2    has to do with the fact that its ground lease was different --

 3    and we'll give them the ground lease which they already have

 4    and they know -- and the timing of when that decision occurred

 5    which is in the public record.  Again, we can stipulate.

 6           But we don't want to open up broad discovery into

 7    other properties just because they think it may help them as

 8    they try to dig up to create this pattern of fraudulent conduct

 9    by entities that aren't even involved in the lawsuit, that

10    aren't even the parties to the ground lease that is at issue.

11           THE COURT:  So here's what we're going to do.

12    Ms. Dunne, with respect to Item No. 3, I'm going to allow you

13    to submit a letter to me that is part of the public docket that

14    is three pages in length single-spaced that elaborates with

15    precision, you have to be very particular as to the relevance

16    of the documents you seek to this particular litigation.  Three

17    pages single-spaced.  I will give you a week to do that, that

18    it's due on August 13.

19           Mr. Bosch, I will give you a week to respond, so it

20    will be due on August 20, and I will resolve No. 3 later.  I'm

21    sorry, Mr. Bosch, I did not say your response, of course, is

22    the same thing: three pages, single-spaced in length.  I did

23    not say that.

24           MR. BOSCH:  Unspoken but understood.  Thank you.

25           THE COURT:  All right, folks.  I think that takes

1    care of all of these, right?  I've got the ruling on 1 and 2,

2    and, Mr. Bosch, if you would just do your best effort to kind

3    of work on those things as expeditiously as possible, whether

4    it's the declaration or making somebody available, let's do

5    that.  I know you-all have a discovery deadline I want to say

6    of September 15 but don't quote me on that -- yes, that's what

7    I have.

8           So that takes care of 1 and 2.  We're going to get

9    briefing on No. 3.  I've already ruled on No. 4 because I think

10   it's a reach.  I really do think it's a bit of a reach as

11   you've articulated it today here, Ms. Dunne, but as I said,

12   please feel free to appeal me to Judge Messitte.  And then

13   No. 5, Mr. Bosch is going to work on No. 5.  All right.

14          I think that resolves everything.  Anything further,

15   Ms. Dunne, because it's your motion?

16          MS. DUNNE:  With respect to No. 1 and 2, I know that

17   you stated either a stipulation or a 30(b)(6) witness.  And

18   with respect to No. 5, it seems that the only available option

19   is a stipulation.  Is a 30(b)(6) witness also available for

20   Category No. 5?

21          THE COURT:  Two things.  Mr. Bosch said stipulation

22   and I think he said request for admission -- right,

23   Mr. Bosch -- or as an alternative.  He was just brainstorming,

24   and I think you said RFA.  Right, Mr. Bosch?

25          MR. BOSCH:  Yes, I'm trying to come up with the most

1    efficient discovery tool available to answer the question.

2          THE COURT:  Exactly.  I think it may make sense for

3    you-all to meet and confer about that, but let me be clear.

4    The 30(b)(6), if you go the 30(b)(6) route for Nos. 1 and 2,

5    this is not like a multihour 30(b)(6) deposition, let's be

6    clear.  I mean, literally, I was thinking five minutes.  I

7    really wasn't trying to be hyperbolic there.  It's literally

8    that Mr. Bosch is aware of the case law and he has to prepare

9    the person adequately and fully; what sources did you search,

10   what do you have, do you have anything responsive?  I mean,

11   it's not going to be a multihour 30(b)(6) if he opts to go that

12   route.  That's why I was saying a declaration would be the most

13   efficient, frankly.

14         MS. DUNNE:  Understood.

15         THE COURT:  For this one, he's going to come up with

16   a stipulation.  Let's see how precise that is, how particular

17   it is, how fulsome it is, and if it's not enough, you-all can

18   sort of talk about.  But I think he was being flexible and just

19   trying to offer ways to resolve this.

20         MS. DUNNE:  Understood.

21         THE COURT:  All right.  So nothing else, Ms. Dunne,

22   for your client?

23         MS. DUNNE:  Nothing with respect to Rockledge.

24         THE COURT:  Well, that's the only thing that's in

25   front of me right now under ECF 98.  Nobody has briefed

1    anything else.  I'm not taking up other matters that have not

2    been briefed.  I'm not taking up matters that you-all still

3    need to try to resolve, right?

4              MS. DUNNE:  Understood.

5              THE COURT:  Only thing in front of me is ECF No. 98.

6    Let me talk about that.  You-all are familiar with the local

7    rules, I know that.  Please try to work on the RSP subpoena

8    issue that's percolating along, understanding my view on

9    discovery but also understanding I'm looking for people to work

10   together and think about a reasonable compromise.  I appreciate

11   what Mr. Bosch has tried to do.  Let's be efficient about this,

12   folks.

13             Mr. Bosch, anything further on behalf of your client?

14             MR. BOSCH:  No, Your Honor.  Thank you.

15             THE COURT:  All right, thank you.  So basically ECF

16   No. 98, the motion to compel, is going to be granted in part,

17   sort of denied in part, if you will, as a practical matter.

18   It's denied with respect to No. 4.  No. 3, of course, I'm

19   getting further briefing on No. 3, and we've already talked

20   about 1, 2 and 5.  So right now it's going to be sort of denied

21   subject to the solutions that Mr. Bosch propounded, subject to

22   him following through on that.

23             Seeing nothing further, thank you, everyone, for your

24   time.  Take care, we'll take to you later, bye.  We stand

25   adjourned.

```
1          (Proceedings concluded.)

2

3          I, Patricia G. Mitchell, RMR, CRR, do hereby certify
    that the foregoing is a correct transcript of the
4   audio-recorded proceedings in the above-entitled matter, audio
    recorded via FTR Gold on August 6, 2021, and transcribed from
5   the audio recording to the best of my ability and that said
    transcript has been compared with the audio recording.

6
           Dated this 12th day of February 2023.
7

8

9                    Patricia G. Mitchell

10                   Patricia G. Mitchell

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25
```

**< Dates >**

**August 13** 43:18 .
**August 20,** 43:20 .
**August 5** 20:10 .
**August 6, 2021** 1:18 .
**August 6, 2021,** 47:7 .
**December 2015,** 18:10 .
**December 29, 2020,** 10:17 .
**February 2023.** 47:11 .
**January** 24:3 .
**January 14, 2021,** 10:18 .
**July 1** 12:4 .
**July 1, 2021.** 12:3 .
**July 16** 5:23 .
**July 2** 5:22 .
**June 21, 2021,** 11:21 .
**June 25** 20:24 .
**June 25,** 20:18 .
**June 30,** 11:25 .
**June 4** 20:9 .
**June 4, 2021,** 11:6, 11:17 .
**March 15, 2021,** 10:25 .
**March 2, 2021,** 10:22 .
**May** 11:5 .
**September 15** 44:6 .
**$15** 36:3 .
**$16** 10:3 .
**$30** 36:3 .
.

**< 0 >.**

**0-cv-01502-pjm** 1:10 .
**02210** 1:44 .
.
.

**< 1 >.**

**1** 4:23, 16:1, 16:3, 16:14, 16:16, 17:7, 18:19, 19:20, 20:13, 20:25, 22:20, 23:10, 25:5, 25:8, 25:19, 26:14, 26:15, 28:11, 40:13, 40:16, 44:1, 44:8, 44:16, 45:4, 46:20 .
**103** 5:21, 5:22, 7:24,

22:17 .
**104** 7:24 .
**105** 5:21, 5:23 .
**1075** 1:48 .
**108** 4:13, 5:23, 6:3 .
**1100** 2:13 .
**1200** 1:33 .
**1220** 2:14 .
**12th** 47:11 .
**13** 29:13 .
.
.

**< 2 >.**

**2** 1:43, 4:24, 16:7, 17:13, 17:25, 19:20, 20:13, 25:5, 25:8, 25:19, 26:14, 26:15, 28:11, 40:14, 40:16, 44:1, 44:8, 44:16, 45:4, 46:20 .
**20-1502** 3:4 .
**20004** 2:6 .
**20005** 2:15 .
**20036** 1:34 .
**2008** 8:21 .
**2012** 8:25 .
**2015** 7:22 .
**2016-710** 9:14 .
**2017** 9:2, 10:13, 13:23, 29:5 .
**2021** 24:4 .
**21209-3600** 2:23 .
**2500** 1:48 .
**26** 12:10, 12:24 .
**26(b** 12:16, 12:23 .
**26(b)(1** 7:19, 12:11, 18:11 .
**26(b)(2)(c)(i** 21:19 .
.
.

**< 3 >.**

**30(b)(6** 26:16, 26:19, 27:12, 27:20, 28:5, 28:9, 40:15, 44:17, 44:19, 45:4, 45:5, 45:11 .
**300** 1:42 .
**30309** 1:49 .
.
.

**< 4 >.**

**4** 18:5, 18:22, 19:3, 19:5,

19:20, 20:14, 20:16, 29:21, 31:7, 34:21, 36:7, 39:22, 40:16, 41:6, 41:11, 41:15, 44:9, 46:18 .
**404(b** 36:25 .
**45** 12:22, 12:24, 15:18 .
.
.

**< 5 >.**

**5** 19:20, 20:14, 20:16, 29:21, 31:13, 33:22, 33:24, 34:10, 36:6, 39:24, 40:11, 40:18, 44:13, 44:18, 44:20, 46:20 .
**506.1** 4:24 .
.
.

**< 6 >.**

**6** 15:20, 15:22 .
**6225** 2:22 .
**6560** 8:12, 8:16, 8:21, 9:22, 13:3, 13:5, 14:8, 14:11, 14:17, 15:11, 16:4, 23:13, 29:7, 30:8, 34:12, 35:2, 38:23, 40:7, 42:25 .
**6610** 9:19, 9:21, 10:14, 13:2, 13:4, 13:20, 13:23, 14:22, 15:12, 18:3, 19:9, 21:14, 28:21, 29:10, 29:18, 29:23, 30:13, 31:4, 31:6, 31:15, 34:12, 40:8, 43:1 .
.
.

**< 7 >.**

**71** 11:7, 11:16, 16:21, 16:23, 17:4, 23:20, 25:1 .
.
.

**< 8 >.**

**8:** 1:10 .
.
.

**< 9 >.**

**975** 2:5 .
**98** 5:21, 45:25, 46:5,

46:16 .
**98-1** 15:20, 15:22, 16:3, 19:13 .
**98-3** 16:1, 16:6, 17:11, 17:15, 18:4, 18:5, 19:1, 19:18, 19:22, 24:1, 24:2, 28:2, 28:14, 42:17 .
.
.

**< A >.**

**A.** 1:46 .
**abide** 24:15 .
**ability** 47:8 .
**able** 4:7, 5:12, 12:6, 21:11, 36:13 .
**above-entitled** 47:6 .
**above-market** 14:2 .
**absolutely** 39:14 .
**abundantly** 5:1, 18:11, 23:19 .
**access** 12:12 .
**accusations** 7:11 .
**acquired** 13:23 .
**acting** 8:16, 36:21 .
**action** 8:10, 8:24, 9:3, 9:16, 13:21 .
**activity** 14:14, 15:7, 15:10 .
**actual** 32:20 .
**Actually** 11:8, 11:19, 23:25, 25:11, 26:9 .
**Additionally** 14:2, 14:11 .
**address** 23:7, 26:7, 40:9 .
**addressed** 25:22, 29:20, 29:21 .
**adequately** 33:2, 45:9 .
**adjourned** 46:25 .
**Administration** 15:6 .
**admissible** 7:23, 12:17, 18:8, 18:13, 18:17 .
**admission** 34:11, 34:19, 44:22 .
**admissions** 31:19 .
**admonished** 29:11 .
**adopt** 17:21 .
**advance** 11:25 .
**advertised** 14:10 .
**affiliated** 27:16, 29:3,

37:10 .
**affirmation** 27:13 .
**affirmative** 9:7, 27:18, 35:8, 35:14, 35:16, 37:24, 39:5, 41:8, 41:9, 41:11, 41:16 .
**affirmatively** 26:17 .
**affirmed** 9:15 .
**ago** 4:13, 12:10, 21:5 .
**agree** 6:11, 39:13 .
**agreed** 10:20, 10:24, 25:9, 32:12 .
**agreement** 16:13, 24:7, 24:23 .
**agreements** 31:3, 42:13, 42:15 .
**ahead** 8:6, 24:17, 26:1, 26:12 .
**al** 1:11, 3:4 .
**Algon** 27:16 .
**alia** 24:11, 41:25 .
**allegations** 14:24 .
**allegedly** 19:16 .
**alleging** 14:25 .
**allow** 16:9, 43:12 .
**allowed** 4:25, 41:9, 41:12 .
**allowing** 6:4 .
**already** 19:14, 31:6, 32:17, 33:17, 40:13, 41:7, 42:4, 43:3, 44:9, 46:19 .
**alternative** 44:23 .
**Although** 33:13, 41:3 .
**amendments** 18:3, 31:3, 42:11 .
**America** 1:11, 1:38, 2:2, 3:4, 3:11, 3:18 .
**among** 36:18 .
**ample** 21:21 .
**analysis** 21:19 .
**Anne** 1:40, 3:13, 6:10 .
**answer** 30:8, 45:1 .
**answered** 42:22 .
**answering** 36:9 .
**Anthony** 2:20, 4:4 .
**anybody** 5:8 .
**apologize** 40:24 .
**appeal** 39:19, 40:17, 44:12 .
**appears** 11:10, 11:11 .

**applies** 4:24, 26:22, 26:25, 27:20 .
**apply** 27:24 .
**appreciate** 7:4, 7:6, 28:17, 33:15, 42:4, 46:10 .
**appropriate** 28:5 .
**approximately** 10:3 .
**aptly** 12:9 .
**areas** 21:11, 21:12 .
**argues** 13:8 .
**arguing** 13:18, 14:18, 29:8, 30:18, 35:17, 41:24 .
**argument** 18:19, 35:21, 41:21 .
**arguments** 13:13, 17:6, 27:25 .
**arm** 15:14 .
**Arnold** 2:3, 3:15, 3:16, 5:19, 11:3 .
**articulated** 28:1, 44:11 .
**asks** 23:11 .
**assemble** 4:10 .
**asserted** 28:17 .
**asserting** 16:22 .
**assertions** 28:24 .
**assets** 10:14, 14:14 .
**assigned** 9:2, 10:4 .
**assignment** 9:4, 9:5 .
**assist** 35:7 .
**Associates** 3:9, 4:11, 6:4, 6:23, 6:24, 9:11, 9:12, 9:17, 9:25, 10:1, 10:2, 10:5, 10:13, 10:18, 13:6, 13:20, 14:9, 14:10, 20:11, 23:2, 23:21, 27:18, 36:5 .
**assume** 28:15 .
**Atlanta** 1:49 .
**attachments** 6:17 .
**attacks** 7:16 .
**Attempts** 15:3 .
**attendant** 5:10, 42:15 .
**Attorney** 11:2, 35:10, 41:6, 41:10 .
**attorney-client** 19:2, 19:9, 28:16, 42:19 .
**attorneys** 7:17 .
**Audio** 2:30, 22:1, 47:6, 47:8, 47:9 .

**audio-recorded** 47:6 .
**authority** 14:7 .
**available** 40:15, 44:4, 44:18, 44:19, 45:1 .
**Avenue** 2:22 .
**avoid** 33:9 .
**avoiding** 29:4 .
**aware** 45:8 .
**away** 10:7, 22:10 .

.

**< B >** .
**back** 23:3, 24:1, 24:2, 24:3, 25:3, 28:13, 28:24, 31:1, 34:9 .
**background** 9:10, 9:11 .
**bad** 7:14 .
**badge** 15:11, 32:22 .
**badges** 14:18, 15:1, 32:19, 32:25, 33:1 .
**Baltimore** 2:23 .
**based** 6:25, 9:16, 13:15, 39:11, 41:14 .
**basically** 18:19, 19:3, 19:18, 28:1, 32:8, 46:15 .
**basis** 39:6 .
**bear** 12:20, 42:23 .
**bears** 12:20 .
**became** 8:19, 8:22, 8:25 .
**begin** 8:9 .
**beginning** 11:4, 28:15 .
**behalf** 3:8, 3:14, 3:16, 3:18, 6:7, 6:9, 6:11, 12:5, 28:17, 46:13 .
**believe** 4:12, 8:10, 13:22, 14:11, 20:3, 21:7, 25:20, 36:4, 41:1, 42:14 .
**best** 44:2, 47:8 .
**Bethesda** 8:12, 9:19 .
**big** 27:24, 29:11 .
**bit** 5:15, 7:13, 7:14, 9:11, 16:1, 22:15, 27:2, 36:11, 39:25, 41:21, 44:10 .
**blah** 19:8, 24:8 .
**boilerplate** 16:8, 16:9, 17:16, 19:2, 19:4, 19:10, 35:13 .

**Boston** 1:44 .
**bottom** 16:7, 18:5 .
**brainstorming** 44:23 .
**Braunholer** 11:11, 19:15 .
**briefed** 45:25, 46:2 .
**briefing** 44:9, 46:19 .
**broad** 12:11, 12:19, 31:21, 34:24, 39:8, 43:6 .
**broader** 30:18 .
**broadly** 12:15 .
**brought** 13:20, 29:2 .
**building** 10:15 .
**buildings** 9:22, 13:25, 21:16 .
**burden** 32:14, 33:3, 33:9 .
**burdensome** 31:21 .
**business** 15:12 .
**busy** 4:9, 5:24 .
**bye** 46:24 .

.

**< C >** .
**calculated** 18:7 .
**call** 4:18, 6:8, 6:24, 20:21, 22:9 .
**calls** 5:4 .
**Camalier** 8:13, 8:15, 8:22, 9:17, 11:13, 14:1, 14:3, 14:16, 15:14, 21:16, 25:16, 29:15, 29:16, 32:3, 33:5, 35:18, 37:5, 40:6 .
**candor** 5:24 .
**captured** 6:17 .
**care** 6:2, 6:5, 44:1, 44:8, 46:24 .
**Case** 3:3, 3:4, 4:8, 4:18, 7:20, 9:12, 9:14, 10:5, 10:11, 12:21, 14:6, 14:15, 18:15, 29:1, 29:6, 31:5, 32:2, 32:15, 33:8, 38:7, 39:15, 42:8, 45:8 .
**case.** 12:14 .
**cases** 38:12, 42:3 .
**categories** 12:25, 17:9, 19:24, 20:8, 21:7, 23:4, 25:1, 25:5, 25:8, 25:19,

26:8, 29:21, 31:1 .
**Category** 23:10, 41:11, 44:20 .
**caveats** 16:14 .
**certain** 10:20, 14:25, 17:9 .
**certainly** 4:22, 22:16 .
**certify** 47:4 .
**cetera** 16:13, 24:23 .
**challenge** 41:16 .
**challenges** 5:4 .
**chance** 13:14 .
**changed** 7:22 .
**characterizing** 32:21 .
**Chasanow** 38:8, 38:10, 38:12, 39:15 .
**chief** 11:12 .
**choose** 19:21 .
**Circuit** 9:16 .
**Civil** 1:9, 7:9, 7:19, 12:10, 18:10 .
**claim** 12:13, 29:2, 33:2, 33:10, 37:4, 41:13 .
**claiming** 20:9 .
**claims** 8:9, 9:4, 9:7 .
**clarification** 11:2 .
**clear** 5:1, 6:18, 18:11, 23:19, 24:21, 25:20, 33:21, 38:1, 41:17, 42:5, 45:3, 45:6 .
**clearly** 7:8 .
**clerk** 4:23 .
**client** 7:16, 8:19, 26:15, 28:18, 29:2, 42:18, 45:22, 46:13 .
**clients** 7:7 .
**CM/ECF** 4:18 .
**collateral** 8:18, 10:2 .
**comfortable** 5:18 .
**commenced** 8:24 .
**commercial** 9:23, 15:7, 15:10 .
**commit** 12:5 .
**common** 13:2, 19:8, 31:15, 31:20, 40:1 .
**communications** 13:4, 13:5, 23:11 .
**Company** 8:17, 9:13, 10:4, 10:8, 13:21, 37:10 .
**compared** 47:9 .

**compel** 5:22, 6:14, 10:17, 20:8, 21:10, 22:18, 46:16 .
**competing** 6:16, 10:14 .
**competition** 9:24, 13:24, 14:1, 14:17 .
**compromise** 32:12, 33:16, 46:10 .
**computer-aided** 2:31 .
**concerned** 27:25, 30:17 .
**concerning** 18:23, 23:12, 31:8, 31:14 .
**concise** 16:1 .
**conclude** 24:13 .
**concluded.** 47:1 .
**conduct** 14:25, 36:23, 38:3, 38:19, 43:8 .
**conducted** 12:3 .
**confer** 45:3 .
**conference** 4:25, 5:4, 5:11 .
**conferring** 21:9, 26:4 .
**confess** 18:24 .
**connection** 23:10 .
**consisted** 36:15 .
**consistent** 7:23, 19:17 .
**constitute** 32:5 .
**construed** 12:15 .
**contained** 6:1 .
**context** 32:17 .
**Continued** 2:1 .
**contrary** 13:8 .
**control** 8:22, 10:13, 13:2, 19:9, 31:15 .
**controlling** 36:20, 36:22 .
**controls** 30:6 .
**conveyance** 9:5, 29:2, 29:6, 31:10, 31:17, 31:24, 32:5, 33:4, 35:1, 37:20, 38:23, 39:1, 39:11, 42:24, 42:25 .
**conveyed** 8:19 .
**copy** 30:10, 31:5, 33:16, 41:2 .
**corollary** 17:6 .
**corporate** 13:3, 14:13,

18:24, 31:8, 34:24, 35:4, 36:4, 36:12, 36:14, 36:19, 37:22 .
**Corporation** 2:18, 4:4 .
**Correct** 18:21, 19:6, 19:12, 20:19, 34:14, 47:5 .
**correction** 41:5 .
**correspondence** 10:22 .
**Counsel** 3:5, 3:11, 3:21, 3:22, 4:2, 4:10, 6:6, 7:2, 10:20, 10:22, 10:25, 12:4, 12:6, 19:16, 27:8 .
**counterclaim** 9:8 .
**couple** 4:17, 5:17, 6:25, 20:18 .
**course** 18:15, 26:23, 34:23, 42:21, 43:21, 46:18 .
**courtroom** 4:19 .
**courts** 12:18 .
**create** 43:8 .
**CRR** 47:4 .
**cured** 10:9 .
**curious** 20:25, 21:3 .
**custodian** 11:11, 17:5, 42:10 .
**custody** 25:12 .
**cut** 5:9, 13:11 .
.
.
**< D >.**
**date** 11:18, 15:16, 16:19, 17:7, 35:10 .
**Dated** 47:11 .
**Davis** 1:46, 3:17, 5:19, 30:11, 31:5, 33:16, 41:2 .
**day** 47:11 .
**days** 4:13 .
**DC** 1:34, 2:6, 2:15 .
**deadline** 32:13, 44:5 .
**debt** 36:2 .
**decide** 31:24 .
**decided** 9:14, 37:11 .
**decision** 15:5, 30:14, 43:4 .
**declaration** 26:16, 26:18, 27:12, 27:19, 28:6, 28:9,

40:14, 44:4, 45:12 .
**declaratory** 9:8 .
**default** 10:9 .
**defaulted** 8:24, 10:5 .
**defaulting** 35:24 .
**defaults** 37:7, 37:8 .
**defend** 41:14 .
**Defendant** 1:38, 2:2, 2:9, 2:18, 3:11, 3:22, 4:2, 9:3 .
**Defendants** 1:13, 27:16, 29:8, 29:13 .
**defending** 14:23 .
**defense** 12:13, 32:5, 36:14, 37:19, 37:24, 38:25, 39:5, 39:11, 42:2 .
**defenses** 9:7, 35:8, 35:14, 35:16, 41:8, 41:9, 41:11, 41:16, 41:23, 42:24 .
**defies** 15:10 .
**define** 18:25, 19:21 .
**defined** 7:23, 28:19 .
**definition** 18:25 .
**definitively** 26:20 .
**Defrauded** 37:16 .
**demands** 15:1 .
**denied** 39:23, 40:17, 46:17, 46:18, 46:20 .
**depo** 28:9 .
**depose** 26:19 .
**deposition** 27:12, 28:5, 45:5 .
**deputy** 4:19 .
**designed** 33:8 .
**despite** 13:7 .
**determine** 36:5, 39:10 .
**devolve** 7:10 .
**diagram** 20:22 .
**different** 6:16, 19:22, 20:24, 21:5, 29:25, 30:1, 30:3, 30:9, 30:14, 36:20, 42:23, 43:2 .
**dig** 14:15, 43:8 .
**direct** 13:24, 14:1, 14:17 .
**discoverable** 12:18, 18:13 .
**Discovery** 1:23, 4:15, 4:16, 7:3, 7:18, 11:21, 12:11, 12:15, 12:17, 12:19,

12:22, 12:23, 14:6, 15:8,
18:8, 18:12, 18:16,
21:20, 29:9, 30:19,
31:22, 32:9, 32:13, 39:4,
39:8, 40:8, 43:6, 44:5,
45:1, 46:9 .
**discuss** 40:12 .
**dismiss** 32:17, 33:2 .
**disproportion** 18:18 .
**disproportionate** 19:3,
19:10, 31:4, 31:21 .
**DISPUTE** 1:23, 11:22,
21:11, 21:12, 40:6,
40:9 .
**disputes** 4:16, 7:3 .
**District** 1:1, 1:2, 38:7 .
**DIVISION** 1:3 .
**DLA** 2:21 .
**docket** 9:14, 43:13 .
**document** 11:19, 15:15,
24:7, 42:8 .
**documentation** 37:22 .
**documents.** 22:23 .
**doing** 15:9, 34:8, 34:20,
36:8, 40:15 .
**dollars** 37:15 .
**done** 4:12, 5:5, 8:6, 15:16,
24:16, 29:5 .
**door** 15:12 .
**down** 5:9, 33:23,
33:25 .
**draft** 40:2, 40:4 .
**Drive** 2:9, 3:22, 3:25, 8:12,
9:3, 9:19, 13:24, 15:3,
15:4, 15:5, 15:11, 23:13,
28:21 .
**due** 43:18, 43:20 .
**During** 10:24, 12:3,
20:13 .

.

.

**< E >.**
**e.** 36:14 .
**easier** 6:8, 6:12 .
**ECF** 4:13, 5:21, 5:23, 6:3,
15:20, 15:21, 16:1, 16:6,
16:7, 17:11, 19:1, 19:13,
19:22, 22:17, 28:2,
45:25, 46:5, 46:15 .
**Edward** 2:3, 3:15 .

**efficient** 22:15, 23:7,
33:14, 45:1, 45:13,
46:11 .
**effort** 44:2 .
**efforts** 15:5 .
**eight-month** 32:11 .
**either** 19:5, 34:4, 34:10,
44:17 .
**elaborates** 43:14 .
**elegant** 29:20 .
**emails** 17:14 .
**enable** 5:11 .
**encompassed** 21:7 .
**encompasses** 12:20 .
**end** 34:20 .
**ends** 5:12 .
**engage** 7:9 .
**engaged** 35:19 .
**enough** 45:17 .
**enter** 31:18 .
**entered** 8:14, 31:3,
42:12 .
**entering** 35:20, 35:21 .
**entire** 10:7 .
**entities** 3:20, 3:21, 14:15,
15:15, 20:22, 27:13,
27:15, 29:3, 29:14,
35:18, 35:21, 36:15,
36:16, 36:18, 36:19,
36:20, 36:21, 36:22,
37:5, 37:23, 43:9 .
**entitled** 15:8, 28:20, 28:22,
29:9, 36:4, 39:3, 39:7,
41:22, 42:14 .
**entity** 8:14, 8:16, 9:18,
10:6, 11:14, 14:3, 20:24,
23:1, 25:15, 37:7,
40:6 .
**equitable** 38:2, 38:18 .
**equity** 41:13 .
**Esquire** 1:31, 1:40, 1:46,
2:3, 2:11, 2:20 .
**essentially** 29:14 .
**establish** 36:13, 36:18 .
**establishing** 23:12 .
**estate** 10:13 .
**estoppel** 16:12, 17:18,
24:7, 24:23 .
**et** 1:11, 3:4, 16:13,
24:23 .

**ethical** 7:7 .
**event** 19:1, 29:18,
37:19 .
**eventually** 35:23 .
**everybody** 4:14, 5:1, 7:6,
18:9, 27:24, 28:8 .
**everyone** 5:9, 46:23 .
**everything** 44:14 .
**Evidence** 7:24, 12:17,
15:1, 18:8, 18:13, 18:17,
32:19, 32:21, 33:4,
36:25 .
**evidencing** 31:8,
31:14 .
**Exactly** 45:2 .
**example** 32:22 .
**execution** 16:12, 24:6 .
**exhibited** 38:3 .
**expansive** 7:25 .
**expansively** 28:20 .
**expeditiously** 4:7,
44:3 .
**expense** 32:14, 33:9 .
**explanation** 25:13 .
**explore** 12:24 .
**exposure** 37:15 .
**express** 28:25 .
**extension** 32:12,
32:13 .
**extent** 39:3 .
**extraordinarily** 4:9 .
**extremely** 36:1 .

.

.

**< F >.**
**fact** 9:9, 9:24, 11:17, 25:1,
25:9, 42:7, 43:2 .
**facts** 5:25, 6:15, 6:16, 6:21,
9:17, 27:25, 28:7, 28:10,
41:24 .
**factual** 12:11 .
**failed** 10:6 .
**familiar** 38:15, 39:14,
46:6 .
**family** 8:13, 8:15, 8:22,
9:17, 11:13, 12:7, 14:1,
14:3, 14:16, 15:9, 15:14,
25:16, 29:15, 29:16,
32:3, 33:6, 35:18,
40:6 .

**fancy** 7:4 .
**far** 17:25, 30:18 .
**fashion** 29:20 .
**favor** 30:2 .
**Federal** 7:18, 7:24, 12:10,
12:18, 18:10, 36:25,
39:8 .
**feel** 6:15, 36:8, 40:18,
41:10, 44:12 .
**few** 12:9, 42:2 .
**fighting** 7:11 .
**figure** 5:12 .
**file** 4:11, 5:25, 6:4 .
**filed** 5:22, 6:14, 23:19,
30:20, 32:17 .
**filing** 11:25 .
**Finally** 14:23, 15:13 .
**find** 9:9, 20:22 .
**finding** 8:23 .
**fine** 18:6, 34:8 .
**finer** 20:12 .
**First** 4:17, 5:17, 6:3, 6:6,
6:13, 7:3, 7:4, 11:15,
13:8, 16:3, 19:24, 22:15,
23:16, 24:4, 27:23,
32:23, 33:25, 34:23 .
**Five** 19:7, 21:4, 21:7, 23:3,
45:6 .
**flexible** 45:18 .
**flowery** 36:8 .
**folks** 4:6, 4:10, 4:15, 43:25,
46:12 .
**following** 46:22 .
**foreclose** 37:11 .
**foreclosed** 10:9 .
**foreclosing** 36:1 .
**foreclosure** 8:24, 9:1 .
**foregoing** 47:5 .
**Forgive** 24:18, 25:7,
30:23 .
**formed** 8:13, 29:4 .
**forward** 41:12 .
**Four** 18:22 .
**Fourth** 9:15 .
**frankly** 4:6, 21:1, 21:22,
33:14, 45:13 .
**fraud** 9:8, 14:19, 15:1,
15:11, 32:19, 32:20,
32:23, 32:25, 33:1, 33:3,
35:17, 37:4, 37:9, 37:20,

39:4, 39:5, 39:12, 41:12,
41:14 .
**frauds** 36:23 .
**fraudulent** 9:4, 29:2, 29:6,
31:10, 31:17, 31:24,
32:5, 33:4, 35:1, 35:19,
37:20, 38:19, 39:1,
39:11, 42:24, 42:25,
43:8 .
**free** 40:18, 44:12 .
**frivolous** 25:20 .
**front** 7:24, 32:4, 45:25,
46:5 .
**FTR** 47:7 .
**full** 37:14 .
**fully** 45:9 .
**fulsome** 45:17 .
**function** 4:20 .
.

**< G >.**
**G.** 47:4, 47:18 .
**GA** 1:49 .
**General** 15:6, 15:7 .
**generated** 4:21 .
**gets** 7:21 .
**getting** 35:4, 46:19 .
**GINA** 1:24 .
**give** 4:14, 9:11, 13:13,
22:16, 28:25, 31:5,
33:16, 35:14, 41:2, 43:3,
43:17, 43:19 .
**giving** 18:20, 19:18, 19:19,
19:20 .
**glad** 41:19 .
**gladiators** 7:5 .
**Gold** 47:7 .
**gotten** 17:1 .
**grand** 33:5, 33:6 .
**grant** 6:3 .
**granted** 12:12, 46:16 .
**Great** 6:13, 36:8 .
**Greenbelt** 1:17 .
**Grimm** 9:15, 10:11 .
**guess** 6:6, 6:15, 17:18,
34:22 .
**guys** 37:20 .
.
.

**< H >.**

**hands** 9:8, 35:17, 36:14,
37:4, 38:1, 38:2, 39:4,
39:12, 41:12 .
**happened** 11:4, 30:5 .
**happening** 32:9 .
**happens** 38:24 .
**Happy** 26:21, 27:11, 30:10,
31:5, 31:20 .
**hard** 5:8, 24:18 .
**harmony** 22:24 .
**head** 36:24 .
**hear** 8:3, 13:12, 13:15,
41:4 .
**heard** 4:15, 13:14, 16:25,
22:16, 23:16, 28:23,
29:1, 29:24, 31:11, 32:1,
32:16, 32:20, 37:3, 37:5,
40:11, 41:20, 41:21,
42:22 .
**HEARING** 1:23, 7:1 .
**help** 35:5, 35:13, 43:7 .
**helpful** 8:10, 23:25, 36:13,
36:16, 36:17, 36:21,
37:23, 41:19 .
**hereby** 47:4 .
**high** 35:22, 36:1 .
**high-level** 8:9 .
**hint** 7:13 .
**history** 10:16 .
**hold** 23:25 .
**holder** 8:20 .
**Honor** 3:24, 4:3, 6:10, 8:8,
8:11, 11:2, 12:9, 12:15,
15:24, 17:23, 18:21,
19:6, 19:12, 20:15,
20:20, 22:4, 22:7, 22:19,
34:17, 35:3, 37:21,
40:22, 42:9, 42:21,
46:14 .
**HONORABLE** 1:24 .
**hopeful** 28:25 .
**housekeeping** 6:2 .
**hyperbolic** 45:7 .
.
.

**< I >.**
**iceberg** 30:23 .
**identical** 14:12, 14:13 .
**identified** 17:10 .
**identify** 3:5, 3:12, 3:23,

4:2, 5:14 .
**II** 1:5, 8:13, 8:15, 8:23,
21:19, 24:25, 25:12,
25:15, 25:22, 26:2,
29:2 .
**illegal** 38:19 .
**import** 15:17 .
**important** 7:9, 9:21, 22:8,
22:11 .
**importantly** 33:18 .
**inadvertent** 11:18,
20:10 .
**inadvertently** 23:21,
25:2 .
**includes** 13:1, 15:1 .
**including** 9:7, 10:14, 12:8,
13:5, 17:14, 27:14,
27:15, 29:9 .
**increase** 32:14, 33:9 .
**indiscernible** 10:8, 14:24,
37:18 .
**inequitable** 38:19 .
**infer** 24:20, 28:3 .
**influence** 14:4 .
**Information** 11:9, 12:16,
15:2, 18:12, 35:7,
35:13 .
**informative** 8:11 .
**informed** 11:15 .
**initial** 7:1, 20:9 .
**initially** 32:11 .
**insisting** 25:4 .
**instance** 29:10, 32:23 .
**instant** 8:12, 9:6, 11:16,
11:25 .
**Insurance** 8:17, 9:13, 10:4,
10:8, 13:21 .
**intent** 11:1 .
**inter** 24:11, 41:25 .
**inter-related** 42:13 .
**interactions** 7:10 .
**interconnected** 42:13 .
**interest** 8:18, 8:25, 9:2,
10:2, 10:10, 10:12,
22:22, 22:24, 22:25,
25:17, 27:9, 40:7,
40:8 .
**interesting** 32:9 .
**interests** 25:16 .
**interruption.** 22:1 .

**intervention** 20:2 .
**Investors** 1:10, 1:38, 2:2,
3:3, 3:11, 3:14, 3:16,
3:18 .
**involved** 43:9 .
**involving** 30:1, 38:25 .
**ipad** 4:18 .
**irritating** 5:16 .
**issue** 8:11, 12:20, 12:21,
13:21, 19:15, 22:22,
23:12, 35:5, 37:7, 38:20,
38:23, 39:1, 39:8, 39:9,
40:7, 40:9, 42:1, 42:23,
43:10, 46:8 .
**issued** 27:5, 29:13,
39:15 .
**issues** 25:25, 26:5, 29:5,
31:23, 32:3, 32:15 .
**Item** 16:3, 43:12 .
**IWA** 6:8, 6:9, 6:11, 6:12,
8:19, 8:24, 9:1, 9:2, 9:6,
10:17, 10:22, 11:15,
11:21, 12:1, 12:6, 12:24,
14:24, 15:4, 15:8, 29:3,
30:6, 31:10, 31:17,
31:25, 32:17, 37:9 .
.
.

**< J >.**
**jarring** 5:16 .
**join** 15:5, 22:3, 22:9 .
**joined** 11:3 .
**Judge** 3:2, 3:7, 3:13, 3:15,
9:15, 10:11, 22:2, 23:3,
24:14, 24:19, 25:7,
26:21, 27:5, 28:23,
31:23, 32:1, 32:16,
33:21, 37:3, 37:25, 38:8,
38:10, 38:12, 39:10,
39:15, 40:17, 41:8,
44:12 .
**judgment** 9:9, 9:15 .
.
.

**< K >.**
**keep** 9:20 .
**kind** 6:18, 6:21, 13:14,
18:18, 19:3, 36:21,
39:25, 40:20, 44:2 .
**knowing** 36:12, 36:14,

36:15, 37:14 .
**knows** 18:9 .
**Kropf** 2:11, 2:12, 3:24,
  4:1 .

.

**< L >.**
**L.** 1:24, 2:20 .
**lack** 15:7, 15:10 .
**land** 36:25 .
**landlord** 8:16, 10:1 .
**Lane** 1:43 .
**language** 36:8 .
**last** 18:11, 19:14,
  26:24 .
**Lastly** 5:14 .
**later** 34:20, 43:20,
  46:24 .
**law** 38:1, 45:8 .
**lawsuit** 22:22, 27:14,
  29:17, 29:19, 29:25,
  30:1, 30:12, 37:7, 38:7,
  39:9, 40:7, 43:9 .
**lead** 18:8, 18:16, 33:20,
  34:15 .
**learned** 14:6 .
**learning** 24:18 .
**leasehold** 8:18, 8:25, 10:2,
  10:10, 10:12 .
**leases** 18:2, 28:13, 28:21,
  29:9, 31:2, 31:3, 35:20,
  35:22, 36:1, 38:24,
  42:11, 42:14 .
**leasing** 10:14 .
**least** 32:8 .
**leave** 5:25, 22:9,
  40:13 .
**leaves** 34:21, 40:20,
  41:1 .
**left** 11:3 .
**legally** 22:25 .
**lenders** 35:25, 36:23,
  37:9 .
**length** 43:14, 43:22 .
**lengthy** 26:10 .
**less** 6:8, 27:2 .
**lessee** 30:1, 30:2 .
**lessor** 37:18 .
**letter** 11:22, 11:23,
  43:13 .

**letters** 17:14 .
**letting** 7:16, 42:4 .
**Life** 8:17, 9:13, 10:4, 10:8,
  13:21 .
**likely** 18:16 .
**Limited** 8:13, 8:23,
  13:1 .
**line** 3:22, 30:11 .
**listening** 5:18, 8:7 .
**literally** 28:4, 28:6, 28:9,
  45:6, 45:7 .
**litigant** 38:18 .
**litigation** 8:12, 9:6, 13:20,
  18:7, 23:13, 33:17,
  43:16 .
**litigators** 7:4 .
**little** 7:13, 7:14, 9:11,
  36:11, 39:25 .
**LLC** 1:5, 1:11, 2:9, 3:3, 3:4,
  3:9, 9:3, 9:13, 11:12,
  11:13, 20:19 .
**LLP** 1:41, 1:47, 2:4,
  2:21 .
**loan** 8:17, 8:18, 8:24, 10:3,
  10:7, 35:25, 37:8,
  37:11 .
**loans** 35:19, 35:23,
  38:25 .
**Local** 4:24, 11:23, 12:2,
  46:6 .
**located** 9:18, 23:13,
  31:4 .
**logic** 15:10 .
**logistical** 4:17 .
**Long** 6:24, 27:16, 29:1 .
**long-term** 29:4, 37:13 .
**longer** 32:19 .
**look** 7:19, 18:25, 20:17,
  21:24, 22:12, 28:14,
  34:3, 40:2, 42:2 .
**looking** 6:22, 15:20, 22:9,
  29:11, 46:9 .
**looks** 16:6 .
**lose** 22:3 .
**lost** 36:11 .
**lot** 28:24, 36:8 .

.

**< M >.**
**M.** 1:31 .

**MA** 1:44 .
**major** 21:12 .
**management** 4:19, 14:12,
  15:14 .
**manages** 25:15 .
**mandate** 38:2 .
**manner** 32:3 .
**market** 14:4, 14:8 .
**marketing** 14:16 .
**marred** 38:18 .
**Marriott** 15:6 .
**Maryland** 1:2, 1:17, 38:1,
  38:7 .
**masters** 36:22 .
**material** 14:23 .
**Materials** 16:15, 18:6 .
**matter** 6:2, 12:12, 12:20,
  38:17, 46:17, 47:6 .
**matters** 46:1, 46:2 .
**Maxtena** 38:7, 38:12,
  39:15, 42:2 .
**MD** 2:23 .
**Meagher** 2:20, 4:3, 4:4 .
**mean** 15:21, 22:25, 45:6,
  45:10 .
**means** 11:18 .
**meet** 45:3 .
**meet-and-confer** 10:25,
  11:22, 11:24, 12:1, 12:3,
  12:4, 23:18 .
**meet-and-confers** 19:23,
  20:1, 20:13 .
**meeting** 21:8, 26:3 .
**memorandum** 17:14 .
**merged** 10:12 .
**Messitte** 31:23, 32:16,
  39:10, 40:18, 41:8,
  44:12 .
**million** 10:3, 36:3 .
**millions** 36:2, 37:14 .
**mind** 39:5 .
**mindful** 7:15, 29:10 .
**minute** 8:4, 13:16,
  34:9 .
**minutes** 45:6 .
**misspoke** 23:18 .
**Mitchell** 47:4, 47:18 .
**Mm-hmm** 25:14, 25:18,
  27:10, 30:4, 30:16,
  30:25, 32:6, 38:21 .

**moment** 5:6, 5:13, 20:23,
  21:5, 24:16 .
**moments** 12:9 .
**Monumental** 8:17 .
**morning** 3:2, 3:7, 3:10,
  3:13, 3:15, 3:17, 3:19,
  3:24, 4:1, 4:3, 4:5,
  6:10 .
**Moseley** 2:12 .
**motion** 5:21, 5:25, 6:14,
  10:17, 11:16, 11:25,
  20:8, 21:9, 22:18, 23:17,
  23:19, 25:20, 30:18,
  41:16, 44:15, 46:16 .
**motions** 6:17, 32:17,
  33:2 .
**mouthful** 6:8, 6:9,
  6:12 .
**moved** 41:7 .
**multihour** 45:5, 45:11 .
**multiplication** 32:8 .
**myself** 7:5 .

.

**< N >.**
**name** 5:15 .
**named** 24:12 .
**narrow** 12:24, 21:11,
  32:14 .
**NE** 1:48 .
**nearly** 10:7 .
**necessarily** 21:1 .
**need** 5:14, 5:16, 6:15, 7:12,
  7:22, 8:3, 12:17, 18:12,
  25:24, 32:25, 34:22,
  40:8, 41:24, 42:9, 42:10,
  46:3 .
**needs** 7:6, 7:20, 12:14,
  18:14, 29:12, 30:22,
  31:5, 33:8 .
**negotiation** 16:12,
  24:6 .
**neighboring** 13:25,
  15:9 .
**new** 8:23 .
**Next** 5:3, 7:18, 15:12,
  16:18 .
**Nobody** 45:25 .
**nomenclature** 17:22 .
**None** 11:7, 25:10, 32:4 .

**nonparties** 26:22, 27:1, 27:15, 27:21 .
**nonparty** 3:9, 4:11, 27:6, 27:17 .
**nonprivileged** 12:12, 16:13, 17:17, 18:14, 24:5, 24:7 .
**nor** 39:6 .
**Nos.** 45:4 .
**Notably** 14:22 .
**note** 8:20, 9:21 .
**noted** 12:9, 12:15 .
**notes** 34:7 .
**Nothing** 17:6, 18:20, 19:4, 25:10, 26:15, 45:21, 45:23, 46:23 .
**notion** 37:5 .
**notwithstanding** 25:9 .
**nuanced** 41:22 .
**Number** 4:23, 4:24, 9:6, 14:24, 42:13 .
**numbers** 15:21, 15:22 .
**NW** 1:33, 2:5, 2:13 .
.
.
**< O >.**
**object** 24:4 .
**objected** 16:8, 28:14 .
**objection** 42:16 .
**objections** 10:19, 13:8, 16:8, 16:9, 16:10, 24:20 .
**obligation** 21:2 .
**obligations** 15:18, 29:5, 37:12 .
**obtain** 12:6 .
**obtained** 21:20 .
**Obviously** 20:2, 28:15, 40:12 .
**occurred** 43:4 .
**offer** 45:19 .
**office** 4:23, 9:22, 13:25, 14:17, 21:17 .
**officer** 11:12 .
**Okay** 6:13, 13:11, 17:15, 18:6, 21:15, 21:24, 22:8, 22:14, 24:16, 25:6, 25:24, 26:6, 29:22, 31:12, 39:21 .
**old** 18:9, 18:17 .

**omnibus** 20:7 .
**One** 4:10, 5:3, 6:2, 6:14, 6:20, 7:5, 13:18, 14:18, 17:4, 17:18, 18:4, 21:4, 21:12, 21:24, 22:12, 24:20, 28:19, 29:19, 38:9, 38:12, 39:16, 39:25, 41:5, 45:15 .
**opaque** 27:2 .
**open** 43:6 .
**operating** 11:12 .
**opportunity** 4:14, 21:21, 22:16, 28:25 .
**opposition** 5:22, 11:16, 22:17, 23:17 .
**option** 44:18 .
**opts** 45:11 .
**order** 32:10, 42:9 .
**otherwise** 16:21 .
**ourselves** 31:21 .
**outstanding** 26:5 .
**overly** 31:21 .
**overview** 8:9 .
**owing** 10:7 .
**own** 14:4, 30:8 .
**owner** 8:20, 8:25, 9:18 .
**ownership** 13:2, 19:8, 31:15, 31:20, 34:12, 40:1 .
.
.
**< P >.**
**page** 15:20, 15:21, 15:22, 16:3, 16:7, 17:11, 18:5, 18:25, 19:14, 22:20 .
**pages** 43:14, 43:17, 43:22 .
**paid** 9:1 .
**papers** 7:14, 13:15 .
**paragraph** 19:14, 22:21 .
**parent** 36:21 .
**park** 9:22, 13:25, 14:17, 21:17 .
**part** 16:21, 16:25, 37:8, 43:13, 46:16, 46:17 .
**particular** 38:5, 38:17, 43:15, 43:16, 45:16 .
**particularly** 7:8, 8:2 .
**parties** 4:7, 8:9, 9:12,

12:11, 12:12, 20:3, 26:3, 26:22, 27:1, 27:21, 38:25, 43:10 .
**Partnership** 8:13, 8:23 .
**party** 12:13, 15:17, 29:16, 38:4, 38:6 .
**Patricia** 47:4, 47:18 .
**pattern** 36:18, 37:9, 43:8 .
**pause** 5:6, 5:9, 24:16 .
**pay** 10:6 .
**paying** 14:2 .
**payments** 37:13, 37:16 .
**Peachtree** 1:48 .
**pending** 9:13 .
**people** 5:4, 7:9, 7:15, 22:9, 22:11, 34:7, 46:9 .
**percolating** 46:8 .
**performing** 4:20 .
**permit** 12:24 .
**permitted** 12:11, 12:23 .
**person** 7:21, 45:9 .
**pertaining** 24:22 .
**pertains** 31:9, 31:16 .
**phenomenon** 5:10 .
**phone** 4:7, 5:11 .
**picture** 27:24, 29:11 .
**Pillsbury** 1:32, 11:3, 11:6 .
**Piper** 2:21 .
**Pittman** 1:32 .
**PJM** 3:4 .
**Plaintiff** 1:7, 1:29, 3:5, 3:8, 8:15, 9:1, 9:4, 13:6, 13:19, 14:7, 14:13, 14:18, 14:25, 15:2, 15:5, 24:22, 29:25, 33:9, 37:17, 38:5, 41:7, 41:13 .
**plaintiffs** 33:3 .
**plausible** 37:19 .
**Plaza** 1:5, 3:3, 8:15 .
**Please** 3:5, 3:11, 3:23, 4:2, 15:23, 22:18, 33:20, 34:16, 40:18, 44:12, 46:7 .
**pled** 39:7 .

**PLLC** 2:12 .
**point** 20:13, 24:19, 33:14, 34:22, 35:2 .
**pointed** 42:17 .
**Porter** 11:3 .
**position** 6:20, 23:1, 26:14, 41:20 .
**possession** 12:25 .
**possible** 14:12, 44:3 .
**potential** 14:10 .
**potentially** 21:22 .
**practical** 46:17 .
**practice** 36:18, 37:9 .
**precise** 45:16 .
**precisely** 38:14 .
**precision** 43:15 .
**predecessor** 10:20, 19:16 .
**prefer** 40:4 .
**preliminary** 8:5 .
**prepare** 20:7, 45:8 .
**preparing** 21:9 .
**presentation** 32:1 .
**previously** 13:19 .
**principal** 10:7 .
**prior** 9:12, 33:17 .
**privilege** 18:6, 19:2, 19:10, 28:16, 42:19 .
**privileged** 7:19, 16:11 .
**problematic** 40:5 .
**procedural** 10:16 .
**Procedure** 7:19, 12:10 .
**Procedures** 18:10 .
**proceed** 41:9 .
**Proceedings** 1:22, 2:30, 47:1, 47:6 .
**process** 21:8 .
**produce** 10:20, 10:24, 11:1, 15:18, 16:11, 16:15, 17:17, 19:24, 21:2, 21:4, 21:6, 21:13, 24:5, 25:10 .
**produced** 2:31, 11:6, 11:8, 11:17, 11:19, 16:23, 21:4, 23:20, 23:21, 24:24, 25:2, 25:3, 25:11, 25:23 .
**product** 28:17, 42:19 .
**production** 11:18, 12:5, 15:16, 19:25, 20:6, 20:9,

20:10 .
**promise** 20:15 .
**promised** 19:16, 19:21, 19:23, 20:13 .
**properly** 25:22, 39:7 .
**Properties** 14:16, 15:14, 20:19, 21:3, 31:22, 32:22, 33:5, 36:2, 38:24, 43:7 .
**proportional** 7:20, 12:14, 18:14 .
**proportionality** 39:2 .
**proportionate** 33:7 .
**proposed** 32:10 .
**proposing** 16:15 .
**propounded** 46:21 .
**proprietary** 15:2 .
**protected** 42:20 .
**protective** 42:9 .
**prove** 33:3 .
**provide** 15:2, 15:3, 27:11, 30:10, 35:11 .
**proving** 37:24 .
**public** 43:5, 43:13 .
**Pull** 15:20, 15:22, 16:1, 22:17 .
**puppet** 36:22 .
**purpose** 8:14, 8:16, 10:6, 14:3, 14:15, 15:15, 29:4, 35:18, 36:20, 36:22 .
**purposes** 3:20, 9:18, 12:15 .
**pursuant** 11:22, 12:1 .
**pursue** 15:5, 33:10 .
**put** 20:12, 41:19 .
 .

**< Q >** .
**Question** 16:14, 16:18, 16:24, 17:1, 18:19, 20:25, 22:20, 35:12, 36:9, 37:21, 42:17, 42:22, 45:1 .
**questions** 6:25, 17:18, 22:14, 26:14 .
**quite** 7:7 .
**quote** 12:12, 38:6, 44:6 .
 .
 .

**< R >** .
**raise** 41:22, 42:2 .
**range** 29:14 .
**rate** 14:4 .
**rates** 14:10 .
**Rather** 8:22, 38:6, 38:11, 38:17 .
**reach** 44:10 .
**reaching** 39:16 .
**read** 5:21, 5:24, 5:25, 16:6, 28:2 .
**reader** 24:10, 28:3 .
**ready** 41:4 .
**Really** 3:19, 4:9, 6:21, 7:8, 7:11, 8:1, 34:21, 36:8, 36:9, 39:14, 39:17, 40:19, 44:10, 45:7 .
**reason** 37:25 .
**reasonable** 24:10, 28:3, 46:10 .
**reasonably** 18:7, 33:7 .
**reasons** 4:9 .
**Rebecca** 1:46, 3:17 .
**receive** 20:7 .
**received** 16:19, 16:20, 17:15, 17:19, 18:20, 19:11 .
**recently** 32:18 .
**recitation** 26:10, 29:1, 29:15 .
**recognize** 12:18 .
**record** 41:20, 42:5, 42:10, 43:5 .
**recorded** 2:30, 47:7 .
**recording** 2:30, 4:17, 4:22, 4:25, 47:8, 47:9 .
**refer** 9:20, 15:21 .
**reference** 11:10, 16:20, 18:23 .
**referred** 9:6 .
**referring** 31:8, 31:14, 33:21 .
**reflecting** 37:22 .
**refusal** 15:3 .
**refused** 35:10 .
**regarding** 20:8, 31:8, 31:15 .
**Regardless** 31:18, 32:25 .
**regards** 8:11, 21:10 .

**reiterated** 11:1 .
**related** 13:1, 13:5, 16:4, 17:17, 21:14, 23:12, 24:6, 28:21, 31:2, 34:24, 35:1, 35:21, 36:18, 42:11, 42:23 .
**relatedly** 17:3 .
**relating** 16:11, 18:23, 19:8, 31:7, 31:14 .
**release** 15:17, 24:7 .
**Relevance** 7:23, 7:25, 12:14, 12:19, 18:15, 28:19, 29:23, 30:13, 32:21, 39:16, 43:1, 43:15 .
**relevancy** 12:19 .
**relevant** 3:20, 7:20, 8:4, 12:13, 13:7, 13:9, 13:19, 13:22, 14:12, 14:14, 21:1, 21:19, 21:23, 29:19, 33:1, 33:7, 34:25, 41:25, 42:9 .
**relief** 38:3, 38:18 .
**rely** 32:25 .
**relying** 32:19 .
**remaining** 26:8 .
**remark** 26:25 .
**remarks** 8:5 .
**Remember** 13:12, 24:15 .
**rent** 9:1, 14:2, 14:4, 14:10, 29:5, 35:23, 36:1, 37:13 .
**reply** 4:12, 5:23 .
**reporter** 5:11 .
**represent** 7:7, 7:16 .
**representation** 27:18 .
**representations** 27:13, 27:15 .
**represented** 27:8, 30:12 .
**representing** 6:23 .
**Request** 4:22, 12:2, 16:16, 23:11, 24:4, 31:18, 34:11, 34:18, 42:18, 44:22 .
**requested** 11:9, 11:22, 12:1, 12:25 .
**requesting** 10:23, 11:24 .

**required** 27:19 .
**resolution** 30:6 .
**resolve** 41:1, 43:20, 45:19, 46:3 .
**resolved** 30:2 .
**resolves** 44:14 .
**respect** 9:10, 10:16, 12:8, 39:22, 40:10, 40:16, 41:6, 42:7, 43:12, 44:16, 44:18, 45:23, 46:18 .
**respond** 11:23, 34:10, 37:2, 43:19 .
**responded** 12:2 .
**response** 4:11, 10:21, 10:24, 11:7, 11:19, 16:19, 17:8, 17:15, 18:3, 18:4, 18:19, 19:1, 19:9, 24:3, 25:2, 26:15, 28:6, 43:21 .
**responses** 7:1, 10:19, 24:20 .
**responsive** 11:8, 16:16, 17:5, 17:6, 19:24, 20:16, 22:23, 23:2, 23:15, 23:22, 24:2, 24:11, 25:4, 25:8, 25:21, 27:21, 28:4, 42:18, 45:10 .
**review** 24:19 .
**RFA** 34:20, 44:24 .
**rights** 14:7 .
**RMR** 47:4 .
**Robert** 11:11 .
**Rock** 1:5, 2:9, 3:3, 3:22, 3:25, 8:12, 8:13, 8:15, 8:23, 9:3, 11:12, 12:8, 13:24, 15:2, 15:4, 15:11, 15:13, 20:18, 20:22, 21:3, 21:7, 21:9, 21:12, 23:13 .
**route** 45:4, 45:12 .
**RSD** 29:3, 29:4, 30:7, 31:11, 31:18, 31:25, 32:18 .
**RSP** 20:21, 20:23, 20:25, 21:3, 21:22, 24:25, 25:12, 25:15, 25:22, 26:2, 29:2, 46:7 .
**Rule** 4:24, 5:2, 7:18, 7:22, 7:24, 12:10, 12:16, 12:22, 12:24, 15:18,

18:9, 24:15, 36:25 .
**ruled** 10:11, 39:19, 40:13, 42:4, 44:9 .
**rules** 4:25, 7:7, 11:23, 12:2, 12:19, 34:5, 39:8, 46:7 .
**ruling** 28:11, 44:1 .

.

**< S >.**
**saddled** 36:2 .
**sanction** 32:8 .
**sanctions** 5:2 .
**Sara** 2:11, 3:24 .
**satisfy** 41:3 .
**saw** 25:12, 30:20 .
**saying** 17:3, 17:11, 19:3, 19:15, 19:18, 19:21, 24:1, 27:11, 34:13, 37:1, 38:5, 41:22, 41:23, 42:1, 45:12 .
**says** 17:15, 20:23, 26:17, 26:20, 29:14 .
**scheduling** 32:10 .
**scheme** 33:5, 33:6, 35:19 .
**scope** 12:16, 12:18, 12:22, 12:23, 18:12, 39:8 .
**screen** 23:6 .
**Seaport** 1:43 .
**search** 45:9 .
**Second** 13:22, 18:4, 22:21 .
**Seeing** 19:18, 39:16, 46:23 .
**seek** 8:4, 43:16 .
**seeking** 12:7, 25:22, 30:19, 30:24, 38:2, 41:13, 41:15 .
**seeks** 9:5, 38:18 .
**seems** 29:15, 44:18 .
**seen** 7:14 .
**self-limiting** 17:9, 17:21 .
**sense** 45:2 .
**sent** 10:22, 11:21, 11:24 .
**sentence** 18:11 .
**separate** 9:20, 13:9, 20:24 .

**seriatim** 15:25 .
**served** 10:17, 10:18, 20:18, 20:24 .
**Services** 15:6 .
**Seventeenth** 1:33 .
**several** 19:19 .
**Seyfarth** 1:41, 1:47, 2:4 .
**share** 4:15 .
**Shaw** 1:32, 1:41, 1:47, 2:4 .
**shoes** 24:9 .
**Shore** 27:16 .
**show** 32:21, 36:21 .
**silent** 20:14 .
**similar** 9:16, 9:23 .
**Simms** 1:24, 3:2, 3:7, 3:13, 22:2 .
**simple** 29:19 .
**single** 11:19, 42:12 .
**single-spaced** 43:14, 43:17, 43:22 .
**sit** 26:4 .
**six-month** 32:12 .
**Smith** 2:22 .
**sniping** 7:11 .
**sole** 29:23, 30:13 .
**solely** 33:8 .
**solutions** 46:21 .
**somebody** 21:21, 40:15, 44:4 .
**somehow** 37:16 .
**someone** 5:5, 5:17, 22:2, 22:3, 26:19 .
**sometimes** 5:4 .
**sophisticated** 37:10 .
**sorry** 6:7, 27:3, 38:11, 43:21 .
**sort** 5:15, 6:16, 6:18, 6:21, 7:11, 7:16, 13:14, 16:8, 17:16, 19:10, 33:19, 33:20, 34:11, 36:11, 40:2, 40:19, 45:18, 46:17, 46:20 .
**sought** 13:7, 20:1 .
**sounds** 33:12 .
**source** 21:20 .
**sources** 12:7, 45:9 .
**SOUTHERN** 1:3 .
**space** 13:25 .

**speaking** 5:5, 5:19, 5:20, 6:7, 6:9, 6:11, 24:16, 40:23, 40:25 .
**speaking-over-each-other** 5:10 .
**special** 8:14, 8:16, 9:18, 10:6, 11:13, 14:3, 14:15, 15:15, 35:18, 36:20, 36:22 .
**specific** 6:21, 6:25, 27:25, 28:7, 30:19, 37:21, 38:20, 38:22 .
**specifically** 33:8 .
**specification** 23:14, 31:2, 31:13, 33:22 .
**specifications** 23:24 .
**Spes** 15:9 .
**spilled** 16:7 .
**spirit** 33:16 .
**Spring** 1:5, 3:3, 8:13, 8:15, 8:23, 20:19, 20:22, 21:3 .
**Springs** 2:9, 3:22, 3:25, 8:12, 9:3, 11:12, 11:13, 12:8, 13:24, 15:3, 15:4, 15:11, 15:13, 21:8, 21:9, 21:13, 23:13 .
**squarely** 26:17 .
**St** 1:48, 2:5 .
**staff** 6:3, 6:5 .
**stand** 24:9, 46:24 .
**standard** 12:19, 26:22, 26:25, 27:20, 28:18 .
**standing** 21:13 .
**start** 6:13 .
**Starting** 6:6, 16:3 .
**stated** 33:2, 41:7, 44:17 .
**STATES** 1:1 .
**stay** 36:7 .
**stepped** 10:8 .
**stepping** 35:25 .
**stipulate** 30:15, 34:8, 43:5 .
**stipulation** 31:19, 33:19, 33:24, 34:1, 34:2, 34:11, 34:18, 40:1, 40:12, 40:19, 44:17, 44:19, 44:21, 45:16 .
**Street** 1:33, 2:13 .

**strike** 41:7 .
**structure** 13:3, 14:13, 18:24, 31:9, 34:25, 35:4, 36:5, 36:12, 36:14, 36:19, 37:22 .
**structured** 37:6 .
**sub-ground** 31:3, 42:11 .
**subject** 5:1, 16:10, 18:7, 28:9, 31:21, 37:12, 41:16, 42:8, 46:21 .
**sublease** 15:6 .
**subleases** 42:23 .
**submit** 27:19, 31:18, 32:10, 43:13 .
**subpoena** 10:17, 10:19, 10:21, 10:24, 11:7, 11:9, 11:20, 12:22, 20:18, 20:24, 21:8, 21:10, 24:25, 25:3, 25:23, 26:3, 26:5, 27:5, 30:19, 46:7 .
**subpoenas** 29:13 .
**subsequent** 10:25, 24:25 .
**subtenants** 8:23 .
**successful** 20:23, 30:6 .
**suggested** 12:6 .
**Suite** 1:42, 1:48, 2:14 .
**summary** 6:19, 9:15 .
**supplement** 13:14 .
**support** 6:21 .
**supposed** 15:3 .
**sur-reply** 4:12, 5:25, 6:4, 30:20 .
**surviving** 33:1 .
**sustained** 6:18 .
**system** 4:19 .

.

.

**< T >.**
**talked** 5:7, 46:19 .
**target** 9:23 .
**Teleconference** 1:25 .
**ten-fold** 32:8 .
**tenant** 9:23, 9:25, 14:5, 14:23 .
**tenants** 14:8, 14:10, 14:20 .

**terminated** 10:12 .
**terms** 30:3 .
**thankfully** 7:14 .
**them.** 19:21 .
**themselves** 7:5, 12:9 .
**therein** 6:1 .
**thereto** 6:18 .
**they'll** 16:11, 17:16 .
**they've** 32:11, 32:12 .
**thinking** 40:1, 45:6 .
**third** 15:17 .
**though** 36:7 .
**Three** 17:18, 19:24, 24:11, 26:7, 36:15, 43:14, 43:16, 43:22 .
**throughout** 14:16 .
**throw** 32:3 .
**tied** 38:19, 39:9 .
**timely** 12:5 .
**timing** 30:14, 43:4 .
**tip** 30:23 .
**today** 3:20, 4:10, 4:20, 8:6, 23:16, 26:4, 44:11 .
**together** 5:3, 5:8, 26:16, 46:10 .
**took** 10:2 .
**tool** 45:1 .
**top** 15:22, 18:5 .
**track** 36:10 .
**transaction** 38:4, 38:20, 38:22 .
**transactions** 37:6, 38:6 .
**Transamerica** 2:18, 4:2, 4:4, 9:13, 10:4, 10:8, 13:21, 27:14, 30:6, 30:12, 32:18, 37:10 .
**transcribed** 5:12, 47:7 .
**Transcript** 1:22, 2:31, 4:21, 47:5, 47:9 .
**transcription** 2:31 .
**trial** 7:23, 29:16 .
**tried** 46:11 .
**true** 32:4 .
**truth** 30:11 .
**try** 4:7, 9:20, 34:18, 36:5, 36:9, 40:2, 43:8, 46:3, 46:7 .
**trying** 13:13, 14:8, 16:25, 20:4, 20:22, 27:2, 27:3,

28:3, 32:2, 32:3, 32:24, 36:17, 36:24, 44:25, 45:7, 45:19 .
**turn** 22:13, 24:12, 28:16 .
**twice** 33:23 .
**Two** 3:20, 4:9, 4:13, 6:16, 6:19, 6:22, 9:20, 9:24, 10:2, 10:5, 17:4, 17:21, 21:22, 22:8, 22:11, 22:23, 29:3, 33:13, 36:16, 44:21 .
**type** 9:23 .

**< U >.**
**ultimately** 4:20, 5:17, 8:19, 10:3, 21:1, 21:18, 31:23, 39:10 .
**unblemished** 38:3 .
**unclean** 9:7, 35:17, 36:13, 37:4, 38:1, 38:2, 39:4, 39:11, 41:11 .
**undercut** 14:4 .
**understand** 3:21, 6:15, 7:4, 7:6, 7:7, 19:15, 24:12, 24:19, 26:14, 26:24, 27:1, 27:3, 27:23, 29:12, 30:22, 33:6, 33:14, 34:22, 35:5, 35:6, 36:25, 42:16 .
**understanding** 46:8, 46:9 .
**Understood** 33:12, 43:24, 45:14, 45:20, 46:4 .
**undo** 9:5 .
**unfavorable** 35:22 .
**unfolding** 28:10 .
**UNITED** 1:1 .
**unless** 22:25 .
**unparticularized** 39:5 .
**unrelated** 18:6, 31:11, 37:23 .
**Unspoken** 43:24 .
**unstructured** 37:4, 37:24, 39:4 .
**until** 5:17, 24:16 .
**unusual** 4:6 .
**updated** 18:10 .
**upheld** 41:8, 41:17 .

**uploaded** 4:18 .
**using** 8:18, 10:1, 15:21 .
**usual** 15:12 .

**< V >.**
**V.** 1:40, 2:3 .
**vacancies** 32:23 .
**vacancy** 15:10 .
**vacant** 8:22, 14:19, 14:22, 32:22 .
**vague** 19:2, 19:4, 27:2 .
**valid** 9:9 .
**valuable** 20:3 .
**various** 37:5 .
**vastly** 31:4 .
**Ventures** 27:17 .
**verbatim** 34:6 .
**verbiage** 18:17 .
**versions** 6:16 .
**versus** 3:3 .
**Via** 1:25, 47:7 .
**viable** 41:10 .
**view** 4:15, 4:16, 7:3, 7:18, 7:21, 8:1, 29:4, 46:8 .
**violate** 5:2 .
**vs** 1:8, 9:13 .

**< W >.**
**Wait** 5:6, 24:16 .
**waiting** 19:25, 20:6 .
**waiving** 16:10 .
**walked** 10:6 .
**wanted** 4:9, 4:11, 16:4, 22:10, 33:12, 41:5, 41:17 .
**wants** 26:19 .
**Warranty** 1:10, 1:38, 2:2, 3:4, 3:11, 3:14, 3:16, 3:18 .
**Washington** 1:34, 2:6, 2:15 .
**waste** 20:4 .
**ways** 21:22, 45:19 .
**week** 5:24, 43:17, 43:19 .
**whatever** 19:4, 26:19,

34:19 .
**whatsoever** 39:6 .
**whether** 4:10, 18:15, 24:25, 27:12, 29:6, 31:10, 31:16, 31:19, 33:2, 34:25, 36:15, 40:14, 42:24, 42:25, 44:3 .
**whole** 29:14 .
**wholly** 13:9 .
**whom** 37:16 .
**will** 4:18, 4:21, 5:9, 5:11, 6:5, 6:11, 6:23, 7:17, 8:10, 15:15, 21:13, 33:3, 33:10, 35:7, 35:13, 39:10, 40:5, 41:23, 43:17, 43:19, 43:20, 46:17 .
**William** 1:31, 3:8 .
**willing** 33:13, 33:18, 33:19, 34:7, 34:10 .
**willingness** 33:15 .
**Winthrop** 1:32 .
**within** 12:16, 18:12, 39:7 .
**without** 7:16, 14:7, 16:10 .
**witness** 26:16, 44:17, 44:19 .
**work** 28:16, 34:19, 40:11, 40:19, 42:19, 44:3, 44:13, 46:7, 46:9 .
**writing** 26:18 .
**written** 10:19 .
**wrote** 24:3, 33:23, 33:25 .

**< Y >.**
**years** 7:5 .
**yes-or-no** 17:1 .
**You-all** 40:12, 44:5, 45:3, 45:17, 46:2, 46:6 .
**yourself** 3:6, 3:23, 4:2, 5:14 .
**yourselves** 3:12 .

**< Z >.**
**zealously** 7:6, 7:15 .

**zero** 20:10, 20:11 .