# EXHIBIT H

USCA4 Appeal: 23-1928     Doc: 4-7     Filed: 09/06/2023     Pg: 1 of 16

After Recording Return To:
Tri-State Commercial Closings, Inc.
1150 18th Street, N.W. Suite 575
Washington, DC 20036

32427  523

mob-5582

# Ground Lessor Estoppel And Non-Disturbance Agreement

This Ground Lessor Estoppel and Non-Disturbance Agreement (the "Agreement") is entered into this ____ day of June, 2006 by and among ROCK SPRING PLAZA II, LLC, a Maryland limited liability company (the "Landlord"); ROCK SPRING II LIMITED PARTNERSHIP, a Maryland limited partnership (the "Tenant"); and MONUMENTAL LIFE INSURANCE COMPANY, a Maryland corporation (the "Lender").

## RECITALS

A.  By virtue of that certain Amended and Restated Ground Lease Indenture, dated as of November 14, 1990 between Rock Spring Plaza II, LLC (successor in interest to Anne D. Camalier), as landlord and Rock Spring II Limited Partnership, as tenant, which lease was amended by First Amendment to Amended and Restated Ground Lease Indenture dated September 1, 2002, as further evidenced by a Memorandum of Lease by and between Landlord and Tenant dated November 14, 1990 and recorded November 26, 1991 in Liber 10040 at folio 857 among the Land Records of Montgomery County, Maryland (collectively the "Lease"), Landlord demised to the Tenant that certain real property located in Montgomery County, Maryland, that is more particularly described in Exhibit "A" attached hereto and made a part hereof, on which Tenant has constructed certain improvements, together with all easements, covenants, and rights appurtenant thereto (collectively, together with the improvements now or hereafter located thereon, the "Premises").

B.  Pursuant to an Amended and Restated Secured Promissory Note of even date herewith (the "Note"), Tenant is indebted unto the Lender in the principal amount of $30,000,000 as from time to time increased, modified, replaced and refinanced (collectively the "Loan"), which Note is to be secured in part by an Amended and Restated Leasehold Deed of Trust, Security Agreement and Fixture Filing on the Tenant's interest in the Lease and the Premises (the "Deed of Trust"), and the Lender has agreed to make such Loan and accept such security upon the satisfaction of certain conditions, one of which is the execution of this Agreement by the Landlord and Tenant.

## AGREEMENT

1.  **Landlord's Approval.** The Landlord has no objection to the funding of the Loan and the mortgage and encumbrance of all of the Tenant's existing and after acquired interest in the Lease and the Premises, any fee and leasehold interest of Tenant in any improvements from time to time located on the Premises, all personal property owned by the Tenant which may from time to time be situated upon the Premises, the assignment of all the Tenant's rights and rents under any subleases of the Premises, and such other liens, security interests, and assurances relating to such interests in the Lease and/or Premises of the Tenant as are from time to time required by the Lender and its participants, successors and assigns in making the Loan (collectively the "Loan Collateral"). The Loan Collateral will not include any encumbrance on the Landlord's fee interest or reversionary interest under the Lease or in the Premises. The

-1-

Rock Spring II - Camalier / Lockheed Martin, Bethesda, Maryland
AEGON Loan No. 89758
Ground Lessor Estoppel Final 6/2/2006 9:21 AM
Based on~BALT1:4232488.v1 |3/27/06
16895-388



384

32427   524

Landlord agrees that in making such Loan, the Lender assumes no liability regarding the application of the proceeds thereof or the performance of the Tenant's obligations under the Lease.

2.　　Landlord's And Tenant's Estoppels. The Landlord and Tenant warrant to the Lender that with respect to their respective rights, actions and obligations:

(a) The Landlord is the sole current owner of the fee simple interest in the Premises and the sole current landlord under the Lease;

(b) The Lease has been properly executed and delivered, is valid and binding, has not been modified and is in full force and effect;

(c) The Lease represents the entire agreement of the Landlord and Tenant with respect to the Premises and the Tenant has no rights or obligations with respect to the Premises under any other agreement that would be binding upon Lender, its successors or assigns, in the event that it acquires all or any portion of the Loan Collateral by foreclosure or by deed or other transfer in lieu of foreclosure, except any easements or other agreements recorded among the land records of Montgomery County, Maryland which may be applicable to the Tenant;

(d) As of the date hereof, there are no defaults under the Lease or of any circumstances which, solely as the result of the passage of time, giving of notice of expiration of any cure period, will become a default; and

(e) All improvement to be constructed pursuant to the Lease have been satisfactorily completed and the Tenant is in possession and has accepted the condition of the Premises.

3.　　Priority Of Mortgage. The Landlord and Tenant warrant to the Lender that the Lease is and shall remain prior to any mortgage, deed of trust, lien or any other encumbrance against the fee title to the Premises. The Landlord agrees that it shall not grant any encumbrance against the fee title to the Premises which is not subordinate to the Lease and any new lease which may be granted to the Lender or any successor or assignee of the Lender pursuant to the provisions of this Agreement and the Lease. The Tenant covenants with the Lender that it has not granted or permitted and shall not grant or permit any encumbrance against Tenant's interest in the Lease or the Premises, nor shall Tenant have the right or ability to subordinate the Lease to any existing or future encumbrance against the fee title to the Premises without the Lender's prior written consent in each instance. Unless such express written consent is obtained, any such subordination or impairment of the priority of the Lease shall be ineffective.

4.　　Landlord's Recognition Of Lender. If the Tenant defaults under any obligation to the Lender, the Landlord shall permit the Lender to enter on the Premises and to assemble and remove all of the Tenant's personal property which is subject to the Deed of Trust or any additions thereto. Provided Lender has otherwise complied with the provisions of Article XI of the Lease, if the Lender notifies the Landlord of any default under any of the Deed of Trust or the note secured thereby and as a result thereof has in any manner acquired or foreclosed upon

-2-

32427  525

the Tenant's interests in the Lease and Premises, the Landlord shall recognize the Lender as the Tenant under the Lease and the successor to all rights and obligations thereunder.

5.  **Lease Modifications.** The Landlord and Tenant agree with the Lender that no assignment, subletting, voluntary or involuntary transfer, mortgage, pledge, hypothecation, extension, substitution, revision, surrender, cancellation, termination or any other modification of the Lease or any of the Tenant's interests therein of any kind whatsoever, any right or obligation with respect thereto, or of any sublease, shall be entered into or agreed to between the Landlord, the Tenant, or their respective successors in interest without in each instance being first specifically and expressly approved in writing by the Lender. The foregoing shall in no way be construed to prohibit or limit Landlord's right to assign, transfer, mortgage, pledge or hypothecate its fee simple interest in the Premises subject to the terms of the Lease or its interests in the Lease and the issues, rents and profits therefrom. In any instance in which any of the foregoing acts or agreements requires the act or consent of Tenant, Tenant shall not take any such act or grant such consent unless the same is first specifically approved by the Lender in writing in advance. The agreement by the Lender to any given modification of the Lease or any sublease shall not be deemed or construed as a waiver of the obligation of the Landlord and Tenant to obtain the Lender's approval for any subsequent modification, whether the same be similar or dissimilar to the one so approved, and no such consent shall operate as releasing the Landlord from any of its obligations under the Lease unless such consent expressly so provides. The Landlord and Tenant agree that the Tenant cannot waive any obligation or any default of the Landlord under the Lease nor any notices which may be required thereunder without first obtaining the express written consent of the Lender in each instance.

6.  **Insurance Proceeds And Condemnation Awards.** The Landlord, Tenant and Lender agree that so long as the Lease is in effect, all insurance proceeds and condemnation awards arising from any damage to or taking of the Premises shall, to the extent required by the Lease to be applied to the restoration of the Premises, be applied in the manner provided in the Lease but held and disbursed in accordance with the terms and conditions specified in the Deed of Trust and any excess proceeds shall be applied to the Loan. If the Lease terms are not applicable or if the Landlord waives the same in writing, then if and to the extent that any proceeds or awards are payable to the Tenant, such proceeds and awards shall be paid and applied in the manner provided in the Deed of Trust. The Lender shall have the right to participate in any claims, settlements, actions and adjustments pertaining to any insurance policy maintained in connection with the Premises and with respect to any condemnation award claimed by or payable to Tenant.

7.  **Termination Resulting From Casualty Or Condemnation.** In no event shall the Lease be terminated as a result of damage by casualty or condemnation of less than the entire Premises without the Lender's prior written consent.

8.  **Lender's Right To Cure.** The Landlord agrees with the Lender that in the event of any act or omission by the Tenant which would afford the Landlord the right, either immediately or after any lapse of time, to terminate the Lease, it shall refrain from exercising any such right

-3-

32427  526

until it has given written notification to Lender and afforded the Lender the same opportunity to cure such default that the Tenant has plus an additional thirty (30) days as provided in Section 11.1(b) of the Lease. As provided in Section 11.2 of the Lease and without limiting the general terms thereof, the Landlord agrees that it shall give the Lender a reasonable period within which to exercise its rights to acquire the leasehold interest in the Premises or foreclose against the Lease if necessary for a given default to be cured by the Lender, and that it shall notify the Lender in writing if the Landlord is of the opinion that any qualification or condition exists to the Lender's right to cure. The Tenant authorizes the Lender to effect such cure and to enter upon the Premises to the extent reasonably necessary to do so. The foregoing shall not be interpreted or construed as imposing any duty or obligation upon the Lender to cure any default of the Tenant at any time; provided, however, the Lender recognizes that the failure to do so could result in the termination of the Lease.

        9.      Waiver Of Statutory Right Of Cancellation. The Tenant hereby waives and assigns to the Lender all rights to elect to cancel the Lease under any statute now or hereafter in effect. This assignment and waiver applies, without limitation, to Section 365(h) of the United States Bankruptcy Code, or any other section of that statute, in the event that any voluntary or involuntary petition in bankruptcy or similar proceedings is filed by or against the Landlord. Landlord shall, in addition, give to Lender notice of any attempted rejection of this Lease by Tenant's trustee in bankruptcy or by Tenant as debtor in possession, and no termination of this Lease or termination of Tenant's right of possession of the Premises or reletting of the Premises by Landlord predicated on the giving of any such notice shall be effective unless Landlord gives to Lender written notice of any such default or termination, as the case may be and an opportunity for Lender to enter into a new lease on the terms and conditions set forth herein. The Lender shall not exercise such rights of Tenant as aforesaid without the Tenant's consent at any time prior to the Lender's acquisition Tenant's interest in the Lease and the Premises. The Landlord agrees with the Lender that it shall not cancel the Lease pursuant to any right or authority contained in the Bankruptcy Code or similar legislation in the event any voluntary or involuntary petition therein is filed by or against the Tenant so long as the Lender has cured all monetary defaults under the Lease within the applicable grace periods granted to the Lender under the Lease and is pursuing its rights and remedies with diligence and without delay to acquire Tenant's interest under the Lease unless and to the extent such delay is imposed by the Bankruptcy Code.

        10.     New Lease. As provided in Section 11.3 of the Lease, so long as the Lender cures all monetary defaults under the Lease of which the Lender was timely notified by the Landlord as provided under the Lease, the Landlord agrees with the Lender that it shall grant to the Lender, its successors or assigns, a new lease on the same terms and conditions and with the same priority as the Lease, provided Lender, its successors or assigns, makes written request to Landlord for such new lease within thirty (30) days from the date of its receipt of the notice of such termination of the Lease, including notice of an actual or deemed rejection of the Lease in bankruptcy; provided, however, the term of the new lease shall coincide with the then remaining term of the Lease and shall include all existing renewal options. The foregoing notwithstanding, the Lender shall not be required to make any payment to the holder of any lien against the Lease

-4-

Rock Spring II - Camalier / Lockheed Martin, Bethesda, Maryland
AEGON Loan No. 89758
Ground Lessor Estoppel Final 6/2/2006 9:21 AM
Based on~BALT1:4232488.v1 |3/27/06
16895-388

32427  527

which was junior or subordinate to the Deed of Trust as a condition to obtaining such new lease provided it forecloses under its Deed of Trust and extinguishes any such obligations. The Landlord shall give the Lender a written notice of the termination of the Lease within ten (10) days after the Lease is terminated, which notice shall include all amounts required to be paid by the Lender as a condition to obtaining such new lease. Such amount shall be reduced by any other income the Landlord receives with respect to the Premises from any person other than the Lender after such notice is given and which would otherwise be included in the Lender's payments. In the event that a new lease is granted to the Lender, the Tenant shall immediately cause title to all improvements, fixtures and personalty on the Premises owned by the Tenant to be conveyed to the Lender, which shall hold such title subject to the terms of the new lease. In accepting such new lease the Lender shall also have the right to require the Tenant to obtain attornments to the Lender from all subtenants occupying the Premises as of the date of the termination of the Lease. The parties hereto acknowledge the inadequacy of the Lender's remedies at law in the event the Lease is terminated for any reason and they intend the provisions of the Lease with respect to Landlord's obligation to enter into a new lease to be specifically enforceable.

11.    Liability Of Lender. The Landlord agrees that in no event shall the Lender, its successors or assigns (including, without limitation, any purchaser of all or any portion of the Tenant's interest in the Lease or the Premises at a foreclosure sale or by deed or other transfer in lieu of foreclosure) be:

(a)    Personally liable for the erection, completion, restoration or repair of any improvements comprising or to comprise a part of the Premises; or

(b)    Personally liable for any act or omission of Tenant; or

(c)    Bound by any amendment, extension, renewal, or modification of the Lease made without the prior written consent of the Lender.

12.    Lender's Obligation Upon Tenant Default. Lender or its successors or assigns may enforce the Deed of Trust and acquire title (or any third-party purchaser may acquire title at a foreclosure sale or by deed in lieu of foreclosure) to the leasehold estate in the Premises in any lawful way and, pending foreclosure of the Deed of Trust, the Lender may take possession of and operate the Premises, or any portion thereof subject to the terms of the Lease and its Deed of Trust to the extent not in conflict with the Lease, perform all obligations performable by Tenant, and upon foreclosure of the Deed of Trust by power of sale, judicial foreclosure, or upon acquisition of the leasehold estate by a deed or other transfer in lieu of foreclosure, Lender may, without further consent of Landlord, sell and assign the leasehold estate in the Premises. Lender shall notify Landlord in writing of such sale or assignment within ten (10) days of such sale or assignment. Provided any defaults by the Tenant have been cured to the extent required by the terms of the Lease, any assignee of the leasehold estate following a foreclosure of the Deed of Trust by power of sale or judicial foreclosure (or transfer by deed in lieu thereof) shall be liable

**32427  528**

to perform the obligations imposed upon Tenant by this Lease only during the period such person has ownership of said such leasehold estate.

    13.    Landlord's Bankruptcy. In the event of a bankruptcy of the Landlord, the parties agree that Lender shall have the right to receive all notices in such bankruptcy proceeding and shall have the right to the Tenant's vote in the bankruptcy court, all as more particularly provided in the Deed of Trust.

    14.    Notices. In order for any demand, consent, approval or other communication to be effective under the terms of this Agreement, "Notice" must be provided under the terms of this Subsection. All Notices must be in writing. Notices may be (a) delivered by hand, (b) transmitted by facsimile (with a duplicate copy sent by first class mail, postage prepaid), (c) sent by certified or registered mail, postage prepaid, return receipt requested, or (d) sent by reputable overnight courier service, delivery charges prepaid. Notices shall be addressed as set forth below:

    if to the Tenant by the Landlord at its address for notices set forth in the Lease;

    if to the Tenant by the Lender at its address for notices set forth in the Deed of Trust;

    if to the Landlord at c/o Rock Spring Properties, 6500 Rock Spring Drive, Suite 500, Bethesda, Maryland 20817; and

    if to the Lender at c/o AEGON USA Realty Advisors, Inc., 4333 Edgewood Road, N.E., Cedar Rapids, Iowa 52499-5443 Attn: Mortgage Loan Department, Reference: Loan #89758.

Notices delivered by hand or by overnight courier shall be deemed given when actually received or when refused by their intended recipient. Notices sent by facsimile will be deemed delivered when a legible copy has been received (provided receipt has been verified by telephone confirmation or one of the other permitted means of giving Notices under this Subsection). Mailed Notices shall be deemed given on the date of the first attempted delivery (whether or not actually received). Either the Lender or the Grantor may change its address for Notice by giving at least fifteen (15) Business Days' prior Notice of such change to the other party. This Agreement meets or supersedes any conditions to the Lender's right to receive notices in the Lease.

    15.    No Merger. The parties hereto agree and intend that in the event any of the interests of the Landlord and the Tenant should be acquired by the same person, the same shall not result in a merger of the fee with the interest evidenced by the Lease in the Premises, and in particular, shall not have the effect of extinguishing the Lease.

    16.    Legal Proceedings. The Landlord and Tenant grant the Lender the right to intervene or become a party in any legal proceeding, mediation or arbitration which concerns the Lease or any party's rights or obligations thereunder. The Lender shall not be required to submit any dispute to arbitration except as may otherwise be required pursuant to any provisions

Rock Spring II - Camalier / Lockheed Martin, Bethesda, Maryland
AEGON Loan No. 89758
Ground Lessor Estoppel Final 6/2/2006 9:21 AM
Based on~BALT1:4232488.v1 |3/27/06
16895-388

## 32427 529

therefor contained in the Lease. The Lender shall not be bound by the decision of any court, mediator or arbitrator unless it was given written notice of such proceeding.

17.  Attorneys' Fees. The prevailing party in any arbitration or action brought to interpret or enforce the provisions of this Agreement, including any probate, bankruptcy, injunction, receivership or appeal proceedings or any petition for review, shall be reimbursed by the other party for its costs and reasonable attorney's fees incurred therein.

18.  Waivers. No waiver shall arise or result from any act or omission on the part of any party hereto unless expressly made in each instance in writing and signed by such party.

19.  Assignments And Subleases. Except as otherwise provided in the Lease, no limitation upon or condition to any assignment of the Lease shall apply to any transfer of the Lease by foreclosure, trustee's sale, sheriff's sale or an assignment in lieu thereof. If the Lender acquires the Tenant's interest in the Lease or the Lender acquires a new lease pursuant to any provision of the Lease, the Lender shall have the absolute right to assign the same or sublease all or any portion of the Premises to any third party. So long as such third party assumes all of the Tenant's obligation under the Lease the Lender shall be automatically released from any further liability thereunder following any such assignment except for any of Lender's obligations or liabilities under the Lease arising during Lender's period of ownership.

20.  Successors. The Landlord and Tenant acknowledge that this Agreement is intended to benefit the Lender, its successors and assigns, including any persons who participate in or refinance the loan in whole or in part. Consequently, this Agreement shall be construed as a modification of the Lease, and all of the assurances and confirmations contained in this Agreement are assignable by the Lender and shall inure to the benefit of an be enforceable by any successor or assignee of the Lender, including any assignee of or participant in the Loan and any purchaser of the Lease or any new lease at any foreclosure or trustee's sale, and by any purchase money lender of such assignee of the Lease. The Landlord agrees to execute such further documents as are reasonably requested to confirm that the provisions hereof maybe relied upon by any such successor, participant, refinancier or purchaser. This Agreement shall bind and inure to the benefit of the parties hereto and their respective heirs, successors and assigns.

21.  Entire Agreement. This Agreement and the Lease, comprised of the documents described herein as constituting the Lease, constitute the entire agreement among the parties hereto with respect to the rights and obligations of the Lender in connection with the Lease and supersede any oral or other written understandings relating to the Lease or the rights of the Lender, and may be modified only by written agreement executed by each of the parties hereto or their successors subsequent to the date hereof.

22.  Controlling Law Venue. This Agreement shall be governed and construed in accordance with the laws of the State of Maryland and the venue of any action to interpret or enforce the provisions of this Agreement shall be laid in Montgomery County, Maryland.

Rock Spring II - Camalier / Lockheed Martin, Bethesda, Maryland
AEGON Loan No. 89758
Ground Lessor Estoppel Final 6/2/2006 9:21 AM
Based on--BALT1:4232488.v1 |3/27/06
16895-388

32427 530

23. <u>Counterparts</u>. This Agreement may be executed in five (5) or more counterparts, all of which shall constitute but one and the same contract.

THE REMAINDER OF THIS PAGE HAS BEEN LEFT INTENTIONALLY LEFT BLANK

32427 \_31

IN WITNESS WHEREOF, the parties hereto have caused these presents to be duly executed effective as of the day and year first above written.

LANDLORD:

ROCK SPRING PLAZA II, LLC, a Maryland limited liability company

By: *(signature)*
Name: Charles A. Camalier, III
Title: Authorized Person

TENANT:

ROCK SPRING II LIMITED PARTNERSHIP, a Maryland limited partnership
By: Fernwood Two Corp., a Maryland corporation, Managing General Partner

By: *(signature)*
Name: Charles A. Camalier, III
Title: Vice President

By: Bethesda Real Property, Inc., a Delaware corporation, General Partner

By: _____
Name:
Title:

-9-

32427 532

IN WITNESS WHEREOF, the parties hereto have caused these presents to be duly executed effective as of the day and year first above written.

LANDLORD:

ROCK SPRING PLAZA II, LLC, a Maryland limited liability company

By:_____
Name:
Title:

TENANT:

ROCK SPRING II LIMITED PARTNERSHIP, a Maryland limited partnership
   By: Fernwood Two Corp., a Maryland corporation, Managing General Partner

By:_____
Name:
Title:

By: Bethesda Real Property, Inc., a Delaware corporation, General Partner

By: *[signature]*
Name: Connie Mearkle
Title: Vice President & Treasurer

-9-
Rock Spring II - Camalier / Lockheed Martin, Bethesda, Maryland
AEGON Loan No. 89758
Ground Lessor Estoppel Final 5/31/2006 11:31 AM
Based on~BALT1:4232488.v1 |3/27/06
16895-388

32427 533

STATE OF ~~STATE OF~~ District )
~~COUNTY~~ OF Columbia )

On this 31st day of May, 2006, before me, Barbara H. Kemp the undersigned officer, personally appeared Charles A. Camalier who acknowledged himself/herself to be the Authorized Person of ROCK SPRING PLAZA II, LLC, a Maryland limited liability company and that he, as such officer, being authorized so to do, executed the foregoing instrument for the purposes therein contained, in the capacity as aforesaid.

IN WITNESS WHEREOF, I hereunto set my hand and Notarial Seal.

_____
Notary Public

My Commission expires:  Barbara H. Kemp
Notary Public, District of Columbia
My Commission Expires 09-30-2006


~~STATE~~ OF District )
                          ) SS:
~~CITY/COUNTY~~ OF Columbia )

I HEREBY CERTIFY that on this 31st day of May, 2006, before me, the undersigned officer, personally appeared Charles A. Camalier III, who acknowledged himself/herself to be the Vice President of Fernwood Two Corp., a Maryland corporation and Managing General Partner of ROCK SPRING II LIMITED PARTNERSHIP, a Maryland limited partnership, and that (s)he, in such capacity, being authorized to do so, executed the foregoing instrument for the purposes therein contained, in such capacity.

IN WITNESS WHEREOF, I hereunto set my hand and Notarial Seal.

_____
Notary Public

My Commission expires:

Barbara H. Kemp
Notary Public, District of Columbia a H. Kemp
My Commission Expires 09-30-2006 ublic, District of Columbia
                          Commission Expires 09-30-2006

-10-

Rock Spring II - Camalier / Lockheed Martin, Bethesda, Maryland
AEGON Loan No. 89758
Ground Lessor Estoppel Final 5/31/2006 11:31 AM
Based on~BALT1 4232488 v1 |3/27/06
16895-388

**32427  534**

STATE OF _MARYLAND_ )
) SS:
~~CITY~~/COUNTY OF _Montgomery_ )

I HEREBY CERTIFY that on this _31st_ day of _May_, 2006, before me, the undersigned officer, personally appeared _Count Merkle_, who acknowledged himself/herself to be the _Vice President & Treasurer_ of Bethesda Real Property, Inc., a Delaware corporation and General Partner of ROCK SPRING II LIMITED PARTNERSHIP, a Maryland limited partnership, and that (s)he, in such capacity, being authorized to do so, executed the foregoing instrument for the purposes therein contained, in such capacity.

IN WITNESS WHEREOF, I hereunto set my hand and Notarial Seal.

_Karen Jerome Barrett_
Notary Public

My Commission expires:

KAREN JEROME BARRETT
NOTARY PUBLIC STATE OF MARYLAND
My Commission Expires July 1, 2006

-11-
Rock Spring II - Camalier / Lockheed Martin, Bethesda, Maryland
AEGON Loan No. 89758
Ground Lessor Estoppel Final 5/31/2006 11:31 AM
Based on BALT1:4232488.v1 |3/27/06
16895-388

**32427  535**

LENDER:

MONUMENTAL LIFE INSURANCE COMPANY, a Maryland corporation

By: _____
Name: Steve Myers
Title: Vice President

STATE OF _____ )
                    )
COUNTY OF _____ )

On this 21st day of _May_, 2006, before me, _Cathy Harlan_ the undersigned officer, personally appeared _Steve Myers_ who acknowledged himself/herself to be the _Vice President_ of MONUMENTAL LIFE INSURANCE COMPANY, a Maryland corporation and that (s)he, as such officer, being authorized so to do, executed the foregoing instrument for the purposes therein contained, in the capacity as aforesaid.

IN WITNESS WHEREOF, I hereunto set my hand and Notarial Seal.

_Cathy S. Harlan_
Notary Public

My Commission expires:
05/21/08

CATHY S. HARLAN
Commission Number 710804
My Commission Expires
05/21/08

**List of Attachments:**
Exhibit A – Legal Description

-12-

EXHIBIT A          **32427  536**

## PROPERTY DESCRIPTION

All that certain lot or parcel of land situate and lying in Montgomery County, Maryland, and more particularly described as follows:

PARCEL I:

BEING part of Parcel 13, Rock Spring Park as recorded in Plat Book 148 as Plat No. 16968 among the Land Records of Montgomery County, Maryland and being more particularly described as follows:

BEGINNING at a point lying on the northeasterly right-of-way line of Fernwood Road as dedicated in Plat Book 88 as Plat No. 9340, said point also being a corner common to the property herein described and Parcel 14, Rock Spring Park as recorded in as Plat No. 21681; thence running with the northeasterly right-of-way line of Fernwood Road the following two (2) courses and distances:

> 1. 391.19 feet along the arc of a non-tangent curve to the left having a radius of 1,590.00 feet and a chord bearing and distance of North 38 degrees 29' 06" West, 390.20 feet to a point; thence
>
> 2. North 04 degrees 24' 43" West, 32.88 feet to a point of intersection with the southeasterly right-of-way line of Rock Spring Drive; thence running with the southeasterly right-of-way line of Rock Spring Drive
>
> 3. North 36 degrees 42' 33" East, 218.26 feet to a point; thence leaving said right-of-way line and running through Parcel 13, Rock Spring Park the following eight (8) courses and distances
>
> 4. 26.76 feet along the arc of a tangent curve to the right having a radius of 29.33 feet and a chord bearing and distance of South 79 degrees 25' 34" East, 25.84 feet to a point; thence
>
> 5. South 53 degrees 17' 27" East, 14.01 feet to a point; thence
>
> 6. 71.19 feet along the arc of a tangent curve to the left having a radius of 100.67 feet and a chord bearing and distance of South 73 degrees 33' 02" East, 69.72 feet to a point; thence
>
> 7. North 86 degrees 11' 23" East, 123.28 feet to a point; thence
>
> 8. North 41 degrees 11' 23" East, 55.08 feet to a point; thence
>
> 9. South 48 degrees 48' 37" East, 143.09 feet to a point; thence
>
> 10. South 41 degrees 11' 23" West, 35.53 feet to a point; thence

32427   537

11. South 03 degrees 48' 38" East, 166.21 feet to a point lying on the northerly line of the aforementioned Parcel 14, Rock Spring Park; thence running with the lines of Parcel 14, Rock Spring Park the following three (3) courses and distances

12. North 87 degrees 05' 27" West, 211.25 feet to a point; thence

13 South 02 degrees 54' 33' West, 242.00 feet to a point; thence

14 South 58 degrees 33' 48" West, 23.39 feet to the point of beginning, containing 135,277 square feet or 3.10553 acres of land, more or less.

PARCEL II:

Easements granted by (i) Declaration of Covenants and Reciprocal Easement Agreements recorded in Liber 5263 at folio 351 and in Liber 8351 at folios 516, 543, 571, 602 and 626, and (ii) Sanitary Sewer Easements recorded in Liber 8351 at folio 683 and in Liber 8351 at folio 699, among the Land Records of Montgomery County, Maryland, and the reversionary interest in all improvements located on the property pursuant to the terms of the Amended and Restated Ground Lease as disclosed by Memorandum of Lease dated November 14, 1990 and recorded November 26, 1991 in Liber 10040 at folio 857.

Tax I.D. No. 4-1-2785885

AND BEING the same property in which a leasehold estate was acquired by Rock Spring II Limited Partnership, a Maryland limited partnership, by Amended and Restated Ground Lease Indenture dated as of November 14, 1990 as disclosed by memorandum of Lease by and between Anne D. Camalier, as lessor, and Rock Spring II Limited Partnership, a Maryland limited partnership, as lessee, dated as of November 14, 1990, recorded November 26, 1991 in Liber 10040 at folio 857 among the Land Records of Montgomery County, Maryland.

AND BEING the same property in which a fee simple interest was acquired by Rock Spring Plaza II, LLC, a Maryland limited liability company, by Deed from Anne D. Camalier, dated November 29, 1999 and recorded December 22, 1999 in Liber 17762 at folio 530 among the Land Records of Montgomery County, Maryland.