# EXHIBIT M

```
 1                  IN THE UNITED STATES DISTRICT COURT

 2                      FOR THE DISTRICT OF MARYLAND

 3                            SOUTHERN DIVISION

 4   ROCK SPRING PLAZA II, LLC,     ) CIVIL ACTION
                                    ) NO. PJM-20-1502
 5            Plaintiff,            )
                                    )
 6   v.                             )
                                    )
 7   INVESTORS WARRANTY OF AMERICA, )
     LLC, et al.,                   )
 8                                  )
              Defendants.           )
 9
                  TRANSCRIPT OF TELEPHONIC PROCEEDINGS
10            BEFORE THE HONORABLE PETER J. MESSITTE
                   UNITED STATES DISTRICT JUDGE
11            THURSDAY, OCTOBER 13, 2022; 11:00 A.M.
                        GREENBELT, MARYLAND
12
     APPEARANCES:
13
     FOR THE PLAINTIFF:
14
                 PILLSBURY WINTHROP SHAW PITTMAN LLP
15               BY:  KATHERINE T. DANIAL, ESQUIRE
                 BY:  WILLIAM M. BOSCH, ESQUIRE
16               1200 Seventeenth Street NW
                 Washington, DC  20036
17               (202) 663-8000

18   FOR THE DEFENDANT INVESTORS WARRANTY OF AMERICA, LLC:

19               SEYFARTH SHAW LLP
                 BY:  REBECCA A. DAVIS, ESQUIRE
20               1075 Peachtree Street NE
                 Suite 2500
21               Atlanta, Georgia  30309
                 (404) 885-1500
22

23   OFFICIAL COURT REPORTER:
     Renee A. Ewing, RPR, RMR, CRR - (301) 344-3227
24
           ***COMPUTER-AIDED TRANSCRIPTION OF STENOTYPE NOTES***
25
```

USCA4 Appeal: 23-1928    Doc: 4-11    Filed: 09/06/2023    Pg: 3 of 49

```
 1    APPEARANCES (Continued):

 2    FOR THE DEFENDANT ROCK SPRINGS DRIVE, LLC:

 3            KROPF MOSELEY PLLC
              BY:  SARA KROPF, ESQUIRE
 4            1100 H Street NW
              Suite 1220
 5            Washington, DC  20005
              (202) 627-6900
 6
      FOR THE DEFENDANT TRANSAMERICA CORPORATION:
 7
              DLA PIPER LLP
 8            BY:  ANTHONY L. MEAGHER, ESQUIRE
              BY:  NICOLE M. KOZLOWSKI, ESQUIRE
 9            6225 Smith Avenue
              Baltimore, Maryland  21209-3600
10            (410) 580-3000

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25
```

```
 1          THE COURT:  Ladies and gentlemen, good morning.
 2  Judge Messitte here.
 3      Court reporter, would you identify yourself?
 4          COURT REPORTER:  Hi, Your Honor.  It's Renee.
 5          THE COURT:  Hello, Renee.
 6      Counsel, the call of the case -- is there a deputy on, a
 7  courtroom deputy on the phone?  No.  Okay.  Then this is case
 8  Rock Spring II, LLC vs. Investors Warranty of America, LLC, et
 9  al., Civil No. 20-1502-PJM, and we are here on a joint motion
10  for clarification.
11      Counsel for plaintiff, would you identify yourself?
12          MR. BOSCH:  Good morning, Your Honor.  It's Bill
13  Bosch on behalf of the plaintiffs.
14          THE COURT:  For Investors Warranty, anybody on the
15  phone?
16          MS. DAVIS:  Yes.  Good morning, Your Honor.  This is
17  Rebecca Davis of Seyfarth Shaw for Investors Warranty of
18  America.
19          THE COURT:  And for Rock Spring Drive?
20          MS. KROPF:  Good morning, Your Honor.  Sarah Kropf
21  for Rock Springs Drive.
22          THE COURT:  Transamerica?
23          MR. MEAGHER:  Good morning, Your Honor.  Anthony
24  Meagher for Transamerica Corporation, and Nicole Kozlowski is
25  also on the phone.
```

1          THE COURT:  Anyone else?

2          Well, all right, Counsel.  I did look at your papers and

3   I can hear you on the specific issues unless there is something

4   preliminary that either counsel wish to -- any counsel wish to

5   address?

6          And by the way, when you each speak, always identify who

7   you are so that the court reporter knows who is speaking.  All

8   right?

9          Well, very well.  I have -- we have been through some

10  interesting times on this case already, so we can jump I think

11  right to the issues that we have identified.  And I will do it

12  according to what I think you are arguing.  Maybe I ought to

13  ask a more general question first.

14         What is it in the end that the plaintiff is trying to

15  accomplish in this litigation?  And let me be more specific.

16  Is the end game for plaintiff here to try and block all

17  together any assignment, or is there some other end game in

18  mind?

19         Plaintiff's counsel, do you want to address that?  I

20  gather it's Mr. Bosch.

21           MR. BOSCH:  Yes, Your Honor.  It is Bill Bosch.

22         Thank you for that question.  My client's ultimate goal

23  here is to make sure that the defendant, IWA, which continues

24  to be the sole source of funding for RSD, remains in privative

25  contract and remains liable for satisfying the financial

USCA4 Appeal: 23-1928    Doc: 4-11    Filed: 09/06/2023    Pg: 6 of 49

1   obligations of the ground lease.  And if we can get there by

2   pursuing the contract-based theories laid out by this Court by

3   reference to the restatement, that's fine with us.

4        And so I have a proposal for how to get there from here

5   in the light of the ongoing questions about disclosures and

6   documentation that I think is efficient and should be fair to

7   both parties.

8             THE COURT:  And you think it's this -- in this arena

9   of discovery dispute where you can find an answer to that?

10            MR. BOSCH:  Precisely.  And if I may, Your Honor, let

11  me lay this out in the context of the recent orders and the

12  back and forth about the discovery and/or disclosures required

13  under the restatement.

14       What I'd like to do is -- here is my proposal, and it's

15  to avoid discovery disputes and protracted litigation over

16  plaintiff's fraud claim, again, because the ultimate objective

17  here is if we can rely on a contract-based theory, let's do

18  that.  Let's take them at their word.  Let's take the

19  defendants at their word that they don't have anymore

20  information to provide concerning their ability to satisfy the

21  financial obligations of the ground lease.

22       And they told us in their September 30th joint submission

23  to the Court that there is no income coming into RSD other than

24  what IWA agrees to provide through periodic budget requests for

25  more funding.  And if that's not an accurate statement of their

1    position on the narrow issue before the Court today, then I

2    invite the defendants to speak now or forever hold their peace

3    because if there is more, they should tell us now; otherwise, I

4    don't need to beat a dead horse.

5             MS. DAVIS:  Your Honor, this is Rebecca Davis.

6         If he's asking us to tell him that now, we are happy to

7    do that.  That's not accurate.

8             THE COURT:  Start again, Ms. Davis.  If there what?

9             MS. DAVIS:  If he's asking us to jump in right now --

10   and I apologize if I am misunderstanding -- if he is asking us

11   to jump in right now and share our view on that, I can say I

12   don't believe that is accurate, and we have --

13            THE COURT:  Tell me your view.  Tell me what's your

14   view on this.

15            MS. DAVIS:  The view is that in a ground lease

16   situation, the ground lease tenant will ultimately find another

17   use for the property, and the purpose of the ground lease is

18   not just to basically pay a ground lease landlord in

19   perpetuity.  The ground lease tenant intends to set something

20   up.  The ground lease tenant intends to get subtenants or find

21   some other profitable use.

22        And so the fact that there is no income stream now is --

23   is not dispositive of any issue, and we will present an expert

24   that will -- that will explain how -- how this works and why

25   there is most definitely adequate capitalization and adequate

1   insurance here.  I believe he put the cart before the horse on

2   this.

3           THE COURT:  Let me just, again, in a general way,

4   ask:  And I understand there is no dispute that the ground

5   lease payments have been made timely and periodically.  Is that

6   correct?

7           MS. DAVIS:  That's correct.

8           THE COURT:  All right.  Just quickly, where -- there

9   is no income.  Where is the money coming to pay for that?

10          MS. DAVIS:  Presently, the money is coming through

11  the operating agreement, the structure there.

12          THE COURT:  What does that mean?  I mean, I assume

13  that there has to be a transfer of funds from -- from RSD to

14  plaintiff.  Correct?

15          MS. DAVIS:  That's correct.  So what happens is RSD

16  will set up a budget and will share that budget with its joint

17  venture partner, IWA, that the budget is funded, and they go

18  from there.  But that's not intended to be in perpetuity.

19          THE COURT:  Well, are you saying that the ground

20  lease, given the rather lengthy term of it, is not binding,

21  that there is going to be a future assignment or something like

22  that?  Is that -- what is your -- when you say it's not

23  binding, it's not in perpetuity, you have a ground lease with a

24  long term.  I am not sure what you are saying about binding.

25          MS. DAVIS:  I am not saying the bind lease -- the

1   ground lease is not a binding obligation.  What I am saying is

2   Mr. Bosch is suggesting that for the next 67 years or so, the

3   ground lease, that the plan is such that IWA would fund RSD,

4   and that is not the plan.  That has never been the plan.  That

5   wasn't the plan when plaintiff affiliate was the tenant.  It

6   wasn't the plan when IWA was the tenant, and it's not the plan

7   now.  The plan is that the ground lease becomes

8   self-supporting.

9        And so Mr. Bosch is suggesting that we take a snapshot in

10  time and make it binding on -- on the parties, and that is not

11  what the plan has ever been for this ground lease.  In other

12  words, he is misstating the capitalization, the purpose of the

13  capitalization.  He's misstating the facts here.

14       MR. BOSCH:  Your Honor, this is Bill Bosch.

15       No, I am not asking what the plan is for the remaining

16  decades of the ground lease.  The question I raised, and I will

17  state it again, based on the information that the defendants

18  have provided, there is no income coming into RSD other than

19  what IWA agrees to provide through periodic budget requests for

20  more funding, and I think I heard Ms. Davis, on behalf of the

21  defendants, say that's accurate.

22       It may not be what they intend to do in the future.  They

23  have a lot of plans in the future.  But for the last five years

24  since this assignment, from 2017 to the present, there has been

25  no income, there is no income coming into RSD other than what

1  IWA agrees to provide through periodic budget requests.  So is

2  that an accurate statement or not?  Because that's the -- the

3  issue here is what additional information should the ground

4  lessor be entitled to in order to evaluate whether the ground

5  lessee, the assignee, has the financial wherewithal to satisfy

6  its obligations under the ground lease?  So that's the

7  question.

8          THE COURT:  Before you answer, Ms. Davis, in the end,

9  still, I am correct, am I not, that the ground lease payments

10 have been made timely and in the proper amount?

11         MR. BOSCH:  Correct.  There has been -- since this

12 lease was assigned, IWA has funded through quarterly budgets in

13 excess of $14 million to pay the ground rent, insurance, the

14 taxes.  Of course -- and, again, they are referencing the

15 operating agreement, and, Judge, you have the operating

16 agreement in the record.  I don't need to argue it now.  But

17 the operating agreement budget says it's at the discretion of

18 IWA.

19         So, again, IWA, the party that created RSD and holds a 98

20 percent interest in RSD, has the discretion whether to approve

21 additional quarterly budget requests from RSD to pay all of the

22 financial obligations.  There is no commitment, no obligation.

23 It's at its discretion.  So if this case were to go away

24 tomorrow, there is no evidence that anybody has an obligation

25 to pay the ongoing ground rent.

1          THE COURT:  Well, RSD would not have an obligation to

2     pay if they are properly assigned?

3          MR. BOSCH:  They would have no ability to pay, Your

4     Honor.  They have acknowledged and said it here that the

5     leasehold is not profitable.  They said it in their reply, that

6     their strategy is to find a way for the property to generate an

7     income stream to pay its own ground rent, which is consistent

8     with the understood purpose of the ground lease.  That's their

9     language.  And they said that the purpose of RSD was to raise

10    sufficient income to create a self-sustaining property, and

11    they don't have a self-sustaining property.  By their

12    admission, it wasn't when they acquired it, when they took the

13    assignment, it isn't today, and RSD, by their admission, was

14    created for the purpose of holding the ground lease, which IWA

15    already did.

16         So we don't need to argue the case today.  I think what I

17    am saying to the Court is they have represented to us that they

18    have given us all the information they can provide about RSD's

19    ability to satisfy its financial obligations, and I am prepared

20    to take them at their word.  All I wanted to do here is confirm

21    that, as we sit here today -- and I agree that they may have

22    all the plans in the world -- but as we sit here today, for

23    five years, there has been no income, no independent ability

24    for RSD to satisfy the financial obligations other than at

25    IWA's discretion through quarterly budget requests.  If that's

1    not a true statement, I'd ask the defendants to tell us that

2    today.

3              THE COURT:  Well, before you answer, though, let's

4    assume that payments stop by RSD.  What's your remedy?

5              MR. BOSCH:  Well, our remedy would be to pursue a

6    claim against RSD and then to look through RSD to IWA, and IWA,

7    of course, will say it's not us, we are no longer liable under

8    the ground lease because we have assigned all of our interests

9    --

10             THE COURT:  I have already addressed that, though, I

11   think.  I have already suggested that the -- the assignor is

12   not necessarily out of -- out of the woods, that there may yet

13   be liability should the assignee not be able to perform.

14             MR. BOSCH:  Your Honor, you certainly said that.  And

15   what I'd -- what we are looking for is a ruling, because we

16   don't have a ruling, and as I said at the beginning, I think

17   our ultimate objective here is just to have some ruling from

18   this Court that IWA remains in privative contract and remains

19   directly liable to satisfy the financial obligations of the

20   ground lessee.  And if we get that ruling, we don't need to go

21   to fraud.

22        That's a contract-based finding for voiding the

23   assignment and holding IWA, the 98 percent controlling entity

24   in RSD, which created RSD for the purposes of, by its own

25   terms, for an exit strategy, to ensure that IWA doesn't get off

1   the hook.  That's what we are seeking to accomplish.

2          THE COURT:  I thought I said that earlier, that there

3   would not necessarily be immunity from the assignor even though

4   they have broad authority to assign, but, ultimately, they may

5   be the party against whom recourse would be held.  And so far,

6   there hasn't been a breach of anything, as far as I can tell.

7   There is more information I know the plaintiff wants, but I

8   don't see any breach yet, and that's really what I was

9   concerned about.  Much of the so-called discovery you are

10  looking for now seems to go largely to the merits as well.

11  Whatever fraud was there, I don't think we have reached that

12  issue yet.

13         Ms. Davis, do you want to go on?

14         MS. DAVIS:  Yes, Your Honor.  You had asked at the

15  start a very narrow question, whether or not the ground lease

16  has been paid, and the answer to that is yes.  You know, we

17  didn't need to go on for five to ten minutes about other

18  issues.  The answer is absolutely yes.  And I think it's

19  important to note that RSD is, again, 98 percent owned by IWA,

20  so IWA is in the picture.  You know, Mr. Bosch makes it sound

21  like IWA just dumped the property and walked away.  That's not

22  the case.

23         And I think it's important that we talk about that two

24  percent because Mr. Bosch has brought this up as some kind of

25  exit strategy, and he is saying that all RSD is doing is

1   holding the property.  That's not accurate at all.  The two

2   percent is owned by, basically, the crem dela crem of Real

3   Estate workout specialists.  They are at the top of the

4   industry and they were brought in to find the best solution for

5   this property.

6        So the property was not just dumped.  Rather, the best of

7   the best were brought in to deal with it, and they have not had

8   the opportunity to fully deal with it, in part because of this

9   litigation, but they have looked at it and it is not

10  unreasonable in their view to -- to not rush out and basically

11  get the property lease up if the market is not where it should

12  be.  You actually could lose money if you take that approach.

13  And Mr. Bosch knows this because at one point, the plaintiff

14  was also in charge of this property, and the plaintiffs, for

15  years and years and years, opted not to lease it when it had

16  the opportunity to do so.

17       So, I mean, this is just -- you know, the vacancies, the

18  lack of tenant, the lack of income, that is nothing but a

19  continuation from when the plaintiff itself controlled this

20  property.

21       So I think it is important, if Mr. Bosch is going to talk

22  about exit strategies and holding companies and IWA trying to

23  take some exit here, to point out these facts that IWA is still

24  involved, we have got the best of the best trying to deal with

25  this property, designed a valuable and profitable use for it,

1   and that there has been no default, and everything is running

2   smoothly, quite frankly, under the ground lease.  There is no

3   obligation to have the property leased.  There is no obligation

4   to do anything with the property.  There has been absolutely no

5   default.

6            THE COURT:  Is it a correct statement, however, that

7   the only source of funding would be IWA in response to a

8   particular request by RSD?  Ms. Davis?

9            MS. DAVIS:  I believe that is -- is somewhat

10  accurate.  I would like to supplement that response.  There is

11  an operating agreement that the parties entered into and there

12  is a budget request process, and right now, because there is no

13  tenant in the property, what RSD does is put together a budget

14  request and that budget requested is funded.

15       I mean, the reality is if RSD wanted to, it could

16  actually run out right now and probably lease out a proportion

17  of the property.  It would not pay probably the whole ground

18  rent.  It would not be a profitable outcome.  But, you know,

19  it's not that there could be no income stream coming in, it

20  just would not be the best solution long term for this

21  property.

22            THE COURT:  Okay.  Before we get too much farther

23  along on that, let me just understand a couple of things.

24       Is RSD, do they have an office anywhere?  Do they exist

25  anywhere except on paper?

1            MS. KROPF:  Your Honor, this is Sarah Kropf for Rock

2    Springs Drive.

3            They don't have a separate office.  The two percent

4    owner, Longshore Ventures, there are two principals who are --

5    work for Algon Group, which is a company in Atlanta, located in

6    Atlanta and other locations.

7            So, you know, in this day and age, do they have an office

8    that is dedicated to Rock Springs Drive?  No.  But, of course,

9    in this day and age, that's not necessary at all.  The two

10   principals have, as Ms. Davis said, considerable experience in

11   these matters and have helped IWA in other matters, in similar

12   matters.  And so to answer your question, no, they don't have

13   an office, but yes, there are two principals who are doing the

14   day-to-day -- handling the property day to day, making sure all

15   the maintenance and all that is being done, and then also

16   dealing with brokers to see whether or not there are any

17   profitable leasing opportunities.

18           THE COURT:  All right.  These are -- when you say

19   there are two, I don't know whether you are saying entities or

20   individuals that are effectively doing what RSD should be doing

21   under the lease.  Are they individuals?  Are they corporations?

22   What are they?

23           MS. KROPF:  Well, two individuals.  Of course, there

24   are -- people who are doing the work are Troy Taylor and Paul

25   Ruben, so those are the two individuals who are -- work for --

1  work with Longshore Ventures, which is the two percent owner,

2  and they are the ones who are handling all the day-to-day work

3  on the property to make sure it's maintained, to make sure rent

4  payments are made, deal with taxes, deal with insurance, deal

5  with a myriad of other things.

6          The plaintiffs have received tens of thousands of papers

7  showing all the invoices that were paid, all the maintenance,

8  the landscapers, all of the various things involved with

9  maintaining a building while you are looking for a tenant that

10  makes financial sense, which is what's happening here.  The

11  market in this area is not strong, so there is -- you know,

12  sometimes you have to wait these things out, and that is what's

13  happening.

14          THE COURT:  All right.  Well, I could get into your

15  specific requests and responses at this point, and maybe that's

16  the short way to go about it.  So let me articulate what I

17  think are the requests and then focus on your responses, the

18  first being that plaintiff wants identification of any person

19  or entities from whom RSD has obtained a legally binding

20  commitment to provide funding or income to RSD, and the answer

21  has been about the joint venture between IWA and Longshore

22  Ventures and that IWA has made some $14 million in capital

23  contributions.

24          What more, Mr. Bosch, do you need?  I mean, when you say

25  "legally binding," do you mean for decades?  For a year?  Five

1    years?  What are you talking about?

2          MR. BOSCH:  Well, Judge, as I said at the beginning,

3    what we are prepared to accept is we are going to take them at

4    their word.  And I heard Ms. Davis confirm, although she said

5    it was somewhat accurate, that RSD's only source of income is

6    through periodic budget requests from -- to IWA.  And I want to

7    know whether it's somewhat accurate or accurate because I just

8    looked at the operating agreement, and, specifically, the

9    budget requests are, as they said, it's Section 5.51, and it

10   says that the draft budget shall become effective only when

11   approved by 90 percent in interest and shall become the annual

12   budget.  90 percent in interest is defined as IWA.

13         So I have looked at the operating agreement.  I have

14   looked at their responses.  I am prepared to take them at their

15   word, and we won't need additional information if it is the

16   case that, as we sit here today, and for the last five years,

17   their only source of capital is through annual or periodic

18   budget requests through IWA?  Yes or no?

19         THE COURT:  Can you not answer that, Ms. Davis?  It

20   seems fairly straightforward.  I am understanding you to have

21   said that in effect, but I don't want to misread you.

22         MS. DAVIS:  Understood, Your Honor.  The problem I

23   have with the question is that it is a snapshot in time.  I

24   don't dispute that up until today, the income has come from

25   IWA.  I don't dispute that at all.

1       What I am saying is tomorrow, there could be a lease on

2   this property and all of that changes.  During the course of

3   this litigation, there could be a lease on that property and

4   all of this could change.

5       If we needed it to change today, I think we literally

6   could run out and get a lease on the property.  It just would

7   not be a profitable lease.  So I think it's -- I don't want to

8   box, you know, us into an answer there on something when it can

9   change literally tomorrow.  I mean --

10          MR. BOSCH:  This is Bill Bosch.

11      I am not going to dispute that there might be something

12  coming down the pike tomorrow.  I am not -- that's argument

13  they have advanced about all their plans and their experts and

14  two of the foremost restructuring people in the world.  We will

15  deal with that through -- and this is my proposal, what I

16  suggest, because they rely on that answer as the basis for

17  their response to the other questions, and if it's true, that

18  as we sit here, five years in, that there is no source of

19  income other than what we have indicated, budget requests, and

20  that there may be, in the future, changes, that's fine.  We can

21  live with that.

22      What I would propose, then, is that IWA and RSD put up a

23  corporate representative for deposition on the narrow question:

24  Why was RSD formed?  What has it done to generate income from

25  the property?  And how can it satisfy the ground lessee's

1   financial obligations under the ground lease?  We will put up a

2   corporate representative for the plaintiff as well.  And once

3   we take those depositions, plaintiff will tee up for the Court

4   the contract-based theory for voiding the assignment under the

5   restatement provisions underlying this Court's August 3rd order

6   and memorandum.

7       Judge, I think you have given the defendants a very easy

8   off ramp here to avoid facing charges of fraud.  And we can

9   argue the case today, but that's irrelevant because we haven't

10  even taken a deposition of their expert yet or of these two

11  restructuring analysts who are sitting behind writing the

12  checks even though they have never paid a nickel.  In fact,

13  they are getting paid six figures every month by IWA to serve

14  in that capacity.

15      So, as I said, my client's ultimate goal here is to make

16  sure that there is a legally binding commitment for IWA to

17  satisfy its obligations so that it doesn't effectuate this exit

18  strategy.  That would have happened had we not timely filed

19  this lawsuit.  Your Honor will recall this was before the

20  expiration of the statute of limitations.

21      The only basis we have today for saying that they have

22  continued to fund is because we filed this lawsuit, and if this

23  lawsuit goes away tomorrow, no obligation.  They told us it's

24  not a financially viable ground lease.  There is no income from

25  the property.  They have been sitting for five years.  They can

1  blame it on the litigation.

2        But, Judge, again, I don't know how Internet savvy you

3  are, but if you just typed in a Google search and you type in

4  is 6560 Rock Springs Drive, Bethesda, Maryland, for sale or for

5  lease, the responses you will see, the pages that come up will

6  say that it's off market.  So we will deal with that stuff in

7  discovery.  But as we sit here today, the question that this

8  Court poses:  Did they give us the information that they are

9  required to give under the restatement to enable the plaintiff,

10  the party impacted by this assignment, to evaluate whether it

11  has been materially impaired; in other words, financial rights

12  have been materially impaired?

13        And right now, I am willing to accept that they have

14  given us all that they can on that narrow question based on

15  Ms. Davis' representation that as we sit here today, there is

16  no income other than what IWA provides through this budget

17  process.

18              THE COURT:  You are repeating yourself I think,

19  Mr. Bosch, and I think Ms. Davis is as well.

20        Look, I don't know what you mean by "legally binding

21  commitment."  Whatever their agreement is with IWA, it is, and

22  you are asking me to make a declaratory opinion about whether

23  that is legally binding or not.

24        My view is if there were a breach and there were no

25  payments by RSD under the ground lease, that there would be a

1  cause of action for breach of contract against both RSD and

2  IWA, and that hasn't happened yet, and so I am not prepared to

3  delve into what legally binding commitment means.

4       So far, the deal is going forward, and insofar as it

5  won't go forward in future, you can deal with that then.  But I

6  don't find any reason to say that they have to show you

7  documents showing binding commitments.  I think they have told

8  you, in effect, they have given you all that they have got on

9  that.  They have given you the operating agreement.

10      So move on to number two.  The other one is you want,

11 Mr. Bosch, as I understand it, any capital that RSD has

12 obtained since it was formed, its source, how it was reported

13 on the books of the corporation, how it was used, what legal

14 obligation, if any.  I mean, that's a lot of information.  I

15 mean, you know, there is some -- there has got to be some

16 liberty and flexibility in an assignment, but this is really

17 into -- into the weeds here.

18      I mean, they have told you that they are going to perform

19 under the lease, they have got a funding source that presumably

20 will go forward unless there is some circumstance that develops

21 in the future, and you will cross that bridge when you come to

22 it.  I don't think they need to tell you more about what they

23 have told you now.  They have told you what the source of

24 funding is.  They told you it was essentially IWA.

25      Look, it looks to me like largely a paper transaction

1   where, for various corporate reasons that seem to happen all

2   the time, principal responsibility for the performance under a

3   contract has been transferred from one entity to another

4   without letting the first entity off the hook, and then the

5   breach comes and that's when you talk about it.  I don't think

6   there is anything more about capitalization that's necessary.

7          Now, that said, that said, because I wasn't aware to that

8   point of whether there had actually been any depositions, but

9   it certainly would seem appropriate in connection with the

10  overall litigation to depose whoever the people are -- have

11  been involved in the assignment and ask them what was this

12  assignment all about, what was it for, why was it done, and so

13  on within limits.  That seems appropriate.

14         MR. BOSCH:  Your Honor, this is Bill Bosch.

15         We are saying the same thing, Your Honor, and I have said

16  it from the beginning.  We are prepared to take them at their

17  word that they have provided all they can provide.  We are not

18  asking for more at this point given the issues that have been

19  presented and represented to this Court both in their

20  memorandum submission and today in this hearing, and that we

21  will take the depositions and we will frame up for the Court --

22  Your Honor has said several times on the record today and I

23  think previously that IWA is still on the hook, and that's the

24  declaration, as I said at the beginning.

25         You asked what do we want.  We need some declaration that

1    IWA is on the hook, that it didn't get off the hook by

2    assigning the lease to RSD.  That's all we need.  And if we can

3    get that by way of a declaration from the Court, and if the

4    Court has already ruled that, then, you know, again, we have

5    their motion for clarification, which prompted all of this back

6    and forth, then the case is over.

7              MS. KROPF:  Your Honor, this is Sara Kropf from Rock

8    Springs Drive.

9         I am completely confused about what Mr. Bosch is saying.

10   They have asked the Court for declaratory judgment in their

11   complaint based solely on a theory of fraud.  That is the only

12   claim in the complaint.  That's the only thing we have been

13   litigating and that we have been defending against is a claim

14   of fraud.

15        He's now talking about some sort of contract claim where

16   I think Your Honor has already, you know, you already realized

17   there has not been any breach of the contract.  If they have a

18   contract claim, Your Honor, obviously that's different than a

19   fraud claim.  The defenses are different, the claim is

20   different.  They would need to seek leave from the Court at

21   this very late stage -- we are over two years in the

22   litigation -- and they now say they have a contract claim.

23        So if we are going in that direction, Your Honor, I'd ask

24   that, you know, we follow the procedures, that Mr. Bosch not

25   ask during a telephone conference for declaratory judgment from

1    the Court on a contract claim that has never been alleged in

2    this case.

3        I understand there has been lots of back and forth about

4    the potential merits of such a claim, but it has never been

5    alleged by plaintiff, it has never been put in a complaint, and

6    they would need -- they would need to seek leave to do so.

7        We need to know from the defense side what we are

8    fighting against because the only thing in the complaint is a

9    fraud claim.  So if they have a different theory now all of a

10   sudden two years into the litigation, obviously, there is a

11   procedure to raise that, but it can't be during a telephone

12   conference.  It needs to be done the appropriate way.

13       MR. BOSCH:  Your Honor, this is Bill Bosch.

14       This is not an accurate statement of the procedural

15   posture in which we find ourselves today.  The Court will

16   recall that in the context of addressing the back and forth

17   over the fraud claim, Your Honor raised the question whether

18   there is a basis under the restatement to void the assignment

19   and invited the parties to submit the motions that led to your

20   memorandum opinion and order of August 3rd.  And those motions

21   were directed at specifically the question of whether, under

22   the restatement, the -- the plaintiff is entitled to

23   information to evaluate whether it may void the assignment on

24   the basis that its -- the assignment prejudiced -- it's

25   materially prejudiced its financial rights under the ground

 1  lease.

 2       And so what I have said is not that there is a contract

 3  claim here, it's that there is a contract-based theory where

 4  the relief that we did seek in the complaint, which is to void

 5  or set aside the assignment, and that's the theory that Your

 6  Honor has raised and has invited the parties to brief.

 7       There is no failure of notice here.  We have fully

 8  briefed this.  That's what brings us to the Court today.  It's

 9  fighting over whether they have satisfied their disclosure.

10  And Your Honor and I both are saying the same thing, they have

11  satisfied their disclosure.  They have given everything they

12  can on the question of their ability to satisfy their financial

13  obligations under the ground lease.

14       All we ask now is let's take the depositions and then tee

15  that issue up for the Court to see if this Court can void the

16  assignment, meaning set it aside, or, in this instance, make

17  sure that IWA remains liable under the ground lease, which is

18  the relief we are seeking because they are the only true party

19  in interest.

20       So there is no prejudice.  There is no surprise.  It's

21  exactly what we have been litigating since all the briefing was

22  filed within the last year.  And so this is -- I think Your

23  Honor and I are basically saying the same thing:  Why not just

24  tee up the depositions?  Your Honor has already said IWA isn't

25  on the hook.  We want to make sure that there is a declaration

1   off the hook.  We want a declaration so that in the event that

2   this case then gets dismissed, we have an enforceable ruling

3   that says that this assignment didn't relieve IWA of its

4   obligations under the ground lease, period.

5          THE COURT:  All right.  Well, whose depositions do

6   you have in mind, Mr. Bosch?

7          MR. BOSCH:  I would like to take a corporate

8   representative deposition for -- of somebody from IWA, maybe

9   one or more witnesses depending on the scope.  I have laid out

10  the broad parameters of the scope.  And the same from RSD.  I

11  don't think we need to burden Transamerica at this point with

12  that kind of a deposition.  I would reserve the right to come

13  back later if we start to get into some of the fraud issues,

14  but right now, I just want to narrowly focus on the corporate

15  representative depositions of IWA and RSD.

16         THE COURT:  Let me ask the defendants collectively, I

17  mean, is there some discovery on -- on your side that you want

18  from the plaintiff or individuals that you think might

19  ultimately need to be deposed?

20         MR. MEAGHER:  Your Honor, this is Anthony Meagher.  I

21  haven't said anything yet.  I represent Transamerica

22  Corporation.

23         And to respond directly to your question, yes, we would

24  want the corporate designee deposition of the plaintiff

25  relating to allegations against Transamerica Corporation, which

1  we are waiting for interrogatory answers on as well.

2      I'd also like to add that I agree with Ms. Kropf that if

3  the plaintiff is now making a claim for basically declaratory

4  relief on a contract theory, then they should amend their

5  complaint to state that.  And Transamerica Corporation had no

6  involvement with this assignment.  They are not a party to it

7  and they shouldn't be in -- Transamerica Corporation shouldn't

8  be in this case for any reason, frankly, but certainly not for

9  declaratory relief on a contract theory.

10      THE COURT:  All right.  Well, look, we are -- I am

11  beginning to feel we are spinning our wheels a little bit here.

12  I agree with defendants, Mr. Bosch, that you should file a

13  leave to amend your complaint to assert a breach of contract

14  claim together with I guess a declaratory -- account for

15  declaratory.  I don't necessarily say your fraud count is out,

16  but this is something that exists parallel.  Frankly, these

17  kinds of cases often get tried in tandem.  Along with a breach

18  of contract claim, there is often a fraud claim.

19      So I will give you 30 days to file a motion -- file a

20  motion for leave to amend, which I almost certainly will grant.

21  I am not really sure that at this point opposition to a motion

22  for leave to amend is going to be necessarily helpful, but I

23  think that's the first step to get this thing in the

24  procedurally correct posture unless, Mr. Bosch, there is some

25  reason you don't want to do that?

1          MR. BOSCH:  No, Your Honor.  Happy to do it.  To be
2  clear, I am not quite sure, as I sit here today, that it's
3  actually a breach of contract claim.  I think it's declaratory
4  judgment that IWA --
5          THE COURT:  My mistake.  Not a breach of contract.
6  It's the -- the issue of really under the restatement rule that
7  we are talking about.
8          Is there -- has there been sufficient disclosure relative
9  to the nature of the assignment that allows the original, I
10  guess, obligee to say this is going to prejudice our situation
11  materially?  It's not a breach of contract.  It is a
12  contract-based theory, though, really, in terms of questioning
13  the legitimacy of assignment.  So I said "breach of contract"
14  and I think that's really not a fair articulation of what the
15  nature of the animal is.
16          I can give you 30 days to do that.  Then defendants, you
17  can move to dismiss on that.  I don't know that that's going to
18  advance the cause very much, but here is what I have in mind.
19  You can do it, as I say, pro forma, the -- because I am the one
20  who has kind of engineered this whole thing, I am going to
21  grant it almost assuredly.
22          But then there are other issues that I think we need to
23  sort of sort through.  This may be a case where there is no
24  fraud at all, and whether -- and Mr. Meagher mentions that
25  particularly.  Whether there is some reason to keep parties in

1    here, at least one of them, if not all, on a fraud theory is

2    the kind of thing that can be tested even on a motion to

3    dismiss, which is probably the way to go, or certainly on a

4    motion for summary judgment after there is discovery because I

5    guess, Mr. Bosch, your theory is you are going to unearth some

6    evidence of fraud if you are allowed to depose principals of

7    the corporation.  Maybe you will, maybe you won't.

8         Right now, I am straining to see what the fraud would be,

9    but maybe there is something there.  But, as I say, this is

10   really -- it's, as I see it, a question whether the assignment

11   is bona fide or not.  That's what I view the case as at the

12   moment.  Fraud is kind of off to the side right now.  And so

13   that's where I am.

14        So I am going to propose that you file a motion for leave

15   to amend with an amended complaint, Mr. Bosch, within 30 days.

16   Defendants can respond within, let's say, 15 days pro forma.

17   You can oppose it, but I am going to deny it -- I am going to

18   grant leave, rather, to make the amendment.

19        Then go forward with your discovery.  I mean, I think --

20   not these items -- I am satisfied that nothing more needs to be

21   done with respect to the requests as to which clarification has

22   been asked, so I am going to moot that motion right now.  And

23   then let's see where you go on deposition on issues of fraud, I

24   guess, because I do want to know what -- how this all came

25   about.

1          I understand RSD was formed the same day or the day

2     before the transfer took place.  It does seem to look like sort

3     of a organization more on paper than in substance, but on the

4     other hand, that's maybe the way corporate business is being

5     done today.  So I need to sort of deal with that in time.

6          And then I think you need to think about a timeline for

7     your discovery, for your depositions.  And if you have an

8     amended complaint in place within the next 30 to 45 days, then

9     can you -- can you take your depositions during the next three

10    months after that, I mean, all around, or do you need more

11    time?

12              MS. KROPF:  Your Honor, this is Sara Kropf from Rock

13    Springs Drive.

14         So if -- if plaintiff is going to amend their complaint

15    to now add a contract claim, we don't really -- perhaps we

16    understand the scope of it, but until we see it, we won't know

17    for sure.  We have been trying to seek discovery from

18    plaintiffs.  We have met and conferred with them several times.

19    We have not received the documents and the responses to

20    interrogatories, so -- and some of those are relevant to our

21    defenses to the fraud claim.

22         So assuming that stays on the table, you know, we would

23    proceed with our motions to compel in the regular course with

24    those.

25         And I assume this is still being referred to the

1   magistrate?  You had referred it earlier to a magistrate for

2   discovery matters.

3           THE COURT:  Have you met with the magistrate judge

4   yet?

5           MS. KROPF:  Yes, and I am blanking on her name, but

6   yes, we did have one hearing in front of her, Your Honor.

7           THE COURT:  Simms?

8           MS. KROPF:  I believe it was, Your Honor.  And then

9   your stay went in place and we have been dormant on discovery.

10  We would plan for Rock Springs Drive to proceed with discovery

11  both on the existing fraud allegations, which we take seriously

12  and believe we have strong defenses to, and there will be

13  motions to compel, just to give Your Honor a heads up, that

14  will go to the magistrate.

15      But if we are going to be a new contract claim, even if

16  we understand the basis of it, we probably would need some

17  extra time.  There is a scheduling order in place.  The close

18  of discovery is December 23rd.

19          THE COURT:  Don't worry about that.

20          MS. KROPF:  If we need to push that --

21          THE COURT:  Don't worry about that date.  We are

22  trying to unscramble an egg here, at least I am, and whatever

23  -- whatever the sequence makes sense, I will go with.

24      First you need an amended complaint in place where some

25  sort of claim relative to the restatement principle is set

1   forth and an allegation that, in fact, defendants have not

2   given the assurances that plaintiff would be entitled to under

3   that rule.

4        That said, when you get a chance to see what the amended

5   complaint looks like, you respond as you will.  I mean, I think

6   what would probably just add time unnecessarily to the case

7   would be to say it's coming too late in the litigation, I am

8   not going to permit it, you know, we shouldn't permit it, we

9   are terribly prejudiced.

10       You guys have been fighting on so many fronts for so

11  long, and I am never quite sure why all this -- this corporate

12  whatever it is is going on, but I will play the game with you.

13  But there is not going to be any prejudice to having you get

14  documents from plaintiff, sort out all your business, and then

15  it will be appropriate either to have a motion to dismiss on

16  the fraud claim certainly or a motion for summary judgment

17  after all your evidence is in.

18       And it still would remain for decision in this case as to

19  whether or not there has been adequate assurances given with

20  regard to the assignment, and that's a separate matter.  That

21  may be all that survives out of this -- all of this after we

22  deal with the fraud claim.

23       So whatever defendants want to do, you will see the

24  amended complaint, and then if you -- whatever your response

25  will be, it will be.  I am saying I wouldn't spend too much

1    time saying it's too late in the game to amend.  I am

2    definitely going to allow that.

3         If there is some other basis for a motion to dismiss just

4    on the nature of the pleading, I guess I could entertain that.

5    I don't think the case is quite ripe yet to talk about fraud

6    until you do your discovery and see what you have got there.

7         Then a motion to dismiss, or, probably more

8    appropriately, a motion for summary judgment for that count to

9    go out should go.

10        And arguably as well on a motion for summary judgment --

11   motions -- this is more than one defendant -- for summary

12   judgment based on the adequate assurances clause that we have

13   given all we think we are obliged to give, and, therefore, we

14   don't think we have done anything that should impede us from

15   going forward unimpeded.  And I am trying to see how this gets

16   teed up, but I think that will be the way to put that forward.

17        So 30 days for motion for leave to amend, which I -- and

18   then I guess I have got to allow the defendants an opportunity

19   at least to see how the response comes in, whether there is

20   going to be I don't know what.  I will give you an additional

21   30 days for defendants to decide what they want to do with

22   regard to any opposition to the motion to dismiss.

23        Dispositive motions at that point don't seem to make much

24   sense because I think you want to be getting into the

25   discovery, and there isn't any reason why the discovery can't

1    go forward right away.  I don't understand -- everybody knows

2    that at least there is a fraud count involved and there will be

3    a count for whatever it is, failure to comply with the adequate

4    assurances clause under restatement principle, and discovery

5    can go forward on that.

6        So I think you can start your deposing, I would say,

7    certainly as soon as the amended complaint gets filed, and then

8    defendants could do their cross depositions.

9        So the question really is, in terms of 30 days to file

10   the motion for leave to amend, 30 days thereafter to respond,

11   discovery would be open the whole time, and then maybe what we

12   will see is eventually down the road, a motion to dismiss or

13   for summary judgment.

14       The question being, then, for me now is how much time to

15   allow for depositions on both sides?  And I am proposing that

16   to you.  I mean, I am assuming that within 60 days, we have the

17   new amended complaint in place.  How much more time, even if

18   you start right away on depositions, do you need to complete

19   them?  Three months?  Four months?  I am not sure that you need

20   to take more than four months.  Anybody got a sense of that?

21           MR. BOSCH:  Your Honor, this is Bill Bosch.

22       The existing discovery closes December 23rd.

23           THE COURT:  Don't worry about that.

24           MR. BOSCH:  So it's more than two months from today.

25   And as I think Your Honor indicated, that there will be no

 1   surprises in the complaint, but I understand Ms. Kropf's point
 2   that at least they'd like to see it before they pursue whatever
 3   discovery they think they will need on that point, and it's
 4   entirely possible that I think we should be able to get this
 5   done by February.  We should be able to finish all of the
 6   discovery by February, which is the date we originally planned
 7   to have the briefing submitted to this Court on any dispositive
 8   motions or pretrial briefing.
 9            THE COURT:  What about that from defendants, end of
10   February to complete all depositions; is that agreeable?
11            MS. KROPF:  Yeah.  That sounds reasonable.  I think
12   one of the issues from our perspective is how quickly the
13   magistrate can get to our motions to compel given some of the
14   fraud allegations and similar things the plaintiff has said, so
15   -- but I think end of February sounds reasonable, Your Honor.
16            THE COURT:  All right.  It wouldn't hurt for -- I
17   will issue an order today with these dates.  And even then
18   counsel can provide writing to Magistrate -- hello.  Counsel,
19   are you there?
20            MR. BOSCH:  Yes.  We are here, Your Honor.
21            THE COURT: -- writing again to Magistrate Judge Simms
22   indicating that you set up this new timeline, which will
23   largely depend on getting resolution of the disputed discovery
24   matters.  And she will get on the stick, and I will talk to her
25   about trying to move that along.  She ordinarily would ask you

1   to submit briefing.

2        Has she done that yet?

3             MR. BOSCH:  There are no motions pending, Your Honor.

4             THE COURT:  No.  Usually, though, when you come into

5   -- there is an opposition to the motion to compel, though, is

6   there not?  I don't know.

7             MR. BOSCH:  There are no motions pending, Your Honor.

8             THE COURT:  Well, the matter has simply been referred

9   to Magistrate Judge Simms by the defendant saying this is what

10  we want and what we are not getting?

11            MS. KROPF:  No, Your Honor.  You had issued a

12  standing order -- this is Sarah Kropf.  You had issued a

13  standing order referring all discovery matters to her.  We have

14  some motions to compel prepared, and we can -- as I read the

15  local rules for motion to compel to the parties, we send it to

16  the parties themselves, and once it's ripe, it's ready for the

17  magistrate judge, and we can certainly send her something

18  alerting her to what's coming.

19            THE COURT:  Well, file your motions to compel right

20  away.

21            MS. KROPF:  We will do that, Your Honor.

22            THE COURT:  And if there is an opposition to be made,

23  which I assume there may be, the magistrate judge will then

24  look at them and probably ask you to supplement your positions

25  by further letter briefing, and then she will decide it.  I

 1   don't know that she needs to call you in, but she may.  But

 2   that's a collateral thing, and you should file your motions

 3   right away to get the ball rolling with the magistrate judge.

 4        So if we finish, then, discovery on depositions by end of

 5   February, further dispositive motions thing, can you do those

 6   within 60 days?  Defendants file in the end of April?  Is 60

 7   days realistic following close of depositions?

 8             MS. KROPF:  It is for Rock Springs Drive, Your Honor.

 9             THE COURT:  I'm sorry.  You agree with that?

10             MS. KROPF:  Yes.

11             THE COURT:  Okay.

12             MS. KROPF:  Yes, for Rock Springs Drive.

13             THE COURT:  Well, then the issue would presumably be

14   before the Court on -- on two matters, whether -- assuming it's

15   a motion for summary judgment or motions for summary judgment,

16   whether, in fact, there is enough to make a fraud claim here,

17   one, and whether there is enough here to establish adequate

18   assurances or whether something more needs to be said.

19        Now, bear in mind, you know, the issue of whether on the

20   matter of law, there is fraud, obviously, the Court decides

21   that as a matter of law.

22        On the issue of adequate assurances, it's not really a

23   jury question of any kind.  I think that's the kind of issue

24   that a judge decides, so that when you file maybe even

25   cross-motions for summary judgment on the adequate assurances

1    issue, it doesn't really help the case along for me to simply

2    say there is a triable issue here and then come back three

3    months later and say now I have decided.  Basically, because

4    it's a judge's call and not a jury's call, the Court, based on

5    the motions for summary judgment and the evidence that support

6    the motions, the judge can simply decide beyond whether there

7    is a material issue of fact involved and say simply I think

8    there has or has not been adequate assurances given.

9          And then what's the outcome?  The outcome may be yes,

10   they have been given, end of story, or no, they haven't been

11   given and the party that's being asked to give more assurances

12   will have to give more.  There is no money involved I think in

13   the adequate assurances issue.  There could be in the fraud but

14   we have to see whether that survives.

15         All right.  So it's 60 days from 30 days response to the

16   amended complaint to file your -- sorry.  30 days for leave to

17   amend, 30 days to do whatever your opposition is, and this --

18   depositions will close by the end of February and briefing on

19   dispositive motions by the end of April, and then we will see

20   where we are.  Otherwise, the motion for clarification is moot.

21         Anything else?

22         MR. BOSCH:  Your Honor, thank you.  This is Bill

23   Bosch.

24         May I just ask for one point of clarification, not from

25   Your Honor, but from the defendants?  We have an existing

1   scheduling order, and I understand it's moot now.  One of the

2   things that the scheduling order encompassed was expert

3   disclosures, and the time for expert disclosures by both

4   parties has now passed, and I heard I think it was Ms. Kropf

5   say that they have experts, but they didn't produce their

6   expert disclosures.

7        May we hear from the defendant when they intend to do

8   that since they haven't timely done that?

9          MS. KROPF:  I believe the current date for our

10  disclosures from the defense is November 7th.

11         MR. BOSCH:  Oh, yes.  Okay.  Forgive me.  I was

12  looking at the wrong date.

13         MS. KROPF:  Yeah.

14         THE COURT:  Well, hold to that date, November 7th,

15  for expert disclosures.  No need to fool around with that.  Let

16  me get everything in the pot by the time I look at this at the

17  end of April.

18         MR. BOSCH:  Thank you, Your Honor.

19         THE COURT:  Fair enough?  All right, Counsel.  Thank

20  you very much.  Good wishes.  Bye-bye.

21       (The proceedings were concluded at 12:00 p.m.)

22

23

24

25

1                          C E R T I F I C A T E

2

3            I, Renee A. Ewing, an Official Court Reporter

4    for the United States District Court for the District of

5    Maryland, do hereby certify that the foregoing is a true and

6    correct transcript of the stenographically reported proceedings

7    taken on the date and time previously stated in the above

8    matter; that the testimony of witnesses and statements of the

9    parties were correctly recorded in machine shorthand by me and

10   thereafter transcribed under my supervision with computer-aided

11   transcription to the best of my ability; and that I am neither

12   of counsel nor kin to any party in said action, nor interested

13   in the outcome thereof.

14

15            *Renee A Ewing*

16            _____

               Renee A. Ewing, RPR, RMR, CRR
17             Official Court Reporter
               October 14, 2022
18

19

20

21

22

23

24

25

**$**

**$14** [2] - 9:13, 16:22

**1**

**1075** [1] - 1:20
**1100** [1] - 2:4
**11:00** [1] - 1:11
**1200** [1] - 1:16
**1220** [1] - 2:4
**12:00** [1] - 39:21
**13** [1] - 1:11
**14** [1] - 40:17
**15** [1] - 29:16

**2**

**20-1502-PJM** [1] - 3:9
**20005** [1] - 2:5
**20036** [1] - 1:16
**2017** [1] - 8:24
**202** [1] - 1:17, 2:5
**2022** [2] - 1:11, 40:17
**21209-3600** [1] - 2:9
**23rd** [2] - 31:18, 34:22
**2500** [1] - 1:20

**3**

**30** [11] - 27:19, 28:16, 29:15, 30:8, 33:17, 33:21, 34:9, 34:10, 38:15, 38:16, 38:17
**301** [1] - 1:23
**30309** [1] - 1:21
**30th** [1] - 5:22
**344-3227** [1] - 1:23
**3rd** [2] - 19:5, 24:20

**4**

**404** [1] - 1:21
**410** [1] - 2:10
**45** [1] - 30:8

**5**

**5.51** [1] - 17:9
**580-3000** [1] - 2:10

**6**

**60** [4] - 34:16, 37:6, 38:15
**6225** [1] - 2:9
**627-6900** [1] - 2:5
**6560** [1] - 20:4
**663-8000** [1] - 1:17
**67** [1] - 8:2

**7**

**7th** [2] - 39:10, 39:14

**8**

**885-1500** [1] - 1:21

**9**

**90** [2] - 17:11, 17:12
**98** [3] - 9:19, 11:23, 12:19

**A**

**A.M** [1] - 1:11
**ability** [6] - 5:20, 10:3, 10:19, 10:23, 25:12, 40:11
**able** [3] - 11:13, 35:4, 35:5
**absolutely** [2] - 12:18, 14:4
**accept** [2] - 17:3, 20:13
**accomplish** [2] - 4:15, 12:1
**according** [1] - 4:12
**account** [1] - 27:14
**accurate** [11] - 5:25, 6:7, 6:12, 8:21, 9:2, 13:1, 14:10, 17:5, 17:7, 24:14
**acknowledged** [1] - 10:4
**acquired** [1] - 10:12
**ACTION** [1] - 1:4
**action** [2] - 21:1, 40:12
**add** [2] - 27:2, 30:15, 32:6
**additional** [4] - 9:3, 9:21, 17:15, 33:20
**address** [2] - 4:5, 4:19
**addressed** [1] - 11:10
**addressing** [1] - 24:16
**adequate** [10] - 6:25, 32:19, 33:12, 34:3, 37:17, 37:22, 37:25, 38:8, 38:13
**admission** [2] - 10:12, 10:13
**advance** [1] - 28:18
**advanced** [1] - 18:13
**affiliate** [1] - 8:5
**age** [2] - 15:7, 15:9
**agree** [4] - 10:21, 27:2, 27:12, 37:9
**agreeable** [1] - 35:10

**agreement** [9] - 7:11, 9:15, 9:16, 9:17, 14:11, 17:8, 17:13, 20:21, 21:9
**agrees** [3] - 5:24, 8:19, 9:1
**aided** [1] - 40:10
**AIDED** [1] - 1:24
**al** [2] - 1:7, 3:9
**alerting** [1] - 36:18
**Algon** [1] - 15:7
**allegation** [1] - 32:1
**allegations** [3] - 26:25, 31:11, 35:14
**alleged** [2] - 24:1, 24:5
**allow** [3] - 33:2, 33:18, 34:15
**allowed** [1] - 29:6
**allows** [1] - 28:9
**almost** [2] - 27:20, 28:21
**amend** [26] - 27:4, 27:13, 27:20, 27:22, 29:15, 30:14, 33:1, 33:17, 34:10, 38:17
**amended** [8] - 29:15, 30:8, 31:24, 32:4, 32:24, 34:7, 34:17, 38:16
**amendment** [1] - 29:18
**AMERICA** [2] - 1:7, 1:18
**America** [2] - 3:8, 3:18
**amount** [1] - 9:10
**analysts** [1] - 19:11
**animal** [1] - 28:15
**annual** [2] - 17:11, 17:17
**answer** [10] - 5:9, 9:8, 11:3, 12:16, 12:18, 15:12, 16:20, 17:19, 18:8, 18:16
**answers** [1] - 27:1
**Anthony** [2] - 3:23, 26:20
**ANTHONY** [1] - 2:8
**apologize** [1] - 6:10
**APPEARANCES** [2] - 1:12, 2:1
**approach** [1] - 13:12
**appropriate** [4] - 22:9, 22:13, 24:12, 32:15
**appropriately** [1] - 33:8
**approve** [1] - 9:20
**approved** [1] - 17:11
**April** [3] - 37:6, 38:19, 39:17
**area** [1] - 16:11

**arena** [1] - 5:8
**arguably** [1] - 33:10
**argue** [3] - 9:16, 10:16, 19:9
**arguing** [1] - 4:12
**argument** [1] - 18:12
**articulate** [1] - 16:16
**articulation** [1] - 24:17
**aside** [2] - 25:5, 25:16
**assert** [1] - 27:13
**assign** [1] - 12:4
**assigned** [3] - 9:12, 10:2, 11:8
**assignee** [2] - 9:5, 11:13
**assigning** [1] - 23:2
**assignment** [21] - 4:17, 7:21, 8:24, 10:13, 11:23, 19:4, 20:10, 21:16, 22:11, 22:12, 24:18, 24:23, 24:24, 25:5, 25:16, 26:3, 27:6, 28:9, 28:13, 29:10, 32:20
**assignor** [2] - 11:11, 12:3
**assume** [4] - 7:12, 11:4, 30:25, 36:23
**assuming** [3] - 30:22, 34:16, 37:14
**assurances** [10] - 32:2, 32:19, 33:12, 34:4, 37:18, 37:22, 37:25, 38:8, 38:11, 38:13
**assuredly** [1] - 28:21
**Atlanta** [3] - 1:21, 15:5, 15:6
**August** [2] - 19:5, 24:20
**authority** [1] - 12:4
**Avenue** [1] - 2:9
**avoid** [2] - 5:15, 19:8
**aware** [1] - 22:7

**B**

**ball** [1] - 37:3
**Baltimore** [1] - 2:9
**based** [11] - 5:2, 5:17, 8:17, 11:22, 19:4, 20:14, 23:11, 25:3, 28:12, 33:12, 38:4
**basis** [6] - 18:16, 19:21, 24:18, 24:24, 31:16, 33:3
**bear** [1] - 37:19
**beat** [1] - 6:4
**become** [2] - 17:10, 17:11

**becomes** [1] - 8:7
**BEFORE** [1] - 1:10
**beginning** [5] - 11:16, 17:2, 22:16, 22:24, 27:11
**behalf** [2] - 3:13, 8:20
**behind** [1] - 19:11
**best** [7] - 13:4, 13:6, 13:7, 13:24, 14:20, 40:11
**Bethesda** [1] - 20:4
**between** [1] - 16:21
**beyond** [1] - 38:6
**Bill** [9] - 3:12, 4:21, 8:14, 18:10, 22:14, 24:13, 34:21, 38:22
**bind** [1] - 7:25
**binding** [12] - 7:20, 7:23, 7:24, 8:1, 8:10, 16:19, 16:25, 19:16, 20:20, 20:23, 21:3, 21:7
**bit** [1] - 27:11
**blame** [1] - 20:1
**blanking** [1] - 31:5
**block** [1] - 4:16
**bona** [1] - 29:11
**books** [1] - 21:13
**BOSCH** [23] - 1:15, 3:12, 4:21, 5:10, 8:14, 9:11, 10:3, 11:5, 11:14, 17:2, 18:10, 22:14, 24:13, 26:7, 28:1, 34:21, 34:24, 35:20, 36:3, 36:7, 38:22, 39:11, 39:18
**Bosch** [25] - 3:13, 4:20, 4:21, 8:2, 8:9, 8:14, 12:20, 12:24, 13:13, 13:21, 16:24, 18:10, 20:19, 21:11, 22:14, 23:9, 23:24, 24:13, 26:6, 27:12, 27:24, 29:5, 29:15, 34:21, 38:23
**box** [1] - 18:8
**breach** [12] - 12:6, 12:8, 20:24, 21:1, 22:5, 23:17, 27:13, 27:17, 28:3, 28:5, 28:11, 28:13
**bridge** [1] - 21:21
**brief** [1] - 25:6
**briefed** [1] - 25:8
**briefing** [6] - 25:21, 35:7, 35:8, 36:1, 36:25, 38:18
**brings** [1] - 25:8
**broad** [2] - 12:4, 26:10

brokers [1] - 15:16
brought [3] - 12:24, 13:4, 13:7
budget [19] - 5:24, 7:16, 7:17, 8:19, 9:1, 9:17, 9:21, 10:25, 14:12, 14:13, 14:14, 17:6, 17:9, 17:10, 17:12, 17:18, 18:19, 20:16
budgets [1] - 9:12
building [1] - 16:9
burden [1] - 26:11
business [2] - 30:4, 32:14
BY [6] - 1:15, 1:15, 1:19, 2:3, 2:8, 2:8
bye [2] - 39:20
bye-bye [1] - 39:20

**C**

capacity [1] - 19:14
capital [3] - 16:22, 17:17, 21:11
capitalization [4] - 6:25, 8:12, 8:13, 22:6
cart [1] - 7:1
case [18] - 3:6, 3:7, 4:10, 9:23, 10:16, 12:22, 17:16, 19:9, 23:6, 24:2, 26:2, 27:8, 28:23, 29:11, 32:6, 32:18, 33:5, 38:1
cases [1] - 27:17
certainly [1] - 11:14, 22:9, 27:8, 27:20, 29:3, 32:16, 34:7, 36:17
certify [1] - 40:5
chance [1] - 32:4
change [3] - 18:4, 18:5, 18:9
changes [2] - 18:2, 18:20
charge [1] - 13:14
charges [1] - 19:8
checks [1] - 19:12
circumstance [1] - 21:20
Civil [1] - 3:9
CIVIL [1] - 1:4
claim [26] - 5:16, 11:6, 23:12, 23:13, 23:15, 23:18, 23:19, 23:22, 24:1, 24:4, 24:9, 24:17, 25:3, 27:3, 27:14, 27:18, 28:3,

30:15, 30:21, 31:15, 31:25, 32:16, 32:22, 37:16
clarification [5] - 3:10, 23:5, 29:21, 38:20, 38:24
clause [2] - 33:12, 34:4
clear [1] - 28:2
client's [2] - 4:22, 19:15
close [3] - 31:17, 37:7, 38:18
closes [1] - 34:22
collateral [1] - 37:2
collectively [1] - 26:16
coming [9] - 5:23, 7:9, 7:10, 8:18, 8:25, 14:19, 18:12, 32:7, 36:18
commitment [5] - 9:22, 16:20, 19:16, 20:21, 21:3
commitments [1] - 21:7
companies [1] - 13:22
company [1] - 15:5
compel [7] - 30:23, 31:13, 35:13, 36:5, 36:14, 36:15, 36:19
complaint [17] - 23:11, 23:12, 24:5, 24:8, 25:4, 27:5, 27:13, 29:15, 30:8, 30:14, 31:24, 32:5, 32:24, 34:7, 34:17, 35:1, 38:16
complete [2] - 34:18, 35:10
completely [1] - 23:9
comply [1] - 34:3
computer [1] - 40:10
COMPUTER [1] - 1:24
computer-aided [1] - 40:10
COMPUTER-AIDED [1] - 1:24
concerned [1] - 12:9
concerning [1] - 5:20
concluded [1] - 39:21
conference [2] - 23:25, 24:12
conferred [1] - 30:18
confirm [2] - 10:20, 17:4
confused [1] - 23:9
connection [1] - 22:9
considerable [1] - 15:10
consistent [1] - 10:7

context [2] - 5:11, 24:16
continuation [1] - 13:19
continued [1] - 19:22
Continued [1] - 2:1
continues [1] - 4:23
contract [26] - 4:25, 5:2, 5:17, 11:18, 11:22, 19:4, 21:1, 22:3, 23:15, 23:17, 23:18, 23:22, 24:1, 25:2, 25:3, 27:4, 27:9, 27:13, 27:18, 28:3, 28:5, 28:11, 28:12, 28:13, 30:15, 31:15
contract-based [6] - 5:2, 5:17, 11:22, 19:4, 25:3, 28:12
contributions [1] - 16:23
controlled [1] - 13:19
controlling [1] - 11:23
corporate [6] - 18:23, 19:2, 22:1, 26:7, 26:14, 26:24, 30:4, 32:11
corporation [2] - 21:13, 29:7
CORPORATION [1] - 2:6
Corporation [5] - 3:24, 26:22, 26:25, 27:5, 27:7
corporations [1] - 15:21
correct [9] - 7:6, 7:7, 7:14, 7:15, 9:9, 9:11, 14:6, 27:24, 40:6
correctly [1] - 40:9
counsel [8] - 3:6, 3:11, 4:4, 4:19, 35:18, 40:12
Counsel [2] - 4:2, 39:19
count [4] - 27:15, 33:8, 34:2, 34:3
couple [1] - 14:23
course [6] - 9:14, 11:7, 15:8, 15:23, 18:2, 30:23
court [2] - 3:3, 4:7
COURT [48] - 1:1, 1:23, 3:1, 3:4, 3:5, 3:14, 3:19, 3:22, 4:1, 5:8, 6:8, 6:13, 7:3, 7:8, 7:12, 7:19, 9:8, 10:1, 11:3, 11:10, 12:2, 14:6, 14:22,

15:18, 16:14, 17:19, 20:18, 26:5, 26:16, 27:10, 28:5, 31:3, 31:7, 31:19, 31:21, 34:23, 35:9, 35:16, 35:21, 36:4, 36:8, 36:19, 36:22, 37:9, 37:11, 37:13, 39:14, 39:19
Court [25] - 5:2, 5:23, 6:1, 10:17, 11:18, 19:3, 20:8, 22:19, 22:21, 23:3, 23:4, 23:10, 23:20, 24:1, 24:15, 25:8, 25:15, 35:7, 37:14, 37:20, 38:4, 40:3, 40:4, 40:17
Court's [1] - 19:5
courtroom [1] - 3:7
create [1] - 10:10
created [3] - 9:19, 10:14, 11:24
crem [1] - 13:2
cross [3] - 21:21, 34:8, 37:25
cross-motions [1] - 37:25
CRR [2] - 1:23, 40:16
current [1] - 39:9

**D**

DANIAL [1] - 1:15
date [6] - 31:21, 35:6, 39:9, 39:12, 39:14, 40:7
dates [1] - 35:17
Davis [11] - 3:17, 6:5, 6:8, 8:20, 9:8, 12:13, 14:8, 15:10, 17:4, 17:19, 20:19
DAVIS [12] - 1:19, 3:16, 6:5, 6:9, 6:15, 7:7, 7:10, 7:15, 7:25, 12:14, 14:9, 17:22
Davis' [1] - 20:15
day-to-day [2] - 15:14, 16:2
days [16] - 27:19, 28:16, 29:15, 29:16, 30:8, 33:17, 33:21, 34:9, 34:10, 34:16, 37:6, 37:7, 38:15, 38:16, 38:17
DC [2] - 1:16, 2:5
dead [1] - 6:4
deal [12] - 13:7, 13:8, 13:24, 16:4, 18:15, 20:6, 21:4, 21:5,

30:5, 32:22
dealing [1] - 15:16
decades [2] - 8:16, 16:25
December [2] - 31:18, 34:22
decide [3] - 33:21, 36:25, 38:6
decided [1] - 38:3
decides [2] - 37:20, 37:24
decision [1] - 32:18
declaration [5] - 22:24, 22:25, 23:3, 25:25, 26:1
declaratory [8] - 20:22, 23:10, 23:25, 27:3, 27:9, 27:14, 27:15, 28:3
dedicated [1] - 15:8
default [2] - 14:1, 14:5
defendant [4] - 4:23, 33:11, 36:9, 39:7
DEFENDANT [3] - 1:18, 2:2, 2:6
defendants [18] - 5:19, 6:2, 8:17, 8:21, 11:1, 19:7, 26:16, 27:12, 28:16, 29:16, 32:1, 32:23, 33:18, 33:21, 34:8, 35:9, 37:6, 38:25
Defendants [1] - 1:8
defending [1] - 23:13
defense [2] - 24:7, 39:10
defenses [3] - 23:19, 30:21, 31:12
defined [1] - 17:12
definitely [2] - 6:25, 33:2
dela [1] - 13:2
delve [1] - 21:3
deny [1] - 29:17
depose [2] - 22:10, 29:6
deposed [1] - 26:19
deposing [1] - 34:6
deposition [6] - 18:23, 19:10, 26:8, 26:12, 26:24, 29:23
depositions [16] - 19:3, 22:8, 22:21, 25:14, 25:24, 26:5, 26:15, 30:7, 30:9, 34:8, 34:15, 34:18, 35:10, 37:4, 37:7, 38:18
deputy [2] - 3:6, 3:7
designed [1] - 13:25

designee [1] - 26:24
develops [1] - 21:20
different [4] - 23:18, 23:19, 23:20, 24:9
directed [1] - 24:21
direction [1] - 23:23
directly [2] - 11:19, 26:23
disclosure [3] - 25:9, 25:11, 28:8
disclosures [7] - 5:5, 5:12, 9:3, 39:6, 39:10, 39:15
discovery [25] - 5:9, 5:12, 5:15, 12:9, 20:7, 26:17, 29:4, 29:19, 30:7, 30:17, 31:2, 31:9, 31:10, 31:18, 33:6, 33:25, 34:4, 34:11, 34:22, 35:3, 35:6, 35:23, 36:13, 37:4
discretion [4] - 9:17, 9:20, 9:23, 10:25
dismiss [7] - 28:17, 29:3, 32:15, 33:3, 33:7, 33:22, 34:12
dismissed [1] - 26:2
dispositive [5] - 6:23, 33:23, 35:7, 37:5, 38:19
dispute [5] - 5:9, 7:4, 17:24, 17:25, 18:11
disputed [1] - 35:23
disputes [1] - 5:15
District [2] - 40:4
DISTRICT [3] - 1:1, 1:2, 1:10
DIVISION [1] - 1:3
DLA [1] - 2:7
documentation [1] - 5:6
documents [3] - 21:7, 30:19, 32:14
done [10] - 15:15, 18:24, 22:12, 24:12, 29:21, 30:5, 33:14, 35:5, 36:2, 39:8
dormant [1] - 31:9
down [2] - 18:12, 34:12
draft [1] - 17:10
DRIVE [1] - 2:2
Drive [10] - 3:19, 3:21, 15:2, 15:8, 20:4, 23:8, 30:13, 31:10, 37:8, 37:12
dumped [2] - 12:21, 13:6
during [4] - 18:2,

23:25, 24:11, 30:9

**E**

easy [1] - 19:7
effect [2] - 17:21, 21:8
effective [1] - 17:10
effectively [1] - 15:20
effectuate [1] - 19:17
efficient [1] - 5:6
egg [1] - 31:22
either [2] - 4:4, 32:15
enable [1] - 20:9
encompassed [1] - 39:2
end [4] - 4:14, 4:16, 4:17, 9:8, 35:9, 35:15, 37:4, 37:6, 38:10, 38:18, 38:19, 39:17
enforceable [1] - 26:2
engineered [1] - 28:20
ensure [1] - 11:25
entered [1] - 14:11
entertain [1] - 33:4
entirely [1] - 35:4
entities [2] - 15:19, 16:19
entitled [3] - 9:4, 24:22, 32:2
entity [3] - 11:23, 22:3, 22:4
ESQUIRE [6] - 1:15, 1:15, 1:19, 2:3, 2:8, 2:8
essentially [1] - 21:24
establish [1] - 37:17
Estate [1] - 13:3
et [2] - 1:7, 3:8
evaluate [3] - 9:4, 20:10, 24:23
event [1] - 26:1
eventually [1] - 34:12
evidence [4] - 9:24, 29:6, 32:17, 38:5
Ewing [4] - 1:23, 40:3, 40:15, 40:16
exactly [1] - 25:21
except [1] - 14:25
excess [1] - 9:12
exist [1] - 14:24
existing [3] - 31:11, 34:22, 38:25
exists [1] - 27:16
exit [5] - 11:25, 12:25, 13:22, 13:23, 19:17
experience [1] - 15:10
expert [6] - 6:23, 19:10, 39:2, 39:3, 39:6, 39:15

experts [2] - 18:13, 39:5
expiration [1] - 19:20
explain [1] - 6:24
extra [1] - 31:17

**F**

facing [1] - 19:8
fact [5] - 6:22, 19:12, 32:1, 37:16, 38:7
facts [4] - 8:13, 13:23
failure [2] - 25:7, 34:3
fair [3] - 5:6, 28:14, 39:19
fairly [1] - 17:20
far [3] - 12:5, 12:6, 21:4
February [6] - 35:5, 35:6, 35:10, 35:15, 37:5, 38:18
fide [1] - 29:11
fighting [2] - 24:8, 25:9, 32:10
figures [1] - 19:13
file [10] - 27:12, 27:19, 29:14, 34:9, 36:19, 37:2, 37:6, 37:24, 38:16
filed [4] - 19:18, 19:22, 25:22, 34:7
financial [12] - 4:25, 5:21, 9:5, 9:22, 10:19, 10:24, 11:19, 16:10, 19:1, 20:11, 24:25, 25:12
financially [1] - 19:24
fine [2] - 5:3, 18:20
finish [2] - 35:5, 37:4
first [5] - 4:13, 16:18, 22:4, 27:23, 31:24
five [7] - 8:23, 10:23, 12:17, 16:25, 17:16, 18:18, 19:25
flexibility [1] - 21:16
focus [2] - 16:17, 26:14
follow [1] - 23:24
following [1] - 37:7
fool [1] - 6:2
FOR [5] - 1:2, 1:13, 1:18, 2:2, 2:6
foregoing [1] - 40:5
foremost [1] - 18:14
forever [1] - 6:2
forgive [1] - 39:11
forma [2] - 28:19, 29:16
formed [3] - 18:24, 21:12, 30:1

forth [5] - 5:12, 23:6, 24:3, 24:16, 32:1
forward [8] - 21:4, 21:5, 21:20, 29:19, 33:15, 33:16, 34:1, 34:5
four [2] - 34:19, 34:20
frame [1] - 22:21
frankly [3] - 14:2, 27:8, 27:16
fraud [28] - 5:16, 11:21, 12:11, 19:8, 23:11, 23:14, 23:19, 24:9, 24:17, 26:13, 27:15, 27:18, 28:24, 29:1, 29:6, 29:8, 29:12, 29:23, 30:21, 31:11, 32:16, 32:22, 33:5, 34:2, 35:14, 37:16, 37:20, 38:13
front [1] - 31:6
fronts [1] - 32:10
fully [2] - 13:8, 25:7
fund [2] - 8:3, 19:22
funded [3] - 7:17, 9:12, 14:14
funding [7] - 4:24, 5:25, 8:20, 14:7, 16:20, 21:19, 21:24
funds [1] - 7:13
future [6] - 7:21, 8:22, 8:23, 18:20, 21:5, 21:21

**G**

game [4] - 4:16, 4:17, 32:12, 33:1
gather [1] - 4:20
general [2] - 4:13, 7:3
generate [2] - 10:6, 18:24
gentlemen [1] - 3:1
Georgia [1] - 1:21
given [15] - 7:20, 10:18, 19:7, 20:14, 21:8, 21:9, 22:18, 25:11, 32:2, 32:19, 33:13, 35:13, 38:8, 38:10, 38:11
goal [2] - 4:22, 19:15
Google [1] - 20:3
grant [3] - 27:20, 28:21, 29:18
GREENBELT [1] - 1:11
ground [38] - 5:1, 5:21, 6:15, 6:16, 6:17, 6:18, 6:19, 6:20, 7:4, 7:19, 7:23,

8:1, 8:3, 8:7, 8:11, 8:16, 9:3, 9:4, 9:6, 9:9, 9:13, 9:25, 10:7, 10:8, 10:14, 11:8, 11:20, 12:15, 14:2, 14:17, 18:25, 19:1, 19:24, 20:25, 24:25, 25:13, 25:17, 26:4
Group [1] - 15:5
guess [6] - 27:14, 28:10, 29:5, 29:24, 33:4, 33:18
guys [1] - 32:10

**H**

hand [1] - 30:4
handling [2] - 15:14, 16:2
happy [2] - 6:6, 28:1
heads [1] - 31:13
hear [2] - 4:3, 39:7
heard [3] - 8:20, 17:4, 39:4
hearing [2] - 22:20, 31:6
held [1] - 12:5
hello [2] - 3:5, 35:18
help [1] - 38:1
helped [1] - 15:11
helpful [1] - 27:22
hereby [1] - 40:5
hi [1] - 3:4
hold [2] - 6:2, 39:14
holding [4] - 10:14, 11:23, 13:1, 13:22
holds [1] - 9:19
Honor [46] - 3:4, 3:12, 3:16, 3:20, 3:23, 4:21, 5:10, 6:5, 8:14, 10:4, 11:14, 12:14, 15:1, 17:22, 19:19, 22:14, 22:15, 22:22, 23:7, 23:16, 23:18, 23:23, 24:13, 24:17, 25:6, 25:10, 25:23, 25:24, 26:20, 28:1, 30:12, 31:6, 31:8, 31:13, 34:21, 34:25, 35:15, 35:20, 36:3, 36:7, 36:11, 36:21, 37:8, 38:22, 38:25, 39:18
HONORABLE [1] - 1:10
hook [7] - 12:1, 22:4, 22:23, 23:1, 25:25, 26:1
horse [2] - 6:4, 7:1
hurt [1] - 35:16

**I**

identification [1] - 16:18
identified [1] - 4:11
identify [3] - 3:3, 3:11, 4:6
II [2] - 1:4, 3:8
immunity [1] - 12:3
impacted [1] - 20:10
impaired [2] - 20:11, 20:12
impede [1] - 33:14
important [3] - 12:19, 12:23, 13:21
IN [1] - 1:1
income [18] - 5:23, 6:22, 7:9, 8:18, 8:25, 10:7, 10:10, 10:23, 13:18, 14:19, 16:20, 17:5, 17:24, 18:19, 18:24, 19:24, 20:16
independent [1] - 10:23
indicated [2] - 18:19, 34:25
indicating [1] - 35:22
individuals [5] - 15:20, 15:21, 15:23, 15:25, 26:18
industry [1] - 13:4
information [9] - 5:20, 8:17, 9:3, 10:18, 12:7, 17:15, 20:8, 21:14, 24:23
insofar [1] - 21:4
instance [1] - 25:16
insurance [3] - 7:1, 9:13, 16:4
intend [2] - 8:22, 39:7
intended [1] - 7:18
intends [2] - 6:19, 6:20
interest [4] - 9:20, 17:11, 17:12, 25:19
interested [1] - 40:12
interesting [1] - 4:10
interests [1] - 7:3
Internet [1] - 20:2
interrogatories [1] - 30:20
interrogatory [1] - 27:1
Investors [3] - 3:8, 3:14, 3:17
INVESTORS [2] - 1:7, 1:18
invite [1] - 6:2
invited [2] - 24:19, 25:6

invoices [1] - 16:7
involved [6] - 13:24, 16:8, 22:11, 34:2, 38:7, 38:12
involvement [1] - 27:6
irrelevant [1] - 19:9
issue [15] - 6:1, 6:23, 9:3, 12:12, 25:15, 28:6, 35:17, 37:13, 37:19, 37:22, 37:23, 38:1, 38:2, 38:7, 38:13
issued [2] - 36:11, 36:12
issues [8] - 4:3, 4:11, 12:18, 22:18, 26:13, 28:22, 29:23, 35:12
items [1] - 29:20
itself [1] - 13:19
IWA [44] - 4:23, 5:24, 7:17, 8:3, 8:6, 8:19, 9:1, 9:12, 9:18, 9:19, 10:14, 11:6, 11:18, 11:23, 11:25, 12:19, 12:20, 12:21, 13:22, 13:23, 14:7, 15:11, 16:21, 16:22, 17:6, 17:12, 17:18, 17:25, 18:22, 19:13, 19:16, 20:16, 20:21, 21:2, 21:24, 22:23, 23:1, 25:17, 25:24, 26:3, 26:8, 26:15, 28:4
IWA's [1] - 10:25

**J**

joint [4] - 3:9, 5:22, 7:16, 16:21
JUDGE [1] - 1:10
Judge [6] - 3:2, 9:15, 17:2, 20:2, 35:21, 36:9
judge [7] - 19:7, 31:3, 36:17, 36:23, 37:3, 37:24, 38:6
judge's [1] - 38:4
judgment [13] - 23:10, 23:25, 28:4, 29:4, 32:16, 33:8, 33:10, 33:12, 34:13, 37:15, 37:25, 38:5
jump [3] - 4:10, 6:9, 6:11
jury [1] - 37:23
jury's [1] - 38:4

**K**

KATHERINE [1] - 1:15

keep [1] - 28:25
kin [1] - 40:12
kind [7] - 12:24, 26:12, 28:20, 29:2, 29:12, 37:23
kinds [1] - 27:17
knows [3] - 4:7, 13:13, 34:1
KOZLOWSKI [1] - 2:8
Kozlowski [1] - 3:24
KROPF [18] - 2:3, 2:3, 3:20, 15:1, 15:23, 23:7, 30:12, 31:5, 31:8, 31:20, 35:11, 36:11, 36:21, 37:8, 37:10, 37:12, 39:9, 39:13
Kropf [7] - 3:20, 15:1, 23:7, 27:2, 30:12, 36:12, 39:4
Kropf's [1] - 35:1

**L**

lack [2] - 13:18
ladies [1] - 3:1
laid [2] - 5:2, 26:9
landlord [1] - 6:18
landscapers [1] - 16:8
language [1] - 10:9
largely [3] - 12:10, 21:25, 35:23
last [3] - 8:23, 17:16, 25:22
late [3] - 23:21, 32:7, 33:1
law [2] - 37:20, 37:21
lawsuit [3] - 19:19, 19:22, 19:23
lay [1] - 5:11
lease [43] - 5:1, 5:21, 6:15, 6:16, 6:17, 6:18, 6:19, 6:20, 7:5, 7:20, 7:23, 7:25, 8:1, 8:3, 8:7, 8:11, 8:16, 9:6, 9:9, 9:12, 10:8, 10:14, 11:8, 12:15, 13:11, 13:15, 14:2, 14:16, 15:21, 18:1, 18:3, 18:6, 18:7, 19:1, 19:24, 20:5, 20:25, 21:19, 23:2, 25:1, 25:13, 25:17, 26:4
leased [1] - 14:3
leasehold [1] - 10:5
leasing [1] - 15:17
least [5] - 29:1, 31:22, 33:19, 34:2, 35:2
leave [10] - 23:20,

24:6, 27:13, 27:20, 27:22, 29:14, 29:18, 33:17, 34:10, 38:16
led [1] - 24:19
legal [2] - 21:13
legally [6] - 16:19, 16:25, 19:16, 20:20, 20:23, 21:3
legitimacy [1] - 28:13
lengthy [1] - 7:20
lessee [2] - 9:5, 11:20
lessee's [1] - 18:25
lessor [1] - 9:4
letter [1] - 36:25
letting [1] - 22:4
liability [1] - 11:13
liable [4] - 4:25, 11:7, 11:19, 25:17
liberty [1] - 21:16
light [1] - 5:5
limitations [1] - 19:20
limits [1] - 22:13
literally [2] - 18:5, 18:9
litigating [2] - 23:13, 25:21
litigation [9] - 4:15, 5:15, 13:9, 18:3, 20:1, 22:10, 23:22, 24:10, 32:7
live [1] - 18:21
LLC [6] - 1:4, 1:7, 1:18, 2:2, 3:8
LLP [3] - 1:14, 1:19, 2:7
local [1] - 36:15
located [1] - 15:5
locations [1] - 15:6
Longshore [3] - 15:4, 16:1, 16:21
look [8] - 4:2, 11:6, 20:20, 21:25, 27:10, 30:2, 36:24, 39:16
looked [1] - 13:9, 17:8, 17:13, 17:14
looking [4] - 11:15, 12:10, 16:9, 39:12
looks [2] - 21:25, 32:5
lose [1] - 13:12

**M**

machine [1] - 40:9
magistrate [8] - 31:1, 31:3, 31:14, 35:13, 36:17, 36:23, 37:3
Magistrate [3] - 35:18, 35:21, 36:9
maintained [1] - 16:3
maintaining [1] - 16:9
maintenance [2] -

15:15, 16:7
market [3] - 13:11, 16:11, 20:6
MARYLAND [2] - 1:2, 1:11
Maryland [3] - 2:9, 20:4, 40:5
material [1] - 38:7
materially [4] - 20:11, 20:12, 24:25, 28:11
matter [5] - 32:20, 36:8, 37:20, 37:21, 40:8
matters [7] - 15:11, 15:12, 31:2, 35:24, 36:13, 37:14
Meagher [3] - 3:24, 26:20, 28:24
MEAGHER [3] - 2:8, 3:23, 26:20
mean [16] - 7:12, 13:17, 14:15, 16:24, 16:25, 18:9, 20:20, 21:14, 21:15, 21:18, 26:17, 29:19, 30:10, 32:5, 34:16
meaning [1] - 25:16
means [1] - 21:3
memorandum [2] - 19:6, 22:20, 24:20
mentions [1] - 28:24
merits [2] - 12:10, 24:4
Messitte [1] - 3:2
MESSITTE [1] - 1:10
met [2] - 30:18, 31:3
might [2] - 18:11, 26:18
million [2] - 9:13, 16:22
mind [4] - 4:18, 26:6, 28:18, 37:19
minutes [1] - 12:17
misread [1] - 17:21
misstating [2] - 8:12, 8:13
mistake [1] - 28:5
misunderstanding [1] - 6:10
moment [1] - 29:12
money [4] - 7:9, 7:10, 13:12, 38:12
month [1] - 19:13
months [6] - 30:10, 34:19, 34:20, 34:24, 38:3
moot [2] - 29:22, 38:20, 39:1
morning [5] - 3:1, 3:12, 3:16, 3:20,

3:23
**MOSELEY** [1] - 2:3
**most** [1] - 6:25
**motion** [23] - 3:9,
23:5, 27:19, 27:20,
27:21, 29:2, 29:4,
29:14, 29:22, 32:15,
32:16, 33:3, 33:7,
33:8, 33:10, 33:17,
33:22, 34:10, 34:12,
36:5, 36:15, 37:15,
38:20
**motions** [19] - 24:19,
24:20, 30:23, 31:13,
33:11, 33:23, 35:8,
35:13, 36:3, 36:7,
36:14, 36:19, 37:2,
37:5, 37:15, 37:20,
38:5, 38:6, 38:19
**move** [3] - 21:10,
28:17, 35:25
**MR** [24] - 3:12, 3:23,
4:21, 5:10, 8:14,
9:11, 10:3, 11:5,
11:14, 17:2, 18:10,
22:14, 24:13, 26:7,
26:20, 28:1, 34:21,
34:24, 35:20, 36:3,
36:7, 38:22, 39:11,
39:18
**MS** [27] - 3:16, 3:20,
6:5, 6:9, 6:15, 7:7,
7:10, 7:15, 7:25,
12:14, 14:9, 15:1,
15:23, 17:22, 23:7,
30:12, 31:5, 31:8,
31:20, 35:11, 36:11,
36:21, 37:8, 37:10,
37:12, 39:9, 39:13
**myriad** [1] - 16:5

## N

**name** [1] - 31:5
**narrow** [4] - 6:1,
12:15, 18:23, 20:14
**narrowly** [1] - 26:14
**nature** [3] - 28:9,
28:15, 33:4
**NE** [1] - 1:20
**necessarily** [4] -
11:12, 12:3, 27:15,
27:22
**necessary** [2] - 15:9,
22:6
**need** [27] - 6:4, 9:16,
10:16, 11:20, 12:17,
16:24, 17:15, 21:22,
22:25, 23:2, 23:20,
24:6, 24:7, 26:11,

26:19, 28:22, 30:5,
30:6, 30:10, 31:16,
31:20, 31:24, 34:18,
34:19, 35:3, 39:15
**needed** [1] - 18:5
**needs** [4] - 24:12,
29:20, 37:1, 37:18
**never** [6] - 8:4, 19:12,
24:1, 24:4, 24:5,
32:11
**new** [3] - 31:15, 34:17,
35:22
**next** [3] - 8:2, 30:8,
30:9
**nickel** [1] - 19:12
**Nicole** [1] - 3:24
**NICOLE** [1] - 2:8
**NO** [1] - 1:4
**note** [1] - 12:19
**NOTES** [1] - 1:24
**nothing** [2] - 13:18,
29:20
**notice** [1] - 25:7
**November** [2] - 39:10,
39:14
**number** [1] - 21:10
**NW** [1] - 1:16, 2:4

## O

**objective** [2] - 5:16,
11:17
**obligation** [8] - 8:1,
9:22, 9:24, 10:1,
14:3, 19:23, 21:14
**obligations** [11] - 5:1,
5:21, 9:6, 9:22,
10:19, 10:24, 11:19,
19:1, 19:17, 25:13,
26:4
**obliged** [1] - 33:13
**obligee** [1] - 28:10
**obtained** [2] - 16:19,
21:12
**obviously** [3] - 23:18,
24:10, 37:20
**October** [1] - 40:17
**OCTOBER** [1] - 1:11
**OF** [5] - 1:2, 1:7, 1:9,
1:18, 1:24
**office** [4] - 14:24,
15:3, 15:7, 15:13
**OFFICIAL** [1] - 1:23
**Official** [1] - 40:3
**official** [1] - 40:17
**often** [2] - 27:17,
27:18
**once** [2] - 19:2, 36:16
**one** [12] - 13:13,
21:10, 22:3, 26:9,

28:19, 29:1, 31:6,
33:11, 35:12, 37:17,
38:24, 39:1
**ones** [1] - 16:2
**ongoing** [2] - 5:5, 9:25
**open** [1] - 34:11
**operating** [7] - 7:11,
9:15, 9:17, 14:11,
17:8, 17:13, 21:9
**opinion** [2] - 20:22,
24:20
**opportunities** [1] -
15:17
**opportunity** [3] - 13:8,
13:16, 33:18
**oppose** [1] - 29:17
**opposition** [5] - 27:21,
33:22, 36:5, 36:22,
38:17
**opted** [1] - 13:15
**order** [9] - 9:4, 19:5,
24:20, 31:17, 35:17,
36:12, 36:13, 39:1,
39:2
**orders** [1] - 5:11
**ordinarily** [1] - 35:25
**organization** [1] - 30:3
**original** [1] - 28:9
**originally** [1] - 35:6
**otherwise** [2] - 6:3,
38:20
**ought** [1] - 4:12
**ourselves** [1] - 24:15
**outcome** [4] - 14:18,
38:9, 40:13
**overall** [1] - 22:10
**own** [2] - 10:7, 11:24
**owned** [2] - 12:19,
13:2
**owner** [2] - 15:4, 16:1

## P

**p.m** [1] - 39:21
**pages** [1] - 20:5
**paid** [4] - 12:16, 16:7,
19:12, 19:13
**paper** [3] - 14:25,
21:25, 30:3
**papers** [2] - 4:2, 16:6
**parallel** [1] - 27:16
**parameters** [1] - 26:10
**part** [1] - 13:8
**particular** [1] - 14:8
**particularly** [1] - 28:25
**parties** [10] - 5:7, 8:10,
14:11, 24:19, 25:6,
28:25, 36:15, 36:16,
39:4, 40:9
**partner** [1] - 7:17

**party** [7] - 9:19, 12:5,
20:10, 25:18, 27:6,
38:11, 40:12
**passed** [1] - 39:4
**Paul** [1] - 15:24
**pay** [9] - 6:18, 7:9,
9:13, 9:21, 9:25,
10:2, 10:3, 10:7,
14:17
**payments** [5] - 7:5,
9:9, 11:4, 16:4,
20:25
**peace** [1] - 6:2
**Peachtree** [1] - 1:20
**pending** [2] - 36:3,
36:7
**people** [3] - 15:24,
18:14, 22:10
**percent** [9] - 9:20,
11:23, 12:19, 12:24,
13:2, 15:3, 16:1,
17:11, 17:12
**perform** [2] - 11:13,
21:18
**performance** [1] -
22:2
**perhaps** [1] - 30:15
**period** [1] - 26:4
**periodic** [5] - 5:24,
8:19, 9:1, 17:6,
17:17
**periodically** [1] - 7:5
**permit** [2] - 32:8
**perpetuity** [3] - 6:19,
7:18, 7:23
**person** [1] - 16:18
**perspective** [1] -
35:12
**PETER** [1] - 1:10
**phone** [3] - 3:7, 3:15,
3:25
**picture** [1] - 12:20
**pike** [1] - 18:12
**PILLSBURY** [1] - 1:14
**PIPER** [1] - 2:7
**PITTMAN** [1] - 1:14
**PJM-20-1502** [1] - 1:4
**place** [6] - 30:2, 30:8,
31:9, 31:17, 31:24,
34:17
**plaintiff** [21] - 3:11,
4:14, 4:16, 7:14, 8:5,
12:7, 13:13, 13:19,
16:18, 19:2, 19:3,
20:9, 24:5, 24:22,
26:18, 26:24, 27:3,
30:14, 32:2, 32:14,
35:14
**Plaintiff** [1] - 1:5
**PLAINTIFF** [1] - 1:13

**plaintiff's** [2] - 4:19,
5:16
**plaintiffs** [4] - 3:13,
13:14, 16:6, 30:18
**plan** [10] - 8:3, 8:4,
8:5, 8:6, 8:7, 8:11,
8:15, 31:10
**planned** [1] - 35:6
**plans** [3] - 8:23, 10:22,
18:13
**play** [1] - 32:12
**PLAZA** [1] - 1:4
**pleading** [1] - 33:4
**PLLC** [1] - 2:3
**point** [11] - 13:13,
13:23, 16:15, 22:8,
22:18, 26:11, 27:21,
33:23, 35:1, 35:3,
38:24
**poses** [1] - 20:8
**position** [1] - 6:1
**positions** [1] - 36:24
**possible** [1] - 35:4
**posture** [2] - 24:15,
27:24
**pot** [1] - 39:16
**potential** [1] - 24:4
**precisely** [1] - 5:10
**prejudice** [3] - 25:20,
28:10, 32:13
**prejudiced** [3] - 24:24,
24:25, 32:9
**preliminary** [1] - 4:4
**prepared** [6] - 10:19,
17:3, 17:14, 21:2,
22:16, 36:14
**present** [2] - 6:23,
8:24
**presented** [1] - 22:19
**presently** [1] - 7:10
**presumably** [2] -
21:19, 37:13
**pretrial** [1] - 35:8
**previously** [2] - 22:23,
40:7
**principal** [1] - 22:2
**principals** [4] - 15:4,
15:10, 15:13, 29:6
**principle** [2] - 31:25,
34:4
**privative** [2] - 4:24,
11:18
**pro** [2] - 28:19, 29:16
**problem** [1] - 17:22
**procedural** [1] - 24:14
**procedurally** [1] -
27:24
**procedure** [1] - 24:11
**procedures** [1] - 23:24
**proceed** [2] - 30:23,

31:10
proceedings [2] - 39:21, 40:6
PROCEEDINGS [1] - 1:9
process [2] - 14:12, 20:17
produce [1] - 39:5
profitable [6] - 6:21, 10:5, 13:25, 14:18, 15:17, 18:7
prompted [1] - 23:5
proper [1] - 9:10
properly [1] - 10:2
property [24] - 6:17, 10:6, 10:10, 10:11, 12:21, 13:1, 13:5, 13:6, 13:11, 13:14, 13:20, 13:25, 14:3, 14:4, 14:13, 14:17, 14:21, 15:14, 16:3, 18:2, 18:3, 18:6, 18:25, 19:25
proportion [1] - 14:16
proposal [3] - 5:4, 5:14, 18:15
propose [2] - 18:22, 29:14
proposing [1] - 34:15
protracted [1] - 5:15
provide [8] - 5:20, 5:24, 8:19, 9:1, 10:18, 16:20, 22:17, 35:18
provided [2] - 8:18, 22:17
provides [1] - 20:16
provisions [1] - 19:5
purpose [5] - 6:17, 8:12, 10:8, 10:9, 10:14
purposes [1] - 11:24
pursue [2] - 11:5, 35:2
pursuing [1] - 5:2
push [1] - 31:20
put [6] - 7:1, 14:13, 18:22, 19:1, 24:5, 33:16

**Q**

quarterly [2] - 9:12, 9:21, 10:25
questioning [1] - 28:12
questions [2] - 5:5, 18:17
quickly [2] - 7:8, 35:12
quite [4] - 14:2, 28:2, 32:11, 33:5

**R**

raise [2] - 10:9, 24:11
raised [3] - 8:16, 24:17, 25:6
ramp [1] - 19:8
rather [3] - 7:20, 13:6, 29:18
reached [1] - 12:11
read [1] - 36:14
ready [1] - 36:16
Real [1] - 13:2
realistic [1] - 37:7
reality [1] - 14:15
realized [1] - 23:16
really [11] - 12:8, 21:16, 27:21, 28:6, 28:12, 28:14, 29:10, 30:15, 34:9, 37:22, 38:1
reason [5] - 21:6, 27:8, 27:25, 28:25, 33:25
reasonable [2] - 35:11, 35:15
reasons [1] - 22:1
REBECCA [1] - 1:19
Rebecca [2] - 3:17, 6:5
received [2] - 16:6, 30:19
recent [1] - 5:11
record [2] - 9:16, 22:22
recorded [1] - 40:9
recourse [1] - 12:5
reference [1] - 5:3
referencing [1] - 9:14
referred [2] - 30:25, 31:1, 36:8
referring [1] - 36:13
regard [2] - 32:20, 33:22
regular [1] - 30:23
relating [1] - 26:25
relative [2] - 28:8, 31:25
relevant [1] - 30:20
relief [4] - 25:4, 25:18, 27:4, 27:9
relieve [1] - 26:3
rely [2] - 5:17, 18:16
remain [1] - 32:18
remaining [1] - 8:15
remains [5] - 4:24, 4:25, 11:18, 25:17
remedy [2] - 11:4, 11:5
Renee [6] - 1:23, 3:4,

3:5, 40:3, 40:15, 40:16
rent [5] - 9:13, 9:25, 10:7, 14:18, 16:3
repeating [1] - 20:18
reply [1] - 10:5
reported [2] - 21:12, 40:6
Reporter [2] - 40:3, 40:17
REPORTER [2] - 1:23, 3:4
reporter [2] - 3:3, 4:7
represent [1] - 26:21
representation [1] - 20:15
representative [4] - 18:23, 19:2, 26:8, 26:15
represented [2] - 10:17, 22:19
request [3] - 14:8, 14:12, 14:14
requested [1] - 14:14
requests [12] - 5:24, 8:19, 9:1, 9:21, 10:25, 16:15, 16:17, 17:6, 17:9, 17:18, 18:19, 29:21
required [2] - 5:12, 20:9
reserve [1] - 26:12
resolution [1] - 35:23
respect [1] - 29:21
respond [4] - 26:23, 29:16, 32:5, 34:10
response [6] - 14:7, 14:10, 18:17, 32:24, 33:19, 38:15
responses [5] - 16:15, 16:17, 17:14, 20:5, 30:19
responsibility [1] - 22:2
restatement [9] - 5:3, 5:13, 19:5, 20:9, 24:18, 24:22, 28:6, 31:25, 34:4
restructuring [2] - 18:14, 19:11
rights [2] - 20:11, 24:25
ripe [2] - 33:5, 36:16
RMR [2] - 1:23, 40:16
road [1] - 34:12
ROCK [2] - 1:4, 2:2
Rock [11] - 3:8, 3:19, 3:21, 15:1, 15:8, 20:4, 23:7, 30:12, 31:10, 37:8, 37:12

rolling [1] - 37:3
RPR [2] - 1:23, 40:16
RSD [37] - 4:24, 5:23, 7:13, 7:15, 8:3, 8:18, 8:25, 9:19, 9:20, 9:21, 10:1, 10:9, 10:13, 10:24, 11:4, 11:6, 11:24, 12:19, 12:25, 14:8, 14:13, 14:15, 14:24, 15:20, 16:19, 16:20, 18:22, 18:24, 20:25, 21:1, 21:11, 23:2, 26:10, 26:15, 30:1
RSD's [2] - 10:18, 17:5
Ruben [1] - 15:25
rule [2] - 28:6, 32:3
ruled [1] - 23:4
rules [1] - 36:15
ruling [5] - 11:15, 11:16, 11:17, 11:20, 26:2
run [2] - 14:16, 18:6
running [1] - 14:1
rush [1] - 13:10

**S**

sale [1] - 20:4
SARA [1] - 2:3
Sara [2] - 23:7, 30:12
Sarah [3] - 3:20, 15:1, 36:12
satisfied [3] - 25:9, 25:11, 29:20
satisfy [8] - 5:20, 9:5, 10:19, 10:24, 11:19, 18:25, 19:17, 25:12
satisfying [1] - 4:25
savvy [1] - 20:2
scheduling [3] - 31:17, 39:1, 39:2
scope [2] - 26:9, 26:10, 30:16
search [1] - 20:3
Section [1] - 17:9
see [17] - 12:8, 15:16, 20:5, 25:15, 29:8, 29:10, 29:23, 30:16, 32:4, 32:23, 33:6, 33:15, 33:19, 34:12, 35:2, 38:14, 38:19
seek [4] - 23:20, 24:6, 25:4, 30:17
seeking [2] - 12:1, 25:18
seem [4] - 22:1, 22:9, 30:2, 33:23
self [3] - 8:8, 10:10, 10:11

self-supporting [1] - 8:8
self-sustaining [2] - 10:10, 10:11
send [2] - 36:15, 36:17
sense [4] - 16:10, 31:23, 33:24, 34:20
separate [2] - 15:3, 32:20
September [1] - 5:22
sequence [1] - 31:23
seriously [1] - 31:11
serve [1] - 19:13
set [6] - 6:19, 7:16, 25:5, 25:16, 31:25, 35:22
Seventeenth [1] - 1:16
several [2] - 22:22, 30:18
SEYFARTH [1] - 1:19
Seyfarth [1] - 3:17
shall [2] - 17:10, 17:11
share [2] - 6:11, 7:16
SHAW [2] - 1:14, 1:19
Shaw [1] - 3:17
short [1] - 16:16
shorthand [1] - 40:9
show [1] - 21:6
showing [2] - 16:7, 21:7
side [3] - 24:7, 26:17, 29:12
sides [1] - 34:15
similar [2] - 15:11, 35:14
simms [1] - 31:7
Simms [2] - 35:21, 36:9
simply [4] - 36:8, 38:1, 38:6, 38:7
sit [7] - 10:21, 10:22, 17:16, 18:18, 20:7, 20:15, 28:2
sitting [2] - 19:11, 19:25
situation [2] - 6:16, 28:10
six [1] - 19:13
Smith [1] - 2:9
smoothly [1] - 14:2
snapshot [2] - 8:9, 17:23
so-called [1] - 12:9
sole [1] - 4:24
solely [1] - 23:11
solution [2] - 13:4, 14:20
sometimes [1] - 16:12
somewhat [3] - 14:9,

17:5, 17:7
**soon** [1] - 34:7
**sorry** [2] - 37:9, 38:16
**sort** [7] - 23:15, 28:23, 30:2, 30:5, 31:25, 32:14
**sound** [1] - 12:20
**sounds** [2] - 35:11, 35:15
**source** [8] - 4:24, 14:7, 17:5, 17:17, 18:18, 21:12, 21:19, 21:23
**SOUTHERN** [1] - 1:3
**speaking** [1] - 4:7
**specialists** [1] - 13:3
**specific** [3] - 4:3, 4:15, 16:15
**specifically** [2] - 17:8, 24:21
**spend** [1] - 32:25
**spinning** [1] - 27:11
**SPRING** [1] - 1:4
**Spring** [2] - 3:8, 3:19
**SPRINGS** [1] - 2:2
**Springs** [9] - 3:21, 15:2, 15:8, 20:4, 23:8, 30:13, 31:10, 37:8, 37:12
**stage** [1] - 23:21
**standing** [2] - 36:12, 36:13
**start** [5] - 6:8, 12:15, 26:13, 34:6, 34:18
**state** [2] - 8:17, 27:5
**statement** [5] - 5:25, 9:2, 11:1, 14:6, 24:14
**statements** [1] - 40:8
**STATES** [2] - 1:1, 1:10
**States** [1] - 40:4
**statute** [1] - 19:20
**stay** [1] - 31:9
**stays** [1] - 30:22
**stenographically** [1] - 40:6
**STENOTYPE** [1] - 1:24
**step** [1] - 27:23
**stick** [1] - 35:24
**still** [5] - 9:9, 13:23, 22:23, 30:25, 32:18
**stop** [1] - 11:4
**story** [1] - 38:10
**straightforward** [1] - 17:20
**straining** [1] - 29:8
**strategies** [1] - 13:22
**strategy** [4] - 10:6, 11:25, 12:25, 19:18

**stream** [3] - 6:22, 10:7, 14:19
**Street** [3] - 1:16, 1:20, 2:4
**strong** [2] - 16:11, 31:12
**structure** [1] - 7:11
**stuff** [1] - 20:6
**submission** [1] - 5:22, 22:20
**submit** [2] - 24:19, 36:1
**submitted** [1] - 35:7
**substance** [1] - 30:3
**subtenants** [1] - 6:20
**sudden** [1] - 24:10
**sufficient** [1] - 10:10, 28:8
**suggest** [1] - 18:16
**suggested** [1] - 11:11
**suggesting** [2] - 8:2, 8:9
**Suite** [2] - 1:20, 2:4
**summary** [10] - 29:4, 32:16, 33:8, 33:10, 33:11, 34:13, 37:15, 37:25, 38:5
**supervision** [1] - 40:10
**supplement** [2] - 14:10, 36:24
**support** [1] - 38:5
**supporting** [1] - 8:8
**surprise** [1] - 25:20
**surprises** [1] - 35:1
**survives** [2] - 32:21, 38:14
**sustaining** [2] - 10:10, 10:11

## T

**table** [1] - 30:22
**tandem** [1] - 27:17
**taxes** [2] - 9:14, 16:4
**Taylor** [1] - 15:24
**tee** [3] - 19:3, 25:14, 25:24
**teed** [1] - 33:16
**telephone** [2] - 23:25, 24:11
**TELEPHONIC** [1] - 1:9
**ten** [1] - 12:17
**tenant** [8] - 6:16, 6:19, 6:20, 8:5, 8:6, 13:18, 14:13, 16:9
**tens** [1] - 14:9
**term** [3] - 7:20, 7:24, 14:20
**terms** [3] - 11:25,

28:12, 34:9
**terribly** [1] - 32:9
**tested** [1] - 29:2
**testimony** [1] - 40:8
**THE** [52] - 1:1, 1:2, 1:10, 1:13, 1:18, 2:2, 2:6, 3:1, 3:5, 3:14, 3:19, 3:22, 4:1, 5:8, 6:8, 6:13, 7:3, 7:8, 7:12, 7:19, 9:8, 10:1, 11:3, 11:10, 12:2, 14:6, 14:22, 15:18, 16:14, 17:19, 20:18, 26:5, 26:16, 27:10, 28:5, 31:3, 31:7, 31:19, 31:21, 34:23, 35:9, 35:16, 35:21, 36:4, 36:8, 36:19, 36:22, 37:9, 37:11, 37:13, 39:14, 39:19
**themselves** [1] - 36:16
**theories** [1] - 5:2
**theory** [11] - 5:17, 19:4, 23:11, 24:9, 25:3, 25:5, 27:4, 27:9, 28:12, 29:1, 29:5
**thereafter** [2] - 34:10, 40:10
**therefore** [1] - 33:13
**thereof** [1] - 40:13
**thousands** [1] - 16:6
**three** [3] - 30:9, 34:19, 38:2
**THURSDAY** [1] - 1:11
**timeline** [2] - 30:6, 35:22
**timely** [4] - 7:5, 9:10, 19:18, 39:8
**today** [21] - 6:1, 10:13, 10:16, 10:21, 10:22, 11:2, 17:16, 17:24, 18:5, 19:9, 19:21, 20:7, 20:15, 22:20, 22:22, 24:15, 25:8, 28:2, 30:5, 34:24, 35:17
**together** [3] - 4:17, 14:13, 27:14
**tomorrow** [5] - 9:24, 18:1, 18:9, 18:12, 19:23
**took** [2] - 10:12, 30:2
**top** [1] - 13:3
**transaction** [1] - 21:25
**TRANSAMERICA** [1] - 2:6
**Transamerica** [7] - 3:22, 3:24, 26:11, 26:21, 26:25, 27:5,

27:7
**transcribed** [1] - 40:10
**TRANSCRIPT** [1] - 1:9
**transcript** [1] - 40:6
**transcription** [1] - 40:11
**TRANSCRIPTION** [1] - 1:24
**transfer** [2] - 7:13, 30:2
**transferred** [1] - 22:3
**triable** [1] - 38:2
**tried** [1] - 27:17
**Troy** [1] - 15:24
**true** [4] - 11:1, 18:17, 25:18, 40:5
**try** [1] - 4:16
**trying** [7] - 4:11, 13:22, 13:24, 30:17, 31:22, 33:15, 35:25
**two** [17] - 12:23, 13:1, 15:3, 15:4, 15:9, 15:13, 15:19, 15:23, 15:25, 16:1, 18:14, 19:10, 21:10, 23:21, 24:10, 34:24, 37:14
**type** [1] - 20:3
**typed** [1] - 20:3

## U

**ultimate** [4] - 4:22, 5:16, 11:17, 19:15
**ultimately** [4] - 6:16, 12:4, 26:19
**under** [21] - 5:13, 9:6, 11:7, 14:2, 15:21, 19:1, 19:4, 20:9, 20:25, 21:19, 22:2, 24:18, 24:21, 24:25, 25:13, 25:17, 26:4, 28:6, 32:2, 34:4, 40:10
**underlying** [1] - 19:5
**understood** [2] - 10:8, 17:22
**unearth** [1] - 29:5
**unimpeded** [1] - 33:15
**UNITED** [2] - 1:1, 1:10
**United** [1] - 40:4
**unless** [3] - 4:3, 21:20, 27:24
**unnecessarily** [1] - 32:6
**unreasonable** [1] - 13:10
**unscramble** [1] - 31:22
**up** [15] - 6:20, 7:16, 12:24, 13:11, 17:24,

18:22, 19:1, 19:3, 20:5, 22:21, 25:15, 25:24, 31:13, 33:16, 35:22

## V

**vacancies** [1] - 13:17
**valuable** [1] - 13:25
**various** [2] - 16:8, 22:1
**venture** [2] - 7:17, 16:21
**Ventures** [3] - 15:4, 16:1, 16:22
**viable** [1] - 19:24
**view** [7] - 6:11, 6:13, 6:14, 6:15, 13:10, 10:24, 29:11
**void** [4] - 24:18, 24:23, 25:4, 25:15
**voiding** [1] - 11:22, 19:4
**vs** [1] - 3:8

## W

**wait** [1] - 16:12
**waiting** [1] - 27:1
**walked** [1] - 12:21
**wants** [2] - 12:7, 16:18
**Warranty** [3] - 3:8, 3:14, 3:17
**WARRANTY** [2] - 1:7, 1:18
**Washington** [1] - 2:5
**washington** [1] - 1:16
**weeds** [1] - 21:17
**wheels** [1] - 27:11
**wherewithal** [1] - 9:5
**whole** [3] - 14:17, 28:20, 34:11
**WILLIAM** [1] - 1:15
**willing** [1] - 20:13
**WINTHROP** [1] - 1:14
**wish** [1] - 4:4
**wishes** [1] - 39:20
**witnesses** [2] - 26:9, 40:8
**woods** [1] - 11:12
**word** [6] - 5:18, 5:19, 10:20, 17:4, 17:15, 22:17
**words** [2] - 8:12, 20:11
**workout** [1] - 13:3
**works** [1] - 6:24
**world** [2] - 10:22, 18:14
**worry** [1] - 31:19,

31:21, 34:23
**writing** [3] - 19:11,
35:18, 35:21

## Y

**year** [2] - 16:25, 25:22
**years** [12] - 8:2, 8:23,
10:23, 13:15, 17:1,
17:16, 18:18, 19:25,
23:21, 24:10
**yourself** [3] - 3:3,
3:11, 20:18