# EXHIBIT N

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND
(GREENBELT DIVISION)

Rock Spring Plaza II, LLC,
6500 Rock Spring Dr., Suite 600
Bethesda, MD 20817,

           Plaintiff,

         v.

Investors Warranty of America, LLC,
4333 Edgewood Rd. Ne
Cedar Rapids, IA 52499,

Rock Springs Drive, LLC,
1519 York Road
Lutherville, MD 21093,

    and

Jane Does,

          Defendants.

Case No. _____

**COMPLAINT**

Plaintiff Rock Spring Plaza II, LLC ("Rock Spring Plaza," "Plaintiff,"
or "Landlord"), by counsel, files this Complaint against Defendants Investors Warranty of
America, LLC ("Investors Warranty" or "Tenant"), Rock Springs Drive, LLC ("Rock Springs
LLC" or "Assignee"), and Jane Does, certain unidentified individuals and entities (collectively,
with Investors Warranty and Rock Springs LLC, "Defendants"), and in support thereof alleges as
follows:

## NATURE OF ACTION

1.    This is an action brought by the Landlord against Defendants seeking a declaratory judgment that the conveyance of a leasehold interest from Tenant to Assignee was fraudulent.

## PARTIES

2.    Plaintiff Rock Spring Plaza is a Maryland limited liability company with an address at 6500 Rock Spring Drive, Suite 600, Bethesda, MD 20817.  Plaintiff's members are citizens of the state of Maryland.

3.    Defendant Investors Warranty is an Iowa limited liability company with an address at 4333 Edgewood Rd. Ne, Cedar Rapids, IA 52499.  Investors Warranty's member is a citizen of Delaware and California.

4.    Defendant Rock Springs LLC is a Maryland limited liability company with an address at 1519 York Road, Lutherville, MD 21093.  One of Rock Springs LLC's members is a citizen of Delaware and California.  On information and belief, none of Rock Springs LLC's members are citizens of the state of Maryland.

5.    Jane Doe Defendants are certain unknown individuals and entities who directed the actions giving rise to the fraudulent conveyance, and who personally stand to gain financially from the fraudulent conveyance.

## JURISDICTION AND VENUE

6.    This Court has subject matter jurisdiction over this action under 28 U.S.C. § 1332 because there is diversity of citizenship between the parties and the amount in controversy exceeds the sum or value of $75,000.

7.    This Court has personal jurisdiction over Defendants because they transact business in Maryland and Plaintiff's claims arise directly out of that business.

8.       Venue is proper under 28 U.S.C. § 1391(b)(2) because a substantial part of the acts or omissions giving rise to Plaintiff's claim occurred in Maryland and the property at issue is located in Maryland.

9.       This Court has the authority to grant declaratory relief pursuant to 28 U.S.C. § 2201.

## FACTUAL ALLEGATIONS

### A.    The Ground Lease

10.      On November 14, 1990, Landlord's predecessor-in-interest, Anne Camalier, entered into an Amended and Restated Ground Lease Indenture ("Ground Lease") with Tenant's predecessor-in-interest, Rock Spring II Limited Partnership. A "ground lease" is a long-term lease of land only, as opposed to a lease of a building on land or of a unit in a building. *See* Ground Lease, BLACK'S LAW DICTIONARY (10th ed. 2014). Ground leases are ubiquitous in large commercial real-estate transactions in Maryland and across the country.

11.      The tenant under a ground lease typically operates a business out of the property on the land in order to generate revenues that it will then use to, among other things, pay the "ground rent" to the landlord. Alternatively, the tenant may sublease the property to one or more third party sublessees, to operate a business out of the property. In that case, the tenant to the ground lease would be able to use the rent it receives from its sublessees to pay the ground rent to the landlord. If the tenant builds any improvements (*i.e.*, buildings) on the land, those improvements usually revert to the landlord when the ground lease terminates.

12.      Under the Ground Lease at issue here, Landlord leased to Tenant's predecessor-in-interest the land located at 6560 Rockledge Drive in Bethesda, Maryland (the "Property"). The term of the Ground Lease is 99 years and expires in November 2089.

3

13.     Tenant is a subsidiary of Transamerica Financial Life Insurance Company ("Transamerica"), a multibillion-dollar insurance company.  Under the terms of the Ground Lease, Tenant agreed to pay Landlord an escalating annual ground rent, payable in monthly one-twelfth installments due on the first of each month.  The current monthly installment of ground rent is $132,678.28.

**B.      Tenant Conveys Its Interest in the Ground Lease to Assignee**

14.     On August 31, 2017, Landlord received a one-page letter from Tenant indicating that Tenant had assigned its interest in the Ground Lease to Rock Springs Drive, LLC ("Assignee"), a limited liability company that was formed just six days earlier, on August 25, 2017. *See* Exhibit A, Letter from Tenant to Landlord (Aug. 31, 2017); Exhibit B, Rock Springs Drive, LLC Registration Information.

15.     In its letter to Landlord, Tenant did not explain a business purpose for the assignment.  Nor did Tenant provide any information about the identity of Assignee aside from its name.  The letter stated only that if Landlord had any questions, it should contact Robert Barron, an attorney in Fort Lauderdale, Florida.

16.     From August 2017 to June 2020, Tenant has paid monthly rent to Landlord. However, on information and belief, Tenant immediately wound down commercial activity at the Property upon acquiring its purported interest in August 2017, and there has been no evidence of meaningful commercial activity since that date.  Tenant has not operated a business out of the Property or subleased the Property to a third party.

17.     On information and belief, Tenant conveyed its interest in the Ground Lease to the defendant Assignee for the sole purpose of shielding Transamerica and Tenant from their obligation to pay ground rent.

**C.    Assignee Refuses to Provide Any Information About Its Identity or Intentions**

18.    Immediately after it received Tenant's letter, Landlord contacted Assignee's attorney, Mr. Barron, to inquire as to the identity and intentions of Assignee.  Mr. Barron declined to provide the requested information.  This was unusual, as the landlord and tenant under a ground lease typically communicate regularly about the tenant's intentions for the property given that most ground leases (including the Ground Lease between Landlord and Tenant) obligate tenant to pay real estate taxes and to repair and maintain improvements on the property in which the landlord retains a reversionary interest.

19.    While Mr. Barron initially indicated that he would contact his client about potentially brokering an introduction with Landlord, Landlord heard nothing from Assignee for five months.

20.    On February 22, 2018, Landlord wrote to Assignee again to follow up on its request for basic information about the identity and intentions of Assignee.  *See* Exhibit C, Letter from Landlord to Assignee (Feb. 22, 2018).  Landlord noted in the letter that it had reviewed the land records of Montgomery County and determined that Defendants had not recorded the assignment or paid recordation taxes.  *Id.* at 1.  Landlord also noted that there had been no business activity at the Property since the conveyance in August 2017.  *Id.*  Landlord explained that the lack of communication and activity from Assignee was giving Landlord "reasonable insecurity with respect to Assignee's ability to perform under the Ground Lease, including without limitation its financial ability to pay rent, taxes, insurance, utilities, and to maintain the Property in first class operating condition and repair."  *Id.* at 2.  Landlord also explained that the identity of Assignee's members was essential for Landlord to comply with federal statutes and regulations that place restrictions on Landlord's dealings with certain entities.  *Id.*  Landlord reiterated its request for information and indicated a willingness to travel to Florida for the meeting.  *Id.*

5

21.    Over a month later, on March 30, 2018, Mr. Barron responded to Landlord but refused to provide the requested information and refused to meet with Landlord. *See* <u>Exhibit D</u>, Letter from Assignee to Landlord (Mar. 22, 2018).  Assignee's purported reason for refusing to provide the information was that the Ground Lease did not require Assignee to "provide to Landlord any additional information regarding [Assignee's] strategic and proprietary commercial activity and business plans with respect to the property," *id.* at 3, even though Landlord had not requested any of Assignee's "strategic and proprietary" information.

22.    On April 25, 2018, Landlord followed up again by letter, explaining that it was not seeking any strategic and proprietary information and reiterating its request for basic information about Assignee. *See* <u>Exhibit E</u>, Letter from Landlord to Assignee (Apr. 25, 2018).  Landlord noted that Assignee's furtiveness was causing Landlord concern as to the legitimacy of the purported conveyance. *Id.* at 1.  Landlord also noted that it was standard practice for landlords and tenants to maintain regular channels of communication and that Landlord was regularly receiving requests for proposals from potential subtenants, including subtenants who were seeking to occupy several office buildings such as the buildings on the Property, which on information and belief had been vacant for several years. *Id.* at 2.  Landlord noted that if Assignee was legitimately interested in engaging in commercial activity at the Property, it would be in both parties' interests to be able to discuss these potential opportunities as they arose. *Id.*  Finally, Landlord explained that Assignee had a legal obligation to record the assignment of the leasehold interest under Maryland law but that Assignee had failed to do so, further calling into question whether Assignee was a legitimate entity. *Id.* at 3.

23.    Assignee did not respond to Landlord's letter.

6

**D.     Assignee Has Refused to Engage in any Commercial Activity at the Property or Engage with Potential Subtenants**

24.     Since the conveyance in August 2017, the Property has languished in vacancy for over two years, without any commercial activity at the Property.  Assignee has repeatedly refused to explore numerous opportunities to sublease the Property to commercially viable tenants.  For example, in November 2017, Landlord learned that Assignee had been approached about a potential opportunity to sublease the Property to Marriott, which was looking to lease a property just like the Property that had been conveyed to Assignee.  Assignee, however, inexplicably declined to submit a proposal for the Marriott deal.

25.     Similarly, on June 6, 2019, Landlord informed Assignee that the General Services Administration ("GSA") had expressed an interest in a long-term lease at the Property.  *See* Exhibit E, Letter from Landlord to Assignee (June 6, 2019).  Landlord offered to pursue discussions with GSA jointly with the goal of potentially modifying the Ground Lease if discussions proved successful.  Assignee rejected further exploration of the GSA opportunity, asserting without explanation that it was not financially viable.  Landlord requested that Assignee consult with its broker to evaluate the lease rental rate by GSA's deadline for submitting the best offer lease rent.  On information and belief, Assignee did not follow up with its broker or with the GSA, and thus lost the GSA sublease opportunity.

**E.     Landlord Learns of Assignee's Relationship to Tenant and Transamerica**

26.     While Assignee has refused to provide any information as to its true identity, Landlord has been able to determine, through a review of Transamerica's public filings and other publicly available information, that Assignee is in fact an affiliate of Tenant and, ultimately, a subsidiary of Transamerica, confirming Landlord's suspicions that Assignee was created for the sole purpose of shielding Transamerica and Tenant from their obligation to pay ground rent.  In

effect, Transamerica and Tenant retained possession and control of the property after Tenant's interest was purportedly assigned to Assignee

27.     For example, Assignee's Articles of Organization identify a "[f]iling party[] return address" of 2457 Collins Ave, PH2, Miami Beach, Florida 33140." *See* Exhibit F, Articles of Organization for Rock Springs Drive, LLC.  A public-records search revealed that the resident of 2457 Collins Ave is Troy T. Taylor, President of Algon Group ("Algon"), a financial advisory firm in Atlanta.  Algon has previously retained Assignee's attorney Robert Barron.

28.     One of Algon's Senior Managing Directors, David C. Feltman, was formerly the Executive Vice President at Aegon Real Assets US, another Transamerica subsidiary and affiliate of Tenant. *See* Exhibit A at 3.  At Aegon, Mr. Feltman was a member of the Aegon Real Estate Executive Committee, the governing approval body for all Aegon/Transamerica U.S. real-estate debt and equity investments.

29.     Transamerica's public Securities and Exchange Commission filings further confirm the relationship among Assignee, Tenant, and Transamerica.

        a.  According to Transamerica's SEC filings, Assignee is a "person controlled by or under common control with [Transamerica]."  Assignee's members are RCC North America LLC (98% voting interest) and Longshore Ventures LLC (2% voting interest).  RCC North America LLC's sole member is Transamerica Corporation.

        b.  According to the same public SEC filings, Tenant is also a person controlled by or under common control with Transamerica.  Tenant's sole member is RCC North America LLC, the same entity that owns 98% of the voting interests in Assignee.

8

30.    On information and belief, Jane Doe defendants, unidentified individuals and entities, perpetrated the fraudulent conveyance and personally stand to gain financially from the fraudulent conveyance.

31.    Based on the foregoing—including the fact that Assignee (i) was formed just days before the conveyance, (ii) is a related party to Tenant and Transamerica, (iii) has refused to provide any information to Landlord about its identity and intentions, (iv) has not engaged in any commercial activity at the Property, and (v) refuses to engage with prospective subtenants— Landlord believes that Tenant conveyed its interest to Assignee for the sole purpose of avoiding its obligation to pay rent to Landlord under the Ground Lease.

32.    On information and belief, Tenant has undercapitalized Assignee, providing it with only enough funds to pay monthly rent through August 31, 2020.

33.    On information and belief, Assignee intends to stop paying rent after August 31, 2020, which is the date that Maryland's three-year statute of limitations for a fraudulent conveyance claim would expire if a cause of action for fraudulent conveyance accrued on August 31, 2017, the date of the conveyance. On information and belief, if Landlord were to then bring an action against Tenant after Assignee stops paying rent on August 31, 2020, Tenant will contend that the action is barred by Maryland's statute of limitations. Accordingly, Landlord brings this action now to preserve its right under the Ground Lease to collect rent from Tenant for the remainder of the lease term.

## COUNT I
### Declaratory Judgment That Assignment Was A Fraudulent Conveyance

34.     Plaintiff realleges and incorporates by reference each and every allegation contained in the preceding paragraphs of this Complaint as if fully set forth herein.

35.     In August 2017, Tenant conveyed by assignment its interest in the Property to Assignee.

36.     The conveyance was made with the intent to hinder, delay, or defraud Landlord. Tenant conveyed its interest in the Property to avoid its obligation to pay rent under the Ground Lease to landlord.

37.     By assigning its interest in the Property, Tenant used a sham entity, Assignee, as an instrumentality to evade its financial obligations under the Ground Lease and to implement its fraudulent scheme in which Assignee is left without assets sufficient to fulfill its obligations.

38.     Accordingly, Plaintiff seeks a declaratory judgment that the conveyance constitutes a fraudulent conveyance.

## COUNT II
### Set Aside the Fraudulent Conveyance

39.     Plaintiff realleges and incorporates by reference each and every allegation contained in the preceding paragraphs of this Complaint as if fully set forth herein.

40.     Defendants made the conveyance with the intent to hinder, delay, or defraud Landlord.

41.     Accordingly, the Court should set aside the fraudulent conveyance under Md. Comm. Law § 15-210.

10

## COUNT III
### Pierce the Corporate Veil to Enter Judgment that Landlord May Collect Rent From Tenant for the Remainder of the Lease

42.    Plaintiff realleges and incorporates by reference each and every allegation contained in the preceding paragraphs of this Complaint as if fully set forth herein.

43.    Defendants made the conveyance with the intent to defraud Landlord.

44.    Tenant has used Assignee merely as a shield to defraud Landlord and for the perpetration of the fraudulent conveyance.

45.    Accordingly, the Court should pierce the corporate veil and enter judgment that Landlord may collect rent from Tenant for the remainder of the lease term.

## COUNT IV
### Judgment That Tenant is Alter Ego of Assignee

46.    Plaintiff realleges and incorporates by reference each and every allegation contained in the preceding paragraphs of this Complaint as if fully set forth herein.

47.    Assignee is an affiliate of Tenant and, ultimately, a subsidiary of Transamerica. Assignee was created for the sole purpose of shielding Transamerica and Tenant from their obligation to pay ground rent.

48.    Defendants have failed to observe the corporate entity.

49.    Defendants operate the businesses or deal with the property as if they are not separate entities.

50.    Accordingly, the Court should enter judgment that Tenant is the alter ego of Assignee.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff prays that this Court:

a.  Issue a declaratory judgment that Tenant's assignment of its interest in the Property to

    Assignee was a fraudulent conveyance;

b.  Set aside the fraudulent conveyance;

c.  Pierce the corporate veil to enter judgment that Landlord may collect rent from

    Tenant for the remainder of the lease;

d.  Enter judgment that Tenant is the alter ego of Assignee; and

e.  Provide such other and further relief as the Court deems just and proper.

Dated:  June 5, 2020                    Respectfully submitted,

                                        /s/ William M. Bosch
                                        William M. Bosch (Bar No. 16017)
                                        John Robinson (Bar No. 19933)
                                        ARNOLD & PORTER KAYE SCHOLER LLP
                                        601 Massachusetts Ave., N.W.
                                        Washington, D.C.  20001
                                        Phone: (202) 942-5501
                                        Fax:  (202) 942-5999
                                        E-mail: william.bosch@arnoldporter.com
                                        E-mail: john.robinson@arnoldporter.com

                                        *Attorneys for Rock Spring Plaza II, LLC*

12

# Exhibit A



USA Realty Advisors, LLC

August 31, 2017

**Via Federal Express**
Tracking No. 7701 4324 3157

Rock Spring Place II, LLC
c/o Rock Spring Properties
6500 Rock Spring Drive, Suite 500
Bethesda, Maryland 20817

RE:    Amended and Restated Ground Lease Indenture dated November 14, 1990 (the **"Lease"**)
       between Anne D. Camalier (the **"Landlord"**) and Investors Warranty of America, LLC (formerly
       known as Investors Warranty of America, Inc.), as successor-in-interest to Rock Spring II Limited
       Partnership (the **"Tenant"**)

To Whom It May Concern:

Pursuant to Sections 12 and 19 of the Ground Lessor Estoppel and Non-Disturbance Agreement dated
June 2, 2006, Tenant has entered into an Assumption and Assignment of Ground Lease, dated August
31, 2017, with Rock Springs Drive, LLC, a Maryland limited liability company.

If you have any questions, please contact Robert Barron at the following:

Berger Singerman
350 East Las Olas Boulevard, Suite 1000
Fort Lauderdale, FL 33301
Phone 954-712-5145

Sincerely,

Investors Warranty of America, LLC

By _____
Typed name _____
Its _____
                    **David Feltman**
                    **Authorized Signatory**

Aegon USA Realty Advisors, LLC
4333 Edgewood Road, N E          P +1 319 355-8511
Cedar Rapids, IA 52499           www.aegonrealty.com

# Exhibit B

ROCK SPRINGS DRIVE, LLC: W18227132

>  **Notice**                                              ✕
>
> **Coronavirus (COVID-19) resources for businesses:** https://businessexpress.maryland.gov/coronavirus
>
> On March 12th, Governor Hogan issued and executive order, which requires that the Maryland State Department of Assessments and Taxation (SDAT) to extend all expiration and renewal dates to the 30th day after the date by which the state of emergency is terminated. SDAT is automatically extending the Annual Report Filing and/or Personal Property Return **filing date from April 15 to July 15th** for all entities.

**Department ID Number:**

W18227132

**Business Name:**

ROCK SPRINGS DRIVE, LLC

**Principal Office:**

1519 YORK ROAD
LUTHERVILLE MD 21093

**Resident Agent:**

COGENCY GLOBAL INC.
1519 YORK ROAD
LUTHERVILLE MD 21093

**Status:**

ACTIVE

**Good Standing:**

THIS BUSINESS IS IN GOOD STANDING

**Business Type:**

DOMESTIC LLC

**Business Code:**

20 ENTITIES OTHER THAN CORPORATIONS

**Date of Formation/ Registration:**

08/25/2017

**State of Formation:**

MD

**Stock Status:**

N/A

**Close Status:**

N/A

# Exhibit C

# Arnold & Porter

**William M. Bosch**
+1 202.942.5501 Direct
William.Bosch@arnoldporter.com

February 22, 2018

*Via Federal Express*

Robert W. Barron, Esq.
Berger Singerman
350 East Las Olas Boulevard
Suite 1000
Fort Lauderdale, FL  33301

> **Re:**   **Amended and Restated Ground Lease Indenture dated November 14, 1990 (the "Ground Lease") between Anne D. Camalier ("Landlord") and Investors Warranty of America, LLC (formerly known as Investors Warranty of America, Inc.), as successor-in-interest to Rock Spring II Limited Partnership ("Tenant")**

Dear Mr. Barron:

I am writing on behalf of the Landlord in connection with the above-referenced Ground Lease for the property located at 6560 Rockledge Drive, Bethesda, Maryland (the "Property"). It has been almost six months since we last communicated, and we have heard nothing further about your client's identity or intentions for the Property. Landlord is growing increasingly concerned about the financial and structural viability of the Property, given that there evidently is and has been no commercial activity there.

As you may recall, I contacted you by telephone in September 2017 following Landlord's receipt of notice from the above-referenced Tenant, dated August 31, 2017. That notice, a copy of which is attached to this letter, advised that Tenant's interest in the Ground Lease had been assigned to and assumed by Rock Springs Drive, LLC, a Maryland limited liability company (the "Assignee"). Because you were identified as the point of contact for Assignee, I reached out to inquire as to the identity and intentions of the Assignee.

You agreed to contact your clients about brokering an introduction. In the interim, you requested that I identify a point of contact with the Ground Lessor and confirmation of identity, which I did by letter dated September 29, 2017 (also attached). Since then, we have received no further communication from you, from Assignee or from Tenant. Nor have we been able to confirm that the assignment of the Ground Lease was recorded in the land records of Montgomery County, Maryland, much less that recordation taxes have been paid. Furthermore, there has been no business activity at the Property (as noted) since notice of the assignment was provided approximately six (6) months ago.

# Arnold & Porter

Robert W. Barron, Esq.
February 22, 2018
Page 2

     The lack of communication and activity from Assignee is giving Landlord reasonable insecurity with respect to Assignee's ability to perform under the Ground Lease, including without limitation its financial ability to pay rent, taxes, insurance, utilities, and to maintain the Property in first class operating condition and repair. In addition, there is a genuine and realistic concern about waste; we understand, for example, that substantial roof repairs may be necessary.

     Landlord's concerns are driven not just by business considerations, but also by important legal issues that warrant your cooperation. By way of illustration, the identity of the members of Rock Springs Drive, LLC is essential for Landlord to comply with OFAC regulations, *see* 31 C.F.R. parts 500–599, the USA Patriot Act, Public Law 105-56, 115 Stat. 272 (2001), and various Executive Orders and other laws that place restrictions on Landlord's dealings with certain entities. *See* Ground Lease Section 5.3 (requiring Tenant to perform and comply with all laws, rules, orders, ordinances, regulations, and requirements). Given the location of this Property proximate to government facilities and across the street from a school, we trust that you will appreciate Landlord's sensitivity to this issue.

     Accordingly, Landlord has asked me to follow-up with a second request for information as to Assignee's identity and intentions. Landlord also has indicated willingness to meet in person with the principals of Assignee to discuss how best to advance their mutual interests with respect to the Ground Lease and the Property. That meeting can take place in Florida if more convenient.

     Thank you in advance for your cooperation and anticipated reply.

         Sincerely,

         William M. Bosch

Attachments



**AEGON**

USA Realty Advisors, LLC

August 31, 2017

***Via Federal Express***
Tracking No. 7701 4324 3157

Rock Spring Place II, LLC
c/o Rock Spring Properties
6500 Rock Spring Drive, Suite 500
Bethesda, Maryland 20817

RE:    Amended and Restated Ground Lease Indenture dated November 14, 1990 (the **"Lease"**) between Anne D. Camalier (the **"Landlord"**) and Investors Warranty of America, LLC (formerly known as Investors Warranty of America, Inc.), as successor-in-interest to Rock Spring II Limited Partnership (the **"Tenant"**)

To Whom It May Concern:

Pursuant to Sections 12 and 19 of the Ground Lessor Estoppel and Non-Disturbance Agreement dated June 2, 2006, Tenant has entered into an Assumption and Assignment of Ground Lease, dated August 31, 2017, with Rock Springs Drive, LLC, a Maryland limited liability company.

If you have any questions, please contact Robert Barron at the following:

Berger Singerman
350 East Las Olas Boulevard, Suite 1000
Fort Lauderdale, FL 33301
Phone 954-712-5145

Sincerely,

Investors Warranty of America, LLC

By _____
Typed name _____
Its _____

David Feltman
Authorized Signatory

Aegon USA Realty Advisors, LLC
4333 Edgewood Road, N E
Cedar Rapids, IA 52499

P +1 319 355-8511
www.aegonrealty.com

# ARNOLD & PORTER
# KAYE SCHOLER

William M. Bosch
+1 202.942.5501 Direct
William.Bosch@apks.com

September 29, 2017

*Via Telecopier*

Robert W. Barron, Esq.
Berger Singerman
350 East Las Olas Boulevard
Suite 1000
Fort Lauderdale, FL  33301

    Re:    *Rock Spring Plaza II LLC*

Dear Robert:

    Per your request, I am attaching wiring instructions.  Also, as confirmation of identity, I am providing a point of contact with the Ground Lessor.  For day to day communications concerning the Ground Lease, I encourage the Ground Lessee to reach out directly to both Jody Rice and Cyndi Kuntz by email (or by phone, as necessary).

        Jody Rice
        Rock Spring Properties
        6500 Rock Spring Drive, Suite Five
        Bethesda, MD  20817
        Office:  (301) 564-1500 ext 114 (Cyndi is ext 118)
        Cell:  (301) 466-4249
        Email:  jody.rice@rsplimited.com

        Cyndi Kuntz
        Rock Spring Properties
        6500 Rock Spring Drive, Suite Five
        Bethesda, MD  20817
        Office:  (301) 564-1500 ext 118
        Email:  Cyndi@rsplimited.com

    Please let me know if I can be of further assistance.

                Very truly yours,

                William M. Bosch

Attachment
cc: (w/o attachment) Jody Rice (via email)

# Exhibit D

# ≡ BERGER SINGERMAN

Robert W. Barron
(954) 712-5145
RBarron@bergersingerman.com

March 30, 2018

_**Via Federal Express**_

William M. Bosch, Esq.
Arnold & Porter Kaye Scholer LLP
601 Massachusetts Ave., NW
Washington, D.C. 20001-3743

RE:    Amended and Restated Ground Lease Indenture dated November 14, 1990
        (the "Ground Lease") between Anne D. Camalier ("Landlord") and Rock
        Springs Drive, LLC, a Maryland limited liability company ("Tenant").
        Response to Your Letter dated February 22, 2018

Dear Mr. Bosch:

I have received your letter with respect to the referenced Ground Lease. This firm represents Rock Springs Drive, LLC, the "Tenant" under the Ground Lease and we have been authorized by the Tenant to provide this response to you. As you noted in your letter, the Landlord was advised, by letter dated August 31, 2017, that the prior tenant under the Ground Lease had assigned its interest in the Ground Lease to Tenant. Accordingly, your client has been advised of the identity of the Tenant – _**Rock Springs Drive, LLC, a Maryland limited liability company**_ - since it received such letter.

You also noted in your letter that "there evidently is and has been no commercial activity there" and that "there has been no business activity at the Property (as noted) since notice of the assignment was provided approximately six (6) months ago." We disagree with these assertions.

We are advised that, since receiving the assignment of the prior tenant's interest under the Ground Lease, Tenant entered into various contracts with certain of the vendors providing services to the building which is the subject of the Ground Lease (the "Building") (which vendors had previously been retained by CBRE Group, Inc. or its affiliate ("CBRE") on behalf of the prior tenant) in order to properly maintain the Building in accordance with the terms of the Ground Lease. We understand that these contracts include, without limitation, services for (i) on-site maintenance, (ii) landscaping/snow removal, (iii) elevator maintenance, (iv) fire alarm and sprinkler system maintenance, and (v) the security alarm.

We are also advised that, in addition to entering into the foregoing contracts, Tenant has retained third party firms to conduct various inspections of portions of the Building, including, without limitation, (a) roof inspection, (b) underground storage tank inspection, and (c) fire extinguisher

March 30, 2018
Page 2

inspection.    With respect to the roof inspection, we understand that the roof inspector recommended repairs to the roof of the Building, the approximate cost of which are estimated not to exceed $20,000 in the aggregate, and Tenant plans to retain a contractor to undertake such repairs shortly.   As you know, under the Ground Lease, Tenant is not required to obtain consent from the Landlord with respect to non-structural repairs unless the cost of the repairs exceeds $500,000 (as increased annually as set forth in Section 7.2 of the Ground Lease).   Clearly, an estimated $20,000 roof repair cost is not a material issue under the terms of Section 7.2 of the Ground Lease.

We are advised that Tenant is currently evaluating the existing ad valorem assessment with respect to the Building to determine whether to commence an ad valorem tax appeal with respect to the Building.   We understand that Tenant has requested a proposal from a third party firm (which had previously represented a prior tenant of the Building with respect to an ad valorem assessment appeal regarding the Building) with respect to a potential tax appeal, but that no final decision has been made at this time with respect to such potential tax appeal.

We understand that CBRE was the previous leasing agent for the Building.   After numerous meetings and conversations with representatives of CBRE, we are advised that Tenant has determined not to engage CBRE as the exclusive leasing agent for the Building at this time.   We understand that Tenant has interviewed representatives of Cushman & Wakefield with respect to providing leasing services for the Building and Tenant has determined not to engage Cushman & Wakefield as the exclusive leasing agent for the Building at this time.   However, we understand that Tenant advised both CBRE and Cushman & Wakefield that Tenant is ready to work with each firm, on a non-exclusive basis, if CBRE and/or Cushman & Wakefield wanted to introduce prospective subtenant(s) to Tenant with respect to all or a portion of the Building.   We are advised that, on a strategic, proprietary and confidential basis, Tenant continues to evaluate the rental market for the Building and the proposed leasing strategy for the Building in view of such market, and to formulate its business plan for the Building.

Finally, Tenant has informed us that, since obtaining the assignment of the prior tenant's interest under the Ground Lease, it has paid the monthly rental obligations under the Ground Lease in a timely fashion and that it is not aware of any failure by it to perform under the Ground Lease.   In addition, we are advised that the Landlord has not provided to Tenant any oral or written notice of any allegation of the failure by Tenant to perform its obligations under the Ground Lease.   As you know, the Landlord has covenanted and agreed in Section 9.2 of the Ground Lease that Tenant shall peaceably and quietly have, hold and enjoy the leased premises and all rights, appurtenances and privileges belonging or appertaining thereto, without hindrance or molestation.

In your letter, you noted that the assignment of the Ground Lease was not recorded in the land records of Montgomery County, Maryland.   We have been informed that the customary legal practice in Maryland is not to record an assignment of a lease in the land records of the county in which the leasehold estate is located and that there is no legal requirement to record such assignment.   **If Landlord or your firm has contrary information to the effect that Maryland law requires an assignment of a commercial lease to be recorded in the land records of the**

⌐Ξ BERGER SINGERMAN

March 30, 2018
Page 3

**county in which the leasehold estate is located, please provide such information to us for our review as soon as possible.**

In your letter, you noted the lack of communication and activity from the Tenant under the Ground Lease. We trust that the information provided above with respect to the Tenant's activity with respect to the Building will alleviate the Landlord's concerns with respect to the Tenant's activity with respect to the Building. Regarding your request for additional communication, we are not aware of any requirement under the Ground Lease to provide to the Landlord any additional information regarding the Tenant's strategic and proprietary commercial activity and business plans with respect to the property demised by the Ground Lease. We understand that Landlord or its affiliates may own other commercial office buildings in the market area and it is important for Tenant to keep confidential its proprietary business information and its business plans with respect to the Building.

Be advised that Tenant desires to comply with the terms of the Ground Lease. **If Landlord believes that Tenant is not complying with the terms of the Ground Lease, please advise the Tenant by written notice, with reasonable specificity, in order that it may evaluate such allegation and take the appropriate action to correct any situation which may not be in compliance with the terms of the Ground Lease.**

In your letter, you noted that it is "essential for Landlord to comply with OFAC regulations." We are not aware that any OFAC regulations or any "various Executive Orders and other laws" which were mentioned in your letter require a tenant under a commercial lease to provide any information to its landlord under such regulations, orders or laws. We are also not aware of any term of the Ground Lease which requires any additional disclosure to be made by Tenant to the Landlord. **Please provide us with the text of the applicable regulation, order or laws that you referenced in your illustration in order that we may review such legal text and make a determination as to whether any additional disclosure is required.**

Tenant appreciates your offer to meet in person with the principals of Tenant, but Tenant does not have any reason to meet with the Landlord with respect to the Ground Lease and/or the Building at this time. Accordingly, Tenant respectfully declines such request at this time.

≣ BERGER SINGERMAN

March 30, 2018
Page 4

**Please provide the information requested in this letter with respect to the Ground Lease for our review and consideration.** If you fail to provide such requested information to Tenant and/or the undersigned, Tenant will assume that Landlord has no legal basis for the assertions which were made in your letter related to the information requested.

Sincerely,

Berger Singerman LLP

Robert W. Barron

8424251-3

⊒ BERGER SINGERMAN

# Exhibit E



**Arnold & Porter**

William M. Bosch
+1 202.942.5501 Direct
William.Bosch@arnoldporter.com

April 25, 2018

*__Via Federal Express__*

Robert W. Barron, Esq.
Berger Singerman
350 East Las Olas Boulevard
Suite 1000
Fort Lauderdale, FL 33301

> Re:  **Amended and Restated Ground Lease Indenture dated November 14,
> 1990 (the "Ground Lease") between Anne D. Camalier ("Landlord")
> and Investors Warranty of America, LLC (formerly known as
> Investors Warranty of America, Inc.), as successor-in-interest to Rock
> Spring II Limited Partnership**

Dear Mr. Barron:

I write in response to your letter of March 30, 2018 regarding the above-
referenced Ground Lease. As you know, my client has been trying to arrange a meeting
with principals of your client, Rock Spring Drive, LLC (the "Assignee"), for several
months now to discuss how best to advance their mutual interests with respect to the
building located at 6560 Rock Spring Drive (the "Building"). My client has also
requested basic contact information for Assignee, including a point of contact with whom
my client can discuss day-to-day operational issues concerning the Building.

We previously provided such contact information for Landlord, at your request,
by letter dated September 29, 2017. However, as you know, Assignee has yet to provide
similar information, for reasons that are unclear to Landlord and which cause Landlord
further concern. Landlord is not presently asserting any defaults, and had no intention of
creating legal issues with your client when it made what we believed to be a reasonable
request. However, there is some appearance of furtiveness on your client's part, perhaps
unintentional, which now is raising concerns as to the legitimacy of the professed
"assignment" by the prior tenant. In this regard, we note that Montgomery County's tax
records indicate that property tax bills are still going to Investors Warranty of America
(*i.e.*, the taxpayer dating back to 2013). Kindly confirm that the Assignee is affiliated

Arnold & Porter Kaye Scholer LLP
601 Massachusetts Ave., NW  |  Washington, DC  20001-3743  |  www.arnoldporter.com

# Arnold & Porter

Robert W. Barron, Esq.
April 25, 2018
Page 2

with Investors Warranty of America. We trust you will endeavor to clear this up in short order.

In anticipation of receiving a more fulsome and forthcoming reply to Landlord's reasonable request, I would like to correct some of the insinuations raised in your recent letter. Specifically, you state that Assignee is reluctant to provide "additional information regarding the [Assignee's] strategic and proprietary commercial activity and business plans with respect to the property demised by the Ground Lease," but this misunderstands Landlord's request. Landlord is not asking Assignee to provide information regarding its "strategic and proprietary commercial activity"; it is simply asking Assignee to provide basic identifying information, including the name of a principal of Rock Spring Drive, LLC who understands what is happening operationally at the Building. We do not understand why Assignee is unwilling to provide this basic contact information, which is not proprietary, to Landlord.

You also note Landlord's "other commercial office buildings in the market area" and the importance to Assignee of "keep[ing] confidential its proprietary business information and its business plans with respect to the Building," but I can assure you that Landlord has no interest in learning Assignee's proprietary information to gain some competitive advantage over Assignee. Landlord's sole interest is in seeing that the Building on the land that Landlord owns is put to a productive use and does not continue to lie vacant, an interest that Assignee presumably shares.

To that end, it strikes us as unreasonable that your client would refuse a friendly invitation to meet. If it is forced to seek information and other reporting to which Landlord is entitled under the Ground Lease, it will do so—but standard practice is for landlords and tenants to establish less formal communications to address operational issues. It certainly is unusual for a tenant to insist that all such inquiries be directed through outside legal counsel located hundreds of miles away from the property. Furthermore, as an owner of other commercial office buildings in the area, Landlord regularly receives requests for proposals from potential subtenants, including subtenants who are seeking to occupy several office buildings. Assuming your client is legitimately engaged in commercial activity at the Building, it would be in both parties' interests to be able to discuss these potential opportunities as they arise. Indeed, given that your client admittedly has not engaged a broker, it is even more disconcerting that your client would be unwilling to meet to discuss potential business opportunities for a vacant Building.

In addition, as noted in my prior letter, Landlord also has obligations to ensure that it is not transacting with an entity owned or controlled by certain prohibited individuals or entities under U.S. trade-sanction laws administered by OFAC, including

# Arnold&Porter

Robert W. Barron, Esq.
April 25, 2018
Page 3

the International Emergency Economic Powers Act, 50 U.S.C. §§ 1701–1707, and the Trading with the Enemy Act, 12 U.S.C. §§ 95a–95b & 50 U.S.C. App. §§ 1–44.  These would include individuals or entities appearing on OFAC's Specially Designated Nationals And Blocked Persons List, as well as citizens of Cuba, Iran, North Korea, Syria, and other countries subject to comprehensive territorial sanctions.  Landlord again requests that you confirm that neither Assignee, nor its owners or investors, nor any of their respective officers, directors, members, partners, or managers appears on any OFAC sanctions list or is a citizen of any of the countries identified above.

Finally, you asked that Landlord provide legal authority for the proposition that an assignment of a commercial lease be recorded in the land records of the county in which the leasehold estate is located.  Section 3-101 of Maryland's Real Property Code provides that "no estate of inheritance or freehold, declaration or limitation of use, estate above seven years, or deed may pass or take effect unless the deed granting it is executed *and recorded*." Md. Code Ann., Real Prop. § 3-101(a) (emphasis added).  The Maryland Court of Appeals has long held that this language "appl[ies] with equal force to assignments of leases of more than seven years." *Rubin v. Leosatis*, 166 A. 428, 430 (Md. 1933).  The proper jurisdiction for recording the assignment is "in the county where the land affected by the deed or instrument lies."  Md. Code Ann., Real Prop. § 3-103.  Accordingly, under Maryland Code §§ 3-101 & 3-103, it is our understanding that the assignment of the Ground Lease should have been recorded in the land records of Montgomery County.

For the reasons explained above, Landlord repeats its request for the identity of a point-of-contact with Assignee whom Landlord may contact to discuss, among other things, operational issues at the Building.  Landlord also remains willing to meet with principals of Assignee in-person wherever is convenient, including in Florida.  Landlord reserves all rights.

Sincerely,

*William Bosch*

William M. Bosch

# Exhibit F

-Case 8:20-cv-01502-PJM    Document 1-6    Filed 06/05/20    Page 2 of 3

# CORPORATE CHARTER APPROVAL SHEET
## ** EXPEDITED SERVICE **        ** KEEP WITH DOCUMENT **

DOCUMENT CODE __40__    BUSINESS CODE __∞__

# _____

Close _____    Stock _____    Nonstock _____

P A _____    Religious _____

Merging (Transferor) _____

_____

_____

_____

Surviving (Transferee) _____

_____

_____

**FEES REMITTED**

| | |
|---|---|
| Base Fee | 100 |
| Org & Cap Fee | |
| Expedite Fee | 50 |
| Penalty | |
| State Recordation Tax | |
| State Transfer Tax | |
| Certified Copies | |
| Copy Fee | |
| Certificates | |
| Certificate of Status Fee | |
| Personal Property Filings | |
| Mail Processing Fee | |
| Other | |

TOTAL FEES __150__

Credit Card _____    Check __/__    Cash _____

_____ Documents on _____ Checks

Approved By _____

Keyed By _____

COMMENT(S)

---

```
1000362010582684

ID # W18227132 ACK # 1000362010582684
PAGES  0002
ROCK SPRINGS DRIVE, LLC


08/25/2017  AT 10 17 A WO # 0004794559
```

New Name _____

_____

_____

_____ Change of Name
_____ Change of Principal Office
_____ Change of Resident Agent
_____ Change of Resident Agent Address
_____ Resignation of Resident Agent
_____ Designation of Resident Agent
          and Resident Agent's Address
_____ Change of Business Code

_____ Adoption of Assumed Name
_____
_____

Other Change(s)
_____
_____

Code __409__

Attention _____

```
HYLIND SEARCH COMPANY
245 W CHASE ST
BALTIMORE MD 21201-4823
```

_____

```
CUST ID 0003577982
WORK ORDER 0004794559
DATE 08-25-2017 01 43 PM
AMT  PAID $300 00
```

### ARTICLES OF ORGANIZATION
### OF
### ROCK SPRINGS DRIVE, LLC
a Maryland limited liability company

The undersigned, with the intention of creating a Maryland Limited Liability Company files the following Articles of Organization:

1.    The name of the limited liability company is Rock Springs Drive, LLC.

2.    The purpose for which the limited liability company is filed is as follows: any and all lawful business.

3.    The street and mailing address of the Limited Liability Company in Maryland is: 1519 York Road, Lutherville, MD 21093

4.    The resident agent of the Limited Liability Company in Maryland is Cogency Global inc., 1519 York Road, Lutherville, MD 21093 (Baltimore County).

Dated: as of August 24, 2017.

_____
Robert W. Barron, Authorized
Representative

_____
Print Name: Marisa Kugelmann
Resident Agent    Asst. Secretary

Filing party's return address

2457 Collins Avenue, PH2
Miami Beach, Florida 33140

CUST ID 0003577982
WORK ORDER 0004794559
DATE 08-25-2017 01 43 PM
AMT  PAID $300 00

8058998-1

S 44 (Rev. 0 / )

Case 8:20-cv-01502 **CIVIL COVER SHEET** Filed 06/05/20   Page 1 of 2

The JS 44 civil cover sheet and the information contained herein neither replace nor supplement the filing and service of pleadings or other papers as required by law, except as provided by local rules of court. This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet. *(SEE INSTRUCTIONS ON NEXT PAGE OF THIS FORM.)*

## I. (a) PLAINTIFFS
Rock Spring Plaza II, LLC

**(b)** County of Residence of First Listed Plaintiff  Montgomery
*(EXCEPT IN U.S. PLAINTIFF CASES)*

**(c)** Attorneys *(Firm Name, Address, and Telephone Number)*
William M. Bosch, John Robinson
Arnold & Porter Kaye Scholer LLP
601 Massachusetts Ave., NW, Washington, DC 20001 (202) 942-5000

## DEFENDANTS
Investors Warranty of America, LLC; Rock Springs Drive, LLC

County of Residence of First Listed Defendant
*(IN U.S. PLAINTIFF CASES ONLY)*
NOTE:  IN LAND CONDEMNATION CASES, USE THE LOCATION OF THE TRACT OF LAND INVOLVED.

Attorneys *(If Known)*

## II. BASIS OF JURISDICTION *(Place an "X" in One Box Only)*

❐ 1  U.S. Government Plaintiff
❐ 2  U.S. Government Defendant
❐ 3  Federal Question *(U.S. Government Not a Party)*
☒ 4  Diversity *(Indicate Citizenship of Parties in Item III)*

## III. CITIZENSHIP OF PRINCIPAL PARTIES *(Place an "X" in One Box for Plaintiff and One Box for Defendant)* (For Diversity Cases Only)

|  | PTF | DEF |  | PTF | DEF |
|---|---|---|---|---|---|
| Citizen of This State | ☒ 1 | ❐ 1 | Incorporated *or* Principal Place of Business In This State | ❐ 4 | ❐ 4 |
| Citizen of Another State | ❐ 2 | ☒ 2 | Incorporated *and* Principal Place of Business In Another State | ❐ 5 | ❐ 5 |
| Citizen or Subject of a Foreign Country | ❐ 3 | ❐ 3 | Foreign Nation | ❐ 6 | ❐ 6 |

## IV. NATURE OF SUIT *(Place an "X" in One Box Only)*
Click here for: Nature of Suit Code Descriptions.

| CONTRACT | TORTS | FORFEITURE/PENALTY | BANKRUPTCY | OTHER STATUTES |
|---|---|---|---|---|
| ❐ 110 Insurance<br>❐ 120 Marine<br>❐ 130 Miller Act<br>❐ 140 Negotiable Instrument<br>❐ 150 Recovery of Overpayment & Enforcement of Judgment<br>❐ 151 Medicare Act<br>❐ 152 Recovery of Defaulted Student Loans (Excludes Veterans)<br>❐ 153 Recovery of Overpayment of Veteran's Benefits<br>❐ 160 Stockholders' Suits<br>❐ 190 Other Contract<br>❐ 195 Contract Product Liability<br>❐ 196 Franchise | **PERSONAL INJURY**<br>❐ 310 Airplane<br>❐ 315 Airplane Product Liability<br>❐ 320 Assault, Libel & Slander<br>❐ 330 Federal Employers' Liability<br>❐ 340 Marine<br>❐ 345 Marine Product Liability<br>❐ 350 Motor Vehicle<br>❐ 355 Motor Vehicle Product Liability<br>❐ 360 Other Personal Injury<br>❐ 362 Personal Injury - Medical Malpractice | **PERSONAL INJURY**<br>❐ 365 Personal Injury - Product Liability<br>❐ 367 Health Care/ Pharmaceutical Personal Injury Product Liability<br>❐ 368 Asbestos Personal Injury Product Liability<br>**PERSONAL PROPERTY**<br>❐ 370 Other Fraud<br>❐ 371 Truth in Lending<br>❐ 380 Other Personal Property Damage<br>❐ 385 Property Damage Product Liability | ❐ 625 Drug Related Seizure of Property 21 USC 881<br>❐ 69  Other | ❐ 422 Appeal 28 USC 158<br>❐ 423 Withdrawal 28 USC 157<br><br>**PROPERTY RIGHTS**<br>❐ 820 Copyrights<br>❐ 830 Patent<br>❐ 840 Trademark | ❐ 375 False Claims Act<br>❐ 376 Qui Tam (31 USC 3729(a))<br>❐ 400 State Reapportionment<br>❐ 410 Antitrust<br>❐ 430 Banks and Banking<br>❐ 450 Commerce<br>❐ 460 Deportation<br>❐ 470 Racketeer Influenced and Corrupt Organizations<br>❐ 480 Consumer Credit<br>❐ 490 Cable/Sat TV<br>❐ 850 Securities/Commodities/ Exchange<br>❐ 890 Other Statutory Actions<br>❐ 891 Agricultural Acts<br>❐ 893 Environmental Matters<br>❐ 895 Freedom of Information Act |
| **REAL PROPERTY**<br>❐ 210 Land Condemnation<br>❐ 220 Foreclosure<br>❐ 230 Rent Lease & Ejectment<br>❐ 240 Torts to Land<br>❐ 245 Tort Product Liability<br>☒ 290 All Other Real Property | **CIVIL RIGHTS**<br>❐ 440 Other Civil Rights<br>❐ 441 Voting<br>❐ 442 Employment<br>❐ 443 Housing/ Accommodations<br>❐ 445 Amer. w/Disabilities - Employment<br>❐ 446 Amer. w/Disabilities - Other<br>❐ 448 Education | **PRISONER PETITIONS**<br>**Habeas Corpus:**<br>❐ 463 Alien Detainee<br>❐ 510 Motions to Vacate Sentence<br>❐ 530 General<br>❐ 535 Death Penalty<br>**Other:**<br>❐ 540 Mandamus & Other<br>❐ 550 Civil Rights<br>❐ 555 Prison Condition<br>❐ 560 Civil Detainee - Conditions of Confinement | **LABOR**<br>❐ 71 Fair Labor Standards Act<br>❐ 72 Labor/Management Relations<br>❐ 74 Railway Labor Act<br>❐ 75 Family and Medical Leave Act<br>❐ 79 Other Labor Litigation<br>❐ 79 Employee Retirement Income Security Act<br><br>**IMMIGRATION**<br>❐ 462 Naturalization Application<br>❐ 465 Other Immigration Actions | **SOCIAL SECURITY**<br>❐ 861 HIA (1395ff)<br>❐ 862 Black Lung (923)<br>❐ 863 DIWC/DIWW (405(g))<br>❐ 864 SSID Title XVI<br>❐ 865 RSI (405(g))<br><br>**FEDERAL TAX SUITS**<br>❐ 870 Taxes (U.S. Plaintiff or Defendant)<br>❐ 871 IRS—Third Party 26 USC 7609 | ❐ 896 Arbitration<br>❐ 899 Administrative Procedure Act/Review or Appeal of Agency Decision<br>❐ 950 Constitutionality of State Statutes |

## V. ORIGIN *(Place an "X" in One Box Only)*
☒ 1 Original Proceeding  ❐ 2 Removed from State Court  ❐ 3 Remanded from Appellate Court  ❐ 4 Reinstated or Reopened  ❐ 5 Transferred from Another District *(specify)*  ❐ 6 Multidistrict Litigation - Transfer  ❐ 8 Multidistrict Litigation - Direct File

## VI. CAUSE OF ACTION
Cite the U.S. Civil Statute under which you are filing *(Do not cite jurisdictional statutes unless diversity)*:
28 U.S.C. § 1332, 28 U.S.C. § 2201
Brief description of cause:
Fraudulent conveyance, veil piercing / alter ego

## VII. REQUESTED IN COMPLAINT:
❐ CHECK IF THIS IS A CLASS ACTION UNDER RULE 23, F.R.Cv.P.   DEMAND $   CHECK YES only if demanded in complaint:  JURY DEMAND: ❐ Yes ☒ No

## VIII. RELATED CASE(S) IF ANY
*(See instructions:)*   JUDGE _____   DOCKET NUMBER _____

DATE 06/05 2020   SIGNATURE OF ATTORNEY OF RECORD /s/ William M. Bosch

FOR OFFICE USE ONLY
RECEIPT # ____ AMOUNT ____ APPLYING IFP ____ JUDGE ____ MAG. JUDGE ____

JS 44 Reverse (Rev. 08/16)    Case 8:20-cv-01502-PJM   Document 1-7   Filed 06/05/20   Page 2 of 2

## INSTRUCTIONS FOR ATTORNEYS COMPLETING CIVIL COVER SHEET FORM JS 44

### Authority For Civil Cover Sheet

The JS 44 civil cover sheet and the information contained herein neither replaces nor supplements the filings and service of pleading or other papers as required by law, except as provided by local rules of court. This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet. Consequently, a civil cover sheet is submitted to the Clerk of Court for each civil complaint filed. The attorney filing a case should complete the form as follows:

**I.(a)**    **Plaintiffs-Defendants.** Enter names (last, first, middle initial) of plaintiff and defendant. If the plaintiff or defendant is a government agency, use only the full name or standard abbreviations. If the plaintiff or defendant is an official within a government agency, identify first the agency and then the official, giving both name and title.

  **(b)**    **County of Residence.** For each civil case filed, except U.S. plaintiff cases, enter the name of the county where the first listed plaintiff resides at the time of filing. In U.S. plaintiff cases, enter the name of the county in which the first listed defendant resides at the time of filing. (NOTE: In land condemnation cases, the county of residence of the "defendant" is the location of the tract of land involved.)

  **(c)**    **Attorneys.** Enter the firm name, address, telephone number, and attorney of record. If there are several attorneys, list them on an attachment, noting in this section "(see attachment)".

**II.**    **Jurisdiction.** The basis of jurisdiction is set forth under Rule 8(a), F.R.Cv.P., which requires that jurisdictions be shown in pleadings. Place an "X" in one of the boxes. If there is more than one basis of jurisdiction, precedence is given in the order shown below.
United States plaintiff. (1) Jurisdiction based on 28 U.S.C. 1345 and 1348. Suits by agencies and officers of the United States are included here.
United States defendant. (2) When the plaintiff is suing the United States, its officers or agencies, place an "X" in this box.
Federal question. (3) This refers to suits under 28 U.S.C. 1331, where jurisdiction arises under the Constitution of the United States, an amendment to the Constitution, an act of Congress or a treaty of the United States. In cases where the U.S. is a party, the U.S. plaintiff or defendant code takes precedence, and box 1 or 2 should be marked.
Diversity of citizenship. (4) This refers to suits under 28 U.S.C. 1332, where parties are citizens of different states. When Box 4 is checked, the citizenship of the different parties must be checked. **(See Section III below; NOTE: federal question actions take precedence over diversity cases.)**

**III.**    **Residence (citizenship) of Principal Parties.** This section of the JS 44 is to be completed if diversity of citizenship was indicated above. Mark this section for each principal party.

**IV.**    Nature of Suit. Place an "X" in the appropriate box. If there are multiple nature of suit codes associated with the case, pick the nature of suit code that is most applicable. Click here for: Nature of Suit Code Descriptions.

**V.**    **Origin.** Place an "X" in one of the seven boxes.
Original Proceedings. (1) Cases which originate in the United States district courts.
Removed from State Court. (2) Proceedings initiated in state courts may be removed to the district courts under Title 28 U.S.C., Section 1441. When the petition for removal is granted, check this box.
Remanded from Appellate Court. (3) Check this box for cases remanded to the district court for further action. Use the date of remand as the filing date.
Reinstated or Reopened. (4) Check this box for cases reinstated or reopened in the district court. Use the reopening date as the filing date.
Transferred from Another District. (5) For cases transferred under Title 28 U.S.C. Section 1404(a). Do not use this for within district transfers or multidistrict litigation transfers.
Multidistrict Litigation – Transfer. (6) Check this box when a multidistrict case is transferred into the district under authority of Title 28 U.S.C. Section 1407.
Multidistrict Litigation – Direct File. (8) Check this box when a multidistrict case is filed in the same district as the Master MDL docket.
**PLEASE NOTE THAT THERE IS NOT AN ORIGIN CODE 7.** Origin Code 7 was used for historical records and is no longer relevant due to changes in statute.

**VI.**    **Cause of Action.** Report the civil statute directly related to the cause of action and give a brief description of the cause. **Do not cite jurisdictional statutes unless diversity.** Example: U.S. Civil Statute: 47 USC 553 Brief Description: Unauthorized reception of cable service

**VII.**    **Requested in Complaint.** Class Action. Place an "X" in this box if you are filing a class action under Rule 23, F.R.Cv.P.
Demand. In this space enter the actual dollar amount being demanded or indicate other demand, such as a preliminary injunction.
Jury Demand. Check the appropriate box to indicate whether or not a jury is being demanded.

**VIII.**    **Related Cases.** This section of the JS 44 is used to reference related pending cases, if any. If there are related pending cases, insert the docket numbers and the corresponding judge names for such cases.

**Date and Attorney Signature.** Date and sign the civil cover sheet.