NO. 23-1928

# United States Court of Appeals

*for the*

# Fourth Circuit

In re: INVESTORS WARRANTY OF AMERICA, LLC,

*Petitioner,*

_____

ON APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND AT GREENBELT

## RESPONDENT'S APPENDIX (Pages 1-551)
## VOLUME ONE

WILLIAM M. BOSCH
PILLSBURY WINTHROP SHAW PITTMAN LLP
1200 Seventeenth Street, NW
Washington DC 20036
(202) 663-8000

*Attorney for Respondent*

CP COUNSEL PRESS     (800) 4-APPEAL • (326716)

# TABLE OF CONTENTS

**VOLUME ONE**

District of Maryland Case Docket Sheet Dated January 9, 2024, *Rock Spring Plaza II, LLC v. Investors Warranty of America, LLC et al*, Case No. 8:20-cv-01502-PJM ............................................................................A1

Plaza's Notice of Filing its Motion to Compel and Request for *In Camera* Review Filed January 25, 2023 .................................................................A30

Plaza's Motion to Compel ........................................................................A33

Exhibit A – Letter to R. Davis from K. Danial ........................................A48

Exhibit B – Letter to K. Danial from R. Davis.........................................A51

Exhibit C – Letter to R. Davis from K. Danial ........................................A54

Exhibit D – Letter to K. Danial from R. Davis ........................................A58

Exhibit E – Email to R. Davis from K. Danial ........................................A62

Exhibit F – Letter to R. Davis from K. Danial ........................................A64

Exhibit G – Letter to K. Danial from R. Davis ........................................A68

Exhibit K – RSD Registration Information ..............................................A75

Exhibit M – Excerpt of IWA's Privilege Log for *In Camera* Review ........A77

Exhibit N – IWA's Second Amended Privilege Log .................................A83

Exhibit O – Email to G. Van Gorp and T. Taylor from P. Rubin ...............A98

Exhibit P – Memorandum to T. Taylor from P. Rubin ............................A100

i

IWA's Response in Opposition to Plaza's Motion to Compel and Request for *In Camera* Review of Privileged Documents
  Filed January 25, 2023..................................................................A102

  Exhibit A – Plaza's Privilege Log...........................................A127

Plaza's Reply in Support of its Motion to Compel Against IWA and Request for *In Camera* Review
  Filed January 25, 2023..................................................................A173

IWA's Motion to Strike Plaza's Motion to Compel Against IWA and Request for *In Camera* Review for Failure to Comply with Local Rule 104.8
  Filed February 1, 2023................................................................A182

Plaza's Response to IWA's Motion to Strike
  Filed February 2, 2023................................................................A185

  Exhibit A – Email to W. Bosch from R. Davis ......................A189

IWA's Reply in Support of its Motion to Strike Plaza's Motion to Compel and Request for *In Camera* Review for Failure to Comply with Local Rule 104.8
  Filed February 13, 2023..............................................................A192

  Exhibit A – Email Correspondence, R. Davis, S. Kropf, and W. Bosch ..A202

  Exhibit B – Plaza's Responses and Objections to IWA's First Continuing Interrogatories..........................................................A212

  Exhibit C – Plaza's Supp. Responses and Objections to IWA's First Continuing Interrogatories......................................................A232

  Exhibit F – Email to Rock Springs Properties and C. Camalier from AEGON USA Realty Advisors, Inc.......................................A244

  Exhibit H – Letter to Landlord from D. Feltman ...................A246

  Exhibit I – Email to C. Camalier from J. Cahill.....................A248

  Exhibit J – Email to C. Camalier from S. Silverberg ..............A250

ii

Exhibit K – G. Voss, Transamerica Life Insurance Company 30(b)(6) Deposition Transcript Excerpts ...............................................................A252

Exhibit L – IWA's Answer to Plaza's First Set of Interrogatories ...........A278

District Court Memorandum Order
    Filed March 15, 2023.................................................................................A297

IWA's Response re: March 15, 2023, Memorandum Order
    Filed March 20, 2023.................................................................................A299

IWA's Brief, Pursuant to the Court's March 15, 2023 Order, in Support of Reconsideration of the Applicability of the Crime-Fraud Exception
    Filed March 27, 2023.................................................................................A300

Plaza's Response to IWA's Brief Seeking Reconsideration of the Applicability of the Crime-Fraud Exception
    Filed April 18, 2023..................................................................................A313

Declaration of K. Danial...........................................................................A347

Exhibit A – D. Feltman Deposition Transcript Excerpts .........................A349

Exhibit B – R. Barron Deposition Transcript Excerpts ...........................A369

Exhibit C – T. Taylor Deposition Transcript Excerpts ............................A397

IWA's Reply in Support of its Brief, Pursuant to the Court's March 15, 2023 Order, in Support of Reconsideration of the Applicability of the Crime-Fraud Exception
    Filed April 25, 2023..................................................................................A415

Exhibit A – February 16, 2023, Hearing Transcript Excerpts .................A440

Exhibit B – Declaration of R. Davis.........................................................A453

Exhibit 1 – P. Rubin Deposition Transcript Excerpts..............................A456

Exhibit 2 – R. Barron Deposition Transcript Excerpts............................A461

iii

Exhibit 3 – T. Taylor Deposition Excerpts .................................................A491

Exhibit 4 – R. Barron Resume..................................................................A505

Exhibit 5 – D. Feltman Deposition Transcript Excerpts .........................A512

Exhibit 6 – M. Pithan Deposition Transcript Excerpts...........................A529

Exhibit C – Trustee's Deed of Assignment..............................................A532

District Court Order
      Filed May 25, 2023...................................................................A540

District Court Order
      Filed August 17, 2023..............................................................A541

District Court Memorandum
      Filed August 17, 2023..............................................................A543

IWA's Emergency Motion to Extend
      Filed August 22, 2023..............................................................A544

      Exhibit A – Email Correspondence, R. Davis and W. Bosch .................A547

District Court Order
      Filed August 23, 2023..............................................................A551

**VOLUME TWO (SEALED)**

Plaza's Motion for Partial Summary Judgment
      Filed September 13, 2021 .........................................................A552

      Memorandum in Support..........................................................A555

      Exhibit C – Ground Lease ........................................................A587

      Exhibit F – Letter to Landlord from D. Feltman .......................A653

iv

Exhibit Q – IWA Value Consultation.........................................................A655

Exhibits to Plaza's Motion to Compel and Request for *In Camera* Review
Filed January 25, 2023
    Exhibit H – Email Correspondence, N. Hutchinson, D. Wirtjes,
    M. Pithan, and D. Feltman.......................................................A696

    Exhibit I – Email to D. Feltman from N. Koluch....................................A700

    Exhibit J – Email to R. Barron and J. Guso from D. Feltman ................A703

    Exhibit L – RSD Operating Agreement.....................................................A705

Exhibits to Plaza's Reply in Support of its Motion to Compel and Request for *In
Camera* Review Filed January 25, 2023
    Exhibit A – Email to G. Snitker from J. Sowka ......................................A759

    Exhibit B – RSD Term Sheet.....................................................A762

    Exhibit C – Email Correspondence, N. Hutchinson, D. Wirtjes,
    M. Pithan, and D. Feltman.......................................................A769

    Exhibit D – Email to M. Pithan, G. Van Gorp, D. Johansen,
    D. Feltman from N. Hutchinson ...............................................A773

Exhibits to IWA's Reply in Support of its Motion to Strike Filed February 13, 2023

    Exhibit D – Declaration of D. Feltman ...................................A775

    Exhibit E – Letter to R. Klein from G. Whittington................................A793

    Exhibit G – Letter to Transamerica Life Insurance Company c/o AEGON
    USA Realty Advisors from C. Camalier...................................A798

Memorandum Opinion
    Filed August 17, 2023..............................................................A801

**Query**    **Reports**    **Utilities**    **Help**    **Log Out**

CASREF

# U.S. District Court
## District of Maryland (Greenbelt)
## CIVIL DOCKET FOR CASE #: 8:20-cv-01502-PJM

Rock Spring Plaza II, LLC v. Investors Warranty of America, LLC et al        Date Filed: 06/05/2020
Assigned to: Judge Peter J. Messitte                                          Jury Demand: Defendant
Referred to: Magistrate Judge Gina L Simms                                    Nature of Suit: 290 Real Property: Other
Cause: 28:1332 Diversity-Real Property                                        Jurisdiction: Diversity

**Plaintiff**

**Rock Spring Plaza II, LLC**                        represented by    **Alvin Dunn**
                                                                      Pillsbury Winthrop Shaw Pittman LLP
                                                                      1200 Seventeenth Street NW
                                                                      Washington, DC 20036
                                                                      12026638000
                                                                      Fax: 12026638007
                                                                      Email: alvin.dunn@pillsburylaw.com
                                                                      *ATTORNEY TO BE NOTICED*

                                                                      **Anthony F Cavanaugh**
                                                                      Pillsbury Winthrop Shaw Pittman
                                                                      Litigation
                                                                      1200 17th Street, NW
                                                                      Washington, DC 20036
                                                                      202-663-8142
                                                                      Email: anthony.cavanaugh@pillsburylaw.com
                                                                      *ATTORNEY TO BE NOTICED*

                                                                      **John Robinson**
                                                                      Arnold & Porter Kaye Scholer LLP
                                                                      601 Massachusetts Ave NW
                                                                      Washington, DC 20009
                                                                      732-939-2537
                                                                      Email: john.robinson@apks.com
                                                                      *TERMINATED: 09/02/2020*
                                                                      *ATTORNEY TO BE NOTICED*

                                                                      **Katherine Theresa Danial**
                                                                      Pillsbury Winthrop Shaw Pittman LLP
                                                                      1200 Seventeenth Street NW
                                                                      Washington, DC 20036
                                                                      202-663-8105
                                                                      Fax: 202-354-5220
                                                                      Email: katherine.danial@pillsburylaw.com
                                                                      *ATTORNEY TO BE NOTICED*

                                                                      **Nicole Steinberg**
                                                                      Pillsbury Winthrop Shaw Pittman LLP
                                                                      1200 17th St NW
                                                                      Washington, DC 20036
                                                                      202-663-8151
                                                                      Email: nicole.steinberg@pillsburylaw.com
                                                                      *ATTORNEY TO BE NOTICED*

                                                                      **Preston Smith**
                                                                      Arnold & Porter Kaye Scholer LLP

A1

601 Massachusetts Ave NW
Washington, DC 20001
9194758361
Email: preston.smith@arnoldporter.com
*TERMINATED: 05/18/2021*

**William M Bosch**
Pillsbury Winthrop Shaw Pittman
1200 Seventeenth Street, NW
Washington, DC 20036
12026638761
Fax: 12026638007
Email: william.bosch@pillsburylaw.com
*ATTORNEY TO BE NOTICED*

V.

**Defendant**

**Investors Warranty of America, LLC**                    represented by    **Anne V Dunne**
Seyfarth Shaw LLP
Suite 300
2 Seaport Lane
Boston, MA 02210
6179464800
Fax: 6179464801
Email: adunne@seyfarth.com
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

**Anthony Joseph LaPlaca**
Seyfarth Shaw LLP
2 Seaport Lane
Boston, MA 02110
617-946-8324
Fax: 802-558-8579
Email: alaplaca@seyfarth.com
*ATTORNEY TO BE NOTICED*

**Edward Victor Arnold**
Seyfarth Shaw LLP
975 F St NW
Washington, DC 20004
2028283597
Fax: 2028285393
Email: earnold@seyfarth.com
*TERMINATED: 01/04/2023*

**Rebecca Allison Davis**
Arnall Golden Gregory
171 17th Street NW
Suite 2100
Atlanta, GA 30363
404-873-8500
Email: rebecca.davis@agg.com
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

**Renee Beth Appel**
Seyfarth Shaw Llp
975 F Street Nw
Washington, DC 20006
2028285371

A2

Fax: 2028285393
Email: rappel@seyfarth.com
*ATTORNEY TO BE NOTICED*

**Defendant**

**Rock Springs Drive, LLC**                     represented by **Sara Kropf**
Kropf Moseley PLLC
1100 H Street NW
Suite 1220
Washington, DC 20005
2026276900
Email: sara@kmlawfirm.com
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Jaime Rosenberg**
Vedder Price
1401 New York Avenue NW
Ste 500
Washington, DC 20005
202-312-3323
Email: jrosenberg@vedderprice.com
*TERMINATED: 01/24/2023*
*PRO HAC VICE*

**Rebecca Guiterman**
Kropf Moseley PLLC
1100 H Street NW #1220
Washington, DC 20005
2026276900
Email: rebecca@kmlawfirm.com
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

**Defendant**

**Transamerica Corporation**                     represented by **Anthony L Meagher**
*TERMINATED: 01/17/2023*                         DLA Piper LLP (US)
6225 Smith Ave
Baltimore, MD 21209-3600
14105803000
Fax: 14105803001
Email: anthony.meagher@dlapiper.com
*LEAD ATTORNEY*

**Alexa Pauline Ain**
DLA Piper LLP (US)
650 S. Exeter Street
Suite 1100
Baltimore, MD 21202
410-806-4033
Email: alexa.ain@us.dlapiper.com
*ATTORNEY TO BE NOTICED*

**Nicole Marie Kozlowski**
DLA Piper LLP
6225 Smith Avenue
Baltimore, MD 21209
410-580-4106
Email: nicole.kozlowski@us.dlapiper.com

**Defendant**

**Jane Does**

A3

**Counter Claimant**

**Investors Warranty of America, LLC**                 represented by **Anne V Dunne**
                                                                      (See above for address)
                                                                      *PRO HAC VICE*
                                                                      *ATTORNEY TO BE NOTICED*

                                                                      **Anthony Joseph LaPlaca**
                                                                      (See above for address)
                                                                      *ATTORNEY TO BE NOTICED*

                                                                      **Edward Victor Arnold**
                                                                      (See above for address)
                                                                      *TERMINATED: 01/04/2023*

                                                                      **Rebecca Allison Davis**
                                                                      (See above for address)
                                                                      *ATTORNEY TO BE NOTICED*

                                                                      **Renee Beth Appel**
                                                                      (See above for address)
                                                                      *ATTORNEY TO BE NOTICED*

V.

**Counter Defendant**

**Rock Spring Plaza II, LLC**                          represented by **John Robinson**
                                                                      (See above for address)
                                                                      *TERMINATED: 09/02/2020*
                                                                      *ATTORNEY TO BE NOTICED*

                                                                      **Preston Smith**
                                                                      (See above for address)
                                                                      *TERMINATED: 05/18/2021*

                                                                      **William M Bosch**
                                                                      (See above for address)
                                                                      *ATTORNEY TO BE NOTICED*

**Counter Claimant**

**Rock Springs Drive, LLC**                            represented by **Sara Kropf**
                                                                      (See above for address)
                                                                      *LEAD ATTORNEY*
                                                                      *ATTORNEY TO BE NOTICED*

                                                                      **Jaime Rosenberg**
                                                                      (See above for address)
                                                                      *TERMINATED: 01/24/2023*
                                                                      *PRO HAC VICE*

V.

**Counter Defendant**

**Rock Spring Plaza II, LLC**                          represented by **John Robinson**
                                                                      (See above for address)
                                                                      *TERMINATED: 09/02/2020*
                                                                      *ATTORNEY TO BE NOTICED*

                                                                      **Preston Smith**
                                                                      (See above for address)
                                                                      *TERMINATED: 05/18/2021*

A4

|                          |               | **William M Bosch** |
|--------------------------|---------------|---------------------|

William M Bosch
(See above for address)
*ATTORNEY TO BE NOTICED*

**Counter Claimant**

**Rock Springs Drive, LLC**                    represented by  **Sara Kropf**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Jaime Rosenberg**
(See above for address)
*TERMINATED: 01/24/2023*
*PRO HAC VICE*

V.

**Counter Defendant**

**Rock Spring Plaza II, LLC**                  represented by  **John Robinson**
(See above for address)
*TERMINATED: 09/02/2020*
*ATTORNEY TO BE NOTICED*

**Preston Smith**
(See above for address)
*TERMINATED: 05/18/2021*

**William M Bosch**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Counter Claimant**

**Investors Warranty of America, LLC**         represented by  **Anne V Dunne**
(See above for address)
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

**Anthony Joseph LaPlaca**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Edward Victor Arnold**
(See above for address)
*TERMINATED: 01/04/2023*

**Rebecca Allison Davis**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Renee Beth Appel**
(See above for address)
*ATTORNEY TO BE NOTICED*

V.

**Counter Defendant**

**Rock Spring Plaza II, LLC**                  represented by  **John Robinson**
(See above for address)
*TERMINATED: 09/02/2020*
*ATTORNEY TO BE NOTICED*

A5

**Preston Smith**
(See above for address)
*TERMINATED: 05/18/2021*

**William M Bosch**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Interested Party**

**Elizabethean Court Associates I LLC**          represented by   **William M Bosch**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Alvin Dunn**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Katherine Theresa Danial**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Interested Party**

**Elizabethean Court Associates II LLC**          represented by   **Katherine Theresa Danial**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**William M Bosch**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Alvin Dunn**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Interested Party**

**Elizabethean Court Associates III LLC**          represented by   **William M Bosch**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Alvin Dunn**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Katherine Theresa Danial**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Interested Party**

**Elizabethean Court Associates IV LLC**          represented by   **William M Bosch**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Alvin Dunn**
(See above for address)
*ATTORNEY TO BE NOTICED*

A6

**Katherine Theresa Danial**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Interested Party**

**Rock Spring Plaza I, LLC**          represented by  **William M Bosch**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Alvin Dunn**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Katherine Theresa Danial**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Interested Party**

**Rock Spring Properties**          represented by  **William M Bosch**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Alvin Dunn**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Katherine Theresa Danial**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Interested Party**

**Rockledge Associates LLC**          represented by  **William M Bosch**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Alvin Dunn**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Katherine Theresa Danial**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Respondent**

**Transamerica Life Insurance Company**          represented by  **Anthony L Meagher**
DLA Piper LLP (US)
650 S. Exeter Street
Suite 1100
Baltimore, MD 21202-4537
United Sta
14105803000
Fax: 14105803001
Email: anthony.meagher@dlapiper.com
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Alexa Pauline Ain**

A7

District of Maryland (CM/ECF Live NextGen 1.7.1.1)

(See above for address)
*ATTORNEY TO BE NOTICED*

**Respondent**

**Transamerica Financial Life Insurance
Company**                                    represented by   **Anthony L Meagher**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Alexa Pauline Ain**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Respondent**

**Transamerica Corporation**                 represented by   **Anthony L Meagher**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Alexa Pauline Ain**
(See above for address)
*ATTORNEY TO BE NOTICED*

| Date Filed | # | Docket Text |
|---|---|---|
| 06/05/2020 | 1 | COMPLAINT against Rock Springs Drive, LLC, Investors Warranty of America, LLC ( Filing fee $ 400 receipt number 0416-8686330.), filed by Rock Spring PLaza II, LLC. (Attachments: # 1 Exhibit A, # 2 Exhibit B, # 3 Exhibit C, # 4 Exhibit D, # 5 Exhibit E, # 6 Exhibit F, # 7 Civil Cover Sheet)(Bosch, William) (Entered: 06/05/2020) |
| 06/05/2020 | 2 | NOTICE by Rock Spring PLaza II, LLC re 1 Complaint, *Summons to Investors Warranty of America, LLC* (Attachments: # 1 Summons to Rock Springs Drive, LLC)(Bosch, William) (Entered: 06/05/2020) |
| 06/05/2020 | 3 | Deficiency Notice: Rock Spring Plaza II, LLC -- Your Local Rule 103.3 disclosure statement has not been filed. The Statement must be filed by 6/12/2020 (dg3s, Deputy Clerk) (Entered: 06/05/2020) |
| 06/05/2020 | 4 | Summons Issued 21 days as to Investors Warranty of America, LLC, Rock Springs Drive, LLC.(dg3s, Deputy Clerk) (Entered: 06/05/2020) |
| 06/05/2020 | 5 | Local Rule 103.3 Disclosure Statement by Rock Spring Plaza II, LLC identifying Other Affiliate The Gregory S. Camalier 2015 Trust u/a dated November 1, 2016, Other Affiliate Rock Spring Plaza II Sub-Entity LLC, Other Affiliate The Lori D. Camalier 2015 Trust u/a dated November 1, 2016, Other Affiliate The Lisa A. Camalier 2015 Trust u/a dated November 1, 2016, Other Affiliate The F. Davis Camalier 2015 Trust u/a dated November 1, 2016, Other Affiliate The Charles A. Camalier, III 2015 Trust u/a dated November 1, 2016, Other Affiliate The Deborah C. Walker 2015 Trust u/a dated November 1, 2016, Other Affiliate 1994 Trust Asset LLC for Rock Spring Plaza II, LLC.(Bosch, William) (Entered: 06/05/2020) |
| 06/05/2020 | 6 | NOTICE of Appearance by John Robinson on behalf of Rock Spring Plaza II, LLC (Robinson, John) (Entered: 06/05/2020) |
| 06/09/2020 | 7 | SUMMONS Returned Executed by Rock Spring Plaza II, LLC. Rock Springs Drive, LLC served on 6/8/2020, answer due 6/29/2020.(Bosch, William) (Entered: 06/09/2020) |
| 06/09/2020 | 8 | SUMMONS Returned Executed by Rock Spring Plaza II, LLC. Investors Warranty of America, LLC served on 6/8/2020, answer due 6/29/2020.(Bosch, William) (Entered: 06/09/2020) |
| 06/12/2020 | 9 | MOTION to Appear Pro Hac Vice for Rebecca Davis (Filing fee $100, receipt number 0416-8700394.) by Investors Warranty of America, LLC(Arnold, Edward) (Entered: 06/12/2020) |
| 06/16/2020 | 10 | PAPERLESS ORDER granting 9 Motion to Appear Pro Hac Vice on behalf of Rebecca Allison Davis. Directing attorney Rebecca Allison Davis to use the attorney's existing CM/ECF login and password previously issued in this Court. The account password can be reset at http://www.mdd.uscourts.gov/electronic-case-filing-password-reset. Signed by Clerk on 6/16/2020. (srds, Deputy Clerk) (Entered: 06/16/2020) |

A8

| 06/29/2020 | 11 | NOTICE of Appearance by Sara Kropf on behalf of Rock Springs Drive, LLC (Kropf, Sara) (Entered: 06/29/2020) |
| 06/29/2020 | 12 | MOTION for Extension of Time *to Respond to Complaint* by Rock Springs Drive, LLC (Attachments: # 1 Text of Proposed Order)(Kropf, Sara) (Entered: 06/29/2020) |
| 06/29/2020 | 13 | MOTION to Dismiss , MOTION to Dismiss for Failure to State a Claim by Investors Warranty of America, LLC (Attachments: # 1 Memorandum in Support, # 2 Exhibit, # 3 Exhibit)(Arnold, Edward) (Entered: 06/29/2020) |
| 06/29/2020 | 14 | [FILED IN ERROR] MOTION for Disclosure - *Corporate Disclosure Statement* by Investors Warranty of America, LLC(Arnold, Edward) Modified on 7/2/2020 (dg3s, Deputy Clerk). (Entered: 06/29/2020) |
| 06/30/2020 | 15 | RESPONSE in Opposition re 12 MOTION for Extension of Time *to Respond to Complaint* filed by Rock Spring Plaza II, LLC. (Attachments: # 1 Exhibit A, # 2 Exhibit B)(Bosch, William) (Entered: 06/30/2020) |
| 06/30/2020 | 16 | MEMORANDUM/ORDER granting 12 Motion for Extension of Time. Signed by Judge Peter J. Messitte on 6/30/2020. (jf3s, Deputy Clerk) (Entered: 06/30/2020) |
| 07/02/2020 | 17 | QC NOTICE: 14 Motion for Disclosure filed by Investors Warranty of America, LLC was filed incorrectly. *Wrong event used. When docketing the Local Rule 103.3 Disclosure Statement please use the correct event (Other Filings -> Other Documents -> Local 103.3 Disclosure Statement). Corporate parent and/or affiliates MUST be entered when prompted by CM/ECF to do so if needed. It has been noted as FILED IN ERROR, and the document link has been disabled.* (dg3s, Deputy Clerk) (Entered: 07/02/2020) |
| 07/02/2020 | 18 | Local Rule 103.3 Disclosure Statement by Investors Warranty of America, LLC (Arnold, Edward) (Entered: 07/02/2020) |
| 07/06/2020 | 19 | Local Rule 103.3 Disclosure Statement by Rock Springs Drive, LLC (Kropf, Sara) (Entered: 07/06/2020) |
| 07/06/2020 | 20 | MOTION to Dismiss by Rock Springs Drive, LLC (Attachments: # 1 Memorandum in Support, # 2 Text of Proposed Order)(Kropf, Sara) (Entered: 07/06/2020) |
| 07/13/2020 | 21 | RESPONSE in Opposition re 13 MOTION to Dismiss MOTION to Dismiss for Failure to State a Claim, 20 MOTION to Dismiss filed by Rock Spring Plaza II, LLC.(Bosch, William) (Entered: 07/13/2020) |
| 07/23/2020 | 22 | NOTICE of Appearance by Preston Smith on behalf of Rock Spring Plaza II, LLC (Smith, Preston) (Entered: 07/23/2020) |
| 07/27/2020 | 23 | REPLY to Response to Motion re 20 MOTION to Dismiss filed by Rock Springs Drive, LLC.(Kropf, Sara) (Entered: 07/27/2020) |
| 07/27/2020 | 24 | REPLY to Response to Motion re 13 MOTION to Dismiss MOTION to Dismiss for Failure to State a Claim - *Defendant Investors Warranty of America, LLC's Reply Brief* filed by Investors Warranty of America, LLC.(Arnold, Edward) (Entered: 07/27/2020) |
| 08/03/2020 | 25 | PAPERLESS NOTICE OF SCHEDULING OF MOTIONS HEARING and advising counsel/parties of record that argument on 13 Defendant Investors Warranty of America, LLCs Motion to Dismiss and 20 Defendant Rock Springs Drive LLCs Motion to Dismiss will be heard before Judge Peter J. Messitte on Tuesday, December 1, 2020 at 2:00 p.m. (Courtroom To Be Determined). (The hearing will also include any other ripe and/or pending motions as of that date.) The parties will be allotted one and one-half (1 1/2) hours for total argument. Counsel should advise in writing immediately if they expect oral argument to exceed the allotted time frame. PLEASE ALSO NOTE: Counsel should bring copies for both the Court and opposing counsel of the principal cases on which they intend to rely during oral argument. Please also highlight the appropriate text.(jmhs, Chambers) (Entered: 08/03/2020) |
| 09/01/2020 | 26 | MOTION to Withdraw as Attorney by Rock Spring Plaza II, LLC (Attachments: # 1 Text of Proposed Order)(Robinson, John) (Entered: 09/01/2020) |
| 09/02/2020 | 27 | PAPERLESS ORDER GRANTING 26 Motion to Withdraw as Attorney. Attorney John Robinson withdrawn. Signed by Judge Peter J. Messitte on 9/2/2020. (jmhs, Chambers) (Entered: 09/02/2020) |
| 12/01/2020 | 28 | NOTICE of Appearance by Anthony Joseph LaPlaca on behalf of Investors Warranty of America, LLC (LaPlaca, Anthony) (Entered: 12/01/2020) |
| 12/01/2020 | 29 | Motions Hearing held on 12/1/2020 re 13 MOTION to Dismiss for Failure to State a Claim filed by Defendant Investors Warranty of America, LLC and 20 MOTION to Dismiss filed by Defendant Rock Springs Drive, LLC - both Argued - Oral Ruling of the Court DENYING 13 and 20 Motions to Dismiss for |

A9

| | | |
|---|---|---|
| | | reasons stated on the record by and before Judge Peter J. Messitte. (Scheduling Order to be entered by the Court) (Court Reporter: Rebecca Stonestreet - via Zoom) (tds, Deputy Clerk) (Entered: 12/01/2020) |
| 12/01/2020 | 30 | ORDER denying 13 MOTION to Dismiss, MOTION to Dismiss for Failure to State a Claim; denying 20 MOTION to Dismiss. Signed by Judge Peter J. Messitte on 12/1/2020. (dg3s, Deputy Clerk) (Entered: 12/02/2020) |
| 12/01/2020 | 31 | SCHEDULING ORDER: Status Report due by 4/15/2021. Signed by Judge Peter J. Messitte on 12/1/2020. (dg3s, Deputy Clerk) (Entered: 12/02/2020) |
| 12/15/2020 | 32 | *Defendant Investors Warranty of America's* ANSWER to 1 Complaint, *and Affirmative and Other Defenses*, COUNTERCLAIM against Rock Spring Plaza II, LLC by Investors Warranty of America, LLC. (Attachments: # 1 Exhibit, # 2 Exhibit)(Arnold, Edward) (Entered: 12/15/2020) |
| 12/15/2020 | 33 | ANSWER to 1 Complaint, , COUNTERCLAIM against Rock Spring Plaza II, LLC by Rock Springs Drive, LLC.(Kropf, Sara) (Entered: 12/15/2020) |
| 12/15/2020 | 34 | NOTICE by Rock Spring Plaza II, LLC (Smith, Preston) (Entered: 12/15/2020) |
| 01/05/2021 | 35 | [FILED IN ERROR - PER COUNSEL] ANSWER to 32 Answer to Complaint,, Counterclaim, by Rock Spring Plaza II, LLC.(Smith, Preston) Modified on 1/5/2021 (dg3s, Deputy Clerk). (Entered: 01/05/2021) |
| 01/05/2021 | 36 | ANSWER to 33 Answer to Complaint, Counterclaim by Rock Spring Plaza II, LLC.(Smith, Preston) (Entered: 01/05/2021) |
| 01/05/2021 | 37 | MOTION to Strike 33 Answer to Complaint, Counterclaim, 32 Answer to Complaint,, Counterclaim, by Rock Spring Plaza II, LLC (Attachments: # 1 Memorandum in Support, # 2 Text of Proposed Order) (Smith, Preston) (Entered: 01/05/2021) |
| 01/05/2021 | 38 | ANSWER to 32 Answer to Complaint,, Counterclaim, by Rock Spring Plaza II, LLC.(Smith, Preston) (Entered: 01/05/2021) |
| 01/15/2021 | 39 | MOTION for Leave to File *Amended Complaint & Joinder* by Rock Spring Plaza II, LLC (Attachments: # 1 Text of Proposed Order, # 2 Attachment First Amended Complaint, # 3 Attachment Blackline of Original Complaint, # 4 Exhibit Ex. A to 1st Am. Complaint, # 5 Exhibit Ex. B to 1st Am. Complaint, # 6 Exhibit Ex. C to 1st Am. Complaint, # 7 Exhibit Ex. D to 1st Am. Complaint, # 8 Exhibit Ex. E to 1st Am. Complaint, # 9 Exhibit Ex. F to 1st Am. Complaint)(Smith, Preston) (Entered: 01/15/2021) |
| 01/15/2021 | 40 | Memorandum re 39 MOTION for Leave to File *Amended Complaint & Joinder* filed by Rock Spring Plaza II, LLC. (Attachments: # 1 Exhibit, # 2 Exhibit)(Smith, Preston) (Entered: 01/15/2021) |
| 01/15/2021 | 41 | NOTICE by Rock Spring Plaza II, LLC re 39 MOTION for Leave to File *Amended Complaint & Joinder* (Attachments: # 1 Attachment Proposed First Amended Complaint)(Smith, Preston) (Entered: 01/15/2021) |
| 01/19/2021 | 42 | AMENDED ANSWER to 1 Complaint,, COUNTERCLAIM against All Plaintiffs by Rock Springs Drive, LLC. (Kropf, Sara) (Entered: 01/19/2021) |
| 01/19/2021 | 43 | RESPONSE in Opposition re 37 MOTION to Strike 33 Answer to Complaint, Counterclaim, 32 Answer to Complaint,, Counterclaim, filed by Rock Springs Drive, LLC.(Kropf, Sara) (Entered: 01/19/2021) |
| 01/19/2021 | 44 | AMENDED ANSWER to 1 Complaint,, COUNTERCLAIM against Rock Spring Plaza II, LLC by Investors Warranty of America, LLC. (Attachments: # 1 Exhibit, # 2 Exhibit)(Arnold, Edward) (Entered: 01/19/2021) |
| 01/19/2021 | 45 | RESPONSE to Motion re 37 MOTION to Strike 33 Answer to Complaint, Counterclaim, 32 Answer to Complaint,, Counterclaim, filed by Investors Warranty of America, LLC.(Arnold, Edward) (Entered: 01/19/2021) |
| 01/27/2021 | 46 | NOTICE by Rock Spring Plaza II, LLC re 37 MOTION to Strike 33 Answer to Complaint, Counterclaim, 32 Answer to Complaint,, Counterclaim, (Smith, Preston) (Entered: 01/27/2021) |
| 01/28/2021 | 47 | Joint MOTION for Extension of Time *to Extend Discovery and Modify Scheduling Order* by Investors Warranty of America, LLC (Attachments: # 1 Text of Proposed Order)(Arnold, Edward) (Entered: 01/28/2021) |
| 01/28/2021 | 48 | ORDER granting 47 Joint MOTION for Extension of Time to Extend Discovery and Modify Scheduling Order; Status Report due by 6/15/2021. Signed by Judge Peter J. Messitte on 1/28/2021. (dg3s, Deputy Clerk) (Entered: 01/28/2021) |

A10

| 01/29/2021 | 49 | RESPONSE in Opposition re 39 MOTION for Leave to File *Amended Complaint & Joinder* filed by Investors Warranty of America, LLC.(Arnold, Edward) (Entered: 01/29/2021) |
| 02/09/2021 | 50 | MOTION to Strike 42 Amended Answer to Complaint, Counterclaim, 44 Amended Answer to Complaint, Counterclaim by Rock Spring Plaza II, LLC (Attachments: # 1 Memorandum in Support, # 2 Text of Proposed Order)(Smith, Preston) (Entered: 02/09/2021) |
| 02/12/2021 | 51 | RESPONSE in Support re 39 MOTION for Leave to File *Amended Complaint & Joinder* filed by Rock Spring Plaza II, LLC.(Smith, Preston) (Entered: 02/12/2021) |
| 02/23/2021 | 52 | RESPONSE in Opposition re 37 MOTION to Strike 33 Answer to Complaint, Counterclaim, 32 Answer to Complaint,, Counterclaim, , 50 MOTION to Strike 42 Amended Answer to Complaint, Counterclaim, 44 Amended Answer to Complaint, Counterclaim filed by Investors Warranty of America, LLC.(Arnold, Edward) (Entered: 02/23/2021) |
| 02/23/2021 | 53 | RESPONSE in Opposition re 50 MOTION to Strike 42 Amended Answer to Complaint, Counterclaim, 44 Amended Answer to Complaint, Counterclaim filed by Rock Springs Drive, LLC.(Kropf, Sara) (Entered: 02/23/2021) |
| 02/24/2021 | 54 | STIPULATION *Confidentiality Order* by Investors Warranty of America, LLC(Arnold, Edward) (Entered: 02/24/2021) |
| 02/25/2021 | 55 | PAPERLESS ORDER APPROVING 46 Plaintiff Rock Spring Plaza II, LLC's Notice of Withdrawal of 37 Motion to Strike. Signed by Judge Peter J. Messitte on 2/25/2021. (jmhs, Chambers) (Entered: 02/25/2021) |
| 02/25/2021 | 56 | STIPULATED CONFIDENTIALITY ORDER. Signed by Judge Peter J. Messitte on 2/25/2021. (dg3s, Deputy Clerk) (Entered: 02/25/2021) |
| 02/25/2021 | 57 | PAPERLESS ORDER DENYING AS MOOT 37 Motion to Strike. Signed by Judge Peter J. Messitte on 2/25/2021. (jmhs, Chambers) (Entered: 02/25/2021) |
| 02/25/2021 | 58 | ORDER granting 39 MOTION for Leave to File Amended Complaint & Joinder; adding Transamerica Corporation as a defendant; directing the clerk to docket the First Amended Complaint. Signed by Judge Peter J. Messitte on 2/25/2021. (dg3s, Deputy Clerk) (Entered: 02/25/2021) |
| 02/25/2021 | 59 | AMENDED COMPLAINT against Jane Does, Investors Warranty of America, LLC, Rock Springs Drive, LLC, Transamerica Corporation, filed by Rock Spring Plaza II, LLC. (Attachments: # 1 Redline Version, # 2 Exhibit A, # 3 Exhibit B, # 4 Exhibit C, # 5 Exhibit D, # 6 Exhibit E, # 7 Exhibit F)(dg3s, Deputy Clerk) (Additional attachment(s) added on 2/25/2021: # 8 CORRECTED First Amended Complaint) (dg3s, Deputy Clerk). (Entered: 02/25/2021) |
| 02/25/2021 | 60 | QC NOTICE: 59 Amended Complaint, filed by Rock Spring Plaza II, LLC was filed incompletely. ***The following attachments or exhibits are missing - Summons as to Transamerica Corporation. To correct this problem, file the Summons using the event Notice (Other) and link the Summons to 59* .** (dg3s, Deputy Clerk) (Entered: 02/25/2021) |
| 02/25/2021 | 61 | NOTICE by Rock Spring Plaza II, LLC re 59 Amended Complaint, (Attachments: # 1 Exhibit 1)(Smith, Preston) (Entered: 02/25/2021) |
| 02/26/2021 | 62 | Summons Issued 21 days as to Transamerica Corporation.(dg3s, Deputy Clerk) (Entered: 02/26/2021) |
| 03/04/2021 | 63 | MEMORANDUM/ORDER denying as Moot 50 Motion to Strike Defendants' Amended Answer to Complaint. Signed by Judge Peter J. Messitte on 3/3/2021. (jf3s, Deputy Clerk) (Entered: 03/04/2021) |
| 03/11/2021 | 64 | *Defendant Investors Warranty of America's Answer and Affirmative Defenses to the First Amended Complaint* ANSWER to 59 Amended Complaint, by Investors Warranty of America, LLC.(Arnold, Edward) (Entered: 03/11/2021) |
| 03/11/2021 | 65 | ANSWER to 59 Amended Complaint, by Rock Springs Drive, LLC.(Kropf, Sara) (Entered: 03/11/2021) |
| 03/19/2021 | 66 | NOTICE of Appearance by Anthony L Meagher on behalf of Transamerica Corporation (Meagher, Anthony) (Entered: 03/19/2021) |
| 03/19/2021 | 67 | NOTICE of Appearance by Nicole Marie Kozlowski on behalf of Transamerica Corporation (Kozlowski, Nicole) (Entered: 03/19/2021) |
| 03/19/2021 | 68 | Consent MOTION for Extension of Time *to Respond to Plaintiff's Amended Complaint* by Transamerica Corporation (Attachments: # 1 Text of Proposed Order)(Kozlowski, Nicole) (Entered: 03/19/2021) |

A11

| | | |
|---|---|---|
| 03/19/2021 | 69 | PAPERLESS ORDER GRANTING 68 Consent Motion for Extension of Time to Respond to Plaintiffs Amended Complaint (until April 12, 2021). Signed by Judge Peter J. Messitte on 3/19/2021. (jmhs, Chambers) (Entered: 03/19/2021) |
| 03/19/2021 | 70 | Local Rule 103.3 Disclosure Statement by Transamerica Corporation identifying Corporate Parent Aegon, N.V., Corporate Parent The AEGON Trust, Corporate Parent AEGON International, B.V. for Transamerica Corporation.(Kozlowski, Nicole) (Entered: 03/19/2021) |
| 03/22/2021 | 71 | Consent MOTION for Extension of Time to Complete Discovery by Rock Spring Plaza II, LLC (Attachments: # 1 Text of Proposed Order)(Smith, Preston) (Entered: 03/22/2021) |
| 03/23/2021 | 72 | ORDER granting 71 Consent MOTION for Extension of Time to Complete Discovery; status report due September 15, 2021. Signed by Judge Peter J. Messitte on 3/23/2021. (jf3s, Deputy Clerk) (Entered: 03/23/2021) |
| 04/01/2021 | 73 | MOTION to Strike 65 Answer to Amended Complaint, 64 Answer to Amended Complaint by Rock Spring Plaza II, LLC (Attachments: # 1 Text of Proposed Order)(Smith, Preston) (Entered: 04/01/2021) |
| 04/01/2021 | 74 | Memorandum re 73 MOTION to Strike 65 Answer to Amended Complaint, 64 Answer to Amended Complaint filed by Rock Spring Plaza II, LLC.(Smith, Preston) (Entered: 04/01/2021) |
| 04/12/2021 | 75 | MOTION to Dismiss for Failure to State a Claim by Transamerica Corporation (Attachments: # 1 Memorandum In Support Memorandum of Law, # 2 Exhibit Exhibit 1, # 3 Text of Proposed Order Proposed Order)(Kozlowski, Nicole) (Entered: 04/12/2021) |
| 04/15/2021 | 76 | RESPONSE in Opposition re 73 MOTION to Strike 65 Answer to Amended Complaint, 64 Answer to Amended Complaint filed by Investors Warranty of America, LLC.(Arnold, Edward) (Entered: 04/15/2021) |
| 04/15/2021 | 77 | RESPONSE in Opposition re 73 MOTION to Strike 65 Answer to Amended Complaint, 64 Answer to Amended Complaint filed by Rock Springs Drive, LLC.(Kropf, Sara) (Entered: 04/15/2021) |
| 04/26/2021 | 78 | RESPONSE in Opposition re 75 MOTION to Dismiss for Failure to State a Claim filed by Rock Spring Plaza II, LLC. (Attachments: # 1 Exhibit)(Smith, Preston) (Entered: 04/26/2021) |
| 04/29/2021 | 79 | RESPONSE in Support re 73 MOTION to Strike 65 Answer to Amended Complaint, 64 Answer to Amended Complaint filed by Rock Spring Plaza II, LLC.(Smith, Preston) (Entered: 04/29/2021) |
| 05/07/2021 | 80 | MOTION for Leave to File *Sur-Reply Related to Plaintiff's Motion to Strike Affirmative Defenses* by Rock Springs Drive, LLC (Attachments: # 1 Exhibit Exhibit A (proposed sur-reply), # 2 Text of Proposed Order) (Kropf, Sara) (Entered: 05/07/2021) |
| 05/07/2021 | 81 | NOTICE of Change of Address by William M Bosch (Bosch, William) (Entered: 05/07/2021) |
| 05/07/2021 | 82 | MOTION for Leave to File *Sur-Reply to Plaintiff's Motion to Strike the Affirmative Defenses* by Investors Warranty of America, LLC (Attachments: # 1 Exhibit Proposed Sur-Reply, # 2 Text of Proposed Order) (Arnold, Edward) (Entered: 05/07/2021) |
| 05/10/2021 | 83 | REPLY to Response to Motion re 75 MOTION to Dismiss for Failure to State a Claim filed by Transamerica Corporation.(Kozlowski, Nicole) (Entered: 05/10/2021) |
| 05/13/2021 | 84 | MOTION to Appear Pro Hac Vice for Anne Dunne (Filing fee $100, receipt number 0416-9276486.) by Investors Warranty of America, LLC(LaPlaca, Anthony) (Entered: 05/13/2021) |
| 05/14/2021 | 85 | MOTION to Withdraw as Attorney by Rock Spring Plaza II, LLC(Smith, Preston) (Entered: 05/14/2021) |
| 05/14/2021 | 86 | QC NOTICE: 84 Motion to Appear Pro Hac Vice filed by Investors Warranty of America, LLC needs to be modified. See attachment for details and corrective actions needed regarding the signature(s) on the motion. (dm4s, Deputy Clerk) (Entered: 05/14/2021) |
| 05/14/2021 | 87 | NOTICE of Appearance by Katherine Theresa Danial on behalf of Rock Spring Plaza II, LLC (Danial, Katherine) (Entered: 05/14/2021) |
| 05/17/2021 | 88 | CORRECTED MOTION to Appear Pro Hac Vice for Anne Dunne by Investors Warranty of America, LLC. The fee has already been paid.(LaPlaca, Anthony) (Entered: 05/17/2021) |
| 05/18/2021 | 89 | PAPERLESS ORDER GRANTING 85 Motion to Withdraw as Attorney. Attorney Preston Smith withdrawn. Signed by Judge Peter J. Messitte on 5/18/2021. (jmhs, Chambers) (Entered: 05/18/2021) |

A12

| 05/18/2021 | 90 | PAPERLESS ORDER granting 88 Corrected Motion to Appear Pro Hac Vice on behalf of Anne V Dunne. Directing attorney Anne V Dunne to register online for CM/ECF at http://www.mdd.uscourts.gov/electronic-case-filing-registration. Signed by Clerk on 5/18/2021. (dm4s, Deputy Clerk) (Entered: 05/18/2021) |
|---|---|---|
| 05/18/2021 | 91 | NOTICE of Appearance by Alvin Dunn on behalf of Rock Spring Plaza II, LLC (Dunn, Alvin) (Entered: 05/18/2021) |
| 06/02/2021 | 92 | ORDER denying 73 MOTION to Strike 65 Answer to Amended Complaint, 64 Answer to Amended Complaint ; denying as moot 80 MOTION for Leave to File Sur-Reply Related to Plaintiff's Motion to Strike Affirmative Defenses ; denying as moot 82 MOTION for Leave to File Sur-Reply to Plaintiff's Motion to Strike the Affirmative Defenses. Signed by Judge Peter J. Messitte on 6/1/2021. (dg3s, Deputy Clerk) (Entered: 06/02/2021) |
| 06/02/2021 | 93 | PAPERLESS NOTICE OF SCHEDULING OF MOTIONS HEARING and advising counsel/parties of record that oral argument on 75 Defendants Motion to Dismiss will be heard before Judge Peter J. Messitte on Tuesday, July 6, 2021 at 2:30 p.m. via ZoomGov. The parties will be allotted one and one-half (1 1/2) hours for total argument. Counsel should advise in writing immediately if they expect oral argument to exceed the allotted time frame. PLEASE ALSO NOTE: Counsel should mail or hand deliver copies of the principal cases on which they intend to rely during oral argument to the Courthouse by no later than Friday, July 2, 2021. Please also highlight the appropriate text(jmhs, Chambers) (Entered: 06/02/2021) |
| 07/01/2021 | 94 | -SEALED- MOTION for Leave to File *Sur-Reply* by Rock Spring Plaza II, LLC (Attachments: # 1 Exhibit, # 2 Exhibit, # 3 Text of Proposed Order)(Danial, Katherine) (Entered: 07/01/2021) |
| 07/01/2021 | 95 | MOTION to Seal *Motion for Leave to File Sur-Reply* by Rock Spring Plaza II, LLC (Attachments: # 1 Text of Proposed Order)(Danial, Katherine) (Entered: 07/01/2021) |
| 07/01/2021 | 96 | -SEALED-ORDER granting 94 MOTION for Leave to File Sur-Reply. Signed by Judge Peter J. Messitte on 7/1/2021. (dg3s, Deputy Clerk) (Entered: 07/02/2021) |
| 07/02/2021 | 97 | SURREPLY filed by Rock Spring Plaza II, LLC re 75 MOTION to Dismiss for Failure to State a Claim. (Attachments: # 1 Exhibit 1, # 2 Exhibit 2)(dg3s, Deputy Clerk) (Entered: 07/02/2021) |
| 07/02/2021 | 98 | MOTION to Compel by Investors Warranty of America, LLC (Attachments: # 1 Memorandum in Support, # 2 Exhibit, # 3 Exhibit, # 4 Exhibit, # 5 Exhibit, # 6 Exhibit)(Arnold, Edward) (Entered: 07/02/2021) |
| 07/02/2021 | 99 | Correspondence re: Discovery Dispute (Arnold, Edward) (Entered: 07/02/2021) |
| 07/06/2021 | 101 | Motion Hearing held on 7/6/2021 re 75 MOTION to Dismiss for Failure to State a Claim filed by Transamerica Corporation before Judge Peter J. Messitte.(Court Reporter: Renee Ewing) (nrms, Deputy Clerk) (Entered: 07/07/2021) |
| 07/07/2021 | 100 | ORDER denying without prejudice 75 MOTION to Dismiss for Failure to State a Claim; directing parties to submit a proposed joint scheduling order within 30 days. Signed by Judge Peter J. Messitte on 7/7/2021. (dg3s, Deputy Clerk) (Entered: 07/07/2021) |
| 07/12/2021 | 102 | NOTICE OF FILING OF OFFICIAL TRANSCRIPT of Proceedings held on 07/06/2021, before Judge Messitte. Court Reporter/Transcriber Renee A Ewing, Telephone number 301-344-3227. Total number of pages filed: 57. Transcript may be viewed at the court public terminal or purchased through the Court Reporter/Transcriber before the deadline for Release of Transcript Restriction. After that date it may be obtained from the Court Reporter or through PACER. Redaction Request due 8/2/2021. Redacted Transcript Deadline set for 8/12/2021. Release of Transcript Restriction set for 10/12/2021.(re, Court Reporter) (Entered: 07/12/2021) |
| 07/16/2021 | 103 | RESPONSE in Opposition re 98 MOTION to Compel filed by Rock Spring Plaza II, LLC. (Attachments: # 1 Exhibit)(Danial, Katherine) (Entered: 07/16/2021) |
| 07/20/2021 | 104 | ANSWER to 59 Amended Complaint, by Transamerica Corporation.(Kozlowski, Nicole) (Entered: 07/20/2021) |
| 07/30/2021 | 105 | REPLY to Response to Motion re 98 MOTION to Compel filed by Investors Warranty of America, LLC. (Attachments: # 1 Exhibit 1 - Camalier0004126, # 2 Exhibit 2 - Camalier0004146)(Arnold, Edward) (Entered: 07/30/2021) |
| 08/03/2021 | 106 | ORDER REFERRING CASE to Magistrate Judge Gina L Simms for Discovery, specifically, ECF 98, Motion to Compel. Signed by Judge Peter J. Messitte on 8/3/2021. (hmls, Deputy Clerk) (Entered: 08/03/2021) |

A13

| 08/03/2021 | 107 | PAPERLESS ORDER: scheduling a telephonic conference call related to ECF No. 98 for Friday, August 6, 2021 at 10:00 am. Conference call-in instructions have been provided to counsel. Signed by Magistrate Judge Gina L Simms on 8/3/2021. (bh5s, Chambers) (Entered: 08/03/2021) |
| 08/04/2021 | 108 | MOTION for Leave to File by Rock Spring Plaza II, LLC (Attachments: # 1 Exhibit Exhibit A, # 2 Text of Proposed Order Proposed Order, # 3 Exhibit Certificate of Service)(Danial, Katherine) (Entered: 08/04/2021) |
| 08/06/2021 | 109 | PAPERLESS ORDER granting ECF No. 108 for the reasons stated on the record at the 8/6/2021 discovery dispute hearing. Signed by Magistrate Judge Gina L Simms on 8/6/2021. (bh5s, Chambers) (Entered: 08/06/2021) |
| 08/06/2021 | 110 | Telephone conference related to a discovery dispute held on 8/6/2021 before Magistrate Judge Gina L Simms. (dps, Chambers) (Entered: 08/06/2021) |
| 08/06/2021 | 111 | NOTICE by Rock Spring Plaza II, LLC *Proposed Joint Scheduling Order* (Danial, Katherine) (Entered: 08/06/2021) |
| 08/06/2021 | 112 | ORDER granting in part and denying in part 98 MOTION to Compel. Signed by Magistrate Judge Gina L Simms on 8/6/2021. (dg3s, Deputy Clerk) (Entered: 08/06/2021) |
| 08/09/2021 | 113 | MOTION to Compel by Investors Warranty of America, LLC (Attachments: # 1 Memorandum in Support, # 2 Exhibit A, # 3 Exhibit B, # 4 Exhibit C, # 5 Exhibit D)(Arnold, Edward) (Entered: 08/09/2021) |
| 08/11/2021 | 114 | ORDER REFERRING CASE to Magistrate Judge Gina L Simms for Discovery, specifically, ECF 113, Motion to Compel. Signed by Judge Peter J. Messitte on 8/11/2021. (hmls, Deputy Clerk) (Entered: 08/11/2021) |
| 08/11/2021 |  | MOTIONS REFERRED: 113 MOTION to Compel . (hmls, Deputy Clerk) (Entered: 08/11/2021) |
| 08/12/2021 | 115 | PAPERLESS ORDER DIRECTING the Plaintiff to file a response to ECF No. 113 by no later than August 24, 2021, and the Defendant to file a Reply by no later than August 30, 2021. Signed by Magistrate Judge Gina L Simms on 8/12/2021. (dps, Chambers) (Entered: 08/12/2021) |
| 08/12/2021 | 116 | Telephone Conference (re 99 Correspondence re: Discovery Dispute) held on 8/12/2021 for 15 minutes before Judge Peter J. Messitte.(Court Reporter: Patricia Klepp) (jmhs, Chambers) (Entered: 08/12/2021) |
| 08/12/2021 | 117 | MEMORANDUM ORDER temporarily staying all discovery; directing the Plaintiff to file a Motion for Summary Judgment within 30 days and setting a briefing schedule for the Motion. Signed by Judge Peter J. Messitte on 8/12/2021. (dg3s, Deputy Clerk) (Entered: 08/12/2021) |
| 08/12/2021 | 118 | ORDER granting 95 MOTION to Seal Motion for Leave to File Sur-Reply. Signed by Judge Peter J. Messitte on 8/12/2021. (dg3s, Deputy Clerk) (Entered: 08/12/2021) |
| 08/13/2021 | 119 | Correspondence re: Stay of Discovery (Davis, Rebecca) (Entered: 08/13/2021) |
| 08/17/2021 | 120 | NOTICE OF FILING OF OFFICIAL TRANSCRIPT of Proceedings held on 8-12-2021, before Judge Messitte. Court Reporter/Transcriber Patricia Klepp, Telephone number 301-344-3228. Total number of pages filed: 16. Transcript may be viewed at the court public terminal or purchased through the Court Reporter/Transcriber before the deadline for Release of Transcript Restriction. After that date it may be obtained from the Court Reporter or through PACER. Redaction Request due 9/7/2021. Redacted Transcript Deadline set for 9/17/2021. Release of Transcript Restriction set for 11/15/2021.(pk4, Court Reporter) (Entered: 08/17/2021) |
| 08/23/2021 | 121 | MOTION to Appear Pro Hac Vice for Jaime Rosenberg *for Defendant/Counter-Plaintiff Rock Springs Drive LLC* (Filing fee $100, receipt number 0416-9450295.) by Rock Springs Drive, LLC(Kropf, Sara) (Entered: 08/23/2021) |
| 08/24/2021 | 122 | PAPERLESS ORDER granting 121 Motion to Appear Pro Hac Vice on behalf of Jaime Rosenberg. Directing attorney Jaime Rosenberg to register online for CM/ECF at http://www.mdd.uscourts.gov/electronic-case-filing-registration. Signed by Clerk on 8/24/2021. (dm4, Deputy Clerk) (Entered: 08/24/2021) |
| 08/24/2021 | 123 | Correspondence re: Stay of Discovery (Danial, Katherine) (Entered: 08/24/2021) |
| 09/02/2021 | 124 | Recording of telephone conference related to a discovery dispute held before Magistrate Judge Gina L Simms on August 6, 2021 ( ECF No. 110 ) uploaded to FTR on September 2, 2021, 10:29:25 a.m. - 11:37:42 a.m. (Courtroom 3A)(dps, Chambers) (Entered: 09/02/2021) |

A14

| 09/09/2021 | 125 | Correspondence re: Clarification of Discovery Stay (Attachments: # 1 Exhibit Email corrrespondence) (Kropf, Sara) (Entered: 09/09/2021) |
| 09/09/2021 | 126 | Correspondence re: Nonparty Discovery (Danial, Katherine) (Entered: 09/09/2021) |
| 09/13/2021 | 127 | -SEALED- MOTION for Partial Summary Judgment by Rock Spring Plaza II, LLC (Attachments: # 1 Memorandum in Support, # 2 Exhibit Exhibit A, # 3 Exhibit Exhibit B, # 4 Exhibit Exhibit C, # 5 Exhibit Exhibit D, # 6 Exhibit Exhibit E, # 7 Exhibit Exhibit F, # 8 Exhibit Exhibit G, # 9 Exhibit Exhibit H, # 10 Exhibit Exhibit I, # 11 Exhibit Exhibit J, # 12 Exhibit Exhibit K, # 13 Exhibit Exhibit L, # 14 Exhibit Exhibit M, # 15 Exhibit Exhibit N, # 16 Exhibit Exhibit O, # 17 Exhibit Exhibit P, # 18 Exhibit Exhibit Q, # 19 Exhibit Exhibit R, # 20 Exhibit Exhibit S, # 21 Exhibit Exhibit T, # 22 Exhibit Exhibit U, # 23 Exhibit Exhibit V, # 24 Text of Proposed Order Proposed Order)(Danial, Katherine) (Entered: 09/13/2021) |
| 09/13/2021 | 128 | MOTION to Seal by Rock Spring Plaza II, LLC (Attachments: # 1 Text of Proposed Order)(Danial, Katherine) (Entered: 09/13/2021) |
| 09/14/2021 | 129 | ORDER granting 128 Motion to Seal. Signed by Judge Peter J. Messitte on 9/14/2021. (dg3s, Deputy Clerk) (Entered: 09/14/2021) |
| 09/15/2021 | 130 | MEMORANDUM ORDER regarding Stay. Signed by Judge Peter J. Messitte on 9/15/2021. (dg3s, Deputy Clerk) (Entered: 09/15/2021) |
| 09/27/2021 | 131 | PAPERLESS ORDER DENYING ECF No. 113 as premature in light of ECF No. 117. Signed by Magistrate Judge Gina L Simms on 9/27/2021. (bh5s, Chambers) (Entered: 09/27/2021) |
| 10/13/2021 | 132 | -SEALED-RESPONSE in Opposition re 127 MOTION for Partial Summary Judgment filed by Investors Warranty of America, LLC. (Attachments: # 1 Statement of Additional Facts, # 2 Response in Opposition, # 3 Text of Proposed Order, # 4 Declaration, # 5 Exhibit 1, # 6 Exhibit 2, # 7 Exhibit 3, # 8 Exhibit 4, # 9 Exhibit 5, # 10 Exhibit 6, # 11 Exhibit 7, # 12 Exhibit 8, # 13 Exhibit 9, # 14 Exhibit 10, # 15 Exhibit 11, # 16 Exhibit 12, # 17 Exhibit 13, # 18 Exhibit 14, # 19 Exhibit 15, # 20 Exhibit 16, # 21 Exhibit 17, # 22 Exhibit 18, # 23 Exhibit 19, # 24 Exhibit 20, # 25 Exhibit 21, # 26 Exhibit 22, # 27 Exhibit 23, # 28 Exhibit 24, # 29 Exhibit 25, # 30 Exhibit 26, # 31 Exhibit 27)(Davis, Rebecca) (Entered: 10/13/2021) |
| 10/13/2021 | 133 | MOTION to Seal by Investors Warranty of America, LLC (Attachments: # 1 Text of Proposed Order) (Davis, Rebecca) (Entered: 10/13/2021) |
| 10/13/2021 | 134 | ORDER granting 133 Motion to Seal; effective 14 days from the date the Motion was filed. Signed by Judge Peter J. Messitte on 10/13/2021. (mg3s, Deputy Clerk) (Entered: 10/13/2021) |
| 10/13/2021 | 135 | Consent MOTION to Seal *Opposition to Motion for Partial Summary Judgment* by Rock Springs Drive, LLC (Attachments: # 1 Text of Proposed Order)(Kropf, Sara) (Entered: 10/13/2021) |
| 10/13/2021 | 136 | -SEALED-RESPONSE in Opposition re 127 MOTION for Partial Summary Judgment filed by Rock Springs Drive, LLC. (Attachments: # 1 Response to Pls. Statement of Facts and RSD Statement of Material Facts, # 2 Affidavit by Sara E. Kropf, # 3 Exhibit Nos. DX 1 - DX 23)(Kropf, Sara) (Entered: 10/13/2021) |
| 10/13/2021 | 137 | RESPONSE to Motion re 127 MOTION for Partial Summary Judgment filed by Transamerica Corporation.(Kozlowski, Nicole) (Entered: 10/13/2021) |
| 10/14/2021 | 138 | ORDER granting 135 Motion to Seal; effective 14 days from the date the Motion was filed. Signed by Judge Peter J. Messitte on 10/14/2021. (mg3s, Deputy Clerk) (Entered: 10/14/2021) |
| 10/28/2021 | 139 | -SEALED-REPLY to Response to Motion re 127 MOTION for Partial Summary Judgment filed by Rock Spring Plaza II, LLC.(Danial, Katherine) (Entered: 10/28/2021) |
| 10/28/2021 | 140 | MOTION to Seal *Reply* by Rock Spring Plaza II, LLC (Attachments: # 1 Text of Proposed Order)(Danial, Katherine) (Entered: 10/28/2021) |
| 11/03/2021 | 141 | ORDER granting 140 MOTION to Seal Reply. Signed by Judge Peter J. Messitte on 11/3/2021. (dg3s, Deputy Clerk) (Entered: 11/03/2021) |
| 11/11/2021 | 142 | MOTION for Leave to File *Sur-Reply to Plaintiff's Motion for Partial Summary Judgment* by Investors Warranty of America, LLC (Attachments: # 1 Exhibit A - Proposed Sur-Reply, # 2 Text of Proposed Order) (Davis, Rebecca) (Entered: 11/11/2021) |
| 11/15/2021 | 143 | RESPONSE in Opposition re 142 MOTION for Leave to File *Sur-Reply to Plaintiff's Motion for Partial Summary Judgment* filed by Rock Spring Plaza II, LLC.(Danial, Katherine) (Entered: 11/15/2021) |

A15

| 11/16/2021 | 144 | ORDER granting 142 MOTION for Leave to File Sur-Reply to Plaintiff's Motion for Partial Summary Judgment. Signed by Judge Peter J. Messitte on 11/15/2021. (dg3s, Deputy Clerk) (Entered: 11/16/2021) |
|---|---|---|
| 11/18/2021 | 145 | PAPERLESS NOTICE OF SCHEDULING OF MOTIONS HEARING and advising counsel/parties of record that oral argument on 127 Plfs Rock Spring Plaza II, LLCs Motion for Partial Summary Judgment will be heard before Judge Peter J. Messitte on Thursday, January 13, 2022 at 11:00 a.m. via ZoomGov. The parties will be allotted one and one-half (1 1/2) hours for total argument. Counsel should advise in writing immediately if they expect oral argument to exceed the allotted time frame. PLEASE ALSO NOTE: Counsel should mail or hand deliver copies of the principal cases on which they intend to rely during oral argument to the Courthouse by no later than Friday, January 7, 2022. Please also highlight the appropriate text.(jmhs, Chambers) (Entered: 11/18/2021) |
| 11/23/2021 | 146 | Defendants' Joint SUR-REPLY re 127 MOTION for Partial Summary Judgment filed by Investors Warranty of America, LLC.(Davis, Rebecca) Modified on 11/23/2021 (dg3s, Deputy Clerk). (Entered: 11/23/2021) |
| 12/16/2021 | 147 | PAPERLESS NOTICE ADVISING COUNSEL that the Motions Hearing scheduled for January 13, 2022 at 11:00 a.m. will now proceed IN-PERSON (Courtroom To Be Determined). Counsel should bring copies for both the Court and opposing counsel of the principal cases on which they intend to rely during oral argument. Please also highlight the appropriate text.(jmhs, Chambers) (Entered: 12/16/2021) |
| 12/29/2021 | 148 | PAPERLESS NOTICE ADVISING COUNSEL that the Motions Hearing scheduled for January 13, 2022 at 11:00 a.m. will now proceed virtually via ZoomGov. Counsel should mail or hand deliver copies of the principal cases on which they intend to rely during oral argument to the Courthouse by no later than Friday, January 7, 2022. Please also highlight the appropriate text.(jmhs, Chambers) (Entered: 12/29/2021) |
| 01/13/2022 | 149 | Motions Hearing held on 1/13/2022 before Judge Peter J. Messitte. (Court Reporter: Marlene Kerr-via Zoom) (ss5s, Deputy Clerk) (Entered: 01/13/2022) |
| 01/27/2022 | 150 | NOTICE OF FILING OF OFFICIAL TRANSCRIPT of Proceedings held on 01/13/2022, before Judge Peter J. Messitte. Court Reporter/Transcriber Marlene Kerr, Telephone number 3013443499. Total number of pages filed: 60. Transcript may be viewed at the court public terminal or purchased through the Court Reporter/Transcriber before the deadline for Release of Transcript Restriction. After that date it may be obtained from the Court Reporter or through PACER. Redaction Request due 2/17/2022. Redacted Transcript Deadline set for 2/28/2022. Release of Transcript Restriction set for 4/27/2022.(mmk, Court Reporter) (Entered: 01/27/2022) |
| 08/03/2022 | 151 | MEMORANDUM OPINION. Signed by Judge Peter J. Messitte on 8/3/2022. (jf3s, Deputy Clerk) (Entered: 08/03/2022) |
| 08/03/2022 | 152 | ORDER granting in part and denying in part 127 Motion for Partial Summary Judgment. Signed by Judge Peter J. Messitte on 8/3/2022. (jf3s, Deputy Clerk) (Entered: 08/03/2022) |
| 09/02/2022 | 153 | NOTICE by Rock Spring Plaza II, LLC Consent Proposed Scheduling Order (Attachments: # 1 Text of Proposed Order)(Bosch, William) (Entered: 09/02/2022) |
| 09/07/2022 | 154 | SCHEDULING ORDER: Status Report due by 12/23/2022. Signed by Judge Peter J. Messitte on 9/7/2022. (dg3s, Deputy Clerk) (Entered: 09/07/2022) |
| 09/19/2022 | 155 | Joint MOTION for Clarification by Defendants by Investors Warranty of America, LLC (Attachments: # 1 Exhibit A, # 2 Exhibit B, # 3 Exhibit C, # 4 Exhibit D)(Davis, Rebecca) (Entered: 09/19/2022) |
| 09/22/2022 | 156 | MEMORANDUM ORDER. Signed by Judge Peter J. Messitte on 9/22/2022. (mg3s, Deputy Clerk) (Entered: 09/22/2022) |
| 09/27/2022 | 157 | NOTICE by Rock Spring Plaza II, LLC of Response to Dkt. No. 156 - Memorandum Order (Danial, Katherine) (Entered: 09/27/2022) |
| 09/30/2022 | 158 | RESPONSE re 156 Memorandum and Order filed by Investors Warranty of America, LLC.(Davis, Rebecca) (Entered: 09/30/2022) |
| 10/06/2022 | 159 | PAPERLESS NOTICE OF SCHEDULING TELEPHONE CONFERENCE and advising counsel/parties of record that a telephone conference will be held on Thursday, October 13, 2022 at 11:00 a.m. Counsel were previously provided dial-in information via email.(jmhs, Chambers) (Entered: 10/06/2022) |
| 10/13/2022 | 160 | Telephone Conference (re status of case) held on 10/13/2022 for 1 hour before Judge Peter J. Messitte. (Court Reporter: Renee Ewing) (jmhs, Chambers) (Entered: 10/13/2022) |

A16

| | | |
|---|---|---|
| 10/13/2022 | 161 | MOTION to Compel *Non-Parties' Response to Subpoena* by Rock Springs Drive, LLC (Attachments: # 1 Exhibit A-E, # 2 Text of Proposed Order)(Kropf, Sara) (Entered: 10/13/2022) |
| 10/13/2022 | 162 | Correspondence re: Non-Party Subpoena (Davis, Rebecca) (Entered: 10/13/2022) |
| 10/13/2022 | 163 | MOTION to Compel by Investors Warranty of America, LLC (Attachments: # 1 Certificate Pursuant to Rule 45 & LR 104.7, # 2 Memorandum in Support, # 3 Exhibit A - to Brief in Support, # 4 Exhibit B - to Brief in Support)(Davis, Rebecca) (Entered: 10/13/2022) |
| 10/14/2022 | 164 | NOTICE OF FILING OF OFFICIAL TRANSCRIPT of Proceedings held on 10/13/2022, before Judge Messitte. Court Reporter/Transcriber Renee Ewing, Telephone number 301-344-3227. Total number of pages filed: 48. Transcript may be viewed at the court public terminal or purchased through the Court Reporter/Transcriber before the deadline for Release of Transcript Restriction. After that date it may be obtained from the Court Reporter or through PACER. Redaction Request due 11/4/2022. Redacted Transcript Deadline set for 11/14/2022. Release of Transcript Restriction set for 1/12/2023.(re, Court Reporter) (Entered: 10/14/2022) |
| 10/18/2022 | 165 | ORDER denying as moot 155 Joint MOTION for Clarification by Defendants; Plaintiff shall have 30 days from the entry of this Order to seek leave to amend its Complaint. Signed by Judge Peter J. Messitte on 10/18/2022. (mg3s, Deputy Clerk). (Entered: 10/19/2022) |
| 10/20/2022 | 166 | PAPERLESS ORDER: The Court is in receipt of ECF No. 163. The Plaintiff is to file a Response by no later than 11/3/22. The Defendant is to file a Reply by no later than 11/10/22. Signed by Magistrate Judge Gina L Simms on 10/20/2022. (dd3s, Chambers) (Entered: 10/20/2022) |
| 10/20/2022 | 167 | Correspondence re: Response to IWA Nonparty Subpoena (Danial, Katherine) (Entered: 10/20/2022) |
| 10/24/2022 | 168 | Correspondence re: Reply in Response to the Opposition Filed by Non-Party Rockledge Associates LLC (Davis, Rebecca) (Entered: 10/24/2022) |
| 10/27/2022 | 169 | RESPONSE in Opposition re 161 MOTION to Compel *Non-Parties' Response to Subpoena* filed by Rock Spring Plaza II, LLC.(Danial, Katherine) (Entered: 10/27/2022) |
| 11/03/2022 | 170 | NOTICE of Appearance by Katherine Theresa Danial on behalf of Rock Spring Plaza I, LLC, Rockledge Associates LLC, Elizabethean Court Associates I LLC, Elizabethean Court Associates II LLC, Elizabethean Court Associates III LLC, Elizabethean Court Associates IV LLC, Rock Spring Properties (Danial, Katherine) (Entered: 11/03/2022) |
| 11/03/2022 | 171 | RESPONSE to Motion re 163 MOTION to Compel filed by Rock Spring Properties.(Danial, Katherine) (Entered: 11/03/2022) |
| 11/03/2022 | 172 | NOTICE of Appearance by Alvin Dunn on behalf of Elizabethean Court Associates I LLC, Elizabethean Court Associates II LLC, Elizabethean Court Associates III LLC, Elizabethean Court Associates IV LLC, Rock Spring Plaza I, LLC, Rock Spring Properties, Rockledge Associates LLC (Dunn, Alvin) (Entered: 11/03/2022) |
| 11/04/2022 | 173 | QC NOTICE: 171 Response to Motion filed by Rock Spring Properties was filed incorrectly. **The following attachments or exhibits are missing - Proposed Order. To correct this problem, file Proposed Order using the event Notice (Other) and link Proposed Order to 171 .* (ols, Deputy Clerk) (Entered: 11/04/2022) |
| 11/04/2022 | 174 | NOTICE by Rock Spring Properties re 171 Response to Motion *attaching Proposed Order* (Danial, Katherine) (Entered: 11/04/2022) |
| 11/07/2022 | 175 | -FILED IN ERROR- NOTICE by Investors Warranty of America, LLC *of Serving Discovery* (Davis, Rebecca) Modified on 11/8/2022 (ols, Deputy Clerk). (Entered: 11/07/2022) |
| 11/08/2022 | 176 | QC NOTICE: 175 Notice (Other) filed by Investors Warranty of America, LLC was filed incorrectly. **Discovery should not be filed with the Court pursuant to Local Rule 104. It has been noted as FILED IN ERROR, and the document link has been disabled.* (ols, Deputy Clerk) (Entered: 11/08/2022) |
| 11/08/2022 | 177 | NOTICE of Appearance by William M Bosch on behalf of Elizabethean Court Associates I LLC, Elizabethean Court Associates II LLC, Elizabethean Court Associates III LLC, Elizabethean Court Associates IV LLC, Rock Spring Plaza I, LLC, Rock Spring Properties, Rockledge Associates LLC (Bosch, William) (Entered: 11/08/2022) |
| 11/10/2022 | 178 | REPLY to Response to Motion re 161 MOTION to Compel *Non-Parties' Response to Subpoena* filed by Rock Springs Drive, LLC.(Kropf, Sara) (Entered: 11/10/2022) |

| 11/10/2022 | 179 | -FILED IN ERROR- RESPONSE in Support re 163 MOTION to Compel *Nonparty Rock Spring Properties* filed by Investors Warranty of America, LLC.(Davis, Rebecca) Modified on 11/10/2022 (ols, Deputy Clerk). (Entered: 11/10/2022) |
| 11/10/2022 | 180 | QC NOTICE: 179 Response in Support of Motion filed by Investors Warranty of America, LLC was filed incorrectly. <br> **Incorrect even used. Please refile using the correct event under Responses and Replies > Reply to Response to Motion. It has been noted as FILED IN ERROR, and the document link has been disabled.* (ols, Deputy Clerk) (Entered: 11/10/2022) |
| 11/10/2022 | 181 | REPLY to Response to Motion re 163 MOTION to Compel *Nonparty Rock Spring Properties* filed by Investors Warranty of America, LLC.(Davis, Rebecca) (Entered: 11/10/2022) |
| 11/10/2022 | 182 | NOTICE by Investors Warranty of America, LLC *of Filing of its Motion to Compel* (Attachments: # 1 Exhibit A, # 2 Exhibit B, # 3 Exhibit C, # 4 Exhibit D, # 5 Exhibit E)(Davis, Rebecca) (Entered: 11/10/2022) |
| 11/11/2022 | 183 | NOTICE by Investors Warranty of America, LLC re 182 Notice (Other) *Regarding Filing of Certificate of Conference Relating to Motion to Compel Filed Against Rock Spring Plaza II, LLC* (Davis, Rebecca) (Entered: 11/11/2022) |
| 11/17/2022 | 184 | MOTION to Amend/Correct *Second Amended Complaint* by Rock Spring Plaza II, LLC (Attachments: # 1 Text of Proposed Order, # 2 Exhibit Ex. A Second Amended Complaint, # 3 Exhibit Ex. B Redline, # 4 Exhibit Ex. G to Second Amended Complaint)(Dunn, Alvin) (Entered: 11/17/2022) |
| 11/17/2022 | 185 | Memorandum re 184 MOTION to Amend/Correct *Second Amended Complaint* filed by Rock Spring Plaza II, LLC. (Attachments: # 1 Exhibit Ex. A Hearing Transcript)(Dunn, Alvin) (Entered: 11/17/2022) |
| 11/18/2022 | 186 | NOTICE by Investors Warranty of America, LLC re 182 Notice (Other) *Amended Notice Regarding Filing of Certificate of Conference Relating to Motion to Compel Filed Against Rock Spring Plaza II, LLC* (Davis, Rebecca) (Entered: 11/18/2022) |
| 11/18/2022 | 187 | Local Rule 104.7 Certificate (Attachments: # 1 Exhibit 1 (Motion to Compel Plaintiff), # 2 Exhibit 2 (Plaintiff Opposition), # 3 Exhibit 3 (Reply), # 4 Text of Proposed Order)(Kropf, Sara) (Entered: 11/18/2022) |
| 11/21/2022 | 188 | ORDER REFERRING CASE to Magistrate Judge Gina L Simms for Discovery, specifically ECF Nos. 161 & 163 Motions to Compel. Signed by Judge Peter J. Messitte on 11/21/2022. (kns, Deputy Clerk) (Entered: 11/21/2022) |
| 11/29/2022 | 189 | PAPERLESS ORDER SCHEDULING a telephonic discovery dispute hearing related to ECF Nos. 161 , 162 ,and 163 for December 5, 2022 at 1:45 p.m. Conference call-in information provided. Signed by Magistrate Judge Gina L Simms on 11/29/2022. (dps, Chambers) (Entered: 11/29/2022) |
| 12/01/2022 | 190 | RESPONSE in Opposition re 184 MOTION to Amend/Correct *Second Amended Complaint* filed by Rock Springs Drive, LLC. (Attachments: # 1 Exhibit A)(Kropf, Sara) (Entered: 12/01/2022) |
| 12/01/2022 | 191 | QC NOTICE: 190 Response in Opposition to Motion filed by Rock Springs Drive, LLC was filed incorrectly. <br> **The following attachments or exhibits are missing - Proposed Order. To correct this problem, file Proposed Order using the event Notice (Other) and link Proposed Order to 190 .* (ols, Deputy Clerk) (Entered: 12/01/2022) |
| 12/01/2022 | 192 | NOTICE by Rock Springs Drive, LLC re 190 Response in Opposition to Motion *(Proposed Order)* (Kropf, Sara) (Entered: 12/01/2022) |
| 12/05/2022 | 193 | Telephone Conference related to a discovery dispute held on 12/5/2022 before Magistrate Judge Gina L Simms.(FTR- Johnson- 3B) (jj2s, Deputy Clerk) (Entered: 12/05/2022) |
| 12/06/2022 | 194 | ORDER denying as premature 161 RSD's Motion to Compel; denying as premature 162 IWA's Letter; denying as moot in part and premature in part 163 IWA's Motion to Compel. Signed by Magistrate Judge Gina L Simms on 12/6/2022. (ols, Deputy Clerk) (Entered: 12/06/2022) |
| 12/08/2022 | 195 | MEMORANDUM ORDER granting 184 Plaintiff's Motion for Leave to File Second Amended Complaint. Signed by Judge Peter J. Messitte on 12/8/2022. (ols, Deputy Clerk) Modified on 12/8/2022 (ols, Deputy Clerk). (Entered: 12/08/2022) |

A18

| | | |
|---|---|---|
| 12/08/2022 | 196 | SECOND AMENDED COMPLAINT against Jane Does, Investors Warranty of America, LLC, Rock Springs Drive, LLC, Transamerica Corporation, filed by Rock Spring Plaza II, LLC. (Attachments: # 1 Redline Copy, # 2 Exhibit G) (ols, Deputy Clerk) (Entered: 12/08/2022) |
| 12/15/2022 | 197 | NOTICE OF FILING OF OFFICIAL TRANSCRIPT of Proceedings held on 12/05/2022, before Judge Gina L. Simms. Court Reporter/Transcriber Marlene Kerr, Telephone number 3013443499. Total number of pages filed: 69. Transcript may be viewed at the court public terminal or purchased through the Court Reporter/Transcriber before the deadline for Release of Transcript Restriction. After that date it may be obtained from the Court Reporter or through PACER. Redaction Request due 1/5/2023. Redacted Transcript Deadline set for 1/17/2023. Release of Transcript Restriction set for 3/15/2023.(mmk, Court Reporter) (Entered: 12/15/2022) |
| 12/19/2022 | 198 | Consent MOTION for Extension of Time to File Answer re 196 Amended Complaint by Transamerica Corporation (Attachments: # 1 Text of Proposed Order)(Kozlowski, Nicole) (Entered: 12/19/2022) |
| 12/19/2022 | 199 | RESPONSE re 195 Order on Motion to Amend/Correct filed by Transamerica Corporation.(Kozlowski, Nicole) (Entered: 12/19/2022) |
| 12/19/2022 | 200 | RESPONSE re 195 Order on Motion to Amend/Correct filed by Investors Warranty of America, LLC. (Attachments: # 1 Exhibit Placeholder Notice of Filing of Document Under Seal, # 2 Exhibit Placeholder Notice of Filing of Document Under Seal, # 3 Exhibit Placeholder Notice of Filing of Document Under Seal, # 4 Exhibit Placeholder Notice of Filing of Document Under Seal)(Davis, Rebecca) (Entered: 12/19/2022) |
| 12/19/2022 | 201 | MOTION to Seal *Exhibits to Investors Warranty of America, LLC's Brief in Response to the Court's December 8, 2022 Memorandum Order* by Investors Warranty of America, LLC(Davis, Rebecca) (Entered: 12/19/2022) |
| 12/19/2022 | 202 | -SEALED - NOTICE of Filing Under Seal Exhibit A-D to Brief in Response by Investors Warranty of America, LLC re 200 Response, (Attachments: # 1 Exhibit A, # 2 Exhibit B, # 3 Exhibit C, # 4 Exhibit D) (Davis, Rebecca) (Entered: 12/19/2022) |
| 12/19/2022 | 203 | RESPONSE re 195 Order on Motion to Amend/Correct filed by Rock Springs Drive, LLC.(Kropf, Sara) (Entered: 12/19/2022) |
| 12/20/2022 | 204 | QC NOTICE: 201 Motion to Seal filed by Investors Warranty of America, LLC was filed incorrectly. **The following attachments or exhibits are missing - Proposed Order. To correct this problem, file Proposed Order using the event Notice (Other) and link Proposed Order to 201 .* (ols, Deputy Clerk) (Entered: 12/20/2022) |
| 12/20/2022 | 205 | NOTICE by Investors Warranty of America, LLC re 201 MOTION to Seal *Exhibits to Investors Warranty of America, LLC's Brief in Response to the Court's December 8, 2022 Memorandum Order --- PROPOSED ORDER* (Davis, Rebecca) (Entered: 12/20/2022) |
| 12/20/2022 | 206 | ORDER granting 198 Defendant Transamerica Corporation's Consent Motion for Extension of Time to Answer re 196 Second Amended Complaint; Transamerica Corporation answer due 1/6/2023. Signed by Judge Peter J. Messitte on 12/20/2022. (ols, Deputy Clerk) (Entered: 12/20/2022) |
| 12/21/2022 | 207 | ORDER GRANTING 201 Motion to Seal. Signed by Judge Peter J. Messitte on 12/21/2022. (hmls, Deputy Clerk) (Entered: 12/21/2022) |
| 12/21/2022 | 208 | MOTION to Dismiss *Count I of Plaintiff's Second Amended Complaint* by Investors Warranty of America, LLC (Attachments: # 1 Memorandum in Support)(Davis, Rebecca) (Entered: 12/21/2022) |
| 12/22/2022 | 209 | ANSWER to 196 Amended Complaint by Rock Springs Drive, LLC.(Kropf, Sara) (Entered: 12/22/2022) |
| 12/23/2022 | 210 | Joint MOTION for Extension of Time to File Response/Reply by Rock Spring Plaza II, LLC (Attachments: # 1 Text of Proposed Order)(Dunn, Alvin) (Entered: 12/23/2022) |
| 12/27/2022 | 211 | QC NOTICE: 208 Motion to Dismiss filed by Investors Warranty of America, LLC was filed incorrectly. **The following attachments or exhibits are missing - Proposed Order. To correct this problem, file Proposed Order using the event Notice (Other) and link Proposed Order to 208 .* (ols, Deputy Clerk) (Entered: 12/27/2022) |
| 12/27/2022 | 212 | NOTICE by Investors Warranty of America, LLC re 208 MOTION to Dismiss *Count I of Plaintiff's Second Amended Complaint -- Proposed Order* (Davis, Rebecca) (Entered: 12/27/2022) |

A19

| 12/27/2022 | 213 | ORDER granting 210 Joint Motion for Briefing Schedule as to 208 MOTION to Dismiss *Count I of Plaintiff's Second Amended Complaint*. Signed by Judge Peter J. Messitte on 12/27/2022. (ols, Deputy Clerk) (Entered: 12/27/2022) |
| 12/30/2022 | 214 | RESPONSE re 203 Response, 200 Response, *of Defendants to Court's Order dated December 8, 2022* filed by Rock Spring Plaza II, LLC. (Attachments: # 1 Exhibit A, # 2 Exhibit B Notice of Filing Under Seal, # 3 Exhibit C)(Dunn, Alvin) (Entered: 12/30/2022) |
| 12/30/2022 | 215 | -SEALED - NOTICE of Filing Under Seal Exhibit B to Plaintiff's Response to Defendants' Briefs re Court's Order dated December 8, 2022 by Rock Spring Plaza II, LLC re 214 Response, (Dunn, Alvin) (Entered: 12/30/2022) |
| 12/30/2022 | 216 | MOTION to Seal *Exhibit to its Response to Defendants' Briefs re Court's Order dated December 8, 2022* by Rock Spring Plaza II, LLC (Attachments: # 1 Text of Proposed Order)(Dunn, Alvin) (Entered: 12/30/2022) |
| 01/03/2023 | 217 | MOTION to Withdraw as Attorney by Investors Warranty of America, LLC (Attachments: # 1 Text of Proposed Order)(Arnold, Edward) (Entered: 01/03/2023) |
| 01/04/2023 | 218 | ORDER granting 217 Motion to Withdraw as Attorney. Attorney Edward Victor Arnold terminated. Signed by Judge Peter J. Messitte on 1/3/2023. (ols, Deputy Clerk) (Entered: 01/04/2023) |
| 01/05/2023 | 219 | Consent MOTION for Extension of Time *to Respond to Plaintiff's Second Amended Complaint* by Transamerica Corporation (Attachments: # 1 Text of Proposed Order)(Kozlowski, Nicole) (Entered: 01/05/2023) |
| 01/05/2023 | 221 | ORDER granting 219 Defendant Transamerica Corporation's Consent Motion for Extension of Time to Respond to Plaintiff's Second Amended Complaint. Signed by Judge Peter J. Messitte on 1/5/2023. (ols, Deputy Clerk) (Entered: 01/06/2023) |
| 01/06/2023 | 220 | RESPONSE re 214 Response, *to Court's December 8 Order* filed by Rock Springs Drive, LLC.(Kropf, Sara) (Entered: 01/06/2023) |
| 01/06/2023 | 222 | RESPONSE re 200 Response, *To Court's December 8, 2022 Memorandum Order* filed by Investors Warranty of America, LLC.(Davis, Rebecca) (Entered: 01/06/2023) |
| 01/11/2023 | 223 | RESPONSE in Opposition re 208 MOTION to Dismiss *Count I of Plaintiff's Second Amended Complaint* filed by Rock Spring Plaza II, LLC. (Attachments: # 1 Text of Proposed Order)(Dunn, Alvin) (Entered: 01/11/2023) |
| 01/13/2023 | 224 | STIPULATION of Dismissal *Without Prejudice as to Transamerica Corp.* by Rock Spring Plaza II, LLC(Bosch, William) (Entered: 01/13/2023) |
| 01/16/2023 | 225 | MOTION to Intervene *as Defendant in Count I of Second Amended Complaint* by Rock Springs Drive, LLC (Attachments: # 1 Text of Proposed Order)(Kropf, Sara) (Entered: 01/16/2023) |
| 01/16/2023 | 226 | MOTION for Protective Order by Investors Warranty of America, LLC (Attachments: # 1 Exhibit A - Response to Motion, # 2 Exhibit B - Response to Motion, # 3 Exhibit C - 30(b)(6) Notice, # 4 Text of Proposed Order Proposed Order)(Davis, Rebecca) (Entered: 01/16/2023) |
| 01/17/2023 | 227 | MARGINAL ORDER approving 224 Stipulation of Dismissal Without Prejudice as to Transamerica Corp. filed by Rock Spring Plaza II, LLC. Signed by Judge Peter J. Messitte on 1/17/2023. (ols, Deputy Clerk) (Entered: 01/17/2023) |
| 01/19/2023 | 228 | RESPONSE to Motion re 225 MOTION to Intervene *as Defendant in Count I of Second Amended Complaint* filed by Rock Spring Plaza II, LLC.(Dunn, Alvin) (Entered: 01/19/2023) |
| 01/20/2023 | 229 | MOTION to Determine the Sufficiency of Defendant Investors Warranty of America LLC's Responses and Objections to Plaintiff's Request for Admissions by Rock Spring Plaza II, LLC (Attachments: # 1 Memorandum in Support, # 2 Exhibit A, # 3 Exhibit B, # 4 Exhibit C, # 5 Exhibit Placeholder Notice of Filing Document Under Seal, # 6 Text of Proposed Order)(Dunn, Alvin) (Entered: 01/20/2023) |
| 01/20/2023 | 230 | -SEALED - NOTICE of Filing Under Seal Exhibit D to Plaintiff's Motion to Determine Sufficiency by Rock Spring Plaza II, LLC re 229 MOTION to Determine the Sufficiency of Defendant Investors Warranty of America LLC's Responses and Objections to Plaintiff's Request for Admissions (Dunn, Alvin) (Entered: 01/20/2023) |
| 01/20/2023 | 231 | MOTION to Seal *Exhibit D to Its Motion to Determine Sufficiency of Defendant Investors Warranty of America LLC's Responses and Objections to Plaintiff's Request for Admissions* by Rock Spring Plaza II, |

A20

| | | |
|---|---|---|
| | | LLC (Attachments: # 1 Text of Proposed Order)(Dunn, Alvin) (Entered: 01/20/2023) |
| 01/23/2023 | 232 | Emergency MOTION for Extension of Time to Complete Discovery by Rock Springs Drive, LLC (Attachments: # 1 Exhibit A, # 2 Text of Proposed Order)(Kropf, Sara) (Entered: 01/23/2023) |
| 01/23/2023 | 233 | RESPONSE in Opposition re 232 Emergency MOTION for Extension of Time to Complete Discovery filed by Rock Spring Plaza II, LLC. (Attachments: # 1 Text of Proposed Order)(Danial, Katherine) (Entered: 01/23/2023) |
| 01/24/2023 | 234 | REPLY to Response to Motion re 232 Emergency MOTION for Extension of Time to Complete Discovery filed by Rock Springs Drive, LLC.(Kropf, Sara) (Entered: 01/24/2023) |
| 01/24/2023 | 235 | MOTION to Withdraw as Attorney by Rock Springs Drive, LLC (Attachments: # 1 Proposed Order) (Rosenberg, Jaime) (Entered: 01/24/2023) |
| 01/24/2023 | 236 | REPLY to Response to Motion re 208 MOTION to Dismiss Count I of Plaintiff's Second Amended Complaint filed by Investors Warranty of America, LLC.(Davis, Rebecca) (Entered: 01/24/2023) |
| 01/24/2023 | 237 | ORDER granting 235 Motion to Withdraw as Attorney. Attorney Jaime Rosenberg terminated. Signed by Judge Peter J. Messitte on 1/24/2023. (ols, Deputy Clerk) (Entered: 01/25/2023) |
| 01/25/2023 | 238 | NOTICE by Rock Spring Plaza II, LLC of Filing its Motion to Compel, Defendant's Opposition and Plaintiff's Reply (Attachments: # 1 Plaintiff's Motion to Compel, # 2 Defendant IWA's Opposition to Motion to Compel, # 3 Plaintiff's Reply ISO Motion to Compel)(Danial, Katherine) (Entered: 01/25/2023) |
| 01/25/2023 | 239 | -SEALED - NOTICE of Filing Under Seal SEALED - Exhibit H to Plaintiff's Motion to Compel and In Camera Request to IWA by Rock Spring Plaza II, LLC (Danial, Katherine) (Entered: 01/26/2023) |
| 01/26/2023 | 240 | -SEALED - NOTICE of Filing Under Seal SEALED - Exhibit I to Plaintiff's Motion to Compel and In Camera Request to IWA by Rock Spring Plaza II, LLC (Danial, Katherine) (Entered: 01/26/2023) |
| 01/26/2023 | 241 | -SEALED - NOTICE of Filing Under Seal SEALED - Exhibit J to Plaintiff's Motion to Compel and In Camera Request to IWA by Rock Spring Plaza II, LLC (Danial, Katherine) (Entered: 01/26/2023) |
| 01/26/2023 | 242 | -SEALED - NOTICE of Filing Under Seal SEALED - Exhibit L to Plaintiff's Motion to Compel and In Camera Request to IWA by Rock Spring Plaza II, LLC (Danial, Katherine) (Entered: 01/26/2023) |
| 01/26/2023 | 243 | -SEALED - NOTICE of Filing Under Seal SEALED - Exhibit A to Plaintiff's Reply to Motion to Compel by Rock Spring Plaza II, LLC (Danial, Katherine) (Entered: 01/26/2023) |
| 01/26/2023 | 244 | -SEALED - NOTICE of Filing Under Seal SEALED - Exhibit B Plaintiff's Reply to Motion to Compel by Rock Spring Plaza II, LLC (Danial, Katherine) (Entered: 01/26/2023) |
| 01/26/2023 | 245 | -SEALED - NOTICE of Filing Under Seal SEALED - Exhibit C to Plaintiff's Reply to Motion to Compel by Rock Spring Plaza II, LLC (Danial, Katherine) (Entered: 01/26/2023) |
| 01/26/2023 | 246 | -SEALED - NOTICE of Filing Under Seal SEALED - Exhibit D to Plaintiff's Reply to Motion to Compel by Rock Spring Plaza II, LLC (Danial, Katherine) (Entered: 01/26/2023) |
| 01/26/2023 | 247 | MOTION to Seal by Rock Spring Plaza II, LLC (Attachments: # 1 Text of Proposed Order)(Danial, Katherine) (Entered: 01/26/2023) |
| 01/26/2023 | 248 | NOTICE by Rock Spring Plaza II, LLC re 238 Notice (Other), Text of Proposed Order (Danial, Katherine) (Entered: 01/26/2023) |
| 01/26/2023 | 249 | ORDER granting 216 231 247 Plaintiffs' Motions to Seal. Signed by Judge Peter J. Messitte on 1/26/2023. (ols, Deputy Clerk) (Entered: 01/26/2023) |
| 01/26/2023 | 250 | Telephone Conference held on 1/26/2023 before Judge Peter J. Messitte. (FTR - 4A) (dhs, Deputy Clerk) (Entered: 01/26/2023) |
| 01/27/2023 | 251 | ORDER denying 208 MOTION to Dismiss Count I of Plaintiff's Second Amended Complaint; denying 225 MOTION to Intervene as Defendant in Count I of Second Amended Complaint ; denying as moot 232 Emergency MOTION for Extension of Time to Complete Discovery. Signed by Judge Peter J. Messitte on 1/26/2023. (kb3s, Deputy Clerk) (Entered: 01/27/2023) |
| 01/30/2023 | 252 | RESPONSE re 226 MOTION for Protective Order filed by Rock Spring Plaza II, LLC. (Attachments: # 1 Text of Proposed Order)(Danial, Katherine) (Entered: 01/30/2023) |
| 02/01/2023 | 253 | MOTION to Strike 238 Notice (Other), by Investors Warranty of America, LLC (Attachments: # 1 Text of |

A21

| | | |
|---|---|---|
| | | Proposed Order)(Davis, Rebecca) (Entered: 02/01/2023) |
| 02/01/2023 | 254 | NOTICE OF FILING OF OFFICIAL TRANSCRIPT of Proceedings held on 1/26/2023, before Judge Peter J. Messitte. Court Reporter/Transcriber Patricia G. Mitchell, Telephone number 410-962-3858; trish_mitchell@mdd.uscourts.gov. Total number of pages filed: 33. Transcript may be viewed at the court public terminal or purchased through the Court Reporter/Transcriber before the deadline for Release of Transcript Restriction. After that date it may be obtained from the Court Reporter or through PACER. Redaction Request due 2/22/2023. Redacted Transcript Deadline set for 3/6/2023. Release of Transcript Restriction set for 5/2/2023.(pms, Court Reporter) (Entered: 02/01/2023) |
| 02/02/2023 | 255 | MOTION to Quash *Non-Party Subpoena on Counsel for Rock Springs Drive* by Rock Springs Drive, LLC (Attachments: # 1 Exhibit A-C, # 2 Text of Proposed Order)(Kropf, Sara) (Entered: 02/02/2023) |
| 02/02/2023 | 256 | RESPONSE re 253 MOTION to Strike 238 Notice (Other), filed by Rock Spring Plaza II, LLC. (Attachments: # 1 Exhibit, # 2 Text of Proposed Order)(Danial, Katherine) (Entered: 02/02/2023) |
| 02/03/2023 | 257 | RESPONSE in Opposition re 229 MOTION to Determine the Sufficiency of Defendant Investors Warranty of America LLC's Responses and Objections to Plaintiff's Request for Admissions filed by Investors Warranty of America, LLC. (Attachments: # 1 Text of Proposed Order)(Davis, Rebecca) (Entered: 02/03/2023) |
| 02/03/2023 | 258 | NOTICE by Rock Spring Plaza II, LLC *of Joint Proposal for February 16, 2023 Hearing Agenda* (Danial, Katherine) (Entered: 02/03/2023) |
| 02/07/2023 | 259 | MOTION for Protective Order *re IWA's 30(b)(6) Deposition Notice* by Rock Spring Plaza II, LLC (Attachments: # 1 Memorandum in Support, # 2 Exhibit, # 3 Exhibit, # 4 Text of Proposed Order)(Danial, Katherine) (Entered: 02/07/2023) |
| 02/07/2023 | 260 | MOTION for Protective Order *re Nonparty Deposition Topics* by Rock Spring Plaza II, LLC (Attachments: # 1 Memorandum in Support, # 2 Text of Proposed Order)(Danial, Katherine) (Entered: 02/07/2023) |
| 02/08/2023 | 261 | NOTICE by Rock Spring Plaza II, LLC *of Filing its Motion to Compel Supplemental Discovery* (Attachments: # 1 Exhibit Plaintiff's Motion to Compel, # 2 Exhibit Defendant IWA's Opposition to Motion to Compel, # 3 Exhibit Plaintiff's Reply ISO Motion to Compel, # 4 Text of Proposed Order) (Danial, Katherine) (Entered: 02/08/2023) |
| 02/10/2023 | 262 | ANSWER to 196 Amended Complaint by Investors Warranty of America, LLC.(Davis, Rebecca) (Entered: 02/10/2023) |
| 02/13/2023 | 263 | RESPONSE to Motion re 259 MOTION for Protective Order *re IWA's 30(b)(6) Deposition Notice* filed by Investors Warranty of America, LLC. (Attachments: # 1 Exhibit A, # 2 Exhibit B, # 3 Exhibit C, # 4 Text of Proposed Order)(Davis, Rebecca) (Entered: 02/13/2023) |
| 02/13/2023 | 264 | RESPONSE in Opposition re 255 MOTION to Quash *Non-Party Subpoena on Counsel for Rock Springs Drive* filed by Rock Spring Plaza II, LLC. (Attachments: # 1 Exhibit A, # 2 Exhibit B, # 3 Text of Proposed Order)(Dunn, Alvin) (Entered: 02/13/2023) |
| 02/13/2023 | 265 | REPLY to Response to Motion re 226 MOTION for Protective Order filed by Investors Warranty of America, LLC. (Attachments: # 1 Exhibit A - Exhibit Placeholder - Notice of Filing Document Under Seal, # 2 Exhibit B, # 3 Exhibit C - Exhibit Placeholder - Notice of Document Filed Under Seal, # 4 Exhibit D, # 5 Exhibit E, # 6 Exhibit F - Exhibit Placeholder - Notice of Filing Document Under Seal, # 7 Exhibit G - Exhibit Placeholder - Notice of Filing of Document Under Seal, # 8 Exhibit H, # 9 Exhibit I - Exhibit Placeholder - Notice of Filing of Document Under Seal, # 10 Exhibit J, # 11 Exhibit K, # 12 Exhibit L, # 13 Exhibit M, # 14 Exhibit N, # 15 Exhibit O)(Davis, Rebecca) (Entered: 02/13/2023) |
| 02/13/2023 | 266 | MOTION to Seal *Exhibits to Investors Warranty of America, LLC's Reply in Support of its Motion for Protective Order* by Investors Warranty of America, LLC (Attachments: # 1 Text of Proposed Order) (Davis, Rebecca) (Entered: 02/13/2023) |
| 02/13/2023 | 267 | -SEALED - NOTICE of Filing Under Seal Exhibits A, C, F, G and I to Reply in Support of Protective Order by Investors Warranty of America, LLC re 266 MOTION to Seal *Exhibits to Investors Warranty of America, LLC's Reply in Support of its Motion for Protective Order*, 265 Reply to Response to Motion,, (Attachments: # 1 Exhibit A, # 2 Exhibit C, Part 1, # 3 Exhibit C, Part 2, # 4 Exhibit F, # 5 Exhibit G, # 6 Exhibit I)(Davis, Rebecca) (Entered: 02/13/2023) |
| 02/13/2023 | 268 | REPLY to Response to Motion re 253 MOTION to Strike 238 Notice (Other), filed by Investors Warranty of America, LLC. (Attachments: # 1 Exhibit A, # 2 Exhibit B, # 3 Exhibit C, # 4 Exhibit D - Exhibit |

A22

| | | |
|---|---|---|
| | | Placeholder - Notice of Filing Document Under Seal, # 5 Exhibit E - Exhibit Placeholder - Notice of Filing Document Under Seal, # 6 Exhibit F, # 7 Exhibit G - Exhibit Placeholder - Notice of Filing of Document Under Seal, # 8 Exhibit H, # 9 Exhibit I, # 10 Exhibit J, # 11 Exhibit K, # 12 Exhibit L)(Davis, Rebecca) (Entered: 02/13/2023) |
| 02/13/2023 | 269 | MOTION to Seal *Exhibits to Investors Warranty of America, LLC's Reply in Support of its Motion to Strike* by Investors Warranty of America, LLC (Attachments: # 1 Text of Proposed Order)(Davis, Rebecca) (Entered: 02/13/2023) |
| 02/13/2023 | 270 | -SEALED - NOTICE of Filing Under Seal Exhibits D, E and G to Reply in Support of its Motion to Strike by Investors Warranty of America, LLC re 269 MOTION to Seal *Exhibits to Investors Warranty of America, LLC's Reply in Support of its Motion to Strike*, 268 Reply to Response to Motion,, (Attachments: # 1 Exhibit D, # 2 Exhibit E, # 3 Exhibit G)(Davis, Rebecca) (Entered: 02/13/2023) |
| 02/13/2023 | 271 | RESPONSE in Opposition re 260 MOTION for Protective Order *re Nonparty Deposition Topics* filed by Rock Springs Drive, LLC. (Attachments: # 1 Exhibit A)(Kropf, Sara) (Entered: 02/13/2023) |
| 02/13/2023 | 272 | NOTICE OF FILING OF OFFICIAL TRANSCRIPT of Proceedings held on 8/6/2021, before Judge Gina L. Simms. Court Reporter/Transcriber Patricia G. Mitchell, 410-962-3858; trish_mitchell@mdd.uscourts.gov. Total number of pages filed: 58. Transcript may be viewed at the court public terminal or purchased through the Court Reporter before the deadline for Release of Transcript Restriction. After that date it may be obtained from the Court Reporter or through PACER. Redaction Request due 3/6/2023. Redacted Transcript Deadline set for 3/16/2023. Release of Transcript Restriction set for 5/15/2023.(pms, Court Reporter) (Entered: 02/13/2023) |
| 02/14/2023 | 273 | QC NOTICE: 271 Response in Opposition to Motion filed by Rock Springs Drive, LLC was filed incorrectly. **The following attachments or exhibits are missing - Proposed Order. To correct this problem, file Proposed Order using the event Notice (Other) and link Proposed Order to 271 .* (ols, Deputy Clerk) (Entered: 02/14/2023) |
| 02/14/2023 | 274 | NOTICE by Rock Springs Drive, LLC re 271 Response in Opposition to Motion *(Proposed Order)* (Kropf, Sara) (Entered: 02/14/2023) |
| 02/14/2023 | 275 | CERTIFICATE OF SERVICE by Investors Warranty of America, LLC re 270 Notice of Filing Exhibit or Attachment Under Seal, 267 Notice of Filing Exhibit or Attachment Under Seal, (Davis, Rebecca) (Entered: 02/14/2023) |
| 02/14/2023 | 276 | REPLY to Response to Motion re 229 MOTION to Determine the Sufficiency of Defendant Investors Warranty of America LLC's Responses and Objections to Plaintiff's Request for Admissions filed by Rock Spring Plaza II, LLC. (Attachments: # 1 Exhibit 1)(Dunn, Alvin) (Entered: 02/14/2023) |
| 02/14/2023 | 277 | MOTION to Compel *RSD Supplemental Privilege Log* by Rock Spring Plaza II, LLC (Attachments: # 1 Exhibit Exhibit A Pl.'s Motion to Compel, # 2 Exhibit Exhibit B RSD's Opposition, # 3 Exhibit Exhibit C Pl.'s Reply ISO Motion, # 4 Text of Proposed Order)(Dunn, Alvin) (Entered: 02/14/2023) |
| 02/14/2023 | 278 | REPLY to Response to Motion re 255 MOTION to Quash *Non-Party Subpoena on Counsel for Rock Springs Drive* filed by Rock Springs Drive, LLC. (Attachments: # 1 Exhibit D)(Kropf, Sara) (Entered: 02/14/2023) |
| 02/14/2023 | 279 | Local Rule 104.7 (Attachments: # 1 Exhibit A (motion), # 2 Exhibit B (opposition), # 3 Exhibit C (reply), # 4 Exhibit D (proposed order))(Kropf, Sara) (Entered: 02/14/2023) |
| 02/14/2023 | 280 | NOTICE by Rock Spring Plaza II, LLC of *Supplemental Hearing Agenda with Time Allocations for February 16, 2023* (Danial, Katherine) (Entered: 02/14/2023) |
| 02/14/2023 | 281 | REPLY to Response to Motion re 260 MOTION for Protective Order *re Nonparty Deposition Topics* filed by Rock Spring Plaza II, LLC.(Danial, Katherine) (Entered: 02/14/2023) |
| 02/14/2023 | 282 | REPLY to Response to Motion re 259 MOTION for Protective Order *re IWA's 30(b)(6) Deposition Notice* filed by Rock Spring Plaza II, LLC. (Attachments: # 1 Exhibit)(Danial, Katherine) (Entered: 02/14/2023) |
| 02/16/2023 | 283 | Motion Hearing held on 2/16/2023 re ECF 98 Motion to Compel Argued Denied; ECF 161 Defendant Rock Springs Drive LLCs Motion to Compel Non-Parties Response to Subpoena Argued Denied; ECF 163 Motion to Compel Argued- Denied; ECF 226 Investor Warranty of America, LLCs Motion for Protective Order Argued Granted in part/Denied in part; ECF 229 Plaintiff Rock Spring Plaza II, LLCs Motion to Determine the Sufficiency of the Defendant Investors Warranty of America, LLCs Response and Objections to the Plaintiffs Request for Admission Argued Denied; ECF 253 Defendant Investors Warranty |

A23

| | | |
|---|---|---|
| | | of America, LLCs Motion to Strike Plaintiff Rock Spring Plaza II, LLCs Motion to Compel Against IWA and Request for in Camera Review for Failure to Comply with Local Rule 104.8 Argued Denied; ECF 255 Defendant Rock Springs Drive LLCs Motion to Quash Non-Party Deposition Subpoena on Counsel for Rock Springs Drive, or in the Alternative, for Protective Order Argued Deferred; ECF 259 Plaintiff Rock Spring Plaza II, LLCs Motion for Protective Order Regarding Defendant Investors Warranty of America, LLCs 30(B)(6) Deposition Notice Argued Granted in part/Denied in part; ECF 260 Rock Spring Plaza II, LLCs Motion for Protective Order Argued Granted in part/Denied in part; ECF 277 Plaintiff Rock Spring Plaza II, LLCs Notice of Filing its Motion to Compel Supplemental Rock Springs Drive LLC Privilege Log Argued Deferred; All for reasons stated on the record in open Court by and before Judge Peter J. Messitte. (Court Reporter: Nadine Bachmann - 4C) (dhs, Deputy Clerk) (Additional attachment(s) added on 3/3/2023: # 1 Attachment Amended Minutes) (dhs, Deputy Clerk). (Entered: 02/16/2023) |
| 02/16/2023 | 284 | ORDER granting 266 Investors Warranty of America, LLC's Motion to Seal; granting 269 Investors Warranty of America, LLC's Motion to Seal. Signed by Judge Peter J. Messitte on 2/16/2023. (ols, Deputy Clerk) (Entered: 02/17/2023) |
| 02/21/2023 | 285 | PAPERLESS ORDER APPROVING 258 Joint Proposal for February 16, 2023 Hearing. Signed by Judge Peter J. Messitte on 2/15/2023. (jmhs, Chambers) (Entered: 02/21/2023) |
| 02/21/2023 | 286 | ORDER denying 261 Plaintiff's Motion to Compel Supplemental Discovery from IWA; denying 229 Plaintiff's Motion to Determine the Sufficiency of IWA's Responses and Objections to Plaintiff's Request for Admissions; denying 253 IWA's Motion to Strike 238 Plaintiff's Motion to Compel Against IWA and Request for In Camera Review; granting in part and denying in part 238 Plaintiff's Motion to Compel Against IWA and Request for In Camera Review; granting in part and deferring rule on in part 226 IWA's Motion for Protective Order; deferring ruling on 255 RSD's Motion to Quash Non-Party Subpoena on Counsel for Rock Springs Drive, or in the Alternative, for a Protective Order; denying 279 RSD's Motion to Produce Documents from Plaintiff's Privilege Log; granting in part and denying in part 187 RSD'd Motion to Compel Plaintiff's Discovery Responses; granting in part and denying in part 182 IWA's Motion to Compel Plaintiff; denying 161 IWA's Motion to Compel Non-Parties Response to Subpoena; granting in part and denying in part 163 IWA's Motion to Compel Non-Party Rock Spring Properties; denying 98 IWA's Motion to Compel Rockledge Associates LLC; deferring ruling on 277 Plaintiff's Motion to Compel Supplemental RSD Privilege Log; granting 259 Plaintiff's Motion for Protective Order Regarding Defendant Investors Warranty of America, LLC's 30(B)(6) Deposition Notice; granting in part and denying in part 260 Plaintiff's Motion for Protective Order Regarding Non-Party Depositions;. Signed by Judge Peter J. Messitte on 2/21/2023. (ols, Deputy Clerk) (Entered: 02/22/2023) |
| 02/23/2023 | 287 | NOTICE of Appearance by Anthony F Cavanaugh on behalf of Rock Spring Plaza II, LLC (Cavanaugh, Anthony) (Entered: 02/23/2023) |
| 03/02/2023 | 288 | Sealed Document (Attachments: # 1 Attachment) (c/em as directed ols, Deputy Clerk) (Entered: 03/02/2023) |
| 03/13/2023 | 289 | -SEALED-RESPONSE re 288 Sealed Document filed by Investors Warranty of America, LLC.(Davis, Rebecca) (Entered: 03/13/2023) |
| 03/15/2023 | 290 | MEMORANDUM ORDER. Signed by Judge Peter J. Messitte on 3/15/2023. (ols, Deputy Clerk) (Entered: 03/16/2023) |
| 03/20/2023 | 291 | -PER COUNSEL, FILED IN ERROR. REFILED AT 292 - -SEALED-RESPONSE re 290 Memorandum and Order filed by Investors Warranty of America, LLC.(Davis, Rebecca) Modified on 3/20/2023 (ols, Deputy Clerk). (Entered: 03/20/2023) |
| 03/20/2023 | 292 | RESPONSE re 290 Memorandum and Order filed by Investors Warranty of America, LLC.(Davis, Rebecca) (Entered: 03/20/2023) |
| 03/22/2023 | 293 | PAPERLESS ORDER APPROVING 292 Correspondence from Investors Warranty of America, LLC. Signed by Judge Peter J. Messitte on 3/21/2023. (jmhs, Chambers) (Entered: 03/22/2023) |
| 03/27/2023 | 294 | MOTION *Regarding March 15, 2023, Order* by Investors Warranty of America, LLC(Davis, Rebecca) (Entered: 03/27/2023) |
| 03/28/2023 | 295 | QC NOTICE: 294 Motion for Miscellaneous Relief filed by Investors Warranty of America, LLC was filed incorrectly. *\*\*The following attachments or exhibits are missing - Proposed Order. To correct this problem, file Proposed Order using the event Notice (Other) and link Proposed Order to 294 .* (ols, Deputy Clerk) (Entered: 03/28/2023) |

A24

| 03/28/2023 | 296 | NOTICE by Investors Warranty of America, LLC re 294 MOTION *Regarding March 15, 2023, Order* (Davis, Rebecca) (Entered: 03/28/2023) |
|---|---|---|
| 03/28/2023 | 297 | MEMORANDUM ORDER directing that Plaintiff Rock Spring Plaza may file a response to IWA's brief no later than 4/14/2023; and that IWA may file a reply brief no later than 4/21/2023. Signed by Judge Peter J. Messitte on 3/28/2023. (ols, Deputy Clerk) (Entered: 03/28/2023) |
| 04/03/2023 | 298 | NOTICE of Appearance by Renee Beth Appel on behalf of Investors Warranty of America, LLC (Appel, Renee) (Entered: 04/03/2023) |
| 04/05/2023 | 299 | MOTION to Quash *Rock Spring Plaza II, LLC's Subpoena for Deposition Testimony of Attorney James Sowka* by Investors Warranty of America, LLC (Attachments: # 1 Exhibit A, # 2 Exhibit B, # 3 Text of Proposed Order)(Davis, Rebecca) (Entered: 04/05/2023) |
| 04/05/2023 | 300 | MOTION for Leave to File *Amended Counterclaim* by Investors Warranty of America, LLC (Attachments: # 1 Exhibit A, # 2 Exhibit B, # 3 Text of Proposed Order)(Davis, Rebecca) (Entered: 04/05/2023) |
| 04/12/2023 | 301 | Request for Conference (Kropf, Sara) (Entered: 04/12/2023) |
| 04/12/2023 | 302 | PAPERLESS NOTICE OF SCHEDULING TELEPHONE CONFERENCE and advising counsel/parties of record that a telephone conference will be held on Thursday, April 13, 2023 at 11:00 a.m. Counsel were previously provided dial-in information via email.(jmhs, Chambers) (Entered: 04/12/2023) |
| 04/12/2023 | 303 | Correspondence re: Response to ECF 301 (Danial, Katherine) (Entered: 04/12/2023) |
| 04/13/2023 | 304 | NOTICE by Investors Warranty of America, LLC re 299 MOTION to Quash *Rock Spring Plaza II, LLC's Subpoena for Deposition Testimony of Attorney James Sowka* (Davis, Rebecca) (Entered: 04/13/2023) |
| 04/13/2023 | 305 | Telephone Conference (re status of case) held on 4/13/2023 for 1 hour before Judge Peter J. Messitte. (Court Reporter: Ronda Thomas) (jmhs, Chambers) (Entered: 04/13/2023) |
| 04/13/2023 | 306 | PAPERLESS ORDER APPROVING 304 Notice of Withdrawal of Motion to Quash, without Prejudice; and WITHDRAWING 299 Motion to Quash. Signed by Judge Peter J. Messitte on 4/13/2023. (jmhs, Chambers) (Entered: 04/13/2023) |
| 04/13/2023 | 307 | ORDER re: Depositions. Signed by Judge Peter J. Messitte on 4/13/2023. (ols, Deputy Clerk) (Entered: 04/13/2023) |
| 04/17/2023 | 308 | MOTION to Appear Pro Hac Vice for Rebecca Guiterman (Filing fee $100, receipt number AMDDC-10548432.) by Rock Springs Drive, LLC(Kropf, Sara) (Entered: 04/17/2023) |
| 04/18/2023 | 309 | PAPERLESS ORDER granting 308 Motion to Appear Pro Hac Vice on behalf of Rebecca Guiterman. Directing attorney Rebecca Guiterman to register for pro hac vice filing in the District of Maryland through PACER at https://pacer.uscourts.gov/ if attorney has not already done so. The *Pro Hac Vice* option must be selected when registering. Signed by Clerk on 4/18/2023. (mh4s, Deputy Clerk) (Entered: 04/18/2023) |
| 04/18/2023 | 310 | RESPONSE re 294 MOTION *Regarding March 15, 2023, Order* filed by Rock Spring Plaza II, LLC. (Attachments: # 1 Exhibit Declaration, # 2 Exhibit Exhibit A, # 3 Exhibit Exhibit B, # 4 Exhibit Exhibit C, # 5 Text of Proposed Order)(Danial, Katherine) (Entered: 04/18/2023) |
| 04/19/2023 | 311 | RESPONSE in Opposition re 300 MOTION for Leave to File *Amended Counterclaim* filed by Rock Spring Plaza II, LLC. (Attachments: # 1 Text of Proposed Order)(Bosch, William) (Entered: 04/19/2023) |
| 04/25/2023 | 312 | REPLY to Response to Motion re 294 MOTION *Regarding March 15, 2023, Order* filed by Investors Warranty of America, LLC. (Attachments: # 1 Exhibit A to Brief, # 2 Exhibit B - Declaration to Brief, # 3 Exhibit 1 to Declaration, # 4 Exhibit 2 to Declaration, # 5 Exhibit 3 to Declaration, # 6 Exhibit 4 to Declaration, # 7 Exhibit 5 to Declaration, # 8 Exhibit 6 to Declaration, # 9 Exhibit C to Brief)(Davis, Rebecca) (Entered: 04/25/2023) |
| 05/03/2023 | 313 | REPLY to Response to Motion re 300 MOTION for Leave to File *Amended Counterclaim* filed by Investors Warranty of America, LLC. (Attachments: # 1 Exhibit A - Declaration, # 2 Exhibit 1 - to Declaration, # 3 Exhibit 2 - to Declaration, # 4 Exhibit 3 - to Declaration, # 5 Exhibit 4 - to Declaration, # 6 Exhibit 5 - to Declaration)(Davis, Rebecca) (Entered: 05/03/2023) |
| 05/25/2023 | 314 | ORDER re: Hearing. Signed by Judge Peter J. Messitte on 5/18/2023. (ols, Deputy Clerk) (Entered: 05/25/2023) |

A25

| 05/30/2023 | 315 | MEMORANDUM ORDER denying as untimely 300 IWA's Motion for Leave to Amend Counterclaim. Signed by Judge Peter J. Messitte on 5/30/2023. (ols, Deputy Clerk) (Entered: 05/30/2023) |
| 06/19/2023 | 316 | NOTICE of Change of Address by Rebecca A. Davis (Davis, Rebecca) (Entered: 06/19/2023) |
| 06/20/2023 | 317 | QC NOTICE: 316 Notice of Change of Address filed by Investors Warranty of America, LLC was filed incorrectly. **Attorneys must update their own information. Login into PACER and make address/law firm update via Manage My Account.* (ols, Deputy Clerk) (Entered: 06/20/2023) |
| 06/21/2023 | 319 | NOTICE OF FILING OF OFFICIAL TRANSCRIPT of TELECONFERENCE held on 4/13/2023, before Judge Peter J. Messitte. Court Reporter Ronda Thomas, Telephone number 410-962-4504, ronda_thomas@mdd.uscourts.gov. Total number of pages filed: 44. Transcript may be viewed at the court public terminal or purchased through the Court Reporter before the deadline for Release of Transcript Restriction. After that date it may be obtained from the Court Reporter or through PACER. Redaction Request due 7/12/2023. Redacted Transcript Deadline set for 7/24/2023. Release of Transcript Restriction set for 9/19/2023.(rt, Court Reporter) (Entered: 06/21/2023) |
| 06/27/2023 | 320 | MEMORANDUM ORDER extending the discovery deadline in this case to 9/1/2023. Signed by Judge Peter J. Messitte on 6/27/2023. (ols, Deputy Clerk) (Entered: 06/28/2023) |
| 06/29/2023 | 321 | MOTION to Quash *Subpoenas* by Investors Warranty of America, LLC (Attachments: # 1 Exhibit A, # 2 Text of Proposed Order Proposed Order)(Davis, Rebecca) (Entered: 06/29/2023) |
| 06/30/2023 | 322 | Consent MOTION for Extension of Time to File Response/Reply *to Subpoenas* by Transamerica Corporation (Attachments: # 1 Text of Proposed Order)(Ain, Alexa) (Entered: 06/30/2023) |
| 07/03/2023 | 323 | Correspondence re: June 27, 2023 Order (Davis, Rebecca) (Entered: 07/03/2023) |
| 07/05/2023 | 324 | ORDER GRANTING 322 Motion for Extension of Time to File Response/Reply *to Subpoenas*. Signed by Judge Peter J. Messitte on 7/5/2023. (hmls, Deputy Clerk) (Entered: 07/05/2023) |
| 07/10/2023 | 325 | Consent MOTION for Extension of Time to File Response/Reply as to 321 MOTION to Quash *Subpoenas* by Rock Spring Plaza II, LLC (Attachments: # 1 Text of Proposed Order)(Danial, Katherine) (Entered: 07/10/2023) |
| 07/11/2023 | 326 | ORDER granting 325 Consent Motion for Extension of Time to Respond to Motion to Quash. Signed by Judge Peter J. Messitte on 7/11/2023. (ols, Deputy Clerk) (Entered: 07/12/2023) |
| 07/14/2023 | 327 | ORDER REFERRING CASE to Magistrate Judge Gina L Simms for Discovery, specifically ECF 321 , Motion to Quash Subpoenas by Investors Warranty of America, LLC. Signed by Judge Peter J. Messitte on 7/14/2023. (kns, Deputy Clerk) (Entered: 07/14/2023) |
| 07/17/2023 | 328 | NOTICE of Appearance by Nicole Steinberg on behalf of Rock Spring Plaza II, LLC (Steinberg, Nicole) (Entered: 07/17/2023) |
| 07/21/2023 | 329 | NOTICE by Transamerica Life Insurance Company - *Objections to Subpoena to Produce Documents to Non-Party Transamerica Life Insurance Company* (Ain, Alexa) (Entered: 07/21/2023) |
| 07/21/2023 | 330 | NOTICE by Transamerica Financial Life Insurance Company - *Objections to Subpoena to Produce Documents to Non-Party Transamerica Financial Life Insurance Company* (Ain, Alexa) (Entered: 07/21/2023) |
| 07/21/2023 | 331 | NOTICE by Transamerica Corporation - *Objections to Subpoena to Produce Documents to Non-Party Transamerica Corporation* (Ain, Alexa) (Entered: 07/21/2023) |
| 08/02/2023 | 332 | MOTION to Compel *the Non-Party Transamerica Entities to Respond to Document Subpoenas* by Rock Spring Plaza II, LLC (Attachments: # 1 Memorandum in Support, # 2 Exhibit A, # 3 Exhibit B, # 4 Exhibit C, # 5 Exhibit D, # 6 Exhibit E, # 7 Exhibit F, # 8 Exhibit G, # 9 Exhibit H, # 10 Text of Proposed Order) (Bosch, William) (Entered: 08/02/2023) |
| 08/02/2023 | 333 | RESPONSE in Opposition re 321 MOTION to Quash *Subpoenas of Non-Parties, or in the Alternative, Motion for Protective Order* filed by Rock Spring Plaza II, LLC. (Attachments: # 1 Exhibit A, # 2 Exhibit B, # 3 Exhibit C, # 4 Exhibit D, # 5 Exhibit E, # 6 Exhibit F, # 7 Exhibit G, # 8 Exhibit H, # 9 Text of Proposed Order)(Bosch, William) (Entered: 08/02/2023) |
| 08/15/2023 | 334 | Consent MOTION for Extension of Time *to Respond to Plaintiff's Motion to Compel* by Transamerica Corporation, Transamerica Financial Life Insurance Company, Transamerica Life Insurance Company (Attachments: # 1 Text of Proposed Order)(Ain, Alexa) (Entered: 08/15/2023) |

A26

| 08/15/2023 | 335 | PAPERLESS ORDER: This matter has been referred to the undersigned for the resolution of ECF No. 321 and the responses related thereto (see ECF Nos. 329-333). The undersigned will take under advisement whether further briefing from Transamerica Financial Life Insurance Company, Transamerica Corporation, and Transamerica Life Insurance Company is necessary to truly respond to ECF Nos. 332/333 (which are identical), and will advise the parties of my decision and any further briefing deadlines. Accordingly, the undersigned will defer ruling on ECF No. 334. Signed by Magistrate Judge Gina L Simms on 8/15/2023. (dd3s, Chambers) (Entered: 08/15/2023) |
|---|---|---|
| 08/16/2023 | 336 | REPLY to Response to Motion re 321 MOTION to Quash *Subpoenas of Non Parties* filed by Investors Warranty of America, LLC. (Attachments: # 1 Exhibit A, # 2 Exhibit B, # 3 Exhibit C, # 4 Exhibit D, # 5 Exhibit E, # 6 Exhibit F, # 7 Exhibit G, # 8 Exhibit H)(Davis, Rebecca) (Entered: 08/16/2023) |
| 08/16/2023 | 337 | MOTION to Seal *Exhbit* by Investors Warranty of America, LLC (Attachments: # 1 Text of Proposed Order)(Davis, Rebecca) (Entered: 08/16/2023) |
| 08/16/2023 | 338 | -SEALED - NOTICE of Filing Under Seal Exhibit D to Reply by Investors Warranty of America, LLC re 336 Reply to Response to Motion, 337 MOTION to Seal *Exhbit* (Davis, Rebecca) (Entered: 08/16/2023) |
| 08/17/2023 | 339 | -SEALED- MEMORANDUM OPINION. Signed by Judge Peter J. Messitte on 8/17/2023. (c/em defs 8/17/23 ols, Deputy Clerk) (Entered: 08/17/2023) |
| 08/17/2023 | 340 | ORDER denying 226 the unresolved portion of IWA's Motion for Protective Order; denying without prejudice the unresolved portions of 255 RSD's Motion to Quash Non-Party Deposition Subpoena on Counsel for Rock Springs Drive, or, in the Alternative for a Protective Order; denying without prejudice the unresolved portions of 277 Plaintiff's Motion to Compel Supplemental RSD Privilege Log; denying 294 IWA's Brief, Pursuant to the Court's March 15, 2023 Order, in Support of Reconsideration of the Applicability of the Crime Fraud Exception. Signed by Judge Peter J. Messitte on 8/17/2023. (ols, Deputy Clerk) (Entered: 08/17/2023) |
| 08/17/2023 | 341 | ORDER re: Granting of ECF 238-1. Signed by Judge Peter J. Messitte on 8/17/2023. (ols, Deputy Clerk) Modified on 8/18/2023 (ols, Deputy Clerk). (Entered: 08/17/2023) |
| 08/21/2023 | 342 | ORDER granting 337 Defendant Investors Warranty of America, LLC's Motion to Seal. Signed by Magistrate Judge Gina L Simms on 8/21/2023. (ols, Deputy Clerk) (Entered: 08/21/2023) |
| 08/22/2023 | 343 | MOTION to Take Deposition from William Bosch by Rock Springs Drive, LLC (Attachments: # 1 Text of Proposed Order, # 2 Exhibit A through K)(Kropf, Sara) (Entered: 08/22/2023) |
| 08/22/2023 | 344 | Emergency MOTION for Extension of Time by Investors Warranty of America, LLC (Attachments: # 1 Exhibit A, # 2 Text of Proposed Order)(Davis, Rebecca) (Entered: 08/22/2023) |
| 08/22/2023 | 345 | MOTION to Quash *Subpoena to Nonparty Aprio LLP* by Rock Springs Drive, LLC (Attachments: # 1 Text of Proposed Order, # 2 Exhibit A (subpoena))(Kropf, Sara) (Entered: 08/22/2023) |
| 08/23/2023 | 346 | ORDER granting 344 Investors Warranty of America, LLC's Emergency Motion for Extension of Time. Signed by Judge Peter J. Messitte on 8/23/2023. (ols, Deputy Clerk) (Entered: 08/23/2023) |
| 08/29/2023 | 347 | Joint MOTION to Compel *Deposition Testimony of Charles Camalier III* by Investors Warranty of America, LLC (Attachments: # 1 Exhibit A, # 2 Exhibit B, # 3 Exhibit C, # 4 Exhibit D, # 5 Exhibit E, # 6 Attachment Certificate, # 7 Text of Proposed Order Proposed Order)(Davis, Rebecca) (Entered: 08/29/2023) |
| 08/31/2023 | 348 | MOTION to Compel *Deposition of Non-Party Anne Camalier* by Rock Springs Drive, LLC (Attachments: # 1 Text of Proposed Order, # 2 Exhibit A to H)(Kropf, Sara) (Entered: 08/31/2023) |
| 08/31/2023 | 349 | MOTION to Amend/Correct 209 Answer to Amended Complaint by Rock Springs Drive, LLC (Attachments: # 1 Text of Proposed Order, # 2 Exhibit A to B)(Kropf, Sara) (Entered: 08/31/2023) |
| 09/04/2023 | 350 | MOTION to Stay re 341 Order, 340 Order on Motion for Protective Order,,, Order on Motion to Quash,,, Order on Motion to Compel,,, Order on Motion for Miscellaneous Relief,, by Investors Warranty of America, LLC (Attachments: # 1 Text of Proposed Order)(Davis, Rebecca) (Entered: 09/04/2023) |
| 09/05/2023 | 351 | ORDER granting 350 IWA's Motion to Stay Compliance with Production Order. Signed by Judge Peter J. Messitte on 9/5/2023. (ols, Deputy Clerk) (Entered: 09/05/2023) |
| 09/05/2023 | 352 | RESPONSE in Opposition re 343 MOTION to Take Deposition from William Bosch filed by Rock Spring Plaza II, LLC. (Attachments: # 1 Exhibit, # 2 Text of Proposed Order)(Danial, Katherine) (Entered: 09/05/2023) |

A27

| 09/11/2023 | 353 | NOTICE by Rock Springs Drive, LLC re 345 MOTION to Quash *Subpoena to Nonparty Aprio LLP Withdrawal of Motion* (Kropf, Sara) (Entered: 09/11/2023) |
| 09/12/2023 | 354 | NOTICE by Rock Spring Plaza II, LLC *of Filing Motion to Compel* (Attachments: # 1 Exhibit 1 Plaintiff's Motion to Compel, # 2 Exhibit 2 Defendant IWA's Opposition to Motion to Compel, # 3 Exhibit 3 Plaintiff's Reply ISO Motion to Compel, # 4 Text of Proposed Order)(Bosch, William) (Entered: 09/12/2023) |
| 09/12/2023 | 355 | NOTICE by Rock Spring Plaza II, LLC *of Filing Motion to Compel* (Attachments: # 1 Exhibit 1 Plaintiff's Motion to Compel, # 2 Exhibit 2 Defendant IWA's Opposition to Motion to Compel, # 3 Exhibit 3 Plaintiff's Reply ISO Motion to Compel, # 4 Text of Proposed Order)(Bosch, William) (Entered: 09/12/2023) |
| 09/12/2023 | 356 | REPLY to Response to Motion re 343 MOTION to Take Deposition from William Bosch filed by Rock Springs Drive, LLC. (Attachments: # 1 Exhibit L)(Kropf, Sara) (Entered: 09/12/2023) |
| 09/12/2023 | 357 | RESPONSE in Opposition re 347 Joint MOTION to Compel *Deposition Testimony of Charles Camalier III* filed by Rock Spring Plaza II, LLC. (Attachments: # 1 Exhibit, # 2 Text of Proposed Order)(Danial, Katherine) (Entered: 09/12/2023) |
| 09/14/2023 | 358 | RESPONSE in Opposition re 349 MOTION to Amend/Correct 209 Answer to Amended Complaint filed by Rock Spring Plaza II, LLC. (Attachments: # 1 Text of Proposed Order)(Danial, Katherine) (Entered: 09/14/2023) |
| 09/14/2023 | 359 | -SEALED-RESPONSE in Opposition re 348 MOTION to Compel *Deposition of Non-Party Anne Camalier* filed by Rock Spring Plaza II, LLC. (Attachments: # 1 Exhibit, # 2 Exhibit, # 3 Text of Proposed Order)(Danial, Katherine) (Entered: 09/14/2023) |
| 09/15/2023 | 360 | MOTION to Seal *Plaintiff's Opposition and Exhibits to RSD's Motion to Compel the Deposition of Non-Party Anne D. Camalier* by Rock Spring Plaza II, LLC (Attachments: # 1 Text of Proposed Order)(Danial, Katherine) (Entered: 09/15/2023) |
| 09/15/2023 | 361 | MOTION for Leave to File *Sur-Reply to ECF 354-3* by Rock Springs Drive, LLC (Attachments: # 1 Exhibit A (proposed sur-reply), # 2 Text of Proposed Order)(Kropf, Sara) (Entered: 09/15/2023) |
| 09/15/2023 | 362 | MOTION to Quash *Deposition of Anne D. Camalier* by Rock Spring Plaza II, LLC (Attachments: # 1 Memorandum in Support, # 2 Exhibit, # 3 Exhibit, # 4 Text of Proposed Order)(Danial, Katherine) (Entered: 09/15/2023) |
| 09/15/2023 | 363 | -SEALED - NOTICE of Filing Under Seal Memorandum in Support of Motion to Quash Deposition of Anne D. Camalier by Rock Spring Plaza II, LLC re 362 MOTION to Quash *Deposition of Anne D. Camalier* (Attachments: # 1 Exhibit, # 2 Exhibit)(Danial, Katherine) (Entered: 09/15/2023) |
| 09/15/2023 | 364 | MOTION to Seal *Plaintiff's Memorandum in Support of Motion to Quash Deposition of Anne D. Camalier and Accompanying Exhibits* by Rock Spring Plaza II, LLC (Attachments: # 1 Text of Proposed Order) (Danial, Katherine) (Entered: 09/15/2023) |
| 09/15/2023 | 365 | MOTION for Leave to File *Sur-Reply* by Investors Warranty of America, LLC (Attachments: # 1 Attachment Proposed Sur-Reply, # 2 Text of Proposed Order)(Davis, Rebecca) (Entered: 09/15/2023) |
| 09/19/2023 | 366 | ORDER deferring ruling on the parties' recently filed motions; directing that moving forward, the parties shall not file any new motions related to discovery, pending further advice from the Court. Signed by Judge Peter J. Messitte on 9/19/2023. (ols, Deputy Clerk) (Entered: 09/20/2023) |
| 09/20/2023 | 367 | ORDER granting 360 Plaintiff's Motion to Seal. Signed by Judge Peter J. Messitte on 9/20/2023. (ols, Deputy Clerk) (Entered: 09/21/2023) |
| 09/20/2023 | 368 | ORDER granting 364 Plaintiff's Motion to Seal. Signed by Judge Peter J. Messitte on 9/20/2023. (ols, Deputy Clerk) (Entered: 09/21/2023) |
| 09/26/2023 | 369 | REPLY to Response to Motion re 347 Joint MOTION to Compel *Deposition Testimony of Charles Camalier III* filed by Investors Warranty of America, LLC. (Attachments: # 1 Exhibit A, # 2 Exhibit B) (Davis, Rebecca) (Entered: 09/26/2023) |
| 09/28/2023 | 370 | REPLY to Response to Motion re 349 MOTION to Amend/Correct 209 Answer to Amended Complaint filed by Rock Springs Drive, LLC.(Kropf, Sara) (Entered: 09/28/2023) |
| 09/28/2023 | 371 | -SEALED-REPLY to Response to Motion re 348 MOTION to Compel *Deposition of Non-Party Anne Camalier* filed by Rock Springs Drive, LLC.(Kropf, Sara) (Entered: 09/28/2023) |

A28

| | | |
|---|---|---|
| 09/28/2023 | 372 | MOTION to Seal *(1) Rock Spring Drive LLC's reply in support of its motion to compel the deposition of non-party Anne D. Camalier (Dkt. 371) and (2) Rock Springs Drive LLC's opposition to Plaintiffs motion to quash the deposition subpoena served on non-party Anne D. Camalier* by Rock Springs Drive, LLC (Attachments: # 1 Text of Proposed Order Proposed order)(Kropf, Sara) (Entered: 09/28/2023) |
| 10/11/2023 | 373 | PAPERLESS ORDER SCHEDULING a telephonic discovery dispute hearing related to ECF Nos. 321 , 329 - 333 for October 19, 2023 at 12:00 p.m. Conference call-in information provided. Signed by Magistrate Judge Gina L Simms on 10/11/2023. (dps, Chambers) (Entered: 10/11/2023) |
| 10/17/2023 | 374 | ORDER granting 372 Defendant Rock Springs Drive, LLC's Motion to File Under Seal its Reply. Signed by Judge Peter J. Messitte on 10/17/2023. (ols, Deputy Clerk) (Entered: 10/17/2023) |
| 10/19/2023 | 375 | Telephonic Discovery Dispute Hearing held on 10/19/2023 before Magistrate Judge Gina L Simms. (Court Reporter: FTR Recording\2B\Solomon) (ds2s, Deputy Clerk) (Entered: 10/19/2023) |
| 10/24/2023 | 376 | ORDER granting in part and denying in part 321 329 330 331 IWA's and the Transamerica Entities' motions to quash; granting in part and denying in part 332 333 Plaintiff's Motion to Compel/opposition to the motion to quash; denying 334 Transamerica Entities' Motion for Extension of Time to Respond to Plaintiff's Motion to Compel. Signed by Magistrate Judge Gina L Simms on 10/24/2023. (ols, Deputy Clerk) (Entered: 10/25/2023) |
| 10/26/2023 | 377 | Substantive legal issues - addressing (Ain, Alexa) (Entered: 10/26/2023) |
| 11/02/2023 | 378 | RESPONSE re 377 Substantive legal issues - addressing *questions raised at discovery motions hearing* filed by Rock Spring Plaza II, LLC.(Bosch, William) (Entered: 11/02/2023) |
| 11/02/2023 | 379 | RESPONSE re 376 Order on Motion to Quash,, Order on Motion to Compel,, Order on Motion for Extension of Time, filed by Investors Warranty of America, LLC. (Attachments: # 1 Exhibit A)(Davis, Rebecca) (Entered: 11/02/2023) |
| 11/02/2023 | 380 | MEMORANDUM OPINION. Signed by Judge Peter J. Messitte on 11/2/2023. (ols, Deputy Clerk) (Entered: 11/03/2023) |
| 11/02/2023 | 381 | ORDER denying 343 RSD's Motion for Leave to Take Deposition of William Bosch ; denying 347 Defendants' Joint Motion to Compel Deposition Testimony of Charles Camalier; denying 348 RSD's Motion to Compel Non-Party Anne Camalier's Deposition; denying 349 RSD's Motion for Leave to File Amended Affirmative Defenses to Plaza's Second Amended Complaint; denying 354 Plaza's Motion to Compel RSD to produce its 2022 and 2023 Financial Statements; denying 355 Plaza's Motion to Compel IWA to produce Documents Regarding its Consolidation Analysis; denying as moot 361 RSD's Motion for Leave to File a Sur-Reply to ECF No. 354-3; granting 362 Plaza's Motion to Quash Deposition of Anne D. Camalier; denying as moot 365 IWA's Motion for Leave to File Sur-Reply to ECF No. 355-3. Signed by Judge Peter J. Messitte on 11/2/2023. (ols, Deputy Clerk) (Entered: 11/03/2023) |
| 11/14/2023 | 382 | ORDER re: Outstanding Discovery Requests. Signed by Magistrate Judge Gina L Simms on 11/14/2023. (ols, Deputy Clerk) (Entered: 11/15/2023) |
| 11/21/2023 | 383 | MOTION *for Scheduling Order* by Rock Spring Plaza II, LLC (Attachments: # 1 Text of Proposed Order)(Danial, Katherine) (Entered: 11/21/2023) |
| 11/29/2023 | 384 | RESPONSE in Opposition re 383 MOTION *for Scheduling Order* filed by Rock Springs Drive, LLC. (Attachments: # 1 Exhibit A, # 2 Text of Proposed Order)(Kropf, Sara) (Entered: 11/29/2023) |
| 12/05/2023 | 385 | MEMORANDUM ORDER denying 383 Plaintiff's Motion for Scheduling Order. Signed by Judge Peter J. Messitte on 12/4/2023. (ols, Deputy Clerk) (Entered: 12/05/2023) |

| PACER Service Center | | |
|---|---|---|
| **Transaction Receipt** | | |
| 01/01/2024 09:29:24 | | |
| **PACER Login:** | Cprichmond16 | **Client Code:** | |
| **Description:** | Docket Report | **Search Criteria:** | 8:20-cv-01502-PJM |
| **Billable Pages:** | 30 | **Cost:** | 3.00 |

A29

## IN THE UNITED STATES DISTRICT COURT
### FOR THE DISTRICT OF MARYLAND

ROCK SPRING PLAZA II, LLC

        Plaintiff,

    v.

INVESTORS WARRANTY OF AMERICA,
LLC, et al.,

        Defendants.

Civil Action No. 8:20-cv-01502-PJM

### PLAINTIFF ROCK SPRING PLAZA II, LLC'S NOTICE OF FILING ITS MOTION TO COMPEL

Defendant Investors Warranty of America, LLC ("IWA") filed its Response in Opposition to Plaintiff Rock Spring Plaza II's ("Plaintiff") Motion to Compel and Request for *In Camera* Review ("Opposition") prior to Plaintiff's Motion to Compel Against IWA and Request for *In Camera* Review ("Motion") was fully briefed, without including Plaintiff's Motion, and without conferring with counsel required under Local Rule 104.7 and 104.8(b). It is evident that any further efforts to compromise on the issues raised in the Motion would be futile, and that such issues are now ripe for submission to the Court. In light of this, pursuant to such Local Rules, Plaintiff certifies that the parties are unable to resolve their dispute and Plaintiff hereby gives notice, pursuant to Local Rule 104.8, of the filing of the following documents:

- Plaintiff's Motion to Compel Against IWA and Request for *In Camera* Review (attached hereto as Exhibit A)
- IWA's Response in Opposition to Plaintiff's Motion to Compel and Request for *In Camera* Review (attached hereto as Exhibit B)
- Plaintiff's Reply in Support of Motion to Compel Against IWA and Request for *In Camera* Review (attached hereto as Exhibit C)
- Plaintiff's Proposed Order (attached hereto as Exhibit D)

A30

Dated:  January 25, 2023

Respectfully submitted,

*/s/ William M. Bosch* _____
William M. Bosch
Alvin Dunn
Katherine Danial
Pillsbury Winthrop Shaw Pittman LLP
1200 Seventeenth Street NW
Washington, DC 20036
Telephone: 202-663-8000
Facsimile: 202-663-8007
william.bosch@pillsburylaw.com
alvin.dunn@pillsburylaw.com
katherine.danial@pillsburylaw.com

*Attorneys for Plaintiff Rock Spring Plaza II,
LLC*

2

A31

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on this 25th day of January, 2023, I caused a copy of the foregoing Plaintiff Rock Spring Plaza II, LLC's Reply in Support of Its Motion to Compel Against Defendant Investors Warranty of America, LLC and Request for *In Camera* Review to be served via email on all counsel of record.

Respectfully submitted,

*/s/ Katherine T. Danial*

A32

# EXHIBIT A

**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND**

ROCK SPRING PLAZA II, LLC

        Plaintiff,

    v.

INVESTORS WARRANTY OF AMERICA,
LLC, et al.,

        Defendants.

Civil Action No. 20-cv-01502-PJM

**PLAINTIFF ROCK SPRING PLAZA II, LLC'S MOTION TO COMPEL AGAINST
DEFENDANT INVESTORS WARRANTY OF AMERICA, LLC
AND REQUEST FOR *IN CAMERA* REVIEW**

Plaintiff Rock Spring Plaza II, LLC ("Plaintiff"), pursuant to Local Rule 104.8, files this

Motion to Compel against Investors Warranty of America, LLC ("IWA") and Request for *In

Camera* Review.

**I.     INTRODUCTION AND SUMMARY OF ARGUMENT**

This motion concerns documents IWA is improperly withholding based on its assertion

that they are protected from discovery by the attorney-client privilege.  IWA's position is

improper in three ways.

1.   Crime-fraud exception.  At its heart, this case concerns IWA's fraudulent scheme to

avoid its long-term obligations under the Ground Lease by forming a new sham entity and

purporting to transfer to that sham entity the Ground Lease, including all of IWA's obligations to

Plaintiff under the Ground Lease.  Because, on information and belief, IWA used attorneys in

order to engage in the fraud, IWA should not be permitted to hide behind the attorney-client

privilege to withhold from Plaintiff documents that will lay bare IWA's fraudulent scheme.

1

4861-3044-5373.v24

A34

2. <u>Common interest doctrine</u>.  IWA waived the protections of the attorney-client privilege when it shared privileged communications with Defendant Rock Springs Drive LLC ("RSD") and/or Defendant Transamerica Corporation ("Transamerica") because IWA has not formally asserted the common interest privilege and has not presented evidence of a common interest agreement.

3. <u>Forward date cut-off</u>.  IWA's communications in furtherance of its fraudulent scheme *after* Plaintiff filed its complaint are highly relevant, and IWA should not be permitted to arbitrarily cut off its privilege log and productions as of the date Plaintiff filed the Complaint.

## II.    FACTUAL BACKGROUND

On September 21, 2022, IWA provided a 195-page privilege log for 1302 documents withheld on the grounds of privilege (the "Original Log").  After reviewing the Original Log, Plaintiff requested that IWA remediate a long list of deficiencies that prevented Plaintiff from assessing the applicability of the asserted privilege.  Exhibit A, Letter from K. Danial to R. Davis, Sept. 27, 2022.  In response, although IWA refused to produce documents dated after this case was initiated, IWA agreed to send an updated privilege log and did so on October 11, 2022 (the "First Amended Log").  Exhibit B, Letter from R. Davis to K. Danial, Oct. 7, 2022.

Numerous deficiencies remained in the First Amended Log, now 218 pages with 1244 entries, so Plaintiff again reached out to IWA and renewed its requests, including that IWA log responsive post-litigation documents.  Exhibit C, Letter from K. Danial to R. Davis, Nov. 3, 2022.  IWA again refused to provide documents created after the lawsuit was filed, claiming that pre-litigation letters exchanged between Plaintiff and IWA from 2017 until 2020 satisfy its obligation, and maintained this position during a meet and confer between the parties on the same day the letter was sent.  Exhibit D, Letter from R. Davis to K. Danial, Nov. 16, 2022.

IWA provided a second amended privilege log on November 18, 2022 (the "Second Amended Log").  The Second Amended Log is 161 pages long and contains 1192 entries, and while it represents an improvement from the Original Log, it remains deficient.  For a third time, Plaintiff outlined the remaining deficiencies and renewed its request for communications dated through IWA's discovery collection date.  Exhibit E, Email from K. Danial to R. Davis, Nov. 23, 2022; Exhibit F, Letter from K. Danial to R. Davis, Nov. 28, 2022.  IWA in response asserted that all the entries challenged by Plaintiff are proper (despite Plaintiff highlighting, for example, attachments that IWA has already produced and that Plaintiff *itself* composed) (Exhibit G, Letter from R. Davis to K. Danial, Dec. 2, 2022), and during the parties' meet and confer maintained that it is not required to produce any additional documents or to update the Second Updated Log.

## III.    ARGUMENT

As to a select group of documents (identified in Exhibit M), the Court should conduct an *in camera* review because there is a factual basis to support a good faith belief by a reasonable person that *in camera* review may demonstrate that the crime-fraud exception apples.  In addition, IWA should be ordered to produce documents that are not privileged because they are not protected by the common interest doctrine.  Finally, IWA should be ordered to supplement its privilege log and productions because IWA has not logged documents dated after September 2020 and has not produced documents dated after January 2021.

### A.    *In Camera* Review of Certain Documents Will Reveal That IWA's Alleged Privileged Communications Fall Within the Crime-Fraud Exception

The Supreme Court has long recognized that the attorney-client privilege does not apply where a client consults an attorney for advice in furtherance of a crime or fraud.  Known as the "crime-fraud exception," the attorney-client privilege "ceas[es] to operate at a certain point, namely, where the desired advice refers *not to prior wrongdoing,* but to *future wrongdoing.*"

3

*United States v. Zolin*, 491 U.S. 554, 562-63 (1989) (quoting 8 Wigmore, § 2298, p. 573) (emphasis in original). The crime-fraud exception also applies to documents withheld on work product grounds. *See, e.g., United States v. Under Seal (In re Grand Jury Proceedings),* 102 F.3d 748, 751 (4th Cir. 1996).

The crime-fraud exception was recognized under Maryland law in *Newman v. State,* where the court aligned it with the Restatement (Third) of the Law Governing Lawyers and held that the attorney-client privilege does not apply to a communication occurring when a client:

> (a) Consults a lawyer for the purpose, later accomplished, of obtaining assistance to engage in a crime or fraud or aiding a third person to do so, or

> (b) Regardless of a client's purpose at the time of consultation, uses the lawyer's advice or other services to engage in or assist a crime or fraud.

384 Md. 285, 309 (2004) (quoting Restatement (Third) of the Law Governing Lawyers § 82 (Am. Law Inst. 2000, 2004 cum. supp.)).

While not all fraudulent conveyances under the Maryland Uniform Fraudulent Conveyance Act trigger the crime-fraud exception, an alleged fraudulent conveyance under the statute *can* pierce the attorney-client privilege if the allegations "present sufficient evidence of deception, dishonesty, misrepresentation, falsification, or forgery." *United Bank v. Buckingham*, 301 F. Supp. 3d 547, 554 (D. Md. 2018) (internal quotations omitted). The requisite "actual fraud" must not just be intentional or implied by statute, it must include "wrongful intent." *Id.* at 553. The prima facie showing of actual fraud need not "conclusively prove the elements of the purported crime or fraud…but the movant must show that the client possessed the requisite intent" or that "communications were either made for an unlawful purpose or that communications reflect ongoing future unlawful activity." *Id. at* 555 (quoting *In re Andrews*, 186 B.R. 219, 222 (E.D. Va. Bankr. 1995). Here, Plaintiff meets the required showing.

4

1.    **The Court Has Discretion to Conduct an *In Camera* Review to Determine If the Crime-Fraud Exception Applies**

The Court should exercise its discretion to conduct *in camera* review "to determine whether allegedly privileged attorney-client communications fall within the crime-fraud exception." *United States v. Zolin*, 491 U.S. 554, 574 (1989).  To determine whether *in camera* review is warranted, the Supreme Court adopted a threshold evidentiary standard less "than is required ultimately to overcome the privilege."  *Id. at* 572.  The threshold "need not be a stringent one," and the party seeking *in camera* review must simply demonstrate "a factual basis adequate to support a good faith belief by a reasonable person…that *in camera* review of the materials may reveal evidence to establish the claim that the crime-fraud exception apples."  *Id; see also Koch v. Specialized Care Servs., Inc.*, 437 F. Supp. 2d 362, 378 (D. Md. 2005) ("In order for the crime-fraud exception to apply, it is not necessary, of course, for the Court to find that the 'injurious falsehood or fraud' indeed occurred.  The Court does not reach the ultimate issue at this juncture.").

2.    **There is a Strong Evidentiary Basis for the Court to Exercise Its Discretion to Conduct *In Camera* Review**

Although no depositions have been conducted to date, IWA's documents alone provide ample evidence that IWA used its attorneys to help it devise a deceptive and dishonest scheme to assign the Ground Lease to an entity that it seeks to hold out as a bona fide assignee, but that, in reality, is nothing of the sort.  As of July 2016, more than one year prior to the purported assignment to RSD, IWA determined that the Ground Lease was "worthless" and expressed the desire for an "exit strategy to this to get it off the books."  Exhibit H, Email from N. Hutchinson to D. Wirtjes, J. Gilmore, and M. Pithan, July 7, 2016.  To that end, IWA "engaged outside counsel to explore an exit which would stop the monthly losses **and any future liability."**  *Id.* (emphasis added); *see also* Exhibit I, Email from N. Koluch to D. Feltman and T. Schefter, Jan.

5

3-4, 2017. That outside counsel was James Swoka at Seyfarth Shaw LLP, the same firm

representing IWA in this lawsuit. Exhibit J, Email from J. Guso to D. Feltman, R. Barron, and T.

Taylor, Feb. 9, 2017.

Initially, IWA attempted to sell the Ground Lease to an unrelated independent, bona fide

purchaser to implement its exit strategy. Had it done so, Plaintiff never would not have been

forced to bring this lawsuit. But IWA soon learned that a potential bona fide purchaser of its

"worthless" investment not only would decline to pay consideration to IWA for its interest, but

actually would require IWA to pay **the purchaser** tens of millions of dollars to acquire the

Ground Lease interest from IWA– with its certain long-term obligations and no realistic near-

term prospect of generating revenues. Ex. I. Importantly, IWA already was aware of the "need

to be mindful of defending against the fraudulent transfer claim during negotiations [with a

potential buyer]." *Id*.

Unable to sell the Ground Lease to an unrelated third party in a bona fide arms-length

transaction, IWA, using its attorneys, devised its illegitimate, fraudulent exit strategy. IWA

created RSD as a special-purpose entity that is owned 98% by IWA and 2% by another newly

formed special-purpose entity, Longshore Ventures LLC ("Longshore"), and six days later

purportedly assigned the Ground Lease to RSD. Exhibit K, RSD Registration Information; *see

also* Exhibit L, RSD Operating Agreement. Confirming the sham nature of the gratuitous

"assignment," Longshore contributed no capital for its 2% interest and had no obligation to make

any capital contributions to RSD. Ex. L. Further, IWA reserved in RSD's Operating Agreement

the option to regain full control over the Ground Lease interest at any time by re-acquiring

Longshore's 2% interest for nominal consideration (i.e., $1,000). *Id.*

4861-3044-5373.v24

IWA has asserted – after the fact – that this suspicious arrangement is about IWA "trying to protect its collateral" (Hr'g Tr., 25, Jan. 13, 2022) and that RSD was formed "for the purposes of either selling or leasing the Property, or finding another long-term, but profitable, solution for the Leasehold Estate." IWA Resp. Opp'n Pl.'s Mot. Partial Summ. J., ECF No. 132 at 6. This rationalization does not comport with the reality that, prior to the sham assignment, IWA *already held the Ground Lease asset; already had attempted to sell it to a bona fide purchaser but had failed; and determined that it needed another "exit strategy to this to get it off the books."* Even if Longshore is "the best of the best" (in IWA's words), IWA more easily could have *itself* directly hired Longshore to attempt to turn around the property. It had no need to devote time and resources to attorneys and business specialists to create a new entity.

While forming a new special-purpose entity to make a *new* acquisition of a distressed property does not smell of fraud, that is not what happened here. In this case, IWA already held a distressed property that it concluded was going to require millions of dollars in ongoing ground rent payments with no near-term possibility of producing positive cash flow. IWA formed a new joint venture solely to get the Ground Lease "off the books," which was not legitimate.

While there were 69 years remaining on the Ground Lease at the time of the purported assignment, IWA only committed to make capital contributions of up to $3.9 million. Ex. L. This would only cover rent and operating expenses until August 31, 2020, not coincidentally lining up with when the statute of limitations for Plaintiff to file a fraudulent conveyance claim would expire. The inference is clear and compelling: If Plaintiff had not timely filed its complaint, RSD would have stopped paying rent, leaving Plaintiff to chase a sham entity that has no assets and that IWA never intended to support.

4861-3044-5373.v24

The undisputed facts are that IWA was contractually obligated to satisfy those long-term financial obligations before the assignment but intended to "exit" that obligation by creating a new entity that it controlled and that has no financial resources other than from IWA, and then concealed IWA's membership in and control over RSD.  *See* Defs.' Joint Resp. Pl.'s Resp. Mem. Order Dated Sept. 22, 2022, ECF No. 158; Tel. Conf. Tr., 6-9, Oct. 13, 2022.  As Defendants have confirmed on the record, RSD still has no independent ability to fulfil tenant's obligations under the Ground Lease, as capital contributions by IWA have been and continue to be optional.  Tel. Conf. Tr., 6-9, Oct. 13, 2022.  Defendants concealed all this information from Plaintiff until forced to turn it over through discovery, and "a failure to disclose…comfortably fits within the definition of misrepresentation, dishonesty, and deception."  *United Bank* 301 F. Supp. 3d at 557 (internal citation and quotations omitted).

In light of the evidence of deception, dishonesty, and misrepresentation already gathered through discovery, a reasonable person would conclude that *in camera* review of documents may demonstrate that the crime-fraud exception applies.  Given the specific fraud alleged here involving the assignment to a sham entity and Defendants' concerted efforts to conceal IWA's involvement (and intention to "exit" its "worthless" investment in the Ground Lease), Plaintiff has identified a subset of documents that IWA is withholding on privilege grounds that are tied temporally and by subject matter (based on the limited information provided on IWA's log) to the formulation of IWA's "exit strategy":  the decision to form RSD and to assign the Ground Lease to RSD; the decision not to record the deed reflecting that assignment (because the recordation would have required IWA to disclose its ownership interest) (Exhibit O, Email from P. Rubin to G. Van Gorp, T. Taylor, and B. Johnson, July 17, 2019); communications about Defendants' decision not to pursue a sublease with the GSA (because any bid would have

8

required IWA to disclose its ownership interest) (Exhibit P, Mem. from P. Rubin to T. Taylor, May 10, 2019); communications surrounding Defendants' non-response to Plaintiff's pre-Complaint requests for information about RSD; and communications surrounding Defendants' coordinated response once Plaintiff exposed the fraudulent conveyance by filing the initial Complaint.

After conducting an *in camera* review of this limited set of documents, Plaintiff anticipates that the Court will apply the crime-fraud exception and require IWA to produce to Plaintiff the fraud-related documents listed in Exhibit M.

> **B.    IWA Should Produce All Logged Communications with RSD and/or Transamerica Because the Defendants Do Not Share a Joint Defense or Common Interest Privilege**

The Court should order IWA to produce communications with RSD and/or Transamerica that it logged as privileged.  The Second Amended Log includes 148 communications that include RSD and/or Transamerica personnel (and/or counsel) listed in Exhibit N.  If any privilege applied to such documents, the privilege was waived when IWA shared the communications with RSD and/or Transamerica.  *See Hawkins v. Stables*, 148 F.3d 379, 384 (4th Cir. 1998) (noting "waiver occurs when the party claiming the privilege has made any disclosure of a confidential communication to any individual who is not embraced by the privilege").

IWA has not formally asserted the common interest privilege, let alone presented evidence of an agreement or "common legal enterprise" with RSD and/or Transamerica.[1]  In

---

[1] The proponent of the common interest privilege has the burden of establishing it by evidencing an agreement or meeting of the minds between the parties who share the common interest. *Hempel v. Cydan Dev., Inc.*, No. PX-18-3404, 2020 WL 4933634, at *7-8 (D. Md. Aug. 24, 2020) (The common interest privilege applies "when two or more parties consult or retain an attorney concerning a legal matter in which they share a common interest.") (internal citation and quotations omitted).  While the agreement does not need to be in writing or in a particular

4861-3044-5373.v24

A42

addition to the existence of an agreement, a party seeking protection under the common interest privilege "must establish that *when* communications were shared among individuals with common legal interests, the act of sharing was part of an ongoing common legal enterprise." *Neuberger Berman Real Est. Income Fund, Inc. v. Lola Brown Trust No. 1B*, 230 F.R.D. 398, 416 (D. Md. 2005) ("In determining the applicability of the privilege, the focus is not on when [the] documents were generated, but on the circumstances surrounding the disclosure of [the] privileged documents to a jointly interested third party.") (internal quotations omitted).  It is insufficient that IWA, RSD, and Transamerica are affiliated entities and co-Defendants and that IWA attempted to assign the Ground Lease to RSD.  *See id.* at 416 (explaining "unless there is 'common ownership or control,' courts engage in a painstaking analysis to determine whether 'the third party... shares an identical, and not merely similar, legal interest as the client with respect to the subject matter of the communication between the client and its attorney.'") (quoting *Roberts v. Carrier Corp.*, 107 F.R.D. 678, 678-88 (N.D. Ind. 1985)).

Further, IWA, RSD, and Transamerica's interests are not completely in alignment.  For example, RSD loses nothing if IWA remains financially obligated to Plaintiff, but IWA's exit strategy fails.  Indeed, IWA has put as much distance between itself and RSD as possible, arguing that RSD is "a separate legal entity from IWA" and "not the alter ego of IWA."  IWA Resp. Opp'n Pl.'s Mot. Partial Summ. J., ECF No. 132 at 28.  IWA cannot have its cake and eat it too: it cannot assert that RSD is a good faith assignee for value, on the one hand, while simultaneously trying to extend the cloak of privilege over inter-company communications (including those in furtherance of the fraud).  Accordingly, by including a third party, IWA must

---

form, "[m]ere indicia of joint strategy as of a particular point in time are insufficient to demonstrate that a common interest agreement has been formed." *Id.*

4861-3044-5373.v24

produce all communications with RSD and/or Transamerica because any privilege has been waived. *See Hawkins*, 148 F.3d at 384.

### C.    IWA Must Produce or Log All Relevant Documents, Including Those Created After the Case Was Filed

The crux of Plaintiff's fraudulent conveyance claim is that IWA formed RSD and concocted a sham assignment of the Ground Lease to RSD to perpetrate a fraud. Therefore, documents pertaining to what IWA did and with whom it communicated ***after*** learning that Plaintiff had accused Defendants of fraud are relevant. Based on the documents produced to date and the responses – and nonresponses – Defendants provided to Plaintiff regarding the assignment, Defendants' communications in furtherance of its deception and ongoing fraud after IWA notified Plaintiff of the assignment and after Plaintiff first accused Defendants of fraud in this lawsuit are as relevant as Defendants' communications in planning and implementing the purported assignment.

It is axiomatic that parties are entitled to "obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case." Fed. R. Civ. P. 26(b); Md. R. Civ. P. 2-402(a). Federal courts recognize that "the plain language of Rule 26(b)(5) extends to all documents withheld from production on a claim of privilege," regardless of whether they were created post-complaint, and "common sense dictates that even post-filing…must be listed on the privilege log" when it is relevant to the issues in dispute.[2]

_____

[2]  *See, e.g., Horton v. United States*, 204 F.R.D. 670, 673 (D. Colo. 2002) (ordering production of post-complaint documents relevant to lawsuit); *Close Armstrong LLC v. Trunkline Gas Co., LLC*, No. 3:18-CV-270-PPS-MGG, 2021 WL 1207592, at *9 (N.D. Ind. Mar. 31, 2021) (ordering production of privilege log "reflecting documents or communications withheld on grounds of privilege or work product protection regardless of if they were created before or after the start of this lawsuit."); *Barker v. Kapsch Trafficcom USA, Inc.*, No. 119CV00987TWPMJD, 2020 WL 3618945, at *2 (S.D. Ind. July 1, 2020) (ordering plaintiff

4861-3044-5373.v24

A44

Even if a relevant document is created after the filing of a complaint, it must still be logged as privileged or produced.  Indeed, "[t]iming is merely one evidentiary factor, and sometimes not the most important one," in determining whether documents should be produced.  *Benson v. Rosenthal*, No. CV 15-782, 2016 WL 1046126, at *10 (E.D. La. Mar. 16, 2016) (ordering production and logging of post-complaint documents).  Moreover, "the mere fact that a document concerning the litigation is created…after the lawsuit is commenced does not mean necessarily that the document is privileged and not subject to discovery."  *Horton*, 204 F.R.D. at 673.  Thus, even if a relevant document is created after the filing of a complaint, it must still be logged with sufficient information to substantiate the claim of privilege, or it must be produced.  Accordingly, the Court should order IWA to log privileged and produce nonprivileged responsive documents post-dating the filing of the Complaint.

## IV.    CONCLUSION

For the foregoing reasons, Plaintiff respectfully requests the Court (1) conduct *in camera* review of selected entries on IWA's Second Amended Log, attached hereto as Exhibit M, where the attorney-client privilege is inapplicable in the light of the crime-fraud exception; (2) order IWA to produce all documents and/or communications on its Second Amended Log between IWA and RSD, as they are not privileged; and (3) order IWA to supplement its Second Amended Log and productions with relevant documents and/or communications post-dating the filing of the Complaint.

---

to produce privilege log as to relevant post-filing documents); *BASF Aktiengesellschaft v. Reilly Indus., Inc.*, 283 F. Supp. 2d 1000, 1007 n. 3 (S.D. Ind. 2003) (ordering production of post-lawsuit log).

4861-3044-5373.v24

A45

Dated:  December 23, 2022　　　　　　Respectfully submitted,

　　　　　　　　　　　　　　　　　　　 */s/ William M. Bosch*　　　　　　
　　　　　　　　　　　　　　　　　　　William M. Bosch
　　　　　　　　　　　　　　　　　　　Alvin Dunn
　　　　　　　　　　　　　　　　　　　Katherine Danial
　　　　　　　　　　　　　　　　　　　Pillsbury Winthrop Shaw Pittman LLP
　　　　　　　　　　　　　　　　　　　1200 Seventeenth Street NW
　　　　　　　　　　　　　　　　　　　Washington, DC 20036
　　　　　　　　　　　　　　　　　　　Telephone:  202-663-8000
　　　　　　　　　　　　　　　　　　　Facsimile:  202-663-8007
　　　　　　　　　　　　　　　　　　　william.bosch@pillsburylaw.com
　　　　　　　　　　　　　　　　　　　alvin.dunn@pillsburylaw.com
　　　　　　　　　　　　　　　　　　　katherine.danial@pillsburylaw.com

　　　　　　　　　　　　　　　　　　　*Attorneys for Plaintiff Rock Springs Plaza II,*
　　　　　　　　　　　　　　　　　　　*LLC*

4861-3044-5373.v24

A46

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on this 23rd day of December, 2022, I caused a copy of the foregoing Rock Spring Plaza II, LLC's Notice of Rule 30(b)(6) Deposition of Investors Warranty of America, LLC to be served via email on all counsel of record.

*/s/ Nicole Steinberg*

14

4861-3044-5373.v24

# EXHIBIT A



Pillsbury Winthrop Shaw Pittman LLP
1200 Seventeenth Street, NW | Washington, DC 20036 | tel 202.663.8000 | fax 202.663.8007

September 27, 2022

***Via Electronic Mail***

Rebecca A. Davis, Esq.
Seyfarth Shaw LLP
1075 Peachtree Street NE, Suite 2500
Atlanta, Georgia 30309

> Re: ***Rock Spring Plaza II, LLC v. Investors Warranty of America, LLC et
> al., No. 8:20-cv-01502-PJM* – IWA Privilege Log Deficiencies**

Dear Ms. Davis:

We write regarding several deficiencies in IWA's privilege log.

First, IWA's privilege log is missing some of the basic information needed to
demonstrate a basis for privilege. While the log includes some of the fields associated
with the allegedly privileged correspondence and documents, the entries do not provide
the email title/subject lines; document date; or the entry document relationship with
other entries (i.e., parent emails, attachments, or standalone documents). Please provide
Plaintiff with a revised privilege log that includes the missing information.

Second, the privilege log only includes documents that have been withheld entirely for
privilege purposes and does not identify any redacted documents. However, there are
several documents in your productions (for example IWA0014361, IWA0020819, and
IWA0021208) that have been redacted and should be included in the privilege log.
Please provide a supplemental privilege log that includes and identifies redacted
documents, with their associated Bates numbers.

Third, the PDF of the privilege log has been ordered by IWA's internal "DOC ID"
column. It is standard practice that privilege logs are ordered chronologically by date,
or, at the very least, provided in a format (i.e., excel) that can be manipulated to sort by
date. Please provide Plaintiff with a version of your privilege log that is, or can be,
sorted by date.

Fourth, IWA has withheld a number of documents on the basis of "Work Product"
where the description contains no reference to litigation or to the anticipation of
litigation. (See, e.g., AEGON-0005046; AEGON-0003313; and AEGON-0004901).

A49

Rebecca A. Davis, Esq.
September 27, 2022
Page 2

These documents should be produced, or IWA should provide a supplemental explanation of the claimed privilege.

Fifth, the parties did not agree to truncate privilege log entries as of the filing of the complaint in this lawsuit. Therefore, Plaintiff requests that IWA's privilege log be supplemented with all claimed privileged correspondence and documents through IWA's document discovery collection date.

This letter is not intended to address every issue or deficiency that Plaintiff may have identified with IWA's privilege log and corresponding productions.  Nor should this letter be construed as a waiver or forfeiture of Plaintiff's rights to seek or obtain additional discoverable information in this action. Plaintiff reserves the right to challenge the sufficiency of IWA's privilege log and productions, whether or not raised in this letter.

We would appreciate your correction of these privilege log deficiencies by October 7, 2022

Sincerely,

Katherine Danial

Katherine Danial

Copied to counsel of record via email.

A50

# EXHIBIT B



**Seyfarth Shaw LLP**

1075 Peachtree Street, N.E.

Suite 2500

Atlanta, GA  30309-3958

**T** (404) 885-1500

**F** (404) 892-7056

rdavis@seyfarth.com

T (404) 888-1874

www.seyfarth.com

October 7, 2022

Katherine Danial, Esq.
Pillsbury Winthrop Shaw Pittman LLP
1200 Seventeenth Street, NW
Washington, D.C.  20036

**Re:**    ***Rock Spring Plaza II, LLC v. Investors Warranty of America, LLC, et al.***

Dear Ms. Danial:

We write in response to your September 27th letter concerning alleged deficiencies in IWA's privilege log.

We dispute your assertion that "IWA's privilege log is missing some of the basic information needed to demonstrate a basis for privilege." As you are aware, the privilege log contains the following categories of information: document ID number, document type, sender, recipients(s), CC recipient(s), BCC recipient(s), document description, the basis for the privilege, and the number of pages in each document. Certainly there is no requirement that IWA provide any more detail than has already been included. Indeed, Maryland Rule 2-402(e)(1) requires only that "[a] party who withholds information on the ground that it is privileged or subject to protection shall describe the nature of the documents, electronically stored information, communications, or things not produced or disclosed in a manner that, without revealing the privileged or protected information, will enable other parties to assess the applicability of the privilege or protection." Similarly, Fed. R. Civ. P. Rule 26(b)(5) requires only that a party making a claim for privilege "describe the nature of the documents, communications, or things not produced or disclosed in a manner that, without revealing information itself privileged or protected, will enable other parties to assess the applicability of the privilege or protection." Moreover, Guideline 10(d)(ii)(b) of the Discovery Guidelines of the United States District Court for the District of Maryland provides that the withholding party need only provide the type of document, date of document, the "general subject matter of the document," and, where appropriate, the author(s), sender(s) and/or recipient(s) of the document. *See* U.S. District Court of Maryland Local Rules (July 1, 2021), Appendix A. IWA has thus fulfilled its obligation under the rules of Maryland, the Federal Rules of Civil Procedure and the Discovery Guidelines of this Court. However, as a courtesy, and notwithstanding that we believe that the family groups are adequately identified, we will forward to you an updated version of the privilege log to further clarify that information.  t. Regarding your claim that documents are missing dates, please note that dates have already been provided for all emails listed on the privilege log and dates have been included in the document descriptions where known.

87774667v.1

A52

Katherine Danial, Esq.
October 7, 2022
Page 2

IWA is in the process of preparing a supplemental privilege log of all documents that have been produced to you with redactions based on privilege. This log will contain the same information as the initial privilege log but will also include, per your request, related document ID numbers.  IWA will not be providing a log for information redacted because it is nonresponsive.

With regard to documents withheld or redacted on the basis of the work product doctrine, IWA asserts that these documents were all prepared, compiled or reviewed in anticipation of litigation and are appropriately privileged. As such, IWA has no present intention of producing appropriately designed work-product documents. Nevertheless, if you have specific questions regarding particular documents, we will discuss any specific concerns with you.  Finally, as to documents created or received after the date of the filing of this action, we believe relevant authority weighs against your request that we include documents dated after June 5, 2020. *Glynn v. EDO Corp.*, 2010 WL 3294347, at *7 (D. Md. Aug. 20, 2010) ("The general practice in this Court is, as [plaintiffs] assert, to not require logging post-litigation documents over which the attorney-client privilege or work product doctrine has been asserted."); *see also UnitedHealthcare of Fla. v. Am. Renal Assocs. LLC*, 2017 U.S. Dist. LEXIS 201866 (S.D. Fla. Dec. 7, 2017); *Harleysville Worchester Insurance Company v. Sharma*, 2015 U.S. Dist. LEXIS 67633 (E.D.N.Y. May 26, 2015); *Charvat v. Valente*, 2015 U.S. Dist. LEXIS 25694 (N.D. Ill. March 3, 2015); *Morley v. Square, Inc.*, 2015 U.S. Dist. LEXIS 155569 (E.D. Mo. Nov. 18, 2016).

We will provide the updated privilege log of withheld documents and the supplemental privilege log of redacted documents as soon as they have been completed. We expect to have them to you on or before October 12, 2022.

Kindly let me know if you have any questions or would like to discuss any of these issues further.

Very truly yours,

SEYFARTH SHAW LLP

/s/ *Rebecca A. Davis*

Rebecca A. Davis, Esq.

A53

# EXHIBIT C



Pillsbury Winthrop Shaw Pittman LLP
1200 Seventeenth Street, NW  |  Washington, DC 20036  |  tel 202.663.8000  |  fax 202.663.8007

November 3, 2022

***Via Electronic Mail***

Rebecca A. Davis, Esq.
Seyfarth Shaw LLP
1075 Peachtree Street NE, Suite 2500
Atlanta, Georgia 30309

      Re:    ***Rock Spring Plaza II, LLC v. Investors Warranty of America, LLC et al., No. 8:20-cv-01502-PJM* – IWA's Continuing Privilege Log Deficiencies**

Dear Ms. Davis:

We write in response to your October 7, 2022 letter, and the "updated version" of Investors Warranty of America, LLC's ("IWA") privilege log sent on October 11, 2022, which continues to contain numerous deficiencies.

Your assertion that IWA is not required to provide additional information is refuted by the very rules you cite to support it: both Maryland Rule 2-402(e)(1) and Fed. R. Civ. P. Rule 26(b)(5) require you to describe withheld documents **in a manner that will enable Plaintiff "to assess the applicability of the privilege."** IWA's latest privilege log also fails to meet this obligation.

As initially raised in our September 27, 2022 letter, the structure of IWA's privilege log hinders Plaintiff's ability to assess IWA's asserted privilege. Despite your agreement to further clarify family groups, the entry document's relationship with other entries (i.e., parent emails, attachments, or standalone documents) remains missing. Also missing are document dates <u>for almost 200 entries.</u> If such entries are email attachments, which is unclear, they should include the date of the parent email so the log can be accurately sorted, in accordance with your obligation to include document dates that are "reasonably available" under Guideline 10(d)(ii)(b) of the Discovery Guidelines of the United States District Court for the District of Maryland. This coupled with IWA's choice to order entries by its own internal "DOC ID" column – which is meaningless to Plaintiff – and to provide the privilege log in a format that cannot be manipulated means Plaintiff is unable to review the privilege log chronologically. Please provide Plaintiff with a version of your privilege log that is, or can be, sorted by date.

A55

Rebecca A. Davis, Esq.
November 3, 2022
Page 2

The substance of IWA's privilege log also falls short of providing information "sufficient to identify the document," as required by Guideline 10(d)(ii)(b). In addition to omitting the title/subject line of emails, numerous document descriptions include undefined abbreviations, for example, referencing "Rock Springs" without clarifying what Rock Springs entity and/or property is being referenced. IWA cannot, in good faith, argue that "draft of transactional document" (SS-AEGON- ECA- 1433929), "compiled documents for legal review" (SS-AEGON- ECA- 1447213), "assignment document," (SS-AEGON- ECA- 1457108), or simply "invoice" (SS-AEGON- ECA- 1459109) are descriptions that meet its discovery obligations under Maryland and Federal rules of practice. Please provide a description of each document that includes adequate information for Plaintiff to determine a basis for privilege.

Plaintiff also maintains its request regarding IWA's post-litigation documents. While the "general practice" may be to not log post-litigation documents, here with a claim that a company was formed for the purpose of perpetrating a fraud, documents pertaining to what IWA did and who it communicated with after it learned the fraud was uncovered are highly relevant. Please supplement IWA's privilege log with all claimed privileged correspondence and documents through IWA's document discovery collection date.

Most alarming is that the minimal, inadequate information that IWA has provided is sufficient to cast serious doubt on IWA's assertions of privilege. IWA claims attorney-client privilege for <u>over 80 entries</u> without an attorney referenced or included as an email recipient. An additional <u>over 50 entries</u> claim attorney-client privilege evidently on the basis that an attorney was copied on the email's "cc" or "bcc" column. IWA also claims work product protection over documents dated more than a decade before the suit at issue (e.g. SS-AEGON- ECA- 1446078, "Analysis of Operating Agreement," dated 12/31/2009). Finally, IWA even asserts privilege over documents that have already been produced to Plaintiff or ***that Plaintiff composed*** (e.g. SS-AEGON- ECA- 0022551, "2/22/18 Letter from W. Bosch to R. Barron re. Amended and Restated Ground Lease Indenture") and fails to include a basis for privilege on others (SS-AEGON- ECA- 1369698).

This letter is not intended to address every issue or deficiency that Plaintiff may have identified with IWA's privilege log and corresponding productions. Nor should this letter be construed as a waiver or forfeiture of Plaintiff's rights to seek or obtain additional discoverable information in this action. Plaintiff reserves the right to challenge the sufficiency of IWA's privilege log and productions, whether or not raised in this letter.

A56

Rebecca A. Davis, Esq.
November 3, 2022
Page 3

If IWA continues to resist remedying such deficiencies, Plaintiff may be forced to burden the court with a request for *in camera* review. In the interest of avoiding further delay, Plaintiff renews its request for IWA to correct the deficiencies in its privilege log by November 11, 2022.

Sincerely,

*Katherine Danial*

Katherine Danial

Copied to counsel of record via email.

A57

# EXHIBIT D



**Seyfarth Shaw LLP**
1075 Peachtree Street, N.E.
Suite 2500
Atlanta, GA  30309-3958
**T** (404) 885-1500
**F** (404) 892-7056

rdavis@seyfarth.com
T (404) 888-1874

www.seyfarth.com

November 16, 2022

<u>Via Email</u>

Katherine Danial, Esq.
Pillsbury Winthrop Shaw Pittman LLP
1200 Seventeenth Street, NW
Washington, D.C.  20036

Re:     <u>***Rock Spring Plaza II, LLC v. Investors Warranty of America, LLC, et al., In
the United States District Court for the District Court of Maryland, Civil
Action No. 8:20-cv-01502-PJM***</u>

Dear Ms. Danial:

        I write in response to your letters dated November 2, 2022, and November 3, 2022,
regarding Investors Warranty of America, LLC's ("IWA") obligations under Fed. R. Civ. P. Rule
26(e) and IWA's privilege log.  I further identify herein significant deficiencies in the privilege log
submitted by Plaintiff Rock Spring Plaza II, LLC (""Plaintiff").

        First, I am confirming that IWA has again reviewed Plaintiff's First Set of Requests for
Production, and IWA's responses to same, including its responses to Document Requests Nos.
10-21. IWA believes that it has met its obligations pursuant to Fed. R. Civ. P. Rules 26(e) and
that there is no "additional or corrective information [that] has not otherwise been made known"
to IWA.   Moreover, IWA believes that this information was previously addressed through
Defendants' Joint Response to Plaintiff's Response to Memorandum Order Dated September 22,
2022 (Dkt. 158).

        Also, relevant to the Document Requests you identified, IWA is not the tenant under the
Ground Lease, and therefore any requests for the specific supplemental information you may be
seeking are better directed to Rock Springs Drive LLC ("RSD").   Further to that point, IWA
understands that RSD has recently produced documents potentially relevant the categories of
documents you listed in your November 2, 2022, letter (which categories are not necessarily
consistent with Document Requests Nos. 10-21).  To the extent that IWA would even have any
responsive documents, it would be duplicative of RSD's information.

89176210v.1

A59



Katherine Danial, Esq.
November 16, 2022
Page 2

Nevertheless, and notwithstanding the forgoing, and as we have invited in the past (see, e.g., IWA's correspondence to Plaintiff dated August, 23, 2022), if Plaintiff feels that any documents were omitted from production, please identify the specific documents and contact me so that I may evaluate those concerns.

Turning next to IWA's privilege log, and its amended privilege log, IWA disagrees that it is required to provide any additional information beyond what it has already provided pursuant to Maryland Rule 2-402(e)(1) and Fed. R. Civ. P. Rule 26(b)(5). Furthermore, IWA disagrees that the subject line of an email is required to be included in a privilege log, and further disagrees that the original privilege log and revised log did not provide information "sufficient to identify the document." However, IWA will accommodate your request to reorganize the document. Accordingly, the privilege log will be reorganized according to the date of the parent email, and the attachments have been specifically identified. This second amended privilege log will be provided no later than tomorrow, November 17, 2022. Also, and for the express purpose of avoiding any further delay and disputes on this issue, IWA has revised certain descriptions and further identified documents in order to address certain concerns raised by Plaintiff.

As to post-litigation documents, Plaintiff acknowledges that including such documents is not "general practice." However, Plaintiff has a special need for these documents because it alleges that RSD was created to perpetrate a fraud, and Plaintiff should be able to determine who IWA "communicated with after it learned the [alleged] fraud was uncovered." First, there is no fraud and RSD was not created to perpetrate a fraud. Second, Plaintiff's statement that it should be able to explore communications that may have occurred after the alleged fraud was uncovered is nonsensical. Plaintiff began sending letters to Rock Springs Drive LLC in 2017, and did not file a lawsuit until 2020. Those pre-litigation letters drafted by Plaintiff, more than two years before the lawsuit was filed, clearly alleged fraud and concerns of a fraudulent conveyance. Documents created and communications sent from 2017, to the date that the lawsuit was filed have already been produced or are included on IWA's privilege log, and thus there is no special reason to ignore the "general rule" regarding post-litigation documents.

As to other concerns raised in your letter of November 3, IWA sees no merit in Plaintiff's contentions that it is improperly withholding any documents, including attachments. However, in an attempt to avoid further delay and dispute as to the privilege log, IWA will be producing a small set of additional documents. The documents to be produced are documents that IWA contends have been properly withheld as privileged, but they are either nearly duplicative of documents that have been produced, or that are quite frankly, not worth spending valuable resources fighting over (e.g., an opinion letter from 2006 that may have been previously distributed in a closing binder). These documents will be produced no later than tomorrow, November 17, 2022. Under no circumstances should the production of these documents be deemed as a waiver with respect to a claim of privilege or work product as to other documents, including as to subject matter.

Regarding Plaintiff's own privilege log, there are a number of deficiencies that must be addressed. First, as noted above, many of Plaintiff's privilege descriptions are insufficient, as they do not "describe the nature of the documents [or] communications . . . in a manner that . . . will enable other parties to assess the applicability of the privilege or protection." See Fed. R. Civ. P. Rule 26(b)(5); see also Guideline 10(d)(ii)(b) of U.S. District Court of Maryland Local Rules (July 1, 2021) at Appendix A (requiring the withholding party need to provide the type of document and the "general subject matter of the document" of the documents). Indeed, many of Plaintiff's purported descriptions contain no description at all. For example, Plaintiff describes attachments

89176210v.1

A60

 **Seyfarth**

Katherine Danial, Esq.
November 16, 2022
Page 3

to emails, regardless of the type and subject matter of the documents, only as "attachment[s] to communication from counsel . . ." In many instances, even the document type is listed as "attachment," rather than PDF, Word, Excel, or other document type. As an example, the description provided by Plaintiff for Item No. 12 merely states "[C]ommunication from counsel providing legal advice regarding contract," even where the document referenced relates to only "FW: Revised Correspondence to Lockheed." The attachment referenced, Item No. 13, is identified only as "4923943_1.DOC" and the description is only "Attachment to communication from counsel providing legal advice regarding contract." There is no indication as to what "contract" is referenced, and there is no way to determine any information whatsoever about the attachment. No purported deficiency that Plaintiff has identified in IWA's privilege log comes even close to the deficiencies that are prevalent in Plaintiff's own privilege log.

Again, as Plaintiff itself has noted, descriptions of withheld and redacted documents are required to provide at least enough detail about the attachment that would enable the other party to have some understanding of what the document is. Accordingly, IWA requests that Plaintiff amend its privilege log to address these deficiencies.

Moreover, Plaintiff has improperly withheld, as attorney-client privileged, several communications between "between client and broker providing legal advice" or "regarding legal advice for contract." See, e.g., Item Nos. 78, 79, 96-98. In some instances it appears that Plaintiff is even attempting to substitute a broker for an attorney with respect to the rendering of legal advice, as indicated by several documents in Plaintiff's privilege log that are communications between the broker and client only (with no attorney included). There are no grounds for Plaintiff's claim of attorney-client privilege with respect to documents that include brokers, and these documents should be removed from the privilege log and produced.

In the interest of avoiding further delay, IWA requests that Plaintiff correct the deficiencies in its privilege log by November 22, 2022. I am happy to discuss any concerns.

Very truly yours,

SEYFARTH SHAW LLP

/s/ *Rebecca A. Davis*

Rebecca A. Davis, Esq.

cc:    William Bosch
      Alvin Dunn

89176210v.1

A61

# EXHIBIT E

| | |
|---|---|
| **From:** | Danial, Katherine T. |
| **To:** | Davis, Rebecca |
| **Cc:** | Bosch, William M.; Dunn, Alvin; Steinberg, Nicole; Baum, Erica N. |
| **Subject:** | Rock Spring Plaza v. Investors Warranty - IWA Privilege Log Deficiencies |
| **Date:** | Wednesday, November 23, 2022 12:33:15 PM |

Hi Rebecca,

Thank you providing IWA's Second Amended Privilege Log (SAPL) last Thursday, November 17. While we acknowledge that the new log represents a significant improvement from the last two, outstanding deficiencies still remain, including:

- Entries claiming attorney-client privilege without an attorney referenced or included as an email recipient (e.g. Doc. Nos. 3, 405, 862);
- Entries claiming attorney-client privilege on the basis that an attorney was copied on the email's "cc" or "bcc" column (e.g. Doc. Nos. 690)
- Entries claiming work product protection prior to Plaintiff receiving notice of the purported assignment (e.g. Doc. No. 91)
- Entries claiming attorney-client privilege over email attachments (including those that are definitively not privileged) solely on the basis of their attachment to a privileged parent email (e.g. Doc. No. 39)
- Entries with descriptions insufficient to determine a basis for privilege (e.g. Doc. No. 447)

Further, Plaintiff continues to maintain its request regarding IWA's post-litigation documents, which are highly relevant in this matter, as further evidenced by an attachment that is listed as Doc. No. 1090 on the SAPL.

We intend to follow-up with a letter early next week providing more substantive detail on the remaining deficiencies. **In the meantime, please advise of your availability for a meet and confer the week of November 28th – December 2nd.**

Sincerely,
Katherine

**Katherine T. Danial** | Senior Associate
Pillsbury Winthrop Shaw Pittman LLP
1200 Seventeenth Street NW | Washington, DC 20036-3006
t +1.202.663.8105 | f +1.202.354.5220
katherine.danial@pillsburylaw.com | website bio

# EXHIBIT F



Pillsbury Winthrop Shaw Pittman LLP
1200 Seventeenth Street, NW  |  Washington, DC 20036  |  tel 202.663.8000  |  fax 202.663.8007

November 28, 2022

*Via Electronic Mail*

Rebecca A. Davis, Esq.
Seyfarth Shaw LLP
1075 Peachtree Street NE, Suite 2500
Atlanta, Georgia 30309

Re:  ***Rock Spring Plaza II, LLC v. Investors Warranty of America, LLC et al., No.
8:20-cv-01502-PJM* – IWA's Continuing Privilege Log Deficiencies**

Dear Rebecca:

We write to respond to your November 16, 2022, letter regarding Investors Warranty of America, LLC's ("IWA") privilege log deficiencies.  We are in receipt of the second updated privilege log you sent on November 17, 2022 ("Second Log") but must note that the Second Log remains deficient for many of the same reasons stated in our prior correspondence.

First, the following 71 families over which IWA claims attorney-client privilege and/or work product protection do not include an attorney as a recipient.

| | | | | | | | |
|----|-----|-----|-----|-----|-----|-----|------|
| 2  | 90  | 189 | 512 | 566 | 749 | 887 | 981  |
| 3  | 137 | 196 | 515 | 573 | 753 | 891 | 1008 |
| 4  | 140 | 207 | 521 | 668 | 782 | 892 | 1009 |
| 10 | 143 | 213 | 551 | 696 | 783 | 893 | 1010 |
| 11 | 164 | 219 | 555 | 710 | 795 | 912 | 1075 |
| 12 | 169 | 305 | 557 | 712 | 802 | 924 | 1122 |
| 18 | 171 | 309 | 559 | 713 | 860 | 956 | 1163 |
| 37 | 176 | 368 | 561 | 742 | 862 | 972 | 1172 |
| 78 | 188 | 405 | 564 | 743 | 873 | 973 |      |

Further, the following 64 families over which IWA claims attorney-client privilege and/or work product protection only include an attorney copied on the email's "cc" or "bcc" column.

A65

Page 2

| 9 | 487 | 501 | 513 | 691 | 874 | 982 | 1095 |
| 34 | 488 | 502 | 514 | 692 | 875 | 988 | 1096 |
| 82 | 489 | 503 | 516 | 693 | 876 | 989 | 1101 |
| 195 | 493 | 504 | 517 | 694 | 877 | 990 | 1103 |
| 385 | 494 | 505 | 552 | 695 | 944 | 992 | 1144 |
| 386 | 498 | 506 | 613 | 711 | 946 | 993 | 1181 |
| 387 | 499 | 507 | 635 | 733 | 975 | 994 | 1183 |
| 389 | 500 | 508 | 690 | 856 | 980 | 1072 | 1185 |

While communications by non-attorneys may still be privileged and/or protected, such privilege and/or protection is narrow and must be used precisely.  *See In re New York Renu with Moistureloc Prod. Liab. Litig.,* No. CA 2:06-MN-77777-DCN, 2008 WL 2338552, at *16 (D.S.C. May 8, 2008) (finding that "simply copying the email to the lawyer does not gain a privilege"). Each part – e.g. reply, forward, etc. – of an email must be analyzed for privilege individually. *N.L.R.B. v. Interbake Foods, LLC*, 637 F.3d 492, 503 (4th Cir. 2011) (stating, "[g]enerally, each e-mail within a particular line of discussion must be analyzed separately for privilege purposes"). **Please produce any non-privileged and/or non-protected portions of the above communications.**

Third, although we appreciate that the Second Log now identifies entries that are attachments, the act of attaching a document to a privileged email does not automatically classify the attachment as privileged. *See Khoshmukhamedov v. Potomac Elec. Power Co.*, No. AW–11–449, 2012 WL 1357705 at *6 (D. Md. Apr. 17, 2012) (stating that "Plaintiffs are required to redact portions of the e-mail that are privileged, log those redacted portions, and produce any non-privileged portions and attachments"); *In re Marriott Int'l, Inc.*, No. 19-MD-2879, 2021 WL 2222715, at *3 (D. Md. June 2, 2021*)* (noting that "[a] client cannot shield a document from discovery by including it in a request for legal advice.") (citation omitted).  **Please produce any non-privileged and/or non-protected attachments and/or portions of attachments.**

Fourth, IWA claims work product protection over the following 81 entries dated prior to Plaintiff receiving notice of the assignment at issue in this litigation or responding to the notice.  It is unclear how or why IWA would have anticipated litigation prior to Plaintiff's response were this a run of the mill notice of assignment. **Please produce the below documents or provide additional information on why IWA anticipated litigation prior to the purported assignment at issue in this case.**

| 9 | 91 | 172 | 208 | 257 | 310 | 396 | 490 | 554 |
| 19 | 99 | 180 | 211 | 258 | 311 | 398 | 492 | 564 |
| 20 | 146 | 181 | 214 | 259 | 312 | 399 | 495 | 566 |
| 43 | 147 | 184 | 220 | 260 | 361 | 400 | 496 | 571 |
| 60 | 149 | 185 | 222 | 291 | 388 | 402 | 497 | 572 |
| 61 | 151 | 196 | 229 | 292 | 391 | 403 | 509 | 574 |
| 62 | 152 | 197 | 244 | 293 | 392 | 404 | 510 | 575 |
| 63 | 154 | 198 | 251 | 306 | 394 | 427 | 511 | 613 |
| 64 | 165 | 202 | 256 | 308 | 395 | 462 | 552 | 619 |

Page 3

Fifth, while we acknowledge that the descriptions in the Second Log are a marked improvement, many still fall short of providing information "sufficient to identify the document," as required by Guideline 10(d)(ii)(b). For example, Document No. 642 is described only as "Organizational documents," Document No. 447 as "Assignment," and Document No. 610 as "Notice." These single-word descriptions contain far less information than descriptions IWA has identified as deficient in Plaintiff's privilege log. To use IWA's words "there is no way to determine any information whatsoever about the attachment." Further, when entries are described as a "draft," "redline," or "with comments," it is unclear whether such descriptions indicate the involvement of an attorney. **Please provide a description of each document that includes adequate information for Plaintiff to determine a basis for privilege.**

Sixth, the Second Log also does not provide for communications dated through IWA's document discovery collection date. As Plaintiff noted in its prior letter, the crux of the instant suit is that a company was formed for the purpose of perpetrating a fraud. Therefore, post-complaint communications here bear directly on the issues at hand. Rather, post-complaint communications pertaining to what IWA did and who it communicated with after it learned Plaintiff discovered the fraud are therefore highly relevant. **Please supplement IWA's privilege log with all claimed privileged correspondence and documents through IWA's document discovery collection date.**

This letter is not intended to address every issue or deficiency that Plaintiff may have identified with the Second Log and corresponding productions. Nor should this letter be construed as a waiver or forfeiture of Plaintiff's rights to seek or obtain additional discoverable information in this action. Plaintiff reserves the right to challenge the sufficiency of the Second Log and productions, whether or not raised in this letter. Moreover, Plaintiff's examples above are by no means exhaustive.

If IWA continues to resist remedying such deficiencies, Plaintiff may be forced to burden the court with a request for *in camera* review. In the interest of avoiding further delay, Plaintiff renews its request for IWA to correct the deficiencies in its privilege log by December 5, 2022, and per Plaintiff's November 23, 2022 email, requests that IWA provide availability for a meet and confer.

Sincerely,

*Katherine Danial*

Katherine Danial


Copied to counsel of record via email.

www.pillsburylaw.com

# EXHIBIT G

**Seyfarth Shaw LLP**

1075 Peachtree Street, N.E.

Suite 2500

Atlanta, Georgia  30309-3958

**T** (404) 885-1500

**F** (404) 892-7056

rdavis@seyfarth.com

T (404) 888-1874

www.seyfarth.com

December 2, 2022

**VIA E-MAIL**

Katherine Danial
Pillsbury Winthrop Shaw Pittman LLP
1200 Seventeenth Street, NW
Washington, D.C. 20036
Katherine.Danial@Pillsburylaw.com

Re:    Rock Spring Plaza II, LLC v. Investors Warranty of America, LLC, et al., No. 8:20-cv-
01502-PJM - Plaintiff's November 28, 2022, Letter Regarding IWA's Second Privilege
Log and IWA's Second Letter to Plaintiff Regarding Plaintiff's Privilege Log Deficiencies

Dear Katherine:

We write in response to your November 28, 2022, letter regarding Investors Warranty of
America, LLC's ("IWA") second amended privilege log submitted to you on November 17, 2022
(the "IWA's Second Log").  This letter further serves as a response to your November 30, 2022,
letter and constitutes IWA's second letter to Plaintiff regarding the deficiencies in Plaintiff's
privilege log ("Plaintiff's Log"). Addressing first IWA's Second Log, although we will meet and
confer to further discuss your concerns in an effort to reach a consensus regarding the IWA's
Second Log, we maintain that we have fully complied with the Federal Rules of Civil Procedure
and the Local Rules, as well as relevant Maryland law regarding privilege logs and attorney-client
privilege. Accordingly, we disagree with any assertion that IWA's Second Log is in any way
deficient. Moreover, as you have noted, we have acted reasonably by revising IWA's privilege log
twice now to allay your initial concerns, even though we were under no obligation to do so. Your
continued complaints regarding IWA's Second Log are unfounded, are creating undue burden,
and are disproportionate to your discovery needs in this case. Indeed, your November 28, 2022,
letter makes clear that Plaintiff's repeated demands are nothing more than an impermissible
fishing expedition to obtain privileged information that is not discoverable. Accordingly, we ask
that you withdraw your frivolous request for IWA to yet again revise its log.  In support of such
request, we again address each of your concerns below:

**A.  IWA's Privilege Log**

**1.  IWA Produced a Proper and Sufficient Privilege Log**.

First, as you know, a proper privilege log need only "…contain a brief description or
summary of the contents of the document, the date the document was prepared, the person or
persons who prepared the document, the person to whom the document was directed, or for
whom the document was prepared, the purpose in preparing the document, the privilege or
privileges asserted with respect to the document, and how each element of the privilege is met

A69

Katherine Danial
December 2, 2022
Page 2

for that document."[1] "The standard for testing the adequacy of the privilege log is whether, as to each document, it sets forth facts that, if credited, would suffice to establish each element of the privilege or immunity that is claimed."[2] Here, that is exactly what each version of IWA's privilege log, including IWA's Second Log, has accomplished. IWA's Second Log is a 161-page privilege log containing 1,191 entries, which includes, among other things, the document date, document type, thorough document descriptions, to/from and cc categories and the privilege basis. Each entry within IWA's privilege log contains facts sufficient to establish the asserted privilege. We do not have to produce any additional information beyond what has already been provided to you. In short, Plaintiff is not entitled to know the contents of privileged communications or work product, it is merely entitled to know what was withheld and why.  IWA has provided that information.

**2.  All Emails, Communications, and Attachments Listed on IWA's Second Log are Privileged**.

In addition, contrary to your assertions, all documents, emails and communications listed in IWA's Second Log are privileged and fall within one or more categories of recognized immunity exempting them from disclosure.

*(a) An Attorney Does Not Need to Be a Recipient of a Document In Order for a Party to Assert the Attorney-Client Privilege and/or Work Product Doctrine.*

First, you assert that "71 families over which IWA claims attorney-client privilege and/or work product protection do not include any attorney as a recipient," implying that an attorney must be listed as an addressee in order for the attorney-client privilege or work product doctrine to apply. This position is incorrect and is even contradicted by the very case, *In re New York Renu with Moistureloc Prod. Liab. Litig.*, No. CA 2:06-MN-77777-DCN, 2008 WL 2338552 (D.S.C. May 8, 2008), that you cite in your November 28, 2022, letter.  Indeed, *In re New York Renu* holds that an attorney need not be a sender or recipient of a document in order for these immunities to apply, and recognizes that there are numerous instances in the corporate context where these privileges and protections will apply without the attorney involved, such as where a client internally forwards an attorney's email or recounts the attorney's advice.[3]  *In re New York Renu* even references multiple cases within the 4th Circuit and elsewhere which hold that correspondence does not need

---

[1] *See e.g., Victor Stanley, Inc. v. Creative Pipe, Inc.*, 250 F.R.D. 251, 264–65 (D. Md. 2008).

[2]  *Lord & Taylor, LLC v. White Flint, L.P.*, No. CV RWT 13-1912, 2015 WL 13309999, at *2 (D. Md. Mar. 23, 2015) (quoting *Neuberger Berman Real Estate Income Fund, Inc. v. Lola Brown Trust No. 1B*, 230 F.R.D. 398, 406 (D. Md. 2005)).

[3] *See e.g.*, *Cuno, Inc. v. Pall Corp.*, 121 F.R.D. 198, 202–03 (E.D.N.Y.1988)(discussing privileged materials exchanged between employees of a corporation and stating, "Where documents were held privileged in this grouping, it was apparent that the communication from one employee to another was for the purpose of the second employee transmitting the information to counsel for advice."); *see also Eutectic Corp. v. Metco*, Inc., 61 F.R.D. 35, 38 (E.D.N.Y.1973)(generally holding that documents subject to the privilege may be transmitted between non-attorneys (especially individuals involved in corporate decision-making) so that the corporation may be properly informed of legal advice and act appropriately).

Katherine Danial
December 2, 2022
Page 3

to be sent to or from an attorney in order to be privileged.[4] In other words, it is not the recipient/sender that establishes immunity, but is rather the whether the contents of the document or correspondence relates to or expresses intent for legal advice.[5]

Here, IWA is a limited liability company, and exists within the corporate context contemplated by *In re New York Renu* (again, the very case you cite), and courts have recognized that legal advice will be conveyed and discussed within a corporate organization. That is clearly what has transpired, and what is conveyed in the Second Privilege Log. To be clear, we have reviewed the 71 families you have identified as not including an attorney, and maintain that all of these documents are protected by the attorney-client privilege and/or work product doctrine. All such documents and records contain or relate to legal advice sought from or provided by legal counsel, including but not limited to documents prepared by counsel and the thought processes and directions of counsel. With respect to these 71 families, we are not required to produce any additional documents or information. The same is true of the 64 families you identified where an attorney is copied on the "cc" or "bcc" column.

### (b) The Documents Attached to IWA's Privileged Emails are Also Privileged.

In your letter, you also assert that "the act of attaching a document to a privileged email does not automatically classify the attachment as privileged" and in support cite to *In re Marriott Int'l, Inc.*, No. 19-MD-2879, 2021 WL 2222715 (D. Md. June 2, 2021). Here, however, all documents identified on IWA's Second Log as attachments to privileged emails are also privileged because such attachments were sent to obtain, relay, or give legal advice, whether it be to or from in-house or outside counsel or other non-lawyers. IWA is not shielding any non-privileged attachments.

Moreover, the case you cite does not support the proposition for which it was offered. In *In re Marriot Int'l, Inc.*, the court, considering the issue of attachments to emails, specifically held that, "a document transmitted by the client maintains its protection if the client transmits the document intending that the lawyer consider it in providing legal services or legal advice to the client."[6] Importantly, the court further found that attachments to emails sent to and from the client and attorney are privileged, even if the attachment was created by a third party.[7] Attachments are considered communications which are protected by attorney client privilege.[8]

Here, all attachments included on IWA's privilege log are documents circulated either to give or seek legal advice, provide IWA's in-house and outside counsel factual information regarding this case and its components, and/or relay legal and factual information to IWA's

---

[4] *See Id.* at *10 (quoting *Santrade, LTD. v. General Electric Co.*, 150 F.R.D. 539, 543 (E.D.N.C.1993) ("A document need not be authored or addressed to an attorney in order to be properly withheld on attorney-client privilege grounds.").

[5] *Id.* at *18.

[6] 2021 WL 2222715 at *3.

[7] *Id.* at *3.

[8] *Id.*

A71

Katherine Danial
December 2, 2022
Page 4

personnel. As the attorney-client privilege and work product protections extend to email attachments sent to obtain or give legal advice, IWA is properly withholding such attachments and they are immune from production.

In addition, we note that Plaintiff already understands this rule and that IWA's withholding of attachments is proper, given that Plaintiff, in Plaintiff's Log, identifies 107 documents that were withheld solely because they are attachments to what Plaintiff identifies as a privileged email. However, unlike IWA's Second Log, Plaintiff's Log make no attempt to identify these documents or provide any privilege description for them.

### (c) The Alleged 81 Entries Identified Prior to Plaintiff Receiving the Assignment Notice are Privileged.

You also assert that there are 81 entries "dated prior to Plaintiff receiving notice of the assignment at issue in this litigation or responding to the notice" and assert that solely on that basis such entries cannot be privileged. IWA disagrees. Your position wholly ignores that a client can seek or receive legal advice for a transaction like the assignment in question, and that documents and records surrounding such legal advice related to the transaction are privileged. Moreover, your latest position contradicts Plaintiff's own motion for summary judgment, which points to discussions of potential litigation in 2016 (see Pl's Mot. for Sum. J at p. 2) and Plaintiff's Complaint, which points to litigation between Plaintiff's and IWA's affiliates, stemming from disputes relating back to 2014.  Moreover, Plaintiff's contention that IWA is not entitled to assert privilege over documents created before August 31, 2017, the date of the assignment, is belied by Plaintiff's own privilege log, which includes 224 documents dated on or before August 31, 2017.

### 3. IWA is Not Required to Produce or List Post-Lawsuit Communications on its Privilege Log.

We are also not aware of any requirement or rule that IWA produce and/or list documents or communications on its privilege log that were created and/or sent following the filing of the Complaint. To the contrary, courts have held that post-lawsuit communications are excluded from discovery.[9]  Plaintiff's contention that its fraud claim somehow places a new or heightened burden on IWA to share information that is otherwise shielded from discovery is spurious and unsupported by any legal authority. Moreover, any such contrived burden is not supported by the facts.  First, no documents exist relating to what IWA did relating to any discovery of a fraud for the simple reason that IWA was not a party to any fraud. Second, Plaintiff began to send letters from its litigation counsel within weeks of the assignment at issue, and documents created for almost three years after Plaintiff began to allege potential fraud have been included on the privilege log. Thus, Plaintiff has already seen the record of communications that it seeks after it began to make its false fraud claims.

---

[9] See e.g., Johnston v. Aetna Life Insurance Company, 282 F. Supp. 3d 1303, 63 Employee Benefits Cas. (BNA) 1845 (S.D. Fla. 2017) (holding that work product doctrine excluded discovery of post-lawsuit communications between ERISA plan administrator and its outside counsel regarding termination of participant's benefits.); Ryan Inv. Corp. v. Pedregal de Cabo San Lucas, No. C 06-3219 JWRS, 2009 WL 5114077, at *3 (N.D. Cal. Dec. 18, 2009) (ruling that communications between counsel and client once litigation has begun is presumptively privileged and not to be included in the privilege log.)

Katherine Danial
December 2, 2022
Page 5

In sum, IWA has complied with its discovery obligations and has produced a privilege log in full compliance with the Federal Rules of Civil Procedure and the rules of this Court. IWA is not required to produce any additional documents or update IWA's Second Log.

**B.  IWA's Second Communication to Plaintiff Regarding Plaintiff's Privilege Log Deficiencies.**

Turning to the concerns raised by IWA in its November 16, 2022, letter with respect to Plaintiff's Log, we find Plaintiff's November 30, 2022, letter to be completely nonresponsive to the issues raised.  First, the majority of Plaintiff's Log is devoid of any reasonable explanation as to any supposed "Privilege Description," and most of Plaintiff's Log fails to give any explanation as to the basis for any privilege.  Even the two examples offered Plaintiff in its letter dated November 30, 2022, highlight the pervasive deficiencies.  For example, Document 12, which notably was sent in 2007 (ten years before Plaintiff argues that privilege would apply), supposedly refers to an email with "legal advice regarding a contract."  The "contract" is not identified, and it is not clear as to whether the contract would relate to a lease with Lockheed, the ground lease or some other document.  The description does not, as your November 30, 2022, letter suggests, make clear that the correspondence is about a specific lease with Lockheed.  The attachment, which is attached to the email, is identified only as "4923943_1.Doc" and is not otherwise described in the privilege log entry. As Plaintiff is aware, Plaintiff's Log is replete with similar deficiencies that require revision, and we request for the second time that Plaintiff review Plaintiff's Log in its entirety and correct all deficiencies.

As to Plaintiff's refusal to produce the documents on Plaintiff's Log that include communications with real estate brokers and agents, Plaintiff has had more than two weeks to review and produce the documents. In the event that Plaintiff contends that there is some basis to continue to withhold these documents, we look forward to discussing that contention during our meet and confer later today.

Finally, in response to Plaintiff's inquiry about IWA's obligations to supplement information pursuant to Fed. R. Civ. P. Rule 26(e), for the reasons already discussed in IWA's letter dated November 16, 2022, IWA believes that it has met its obligation pursuant to Fed. R. Civ. P. Rule 26(e) and that there is no "additional or corrective information [that] has not otherwise been made known" to IWA. IWA once again asks that if there is specific information that you would like to discuss, that you identify that information. To the extent that Plaintiff believes it is for some reason entitled to any information as to IWA's finances, updated or otherwise, such information is not relevant and not proportional to the needs of this case.  IWA obtained the leasehold interest at issue in this litigation through a judicial foreclosure, and there was a final order entered in that case confirming the sale to IWA.  Even if IWA was still the tenant under the ground lease at issue, and it is not, IWA would not have any obligation to show any information as to its finances and would only own the leasehold interest because the Camalier family defaulted on a $30 Million loan.

Katherine Danial
December 2, 2022
Page 6

We look forward to meeting with you later today, but again maintain that we have complied in all respects.

Very truly yours,

SEYFARTH SHAW LLP


Rebecca A. Davis


cc:    William Bosch
       Alvin Dunn

A74

# EXHIBIT K

ROCK SPRINGS DRIVE, LLC: W18227132

---

 **Notice** 

**Coronavirus (COVID-19) resources for businesses:** https://businessexpress.maryland.gov/coronavirus

On March 12th, Governor Hogan issued and executive order, which requires that the Maryland State Department of Assessments and Taxation (SDAT) to extend all expiration and renewal dates to the 30th day after the date by which the state of emergency is terminated. SDAT is automatically extending the Annual Report Filing and/or Personal Property Return **filing date from April 15 to July 15**[th] for all entities.

**Department ID Number:**
W18227132

**Business Name:**
ROCK SPRINGS DRIVE, LLC

**Principal Office:**
1519 YORK ROAD
LUTHERVILLE MD 21093

**Resident Agent:**
COGENCY GLOBAL INC.
1519 YORK ROAD
LUTHERVILLE MD 21093

**Status:**
ACTIVE

**Good Standing:**
THIS BUSINESS IS IN GOOD STANDING

**Business Type:**
DOMESTIC LLC

**Business Code:**
20 ENTITIES OTHER THAN CORPORATIONS

**Date of Formation/ Registration:**
08/25/2017

**State of Formation:**
MD

**Stock Status:**
N/A

**Close Status:**
N/A

# EXHIBIT M

Case 8:20-cv-01502-PJM   Document 238-1   Filed 01/25/23   Page 54 of 77

# INVESTORS WARRANTY AMERICA, LLC SECOND AMENDED PRIVILEGE LOG

| DOC NUMBER | NATIVE TYPE | PARENT DATE | DOCUMENT DATE | DOCUMENT DESCRIPTION | FROM | TO | CC | BCC | PRIVILEGE BASIS |
|---|---|---|---|---|---|---|---|---|---|
| 27 | Outlook Email | 5/20/2016 | 5/20/2016 | Legal counsel re. Assignment and Term Sheet | Snitker, Gregg<gsnitker@aegonusa.com> | Evans, Gale<gevans@seyfarth.com>; Davis, Rebecca<rdavis@seyfarth.com> | Snitker, Gregg<gsnitker@aegonusa.com> | | Attorney-Client |
| 34 | Outlook Email | 6/7/2016 | 6/7/2016 | Email exchange re. appraisal for Property | Wirtjes, Dale<dwirtjes@aegonusa.com> | Feltman, David<dfeltman@aegonusa.com>; Schefter, Tom<ctschefte@aegonusa.com> | Snitker, Gregg<gsnitker@aegonusa.com> | | Attorney-Client |
| 35 | Outlook Email | 6/30/2016 | 6/30/2016 | Email exchange re. advice from outside counsel re. Ground Lease | Snitker, Gregg<gsnitker@aegonusa.com> | Feltman, David<dfeltman@aegonusa.com> | | | Attorney-Client |
| 36 | Outlook Email | 6/30/2016 | 6/30/2016 | Email re. advice from outside counsel re. Ground Lease | Feltman, David<dfeltman@aegonusa.com> | Snitker, Gregg<gsnitker@aegonusa.com> | | | Attorney-Client |
| 37 | Outlook Email | 6/30/2016 | 6/30/2016 | Email forwarding advise from outside counsel re. Ground Lease | Feltman, David<dfeltman@aegonusa.com> | Schefter, Tom<ctschefte@aegonusa.com> | | | Attorney-Client |
| 38 | Outlook Email | 7/8/2016 | 7/8/2016 | Email exchange re. Ground Lease for discussion with counsel | Snitker, Gregg<gsnitker@aegonusa.com> | Feltman, David<dfeltman@aegonusa.com> | Snitker, Gregg<gsnitker@aegonusa.com> | | Attorney-Client |
| 42 | Outlook Email | 8/10/2016 | 8/10/2016 | Email from counsel provide advice as to Ground Lease | Snitker, Gregg<gsnitker@aegonusa.com> | Feltman, David<dfeltman@aegonusa.com>; Schefter, Tom<ctschefte@aegonusa.com> | Snitker, Gregg<gsnitker@aegonusa.com> | | Attorney-Client |
| 43 | Microsoft Word 2010/2011 | 8/10/2016 | 8/10/2016 | Memorandum from DLA Piper to Aegon USA Realty Advisors provide advice as to Ground Lease - attachment to privileged email | | | | | Work Product |
| 44 | Outlook Email | 8/11/2016 | 8/11/2016 | Email exchange re legal advice as to Ground Lease | Schefter, Tom<ctschefte@aegonusa.com> | Snitker, Gregg<gsnitker@aegonusa.com>; Feltman, David<dfeltman@aegonusa.com> | | | Attorney-Client; Work Product |
| 45 | Outlook Email | 8/11/2016 | 8/11/2016 | Email exchange re legal advice as to Ground Lease | Schefter, Tom<ctschefte@aegonusa.com> | Snitker, Gregg<gsnitker@aegonusa.com>; Feltman, David<dfeltman@aegonusa.com> | | | Attorney-Client; Work Product |
| 46 | Outlook Email | 8/11/2016 | 8/11/2016 | Email exchange re legal advice as to Ground Lease | Schefter, Tom<ctschefte@aegonusa.com> | Snitker, Gregg<gsnitker@aegonusa.com>; Feltman, David<dfeltman@aegonusa.com> | | | Attorney-Client |

Case 8:20-cv-01502-PJM   Document 238-1   Filed 01/25/23   Page 55 of 77

| DOC NUMBER | NATIVE TYPE | PARENT DATE | DOCUMENT DATE | DOCUMENT DESCRIPTION | FROM | TO | CC | BCC | PRIVILEGE BASIS |
|---|---|---|---|---|---|---|---|---|---|
| 47 | Outlook Email | 8/16/2016 | 8/16/2016 | Email discussing legal advice from outside counsel as to Ground Lease | Snitker, Gregg<gsnitker@aegonusa.com> | Schefter, Tom<tschefte@aegonusa.com>; Feltman, David<dfeltman@aegonusa.com> | Snitker, Gregg<gsnitker@a egonusa.com> | | Attorney-Client |
| 48 | Microsoft Word 2003/2004 | 8/16/2016 | | Memo from outside counsel providing legal advice as to Ground Lease - attachment to privileged email | Evans, Gale<gevans@seyfarth.com> | Snitker, Gregg<gsnitker@aegonusa.com> | | | Attorney-Client; Work Product |
| 50 | Outlook Appointment | 8/29/2016 | 8/29/2016 | Email exchange re. discussing legal counsel for asset management for Property | Schefter, Tom<tschefte@aegonusa.com> | Snitker, Gregg<gsnitker@aegonusa.com>; Feltman, David<dfeltman@aegonusa.com> | | | Attorney-Client |
| 51 | Outlook Appointment | 9/9/2016 | 9/9/2016 | Email re scheduling meeting to discuss asset management | Feltman, David<dfeltman@aegonusa.com> | Snitker, Gregg<gsnitker@aegonusa.com> | | | Attorney-Client |
| 53 | Outlook Email | 9/23/2016 | 9/23/2016 | Email forwarding legal advice from outside counsel regarding Ground Lease review | Feltman, David<dfeltman@aegonusa.com> | Snitker, Gregg<gsnitker@aegonusa.com> | | | Attorney-Client |
| 55 | Outlook Email | 10/13/2016 | 10/13/2016 | Email exchange re. call to discuss Real Estate Research Corporation | Sowka, James B<jsowka@seyfarth.com> | Feltman, David<dfeltman@aegonusa.com> | Koewler, Jeffrey M.<jkoewler@delfi nomadden.com> | | Attorney-Client; Work Product |
| 56 | Outlook Email | 10/13/2016 | 10/13/2016 | Email exchange re. Rock Springs and Real Estate Research Corporation | Feltman, David<dfeltman@aegonusa.com> | Sowka, James B<jsowka@seyfarth.com> | | | Attorney-Client |
| 57 | Outlook Email | 10/13/2016 | 10/13/2016 | Email exchange re. Real Estate Research Corporation | Feltman, David<dfeltman@aegonusa.com> | Sowka, James B<jsowka@seyfarth.com> | | | Attorney-Client; Work Product |
| 58 | Outlook Email | 10/13/2016 | 10/13/2016 | Email exchange re. Real Estate Research Corporation | Feltman, David<dfeltman@aegonusa.com> | Sowka, James B<jsowka@seyfarth.com> | | | Attorney-Client |
| 59 | Outlook Email | 11/23/2016 | 11/23/2016 | Email exchange seeking legal counsel regarding Ground Lease | Wirtjes, Dale<dwirtjes@aegonusa.com> | Snitker, Gregg<gsnitker@aegonusa.com> | Wirtjes, Dale<dwirtjes@ae gonusa.com>; Koluch, Nick<nkoluch@aeg onusa.com>; Feltman, David<dfeltman@a egonusa.com> | | Attorney-Client |

2

Case 8:20-cv-01502-PJM   Document 238-1   Filed 01/25/23   Page 56 of 77

| DOC NUMBER | NATIVE TYPE | PARENT DATE | DOCUMENT DATE | DOCUMENT DESCRIPTION | FROM | TO | CC | BCC | PRIVILEGE BASIS |
|---|---|---|---|---|---|---|---|---|---|
| 65 | Outlook Email | 11/23/2016 | 11/23/2016 | Email exchange seeking legal review for mortgage, ground lease and budget for the Property | Wirtjes, Dale<dwirtjes@aegonusa.com> | Snitker, Gregg<gsnitker@aegonusa.com> | | | Attorney-Client |
| 66 | Outlook Email | 12/23/2016 | 12/23/2016 | Correspondence regarding legal invoices from outside counsel | Snitker, Gregg<gsnitker@aegonusa.com> | Frazier, Tami<tfrazier@aegonusa.com> | | | Attorney-Client |
| 67 | Adobe Acrobat (PDF) | 12/23/2016 | | Legal invoices from outside counsel - attachment to privileged email | | | | | Attorney-Client; Work Product |
| 68 | Outlook Email | 12/23/2016 | 12/23/2016 | Legal counsel regarding Assignment and Term Sheet | Evans, Gale<gevans@seyfarth.com> | Snitker, Gregg<gsnitker@aegonusa.com> | | | Attorney-Client |
| 69 | Adobe Acrobat (PDF) | 12/23/2016 | | Legal counsel invoices - attachment to privileged email | | | | | Attorney-Client; Work Product |
| 70 | Outlook Email | 12/27/2016 | 12/27/2016 | Email re: litigation reserve | Snitker, Gregg<gsnitker@aegonusa.com> | Donner, John<jdonner@aegonusa.com> | Snitker, Gregg<gsnitker@aegonusa.com> | | Attorney-Client |
| 71 | Outlook Email | 12/27/2016 | 12/27/2016 | Email re: legal review of accounting for Property | Pithan, Matt<mpithan@aegonusa.com> | Snitker, Gregg<gsnitker@aegonusa.com> | Pithan, Matt<mpithan@aegonusa.com> | | Attorney-Client |
| 72 | Outlook Email | 1/3/2017 | 1/3/2017 | Email re: legal review for asset management | Donner, John<jdonner@aegonusa.com> | Snitker, Gregg<gsnitker@aegonusa.com> | Donner, John<jdonner@aegonusa.com> | | Attorney-Client |
| 73 | Outlook Email | 1/17/2017 | 1/17/2017 | Email exchange re: call to discuss sale of Property | Sowka, James B<jsowka@seyfarth.com> | Feltman, David<dfeltman@aegonusa.com> | Snitker, Gregg<gsnitker@aegonusa.com> | | Attorney-Client |
| 74 | Outlook Email | 1/17/2017 | 1/17/2017 | Email exchange re: call to discuss Property valuation | Feltman, David<dfeltman@aegonusa.com> | James B. Sowka (jsowka@seyfarth.com)<jsowka@seyfarth.com> | Snitker, Gregg<gsnitker@aegonusa.com> | | Attorney-Client |
| 76 | Outlook Email | 1/17/2017 | 1/17/2017 | Email exchange re: call to discuss sale of Property | Sowka, James B<jsowka@seyfarth.com> | Feltman, David<dfeltman@aegonusa.com> | | | Attorney-Client |
| 77 | Outlook Email | 1/17/2017 | 1/17/2017 | Email exchange re: call to discuss sale of Property | Feltman, David<dfeltman@aegonusa.com> | Sowka, James B<jsowka@seyfarth.com> | Snitker, Gregg<gsnitker@aegonusa.com> | | Attorney-Client |
| 78 | Outlook Email | 1/17/2017 | 1/17/2017 | Forward of email exchange re: call to discuss sale of Property by D. Feltman to assistant | Feltman, David<dfeltman@aegonusa.com> | Martin, Lon<lon.martin@transamerica.com> | | | Attorney-Client |
| 81 | Outlook Email | 1/21/2017 | 1/21/2017 | Email exchange re: call to discuss sale of Property | Snitker, Gregg<gsnitker@aegonusa.com> | Feltman, David<dfeltman@aegonusa.com> | | | Attorney-Client |

3

Case 8:20-cv-01502-PJM    Document 238-1    Filed 01/25/23    Page 57 of 77

| DOC NUMBER | NATIVE TYPE | PARENT DATE | DOCUMENT DATE | DOCUMENT DESCRIPTION | FROM | TO | CC | BCC | PRIVILEGE BASIS |
|---|---|---|---|---|---|---|---|---|---|
| 82 | Outlook Email | 2/9/2017 | 2/9/2017 | Correspondence seeking legal review for accounting for Property | Horner, Ann<ahorner@aegonusa.com> | Armstrong, Barbie<barmstrong@aegonusa.com> | Schefter, Tom<tschefte@aegonusa.com>; Snitker, Gregg<gsnitker@aegonusa.com>; Horner, Ann<ahorner@aegonusa.com> | | Attorney-Client |
| 83 | Adobe Acrobat (PDF) | 2/9/2017 | 4/13/2016 | Accounting documents for legal review - attachment to privileged email | | | | | Attorney-Client; Work Product |
| 84 | Adobe Acrobat (PDF) | 2/9/2017 | 4/13/2016 | Accounting documents for legal review - attachment to privileged email | | | | | Attorney-Client; Work Product |
| 85 | Outlook Email | 2/16/2017 | 2/16/2017 | Email re. legal review of construction contract for property | Frazier, Tami<tfrazier@aegonusa.com> | Snitker, Gregg<gsnitker@aegonusa.com> | Armstrong, Barbie<barmstrong@aegonusa.com>; Frazier, Tami<tfrazier@aegonusa.com> | | Attorney-Client |
| 86 | Outlook Email | 2/16/2017 | 2/16/2017 | Email re. legal counsel regarding Assignment | Snitker, Gregg<gsnitker@aegonusa.com> | Frazier, Tami<tfrazier@aegonusa.com> | Armstrong, Barbie<barmstrong@aegonusa.com> | | Attorney-Client |
| 87 | Outlook Email | 2/17/2017 | 2/17/2017 | Email re. legal advice by outside counsel regarding Assignment | Feltman, David<dfeltman@aegonusa.com> | Sowka, James B.<jsowka@seyfarth.com> | | | Attorney-Client |
| 88 | Outlook Email | 2/17/2017 | 2/17/2017 | Email exchange re. call to discuss sale of Property | Sowka, James B<jsowka@seyfarth.com> | Feltman, David<dfeltman@aegonusa.com> | | | Attorney-Client |
| 89 | Outlook Email | 2/21/2017 | 2/21/2017 | Email exchange re. call to discuss sale of Property | Sowka, James B<jsowka@seyfarth.com> | Feltman, David<dfeltman@aegonusa.com> | | | Attorney-Client |
| 127 | Outlook Email | 3/29/2017 | 3/29/2017 | Email among counsel discussing Assignment | Snitker, Gregg<gsnitker@aegonusa.com> | Sowka, James B<jsowka@seyfarth.com> | | | Attorney-Client |
| 128 | Microsoft Word 2003/2004 | 3/29/2017 | | Draft term sheet - attachment to privileged email | | | | | Attorney-Client; Work Product |

4

A81

Case 8:20-cv-01502-PJM   Document 238-1   Filed 01/25/23   Page 58 of 77

| DOC NUMBER | NATIVE TYPE | PARENT DATE | DOCUMENT DATE | DOCUMENT DESCRIPTION | FROM | TO | CC | BCC | PRIVILEGE BASIS |
|---|---|---|---|---|---|---|---|---|---|
| 130 | Outlook Appointment | 3/31/2017 | 3/31/2017 | Email among counsel discussing Assignment | Snitker, Gregg<gsnitker@aegonusa.com> | Sowka, James B<jsowka@seyfarth.com> | | | Attorney-Client |
| 137 | Outlook Email | 4/5/2017 | 4/5/2017 | Email forwarding legal advice withing organization regarding funding of contracts and advice regarding contract termination | Koluch, Nick<nkoluch@aegonusa.com> | Armstrong, Barbie<barmstrong@aegonusa.com> | | | Attorney-Client; Work Product |
| 138 | Outlook Email | 4/5/2017 | 4/5/2017 | Email re. legal advice for funding of contracts and advice regarding contract termination | Koluch, Nick<nkoluch@aegonusa.com> | Snitker, Gregg<gsnitker@aegonusa.com> | | | Attorney-Client |
| 139 | Outlook Email | 4/5/2017 | 4/5/2017 | Email re. legal advice for funding of contracts and advice regarding contract termination | Koluch, Nick<nkoluch@aegonusa.com> | Snitker, Gregg<gsnitker@aegonusa.com> | | | Attorney-Client |
| 140 | Outlook Email | 4/5/2017 | 4/5/2017 | Email forwarding legal advice withing organization regarding funding of contracts and advice regarding contract termination | Armstrong, Barbie<barmstrong@aegonusa.com> | Koluch, Nick<nkoluch@aegonusa.com> | | | Attorney-Client |
| 141 | Outlook Email | 4/5/2017 | 4/5/2017 | Email re. legal advice for funding of contracts and advice regarding contract termination | Koluch, Nick<nkoluch@aegonusa.com> | Snitker, Gregg<gsnitker@aegonusa.com> | Armstrong, Barbie<barmstrong@aegonusa.com> | Koluch, Nick<nkoluch@aegonusa.com> | Attorney-Client |
| 142 | Microsoft Excel 2016 Workbook | 4/5/2017 | 4/5/2017 | Aegon Transfer of Funds Report - attachment to privileged email | | | | | Attorney-Client |
| 143 | Outlook Email | 4/5/2017 | 4/5/2017 | Email forwarding legal advice from G. Snitker re. JV funding | Koluch, Nick<nkoluch@aegonusa.com> | Armstrong, Barbie<barmstrong@aegonusa.com> | | | Attorney-Client |
| 144 | Outlook Email | 4/5/2017 | 4/5/2017 | Email re. JV funding legal advice | Snitker, Gregg<gsnitker@aegonusa.com> | Koluch, Nick<nkoluch@aegonusa.com> | | | Attorney-Client |

5

A82

# EXHIBIT N

Case 8:20-cv-01502-PJM  Document 238-1  Filed 01/25/23  Page 60 of 77

## INVESTORS WARRANTY AMERICA, LLC SECOND AMENDED PRIVILEGE LOG

| DOC NUMBER | NATIVE TYPE | PARENT DATE | DOCUMENT DATE | DOCUMENT DESCRIPTION | FROM | TO | CC | BCC | PRIVILEGE BASIS |
|---|---|---|---|---|---|---|---|---|---|
| 78 | Outlook Email | 1/17/2017 | 1/17/2017 | Forward of email exchange re: call to discuss sale of Property by D. Feltman to assistant | Feltman, David<dfeltman@aegonusa.com> | Martin, Lon<lon.martin@transamerica.com> | | | Attorney-Client |
| 108 | Outlook Appointment | 3/20/2017 | 3/20/2017 | Outlook calendar invite for call to discuss Term Sheet | Snitker, Gregg<gsnitker@aegonusa.com> | Martin, Lon<lon.martin@transamerica.com> | | | Attorney-Client |
| 117 | Outlook Appointment | 3/21/2017 | 3/21/2017 | Outlook calendar invite for call to discuss Term Sheet | Snitker, Gregg<gsnitker@aegonusa.com> | Feltman, David<dfeltman@aegonusa.com>; Koewler, Jeffrey M.<jkoewler@delfinomadden.com> | Martin, Lon<lon.martin@transamerica.com> | | Attorney-Client |
| 118 | Outlook Appointment | 3/21/2017 | 3/21/2017 | Outlook calendar invite re: to discuss asset management with legal counsel | Martin, Lon<lon.martin@transamerica.com> | Snitker, Gregg<gsnitker@aegonusa.com> | | | Attorney-Client |
| 283 | Outlook Appointment | 7/16/2017 | 7/16/2017 | Calendar appointment between counsel and accountant to discuss Assignment | Snitker, Gregg<gsnitker@aegonusa.com> | Werkman, Gary<gary.werkman@transamerica.com> | | | Attorney-Client |
| 284 | Outlook Appointment | 7/16/2017 | 7/16/2017 | Email re: inhouse review of Operating Agreement | Werkman, Gary<gary.werkman@transamerica.co m> | Snitker, Gregg<gsnitker@aegonusa.com> | | | Attorney-Client |
| 286 | Outlook Email | 7/21/2017 | 7/21/2017 | Email re: inhouse review of Operating Agreement | Snitker, Gregg<gsnitker@aegonusa.com> | Werkman, Gary<gary.werkman@transamerica.com> | Snitker, Gregg<gsnitker@aegonusa.com> | | Attorney-Client |
| 301 | Outlook Email | 7/27/2017 | 7/27/2017 | Email re: inhouse review of Operating Agreement | Werkman, Gary<gary.werkman@transamerica.co m> | Snitker, Gregg<gsnitker@aegonusa.com> | | | Attorney-Client; WorkProduct |
| 327 | Outlook Appointment | 8/1/2017 | 8/1/2017 | Email among legal counsel regarding Operating Agreement | Snitker, Gregg<gsnitker@aegonusa.com> | Koewler, Jeffrey M.<jkoewler@delfinomadden.com>; Barron, Robert<rbarron@bergersingerman.c om> | | | Attorney-Client |
| 551 | Outlook Email | 8/27/2017 | 8/27/2017 | Email exchange re: management fees for Property in response to inquiry from JV legal counsel and discussion of legal advice | Feltman, David<dfeltman@aegonusa.com> | Rubin, Paul<prubin@algongroup.com> | Taylor, Troy<troy@algongroup.co m> | | Attorney-Client |
| 552 | Outlook Email | 8/27/2017 | 8/27/2017 | Email with JV counsel regarding Operating Agreement for RSD | Taylor, Troy<troy@algongroup.com> | Feltman, David<dfeltman@aegonusa.com> | Rubin, Paul<prubin@algongroup. com>; Barron, Robert<rbarron@bergersi ngerman.com> | Feltman, David<us_dfeltman@a egon.mail.onmicrosoft. com> | Work Product |
| 561 | Outlook Email | 8/27/2017 | 8/27/2017 | Email exchange re: Property Operating Budget, forwarding internal legal counsel from JV attorney | Feltman, David<dfeltman@aegonusa.com> | Rubin, Paul<prubin@algongroup.com> | Taylor, Troy<troy@algongroup.co m> | | Attorney-Client |
| 609 | Outlook Email | 8/30/2017 | 8/30/2017 | Correspondence to JV counsel regarding Assignment documents | Snitker, Gregg<gsnitker@aegonusa.com> | Barron, Robert<rbarron@bergersingerman.c om> | Snitker, Gregg<gsnitker@aegonusa .com> | | Attorney-Client |
| 610 | Adobe Acrobat (PDF) | 8/30/2017 | | Notice - attachment to privileged email | | | | | Attorney-Client; WorkProduc t |
| 611 | Adobe Acrobat (PDF) | 8/30/2017 | | Assignment - attachment to privileged email | | | | | Attorney-Client; WorkProduc t |

A84

| DOC NUMBER | NATIVE TYPE | PARENT DATE | DOCUMENT DATE | DOCUMENT DESCRIPTION | FROM | TO | CC | BCC | PRIVILEGE BASIS |
|---|---|---|---|---|---|---|---|---|---|
| 612 | Outlook Email | 8/30/2017 | 8/30/2017 | Email re: legal counsel as to initial capital contribution | Feltman, David.<dfeltman@aegonusa.com> | Rubin, Paul<prubin@algongroup.com>; Snitker, Gregg<gsnitker@aegonusa.com> | Steenhoek, Brenda<bsteenhoek@aegonusa.com>; Van Gorp, Greg<gvangorp@aegonusa.com>; Taylor, Troy<troy@algongroup.com> | Feltman, David<cus_dfeltman@aegon-mail.onmicrosoft.com> | Attorney-Client |
| 613 | Outlook Email | 8/31/2017 | 8/31/2017 | Email re: legal review of Consulting Agreement, including JV counsel. | Taylor, Troy<troy@algongroup.com> | Feltman, David<dfeltman@aegonusa.com> | Rubin, Paul<prubin@algongroup.com>; Barron, Robert<rbarron@bergersingerman.com> | Feltman, David<cus_dfeltman@aegon-mail.onmicrosoft.com> | Work Product |
| 620 | Outlook Email | 8/31/2017 | 8/31/2017 | Email among counsel and represented parties re: Rock Springs Drive, LLC - Executed Operating Agreement | Barron, Robert<rbarron@bergersingerman.com> | Taylor, Troy<troy@algongroup.com>; Rubin, Paul<prubin@algongroup.com>; Snitker, Gregg<gsnitker@aegonusa.com>; Koewler, Jeffrey M.<jkoewler@delfinomadden.com> | Barron, Robert<rbarron@bergersingerman.com> | Snitker, Gregg<cus_gsnitker@aegon-mail.onmicrosoft.com> | Attorney-Client |
| 621 | Adobe Acrobat (PDF) | 8/31/2017 | 8/31/2017 | Executed Operating Agreement - attachment to privileged email | | | | | Attorney-Client; WorkProduct |
| 622 | Adobe Acrobat (PDF) | 8/31/2017 | 8/28/2017 | State of Maryland's Acceptance of Filing of Articles of Organization - attachment to privilege document | | | | | Attorney-Client; Work Product |
| 634 | Outlook Email | 8/31/2017 | 8/31/2017 | Email among legal counsel regarding Operating Agreement | Koewler, Jeffrey M.<jkoewler@delfinomadden.com> | Barron, Robert<rbarron@bergersingerman.com>; Snitker, Gregg<gsnitker@aegonusa.com> | Koewler, Jeffrey M.<jkoewler@delfinomadden.com> | | Attorney-Client |
| 635 | Microsoft Word 2013 | 8/31/2017 | | Operating Agreement - attachment to privileged email | | | | Snitker, Gregg<cus_gsnitker@aegon-mail.onmicrosoft.com> | Attorney-Client; Work Product |
| 636 | Outlook Email | 8/31/2017 | 8/31/2017 | Email among legal counsel regarding notice letters, including counsel to JV | Snitker, Gregg<gsnitker@aegonusa.com> | Barron, Robert<rbarron@bergersingerman.com> | Snitker, Gregg<gsnitker@aegonusa.com>; Frazier, Tami<tfrazier@aegonusa.com>; Koewler, Jeffrey M.<jkoewler@delfinomadden.com> | | Attorney-Client |
| 637 | Adobe Acrobat (PDF) | 8/31/2017 | | Compiled notice under Estoppel Agreement of Assignment - attachment to privileged email | | | | | Attorney-Client; WorkProduct |
| 638 | Outlook Email | 8/31/2017 | 8/31/2017 | Legal counsel discussion regarding Algon engagement letter | Snitker, Gregg<gsnitker@aegonusa.com> | Barron, Robert<rbarron@bergersingerman.com> | Koewler, Jeffrey M.<jkoewler@delfinomadden.com>; Frazier, Tami<tfrazier@aegonusa.com>; Snitker, Gregg<gsnitker@aegonusa.com> | | Attorney-Client |

2

A85

Case 8:20-cv-01502-PJM   Document 238-1   Filed 01/25/23   Page 62 of 77

| DOC NUMBER | NATIVE TYPE | PARENT DATE | DOCUMENT DATE | DOCUMENT DESCRIPTION | FROM | TO | CC | BCC | PRIVILEGE BASIS |
|---|---|---|---|---|---|---|---|---|---|
| 639 | Adobe Acrobat (PDF) | 8/31/2017 | 8/31/2017 | Draft of engagement letter - attachment to privileged email | | | | | Attorney-Client; Work Product |
| 640 | Adobe Acrobat (PDF) | 8/31/2017 | 8/31/2017 | Draft of engagement letter - attachment to privileged email | | | | | Attorney-Client; Work Product |
| 643 | Outlook Email | 8/31/2017 | 8/31/2017 | Correspondence among counsel regarding Algon Consulting Agreement | Barron, Robert<rbarron@bergersingerman.com> | Snitker, Gregg<gsnitker@aegonusa.com>; Koewler, Jeffrey M.<jkoewler@delfinomadden.com> | Barron, Robert<rbarron@bergersingerman.com>; Taylor, Troy<ttroy@algongroup.com>; Rubin, Paul<prubin@algongroup.com> | | Attorney-Client |
| 644 | Outlook Email | 8/31/2017 | 8/31/2017 | Correspondence among counsel and JV members regarding Algon Consulting Letter | Snitker, Gregg<gsnitker@aegonusa.com> | Barron, Robert<rbarron@bergersingerman.com> | Taylor, Troy<ttroy@algongroup.com>; Rubin, Paul<prubin@algongroup.com>; Koewler, Jeffrey M.<jkoewler@delfinomadden.com>; Snitker, Gregg<gsnitker@aegonusa.com>; Frazier, Tami<tfrazier@aegonusa.com> | | Attorney-Client |
| 645 | Outlook Email | 8/31/2017 | 8/31/2017 | Correspondence from JV counsel regarding required notice of assignment. | Barron, Robert<rbarron@bergersingerman.com> | Snitker, Gregg<gsnitker@aegonusa.com> | Barron, Robert<rbarron@bergersingerman.com> | | Attorney-Client |
| 651 | Outlook Email | 8/31/2017 | 8/31/2017 | Correspondence from JV counsel regarding Assignment. | Barron, Robert<rbarron@bergersingerman.com> | Snitker, Gregg<gsnitker@aegonusa.com> | Koewler, Jeffrey M.<jkoewler@delfinomadden.com>; Frazier, Tami<tfrazier@aegonusa.com>; Taylor, Troy<ttroy@algongroup.com>; Rubin, Paul<prubin@algongroup.com>; Barron, Robert<rbarron@bergersingerman.com> | | Attorney-Client |
| 652 | Outlook Email | 8/31/2017 | 8/31/2017 | Correspondence with JV counsel regarding Assignment | Snitker, Gregg<gsnitker@aegonusa.com> | Barron, Robert<rbarron@bergersingerman.com> | Snitker, Gregg<gsnitker@aegonusa.com>; Koewler, Jeffrey M.<jkoewler@delfinomadden.com> | Snitker, Gregg,us_gsnitker@aegon.mail.onmicrosoft.com> | Attorney-Client; Work Product |
| 653 | Adobe Acrobat (PDF) | 8/31/2017 | | Operating Agreement - attachment to privileged document | | | | | Attorney-Client; Work Product |

3

A86

Case 8:20-cv-01502-PJM   Document 238-1   Filed 01/25/23   Page 63 of 77

| DOC NUMBER | NATIVE TYPE | PARENT DATE | DOCUMENT DATE | DOCUMENT DESCRIPTION | FROM | TO | CC | BCC | PRIVILEGE BASIS |
|---|---|---|---|---|---|---|---|---|---|
| 654 | Outlook Email | 8/31/2017 | 8/31/2017 | Correspondence JV counsel regarding proposed Consulting Agreement | Barron, Robert<rbarron@bergersingerman.com> | Snitker, Gregg<gsnitker@aegonusa.com>; Koewler, Jeffrey M.<jkoewler@delfinomadden.com> | Taylor, Troy<ctroy@algongroup.com>; Rubin, Paul<prubin@algongroup.com>; Barron, Robert<rbarron@bergersingerman.com> | Snitker, Gregg<us_gsnitker@aegon.mail.onmicrosoft.com> | Attorney-Client |
| 655 | Microsoft Word 2007/2008 | 8/31/2017 | 8/31/2017 | Proposed Consulting Agreement | | | | | Attorney-Client; Work Product |
| 656 | Outlook Email | 8/31/2017 | 8/31/2017 | Discussion between counsel regarding closing on Assignment | Snitker, Gregg<gsnitker@aegonusa.com> | Barron, Robert<rbarron@bergersingerman.com> | Koewler, Jeffrey M.<jkoewler@delfinomadden.com>; Frazier, Tami<tfrazier@aegonusa.com>; Snitker, Gregg<gsnitker@aegonusa.com> | | Attorney-Client |
| 657 | Adobe Acrobat (PDF) | 8/31/2017 | | Consulting Agreement - attachment to privileged document | | | | | Attorney-Client; Work Product |
| 658 | Adobe Acrobat (PDF) | 8/31/2017 | | Assignment Agreement - attachment to privileged document | | | | | Attorney-Client; Work Product |
| 659 | Outlook Email | 8/31/2017 | 8/31/2017 | Correspondence among counsel regarding Assignment | Snitker, Gregg<gsnitker@aegonusa.com> | Barron, Robert<rbarron@bergersingerman.com> | Snitker, Gregg<gsnitker@aegonusa.com>; Frazier, Tami<tfrazier@aegonusa.com>; Koewler, Jeffrey M.<jkoewler@delfinomadden.com> | | Attorney-Client |
| 660 | Adobe Acrobat (PDF) | 8/31/2017 | | Notice of Assignment - attachment to privileged email | | | | | Attorney-Client |
| 661 | Outlook Email | 8/31/2017 | 8/31/2017 | Correspondence among counsel regarding Management Agreement | Barron, Robert<rbarron@bergersingerman.com> | Koewler, Jeffrey M.<jkoewler@delfinomadden.com>; Snitker, Gregg<gsnitker@aegonusa.com> | Barron, Robert<rbarron@bergersingerman.com> | Snitker, Gregg<us_gsnitker@aegon.mail.onmicrosoft.com> | Attorney-Client |
| 662 | Outlook Email | 8/31/2017 | 8/31/2017 | Correspondence among counsel regarding payment of September rent | Snitker, Gregg<gsnitker@aegonusa.com> | Barron, Robert<rbarron@bergersingerman.com> | Snitker, Gregg<gsnitker@aegonusa.com> | | Attorney-Client |
| 663 | Adobe Acrobat (PDF) | 8/31/2017 | | Correspondence regarding payment of September rent - attachment to privileged email | | | | | Attorney-Client; Work Product |
| 664 | Outlook Email | 8/31/2017 | 8/31/2017 | Correspondence among counsel regarding Operating Agreement | Barron, Robert<rbarron@bergersingerman.com> | Koewler, Jeffrey M.<jkoewler@delfinomadden.com>; Snitker, Gregg<gsnitker@aegonusa.com> | Taylor, Troy<ctroy@algongroup.com>; Rubin, Paul<prubin@algongroup.com>; Barron, Robert<rbarron@bergersingerman.com> | Snitker, Gregg<us_gsnitker@aegon.mail.onmicrosoft.com> | Attorney-Client |

4

A87

| DOC NUMBER | NATIVE TYPE | PARENT DATE | DOCUMENT DATE | DOCUMENT DESCRIPTION | FROM | TO | CC | BCC | PRIVILEGE BASIS |
|---|---|---|---|---|---|---|---|---|---|
| 665 | Outlook Email | 8/31/2017 | 8/31/2017 | Correspondence among counsel regarding JV formation | Barron, Robert<rbarron@bergersingerman.com> | Snitker, Gregg<gsnitker@aegonusa.com>; Koewler, Jeffrey M.<jkoewler@delfinomadden.com> | Barron, Robert<rbarron@bergersingerman.com>; Taylor, Troy<ctroy@algongroup.com>; Rubin...; Paul<spruhle@algongroup.com> | Snitker, Gregg<us_gsnitker@aegonmail.onmicrosoft.com> | Attorney-Client |
| 666 | Adobe Acrobat (PDF) | 8/31/2017 | 8/28/2017 | Documents regarding JV formation - attachment to privileged email | | | | | Attorney-Client |
| 672 | Outlook Email | 9/1/2017 | 9/1/2017 | Correspondence among legal counsel re. engagement letters, including counsel for JV | Snitker, Gregg<gsnitker@aegonusa.com> | Barron, Robert<rbarron@bergersingerman.com> | Snitker, Gregg<gsnitker@aegonusa.com> | | Attorney-Client |
| 673 | Microsoft Word 2003/2004 | 9/1/2017 | 9/1/2017 | Draft Aegon engagement letter - attachment to privileged email | | | | | Attorney-Client; Work Product |
| 674 | Microsoft Word 2003/2004 | 9/1/2017 | 9/1/2017 | Draft Aegon engagement letter - attachment to privileged email | | | | | Attorney-Client; Work Product |
| 675 | Outlook Email | 9/1/2017 | 9/1/2017 | Correspondence among legal counsel re. engagement letters, including counsel for JV | Barron, Robert<rbarron@bergersingerman.com> | Snitker, Gregg<gsnitker@aegonusa.com>; Koewler, Jeffrey M.<jkoewler@delfinomadden.com> | Barron, Robert<rbarron@bergersingerman.com>; Taylor, Troy<ctroy@algongroup.com>; Paul<spruhle@algongroup.com> | | Attorney-Client |
| 676 | Adobe Acrobat (PDF) | 9/1/2017 | | Compiled notice under Estoppel Agreement of Assignment - attachment to privileged email | | | | Snitker, Gregg<us_gsnitker@aegonmail.onmicrosoft.com> | Work Product |
| 677 | Outlook Email | 9/1/2017 | 9/1/2017 | Correspondence among legal counsel re. engagement letters, including counsel for JV | Snitker, Gregg<gsnitker@aegonusa.com> | Barron, Robert<rbarron@bergersingerman.com> | Snitker, Gregg<gsnitker@aegonusa.com> | | Attorney-Client |
| 678 | Microsoft Word 2003/2004 | 9/1/2017 | 9/1/2017 | Draft Aegon engagement letter - attachment to privileged email | | | | | Work Product |
| 679 | Microsoft Word 2003/2004 | 9/1/2017 | 9/1/2017 | Draft Aegon engagement letter - attachment to privileged email | | | | | Work Product |
| 680 | Outlook Email | 9/1/2017 | 9/1/2017 | Correspondence among legal counsel re. engagement letters, including counsel for JV | Barron, Robert<rbarron@bergersingerman.com> | Snitker, Gregg<gsnitker@aegonusa.com>; Koewler, Jeffrey M.<jkoewler@delfinomadden.com> | Barron, Robert<rbarron@bergersingerman.com>; Taylor, Troy<ctroy@algongroup.com>; Rubin, Paul<spruhle@algongroup.com> | | Attorney-Client |
| 681 | Adobe Acrobat (PDF) | 9/1/2017 | | Draft of engagement letter - attachment to privileged email | | | | Snitker, Gregg<us_gsnitker@aegonmail.onmicrosoft.com> | Attorney-Client; Work Product |

5

A88

| DOC NUMBER | NATIVE TYPE | PARENT DATE | DOCUMENT DATE | DOCUMENT DESCRIPTION | FROM | TO | CC | BCC | PRIVILEGE BASIS |
|---|---|---|---|---|---|---|---|---|---|
| 682 | Outlook Email | 9/1/2017 | 9/1/2017 | Correspondence among counsel regarding Consulting Agreement | Barron, Robert<rbarron@bergersingerman.co m> | Snitker, Gregg<gsnitker@aegonusa.com> | Barron, Robert<rbarron@bergersingerman.com> | Snitker, Gregg<us_gsnitker@ae gon.mail.onmicrosoft.c om> | Attorney-Client |
| 685 | Outlook Email | 9/5/2017 | 9/5/2017 | Email re: legal counsel for Consulting Agreement f | Martin, Lon<lon.martin@transamerica.com> | Frazier, Tami<tfrazier@aegonusa.com> | Feltman, David<dfeltman@aegonus a.com> | | Attorney-Client |
| 696 | Outlook Email | 9/7/2017 | 9/7/2017 | Email re: legal counsel as to initial capital contribution | Rubin, Paul<prubin@algongroup.com> | Feltman, David<dfeltman@aegonusa.com> | Taylor, Troy, Troy<troy@algongroup.co m> | | Attorney-Client; Work/Produc t |
| 697 | Adobe Acrobat (PDF) | 9/7/2017 | 9/6/2017 | Document outlining Rock Springs Drive, LLC Initial Cash Requirement for September 2017 - attachment to privileged email | | | | | Attorney-Client; Work Product |
| 707 | Outlook Email | 10/8/2017 | 10/8/2017 | Legal review of Assignment requirements and post-closing matters | Snitker, Gregg<gsnitker@aegonusa.com> | Schmitt, Bob<bob.schmitt@transamerica.co m>; Bean, Joshua<jbbean@aegonusa.com> | Snitker, Gregg<gsnitker@aegonusa .com> | | Attorney-Client |
| 726 | Outlook Email | 12/7/2017 | 12/7/2017 | Email regarding compilation of JV documents and legal analysis of same | Van Gorp, Greg<gvangorp@aegonusa.com> | Snitker, Gregg<gsnitker@aegonusa.com>; Smith, Elizabeth<elizabeth.smith@trans america.com> | Pithan, Matt<mpithan@aegonusa. com>; Bean, Joshua<jbbean@aegonusa .com>; Recker, Nick<nick.recker@transam erica.com> | | Attorney-Client |
| 728 | Outlook Email | 12/7/2017 | 12/7/2017 | Email from legal counsel regarding analysis of Assignment matters | Snitker, Gregg<gsnitker@aegonusa.com> | Van Gorp, Greg<gvangorp@aegonusa.com>; Smith, Elizabeth<elizabeth.smith@trans america.com>; Schmitt, Bob<bob.schmitt@transamerica.co m> | Pithan, Matt<mpithan@aegonusa. com>; Bean, Joshua<jbbean@aegonusa .com>; Recker, Nick<nick.recker@transam erica.com> | | Attorney-Client |
| 729 | Outlook Email | 12/8/2017 | 12/8/2017 | Email from legal counsel regarding analysis of Assignment matters | Schmitt, Bob<bob.schmitt@transamerica.com> | Snitker, Gregg<gsnitker@aegonusa.com>; Van Gorp, Greg<gvangorp@aegonusa.com>; Smith, Elizabeth<elizabeth.smith@trans america.com> | Pithan, Matt<mpithan@aegonusa. com>; Bean, Joshua<jbbean@aegonusa .com>; Recker, Nick<nick.recker@transam erica.com>; Gauld, Jonathan<jonathan.gauld @transamerica.com> | | Attorney-Client |
| 733 | Outlook Email | 12/15/2017 | 12/15/2017 | Email proving information to legal counsel as to consent re. membership interests being moved from IWA | Smith, Elizabeth<elizabeth.smith@transameri ca.com> | Bean, Joshua<jbbean@aegonusa.com> | Snitker, Gregg<gsnitker@aegonusa .com> | | Attorney-Client |
| 738 | Outlook Email | 1/12/2018 | 1/12/2018 | Correspondence regarding time entries for legal work of P. Rubin and T. Taylor, proving information to JV counsel | Rubin, Paul<prubin@algongroup.com> | Barron, Robert<rbarron@bergersingerman.c om>; Snitker, Gregg<gsnitker@aegonusa.com> | Feltman, David<dfeltman@aegonus a.com>; Van Gorp, Greg<gvangorp@aegonusa .com>; Taylor, Troy<troy@algongroup.co m> | | Attorney-Client |

9

| DOC NUMBER | NATIVE TYPE | PARENT DATE | DOCUMENT DATE | DOCUMENT DESCRIPTION | FROM | TO | CC | BCC | PRIVILEGE BASIS |
|---|---|---|---|---|---|---|---|---|---|
| 739 | Outlook Email | 1/12/2018 | 1/12/2018 | Email seeking advise from JV counsel regarding Assignment documents | Rubin, Paul<prubin@algongroup.com> | Barron, Robert<rbarron@bergersingerman.com>; Snitker, Greg<gsnitker@aegonusa.com> | Feltman, David<dfeltman@aegonusa.com>; Van Gorp, Greg<gvangorp@aegonusa.com>;Taylor, Troy<ttroy@algongroup.com> | | Attorney-Client |
| 742 | Outlook Email | 2/6/2018 | 2/6/2018 | Correspondence forwarding advice from tax appeal attorney | Feltman, David<dfeltman@aegonusa.com> | Rubin, Paul<prubin@algongroup.com> | Taylor, Troy<ttroy@algongroup.com> | | Attorney-Client |
| 743 | Outlook Email | 2/7/2018 | 2/7/2018 | Correspondence forwarding advice from tax appeal attorney | Rubin, Paul<prubin@algongroup.com> | Feltman, David<dfeltman@aegonusa.com> | Taylor, Troy<ttroy@algongroup.com> | | Attorney-Client |
| 746 | Outlook Email | 2/16/2018 | 2/16/2018 | Email exchange re. email from P. Rubin, JV counsel, re. Rock Springs Drive, LLC | Barron, Robert<rbarron@bergersingerman.co m> | Snitker, Greg<gsnitker@aegonusa.com> | Feltman, David<dfeltman@aegonusa.com> | | Attorney-Client |
| 749 | Outlook Email | 2/23/2018 | 2/23/2018 | Email exchange attaching letter from W. Bosch to R. Barron, originally provided by JV counsel to members | Rubin, Paul<prubin@algongroup.com> | Feltman, David<dfeltman@aegonusa.com> | Taylor, Troy<ttroy@algongroup.com> | | Attorney-Client; Work Product |
| 750 | Adobe Acrobat (PDF) | 2/23/2018 | | 2/22/18 Letter from W. Bosch to R. Barron re. Amended and Restated Ground Lease Indenture - attachment to correspondence from counsel. | | | | | Work Product |
| 753 | Outlook Email | 2/23/2018 | 2/23/2018 | Email providing JV member with advice given to JV member as to Landlord demand letter | Feltman, David<dfeltman@aegonusa.com> | Rubin, Paul<prubin@algongroup.com> | | | Attorney-Client; Work Product |
| 757 | Outlook Email | 3/14/2018 | 3/14/2018 | Email exchange with JV (Longshore and IWA) counsel regarding response to Arnold & Porter Feb 22 2018 Letter | Rubin, Paul<prubin@algongroup.com> | Feltman, David<dfeltman@aegonusa.com>; Snitker, Greg<gsnitker@aegonusa.com> | Taylor, Troy<ttroy@algongroup.com>; Barron, Robert<rbarron@bergersi ngerman.com> | | Attorney-Client |
| 758 | Microsoft Word 2010/2011 | 3/14/2018 | 3/14/2018 | Draft correspondence from R. Barron toW. Bosch re. amended and restated ground lease - attachment to privileged email | | | | | Attorney-Client; Work Product |
| 759 | Adobe Acrobat (PDF) | 3/14/2018 | 2/22/2018 | Correspondence from R. Barron to W. Bosch re. amended and restated ground lease - attachment to privileged email | | | | | Attorney-Client; Work Product |
| 760 | Outlook Email | 3/14/2018 | 3/14/2018 | Email exchange with JV (Longshore and IWA) counsel regarding response to Arnold & Porter Feb 22 2018 letter | Rubin, Paul<prubin@algongroup.com> | Feltman, David<dfeltman@aegonusa.com>; Snitker, Greg<gsnitker@aegonusa.com> | Taylor, Troy<ttroy@algongroup.co m>; Barron, Robert<rbarron@bergersi ngerman.com> | | Attorney-Client |
| 761 | Microsoft Word 2010/2011 | 3/14/2018 | 3/14/2018 | Draft Letter from R. Barron to W. Bosch re. Amended and Restated Ground Lease Indenture - attachment to privileged email | | | | | Work Product |
| 774 | Outlook Email | 3/27/2018 | | Email among counsel re. Management Agreement | Barron, Robert<rbarron@bergersingerman.co m> | Snitker, Greg<gsnitker@aegonusa.com> | Barron, Robert<rbarron@bergersi ngerman.com> | | Work Product |
| 775 | Microsoft Word 2013 | 3/27/2018 | | Algon Management Agreement - attachment to privileged email | | | | | Work Product |
| 776 | Outlook Email | 3/27/2018 | 3/27/2018 | Email among counsel re. Management Agreement | Barron, Robert<rbarron@bergersingerman.co m> | Snitker, Greg<gsnitker@aegonusa.com> | Barron, Robert<rbarron@bergersi ngerman.com> | | Attorney-Client |

A90

| DOC NUMBER | NATIVE TYPE | PARENT DATE | DOCUMENT DATE | DOCUMENT DESCRIPTION | FROM | TO | CC | BCC | PRIVILEGE BASIS |
|---|---|---|---|---|---|---|---|---|---|
| 777 | Outlook Email | 3/29/2018 | 3/29/2018 | Email among counsel re: Management Agreement | Snitker, Gregg<gsnitker@bergersingerman.com> | Barron, Robert<rbarron@bergersingerman.com> | | | Attorney-Client |
| 779 | Outlook Email | 4/5/2018 | 4/5/2018 | Email among counsel re: Management Agreement re: Ground Lease | Snitker, Gregg<gsnitker@aegonusa.com> | Barron, Robert<rbarron@aegonusa.com> | Snitker, Gregg<gsnitker@aegonusa.com> | | Attorney-Client |
| 780 | Microsoft Word 2013 | 4/5/2018 | | Management Agreement - attachment to privileged email | | | | | Attorney-Client; WorkProduct |
| 781 | Outlook Email | 4/6/2018 | 4/6/2018 | Email exchange re: Rock Springs Drive Operating Agreement, conveying legal advice from G. Snitker | Feltman, David<dfeltman@aegonusa.com> | Van Gorp, Gregg<gvangorp@aegonusa.com>; Snitker, Gregg<gsnitker@bergersingerman.com> | Johnson, Brenda<bdjohnson@aegonusa.com>; Johansen, Derek C<derek.johansen@transamerica.com>; Hutchinson, Neal<neal.hutchinson@transamerica.com> | | Attorney-Client; Work Product |
| 782 | Outlook Email | 4/25/2018 | 4/25/2018 | Email exchange from JV member conveying counsel from JV (Longshore and IWA) counsel re: letter from Landlord's counsel re: Ground Lease | Taylor, Troy<troy@algongroup.com> | Feltman, David<dfeltman@aegonusa.com> | | | Attorney-Client; Work Product |
| 783 | Outlook Email | 4/25/2018 | 4/25/2018 | Email exchange from JV member conveying counsel from JV (Longshore and IWA) counsel re: letter from Landlord's counsel re: Ground Lease | Taylor, Troy<troy@algongroup.com> | Feltman, David<dfeltman@aegonusa.com> | | | Attorney-Client |
| 784 | Adobe Acrobat (PDF) | 4/25/2018 | | 4/25/18 Correspondence from W. Bosch to R. Barron re: Amended and Restated Ground Lease Indenture - attachment to privileged email | | | | | Attorney-Client; Work Product |
| 792 | Outlook Email | 9/7/2018 | 9/7/2018 | Email exchange re: call with JV attorney to discuss Property | Feltman, David<dfeltman@aegonusa.com> | Guso, Jordi<JGuso@bergersingerman.com>; Taylor, Troy<troy@algongroup.com> | | | Attorney-Client |
| 828 | Outlook Email | 12/14/2018 | 12/14/2018 | Email re: call with JV attorney to discuss Property matters | Taylor, Troy<troy@algongroup.com> | Barron, Robert<rbarron@bergersingerman.com>; Guso, Jordi<JGuso@bergersingerman.com> | Barron, Robert<rbarron@bergersingerman.com>; Rubin, Paul<prubin@algongroup.com> | | Attorney-Client |
| 829 | Outlook Email | 12/16/2018 | 12/16/2018 | Email exchange with JV counsel re: revised and redlined versions of indemnification agreements | Taylor, Troy<troy@algongroup.com> | Barron, Robert<rbarron@bergersingerman.com>; Guso, Jordi<JGuso@bergersingerman.com> | Feltman, David<dfeltman@aegonusa.com>; Rubin, Paul<prubin@algongroup.com> | | Attorney-Client |
| 830 | Outlook Email | 12/16/2018 | 12/16/2018 | Email exchange re: scheduling of call with JV attorney to discuss Property | Guso, Jordi<JGuso@bergersingerman.com> | Taylor, Troy<troy@algongroup.com> | Barron, Robert<rbarron@bergersingerman.com>; Feltman, David<dfeltman@aegonusa.com>; Rubin, Paul<prubin@algongroup.com> | | Attorney-Client |

8

A91

Case 8:20-cv-01502-PJM   Document 238-1   Filed 01/25/23   Page 68 of 77

| DOC NUMBER | NATIVE TYPE | PARENT DATE | DOCUMENT DATE | DOCUMENT DESCRIPTION | FROM | TO | CC | BCC | PRIVILEGE BASIS |
|---|---|---|---|---|---|---|---|---|---|
| 831 | Outlook Email | 12/16/2018 | 12/16/2018 | Email exchange re. scheduling of call with IV attorney to discuss Property | Taylor, Troy<troy@algongroup.com> | Guso, Jordi<JGuso@bergersingerman.com> | Barron, Robert<rbarron@bergersingerman.com>; Feltman, David<dfeltman@aegonusa.com>; Rubin, Paul<prubin@algongroup.com> | | Attorney-Client |
| 835 | Outlook Email | 12/17/2018 | 12/17/2018 | Calendar invite for call with IV attorney to discuss Property | Rubin, Paul<prubin@algongroup.com> | Taylor, Troy<troy@algongroup.com>; Guso, Jordi<JGuso@bergersingerman.com> | Barron, Robert<rbarron@bergersingerman.com>; Feltman, David<dfeltman@aegonusa.com> | | Attorney-Client |
| 836 | Outlook Email | 12/17/2018 | 12/17/2018 | Email re. calendar invite for call with IV attorney to discuss Property | Guso, Jordi<JGuso@bergersingerman.com> | Rubin, Paul<prubin@algongroup.com> | Taylor, Troy<troy@algongroup.com>; Barron, Robert<rbarron@bergersingerman.com>; Feltman, David<dfeltman@aegonusa.com> | | Attorney-Client |
| 837 | Outlook Email | 12/17/2018 | 12/17/2018 | Email exchange with IV attorney regarding legal department contacts at Aegon | Guso, Jordi<JGuso@bergersingerman.com> | Feltman, David<dfeltman@aegonusa.com>; Barron, Robert<rbarron@bergersingerman.com> | | | Attorney-Client |
| 848 | Outlook Appointment | 12/18/2018 | 12/18/2018 | Outlook calendar appointment re scheduling IV call, with IV counsel | Guso, Jordi<JGuso@bergersingerman.com> | Hansen, Aron<ahansen@aegonusa.com>; Snitker, Gregg<gsnitker@aegonusa.com>; Barron, Robert<rbarron@bergersingerman.com> | | | Attorney-Client |
| 858 | Outlook Email | 12/27/2018 | 12/27/2018 | Email from legal counsel re. amendment to Operating Agreement | Snitker, Gregg<gsnitker@aegonusa.com> | Barron, Robert<rbarron@bergersingerman.com> | Snitker, Gregg<gsnitker@aegonusa.com>; Minzenmeyer, Peggy<pminzenmeyer@aegonusa.com>; Koluch, Nick<nkoluch@aegonusa.com>; Johnson, Brenda<bdjohnson@aegonusa.com> | | Attorney-Client |
| 859 | Adobe Acrobat (PDF) | 12/27/2018 | | First Amendment to Operating Agreement - attachment to privileged email | | | | | Work Product |
| 863 | Outlook Email | 12/27/2018 | 12/27/2018 | Email exchange between inhouse counsel and IV counsel re. amendment to Operating Agreement | Barron, Robert<rbarron@bergersingerman.com> | Snitker, Gregg<gsnitker@aegonusa.com> | Barron, Robert<rbarron@bergersingerman.com> | | Attorney-Client |
| 864 | JPEG File Interchange | 12/27/2018 | | 6560 First Amendment to Operating Agreement - attachment to privileged email - attachment to privileged email | | | | | Attorney-Client; Work Product |
| 867 | Outlook Email | 12/28/2018 | 12/28/2018 | Email exchange re. CREF-C Conference in Miami and introduction | Sowka, James B<jsowka@wyllarith.com> | Osterhaus, Lara<losterha@aegonusa.com>; Feltman, David<dfeltman@aegonusa.com> | | svqpsbduplicationsvqpsbduplication@transamerica.com> | Attorney-Client |

9

A92

| DOC NUMBER | NATIVE TYPE | PARENT DATE | DOCUMENT DATE | DOCUMENT DESCRIPTION | FROM | TO | CC | BCC | PRIVILEGE BASIS |
|---|---|---|---|---|---|---|---|---|---|
| 878 | Outlook Email | 1/24/2019 | 1/24/2019 | Legal counsel discussion regarding Management Agreement | Barron, Robert<rbarron@bergersingerman.com> | Snitker, Gregg<gsnitker@aegonusa.com> | Barron, Robert<rbarron@bergersingerman.com>; Rubin, Paul<prubin@lalgongroup.com> | | Attorney-Client |
| 879 | Adobe Acrobat (PDF) | 1/24/2019 | | Management Agreement - attachment to privilege email | | | | | Attorney-Client |
| 887 | Outlook Email | 3/12/2019 | 3/12/2019 | Scan of draft Operating Amendment provided by counsel | xerox7845@transamerica.com | Koluch, Nick<nkoluch@aegonusa.com> | | | Attorney-Client; Work/Product |
| 889 | Outlook Email | 3/12/2019 | 3/12/2019 | Email re. legal review of Operating Agreement Amendment | Minzenmeyer, Peggy<pminzenmeyer@aegonusa.com> | Barron, Robert<rbarron@bergersingerman.com> | Snitker, Gregg<gsnitker@aegonusa.com>; Koluch, Nick<nkoluch@aegonusa.com>; Young, Anita L<aiyoung@aegonusa.com> | | Attorney-Client |
| 890 | Adobe Acrobat (PDF) | 3/12/2019 | 3/12/2019 | Operating Agreement Amendment - attachment to privileged email | | | | | Work Product |
| 894 | Outlook Email | 3/12/2019 | 3/12/2019 | Email re. legal review of Operating Agreement Amendment | Barron, Robert<rbarron@bergersingerman.com> | Minzenmeyer, Peggy<pminzenmeyer@aegonusa.com> | Snitker, Gregg<gsnitker@aegonusa.com>; Koluch, Nick<nkoluch@aegonusa.com>; Young, Anita L<aiyoung@aegonusa.com>; Taylor, Troy<troy@lalgongroup.com>; Rubin, Paul<prubin@lalgongroup.com> | | Attorney-Client |
| 895 | Outlook Email | 3/12/2019 | 3/12/2019 | Email re. legal review of Operating Agreement Amendment | Taylor, Troy<troy@lalgongroup.com> | Barron, Robert<rbarron@bergersingerman.com> | Minzenmeyer, Peggy<pminzenmeyer@aegonusa.com>; Snitker, Gregg<gsnitker@aegonusa.com>; Koluch, Nick<nkoluch@aegonusa.com>; Young, Anita L<aiyoung@aegonusa.com>; Rubin, Paul<prubin@lalgongroup.com> | | Attorney-Client |
| 896 | Outlook Email | 3/12/2019 | 3/12/2019 | Email re. legal review of Operating Agreement Amendment | Barron, Robert<rbarron@bergersingerman.com> | Minzenmeyer, Peggy<pminzenmeyer@aegonusa.com> | Snitker, Gregg<gsnitker@aegonusa.com>; Koluch, Nick<nkoluch@aegonusa.com>; Young, Anita L<aiyoung@aegonusa.com>; Taylor, Troy<troy@lalgongroup.com>; Rubin, Paul<prubin@lalgongroup.com>; Barron, Robert<rbarron@bergersingerman.com> | | Attorney-Client |

10

A93

| DOC NUMBER | NATIVE TYPE | PARENT DATE | DOCUMENT DATE | DOCUMENT DESCRIPTION | FROM | TO | CC | BCC | PRIVILEGE BASIS |
|---|---|---|---|---|---|---|---|---|---|
| 897 | Outlook Email | 3/12/2019 | 3/12/2019 | Correspondence regarding Second Amendment to Operating Agreement | Mintzemeyer, Peggy<pmintzemeyer@bergersingerman.co> | Barron, Robert<rbarron@bergersingerman.com> | Snitker, Gregg<gsnitker@aegonusa.com>; Koluch, Nick<nickoluch@aegonusa.com>; Young, Anita L<ayoung@aegonusa.com>; Taylor, Troy<troy@algongroup.com>; Rubin, Paul<prubin@algongroup.com> | | Attorney-Client |
| 898 | Outlook Email | 3/12/2019 | 3/12/2019 | Email re. legal review of Operating Agreement Amendment | Barron, Robert<rbarron@bergersingerman.com> | Mintzemeyer, Peggy<pmintzemeyer@aegonusa.com> | Snitker, Gregg<gsnitker@aegonusa.com>; Koluch, Nick<nickoluch@aegonusa.com>; Young, Anita L<ayoung@aegonusa.com>; Taylor, Troy<troy@algongroup.com>; Rubin, Paul<prubin@algongroup.com> | | Attorney-Client |
| 899 | Outlook Email | 3/12/2019 | 3/12/2019 | Email re. legal review of Operating Agreement Amendment | Mintzemeyer, Peggy<pmintzemeyer@aegonusa.com> | Barron, Robert<rbarron@bergersingerman.com> | Snitker, Gregg<gsnitker@aegonusa.com>; Koluch, Nick<nickoluch@aegonusa.com>; Young, Anita L<ayoung@aegonusa.com>; Taylor, Troy<troy@algongroup.com>; Rubin, Paul<prubin@algongroup.com> | | Attorney-Client |
| 924 | Outlook Email | 4/12/2019 | 4/12/2019 | Email form legal counsel re. Federal and State Contract Audit | Hansen, Aron<ahansen@aegonusa.com> | Sidwell, Sara<sara.sidwell@transamerica.com> | | | Attorney-Client; Work/Product |
| 931 | Outlook Email | 5/3/2019 | 5/3/2019 | Email among legal counsel re. proposed tenants for Rock Springs Drive | Barron, Robert<rbarron@bergersingerman.com> | Snitker, Gregg<gsnitker@aegonusa.com> | Barron, Robert<rbarron@bergersingerman.com>; Guso, Jordi<JGuso@bergersingerman.com> | | Attorney-Client |
| 939 | Outlook Email | 5/10/2019 | 5/10/2019 | Legal communication regarding audit of various properties | Snitker, Gregg<gsnitker@aegonusa.com> | Sidwell, Sara<sara.sidwell@transamerica.com> | Snitker, Gregg<gsnitker@aegonusa.com> | | Attorney-Client |
| 946 | Outlook Email | 5/13/2019 | 5/13/2019 | Email re. legal review of Operating Agreement Amendment and funding request | Taylor, Troy<troy@algongroup.com> | Koluch, Nick<nickoluch@aegonusa.com>; Rubin, Paul<prubin@algongroup.com> | Barron, Robert<rbarron@bergersingerman.com> | | Attorney-Client |
| 947 | Outlook Email | 5/13/2019 | 5/13/2019 | Discussion between counsel regarding amendment to Operating Agreement | Barron, Robert<rbarron@bergersingerman.com> | Snitker, Gregg<gsnitker@aegonusa.com> | Barron, Robert<rbarron@bergersingerman.com> | | Attorney-Client |
| 948 | Outlook Email | 5/13/2019 | 5/13/2019 | Discussion between legal counsel regarding amendment to Operating Agreement | Snitker, Gregg<gsnitker@aegonusa.com> | Barron, Robert<rbarron@bergersingerman.com> | Snitker, Gregg<gsnitker@aegonusa.com> | | Attorney-Client |

11

A94

| DOC NUMBER | NATIVE TYPE | PARENT DATE | DOCUMENT DATE | DOCUMENT DESCRIPTION | FROM | TO | CC | BCC | PRIVILEGE BASIS |
|---|---|---|---|---|---|---|---|---|---|
| 949 | Adobe Acrobat (PDF) | 5/13/2019 | | Draft Amendment to Operating Agreement | | | | | Attorney-Client; Work Product |
| 952 | Outlook Email | 5/16/2019 | 5/16/2019 | Discussion between legal counsel regarding amendment to Operating Agreement | Minzenmeyer, Peggy<pminzenmeyer@aegonusa.com > | Barron, Robert<rbarron@bergersingerman.c om> | Snitker, Gregg<gsnitker@aegonusa .com> | | Attorney-Client |
| 953 | Adobe Acrobat (PDF) | 5/16/2019 | | Draft Amendment to Operating Agreement - attachment to privileged email | | | | | Attorney-Client; Work Produc t |
| 955 | Outlook Email | 5/16/2019 | 5/16/2019 | Discussion between legal counsel regarding amendment to Operating Agreement | Barron, Robert<rbarron@bergersingerman.co m> | Minzenmeyer, Peggy<pminzenmeyer@aegonusa.co m> | Snitker, Gregg<gsnitker@aegonusa .com> | | Attorney-Client |
| 958 | Outlook Email | 5/20/2019 | 5/20/2019 | Discussion between legal counsel regarding amendment to Operating Agreement | Barron, Robert<rbarron@bergersingerman.co m> | Minzenmeyer, Peggy<pminzenmeyer@aegonusa.co m> Snitker, Gregg<gsnitker@aegonusa.com> | Barron, Robert<rbarron@bergersi ngerman.com> | | Attorney-Client |
| 959 | Adobe Acrobat (PDF) | 5/20/2019 | 5/20/2019 | Draft Amendment to Operating Agreement | | | | | Attorney-Client; Work Produc t |
| 968 | Outlook Email | 6/12/2019 | 6/12/2019 | Correspondence from JV counsel regarding letter from landlord litigation counsel | Barron, Robert<rbarron@bergersingerman.co m> | Snitker, Gregg<gsnitker@bergersingerman.com> | Barron, Robert<rbarron@bergersi ngerman.com>; Guso, Jordi<JGuso@bergersinger man.com> | | Attorney-Client |
| 969 | Microsoft Word 2007/2008 | 6/12/2019 | 6/12/2019 | Draft of Dispute Communication Prepared by Joint Venture Counsel, attachment to privileged email | | | | | Attorney-Client; Work Product |
| 972 | Outlook Email | 6/17/2019 | 6/17/2019 | Email re Rock Springs Drive letter from landlord's attorney forwarded to IV partners in email by IV counsel | Rubin, Paul<prubin@algongroup.com> | Koluch, Nick<nikoluch@aegonusa.com> | Taylor, Troy<ttroy@algongroup.co m> | | Attorney-Client |
| 973 | Outlook Email | 6/17/2019 | 6/17/2019 | Email regarding call for GSA Request for lease proposal, forwarding communication from JV counsel | Rubin, Paul<prubin@algongroup.com> | Koluch, Nick<nikoluch@aegonusa.com> | Taylor, Troy<ttroy@algongroup.co m> | | Attorney-Client |
| 979 | Outlook Email | 6/18/2019 | 6/18/2019 | Personal Time Off of in-house counsel team | Barron, Robert<rbarron@bergersingerman.co m> | Snitker, Gregg<gsnitker@aegonusa.com> | Barron, Robert<rbarron@bergersi ngerman.com>; Guso, Jordi<JGuso@bergersinger man.com> | | Attorney-Client |
| 980 | Outlook Email | 6/19/2019 | 6/19/2019 | Email re. legal review of Operating Agreement Amendment and funding request | Koluch, Nick<nikoluch@aegonusa.com> | Taylor, Troy<ttroy@algongroup.com> | Rubin, Paul<prubin@algongroup. com>; Barron, Robert<rbarron@bergersi ngerman.com> | | Attorney-Client |
| 982 | Outlook Email | 6/19/2019 | 6/19/2019 | Email re fifth amendment to operating agreement for Rock Springs LLC, including counsel for IV | Taylor, Troy<ttroy@algongroup.com> | Koluch, Nick<nikoluch@aegonusa.com> | Rubin, Paul<prubin@algongroup. com>; Barron, Robert<rbarron@bergersi ngerman.com> | | Attorney-Client |
| 987 | Outlook Email | 6/26/2019 | 6/26/2019 | Correspondence from JV counsel regarding communication from landlord | Barron, Robert<rbarron@bergersingerman.co m> | Snitker, Gregg<gsnitker@aegonusa.com> | Barron, Robert<rbarron@bergersi ngerman.com> | | Attorney-Client |

A95

Case 8:20-cv-01502-PJM   Document 238-1   Filed 01/25/23   Page 72 of 77

| DOC NUMBER | NATIVE TYPE | PARENT DATE | DOCUMENT DATE | DOCUMENT DESCRIPTION | FROM | TO | CC | BCC | PRIVILEGE BASIS |
|---|---|---|---|---|---|---|---|---|---|
| 995 | Outlook Email | 7/3/2019 | 7/3/2019 | Correspondence with JV counsel regarding scheduling of meeting to discuss operations | Barron, Robert<rbarron@bergersingerman.com> | Snitker, Gregg<gsnitker@aegonusa.com> | Sellers, Fiketa<fsellers@bergersingerman.com>; Barron, Robert<rbarron@bergersingerman.com>; Guso, Jordi<jguso@bergersingerman.com> | | Attorney-Client |
| 996 | Outlook Email | 7/3/2019 | 7/3/2019 | Correspondence with JV counsel regarding scheduling of meeting to discuss operations | Snitker, Gregg<gsnitker@aegonusa.com> | Barron, Robert<rbarron@bergersingerman.com> | | | Attorney-Client |
| 997 | Outlook Email | 7/3/2019 | 7/3/2019 | Correspondence with JV counsel regarding scheduling of meeting to discuss operations | Barron, Robert<rbarron@bergersingerman.com> | Snitker, Gregg<gsnitker@aegonusa.com> | Guso, Jordi<jguso@bergersingerman.com> | | Attorney-Client |
| 998 | Outlook Email | 7/3/2019 | 7/3/2019 | Correspondence with JV counsel regarding scheduling of meeting to discuss operations | Barron, Robert<rbarron@bergersingerman.com> | Snitker, Gregg<gsnitker@aegonusa.com> | Guso, Jordi<jguso@bergersingerman.com> | | Attorney-Client |
| 999 | Outlook Email | 7/11/2019 | 7/11/2019 | Correspondence with JV counsel regarding scheduling of meeting to discuss operations | Barron, Robert<rbarron@bergersingerman.com> | Snitker, Gregg<gsnitker@aegonusa.com> | Barron, Robert<rbarron@bergersingerman.com>; Guso, Jordi<jguso@bergersingerman.com> | | Attorney-Client |
| 1003 | Outlook Email | 7/19/2019 | 7/19/2019 | Legal counsel regarding Assignment and Letter from Landlord | Barron, Robert<rbarron@bergersingerman.com> | Snitker, Gregg<gsnitker@aegonusa.com> | Barron, Robert<rbarron@bergersingerman.com> | | Attorney-Client |
| 1060 | Outlook Email | 9/18/2019 | 9/18/2019 | Email re: legal review of Operating Agreement Amendment and funding request | Sowka, James B<jsowka@seyfarth.com> | Minzenmeyer, Peggy<pminzenmeyer@aegonusa.com>; Snitker, Gregg<gsnitker@aegonusa.com> | | svqpspdeduplicationsvcqpsdeduplication@transamerica.com> | Attorney-Client |
| 1069 | Outlook Email | 9/20/2019 | 9/20/2019 | Email re: legal review of Operating Agreement Amendment and written consent | Sowka, James B<jsowka@seyfarth.com> | Minzenmeyer, Peggy<pminzenmeyer@aegonusa.com> | Snitker, Gregg<gsnitker@aegonusa.com> | svqpspdeduplicationsvcqpsdeduplication@transamerica.com> | Attorney-Client |
| 1081 | Outlook Email | 10/21/2019 | 10/21/2019 | Legal counsel from JV counsel regarding issues raised by Landlord's counsel | Barron, Robert<rbarron@bergersingerman.com> | Snitker, Gregg<gsnitker@aegonusa.com> | Barron, Robert<rbarron@bergersingerman.com>; Guso, Jordi<jguso@bergersingerman.com> | | Attorney-Client |
| 1082 | Adobe Acrobat (PDF) | 10/21/2019 | 10/17/2019 | Summary of Algon Group Fees as examples from prior engagements - attachment to privileged email | | | | | Attorney-Client; Work Product |
| 1083 | Outlook Email | 10/22/2019 | 10/22/2019 | Email exchange among counsel regarding and attaching Summary of Algon Group Fees | Barron, Robert<rbarron@bergersingerman.com> | Snitker, Gregg<gsnitker@aegonusa.com> | Barron, Robert<rbarron@bergersingerman.com> | | Attorney-Client |
| 1084 | Adobe Acrobat (PDF) | 10/22/2019 | 10/18/2019 | Summary of Algon Group Fees as examples from prior engagements - attachment to privileged email | | | | | Attorney-Client |
| 1095 | Outlook Email | 12/20/2019 | 12/20/2019 | Email re: legal review of Operating Agreement Amendment and funding request | Taylor, Troy<troy@algongroup.com> | Koluch, Nick<nkoluch@aegonusa.com> | Rubin, Paul<prubin@algongroup.com>; Barron, Robert<rbarron@bergersingerman.com> | | Attorney-Client |

13

A96

| DOC NUMBER | NATIVE TYPE | PARENT DATE | DOCUMENT DATE | DOCUMENT DESCRIPTION | FROM | TO | CC | BCC | PRIVILEGE BASIS |
|---|---|---|---|---|---|---|---|---|---|
| 1096 | Outlook Email | 12/20/2019 | 12/20/2019 | Email re. legal review of Operating Agreement Amendment and funding request | Koluch, Nick<nkoluch@aegonusa.com> | Taylor, Troy<troy@algongroup.com> | Rubin, Paul<prubin@algongroup.com>; Barron, Robert<rbarron@bergersingerman.com> | | Attorney-Client |
| 1097 | Outlook Email | 12/20/2019 | 12/20/2019 | Email re seventh amendment to operating agreement for Rock Springs Drive LLC, including JV counsel | Barron, Robert<rbarron@bergersingerman.com> | Taylor, Troy<troy@algongroup.com>; Koluch, Nick<nkoluch@aegonusa.com> | Rubin, Paul<prubin@algongroup.com> | | Attorney-Client |

14

A97

# EXHIBIT O

**Date:** Wed, 17 Jul 2019 7:20:30 AM -0400
**Sent:** Wed, 17 Jul 2019 7:20:28 AM -0400
**Subject:** RE: MD property tax
**From:** prubin@algongroup.com
**To:** 'Van Gorp, Greg' <gvangorp@Aegonusa.com>; 'Troy Taylor' <troy@algongroup.com>;
**CC:** 'Johnson, Brenda' <bdjohnson@Aegonusa.com>;

All,
FYI, the Tax bill will continue to come to IWA because Dave, with attorney's blessing, preferred to not have the transfer of ownership recorded in County records. I have spoken to the County, who will not change the address without a recorded document.

Paul F. Rubin
Longshore Ventures LLC
Cell: 215-570-8716

**From:** Van Gorp, Greg <gvangorp@Aegonusa.com>
**Sent:** Tuesday, July 16, 2019 4:55 PM
**To:** prubin@algongroup.com; 'Troy Taylor' <troy@algongroup.com>
**Cc:** Johnson, Brenda <bdjohnson@Aegonusa.com>
**Subject:** FW: MD property tax

Attached is a 7/1/2019-6/30/2020 property tax bill from Montgomery County for the property at 6560 Rock Springs Drive.

**Greg Van Gorp**
Realty Accounting
T 319 355 8661

**From:** Jordan, William
**Sent:** Tuesday, July 16, 2019 11:30 AM
**To:** Van Gorp, Greg <gvangorp@Aegonusa.com>
**Subject:** MD property tax

Greg – would this be for you?  Thanks, Bill

William R Jordan | Senior Accountant - Tax | CFO Tax
o: 319-355-7051
e: william.jordan@transamerica.com  | w: www.transamerica.com

Transamerica
6400 C Street SW Mail Stop 2H Cedar Rapids, IA 52499-3210

CONFIDENTIALITY:  This message and accompanying documents are intended only for use by the individual or entity to which they are addressed and may contain information that is privileged, confidential, or exempt from disclosure under applicable law. If the reader of this document is not the intended recipient, you are hereby notified you are strictly prohibited from reading, disseminating, distributing, or copying this communication. If you have received this document in error, please notify sender immediately and destroy the original transmission.

Archiving Notice: Recipients should be aware that all emails exchanged with sender are automatically archived and may be accessed at any time by duly authorized persons and may be produced to other parties, including public authorities, in compliance with applicable laws.

RSD-014780

A99

# EXHIBIT P

**Longshore Ventures LLC**
**2457 Collins Avenue - PH2**
**Miami Beach, FL 33140**

**Memorandum**

To: Troy Taylor

CC: Files

From: Paul Rubin

Date: 5.10.19


Re: GSA RFP Update


Paul Hood, CBRE, called last week to tell us of his conversation with GSA's brokers. He learned that Rock Springs Drive, LLC  proposed pricing was "in the range" of other proposals for the first round and that we would be receiving our deficiency letter shortly. The deficiency letter outlines all of those uncompleted items and contingencies needed to be resolved to proceed to the next round of negotiations.


On May 2 I received the Deficiency letter from CBRE and shared it with both Troy Taylor and Nick Koluch for review.


Today I spoke with Nick Koluch again, who informed me that IWA and affiliates would not be willing to finance or provide credit enhancement for the approximately $17 million financing that would be needed to advance the GSA proposal. Without IWA financing or credit enhancement Longshore believes that the proposal is not financeable from a third party, due to the amount of the ground lease payments.


Additionally, Nick told me that IWA and affiliates will not register as a "government contractor". The GSA proposal process requires lessors to register on the GSA's "System for Award Management" site. One requirement for registration is that all principal owners of an entity must also register (to avoid contractors using shell entities to hide their identity).


Due to IWA's refusal to register with GSA and the financing issues, we informed CBRE today that Rock Springs Drive, LLC would not be proceeding with the GSA proposal, answering the deficiency letter or spending any more funds on this effort.

RSD-002884

A101

# EXHIBIT B

## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF MARYLAND
### (Greenbelt Division)

|  |  |
|---|---|
| ROCK SPRING PLAZA II, LLC, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | )  Civil Action No. 20-cv-01502-PJM |
| | ) |
| INVESTORS WARRANTY OF AMERICA, LLC, et al., | ) |
| | ) |
| Defendants. | ) |
| | ) |

**DEFENDANT INVESTORS WARRANTY OF AMERICA, LLC'S RESPONSE IN OPPOSITION TO PLAINTIFF ROCK SPRING PLAZA II, LLC'S MOTION TO COMPEL AND REQUEST FOR *IN CAMERA* REVIEW OF PRIVILEGED DOCUMENTS**

Plaintiff Rock Spring Plaza II, LLC ("Plaintiff") brought this lawsuit against Defendants Investors Warranty of America, LLC ("IWA") and Rock Springs Drive, LLC ("RSD") (collectively, "Defendants") more than two-and-a-half years ago, asserting multiple fraud-based claims. Plaintiff has been given chance after chance to show the Court evidence of fraud. Yet, years into this litigation, Plaintiff still cannot show any evidence of actual fraud. At the most recent hearing, the Court even noted that, "[r]ight now, I'm straining to see what the fraud would be." *See, e.g.*, Hr'g Tr. 29:8, October 13, 2022 (ECF 185-1). Plaintiff now seeks the extraordinary step of asking the Court to pierce the attorney-client privilege between IWA and its counsel and conduct a fishing expedition.

The problem for Plaintiff is that it cannot meet the standard under this narrow exception. Unable to find even a single document demonstrating fraud in the approximately 52,000 pages of documents Defendants have produced, Plaintiff still does not concede that this is a breach of

A103

contract case. Instead, Plaintiff cherry-picks language from two emails and twists their meanings in an attempt to create fraud out of thin air—all without deposing a single witness to ask them what the emails mean. Neither of these emails relate to the Assignment at issue. Also, IWA has already presented admissible and conclusive testimony that these two documents are not relevant to Plaintiff's fraud allegations and do not support fraud.[1] *See* Declaration of David Feltman ("Feltman Declaration") dated October 6, 2021 (ECF 132-10).

The Court should deny Plaintiff's Motion to Compel (the "Motion") for several independent reasons. First, Plaintiff cannot demonstrate a *prima facie* evidence of fraud, and Plaintiff most certainly cannot show that James Sowka, a partner at Seyfarth Shaw, assisted IWA to perpetrate a fraud. Therefore, the crime-fraud exception does not apply. Second, Plaintiff's contention that Defendants are not entitled to common-interest protections is meritless. Plaintiff itself created the requisite "common interest about a legal matter" when it made pre-litigation demands that challenged: the Assignment, the parties' contracts, the formation of the joint venture comprised of members from each of the Defendants, and related property interests of Defendants. Third, this Court does not require parties to include post-litigation documents on privilege logs, and there is no compelling reason why Plaintiff needs to know what IWA is doing in 2023 to defend a lawsuit that was filed for a fraud that Plaintiff alleges took place in 2017.

**FACTUAL BACKGROUND**

Plaintiff and Defendants agreed to produce privilege logs on September 21, 2022. RSD and IWA met their obligations and timely produced their logs. Plaintiff produced its own log on September 22, 2022. Defendants have each identified deficiencies in Plaintiff's privilege log,

---

[1] This matter has been briefed extensively. Accordingly, to avoid further repetitiveness, terms not otherwise defined herein (e.g., Assignment, Ground Lease) shall have the meanings ascribed to them in IWA's recent Brief filed December 19, 2022 (ECF 200).

91229757v.1

A104

and they have separately exchanged letters with Plaintiff requesting revisions and the production

of non-privileged documents.  On September 27, 2022, Plaintiff sent a letter to IWA making

mostly frivolous challenges to IWA's privilege log (the "IWA Privilege Log").  In that initial

correspondence, Plaintiff requested additional information as to certain privilege designations,

and Plaintiff asked IWA to supplement the IWA Privilege Log to include post-litigation

documents.  Plaintiff did not raise the crime-fraud exception, nor did Plaintiff raise that it felt

certain documents were improperly withheld pursuant to the common-interest protections.

By letter dated October 7, 2022, IWA fully responded to each of Plaintiff's concerns,

citing specific Maryland and federal authority that confirmed that all required information was

provided in the IWA Privilege Log.  IWA further confirmed that it reviewed certain withheld

documents, and that as a result of that review, it was producing additional documents.  IWA then

produced an amended privilege log ("Amended Privilege Log").[2]  Regarding Plaintiff's request

for post-litigation documents, IWA contested the relevance of those documents, and provided

sufficient authority supporting the omission of that information from its log.

On November 3, 2022, Plaintiff wrote IWA again, alleging that the Amended Privilege

Log was defective because Plaintiff could not determine whether certain documents were

standalone documents or attachments.  Plaintiff also again raised the omission of post-litigation

documents, and stated it had a special entitlement to the information:

---

[2] Plaintiff notes in its Motion that IWA's Amended Log had more pages, but fewer documents. The added length was due to the reformatting that Plaintiff itself had requested.  Also regarding length, Plaintiff itself collected documents only from the email inbox (and not the sent mailbox) of one (1) custodian, and has to date not completed its own productions.  In total, Plaintiff produced a total of 1,723 documents and has identified an additional 434 documents on its privilege log that it claims are privileged.  Thus, Plaintiff claims 20% of its documents are privileged.  Conversely, IWA collected documents from sixteen (16) different custodians and produced 4,713 documents.  IWA's privilege log identifies 1,192 documents.  IWA also claims 20% of its documents are privileged.  *See* Pl.'s Privilege Log, attached hereto as Ex. A.

> While the "general practice" may be to not log post-litigation documents, here with a claim that a company was formed for the purpose of perpetrating a fraud, documents pertaining to what IWA did and who it communicated with after it learned the fraud was uncovered are highly relevant. Please supplement IWA's privilege log with all claimed privileged correspondence and documents through IWA's document discovery collection date.

Plaintiff still did not raise the crime-fraud exception, or raise any concerns with respect to communications that would be subject to common-interest protections.

IWA undertook a good faith review of the Amended Privilege Log, and revised the log again, this time to include a column that identified attachments. Although not obligated to do so, IWA reformatted the Amended Privilege Log for a second time to meet Plaintiff's specifications, and produced another amended privilege log (the "Second Amended Privilege Log") on November 17, 2022.

IWA again rejected Plaintiff's request to include post-litigation documents on the Second Amended Privilege Log. Since IWA was never a party to any fraud, there is no basis for Plaintiff to assert it needed to understand what IWA did after any supposed fraud was discovered. Further, IWA noted that Plaintiff's desire to see how IWA defended itself after the Complaint is nonsensical. Moreover, the Assignment was in August of 2017, and Plaintiff first began to send pre-litigation demand letters in September of 2017. Thus, Plaintiff had three years of privileged post-"discovery" information to review.

Through communications dated November 23, 2022, and November 28, 2022, Plaintiff and IWA continued discussions regarding purported deficiencies in each of their respective logs. At the conclusion of the meet and confer on December 2, 2022, Plaintiff advised IWA that it would be filing a motion to compel regarding post-litigation documents, and IWA in turn

4

A106

advised Plaintiff that it would be filing a motion to compel the production of communications between Plaintiff and brokers that were withheld as privileged by Plaintiff.[3]

The Motion seeks to compel the entry of post-litigation documents on IWA's log, and raises for the first time an argument that it is entitled to an *in camera* review of documents under the crime-fraud exception, and also raises for the first time a demand for documents it contends were improperly withheld under a common-interest protection. Plaintiff's Motion is frivolous and should be denied.

## ARGUMENT

"The attorney-client privilege is the oldest of the privileges for confidential communications known to the common law." *United Bank v. Buckingham*, 301 F. Supp. 3d 547, 552 (2018) (citing *Upjohn Co. v. United States*, 449 U.S. 383, 389 (1981)). As a rule of evidence, "the privilege prevents the disclosure of a confidential communication made by a client to his attorney for the purpose of obtaining legal advice." *Newman v. State of Md.*, 384 Md. 285, 302 (2004) (internal quotations omitted). The very purpose of the privilege is to encourage full and frank communication between attorneys and their clients and thereby promote broader public interests in the observance of law and administration of justice. *Buckingham*, 301 F. Supp. 3d at 556 (citing *Upjohn Co.*, 449 U.S. at 389) (recognizing that sound legal advice or

---

[3] IWA and Plaintiff have each acknowledged there are attachments in their logs that alone are not privileged, but which were withheld based on the privileged status of the parent. Plaintiff raises such documents in its Motion as evidence of IWA's deficiencies. The reference to these documents is in bad faith and is inconsistent with the parties discussions, and further ignores that Plaintiff itself did the exact same thing. *See*, e.g., Items 407 and 408 on Plaintiff's privilege log, attached as Ex. A, demonstrating that Plaintiff withheld as privileged documents produced by IWA. If Plaintiff is challenging the withholding of these documents then IWA reserves the right to challenge Plaintiff's withholding of the very same category of documents.

91229757v.1

A107

advocacy serves public ends and that such advice or advocacy depends upon the lawyer's being fully informed by the client.)

Here, without a scintilla of evidence to support its fraud theories, and without a single deposition thus far taken in this case, Plaintiff asks that the Court cast aside well-established attorney-client privilege protections based solely on Plaintiff's unsupported theories and conjecture, and conduct an *in camera* review of IWA's documents pursuant to the crime-fraud exception. The crime-fraud exception, which exempts communications seeking advice or aid in furtherance of a crime or fraud, does not apply to the facts of this case. *See Newman*, 384 Md. at 308 (2004) (citing *United States v. Zolin*, 491 US 554, 563 (1989)).[4]

## I.   <u>Plaintiff cannot establish applicability of the crime-fraud exception</u>

The crime-fraud exception in Maryland is comprised of a three-step process. *Newnan*, 384 Md. at 313 n.7. First, the Court must initially find that the party asserting the exception has established a *prima facie* case of fraud **AND** that the attorney participated in the fraud. Second, the attorney-client communications are then submitted for *in camera* inspection. Third, only if the communications are found to confirm participation in a fraud will the communications then be ordered produced. 384 Md. at 308-310.

An *in camera* review is only permissible in "appropriate cases" where the court finds a "factual basis adequate to support a good faith belief by a reasonable person, that *in camera* review of the materials may reveal evidence to establish the claim that the crime-fraud exception

---

[4] Rule 501 of the Federal Rules of Evidence dictates that Maryland law governs use of evidentiary privilege in cases where the federal court's jurisdiction is based on diversity of citizenship. Fed R. Evid. 501. Maryland similarly values the importance and purpose of the attorney-client relationship, and has codified the attorney-client privilege. 1 Md. Code Ann., Cts. & Jud. Proc. § 9–108 (2017) ("A person may not be compelled to testify in violation of the attorney-client privilege.")

6

applies." *Koch v. Specialized Care Servs., Inc.*, 437 F. Supp. 2d 362, 377 (D. Md. 2005) (citing *Zolin*, 491 U.S. at 572 (internal citation omitted). To be clear, the purpose of *in camera* reviews is not to permit opponents to "engage in groundless fishing expeditions, with the district courts as their unwitting (and perhaps unwilling) agents." *Zolin*, 491 U.S. at 571-572. Only after a party makes a *prima facie* showing of fraud should a court conduct an *in camera* review, and even then the decision to do so is within the court's discretion. *See Koch*, 437 F. Supp 2d at 377.

### A.    Plaintiff Cannot Make a *Prima Facie* Showing of Fraud

To satisfy the first step of the crime-fraud exception, Plaintiff must show there is *prima facie* evidence of fraud, and also that an attorney participated in that fraud. Fraud cannot be demonstrated through mere allegations, but must be shown through actual evidence. *Burlington Indus. v. Exxon Corp.*, 65 F.R.D. 26, 40 (D. Md. 1974) ("The mere allegation of fraud . . . is not sufficient to terminate the attorney-client privilege. *Prima facie* evidence of fraud, not mere suspicion of fraud, is required to abrogate the privilege.") Moreover, bad intentions are not sufficient. Courts have held that the exception does not apply if the act considered is not carried out, even if the client had intentions. "A client could intend criminal or fraudulent conduct but not carry through the intended act. The exception would not apply in such circumstances, for it would penalize a client for doing what the privilege is designed to encourage—consulting a lawyer for the purpose of achieving law compliance." *In re Sealed Case*, 107 F.3d 46, 49 (D.C. Cir. 1997) (quoting Restatement Third, The Law Governing Lawyers § 82, cmt. c).

Here, for more than two years, Plaintiff has argued that its evidence of fraud is premised on "badges of fraud" under Maryland law for its fraudulent conveyance claims under Maryland's Uniform Fraudulent Conveyance Act, Md. Code Ann., Comm Law §§ 15-507, *et. seq.* ("MUFCA"). In its moving papers, Plaintiff cites *Koch* for the proposition that Plaintiff need not

allege any particular fraud for the crime-fraud exception to apply. *Koch*, however, was, decided in 2005. More recently, this Court made clear in *Buckingham* (decided in 2018) that the applicability of the exception is much narrower than Plaintiff suggests. And even if Plaintiff's purported evidence of fraud held water, Plaintiff cannot link any act of fraud to any attorney.

    1.    <u>Applying the crime-fraud exception to a fraudulent conveyance requires</u>
                <u>proof of actual fraudulent intent not allegations of circumstantial evidence.</u>

In *Koch*, a Magistrate Judge ruled that applicability of Maryland's crime-fraud exception to the attorney-client privilege was not dependent on pleading a specific crime or cause of action in fraud. 437 F. Supp. 2d at 373. In doing so, the *Koch* court recognized that when the Maryland Court of Appeals adopted the crime-fraud exception in *Newnan*, it did not rule on the applicability of the exception to torts. In *Buckingham*, the only case prior to this one where the Court has considered the crime-fraud exception under the MUFCA, the court acknowledged that "[t]he Court of Appeals of Maryland has not yet decided whether conveyances deemed to be fraudulent under the MUFCA constitute 'fraud' sufficient to trigger the crime-fraud exception." 301 F. Supp. 3d at 553 (Titus, J.). It then rejected the *Koch* court's analysis, refusing to "adopt such an expansive view of the exception." *Id*. at 553. Instead, this Court denied a request to apply the crime-fraud exception because one of the elements of a MUFCA is actual fraud. The *Buckingham* court reasoned that the party seeking to evoke the exception must demonstrate actual "wrongful intent" sufficient to satisfy the requirements of MUFCA, not just that the plaintiff had alleged a fraudulent conveyance or that the plaintiff had evidence to show the conduct was "intentional." *Id*. at 554.

Key here, the *Buckingham* decision explicitly rejects the proposition that evidence of the "badges of fraud" under Maryland law equates to evidence of actual intent necessary to apply the crime fraud exception. As it explained, "[a]lthough the transfers at issue here may include badges

91229757v.1

A110

of fraud other than 'deception, dishonesty, misrepresentation, falsification, or forgery,' . . . the presence of any particular indicia of fraud, or any particular combination of such, is not dispositive." *Id.* at 557. Rather, the party seeking to pierce the privilege must meet its burden to offer evidence of actual fraudulent intent. *Id.*

The same requirement, to demonstrate actual intent to commit fraud (not just evidence of the badges of fraud), applies in this case. Plaintiff does not meet its burden, even though the case has been in discovery for two years and Defendants have produced 52,000 pages of discovery. To apply the crime-fraud exception, Plaintiff can no longer rely on circumstantial evidence and words like "sham." Plaintiff's theory of fraud boils down to the fact that IWA owned an underperforming asset and sought legal advice to evaluate its options to dispose of it. This theory would implicate any company owning real estate assets in a weak market is fraud. And it defies logic that wrongful intent could be inferred on such thin facts, especially where the real facts confirm IWA merely exercised the rights of assignment granted by Plaintiff in two separate contracts, and then immediately notified Plaintiff that such rights were exercised.

> 2.  Plaintiff's evidence doesn't show fraud or that any attorney perpetrated any fraud.

Even if Plaintiff could meet this threshold standard, Plaintiff must also meet its burden to link the alleged fraud to legal advice to obtain *in camera* review.

"[T]he determination of whether specific communications are afforded protection from scrutiny must be made by balancing the importance of encouraging frank communication between a lawyer and her client and the 'truth seeking mission of the legal process.'" *F.C. Cycles Intern., Inc. v. Fila Sport*, S.p.A., 184 F.R.D. 64 ( D. Md. 1998) (citing *United States v. Aramony*, 88 F.3d 1369, 1389 (4th Cir. 1996)). Thus, the decision to invade privilege should not be taken lightly. In order to make a *prima facie* showing that could trigger an *in camera* review,

91229757v.1

A111

the party asserting the exception must prove that "(1) the client was engaged in or planning a criminal or fraudulent scheme when he sought the advice of counsel to further the scheme and (2) the documents containing [the privileged materials] ... bear a close relationship to the client's existing or future scheme to commit a crime or fraud." *Chaudhry v. Gallerizzo*, 174 F.3d 394, 403-4 (Md. 1999) (citing *In re Murphy*, 560 F.2d 326, 338 (8th Cir. 1977); *see also In re Grand Jury Proceedings*, 33 F.3d 342, 349 n. 13 (4th Cir. 1994) (denying a motion to compel production of privileged documents under the crime-fraud exception); *see also United States v. Martin*, 278 F.3d 988, 1001 (9th Cir. 2002) ("The exception applies only when there is reasonable cause to believe that the attorney's services were utilized in furtherance of the ongoing unlawful scheme.").  It is therefore necessary to show that the party claiming the attorney-client privilege had "set upon a criminal course before consulting counsel." *United States v. Jacobs*, 117 F.3d 82, 88 (2d Cir. 1997).  The purpose of the crime-fraud exception is not to "penalize a client for doing what the privilege is designed to encourage - consulting a lawyer for the purpose of achieving law compliance."  *In re Sealed Case*, 107 F.3d at 49.

Thousands of documents have been produced in this case, consisting of tens of thousands of pages. Among all this discovery, Plaintiff's only proffered evidence of "fraud" are two emails that are completely unrelated to the Assignment or any other issue in this litigation.  Moreover, neither of the two communications show, or even suggest, that an attorney was involved in any fraudulent act or that an attorney provided any advise to further any fraudulent act, or that any fraud ever happened.

    a.    *The July 8, 2016 Email Chain Does not Establish a Prima Facie Case of Fraud.*

Plaintiff first attaches an email chain that ends on July 8, 2016, more than a year before the Assignment, for the proposition that IWA was engaging in "an exit strategy" to "get [the

A112

Ground Lease] off the books." See Pl.'s Ex. H. In fact, as a sworn declaration by an IWA employee states, "this email is not related to the assignment of the Ground Lease that is at issue in this litigation." (Feltman Decl. ¶ 15.) Plaintiff ignores this sworn testimony.

A review of the email chain reveals that it is not evidence of fraud. In the chain, one of IWA's accountants asked whether, because the leased property was worthless, there was a way to cut future losses. The question was then sent to IWA's asset managers, who advised the accountants that IWA had engaged outside counsel to explore a strategy that would stop monthly losses and any future liability.

The email does not establish a *prima facie* case for fraud. Rather, the email demonstrates only that the Ground Lease lacked any value and that IWA was investigating legal options for an underperforming asset. That is what a business should do. There is nothing wrong with seeking legal advice from an attorney regarding various legal options for an underperforming asset. Providing legal advice is an attorney's purpose. Accordingly, if IWA was asking its counsel what it could do with an underperforming asset, then IWA was seeking to comply with the law, not run afoul of it. For a company to consider an "exit strategy" for a "worthless" asset does not make the chosen strategy fraudulent, and to seek legal advice to comply with the law is the exact opposite of fraud.

Moreover, the email does not establish that IWA had a fraudulent plan or scheme that it was seeking to engage any lawyer to perpetrate. For the exception to apply, the communication must establish a potential plan was already in place at the time that the document was created, or that an attorney was actually engaged to help further such an existing plan. *See Chaudhry*, 174 F.3d at 403-4 (requiring that to demonstrate a *prima facie* case of fraud there must be a plan when engaging the attorney to further a scheme). On its face, the July 8, 2016, email does the

11

A113

opposite. It shows IWA had no plan for the asset, and was seeking legal advice to see what legally it could do with it. And finally, the email is not *prima facie* evidence of fraud sufficient to trigger the crime-fraud exception because no evidence shows that any plan contemplated in that email was carried out. There is no link between the July 8, 2016, email to the Assignment. Indeed, undisputed evidence confirms that the asset manager did not even contemplate the idea of forming a business venture until February 2017.

> b. *The January 4, 2017 Email Chain Does Not Establish a Prima Facie Case of Fraud.*

The second email chain, which ends with an email dated January 4, 2017, also fails to establish a *prima facie* case of fraud. *See* Pl.'s Exhibit I. With respect to that particular chain, the explicit language of the emails shows that IWA had entered into negotiations with a potential buyer of the Ground Lease, Polinger Company ("Polinger"), and the email reflects that IWA anticipated future problems with Plaintiff because Polinger wanted to make changes to the Ground Lease structure. As part of the deal structure, Polinger sought approximately $20 million towards future ground rent, which IWA did not want to pay. Accordingly, one of the individuals on the emails, Nick Koluch, asked whether they "might want to discuss with counsel if there are any steps we take to make [the Camalier Family] uncomfortable. Possible action items would be late paying of ground rent, or possible skipped payments."

This email is not evidence of fraud, and most certainly not evidence of *prima facie* fraud sufficient to trigger the crime-fraud exception.

First, to trigger the crime-fraud exception, there has to be a fraudulent scheme or plan, and that plan has to actually be carried out. *In re Sealed Case*, 107 F.3d at 49. Here, the only potential plan (which still would not constitute fraud, but a breach of contract), was the suggestion that IWA may withhold rent from Plaintiff to force the negotiation of better ground

12

91229757v.1

rent terms. But rent was never withheld. Plaintiff has admitted it was timely paid by IWA when it was the tenant, and by RSD since the Assignment.

Second, to the extent that Plaintiff is arguing that the potential payment to Polinger is evidence of a fraudulent scheme, that argument has no basis in fact. IWA's expression of dissatisfaction with losing money is not fraud, and does not suggest that it would give rise to fraud.

Third, the email does not establish fraud for the purposes of conducting an *in camera* review because, once again, it does not establish that any plan existed at the time that any legal counsel was sought, or that any attorney was actually engaged to help further any existing plan. There also simply is no evidence of fraud.

### B. There is No Evidence That a Lawyer Furthered Any Fraud.

Any finding of fraud based on Plaintiff's "evidence" would be a giant leap. However, connecting such "evidence" to Mr. Sowka is a leap way, way too far. Plaintiff's "smoking gun" as to Mr. Sowka is an email dated February 9, 2017, from David Feltman to Robert Barron, who was then Algon Group's counsel, which states only "[IWA's] counsel on this matter is James [Sowka] at Seyfarth. His vcard is attached and he is expecting your call." The email is devoid of further content.

The email relied on by Plaintiff does not suggest that Mr. Sowka advised IWA to undertake any unlawful action or that Mr. Sowka himself undertook any unlawful action. And no other document suggests that Mr. Sowka conducted or furthered any fraudulent act. It is of course telling that Plaintiff attaches a vague email upon which it then draws dramatic inferences instead of simply attaching the many emails produced that show Mr. Sowka's true involvement with the Assignment. An *in camera* review is not needed to show what the privilege log entries

13

and the many documents produced by IWA and RSD already demonstrate. Mr. Sowka acted as

counsel for IWA on a real estate transaction. There is of course nothing fraudulent about the

preparation documents for an assignment that is expressly allowed by two contracts - the Ground

Lease and the Estoppel Agreement - both of which Plaintiff executed. Dkt. 151 (Memo. Op.) at 9

("Defendants are also correct that both the Ground Lease and Estoppel Agreement in fact clearly

indicate that assignment of the Ground Lease is permitted.").

Moreover, Plaintiff's attempts to link Mr. Sowka to the formation of RSD (the alleged

"sham" enterprise) fails completely. As noted by Plaintiff's own purported evidence, Mr. Sowka

was IWA's attorney, not RSD's attorney.

Considering the facts and circumstances of this particular case, no reasonable person

would conclude that there is any *prima facie* evidence of fraud before this Court that could

trigger the crime-fraud exception, and certainly no reasonable person would conclude that Mr.

Sowka perpetrated any fraud. Mr. Sowka was not even implicated on either the July 8, 2016, or

the January 4, 2017, emails, which serve as the basis for Plaintiff's fraud arguments. RSD is not

a sham, but even if it was, Plaintiff's own evidence shows James Sowka did not represent it.

There is simply not one shred of evidence linking Mr. Sowka to anything remotely "fraudulent."

Accordingly, under *Zolin*, the risk of invading the attorney-client privilege significantly weighs

any benefits. Especially here, where Plaintiff admits that the purported fraud is premised only on

mere speculation and conjecture.

Finally, even if a reasonable person based on the circumstances of this case could find

that there is any basis to conduct an *in camera* review of a limited set of documents based on Mr.

Sowka's involvement, the scope of Plaintiff's request is overly broad and unreasonable. Plaintiff

has provided a list of 54 documents that it has asked the Court to review, only 12 of which relate

91229757v.1

A116

to or are linked with Mr. Sowka. The overbreadth of that request alone shows that Plaintiff's request is nothing more than a fishing expedition and that Plaintiff is conceding it has no actual evidence to support its claims.

> **C.     Plaintiff's request is premature.**

Plaintiff's Motion proposes that, each time a party alleges fraud and cannot support it, then the Court should step in to conduct an *in camera* review of privileged documents. That is not the purpose of the crime-fraud exception, nor does it comport with the standards that should govern these applications. If the Court determines there is *prima facie* evidence of fraud, it is within the discretion of the Court whether to allow *in camera* review. *Koch*, 437 F. Supp 2d at 377. There is no evidence of *prima facie* fraud here, and there is no evidence to suggest that the Court should exercise its discretion to conduct any *in camera* review of IWA's privileged documents.

However, in the event that the Court is willing to consider Plaintiff's overreaching and frivolous request, given that the end result of this exercise will ultimately result in a bell that cannot be unrung, the Court should delay its invocation of the *in camera* review until other discovery is completed to at least determine whether Plaintiff can show fraud through other means, or whether more likely, Plaintiff's fraud theory will be disproven through other evidence. Considering the importance Plaintiff has placed on these "smoking gun" emails, you would think that Plaintiff would seek to depositions on these documents - yet to date, Plaintiff has expressed no such interest.

**II.     IWA's Communications with RSD and Transamerica Are Privileged**

Plaintiff also moves to compel IWA to produce communications between Transamerica Corporation ("Transamerica") and RSD. This motion should be rejected as well.

91229757v.1

A117

Plaintiff has yet to complete discovery, but now asks the Court to order IWA to produce 148 privileged communications between co-defendants. Plaintiff now argues that IWA has not established the existence of a common interest privilege with RSD and Transamerica, and therefore IWA has waived privilege protections as to any documents shared among co-defendants. Not only is Plaintiff wrong, but Plaintiff's privilege log contradicts this position since Plaintiff asserts privilege over dozens of emails between Plaintiff and its affiliate, Rock Spring Properties, and third party brokers. *See* Ex. A.

**A.      Plaintiff is Intentionally Misleading the Court as to the "Transamerica" Documents.**

Plaintiff's arguments as to the "Transamerica" individuals can be disposed of quickly. Plaintiff alleges that emails with individuals who have "transamerica.com" in their email address are Transamerica employees, and therefore, that their documents are not subject to any attorney-client privilege. On at least three occasions now, Plaintiff has been informed that transamerica.com is merely a brand-based email address and that Transamerica has no employees. As Plaintiff also is already aware, the individuals with transamerica.com email addresses that are included in the privilege log perform accounting work for IWA through an affiliate, and were receiving legal advice from or providing information to IWA's counsel. Further still, each individual is an accountant, subject to the accountant-client privilege under Section 9-110 of the Courts of Judicial Proceedings Article of the Maryland Code. Accordingly, communications with each of these individuals falls squarely within the attorney-client privilege, as well as accountant-privilege protections.

**B.      RSD is a Joint Venture Between IWA and Longshore.**

Plaintiff's "common interest" argument omits a key fact. RSD is a joint venture owned 98% by IWA and 2% by Longshore Ventures, LLC ("Longshore"). Longshore also is the

91229757v.1

A118

managing member of RSD.  As established by the Operating Agreement, attached as Ex. L to the

Motion, IWA's management committee consists of two IWA Members and one Algon Member

(Longshore).  During the negotiation of the Operating Agreement, and prior to formation of

RSD, the Algon Member was represented by the law firm of Berger Singerman.  After the

formation of RSD on August 26, 2017, Berger Singerman became legal counsel for RSD, which

again consists of an IWA and Algon Member.  Stated another way, Berger Singerman's

communications to the IWA Member, even if sent through the Algon Member, are privileged

because the IWA Member is part of RSD and Berger Singerman's client.  It would be

nonsensical to assume that only the Algon Member of RSD could receive legal counsel given to

a joint venture.  On such basis, attorney-client privilege may be properly asserted over

documents created on and after August 26, 2017.  The earliest document on IWA's privilege log

asserted based on this privilege is August 27, 2017.

### C.    Plaintiff's Common Interest Argument is Based on a False Narrative

Yet, even absent RSD's membership structure, Plaintiff cannot make a credible argument

that approximately 130 documents exchanged between RSD and IWA, which include documents

referring to Plaintiff's litigation threats, did not establish a common interest.

This Court has held the "joint defense" or "common interest" doctrine is an extension of

the attorney-client privilege and presupposes the existence of an otherwise valid privilege.

*United States v. Elbaz*, 396 F. Supp. 3d 583, 598 (2019).  To invoke the privilege, the party must

show that there is a shared "common interest about a legal matter."  *Id.*  The parties to the

common interest are not required to reduce their agreement to writing, so long as there are

indicators of a "joint strategy" sufficient to establish that the parties are "clearly collaborating in

A119

advance of litigation." *Id.* (citing *Hunton & Williams v. U.S. Dep't of Justice*, 590 F.3d 272, 284–85, 287 (4th Cir. 2010)).

Maryland courts also have uniformly held that under the common interest rule, parties with shared interests in actual or pending litigation against a common adversary may share privileged information without waiving their right to assert the privilege. *Gallagher v. Office of Attorney Ge.*, 141 Md. App. 664, 677 (2001). The rule is designed to facilitate the "free flow of information from client to attorney and to aid in the development of joint strategies." *Id.* (internal quotes omitted) (citing *In re Grand Jury Subpoenas*, 89–3 & 89–4, John Doe 89–129 (Under Seal), 902 F.2d 244, 248–9 (4th Cir. Va. 1990)).

Plaintiff is seeking documents exchanged between IWA and RSD from August 27, 2017, through December 20, 2019. Here, RSD was formed on August 26, 2017, and the Assignment occurred on August 31, 2017. By Plaintiff's own admission, Plaintiff's litigation counsel immediately contacted RSD's attorney asking for information, and thereafter began sending pre-litigation demand letters through its litigation counsel to RSD's counsel demanding to know information about the Assignment and RSD. *See* Compl. ¶ 18. IWA's affiliate was already engaged in protracted litigation with that same counsel, and Defendants already anticipated having to defend the Assignment based on prior experiences with the Camalier Family. The common-interest privilege was established when Plaintiff's began making false demands, days after the Assignment. Clearly, Plaintiff views this structure the same way, and Plaintiff itself has logged communications as being prepared "in anticipation of litigation" during the time frame for which it now seeks documents from IWA. *See* Ex. A.

In sum, both IWA and RSD have a shared interest in the validity of the Assignment, and in the future disposition of the Property, and there are indemnity obligations between IWA and

RSD as it relates to the litigation.  Moreover, both IWA and RSD have a common interest in the defense of litigation brought to unwind the Assignment.  Plaintiff's arguments that there is no common interest privilege between co-defendants that were the assignee and assignor for the Assignment that Plaintiff's litigation counsel was openly challenging within days of receiving notice of the Assignment is frivolous.

> **D.**    **RSD Stands to Lose the Most if the Assignment is Invalidated.**

Finally, Plaintiff's argument that RSD and IWA cannot have a common interest because they "are not completely in alignment" because RSD has "nothing to lose" is mindboggling.  It is unsupported by legal authority, and factually wrong.

Despite Plaintiff's unsupportable claims that the Assignment has increased Plaintiff's risk of nonperformance, it is the Algon Member (Longshore), not Plaintiff, that actually bears the risk in this transaction.  If the Court were to unwind the Assignment, that outcome would result in a material loss to Longshore because it is compensated through a commission-based waterfall structure that is directly tied to a possible solution for the Ground Lease.  *See* Operating Agreement, Pl.'s Ex. L.  In other words, if the Ground Lease does not make money, Longshore does not make a commission. [5]

---

[5] In the Motion, Plaintiff has once again raised that RSD was "formed" six days before the Assignment.  The formation of a company days before, or even on the same day, as the closing of a real estate transaction is not fraudulent, and is instead common.  This was explained in the expert reports of both Douglas Bregman and Ian Ratner, attached as Exhibits B and C to IWA's December 19, 2022 Brief (ECF-200).  Although the actual formation of RSD was through a mere filing that took place a week before the closing on the Assignment, the negotiation of the business terms and structure took months.  Yet, that Plaintiff continues to base a theory of fraud on the timing of the formation is troublesome since RSD's motion to compel seeking information regarding the formation of the Camalier Family's own special purpose entities has been deferred.  If Plaintiff is going to continue to argue that the timing of RSD's formation is relevant to fraud, Defendants should be able to take discovery to refute these allegations.

19

And equally unavailing is that IWA has nothing to lose. After years of losses, in its sound business judgment, IWA elected to form a joint venture because that was the solution that created the proper risk and compensation structure, and it was the solution that IWA felt was best for the Ground Lease.

Both RSD and IWA will be damaged if the Court invalidates the Assignment. On the other hand, Plaintiff, who has collected rent every month since the Assignment occurred five-and-a-half years ago, loses nothing.

In summary, both IWA and RSD have a joint interest in the success of the Assignment, and seeing their contractual and property rights enforced. Moreover, the multiple pre-litigation demand letters from Plaintiff's litigation counsel, the first of which was sent five days after the Assignment, establish when the common interest arose, and why. Even Plaintiff's own privilege log records the reason for privilege during that time frame was "anticipation of litigation," which alone supports a finding for the common interest privilege.

## III.    Post-Complaint Documents Are Not Included on Privilege Logs

Plaintiff cannot demonstrate even a *prima facie* case of fraud based on the approximately 52,000 pages of documents Defendants have produced, and so Plaintiff wants the Court to let it review information about post-litigation documents. Plaintiff's own log shows that it does not credit its own argument; Plaintiff logs documents until January 7, 2021 and then stops.

Plaintiff admits that what it seeks, in part, is to know what IWA did after it was accused of fraud. But Plaintiff already knows what IWA did - Plaintiff accused IWA of fraud in 2017, and it was provided documents and a privilege log with descriptions of documents from 2017 to the middle of 2020. Causing IWA to undertake an additional document review (especially when Plaintiff still has not completed its own document collection) only to produce documents

91229757v.1

20

A122

showing what IWA did four to six years after an alleged fraudulent act is not proportional to the needs of this case, it is unduly burdensome, and it is pointless. The requested information serves only to create inconvenience or otherwise harass IWA.

If Plaintiff cannot show that there is evidence of fraud at the time the act supposedly occurred in 2017, what difference does it make what happened in 2021, 2022, or 2023? Plaintiff must show that there was actual fraud when the conveyance happened. This court, and many others agree that there is no need for post-litigation documents to be entered on the log. *Glynn v. EDO Corp.*, Civil No. 07–01660 (JFM), 2010 WL 3294347, at *7, n.12 (D. Md. Aug. 20 2010) ("The general practice in this Court is . . . to not require logging post-litigation documents over which the attorney-client privilege or work product doctrine has been asserted.); *see also Grider v. Keystone Health Plant Cent., Inc.*, 580 F.3d 119, 139 (3d Cir. 2009) (concluding that a privilege log may not be required for communications with counsel after the filing of a lawsuit because " a rule requiring creation of an ongoing log of all post-complaint privileged communications would have a chilling effect on the attorney-client relationship"); *UnitedHealthcare of Fla. V. Am. Renal Assocs. LLC*, 2017 U.S. Dist. LEXIS 201866 (S.D. Fla. Dec. 7, 2017); *Harleysville Worcester Insurance Company v. Sharma*, Civ. No. 14–2474 (LDW), 2015 WL 3407209 (E.D.N.Y. May 26, 2015); *Charvat v. Valente*, 82 F. Supp. 3d 713 (N.D. Ill. 2015); *Morley v. Square, Inc.*, Case Nos. 14-cv-172, 10-cv-2243 SNLJ  2015 WL 7273318 (E.D. Mo. Nov. 18, 2016); *United States v. Bouchard Transp.*, No. 08–CV–4490 (NGG)(ALC), 2010 WL 1529248, at *2 (E.D.N.Y. Apr. 14, 2010) (noting that "privilege logs are commonly limited to documents created before the date litigation was initiated"); *Ryan Inv. Corp. v. Pedregal de Cabo San Lucas*, Case No. C 06-3219 (JW)(RS), 2009 WL 5114077, at *3 (N.D. Cal. Dec. 18, 2009) (stating that "counsel's communications with the client and work

91229757v.1

A123

product developed once the litigation commences are presumptively privileged and need not be included on any privilege log"); *Ritchie v. Sempra Energy*. Case No. 10-cv-1513 (CAB)(KSC), 2014 WL 12638874, at *3 (S.D. Cal. Aug. 4, 2014) (directing that communications between any party and counsel, whether in-house or outside counsel, need not be identified in privilege log), disagreeing with *Horton v. United States*, 204 F.R.D. 670 (D. Colo. 2009); *Benson v. Rosenthal*, Case No. 15-782, 2016 WL 1046126, at 11 (E.D. La., Mar. 16, 2016) (finding that privilege log entries do not need to include communications counsel sent or received after the filing of the lawsuit).

Yet, if the Court is willing to entertain Plaintiff's request, IWA respectfully requests that the Court grant IWA's three motions to compel, currently pending against Plaintiff, Rock Spring Properties (Plaintiff's management company, which Plaintiff identified as having six people with knowledge of facts relevant to this litigation, but from whom documents were not collected), and Rockledge Associates (Plaintiff's affiliate that is RSD's direct competitor, and which owns a property that Plaintiff marketed for lease along with RSD's Property after the current litigation was filed). If Plaintiff is permitted to engage in a fishing expedition based on mere speculation of a fraud, Defendants in this action should at least be able defend against Plaintiff's allegations, and develop its own fraud and unclean hands defenses, which are already supported.

## **CONCLUSION**

In conclusion, IWA respectfully requests that the Court deny Plaintiff's Motion to Compel.

A124

Dated: January 13, 2022

Respectfully Submitted,

SEYFARTH SHAW LLP


By: */s/ Rebecca A. Davis*
Rebecca A. Davis, Bar No. 23183
rdavis@seyfarth.com
1075 Peachtree Street NE, Suite 2500
Atlanta, Georgia 30309
Telephone:  (404) 885-1500
Facsimile:   (404) 892-7056

*Counsel for Defendant Investors Warranty of*
*America, LLC*

91229757v.1

A125

## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF MARYLAND

| | |
|---|---|
| Rock Spring Plaza II, LLC, | |
| Plaintiff, | |
| v. | Civil Action No. 8:20-cv-01502-PJM |
| Investors Warranty of America, LLC, et al., | |
| Defendants. | |

### CERTIFICATE OF SERVICE

I hereby certify that on January 13, 2023, I electronically filed the foregoing **DEFENDANT INVESTORS WARRANTY OF AMERICA, LLC'S RESPONSE IN OPPOSITION TO PLAINTIFF ROCK SPRING PLAZA II, LLC'S MOTION TO COMPEL AND REQUEST FOR** *IN CAMERA* **REVIEW OF PRIVILEGED DOCUMENTS** via electronic transmission to all counsel of record.

| | |
|---|---|
| William Bosch, Esq.<br>Alvin Dunn, Esq.<br>Katherine Danial, Esq.<br>Pillsbury Winthrop Shaw Pittman LLP<br>1200 Seventeenth Street, N.W.<br>Washington, DC 20036<br>william.bosch@pillsburylaw.com<br>alvin.dunn@pillsburylaw.com<br>katherine.danial@pillsburylaw.com<br>*Attorney for Rock Springs Plaza II, LLC* | Sara E. Kropf, Esq.<br>Kropf Moseley PLLC<br>1100 H Street NW, Suite 1220<br>Washington, DC 20005<br>sara@kmlawfirm.com<br>*Counsel for Defendant Rock Springs Drive LLC* |
| Anthony L. Meagher, Esq.<br>Nicole M. Kozlowski, Esq.<br>DLA Piper LLP<br>6225 Smith Avenue<br>Baltimore, MD 21209<br>anthony.meagher@dlapiper.com<br>nicole.kozlowski@dlapiper.com<br>*Attorney for Defendant Transamerica Corporation* | |

By: */s/ Rebecca A. Davis*
Rebecca A. Davis (Bar No. 23183)

Dated: January 13, 2023

24

91229757v.1

A126

# EXHIBIT A

## Rock Spring Plaza II - Privilege Log

| Item # | Control Number | Bates Range | Document Type | Email From | Email To | Email CC | Email Subject | Document Date | File Name | Privilege | Privilege Type | Privilege Description |
|---|---|---|---|---|---|---|---|---|---|---|---|---|
| 1 | 0649001.00003000 | Camal re0000077 - Camal re0000077 | email | robert.gorham@hkla w.com | camal er, charles a. [ccamaler@willkaseri s.com]jdane@nyslimi ted.com | | FW: Rock Spring - Assignment of Leases and Rents | 9/18/2006 | 0000000078DDA062402F 4D869F0E53B9D5C50A254 2000.MSG | Withheld | Attorney-Client Communication | Counsel providing legal advice regarding contract. |
| 2 | 0649001.00026584 | | email | robert.gorham@hkla w.com | camal er, charles a. [ccamaler@willkaseri s.com] | | Rock Spring II/Limited Partnership loan from Monument Life Insurance Company | 6/20/2007 | 000000004749CO0034DC4F 49AC2286C8A2FB6638E4EB 2000.MSG | Withheld | Attorney-Client Communication | Communication from counsel providing legal advice regarding contract. |
| 3 | 0649001.00025968 | | email | robert.gorham@hkla w.com | camal er, charles a. [ccamaler@willkaseri s.com]chris.reynolds@hklaw .com | | Memorandum - Lockheed Martin Removal Obligations - Rock Spring Plaza, Phase II.DOC | 7/27/2007 | 000000004749CO0034DC4F 49AC2286C8A2FB6638DA8A 2000.MSG | Withheld | Attorney-Client Communication | Communication from counsel providing legal advice regarding contract containing memorandum regarding with legal advice regarding lease agreement. |
| 4 | 0649001.00025949 | | Attachment | | | | MEMORANDUM | 7/26/2007 | Memorandum - Lockheed Martin Removal Obligations - Rock Spring Plaza, Phase II.DOC | Withheld | Attorney-Client Communication | Attachment to communication from counsel providing legal advice regarding contract containing memorandum regarding with legal advice regarding lease agreement. |
| 5 | 0649001.00025956 | | email | robert.gorham@hkla w.com | camal er, charles a. [ccamaler@willkaseri s.com] | | Lockheed | 7/30/2007 | 000000004749CO0034DC4F 49AC2286C8A2FB6638E4EB 2000.MSG | Withheld | Attorney-Client Communication | Communication from counsel providing legal advice regarding contract. |
| 6 | 0649001.00024932 | | email | diane dentagnan [jdane@nyslimited.co m] | camal er, charles a. [ccamaler@willkaseri s.com]jdane@prisdate rg.com/robert.gorham @hklaw.com | camal er, charles a. [ccamaler@willkaseri s.com] | RE: Correspondence re: Garage Repairs to Rock Spring II/Limited Partnership-Confidential Attorney Client Privilege | 10/5/2007 | 000000004749CO0034DC4F 49AC2286C8A2FB6638E465 2000.MSG | Withheld | Attorney-Client Communication | Communication from counsel providing legal advice regarding contract. |
| 7 | 0649001.00024741 | | email | robert.gorham@hkla w.com | camal er, charles a. [ccamaler@willkaseri s.com] | | FW: PDF Attached - Bio | 10/29/2007 | 000000004749CO0034DC4F 49AC2286C8A2FB6638A451 2000.MSG | Withheld | Attorney-Client Communication | Communication from counsel providing legal advice regarding contract. |
| 8 | 0649001.00024742 | | Attachment | | | | rg-bio-BobMarkChan-102911053b.pdf | 10/29/2007 | rg-bio-BobMarkChan-102911053b.pdf | Withheld | Attorney-Client Communication | Attachment to communication from counsel providing legal advice regarding contract. |
| 9 | 0649001.00024723 | | email | robert.gorham@hkla w.com | camal er, charles a. [ccamaler@willkaseri s.com]chris.reynolds@hklaw .com | | Memorandum - Lockheed Martin Removal Obligations - Rock Spring Plaza, Phase II.DOC | 10/29/2007 | 000000004749CO0034DC4F 49AC2286C8A2FB6638D452 2000.MSG | Withheld | Attorney-Client Communication | Communication from counsel providing legal advice regarding contract. |
| 10 | 0649001.00024713 | | Attachment | | | | MEMORANDUM | 7/26/2007 | Memorandum - Lockheed Martin Removal Obligations - Rock Spring Plaza, Phase II.DOC | Withheld | Attorney-Client Communication | Attachment to communication from counsel providing legal advice regarding contract containing memorandum regarding with legal advice regarding lease agreement. |
| 11 | 0649001.00024610 | | email | robert.gorham@hkla w.com | diane@nyslimited.co m | camal er, charles a. [ccamaler@willkaseri s.com] | Further Amendment to the [Second][Lockheed Lease | 11/7/2007 | 000000004749CO0034DC4F 49AC2286C8A2FB6638A444 2000.MSG | Withheld | Attorney-Client Communication | Communication from counsel providing legal advice regarding lease agreement. |
| 12 | 0649001.00024516 | | email | robert.gorham@hkla w.com | camal er, charles a. [ccamaler@willkaseri s.com]jdane@nyslimi ted.com | | FW: Revised Correspondence to Lockheed | 11/8/2007 | 000000004749CO0034DC4F 49AC2286C8A2FB6638E440 2000.MSG | Withheld | Attorney-Client Communication | Communication from counsel providing legal advice regarding contract. |
| 13 | 0649001.00024483 | | Attachment | | | | 4923943_1.DOC | 11/8/2007 | 4923943_1.DOC | Withheld | Attorney-Client Communication | Attachment to communication from counsel providing legal advice regarding contract. |

A128

Case 8:20-cv-01502-PJM   Document 238-2   Filed 01/25/23   Page 28 of 71

**Rock Spring Plaza II - Privilege Log**

| Item # | Control Number | Bates Range | Document Type | Email From | Email To | Email CC | Email Subject | Document Date | File Name | Privilege | Privilege Type | Privilege Description |
|---|---|---|---|---|---|---|---|---|---|---|---|---|
| 14 | 0649001.00024549 | | email | robert.gorham@hkla w.com | camiller, charles a. [ccamailer@williasart i.com];diane@rspimited.com | | FW: Correspondence to Lockheed | 11/8/2007 | 0000000AA7A9DDD3A0CAF 49AC2386C86CF84638A4A2 2000.MSG | Withheld | Attorney-Client Communication | Communication from counsel providing legal advice regarding contract. |
| 15 | 0649001.00024556 | | | | | | 4923943_1.DOC | 11/8/2007 | 4923943_1.DOC | Withheld | Attorney-Client Communication | Attachment to Counsel's email providing legal advice regarding contract. |
| 16 | 0649001.00023338 | Camiller0001259 - Camiller0001259 | email | robert.gorham@hkla w.com | camiller, charles a. [ccamailer@williasart i.com] | | FW: Carnival Listing Agreement 4550 Rock Spring Drive | 3/24/2008 | 00000003386F65A3A9F814 4E8AA978243427E8E64474 230O.MSG | Withheld | Attorney-Client Communication | Communication from counsel providing legal advice regarding contract. |
| 17 | 0649001.00022936 | | email | robert.gorham@hkla w.com | camiller, charles a. [ccamailer@williasart i.com] | | FW: Exclusive Leasing Agreement - Cassidy | 4/13/2008 | 00000003386F65A3A9F814 4E8AA978243427E8E6450 230O.MSG | Withheld | Attorney-Client Communication | Email providing legal advice regarding contract. |
| 18 | 0649001.00022933 | | Attachment | | | | EXCLUSIVE LEASING AGREEMENT | | #51362904v2_Active_- Exclusive Leasing Agreement.DOC | Withheld | Attorney-Client Communication | Attachment to Counsel's email providing legal advice regarding contract containing attorney redlines to contract. |
| 19 | 0649001.00022934 | | Attachment | | | | EXCLUSIVE LEASING AGREEMENT | 2/20/2008 | Redline.doc | Withheld | Attorney-Client Communication | Attachment to Counsel's email providing legal advice regarding contract containing attorney redlines to contract. |
| 20 | 0649001.00022920 | Camiller0001283 - Camiller0001283 | email | robert.gorham@hkla w.com | camiller, charles a. [ccamailer@williasart i.com] | | FW: Exclusive Leasing Agreement (redline - v4/v1- and clean) | 4/24/2008 | 00000003386F65A3A9F814 4E8AA978243427E8E6448 230O.MSG | Withheld | Attorney-Client Communication | Counsel providing legal advice regarding contract. |
| 21 | 0649001.00022080 | Camiller0001351 - Camiller0001351 | email | robert.gorham@hkla w.com | camiller, charles a. [ccamailer@williasart i.com] | | FW: Definitive Document Distribution - Exclusive Leasing Agreement | 5/12/2008 | 00000003386F65A3A9F814 4E8AA978243427E8E64D 230O.MSG | Withheld | Attorney-Client Communication | Counsel providing legal advice regarding contract. |
| 22 | 0649001.00021831 | Camiller0001396 - Camiller0001396 | email | robert.gorham@hkla w.com | camiller, charles a. [ccamailer@williasart i.com] | | FW: Exclusive Leasing Agreement - Cassidy | 5/20/2008 | 00000003386F65A3A9F814 4E8AA978243427E8E6547 220O.MSG | Withheld | Attorney-Client Communication | Counsel providing legal advice regarding contract. |
| 23 | 0649001.00021831 | Camiller0001409 - Camiller0001409 | Attachment | | | | EXCLUSIVE LEASING AGREEMENT | 2/20/2008 | Redline.doc | Withheld | Attorney-Client Communication | Attachment to Counsel's email providing legal advice regarding contract. |
| 24 | 0649001.00020090 | | email | diane.dantagnan [diane@rspimited.co m] | robert.gorham@hkla w.com | camiller, charles a. [ccamailer@williasart i.com] | RE: Lockheed Martin - Rock Spring II /R.37.02 Leo Daly Letter | 7/11/2008 | 00000003386F65A3A9F814 4E8AA978243427E8E8A45b 220O.MSG | Withheld | Attorney-Client Communication | Counsel providing legal advice regarding contract. |
| 25 | 0649001.00020105 | | email | diane.dantagnan [diane@rspimited.co m] | robert.gorham@hkla w.com | camiller, charles a. [ccamailer@williasart i.com] | RE: Lockheed Martin - Rock Spring II /R.37.02 Leo Daly Letter | 7/11/2008 | 00000003386F65A3A9F814 4E8AA978243427E8E8C45b 220O.MSG | Withheld | Attorney-Client Communication | Communication with counsel discussing contract. |
| 26 | 0649001.00020107 | | email | diane@rspimited.co m | diane@rspimited.co m | camiller, charles a. [ccamailer@williasart i.com] | RE: Lockheed Martin - Rock Spring II /R.37.02 Leo Daly Letter | 7/11/2008 | 00000003386F65A3A9F814 4E8AA978243427E8E6458 220O.MSG | Withheld | Attorney-Client Communication | Counsel providing legal advice regarding contract. |
| 27 | 0649001.00020118 | | email | robert.gorham@hkla w.com | robert.gorham@hkla w.com | | FW: Lockheed Martin - Rock Spring II /R.37.02 Leo Daly Letter | 7/11/2008 | 00000003386F65A3A9F814 4E8AA978243427E8E8445C 220O.MSG | Withheld | Attorney-Client Communication | Communication to counsel seeking legal advice on contract. |
| 28 | 0649001.00020117 | | Attachment | | | | 1-Latiosa200807111S4733.pdf | 7/11/2008 | 1-Latiosa200807111S4733.pdf | Withheld | Attorney-Client Communication | Attachment to communication to counsel seeking legal advice on contract. |
| 29 | 0649001.00018618 | | email | robert.gorham@hkla w.com | camiller, charles a. [ccamailer@williasart i.com];diane@rspimited.com | | FW: Correspondence and Exhibit A re: Lockheed | 8/20/2008 | 00000003386F65A3A9F814 4E8AA978243427E8E6442 210O.MSG | Withheld | Attorney-Client Communication | Attachment to Counsel's email providing legal advice regarding contract. |

A129

**Rock Spring Plaza II - Privilege Log**

| Item # | Control Number | Bates Range | Document Type | Email From | Email To | Email CC | Email Subject | Document Date | File Name | Privilege | Privilege Type | Privilege Description |
|---|---|---|---|---|---|---|---|---|---|---|---|---|
| 30 | 0649001.00018607 | | Attachment | | | | 5555135_1.DOC | 8/20/2008 | 5555135_1.DOC | Withheld | Attorney-Client Communication | Attachment to Counsel's email providing legal advice regarding contract. |
| 31 | 0649001.00018596 | | Attachment | | | | 555529b_2.DOC | 8/20/2008 | 555529b_2.DOC | Withheld | Attorney-Client Communication | Attachment to Counsel's email providing legal advice regarding contract. |
| 32 | CamailerD001580 - CamailerD001582 | | email | diane dantzman [diane@rsplimited.co m] | robert.gorham@hkla w.com | camailer, charles a. [camailer@wilkeanti s.com] | FW: 6560 Rock Spring Drive | 8/21/2008 | 00000003386F658A3FB14 4E8AA0782A3427BE6E406 2100.MSG | Withheld | Attorney-Client Communication | Communication to counsel seeking legal advice on contract redacted. |
| 33 | 0649001.00018550 | | email | robert.gorham@hkla w.com | camailer, charles a. [camailer@wilkeanti s.com]jdiane@rsplim ited.com | carmela.williams@hkl aw.com | FW: Correspondence and Exhibit A - Lockheed (DeltaView Document Distribution) | 8/21/2008 | 00000003386F658A3FB14 4E8AA0782A3427BE8A406 2100.MSG | Withheld | Attorney-Client Communication | Counsel providing legal advice regarding contract. |
| 34 | 0649001.00018549 | | Attachment | | | | Rock Spring II Limited Partnership | 8/21/2008 | Redline.doc | Withheld | Attorney-Client Communication | Attachment to Counsel's email providing legal advice regarding contract. |
| 35 | 0649001.00018552 | | Attachment | | | | Rock Spring II Limited Partnership | 8/21/2008 | 4555135v2_Active_-v2-Correspondence to Lockheed.DOC | Withheld | Attorney-Client Communication | Attachment to Counsel's email providing legal advice regarding contract. |
| 36 | 0649001.00018562 | | Attachment | | | | Exhibit A | 8/21/2008 | Redline.doc | Withheld | Attorney-Client Communication | Attachment to Counsel's email providing legal advice regarding contract. |
| 37 | 0649001.00018559 | | Attachment | | | | Exhibit A | 8/21/2008 | 4555296v3_Active_-v3-Exhibit A - Removal List.DOC | Withheld | Attorney-Client Communication | Attachment to Counsel's email providing legal advice regarding contract. |
| 38 | 0649001.00018471 | | email | robert.gorham@hkla w.com | camailer, charles a. [camailer@wilkeanti s.com] | carmela.williams@hkl aw.com | FW: Exhibit A (DeltaView Document Distribution) | 8/22/2008 | 00000003386F658A3FB14 4E8AA0782A3427BE82A07 2100.MSG | Withheld | Attorney-Client Communication | Counsel providing legal advice regarding contract. |
| 39 | 0649001.00018460 | | Attachment | | | | Exhibit A | 8/22/2008 | Redline.doc | Withheld | Attorney-Client Communication | Attachment to Counsel's email providing legal advice regarding contract. |
| 40 | 0649001.00018459 | | Attachment | | | | Exhibit A | 8/22/2008 | 4555296v5_Active_-v5-Exhibit A - Removal List.DOC | Withheld | Attorney-Client Communication | Attachment to Counsel's email providing legal advice regarding contract. |
| 41 | 0649001.00018515 | | email | carmela.williams@hkl aw.com | camailer, charles a. [camailer@wilkeanti s.com]jdiane@rsplim ited.com | robert.gorham@hkla w.com | Exhibit A - Rock Spring (DeltaView Document Distribution) | 8/22/2008 | 00000003386F658A3FB14 4E8AA0782A3427BE8A408 2100.MSG | Withheld | Attorney-Client Communication | Counsel providing legal advice regarding contract. |
| 42 | 0649001.00018511 | | Attachment | | | | Exhibit A | 8/22/2008 | Redline.doc | Withheld | Attorney-Client Communication | Attachment to Counsel's email providing legal advice regarding contract. |
| 43 | 0649001.00018508 | | Attachment | | | | Exhibit A | 8/22/2008 | 4555296v4_Active_-v4-Exhibit A - Removal List.DOC | Withheld | Attorney-Client Communication | Attachment to Counsel's email providing legal advice regarding contract. |
| 44 | 0649001.00018472 | | email | robert.gorham@hkla w.com | camailer, charles a. [camailer@wilkeanti s.com] | carmela.williams@hkl aw.com,diane@rspli mited.com | FW: Exhibit A (DeltaView Document Distribution) | 8/23/2008 | 00000003386F658A3FB14 4E8AA0782A3427BE8A405 2100.MSG | Withheld | Attorney-Client Communication | Counsel providing legal advice regarding contract related. |
| 45 | 0649001.00018466 | | Attachment | | | | Exhibit A | 8/23/2008 | Redline.doc | Withheld | Attorney-Client Communication | Attachment to Counsel's email providing legal advice regarding contract. |
| 46 | 0649001.00018461 | | Attachment | | | | Exhibit A | 8/23/2008 | 4555296v5_Active_-v6-Exhibit A - Removal List.DOC | Withheld | Attorney-Client Communication | Attachment to Counsel's email providing legal advice regarding contract. |
| 47 | CamailerD001655 - CamailerD001607 | | email | robert.gorham@hkla w.com | camailer, charles a. [camailer@wilkeanti s.com] | diane@rsplimited.co m | FW: 6560 Rock spring (FW: Correspondence to Lockheed [5555135_2.DOC]) | 8/25/2008 | 00000003386F658A3FB14 4E8AA0782A3427BE8C400 2100.MSG | Withheld | Attorney-Client Communication | Counsel providing legal advice regarding contract related. |
| 48 | 0649001.00018373 | | email | robert.gorham@hkla w.com | camailer, charles a. [camailer@wilkeanti s.com] | | FW: Correspondence to Lockheed [5555135_2.DOC] | 8/26/2008 | 00000003386F658A3FB14 4E8AA0782A3427BE8AACE 2100.MSG | Withheld | Attorney-Client Communication | Attachment to Counsel's email providing legal advice regarding contract. |

**Rock Spring Plaza II - Privilege Log**

| Item # | Control Number | Bates Range | Document Type | Email From | Email To | Email CC | Email Subject | Document Date | File Name | Privilege | Privilege Type | Privilege Description |
|---|---|---|---|---|---|---|---|---|---|---|---|---|
| 49 | 0649001-00018377 | | Attachment | | | | | | | Withheld | Attorney-Client Communication | Attachment to Counsel's email providing legal advice regarding contract. |
| 50 | 0649001-00018387 | | email | robert.gorham@kkw.com | camailer, charles a. [ccamailer@willkiearti s.com] | diane@rpglimited.co m | 5555135_2.DOC FW: Exhibit A - Rock Spring (DellaView Document Distribution) | 8/26/2008 | 0000000318b6f658A3F814 4E8AA9782A34D27BEB64CE 2100.MSG | Withheld | Attorney-Client Communication | Counsel providing legal advice regarding contract. |
| 51 | 0649001-00018376 | | Attachment | | | | Exhibit A | 8/26/2008 | Redline.doc | Withheld | Attorney-Client Communication | Attachment to Counsel's email providing legal advice regarding contract. |
| 52 | 0649001-00018371 | | Attachment | | | | Exhibit A | 8/25/2008 | #555529fc6_Active_ - v6- Exhibit A - Removal List.DOC | Withheld | Attorney-Client Communication | Attachment to Counsel's email providing legal advice regarding contract. |
| 53 | 0649001-00016755 Camailer0000217 / Camailer0000218 | | email | robert.gorham@kkw.com | camailer, charles a. [ccamailer@willkiearti s.com] | camailer, charles a. [ccamailer@willkiearti s.com] robert.gorham.gorham @kkw.com | RE: 6560 Rock Spring | 10/1/2008 | 0000000318b6f658A3F814 4E8AA9782A34D27BEB64AC 2100.MSG | Withheld | Attorney-Client Communication | Counsel providing legal advice regarding contract. |
| 54 | 0649001-00016751 Camailer0000216 | | email | robert.gorham@kkw.com | camailer, charles a. [ccamailer@willkiearti s.com] | | RE: 6560 Rock Spring | 10/1/2008 | 0000000318b6f658A3F814 4E8AA9782A34D27BEB64AE 2100.MSG | Withheld | Attorney-Client Communication | Counsel providing legal advice regarding contract. |
| 55 | 0649001-00016752 Camailer0000214 | | email | robert.gorham@kkw.com | diane@rpglimited.co m | camailer, charles a. [ccamailer@willkiearti s.com] | RE: 6560 Rock Spring | 10/1/2008 | 0000000318b6f658A3F814 4E8AA9782A34D27BEB64AE 2100.MSG | Withheld | Attorney-Client Communication | Counsel providing legal advice regarding contract. |
| 56 | 0649001-00014280 | | email | diane.dantagnan [diane@rpglimited.co m] | camailer, charles a. [ccamailer@willkiearti s.com] robert.gorham @kkw.com | | RE: Correspondence to Rock Spring II LP from Lockheed Martin (DellaView Document Distribution) | 11/24/2008 | 0000000318b6f658A3F814 4E8AA9782A34D27BEB64875 2000.MSG | Withheld | Attorney-Client Communication | Communication to counsel seeking legal advice on contract. |
| 57 | 0649001-00014275 | | email | robert.gorham@kkw.com | camailer, charles a. [ccamailer@willkiearti s.com] diane@rpglimi ted.com | | FW: Correspondence to Rock Spring II LP from Lockheed Martin (DellaView Document Distribution) | 11/24/2008 | 0000000318b6f658A3F814 4E8AA9782A34D27BEB64475 2000.MSG | Withheld | Attorney-Client Communication | Counsel providing legal advice regarding contract. |
| 58 | 0649001-00014264 | | Attachment | | | | Lockheed Martin Corporation | 11/24/2008 | Redline.doc | Withheld | Attorney-Client Communication | Attachment to Counsel's email providing legal advice regarding contract. |
| 59 | 0649001-00014260 | | Attachment | | | | Lockheed Martin Corporation | 11/24/2008 | #5834113n2_Active_ - v2- Correspondence to Rock Spr.DOC | Withheld | Attorney-Client Communication | Attachment to Counsel's email providing legal advice regarding contract. |
| 60 | 0649001-00014106 | | email | diane.dantagnan [diane@rpglimited.co m] | camailer, charles a. [ccamailer@willkiearti s.com] robert.gorham @kkw.com | | Lockheed | 12/1/2008 | 0000000318b6f658A3F814 4E8AA9782A34D27BEB6467 2000.MSG | Withheld | Attorney-Client Communication | Communication to counsel seeking legal advice on contract. |
| 61 | 0649001-00000886 Camailer0000189 / Camailer0000190 | | email | robert.gorham@kk w.com | camailer, charles a. [ccamailer@willkiearti s.com] | camailer, charles a. [ccamailer@willkiearti s.com] | Storage Tank @ 6560 Rock Spring Drive | 3/17/2009 | 0000000C44E62d967902E 488F6CA22BC6B34F64030 2200.MSG | Withheld | Attorney-Client Communication | Counsel providing legal advice regarding contract. |
| 62 | 0649001-00000864 Camailer0002192 | | Attachment | | | | img-31709 1345-0001.pdf | 3/17/2009 | img-317091345-0001.pdf | Withheld | Attorney-Client Communication | Attachment to communication to counsel seeking legal advice on contract. |
| 63 | 0649001-00000847 | | email | jane.weaver [jweaver@pgte.com] | camailer, charles a. [ccamailer@willkiearti s.com] | | Covance, Inc. | 5/18/2009 | 0000000C44E62d967902E 488F6CA22BC6B34F48417 2200.MSG | Withheld | Attorney-Client Communication | Counsel providing legal advice regarding contract. |
| 64 | 0649001-00000831 | | Attachment | | | | CFT Document Title | 5/18/2009 | COVANCE LOI.pdf | Withheld | Attorney-Client Communication | Attachment to Counsel's email providing legal advice regarding contract. |

A131

**Rock Spring Plaza II - Privilege Log**

| Item # | Control Number | Bates Range | Document Type | Email From | Email To | Email CC | Email Subject | Document Date | File Name | Privilege | Privilege Type | Privilege Description |
|---|---|---|---|---|---|---|---|---|---|---|---|---|
| 65 | 0649001.00004527 | Camailer0005571-Camailer0005572 | email | silberberg, steve @ bethesda [steve.silverberg@cbre.com] | camailer, charles a. [camailer@willasartis.com] | cahill, jim @ bethesda [jim.cahill@cbre.com] thau, larry @ bethesda [larry.thau@cbre.com] | FW: 3M | 7/13/2009 | 00000000CA4E62D9E7902E4B8F6CA22BCC6B34FA4444E2000.MSG | Withheld | Attorney-Client Communication | Broker communication with client regarding legal advice regarding contract. |
| 66 | 0649001.00004515 | Camailer0005573-Camailer0005573 | Attachment | | | | image001.jpg | 7/14/2009 | image001.jpg | Withheld | Attorney-Client Communication | Attachment to broker communication with client regarding legal advice regarding contract. |
| 67 | 0649001.00004513 | Camailer0005574-Camailer0005588 | Attachment | | | | CPI Document Title | 12/24/2020 | 3M (2) 7-13-09.pdf | Withheld | Attorney-Client Communication | Attachment to broker communication with client regarding legal advice regarding contract. |
| 68 | 0649001.00004497 | Camailer0005564-Camailer0005555 | email | jane weaver [jweaver@shulmanrogers.com] | camailer, charles a. [camailer@willasartis.com] | james g. cahill [jim.cahill@fno...] [jim.cahill@cbre.com] [larry.thau@cbre.com] [steve.silverman@jmorrisgoenroymund.] [steve.silverman@norogomerycountymd.gov] | 3M | 7/13/2009 | 00000000CA4E62D9E7902E4B8F6CA22BCC6B34FA4444F2000.MSG | Withheld | Attorney-Client Communication | Counsel providing legal advice regarding contract. |
| 69 | 0649001.00004507 | Camailer0005566-Camailer0005570 | Attachment | | | | CPI Document Title | 12/24/2020 | 3M (2) 7-13-09.pdf | Withheld | Attorney-Client Communication | Attachment to Counsel's email providing legal advice regarding contract. |
| 70 | 0649001.00004165 | Camailer0002471-Camailer0002471 | email | silberberg, steve @ bethesda [steve.silverberg@cbre.com] | doug hirsch [dhirsch@bgpe.com] | cahill, jim @ bethesda [jim.cahill@cbre.com] thau, larry @ bethesda [larry.thau@cbre.com] camailer, charles a. [camailer@willasartis.com] | 65660 Rock Spring Drive | 7/13/2009 | 00000000CA4E62D9E7902E4B8F6CA22BCC6B34FA40453 2000.MSG | Withheld | Attorney-Client Communication | Broker communication with counsel regarding legal advice for contract. |
| 71 | 0649001.00004454 | Camailer0004454 | email | doug hirsch [dhirsch@bgpe.com] | camailer, charles a. [camailer@willasartis.com] | | Henry Jackson Foundation | 7/14/2009 | 00000000CA4E62D9E7902E4B8F6CA22BCC6B34FA4444B 2000.MSG | Withheld | Attorney-Client Communication | Counsel providing legal advice regarding contract. |
| 72 | 0649001.00004456 | Camailer0004456 | Attachment | | | | CPI Document Title | 12/24/2020 | JACKSON FOUNDATION RFP.pdf | Withheld | Attorney-Client Communication | Attachment to counsel communication discussing contract. Includes written advice from counsel to client. |
| 73 | 0649001.00058375 | Camailer0004450-Camailer0004450 | email | diane flanagan [diane@grplimited.com] | camailer, charles a. [camailer@willasartis.com] jimbert.gorham @hklaw.com | | Rock Spring II | 4/7/2010 | 000000000289F73175104C74DAB841505B6A3FA04E4E5 2300.MSG | Withheld | Attorney-Client Communication | Communication to counsel seeking legal advice. |
| 74 | 0649001.00058484 | Camailer0002715-Camailer0002716 | email | doug hirsch [dhirsch@shulmanrogers.com] | camailer, charles a. [camailer@willasartis.com] | | RE: 6560 / HJOST | 4/4/2010 | 000000000289F73175104C74DAB841505B6A3FA04EC7 2300.MSG | Redacted | Attorney-Client Communication | Communication from counsel providing legal advice regarding contract. |
| 75 | 0649001.00058023 | Camailer0002828-Camailer0002828 | email | silberberg, steve @ bethesda [steve.silverberg@cbre.com] | camailer, charles a. [camailer@willasartis.com] | cahill, jim @ bethesda [jim.cahill@cbre.com] thau, larry @ bethesda [larry.thau@cbre.com] | 6560 Rock Spring | 4/28/2010 | 000000000289F73175104C74DAB841505B6A3FA042AA1 2300.MSG | Withheld | Attorney-Client Communication | Broker communication with counsel regarding legal advice for contract. |

Rock Spring Plaza II - Privilege Log

| Item # | Control Number | Bates Range | Document Type | Email From | Email To | Email CC | Email Subject | Document Date | File Name | Privilege | Privilege Type | Privilege Description |
|---|---|---|---|---|---|---|---|---|---|---|---|---|
| 76 | 0649001-00057949 | Camaller00055589-Camaller00055589 | email | ellen k. degross [edegross@shulmanrogers.com] | Steven silverberg [steve.silverberg@bbr-e.com]; camaller, charles a. [ccamaller@wilkeasr.com] | doug hirsch [dhirsch@shulmanrogers.com] | Bank of America | 4/29/2010 | 00000002897837510FC7 4DA884155086A3FA0A449 A2900.MSG | Withheld | Attorney-Client Communication | Communication from counsel providing legal advice regarding contract. |
| 77 | 0649001-00057950 Camaller00057952 | | Attachment | | | | RFP Comments 042910.pdf | 12/14/2020 | RFP Comments 042910.pdf | Withheld | Attorney-Client Communication | Attachment to counsel communication discussing contract. |
| 78 | 0649001-00057901 | Camaller00056626-Camaller00056627 | email | owenstest, marcy (us) [marcy.owenstest@mjl.com] | robert.macklin@kl.law.com | camaller, charles a. [ccamaller@wilkeasr.com] | RE: 6560 Rock Spring Park Proposal | 4/30/2010 | 00000002897837510FC7 4DA884155086A3FA0A0497 2300.MSG | Withheld | Attorney-Client Communication | Communication between client and broker providing legal advice on behalf of counsel. |
| 79 | 0649001-00057933 | Camaller00056624-Camaller00056625 | email | robert.macklin@kl.law.com | marcy.owenstest@mjl.com | camaller, charles a. [ccamaller@wilkeasr.com] | RE: 6560 Rock Spring Park Proposal | 4/30/2010 | 00000002897837510FC7 4DA884155086A3FA0A2490 2300.MSG | Redacted | Attorney-Client Communication | Communication between client and broker providing legal advice on behalf of counsel. |
| 80 | 0649001-00057450 | Camaller00056629-Camaller00056629 | email | ellen k. degross [edegross@shulmanrogers.com] | camaller, charles a. [ccamaller@wilkeasr.com]; diane dantagnan [ddantagnan@wilkeasr.com] | 'diane dantagnan [ddantagnan@wilkeasr.com]'; [steve silverberg [steve.silverberg@bbr-e.com]; [doug hirsch [dhirsch@shulmanrogers.com] | The Henry M. Jackson Foundation | 5/12/2010 | 00000002897837510FC7 4DA884155086A3FA0A444F 2300.MSG | Withheld | Attorney-Client Communication | Communication from counsel to client providing legal advice. |
| 81 | 0649001-00057455 | Camaller00056630-Camaller00056642 | Attachment | | | | RFP Comments 051210.pdf | 12/14/2020 | RFP Comments 051210.pdf | Withheld | Attorney-Client Communication | Attachment to communication from counsel to client providing legal advice. Attachment contains mark up writings from counsel to client. |
| 82 | 0649001-00056235 | Camaller00053010-Camaller00053010 | email | robert gorham [robert.gorham@mgslimited.com] | camaller, charles a. [ccamaller@wilkeasr.com]; diane dantagnan [ddantagnan@wilkeasr.com] | | FW: | 6/15/2010 | 00000002897837510FC7 4DA884155086A3FA0A406 2300.MSG | Redacted | Attorney-Client Communication | Communication from counsel providing legal advice regarding contract. |
| 83 | 0649001-00056126 | Camaller00053029-Camaller00053029 | email | robert gorham [robert.gorham@mgslimited.com] | camaller, charles a. [ccamaller@wilkeasr.com]; diane dantagnan [ddantagnan@wilkeasr.com] | | FW: 6560 Rock Spring Drive 3rd Floor Demo | 6/17/2010 | 00000002897837510FC7 4DA884155086A3FA0A06640 2200.MSG | Redacted | Attorney-Client Communication | Communication from counsel providing legal advice regarding contract. |
| 84 | 0649001-00055917 | | email | robert gorham [robert.gorham@mgslimited.com] | camaller, charles a. [ccamaller@wilkeasr.com] | | Listing Agreement w/DRBC CONFIDENTIAL-ATTORNEY CLIENT PRIVILEGE | 6/23/2010 | 00000002897837510FC7 4DA884155086A3FA0A484A 2200.MSG | Withheld | Attorney-Client Communication | Counsel providing legal advice regarding contract. |
| 85 | 0649001-00055705 | | email | robert gorham [robert.gorham@mgslimited.com] | camaller, charles a. [ccamaller@wilkeasr.com] | | FW: Amendment to Exclusive Leasing Agreement | 6/29/2010 | 00000002897837510FC7 4DA884155086A3FA0A2420 3200.MSG | Withheld | Attorney-Client Communication | Counsel providing legal advice regarding contract. |
| 86 | 0649001-00055717 | | Attachment | | | | AMENDMENT TO EXCLUSIVE LEASING AGREEMENT | 6/25/2010 | AMENDMENT TO EXCLUSIVE LEASING AGREEMENT.doc | Withheld | Attorney-Client Communication | Attachment to Counsel's email providing legal advice regarding contract. |
| 87 | 0649001-00055666 | | email | robert gorham [robert.gorham@mgslimited.com] | camaller, charles a. [ccamaller@wilkeasr.com] | | FW: Revised Application | 7/1/2010 | 00000002897837510FC7 4DA884155086A3FA0A2420 52200.MSG | Withheld | Attorney-Client Communication | Counsel providing legal advice regarding contract. |
| 88 | 0649001-00055669 | | Attachment | | | | INCOME PROPERTY LOAN APPLICATION | 6/25/2010 | ING Camaller App 35000 Vers 1 (blackline).doc | Withheld | Attorney-Client Communication | Attachment to Counsel's email providing legal advice regarding contract. |

A133

Case 8:20-cv-01502-PJM   Document 238-2   Filed 01/25/23   Page 33 of 71

**Rock Spring Plaza II - Privilege Log**

| Item # | Control Number | Bates Range | Document Type | Email From | Email To | Email CC | Email Subject | Document Date | File Name | Privilege | Privilege Type | Privilege Description |
|---|---|---|---|---|---|---|---|---|---|---|---|---|
| 89 | 0649001.00055258 | Camaleri0003036 - Camaleri0003038 | email | robert gorham [robert.gorham@mgmited.com] | camaleri, charles a. [ccamaleri@willkearti s.com] diane danzagnan [ddane@mgslimited.co m] | | RE: 6560 Rock Spring Parkway HRSA Response To-Do List CONFIDENTIAL-ATTORNEY CLIENT PRIVILEGE | 7/14/2010 | 000000002189783751DFC7 4DA8841505B6A3FA042486 2200.MSG | Redacted | Attorney-Client Communication | Communication from counsel providing legal advice regarding contract. |
| 90 | 0649001.00055089 | Camaleri0003072 - Camaleri0003073 | email | robert gorham [robert.gorham@mgsl imited.com] | camaleri, charles a. [ccamaleri@willkearti s.com] diane danzagnan [ddane@mgslimited.co m] | | FW: Interior Architects Propsal-6560 Rock Spring | 7/16/2010 | 000000002189783751DFC7 4DA8841505B6A3FA04CAA 8220D.MSG | Redacted | Attorney-Client Communication | Communication from counsel providing legal advice regarding contract. |
| 91 | 0649001.00055094 | Camaleri0003091 - Camaleri0003093 | email | robert gorham [robert.gorham@mgsl imited.com] | camaleri, charles a. [ccamaleri@willkearti s.com] diane danzagnan [ddane@mgslimited.co m] | | FW: Interior Architects Propsal-6560 Rock Spring | 7/19/2010 | 000000002189783751DFC7 4DA8841505B6A3FA04AAA 6220D.MSG | Redacted | Attorney-Client Communication | Communication from counsel providing legal advice regarding contract. |
| 92 | 0649001.00055448 | Camaleri0003141 - Camaleri0003141 | email | robert gorham [robert.gorham@mgsl imited.com] | camaleri, charles a. [ccamaleri@willkearti s.com] | | FW: 6560 Update | 7/30/2010 | 000000002189783751DFC7 4DA8841505B6A3FA04B473 2200.MSG | Redacted | Attorney-Client Communication | Communication from counsel providing legal advice regarding contract. |
| 93 | 0649001.00053894 | Camaleri0003165 - Camaleri0003166 | email | robert gorham [robert.gorham@mgsl imited.com] | camaleri, charles a. [ccamaleri@willkearti s.com] | doug hirsch [dhirsch@hulmanang lers.com] steven silverberg [steve.silverberg@tbr k.com] | FW: Core Factors | 8/12/2010 | 000000002189783751DFC7 4DA8841505B6A3FA04E644 2200.MSG | Redacted | Attorney-Client Communication | Communication from counsel providing legal advice regarding contract. |
| 94 | 0649001.00053587 | Camaleri0005643 - Camaleri0005643 | email | ellen k. degroos [edegroos@hulmanang lers.com] | camaleri, charles a. [ccamaleri@willkearti s.com] | steven silverberg [steve.silverberg@tbr k.com] | The Henry M. Jackson Foundation | 8/18/2010 | 000000002189783751DFC7 4DA8841505B6A3FA04C430 2200.MSG | Withheld | Attorney-Client Communication | Communication from counsel providing legal advice. |
| 95 | 0649001.00053594 | Camaleri0005644 - Camaleri0005660 | Attachment | | | | Counter Propsal from HMJF to JLL initial proposal 081810.pdf | 12/14/2020 | Counter Proposal from HMJF to JLL initial proposal 081810.pdf | Withheld | Attorney-Client Communication | Attachment to communication from counsel for client providing legal advice. Attachment contains mark up writings from counsel to client. |
| 96 | 0649001.00053477 | Camaleri0003230 - Camaleri0003231 | email | silverberg, steve @ bethesda [steve.silverberg@tbr k.com] | camaleri, charles a. [ccamaleri@willkearti s.com] diane danzagnan [ddane@mgslimited.co m] robert gorham [robert.gorham@mgsl imited.com] | cahill, jim @ bethesda [jim.cahill@tbr k.com] zhau, larry @ bethesda [larry.zhau@tbr k.com] | RE: 6560 Rock Spring Drive | 8/19/2010 | 000000002189783751DFC7 4DA8841505B6A3FA04EA12 2200.MSG | Withheld | Attorney-Client Communication | Broker communication with counsel regarding legal advice for contract. |
| 97 | 0649001.00053484 | Camaleri0003229 - Camaleri0003229 | email | robert gorham [robert.gorham@mgsl imited.com] | camaleri, charles a. [ccamaleri@willkearti s.com] diane danzagnan [ddane@mgslimited.co m] silverberg, steve @ bethesda [steve.silverberg@tbr k.com] | cahill, jim @ bethesda [jim.cahill@tbr k.com] zhau, larry @ bethesda [larry.zhau@tbr k.com] | RE: 6560 Rock Spring Drive | 8/19/2010 | 000000002189783751DFC7 4DA8841505B6A3FA04E427 2200.MSG | Redacted | Attorney-Client Communication | Broker communication with counsel regarding legal advice for contract. |
| 98 | 0649001.00053499 | | email | robert gorham [robert.gorham@mgsl imited.com] | camaleri, charles a. [ccamaleri@willkearti s.com] | diane danzagnan [ddane@mgslimited.co m] | Update on GSA from Marcy | 8/19/2010 | 000000002189783751DFC7 4DA8841505B6A3FA04D429 2200.MSG | Withheld | Attorney-Client Communication | Broker communication with counsel regarding legal advice for contract. |

A134

Rock Spring Plaza II - Privilege Log

| Item # | Control Number | Bates Range | Document Type | Email From | Email To | Email CC | Email Subject | Document Date | File Name | Privilege | Privilege Type | Privilege Description |
|---|---|---|---|---|---|---|---|---|---|---|---|---|
| 99 | 064001.00053461 | CamailerO003290 CamailerO003392 | email | robert gorham [robert.gorham@mgm ilmited.com] | camailer, charles a. [ccamailer@willasanti x.com];diane dantagnan [diane@mgplimited.co m] | camailer, charles a. [ccamailer@willasanti x.com];diane dantagnan [diane@mgplimited.co m] | FW: 6560 Rock Spring Drive | 8/20/2010 | 000000002B9F783751DFC7 4DAB841505B6A3FA042423 2200.MSG | Redacted | Attorney-Client Communication | Broker communication with counsel regarding legal advice for contract. |
| 100 | 064001.00053444 | CamailerO003266 - CamailerO003367 | email | robert gorham [robert.gorham@mgp ilmited.com] | silverberg, steve @ bethesda [steve.silverberg@br k.com] | [diane@mgplimited.co m] | RE: 6560 Rock Spring Drive | 8/20/2010 | 000000002B9F783751DFC7 4DAB841505B6A3FA042424 2200.MSG | Redacted | Attorney-Client Communication | Broker communication with counsel regarding legal advice for contract. |
| 101 | 064001.00053451 | CamailerO003264 - CamailerO003355 | email | robert gorham [robert.gorham@mgpil imited.com] | silverberg, steve @ bethesda [steve.silverberg@br k.com] | camailer, charles a. [ccamailer@willasanti x.com];diane dantagnan [diane@mgplimited.co m] | RE: 6560 Rock Spring Drive | 8/20/2010 | 000000002B9F783751DFC7 4DAB841505B6A3FA044424 2200.MSG | Redacted | Attorney-Client Communication | Broker communication with counsel regarding legal advice for contract. |
| 102 | 064001.00053482 | CamailerO003362 - CamailerO003363 | email | robert gorham [robert.gorham@mgpil imited.com] | silverberg, steve @ bethesda [steve.silverberg@br k.com] | camailer, charles a. [ccamailer@willasanti x.com];diane dantagnan [diane@mgplimited.co m] | RE: 6560 Rock Spring Drive | 8/20/2010 | 000000002B9F783751DFC7 4DAB841505B6A3FA044425 2200.MSG | Redacted | Attorney-Client Communication | Broker communication with counsel regarding legal advice for contract. |
| 103 | 064001.00053490 | CamailerO003248 - CamailerO003248 | email | robert gorham [robert.gorham@mgp ilmited.com] | camailer, charles a. [ccamailer@willasanti x.com];diane dantagnan [diane@mgplimited.co m] | camailer, charles a. [ccamailer@willasanti x.com];diane dantagnan [diane@mgplimited.co m] | FW: 6560 Rock Spring Drive | 8/20/2010 | 000000002B9F783751DFC7 4DAB841505B6A3FA044425 2200.MSG | Redacted | Attorney-Client Communication | Broker communication with counsel regarding legal advice for contract. |
| 104 | 064001.00052966 | CamailerO002966 | email | | camailer, charles a. [ccamailer@willasanti x.com] | diane dantagnan [diane@mgplimited.co m] | FW: AAAP SPO Qualification for 6560 | 8/20/2010 | 000000002B9F783751DFC7 4DAB841505B6A3FA044470 2100.MSG | Withheld | Attorney-Client Communication | Communication from counsel providing legal advice regarding contract. |
| 105 | 064001.00052993 | | email | robert gorham [robert.gorham@mgpi ilmited.com] | daniel.scholz@am.jll.c om | camailer, charles a. [ccamailer@willasanti x.com];diane dantagnan [diane@mgplimited.co m];[rweraslag@idoma nspeyer.com | RE: AAAP SPO Qualification for 6560 | 8/20/2010 | 000000002B9F783751DFC7 4DAB841505B6A3FA042470 2200.MSG | Withheld | Attorney-Client Communication | Communication between client and broker providing legal advice on behalf of counsel. |
| 106 | 064001.00052988 | | email | robert gorham [robert.gorham@mgpil imited.com] | daniel.scholz@am.jll.c om | camailer, charles a. [ccamailer@willasanti x.com];diane dantagnan [diane@mgplimited.co m];[rweraslag@idoma nspeyer.com | FW: AAAP SPO Qualification for 6560 | 8/20/2010 | 000000002B9F783751DFC7 4DAB841505B6A3FA044400 2200.MSG | Withheld | Attorney-Client Communication | Communication between client and broker providing legal advice on behalf of counsel. |
| 107 | 064001.00052977 | | email | robert gorham [robert.gorham@mgpil imited.com] | scholz, daniel [us] [daniel.scholz@am.jll. com] | camailer, charles a. [ccamailer@willasanti x.com];diane dantagnan [diane@mgplimited.co m];overessted, marcy [us] [marcy.overessted@a m.jll.com];wranaker, henrik [henrik.wranaker@idoma nspeyer.com] | RE: AAAP SPO Qualification for 6560 | 8/20/2010 | 000000002B9F783751DFC7 4DAB841505B6A3FA044401 2200.MSG | Withheld | Attorney-Client Communication | Communication between client and broker providing legal advice on behalf of counsel. |

A135

Case 8:20-cv-01502-PJM   Document 238-2   Filed 01/25/23   Page 35 of 71

Rock Spring Plaza II - Privilege Log

| Item # | Control Number | Bates Range | Document Type | Email From | Email To | Email CC | Email Subject | Document Date | File Name | Privilege | Privilege Type | Privilege Description |
|---|---|---|---|---|---|---|---|---|---|---|---|---|
| 108 | 0649001.00052981 | | email | scholz, daniel (us) [daniel.scholz@am.jll.com] | robert gorham [robert.gorham@spli mited.com] | camiller, charles a. [ccamailer@willseant s.com];diane damagran [diane@rngslimited.co m];oweresten, marcy (us) [marcy.overesten@a m.jll.com];wranake, henrik | RE: AAAP SFO Qualification for 5560 | 8/10/2010 | 000000003B97B37510FC7 4DAB841505B6A3FA04A401 2100.MSG | Withheld | Attorney-Client Communication | Communication between client and broker providing legal advice on behalf of counsel |
| 109 | 0649001.00052975 | | email | robert gorham [robert.gorham@spli mited.com] | scholz, daniel (us) [daniel.scholz@am.jll. com] | camiller, charles a. [ccamailer@willseant s.com];diane damagran [diane@rngslimited.co m];oweresten, marcy (us) [marcy.overesten@a m.jll.com] | RE: AAAP SFO Qualification for 5560 | 8/10/2010 | 000000003B97B37510FC7 4DAB841505B6A3FA04A401 2200.MSG | Withheld | Attorney-Client Communication | Communication between client and broker providing legal advice on behalf of counsel |
| 110 | 0649001.00052838 | Camaied003293 - Camaied003293 | email | scholz, daniel (us) [daniel.scholz@am.jll. com] | robert gorham [robert.gorham@spli mited.com] | camiller, charles a. [ccamailer@willseant s.com];diane damagran [diane@rngslimited.co m];oweresten, marcy (us) [marcy.overesten@a m.jll.com] | FW: New AAAP Solicitation for Offers | 9/1/2010 | 000000003B97B37510FC7 4DAB841505B6A3FA04A460 2100.MSG | Redacted | Attorney-Client Communication | Communication between client and broker providing legal advice on behalf of counsel |
| 111 | 0649001.00052831 | Camaied003296 - Camaied003297 | email | robert gorham [robert.gorham@spli mited.com] | scholz, daniel (us) [daniel.scholz@am.jll. com] | camiller, charles a. [ccamailer@willseant s.com];diane damagran [diane@rngslimited.co m];oweresten, marcy (us) [marcy.overesten@a m.jll.com] | RE: New AAAP Solicitation for Offers | 9/2/2010 | 000000003B97B37510FC7 4DAB841505B6A3FA04E4F1 2100.MSG | Withheld | Attorney-Client Communication | Communication between client and broker providing legal advice on behalf of counsel |
| 112 | 0649001.00052832 | Camaied003294 - Camaied003295 | email | robert gorham [robert.gorham@spli mited.com] | scholz, daniel (us) [daniel.scholz@am.jll. com] | camiller, charles a. [ccamailer@willseant s.com];diane damagran [diane@rngslimited.co m];oweresten, marcy (us) [marcy.overesten@a m.jll.com] | RE: New AAAP Solicitation for Offers | 9/2/2010 | 000000003B97B37510FC7 4DAB841505B6A3FA04D4F1 2100.MSG | Redacted | Attorney-Client Communication | Communication between client and broker providing legal advice on behalf of counsel |
| 113 | 0649001.00052678 | Camaied003304 - Camaied003304 | email | scholz, daniel (us) [daniel.scholz@am.jll. com] | robert gorham [robert.gorham@spli mited.com] | camiller, charles a. [ccamailer@willseant s.com];diane damagran [diane@rngslimited.co m];oweresten, marcy (us) [marcy.overesten@a m.jll.com] | Copy of Rent Calculations-5560.xls | 9/3/2010 | 000000003B97B37510FC7 4DAB841505B6A3FA04B4E5 2100.MSG | Withheld | Attorney-Client Communication | Communication between client and broker providing legal advice on behalf of counsel |

A136

Case 8:20-cv-01502-PJM   Document 238-2   Filed 01/25/23   Page 36 of 71

Rock Spring Plaza II - Privilege Log

| Item # | Control Number | Bates Range | Document Type | Email From | Email To | Email CC | Email Subject | Document Date | File Name | Privilege | Privilege Type | Privilege Description |
|---|---|---|---|---|---|---|---|---|---|---|---|---|
| 114 | 064900100052702 | Camaile0003301-Camaile0003303 | email | robert gorham (robert.gorham@ngpi mited.com) | scholz, daniel (us) (daniel.scholz@am.jll. com) | camailer, charles a. (ccamailer@williesanti s.com)[dane darragnan (dane@ngplimited.co m);owersten[, marcy (us) | RE: New AAAP Solicitation for Offers | 9/7/2010 | 00000000028978375107C7 4DA88415058A3FA04A4EF 2100.MSG | Redacted | Attorney-Client Communication | Communication between client and broker providing legal advice on behalf of counsel. |
| 115 | 064900100052709 | Camaile0003298-Camaile0003300 | email | scholz, daniel (us) (daniel.scholz@am.jll. com) | robert gorham (robert.gorham@ngpli mited.com) | camailer, charles a. (ccamailer@williesanti s.com)[dane darragnan (dane@ngplimited.co m);owersten[, marcy (us) | RE: New AAAP Solicitation for Offers | 9/7/2010 | 00000000028978375107C7 4DA88415058A3FA04A4EA 2100.MSG | Withheld | Attorney-Client Communication | Communication between client and broker providing legal advice on behalf of counsel. |
| 116 | 064900100052509 | Camaile0003310-Camaile0003312 | email | scholz, daniel (us) (daniel.scholz@am.jll. com) | robert gorham (robert.gorham@ngpli mited.com) | camailer, charles a. (ccamailer@williesanti s.com)[dane darragnan (dane@ngplimited.co m);owersten[, marcy (us) | RE: New AAAP Solicitation for Offers | 9/7/2010 | 00000000028978375107C7 4DA88415058A3FA04A4E1 B2100.MSG | Redacted | Attorney-Client Communication | Communication between client and broker providing legal advice on behalf of counsel. |
| 117 | 064900100052593 | Camaile0003306-Camaile0003306 | email | robert gorham (robert.gorham@ngpli mited.com) | diane darragnan (dane@ngplimited.co m) | camailer, charles a. (ccamailer@williesanti s.com) | FW: Copy of Rent Calculations-6560.xls | 9/7/2010 | 00000000028978375107C7 4DA88415058A3FA04A4E1 D2100.MSG | Withheld | Attorney-Client Communication | Communication from counsel providing legal advice regarding contract. |
| 118 | 064900100052203 | Camaile0003343-Camaile0003347 | email | scholz, daniel (us) (daniel.scholz@am.jll. com) | diane darragnan (dane@ngplimited.co m);robert gorham (robert.gorham@ngpli mited.com) | camailer, charles a. (ccamailer@williesanti s.com);owersten[, marcy (us) (marcy.owersten@@a m.jll.com) | RE: Expression of Interest-04A02141-6560 Rock Spring Drive | 9/13/2010 | 00000000028978375107C7 4DA88415058A3FA04A4C0 2100.MSG | Redacted | Attorney-Client Communication | Communication between client and broker providing legal advice on behalf of counsel. |
| 119 | 064900100052202 | Camaile0003339-Camaile0003342 | email | diane darragnan (dane@ngplimited.co m) | robert gorham (robert.gorham@ngpli mited.com) | camailer, charles a. (ccamailer@williesanti s.com);dane darragnan (dane@ngplimited.co m);owersten[, marcy (us).com | RE: Expression of Interest-04A02141-6560 Rock Spring Drive | 9/13/2010 | 00000000028978375107C7 4DA88415058A3FA04A4C0 2100.MSG | Redacted | Attorney-Client Communication | Communication between client and broker providing legal advice on behalf of counsel. |
| 120 | 064900100052201 | Camaile0003335-Camaile0003338 | email | scholz, daniel (us) (daniel.scholz@am.jll. com) | robert gorham (robert.gorham@ngpli mited.com) | camailer, charles a. (ccamailer@williesanti s.com)[dane darragnan (dane@ngplimited.co m) | RE: Expression of Interest-04A02141-6560 Rock Spring Drive | 9/13/2010 | 00000000028978375107C7 4DA88415058A3FA04A4C0 2100.MSG | Redacted | Attorney-Client Communication | Communication from counsel providing legal advice on behalf of counsel. |
| 121 | 064900100052228 | Camaile0003331-Camaile0003334 | email | robert gorham (robert.gorham@ngpli mited.com) | daniel.scholz@am.jll.c om | camailer, charles a. (ccamailer@williesanti s.com)[dane darragnan (dane@ngplimited.co m) | FW: Expression of Interest-04A02141-6560 Rock Spring Drive | 9/13/2010 | 00000000028978375107C7 4DA88415058A3FA04A4AC 2100.MSG | Redacted | Attorney-Client Communication | Communication between client and broker providing legal advice on behalf of counsel. |

A137

**Rock Spring Plaza II - Privilege Log**

| Item # | Control Number | Bates Range | Document Type | Email From | Email To | Email CC | Email Subject | Document Date | File Name | Privilege | Privilege Type | Privilege Description |
|---|---|---|---|---|---|---|---|---|---|---|---|---|
| 122 | 0649001:00050230 | Camaliero003408 - Camaliero0050409 | email | robert gorham [robert.gorham@hpgl mited.com] | beti, larissa [beti@willasarcis.co m]/camaliero_charles a. [ccamaliero@willasarti s.com] | diane dantzman [dlane@hpglmited.co m] | FW: 6560 Rock Spring AAAP-Approval Needed | 10/19/2010 | 000000028978375110FC7 4D45841556B6A3FA042416 2400.MSG | Redacted | Attorney-Client Communication | Communication from counsel providing legal advice regarding contract. |
| 123 | 0649001:00096123 | Camaliero003408 | email | robert gorham [robert.gorham@hpgl mited.com] | phe@crossberg.com | camaliero_charles a. [ccamaliero@willasarti s.com] | Lockheed/Aegon | 1/5/2011 | 0000000060982809B319A 4C95F7CA58A7CFD2076449 2400.MSG | Withheld | Attorney-Client Communication | Counsel providing legal advice regarding contract. Communication with CPA regarding legal advice on contract. |
| 124 | 0649001:00096117 | | Attachment | | | | | | | Withheld | Attorney-Client Communication | Attachment to counsel providing legal advice regarding contract and counsel communication with CPA regarding legal advice on contract. |
| 125 | 0649001:00095537 | Camaliero003447 - Camaliero0003447 | email | robert gorham [robert.gorham@hpgl mited.com] | camaliero_charles a. [ccamaliero@willasarti s.com] | diane dantzman [dlane@hpglmited.co m] | FW: GSA Emergency Requirement | 1/21/2011 | 0000000060982809B319A 4C95F7CA58A7CFD2072486 2400.MSG | Redacted | Attorney-Client Communication | Communication from counsel providing legal advice regarding contract redacted. |
| 126 | 0649001:00096445 | Camaliero003455 - Camaliero003456 | email | scholz, daniel (us) [daniel.scholz@an.jil. com] | robert gorham [robert.gorham@hpgl mited.com] | camaliero_charles a. [ccamaliero@willasarti s.com]/owentessi, marcy (us) [marcy.owentessi@an. jil.com] | RE: GSA Emergency Requirement | 1/25/2011 | 0000000060982809B319A 4C95F7CA58A7CFD207644E 2400.MSG | Withheld | Attorney-Client Communication | Communication from counsel providing legal advice regarding contract. |
| 127 | 0649001:00095239 | | email | robert gorham [robert.gorham@hpgl mited.com] | frankel, roger [rfrankel@orrick.com] | camaliero_charles a. [ccamaliero@willasarti s.com] | FW: Lockheed/Aegon: CONFIDENTIAL- ATTORNEY CLIENT PRIVILEGE | 2/2/2011 | 0000000060982809B319A 4C95F7CA58A7CFD207449A 2400.MSG | Withheld | Attorney-Client Communication | Communication from counsel providing legal advice regarding contract. |
| 128 | 0649001:00095231 | | Attachment | | | | DOC012.PDF | 2/2/2011 | DOC012.PDF | Withheld | Attorney-Client Communication | Communication from counsel providing legal advice regarding contract. |
| 129 | 0649001:00095126 | Camaliero003540 - Camaliero003540 | email | robert gorham [robert.gorham@hpgl mited.com] | camaliero_charles a. [ccamaliero@willasarti s.com] | diane dantzman [dlane@hpglmited.co m] | FW: SFO Received for NCIHD | 4/7/2011 | 0000000060982809B319A 4C95F7CA58A7CFD2072466 2300.MSG | Redacted | Attorney-Client Communication | Communication from counsel providing legal advice regarding contract. |
| 130 | 0649001:00092995 | Camaliero003554 - Camaliero003556 | email | robert gorham [robert.gorham@hpgl mited.com] | camaliero_charles a. [ccamaliero@willasarti s.com] | | FW: SFO Received for NCIHD AVAILABLE FOR CALL THIS AFTERNOON? | 4/8/2011 | 0000000060982809B319A 4C95F7CA58A7CFD207C4CD 2300.MSG | Redacted | Attorney-Client Communication | Communication from counsel providing legal advice regarding contract. |
| 131 | 0649001:00092980 | | email | frankel, roger [rfrankel@orrick.com] | camaliero_charles a. [ccamaliero@willasarti s.com] | robert gorham [robert.gorham@hpgl mited.com] | Camalier Term Sheet - Rock Spring.DOC | 4/8/2011 | 0000000060982809B319A 4C95F7CA58A7CFD207C4CE 2300.MSG | Withheld | Attorney-Client Communication | Communication from counsel providing legal advice regarding contract. |
| 132 | 0649001:00092986 | | Attachment | | | | 16983745411]_Camali er Term Sheet - Rock Spring.DOC | 4/8/2011 | 16983745411]_Camali Term Sheet - Rock Spring.DOC | Withheld | Attorney-Client Communication | Attachment to communication from counsel providing legal advice regarding contract. |
| 133 | 0649001:00092914 | | email | robert gorham [robert.gorham@hpgl mited.com] | camaliero_charles a. [ccamaliero@willasarti s.com] | rfrankel@orrick.com | FW: PNC GSA LETTER, CONFIDENTIAL- ATTORNEY CLIENT PRIVILEGE | 4/11/2011 | 0000000060982809B319A 4C95F7CA58A7CFD2074AC7 2300.MSG | Withheld | Attorney-Client Communication | Communication from counsel providing legal advice regarding contract. |
| 134 | 0649001:00092918 | | email | robert gorham [robert.gorham@hpgl mited.com] | rfrankel@orrick.com | camaliero_charles a. [ccamaliero@willasarti s.com] | FW: PNC GSA LETTER, CONFIDENTIAL- ATTORNEY CLIENT PRIVILEGE | 4/11/2011 | 0000000060982809B319A 4C95F7CA58A7CFD2074AC7 2300.MSG | Withheld | Attorney-Client Communication | Communication from counsel providing legal advice regarding contract. |
| 135 | 0649001:00092901 | | email | robert gorham [robert.gorham@hpgl mited.com] | camaliero_charles a. [ccamaliero@willasarti s.com] | | RE: PNC GSA LETTER, CONFIDENTIAL- ATTORNEY CLIENT PRIVILEGE | 4/11/2011 | 0000000060982809B319A 4C95F7CA58A7CFD2074aC7 2300.MSG | Withheld | Attorney-Client Communication | Communication from counsel providing legal advice regarding contract. |

A138

Case 8:20-cv-01502-PJM   Document 238-2   Filed 01/25/23   Page 38 of 71

Rock Spring Plaza II - Privilege Log

| Item # | Control Number | Bates Range | Document Type | Email From | Email To | Email CC | Email Subject | Document Date | File Name | Privilege | Privilege Type | Privilege Description |
|---|---|---|---|---|---|---|---|---|---|---|---|---|
| 136 | 0649001.00092897 | | email | robert gorham [robert.gorham@ngil mited.com] | camailer, charles a [ccamailer@willasant s.com] | elaine dantagnan [elaine@ngnlimited.co m] | FW: PNC GSA LETTER, CONFIDENTIAL-ATTORNEY CLIENT PRIVILEGE | 4/11/2011 | 00000000069828089315A 4C95F7CA55A7CFD2074AC7 2300.MSG | Withheld | Attorney-Client Communication | Communication from counsel providing legal advice regarding contract. |
| 137 | 0649001.00092221 Camailer0003580 | Camailer0003579 - | email | robert gorham [robert.gorham@ngil mited.com] | camailer, charles a [ccamailer@willasant s.com] | elaine dantagnan [elaine@ngnlimited.co m] | FW: Winchester Homes Test Fit at 6560 Rock Spring | 4/27/2011 | 00000000069828089315A 4C95F7CA55A7CFD207A483 2300.MSG | Redacted | Attorney-Client Communication | Communication from counsel providing legal advice regarding contract. |
| 138 | 0649001.00092261 | | email | robert gorham [robert.gorham@ngil mited.com] | camailer, charles a [ccamailer@willasant s.com] elaine dantagnan [elaine@ngnlimited.co m] | | RE: 6560 Rock Spring Drive/GSA Submission | 4/27/2011 | 00000000069828089315A 4C95F7CA55A7CFD207A485 2300.MSG | Withheld | Attorney-Client Communication | Communication from counsel providing legal advice regarding contract. |
| 139 | 0649001.00092205 | | email | robert gorham [robert.gorham@ngil mited.com] | camailer, charles a [ccamailer@willasant s.com] elaine dantagnan | robert gorham [robert.gorham@ngil mited.com] | RE: Offering @ 6560 | 4/28/2011 | 00000000069828089315A 4C95F7CA55A7CFD207A481 2300.MSG | Withheld | Attorney-Client Communication | Communication from counsel providing legal advice regarding contract. |
| 140 | 0649001.00092204 | | email | elaine dantagnan [elaine@ngnlimited.co m] | camailer, charles a [ccamailer@willasant s.com] | robert gorham [robert.gorham@ngil mited.com] | Offering @ 6560 | 4/28/2011 | 00000000069828089315A 4C95F7CA55A7CFD207A481 2300.MSG | Withheld | Attorney-Client Communication | Communication from counsel providing legal advice regarding contract. |
| 141 | 0649001.00091441 | | email | elaine dantagnan [elaine@ngnlimited.co m] | camailer, charles a [ccamailer@willasant s.com] | robert gorham [robert.gorham@ngil mited.com] | RUSH question 6560 Rock Spring | 5/19/2011 | 00000000069828089315A 4C95F7CA55A7CFD207E440 2300.MSG | Withheld | Attorney-Client Communication | Communication from counsel providing legal advice regarding contract. |
| 142 | 0649001.00091658 Camailer0003595 | Camailer0003594 - | email | robert gorham [robert.gorham@ngil mited.com] | camailer, charles a [ccamailer@willasant s.com] elaine dantagnan [elaine@ngnlimited.co m] | | RE: 6560 Rock Spring | 5/20/2011 | 00000000069828089315A 4C95F7CA55A7CFD2072430 2300.MSG | Redacted | Attorney-Client Communication | Communication from counsel providing legal advice regarding contract. |
| 143 | 0649001.00088488 | | email | robert gorham [robert.gorham@ngil mited.com] | camailer, charles a [ccamailer@willasant s.com] | | Broker Agreement re: 6560 & JLL | 7/19/2011 | 00000000069828089315A 4C95F7CA55A7CFD207E48E 2300.MSG | Withheld | Attorney-Client Communication | Communication from counsel providing legal advice regarding contract. |
| 144 | 0649001.00089310 Camailer0003644 - Camailer0003645 | | email | robert gorham [robert.gorham@ngil mited.com] | steve.silverberg@bbe.l com | | FW: Fannie Mae | 7/22/2011 | 00000000069828089315A 4C95F7CA55A7CFD2074482 2300.MSG | Redacted | Attorney-Client Communication | Communication from counsel providing legal advice regarding contract. |
| 145 | 0649001.00089084 | | email | robert gorham [robert.gorham@ngil mited.com] | camailer, charles a [ccamailer@willasant s.com] | | FW: Term Sheet for Megan workout. | 7/28/2011 | 00000000069828089315A 4C95F7CA55A7CFD207C46A 2300.MSG | Withheld | Attorney-Client Communication | Communication from counsel providing legal advice regarding contract. |
| 146 | 0649001.00089076 | | Attachment | | phw@crossbeg.com | | Camailer Term Sheet - Rock Spring.doc | 7/28/2011 | Camailer Term Sheet - Rock Spring.doc | Withheld | Attorney-Client Communication | Attachment to communication from counsel providing legal advice regarding contract. |
| 147 | 0649001.00088215 Camailer0003895 - Camailer0003897 | | email | frankel, roger [rfrankel@orrick.com] | camailer, charles a [ccamailer@willasant s.com] | | Re: Eunice Shriver - 08/02077 - Final Proposal Revision Letter: CONFIDENTIAL ATTORNEY CLIENT PRIVILEGE | 8/17/2011 | 00000000069828089315A 4C95F7CA55A7CFD2078610 2300.MSG | Redacted | Attorney-Client Communication | Communication from counsel providing legal advice regarding contract. |
| 148 | 0649001.00088209 Camailer0003891 | | email | robert gorham [robert.gorham@ngil mited.com] | camailer, charles a [ccamailer@willasant s.com]/rfrankel@orric k.com | | FW: Eunice Shriver - 08/02077 - Final Proposal Revision Letter: CONFIDENTIAL-ATTORNEY CLIENT PRIVILEGE | 8/17/2011 | 00000000069828089315A 4C95F7CA55A7CFD2072411 2300.MSG | Redacted | Attorney-Client Communication | Communication from counsel providing legal advice regarding contract. |

A139

Rock Spring Plaza II - Privilege Log

| Item # | Control Number | Bates Range | Document Type | Email From | Email To | Email CC | Email Subject | Document Date | File Name | Privilege | Privilege Type | Privilege Description |
|---|---|---|---|---|---|---|---|---|---|---|---|---|
| 149 | 064900100088169 | CamailerO003741 - CamailerO003742 | email | bell, latissa [/owelliearults/ourfirst administratorive group/cn=recipients/cn=latissa bell] | robert gotham [robert.gotham@rsgsl com];camailer, charles a. [ccamailer@wilkesart com] | | TEST 2 — GSA - 0M02077 - Final Proposal Revision Letter; | 8/18/2011 | 000000000609828089315A 4C95F7CA5EA7CFD207D41A 2200.MSG | Redacted | Attorney-Client Communication | Communication from counsel providing legal advice regarding contract. |
| 150 | 064900100088165 | CamailerO003738 - CamailerO003738 | email | bell, latissa [/owelliearults/ourfirst administratorive group/cn=recipients/cn=latissa bell] | robert gotham @rsgsl mited.com];camailer, charles a. [ccamailer@wilkesart com] | | TEST — GSA - 0M02077 - Final Proposal Revision Letter; | 8/18/2011 | 000000000609828089315A 4C95F7CA5EA7CFD207D41A 2200.MSG | Withheld | Attorney-Client Communication | Email sent on behalf of counsel providing legal advice regarding contract. |
| 151 | 064900100088162 | CamailerO003734 - CamailerO003735 | email | robert gotham [robert.gotham@rsgsl mited.com] | camailer, charles a. [ccamailer@wilkesart com] | bell, latissa [lbell@wilkesartscom];lfranai@orrick.com | FW: GSA - 0M02077 - Final Proposal Revision Letter; | 8/18/2011 | 000000000609828089315A 4C95F7CA5EA7CFD207D41A 2200.MSG | Redacted | Attorney-Client Communication | Communication from counsel providing legal advice regarding contract. |
| 152 | 064900100088161 | CamailerO003731 - CamailerO003733 | email | bell, latissa [/owelliearults/ourfirst administratorive group/cn=recipients/cn=latissa bell] | robert gotham [robert.gotham@rsgsl mited.com] | camailer, charles a. [ccamailer@wilkesart com] | RE: Eunice Shriver - 0M02077 - Final Proposal Revision Letter; | 8/18/2011 | 000000000609828089315A 4C95F7CA5EA7CFD207D41A 2200.MSG | Redacted | Attorney-Client Communication | Communication from counsel providing legal advice regarding contract. |
| 153 | 064900100088178 | CamailerO003725 - CamailerO003727 | email | robert gotham [robert.gotham@rsgsl mited.com] | bell, latissa [lbell@wilkesartscom] | camailer, charles a. [ccamailer@wilkesart com] | FW: GSA - 0M02077 - Final Proposal Revision Letter; CONFIDENTIAL ATTORNEY CLIENT PRIVILEGE | 8/18/2011 | 000000000609828089315A 4C95F7CA5EA7CFD207D41A 2200.MSG | Redacted | Attorney-Client Communication | Communication from counsel providing legal advice regarding contract. |
| 154 | 064900100088166 | CamailerO003722 - CamailerO003722 | email | robert gotham [robert.gotham@rsgsl mited.com] | camailer, charles a. [ccamailer@wilkesart com] | | FW: GSA - 0M02077 - Final Proposal Revision Letter; | 8/18/2011 | 000000000609828089315A 4C95F7CA5EA7CFD207D41A 2200.MSG | Redacted | Attorney-Client Communication | Communication from counsel providing legal advice regarding contract. |
| 155 | 064900100088194 | CamailerO003718 - CamailerO003720 | email | robert gotham [robert.gotham@rsgsl mited.com] | camailer, charles a. [ccamailer@wilkesart com];robert gotham [rfarkai@orrick.com] | | RE: Eunice Shriver - 0M02077 - Final Proposal Revision Letter; CONFIDENTIAL ATTORNEY CLIENT PRIVILEGE | 8/18/2011 | 000000000609828089315A 4C95F7CA5EA7CFD207D41A 2200.MSG | Redacted | Attorney-Client Communication | Communication from counsel providing legal advice regarding contract. |
| 156 | 064900100088189 | CamailerO003712 - CamailerO003714 | email | farkai, roger [rfarkai@orrick.com] | camailer, charles a. [ccamailer@wilkesart com];robert gotham [rfarkai@orrick.com] | camailer, charles a. [ccamailer@wilkesart com] | FW: Eunice Shriver - 0M02077 - Final Proposal Revision Letter; CONFIDENTIAL ATTORNEY CLIENT PRIVILEGE | 8/18/2011 | 000000000609828089315A 4C95F7CA5EA7CFD207D41A 2200.MSG | Redacted | Attorney-Client Communication | Communication from counsel providing legal advice regarding contract. |
| 157 | 064900100088216 | CamailerO003702 - CamailerO003706 | email | robert gotham [robert.gotham@rsgsl mited.com] | robert gotham [robert.gotham@rsgsl com];rfarkai@orrick.com | camailer, charles a. [ccamailer@wilkesart com] | Re: Eunice Shriver - 0M02077 - Final Proposal Revision Letter; CONFIDENTIAL ATTORNEY CLIENT PRIVILEGE | 8/18/2011 | 000000000609828089315A 4C95F7CA5EA7CFD207D41C 2200.MSG | Redacted | Attorney-Client Communication | Communication from counsel providing legal advice regarding contract. |
| 158 | 064900100088211 | CamailerO003707 - CamailerO003108 | email | robert gotham [robert.gotham@rsgsl mited.com] | camailer, charles a. [ccamailer@wilkesart com];rfarkai@orrick.com | | FW: Eunice Shriver - 0M02077 - Final Proposal Revision Letter; CONFIDENTIAL ATTORNEY CLIENT PRIVILEGE | 8/18/2011 | 000000000609828089315A 4C95F7CA5EA7CFD207D41C 2200.MSG | Redacted | Attorney-Client Communication | Communication from counsel providing legal advice regarding contract. |

A140

## Rock Spring Plaza II - Privilege Log

| Item # | Control Number | Bates Range | Document Type | Email From | Email To | Email CC | Email Subject | Document Date | File Name | Privilege | Privilege Type | Privilege Description |
|---|---|---|---|---|---|---|---|---|---|---|---|---|
| 159 | 0649001.00088232 | Camailer0003699 - Camailer0003701 | email | robert gorham [robert.gorham@gml imited.com] | camailer, charles a. [camailer@wilkesarti s.com]/rfrankel@pric k.com | | FW: Eunice Shriver-0402077 - Final Proposal Revision Letter_CONFIDENTIAL_ ATTORNEY CLIENT PRIVILEGE | 8/28/2011 | 00000000060982808915A 4C95F7CA5EA7CFD2D7A41C 2200.MSG | Redacted | Attorney-Client Communication | Communication from counsel providing legal advice regarding contract. |
| 160 | 0649001.00087942 | Camailer0003747 - Camailer0003748 | email | robert gorham [robert.gorham@gml imited.com] | camailer, charles a. [camailer@wilkesarti s.com] | diane domzgaon [diane@riggsrlimited.co m]/rfrankel@orrick.co m | RE: Competitive Set for NGND: 6560 Rock Spring Drive | 8/24/2011 | 00000000060982808915A 4C95F7CA5EA7CFD2D7A40D 2200.MSG | Redacted | Attorney-Client Communication | Communication from counsel providing legal advice regarding contract. |
| 161 | 0649001.00087945 | Camailer0003745 - Camailer0003746 | email | robert gorham [robert.gorham@gml imited.com] | camailer, charles a. [camailer@wilkesarti s.com] | diane domzgaon [diane@riggsrlimited.co m]/rfrankel@orrick.co m | FW: Competitive Set for NGND: 6560 Rock Spring Drive | 8/24/2011 | 00000000060982808915A 4C95F7CA5EA7CFD2D7A40D 2200.MSG | Redacted | Attorney-Client Communication | Communication from counsel providing legal advice regarding contract. |
| 162 | 0649001.00087842 | | email | robert gorham [robert.gorham@gml imited.com] | camailer, charles a. [camailer@wilkesarti s.com]/rfrankel@pric k.com | | Rock Spring II Limited Partnership | 8/24/2011 | 00000000060982808915A 4C95F7CA5EA7CFD2D7A40S 2200.MSG | Withheld | Attorney-Client Communication | Communication from counsel providing legal advice regarding contract. |
| 163 | 0649001.00087810 | | email | robert gorham [robert.gorham@gml imited.com] | bell, larissa [lbell@wilkesartis.co m] | camailer, charles a. [camailer@wilkesarti s.com]/rfrankel@pric k.com | FW: TEST: Rock Spring II Limited Partnership | 8/26/2011 | 00000000060982808915A 4C95F7CA5EA7CFD2D7A401 2200.MSG | Withheld | Attorney-Client Communication | Communication from counsel providing legal advice regarding contract. |
| 164 | 0649001.00087806 | | email | bell, larissa [lbell@wilkesartis.co m]/camailer, charles a. [camailer@wilkesarti s.com]/frankel, roger [rfrankel@orrick.com] | bell, larissa [lbell@wilkesartis.co m]/camailer, charles a. [camailer@wilkesarti s.com]/robert.gorham@gml imited.com] | | RE: TEST: Rock Spring II Limited Partnership | 8/26/2011 | 00000000060982808915A 4C95F7CA5EA7CFD2D7A402 2200.MSG | Withheld | Attorney-Client Communication | |
| 165 | 0649001.00087820 | | email | frankel, roger [rfrankel@orrick.com] | bell, larissa [lbell@wilkesartis.co m]/camailer, charles a. [camailer@wilkesarti s.com]/robert.gorham@gml imited.com] | | RE: TEST: Rock Spring II Limited Partnership | 8/26/2011 | 00000000060982808915A 4C95F7CA5EA7CFD2D7A402 2200.MSG | Withheld | Attorney-Client Communication | Communication from counsel providing legal advice regarding contract. |
| 166 | 0649001.00087811 | | email | robert gorham [robert.gorham@gml imited.com] | bell, larissa [lbell@wilkesartis.co m]/camailer, charles a. [camailer@wilkesarti s.com]/frankel, roger [rfrankel@orrick.com] | | RE: TEST: Rock Spring II Limited Partnership | 8/26/2011 | 00000000060982808915A 4C95F7CA5EA7CFD2D7A40C 2200.MSG | Withheld | Attorney-Client Communication | Communication from counsel providing legal advice regarding contract. |
| 167 | 0649001.00087800 | | email | bell, larissa [/o=wilkesartis/ou=firs t administrative group/cn=recipients/c n=lbell bell] | camailer, charles a. [camailer@wilkesarti s.com] | | TEST: TEST: Rock Spring II Limited Partnership | 8/26/2011 | 00000000060982808915A 4C95F7CA5EA7CFD2D7A402 2200.MSG | Withheld | Attorney-Client Communication | Communication from counsel providing legal advice regarding contract. |

A141

# Rock Spring Plaza II – Privilege Log

| Item # | Control Number | Bates Range | Document Type | Email From | Email To | Email CC | Email Subject | Document Date | File Name | Privilege | Privilege Type | Privilege Description |
|---|---|---|---|---|---|---|---|---|---|---|---|---|
| 168 | 064900100087855 | | email | robert gorham (robert.gorham@riglimited.com) | camalier, charles a. (ccamalier@willkie.com); frankel, roger (rfrenkel@orrick.com) | | RE: Rock Spring II Limited Partnership | 8/26/2011 | 000000000698280893174ACF85F3CA5EA7CFD207D404 2100.MSG | Withheld | Attorney-Client Communication | Communication from counsel providing legal advice regarding contract. |
| 169 | Camalier000352 - Camalier000353 | | email | frankel, roger (rfrenkel@orrick.com) | robert gorham (robert.gorham@rigl imited.com) | | RE: 6560 | 9/1/2011 | 000000000698280893174ACF85F3CA5EA7CFD207D481 2100.MSG | Redacted | Attorney-Client Communication | Communication from counsel providing legal advice regarding contract. |
| 170 | Camalier000157 - Camalier000157 | | email | robert gorham (robert.gorham@rigl imited.com) | jerry.cohn@shklaw.co m | camalier, charles a. (ccamalier@willkie. com); frankel,roger (rfrenkel@orric k.com) | FW: Term Sheet with Assignment in Lieu FINAL DRAFT 10-26-2011.doc | 11/2/2011 | 000000000698280893174ACF85F3CA5EA7CFD207C4E0 2000.MSG | Withheld | Attorney-Client Communication | Communication from counsel providing legal advice regarding contract. |
| 171 | 064900100084142 | | email | robert gorham (robert.gorham@rigl imited.com) | bwestosprl@prydiegla w.com;camalier, charles a. (ccamalier@willkie. com);joseph dawg@m rco.com | | FW: Term Sheet with Assignment in Lieu FINAL DRAFT 10-26-2011.doc | 11/3/2011 | 000000000698280893174ACF85F3CA5EA7CFD207A4D0 A2000.MSG | Withheld | Attorney-Client Communication | Communication from counsel providing legal advice regarding contract. |
| 172 | 064900100084138 | | Attachment | | | | Via FedEx Overnight | 11/3/2011 | Term Sheet with Assignment in Lieu FINAL DRAFT 10-26-2011 (v2).doc | Withheld | Attorney-Client Communication | Attachment to communication from counsel providing legal advice regarding contract. |
| 173 | 064900100084141 | | Attachment | | | | Via FedEx Overnight | 11/3/2011 | Term Sheet with Assignment in Lieu FINAL DRAFT 10-26-2011 (v1) (1).doc | Withheld | Attorney-Client Communication | Communication from counsel providing legal advice regarding contract. |
| 174 | 064900100084133 | | email | frankel, roger (rfrenkel@orrick.com) | robert gorham (robert.gorham@rigl imited.com) | camalier, charles a. (ccamalier@willkie. com) | RE: Term Sheet with Assignment in Lieu FINAL DRAFT 10-26-2011.doc | 11/4/2011 | 000000000698280893174ACF85F3CA5EA7CFD207E4D0 2000.MSG | Withheld | Attorney-Client Communication | Communication from counsel providing legal advice regarding contract. |
| 175 | 064900100084101 | | email | frankel, roger (rfrenkel@orrick.com) | robert gorham (robert.gorham@rigl imited.com) | camalier, charles a. (ccamalier@willkie. com) | RE: Term Sheet with Assignment in Lieu FINAL DRAFT 10-26-2011.doc | 11/4/2011 | 000000000698280893174ACF85F3CA5EA7CFD207E4C0 2000.MSG | Withheld | Attorney-Client Communication | Communication from counsel providing legal advice regarding contract. |
| 176 | 064900100083988 | | email | robert gorham (robert.gorham@rigl imited.com) | camalier, charles a. (ccamalier@willkie. com) | | Emailing; Emailing; DOC068 | 11/8/2011 | 000000000698280893174ACF85F3CA5EA7CFD207A4CA 2000.MSG | Withheld | Attorney-Client Communication | Communication from counsel providing legal advice regarding contract. |
| 177 | 064900100083994 | | Attachment | | | | DOC068.PDF | 11/8/2011 | DOC068.PDF | Withheld | Attorney-Client Communication | Communication from counsel providing legal advice regarding contract. |
| 178 | 064900100083116 - 064900100083116 | | email | robert gorham (robert.gorham@rigl imited.com) | paul h. wilner (phw@groisberg.com) | camalier, charles a. (ccamalier@willkie. com) | FW: Assignment in Lieu Agreement -- Rock Spring II | 12/8/2011 | 000000000698280893174ACF85F3CA5EA7CFD207D453 2000.MSG | Redacted | Attorney-Client Communication | Communication from counsel providing legal advice regarding contract. |
| 179 | 064900100083653 - 064900100083276 | | email | paul h. wilner (phw@groisberg.com) | bwestosprl@prydiegla w.com;rfrenkel@orric k.com | | FW: Assignment in Lieu Agreement -- Rock Spring II | 12/8/2011 | 000000000698280893174ACF85F3CA5EA7CFD207B465 2000.MSG | Redacted | Attorney-Client Communication | Communication from counsel providing legal advice regarding contract. |
| 180 | 064900100083523 | | email | robert gorham (robert.gorham@rigl imited.com) | camalier, charles a. (ccamalier@willkie. com);robert gorham (robert.gorham@rigl imited.com) | | RE: Aegon Deed of Trust Provision Re: If Camalier Acquires Lockheed Interests | 12/12/2011 | 000000000698280893174ACF85F3CA5EA7CFD207A446 2000.MSG | Withheld | Attorney-Client Communication | Communication from counsel providing legal advice regarding contract. |
| 181 | 064900100083517 - 064900100083596 | | email | robert gorham (robert.gorham@rigl imited.com) | camalier, charles a. (ccamalier@willkie. com);paul h. wilner (phw@groisberg.com) | | Aegon Deed of Trust Provision Re: If Camalier Acquires Lockheed Interests | 12/12/2011 | 000000000698280893174ACF85F3CA5EA7CFD207E447 2000.MSG | Withheld | Attorney-Client Communication | Communication from counsel providing legal advice regarding contract. |

A142

## Rock Spring Plaza II - Privilege Log

| Item # | Control Number | Bates Range | Document Type | Email From | Email To | Email CC | Email Subject | Document Date | File Name | Privilege | Privilege Type | Privilege Description |
|---|---|---|---|---|---|---|---|---|---|---|---|---|
| 182 | 0649001.00082367 | Camailer0003760 - Camailer0003761 | email | robert gorham [robert.gorham@rgpl mited.com] | camailer, charles a. [ccamailer@willresarni s.com];joseph.daygli mco.com | bweiskopf@nyingala w.com;paul h. wiiner [phw@grossberg.com ;jmfrankel@omck.com | FW: Assignment in Lieu Agreement -- Rock Spring II | 12/15/2011 | 000000000698208931FA 4C95F7CA5EA7CFD207DC38 2000.MSG | Redacted | Attorney-Client Communication | Communication from counsel providing legal advice regarding contract. |
| 183 | 0649001.00083352 | Camailer0003762 - Camailer0003762 | Attachment | | | | DOC069.PDF | 12/14/2020 | DOC069.PDF | Withheld | Attorney-Client Communication | Communication from counsel providing legal advice regarding contract. |
| 184 | 0649001.00083397 | Camailer0003960 - Camailer0003960 | email | robert gorham [robert.gorham@rgpl mited.com] | camailer, charles a. [ccamailer@willresarni s.com];joseph.daygli mco.com;paul h. wiiner | bweiskopf@nyingala w.com;phw@grossberg.com | FW: Assignment in Lieu Agreement -- Rock Spring II | 12/15/2011 | 000000000698208931FA 4C95F7CA5EA7CFD207A63A 2000.MSG | Redacted | Attorney-Client Communication | Communication from counsel providing legal advice regarding contract. |
| 185 | 0649001.00082400 | Camailer0003961 - Camailer0003999 | Attachment | | | | Term Sheet with Assignment in Lieu Rock Spring II.DOC | 12/15/2011 | Term Sheet with Assignment in Lieu Rock Spring II.DOC | Withheld | Attorney-Client Communication | Attachment to communication from counsel providing legal advice regarding contract. |
| 186 | 0649001.00082395 | Camailer0003758 - Camailer0003759 | email | robert gorham [robert.gorham@rgpl mited.com] | camailer, charles a. [ccamailer@willresarni s.com] | paul h. wiiner [phw@grossberg.com] | RE: Assignment in Lieu Agreement -- Rock Spring II | 12/15/2011 | 000000000698208931FA 4C95F7CA5EA7CFD207C43A 2000.MSG | Redacted | Attorney-Client Communication | Communication from counsel providing legal advice regarding contract. |
| 187 | 0649001.00082398 | Camailer0003757 - Camailer0003757 | email | robert gorham [robert.gorham@rgpl mited.com] | machen, jeri p. [jeri.machen@dayglier.com] | camailer, charles a. [ccamailer@willresarni s.com];joseph.daygli er.com | RE: Assignment in Lieu Agreement -- Rock Spring II | 12/15/2011 | 000000000698208931FA 4C95F7CA5EA7CFD207243B 2000.MSG | Redacted | Attorney-Client Communication | Communication from counsel providing legal advice regarding contract. |
| 188 | 0649001.00082225 | Camailer0003763 - Camailer0003764 | email | robert gorham [robert.gorham@rgpl mited.com] | camailer, charles a. [ccamailer@willresarni s.com];joseph.daygli mco.com | bweiskopf@nyingala w.com;paul h. wiiner [phw@grossberg.com | RE: Assignment in Lieu Agreement -- Rock Spring II | 12/20/2011 | 000000000698208931FA 4C95F7CA5EA7CFD207A42A 2000.MSG | Redacted | Attorney-Client Communication | Communication from counsel providing legal advice regarding contract. |
| 189 | 0649001.00081984 | | email | robert gorham [robert.gorham@rgpl mited.com] | camailer, charles a. [ccamailer@willresarni s.com];paul h. wiiner [phw@grossberg.com] | bweiskopf@nyingala w.com;paul h. wiiner [phw@grossberg.com | FW: Revisions to Aspgn "Consent to Foreclose" Reflecting Acq. of B&P/Comsat Interest, et. al. | 12/22/2011 | 000000000698208931FA 4C95F7CA5EA7CFD207641B 2000.MSG | Withheld | Attorney-Client Communication | Communication from counsel providing legal advice regarding contract. |
| 190 | 0649001.00081982 | | Attachment | | | | JPM additions 12 CL2.doc | 12/22/2011 | JPM additions 12 CL2.doc | Withheld | Attorney-Client Communication | Attachment to communication from counsel providing legal advice regarding contract. |
| 191 | 0649001.00081973 | | Attachment | | | | JPM additions 12 RL2.doc | 12/22/2011 | JPM additions 12 RL2.doc | Withheld | Attorney-Client Communication | Attachment to communication from counsel providing legal advice regarding contract. |
| 192 | 0649001.00081872 | | email | robert gorham [robert.gorham@rgpl mited.com] | camailer, charles a. [ccamailer@willresarni s.com] | | FW: Revisions to Aspgn "Consent to Foreclose" Reflecting Acq of B&P/Comsat Interest, et al. | 12/28/2011 | 000000000698208931FA 4C95F7CA5EA7CFD207A412 2000.MSG | Withheld | Attorney-Client Communication | Communication from counsel providing legal advice regarding contract. |
| 193 | 0649001.00081865 | | Attachment | | | | JPM additions 12 CL2.doc | 12/22/2011 | JPM additions 12 CL2.doc | Withheld | Attorney-Client Communication | Attachment to communication from counsel providing legal advice regarding contract. |
| 194 | 0649001.00081866 | | Attachment | | | | JPM additions 12 RL2.doc | 12/22/2011 | JPM additions 12 RL2.doc | Withheld | Attorney-Client Communication | Attachment to communication from counsel providing legal advice regarding contract. |

A143

**Rock Spring Plaza II - Privilege Log**

| Item # | Control Number | Bates Range | Document Type | Email From | Email To | Email CC | Email Subject | Document Date | File Name | Privilege | Privilege Type | Privilege Description |
|---|---|---|---|---|---|---|---|---|---|---|---|---|
| 195 | Camailer0000771-Camailer0000778 | 0649001-00122331 | email | robert gorham [robert.gorham@npgi mailed.com] | camailer, charles a [ccamailer@wilkiaser t.com] | cheryl koch [cheryl@npglimited.co m],diane darriagnan [diane@npglimited.co m],paul h. wilner [phw@goosberg.com ],rfranke@cprnick.com | FW: Revised (FINAL) Agreement-- Rock Foreclosure | 1/10/2012 | 0000000BA05FF9F167D6F 428C0D90E2E06D0D3918C48.msg | Redacted | Attorney-Client Communication | Counsel providing legal advice regarding contract |
| 196 | Camailer0000599-Camailer0000699 | 0649001-00126119 | email | robert gorham [robert.gorham@npgi mailed.com] | camailer, charles a [ccamailer@wilkiaser t.com] | | FW: Rock Spring- Order to Docket-- Foreclosure | 1/27/2012 | 0000000BA05FF9F167D6F 428C0D90E2E06D0D3918042.msg | Redacted | Attorney-Client Communication | Counsel providing legal advice regarding Jack Madden email. |
| 197 | Camailer0000713-Camailer0000713 | 0649001-00126062 | email | robert gorham [robert.gorham@npgi mailed.com] | camailer, charles a [ccamailer@wilkiaser t.com] | diane darriagnan [diane@npglimited.co m],diane darriagnan [diane@npglimited.co m] | FW: Rock Spring Foreclosure-Aegon Foreclosure | 1/31/2012 | 0000000BA05FF9F167D6F 428C0D90E2E06D0D3918241.msg | Redacted | Attorney-Client Communication | Counsel providing legal advice regarding Jack Madden email. |
| 198 | Camailer0000687 | 0649001-00126687 | email | robert gorham [robert.gorham@npgi mailed.com] | camailer, charles a [ccamailer@wilkiaser t.com] | diane darriagnan [diane@npglimited.co m] | FW: Rock Spring II | 2/7/2012 | 0000000BA05FF9F167D6F 428C0D90E2E06D0D3918A4F.msg | Redacted | Attorney-Client Communication | Counsel providing legal advice regarding contract |
| 199 | | | Attachment | | | | DOC000.PDF | 2/7/2012 | DOC000.PDF | Withheld | Attorney-Client Communication | Attachment to counsel's email providing legal advice regarding contract |
| 200 | Camailer0000712-Camailer0000717 | 0649001-00123311 | email | robert gorham [robert.gorham@npgi mailed.com] | camailer, charles a [ccamailer@wilkiaser t.com] | diane darriagnan [diane@npglimited.co m] | Notice of Foreclosure & Copy of Foreclose Notice Being Published in Mont. Co. Sentinel | 2/14/2012 | 0000000BA05FF9F167D6F 428C0D90E2E06D0D3918CAD.msg | Withheld | Attorney-Client Communication | Counsel providing legal advice regarding foreclosure |
| 201 | Camailer0000727-Camailer0000727 | 0649001-00123394 | email | robert gorham [robert.gorham@npgi mailed.com] | camailer, charles a [ccamailer@wilkiaser t.com] | | FW: Rock Spring | 5/25/2012 | 0000000BA05FF9F167D6F 428C0D90E2E06D0D3918448.msg | Withheld | Attorney-Client Communication | Counsel providing legal advice regarding Dave Caheel email |
| 202 | Camailer0000492-Camailer0000492 | 0649001-00120338 | email | diane darriagnan [diane@npglimited.co m] | camailer, charles a [ccamailer@wilkiaser t.com] | robert gorham [robert.gorham@npgi mailed.com] | Rock Spring II Ground Rent | 6/21/2012 | 0000000BA05FF9F167D6F 428C0D90E2E06D0D3918263.msg | Withheld | Attorney-Client Communication | Client and counsel communication regarding ground rent. |
| 203 | Camailer0000780-Camailer0000759 | 0649001-00123559 | email | diane darriagnan [diane@npglimited.co m] | camailer, charles a [ccamailer@wilkiaser t.com] | robert gorham [robert.gorham@npgi mailed.com] | 6560 Ground Rent meet | 7/10/2012 | 0000000BA05FF9F167D6F 428C0D90E2E06D0D3918C4F.msg | Withheld | Attorney-Client Communication | Client seeking legal advice regarding ground rent. |
| 204 | Camailer0003768-Camailer0003769 | 0649001-00132769 | email | robert gorham [robert.gorham@npgi mailed.com] | camailer, charles a [ccamailer@wilkiaser t.com] | | RE: 6560 Rock Spring & 6610 Rockage | 9/4/2012 | 0000000BA05FF9F167D6F 428C0D90E2E06D0D3918E41.msg | Redacted | Attorney-Client Communication | Communication from counsel providing legal advice regarding contract. |
| 205 | Camailer0003765-Camailer0003765 | 0649001-00132124 | email | robert gorham [robert.gorham@npgi mailed.com] | camailer, charles a [ccamailer@wilkiaser t.com] | robert gorham [robert.gorham@npgi mailed.com] | FW: 6560 Rock Spring & 6610 Rockage | 9/4/2012 | 0000000BA05FF9F167D6F 428C0D90E2E06D0D3918241.msg | Redacted | Attorney-Client Communication | Counsel providing legal advice regarding Jack Madden email. |
| 206 | Camailer0004496-Camailer0004496 | 0649001-00117061 | email | robert gorham [robert.gorham@npgi mailed.com] | imachen, jack p. [jack.machen@stapis onj.com],robert gorham [robert.gorham@npgi mailed.com] | diane darriagnan [diane@npglimited.co m] | RE: Aegon/Lockheed Banding Ground Rent Reset CONFIDENTIAL ATTORNEY CLIENT PRIVILEGED | 9/5/2012 | 0000000BA05FF9F167D6F 428C0D90E2E06D0D3918841.msg | Redacted | Attorney-Client Communication | Communications between counsel and client regarding legal advice for rent payments. |
| 207 | Camailer0001648 | 0649001-00116448 | email | franke, roger [rfranke@cprnick.com] | camailer, charles a [ccamailer@wilkiaser t.com],robert gorham [robert.gorham@npgi mailed.com] | | RE: 6560 Rock Spring | 9/14/2012 | 0000000BA05FF9F167D6F 428C0D90E2E06D0D3918246.msg | Withheld | Attorney-Client Communication | Counsel providing legal advice regarding contract. |

A144

Case 8:20-cv-01502-PJM   Document 238-2   Filed 01/25/23   Page 44 of 71

**Rock Spring Plaza II - Privilege Log**

| Item # | Control Number | Bates Range | Document Type | Email From | Email To | Email CC | Email Subject | Document Date | File Name | Privilege | Privilege Type | Privilege Description |
|---|---|---|---|---|---|---|---|---|---|---|---|---|
| 208 | 0649001.00116447 | Camailer0000788 - Camailer0000798 | email | robert gorham [robert.gorham@rspli mited.com] | camailer, charles a. [ccamailer@willkiears k.com] [frankel, roger [rfrankel@orrick.com] | camailer, charles a. [ccamailer@willkiears k.com] [frankel, roger [rfrankel@orrick.com] | FW: Aegon/Lockheed Building Ground Rent Reset-CONFIDENTIAL-ATTORNEY CLIENT PRIVILEGED | 9/24/2012 | 00000000BA03FF9F1670EF 42B0CD90D2E06D3931B64E 32100.MSG | Withheld | Attorney-Client Communication | Communications among counsel regarding contract. |
| 209 | 0649001.00116207 | | email | robert gorham [robert.gorham@rspli mited.com] | camailer, charles a. [ccamailer@willkiears k.com] | | FW: Aegon / ground lease strategy | 9/20/2012 | 00000000BA03FF9F1670EF 42B0CD90D2E06D3931B64C 32120.MSG | Withheld | Attorney-Client Communication | Communication from counsel providing legal advice regarding ground rent. |
| 210 | 0649001.00115983 | | email | diane dantagnan [diane@rsplimited.co m] | camailer, charles a. [ccamailer@willkiears k.com] [robert.gorham@rspl imited.com] | robert gorham [robert.gorham@rspl imited.com] | Rock Spring II ground lease invoice | 9/25/2012 | 00000000BA03FF9F1670EF 42B0CD90D2E06D3931B64D 82100.MSG | Withheld | Attorney-Client Communication | Communication from counsel providing legal advice regarding ground rent. |
| 211 | 0649001.00113514 | | email | robert gorham [robert.gorham@rspl imited.com] | camailer, charles a. [ccamailer@willkiears k.com] | diane dantagnan [diane@rsplimited.co m] | FW: Rock Spring Plaza | 11/8/2012 | 00000000BA03FF9F1670EF 42B0CD90D2E06D3931B64D 02000.MSG | Withheld | Attorney-Client Communication | Communication from counsel providing legal advice regarding ground rent. |
| 212 | 0649001.00161562 | | email | diane dantagnan [diane@rsplimited.co m] | rfrankel@frankelwyro n.com;robert gorham [robert.gorham@rspl imited.com] | camailer, charles a. [ccamailer@willkiears k.com];diane dantagnan [diane@rsplimited.co m] | RE: 6610 Aegon activity at 6550 | 3/27/2014 | 00000006711368991C20F 47891CA813456B8C2B24C 2500.MSG | Withheld | Attorney-Client Communication | Communication between in-house counsel and outside counsel regarding ground rent. |
| 213 | 0649001.00161503 | Camailer0003771 - Camailer0003771 | email | robert gorham [robert.gorham@rspl imited.com] | rfrankel@frankelwyro n.com | camailer, charles a. [ccamailer@willkiears k.com];diane dantagnan [diane@rsplimited.co m] | FW: 6610 Aegon activity at 6550 | 3/27/2014 | 00000006711368991C20F 47891CA813456B8C2B24E 2500.MSG | Withheld | Attorney-Client Communication | Communication between in-house counsel and outside counsel regarding ground rent. |
| 214 | 0649001.00045806 | | email | martin saturn [martin.saturn@rspl imited.com] | roger frankel [rfrankel@frankelwyr on.com] | camailer, charles a. [ccamailer@willkiears k.com];robert gorham [robert.gorham@rspl imited.com] | RE: ground rent received from 6560 | 1/14/2016 | 00000000022072305674A B 7A78E28594A2D5ACF06942 82600.MSG | Withheld | Attorney-Client Communication | Communication with counsel regarding matters concerning ground rent payments. |
| 215 | 0649001.00045808 | | email | martin saturn [martin.saturn@rspl imited.com] | roger frankel [rfrankel@frankelwyr on.com] | camailer, charles a. [ccamailer@willkiears k.com];robert gorham [robert.gorham@rspl imited.com] | ground rent rent received from 6560 | 1/14/2016 | 00000000022072305674A B 7A78E28594A2D5ACF06942 93600.MSG | Withheld | Attorney-Client Communication | Communication with counsel regarding matters concerning ground rent payments. |
| 216 | 0649001.00045576 | Camailer0000607 - Camailer0000607 | email | martin saturn [martin.saturn@rspl imited.com] | camailer [ccamailer@willkiears k.com] | | FW: ground rent received from 6560 | 1/18/2016 | 00000000022072305674A B 7A78E28594A2D5ACF06941 62600.MSG | Redacted | Attorney-Client Communication | Communication with counsel discussing ground rent payments redacted. |
| 217 | 0649001.00073807 | Camailer0003870 - Camailer0003870 | email | roger frankel [rfrankel@frankelwyr on.com] | camailer, charles a. [ccamailer@willkiears k.com];william bosch [william.bosch@apks. com] | camailer, charles a. [ccamailer@willkiears k.com];william bosch [william.bosch@apks. com] | RE: AEGON | 3/30/2017 | 00000007A481508EB22D5 409SEC09A2A0931A4E44F 2500.MSG | Redacted | Attorney-Client Communication | Communication from counsel regarding contract redacted. |
| 218 | 0649001.00072945 | Camailer0000832 - Camailer0000832 | email | roger frankel [rfrankel@frankelwyr on.com] | camailer, charles a. [ccamailer@willkiears k.com] | bosch, william m. [william.bosch@apks. com];robinson, john [john.robinson@apks. com] | FW: Investors Warranty of America | 4/17/2017 | 00000007A481508EB22D5 409SEC09A2A0931A46440 2500.MSG | Withheld | Attorney-Client Communication | Counsel providing legal advice regarding contract. |

A145

Rock Spring Plaza II - Privilege Log

| Item # | Control Number | Bates Range | Document Type | Email From | Email To | Email CC | Email Subject | Document Date | File Name | Privilege | Privilege Type | Privilege Description |
|---|---|---|---|---|---|---|---|---|---|---|---|---|
| 219 | 0649001:00065858 | | email | bosch, william m. (william.bosch@pbks.com) | camaller, charles a. (ccamaller@wilkasntsto.com); jody rice (jody.rice@rnplimited.com) | | GSA Proposal - Bank Funding Letter Draft.docx | 8/30/2017 | 00000000744815DBE82085 40595EC09A2A09331A4A47D 2200.MSG | Withheld | Attorney-Client Communication | Counsel providing legal advice regarding contract. |
| 220 | 0649001:00065851 | | Attachment | | | | GSA Proposal - Bank Funding Letter Draft.docx | 8/30/2017 | GSA Proposal - Bank Funding Letter Draft.docx | Withheld | Attorney-Client Communication | Attachment to communications with counsel providing legal advice regarding contract. |
| 221 | 0649001:00065897 | | email | jody rice (jody.rice@rnplimited.com) | bosch, william m. (william.bosch@pbks.com) | camaller, charles a. (ccamaller@wilkasntsto.com); robinson, john (john.robinson@pbks.com) | RE: GSA | 8/30/2017 | 00000000744815DBE82085 40595EC09A2A09331A42A7E 2200.MSG | Withheld | Attorney-Client Communication | Counsel providing legal advice regarding contract. |
| 222 | 0649001:00065906 | | Attachment | | | | GSA Proposal - Bank Funding Letter Draft.docx | 8/30/2017 | GSA Proposal - Bank Funding Letter Draft.docx | Withheld | Attorney-Client Communication | Attachment to communications with counsel providing legal advice regarding contract. |
| 223 | 0649001:00065767 | | email | jody rice (jody.rice@rnplimited.com) | bosch, william m. (william.bosch@pbks.com); camaller, charles a. (ccamaller@wilkasntsto.com) | robinson, john (john.robinson@pbks.com) | RE: GSA Proposal - Bank Funding Letter Draft.docx | 8/31/2017 | 00000000744815DBE82085 40595EC09A2A09331A4A472 2200.MSG | Withheld | Attorney-Client Communication | Counsel providing legal advice regarding contract. |
| 224 | 0649001:00065745 | | Attachment | | | | GSA Proposal - Bank Funding Letter Draft v2.docx | 8/31/2017 | GSA Proposal - Bank Funding Letter Draft v2.docx | Withheld | Attorney-Client Communication | Attachment to communications with counsel providing legal advice regarding contract. |
| 225 | Ccamaller0003877; Ccamaller0003877 | | email | bosch, william m. (william.bosch@pbks.com) | camaller, charles a. (ccamaller@wilkasntsto.com); (michael.goodwin@pls.com; jody.rice@rnplimited.com) | | FW: Rock Springs Drive, LLC - a Maryland Limited Liability Company | 9/5/2017 | 00000000744815DBE82085 40595EC09A2A09331A4A458 2200.MSG | Withheld | Attorney-Client Communication | Counsel providing legal advice regarding contract. |
| 226 | Ccamaller0004820; Ccamaller0004820 | | email | jody rice (jody.rice@rnplimited.com) | bosch, william m. (william.bosch@pbks.com); camaller, charles a. (ccamaller@wilkasntsto.com) | | QUICK REVIEW REQUESTED - GSA Proposal - Bank Letter (002) | 9/5/2017 | 00000000744815DBE82085 40595EC09A2A09331A4C450 2200.MSG | Withheld | Attorney-Client Communication | Communication to counsel seeking legal advice. |
| 227 | Ccamaller0000855; Ccamaller0000855 | | email | jody rice (jody.rice@rnplimited.com) | bosch, william m. (william.bosch@pbks.com); michael d. (michael.goodwin@pls.com) | camaller, charles a. (ccamaller@wilkasntsto.com) | 6560 Rockledge - Ground Rent Charge | 9/5/2017 | 00000000744815DBE82085 40595EC09A2A09331A4845E 2200.MSG | Withheld | Attorney-Client Communication | Communication to counsel seeking legal advice. |
| 228 | 0649001:00065588 | | email | goodwin, michael d. (michael.goodwin@pls.com) | bosch, william m. (william.bosch@pbks.com); jody rice (jody.rice@rnplimited.com) | camaller, charles a. (ccamaller@wilkasntsto.com) | RE: 6560 Rockledge - Ground Rent Charge | 9/5/2017 | 00000000744815DBE82085 40595EC09A2A09331A4464L 2200.MSG | Withheld | Attorney-Client Communication | Counsel providing legal advice regarding contract. |

A146

**Rock Spring Plaza II – Privilege Log**

| Item # | Control Number | Bates Range | Document Type | Email From | Email To | Email CC | Email Subject | Document Date | File Name | Privilege | Privilege Type | Privilege Description |
|---|---|---|---|---|---|---|---|---|---|---|---|---|
| 238 | GamalielC003874 / GamalielC003874 | | email | jody rice [jody.rice@rsplimited.com] | booch, william m. [william.booch@pks.com]; goodwin, michael d. [michael.goodwin@pks.com] | camalier, charles a. [ccamalier@wilkeart.com]; goodwin, michael d. [goodwin, michael d.@pks.com] | FW: 6560 Rockledge - Ground Rent Change | 9/5/2017 | 000000007A4815D8EB2D85 4095ECD9A2A09311A4846L 2010.MSG | Withheld | Attorney-Client Communication | Communication to counsel seeking legal advice |
| 238 | GamalielC003508 / GamalielC005108 | | email | booch, william m. [william.booch@pks.com] | camalier, charles a. [ccamalier@wilkeart.com]; goodwin, michael d. | goodwin, michael d. [goodwin, michael d.@pks.com] | RE: 6560 Ground Lease | 9/14/2017 | 000000007A4815D8EB2D85 4095ECD9A2A09311A4A434 2010.MSG | Withheld | Attorney-Client Communication | Communication to counsel seeking legal advice. |
| 238 | GamalielC005135 / GamalielC005135 | | email | booch, william m. [william.booch@pks.com] | booch, william m. [william.booch@pks.com]; camalier, charles a. [ccamalier@wilkeart.com]; goodwin, michael d. [michael.goodwin@pks.com] | | 6560 Ground Lease | 9/14/2017 | 000000007A4815D8EB2D85 4095ECD9A2A09311A4A435 2010.MSG | Withheld | Attorney-Client Communication | Communication to counsel seeking legal advice. |
| 238 | GamalielC003914 / GamalielC003915 | GamalielC003460 | email | jody rice [jody.rice@rsplimited.com] | camalier, charles a. [ccamalier@wilkeart.com]; goodwin, michael d. [michael.goodwin@pks.com]; roger frankel [rfrankel@frankelwordon.com] | robinson, john [john.robinson@pks.com] | RE: Rock Springs Drive, LLC Lease with Rock Spring Plaza II, LLC - Request for Wire Instructions for Monthly Rental Payment | 9/26/2017 | 000000007A4815D8EB2D85 4095ECD9A2A09311A4A447 2010.MSG | Redacted | Attorney-Client Communication | Communication from counsel providing legal advice regarding contract. |
| 238 | GamalielC003912 / GamalielC003913 | GamalielC003425 | email | booch, william m. [william.booch@pks.com] | jody rice [jody.rice@rsplimited.com]; roger frankel [rfrankel@frankelwordon.com] | jody rice [jody.rice@rsplimited.com]; camalier, charles a. [ccamalier@wilkeart.com]; goodwin, michael d. [michael.goodwin@pks.com]; roger frankel; robinson, john [john.robinson@pks.com] | RE: Rock Springs Drive, LLC Lease with Rock Spring Plaza II, LLC - Request for Wire Instructions for Monthly Rental Payment | 9/26/2017 | 000000007A4815D8EB2D85 4095ECD9A2A09311A4A449 2010.MSG | Redacted | Attorney-Client Communication | Communication from counsel providing legal advice regarding contract. |
| 238 | GamalielC003910 / GamalielC003911 | GamalielC003489 | email | booch, william m. [william.booch@pks.com] | camalier, charles a. [ccamalier@wilkeart.com]; roger frankel [rfrankel@frankelwordon.com] | goodwin, michael d. [michael.goodwin@pks.com]; jody rice [jody.rice@rsplimited.com]; robinson, john [john.robinson@pks.com] | RE: Rock Springs Drive, LLC Lease with Rock Spring Plaza II, LLC - Request for Wire Instructions for Monthly Rental Payment | 9/26/2017 | 000000007A4815D8EB2D85 4095ECD9A2A09311A4A449 2010.MSG | Redacted | Attorney-Client Communication | Communication from counsel providing legal advice regarding contract. |
| 238 | GamalielC003908 / GamalielC003909 | GamalielC004500 | email | goodwin, michael d. [michael.goodwin@pks.com] | booch, william m. [william.booch@pks.com]; camalier, charles a. [ccamalier@wilkeart.com]; roger frankel [rfrankel@frankelwordon.com] | jody rice [jody.rice@rsplimited.com]; robinson, john [john.robinson@pks.com] | RE: Rock Springs Drive, LLC Lease with Rock Spring Plaza II, LLC - Request for Wire Instructions for Monthly Rental Payment | 9/26/2017 | 000000007A4815D8EB2D85 4095ECD9A2A09311A4A44A 2010.MSG | Redacted | Attorney-Client Communication | Communication from counsel providing legal advice regarding contract |

A147

Rock Spring Plaza II - Privilege Log

| Item # | Control Number | Bates Range | Document Type | Email From | Email To | Email CC | Email Subject | Document Date | File Name | Privilege | Privilege Type | Privilege Description |
|---|---|---|---|---|---|---|---|---|---|---|---|---|
| 236 | 0649001.00066515 | Camaliec0003906 - Camaliec0003907 | email | roger frankel [rfrankel@frankelwar on.com] | bosch, william m. [william.bosch@pa.ss.com][camaliec, charles a. [ccamaliec@willkearr s.com] | goodwin, michael d. [michael.goodwin@pa ass.com]jody rice [jody.rice@rsplimited. com] | RE: Rock Springs Drive, LLC: Lease with Rock Spring Plaza II, LLC - Request for Wire Intructions for Monthly Rental Payment | 9/26/2017 | 000000007A48150BEB2085 4095EC09A2A09331A464A 2100.MSG | Redacted | Attorney/Client Communication | Communication from counsel providing legal advice regarding contract. |
| 237 | 0649001.00066511 | Camaliec0003905 - Camaliec0003905 | email | bosch, william m. [william.bosch@pa ss.com] | camaliec, charles a. [ccamaliec@willkearr s.com][roger frankel [rfrankel@frankelwar on.com] | goodwin, michael d. [michael.goodwin@pa ass.com]jody rice [jody.rice@rsplimited. com][john robinson [john.robinson@pass. com] | FW: Rock Springs Drive, LLC: Lease with Rock Spring Plaza II, LLC - Request for Wire Intructions for Monthly Rental Payment | 9/26/2017 | 000000007A48150BEB2085 4095EC09A2A09331A464A 2100.MSG | Redacted | Attorney/Client Communication | Communication from counsel providing legal advice regarding contract. |
| 238 | 0649001.00066430 | Camaliec0003916 - Camaliec0003917 | email | jody rice [jody.rice@rsplimited. com] | camaliec, charles a. [ccamaliec@willkearr s.com] | goodwin, michael d. [michael.goodwin@pa ass.com]jody rice [jody.rice@rsplimited. com] | Approval needed! Rock Springs Drive, LLC: Lease with Rock Spring Plaza II, LLC - Request for Wire Intructions for Monthly Rental Payment | 9/28/2017 | 000000007A48150BEB2085 4095EC09A2A09331A464A 2100.MSG | Redacted | Attorney/Client Communication | Communication from counsel providing legal advice regarding contract. |
| 239 | 0649001.00061872 | Camaliec0003923 - Camaliec0003923 | email | jody rice [jody.rice@rsplimited. com] | camaliec, charles a. [ccamaliec@willkearr s.com][goodwin, michael d. [michael.goodwin@a pass.com] | | FW: Rock Springs Drive, LLC - a Maryland Limited Liability Company | 11/8/2017 | 000000007A48150BEB2085 4095EC09A2A09331A464F 2100.MSG | Withheld | Attorney/Client Communication | Communication to counsel seeking legal advice. |
| 240 | 0649001.00061854 | Camaliec0000960 - Camaliec0000960 | email | jody rice [jody.rice@rsplimited. com] | camaliec, charles a. [ccamaliec@willkearr s.com][goodwin, michael d. [michael.goodwin@a pass.com] | | FW: 6560 Rockledge - Ground Rent Charge | 11/8/2017 | 000000007A48150BEB2085 4095EC09A2A09331A440408 2000.MSG | Withheld | Attorney/Client Communication | Communication to counsel seeking legal advice. |
| 241 | 0649001.00061732 | | email | bosch, william m. [william.bosch@pa ss.com] | goodwin, michael d. [michael.goodwin@a pass.com] | camaliec, charles a. [ccamaliec@willkearr s.com] | Re: 6560 | 11/9/2017 | 000000007A48150BEB2085 4095EC09A2A09331A464F 2000.MSG | Withheld | Attorney/Client Communication | Communication to counsel seeking legal advice. |
| 242 | 0649001.00061767 | | email | goodwin, michael d. [michael.goodwin@a pass.com] | camaliec, charles a. [ccamaliec@willkearr s.com][william.bosch@pa ss.com] | bosch, william m. [william.bosch@pa ss.com] | 6560 | 11/9/2017 | 000000007A48150BEB2085 4095EC09A2A09331A464F 2000.MSG | Withheld | Attorney/Client Communication | Communication to counsel seeking legal advice. |
| 243 | 0649001.00061661 | | email | bosch, william m. [william.bosch@pa ss.com] | camaliec, charles a. [ccamaliec@willkearr s.com][goodwin, michael d. [michael.goodwin@a pass.com] | | RE: 6560 | 11/13/2017 | 000000007A48150BEB2085 4095EC09A2A09331A464A4 2000.MSG | Withheld | Attorney/Client Communication | Communication to counsel seeking legal advice. |
| 244 | 0649001.00078968 | | email | bosch, william m. [william.bosch@a pass.com][camaliec, charles a.] | camaliec, charles a. [ccamaliec@willkearr s.com][roger frankel [rfrankel@frankelwar on.com] | goodwin, michael d. [michael.goodwin@a rouldponter.com] | Robert W. Barron, Esq. Ltr re 6560 Rockledge 2.22.18.docx | 2/20/2018 | 00000000165A591C2AADDE5 4881DAD23DFA0B560DA530 2000.MSG | Withheld | Attorney/Client Communication | Communication to counsel seeking legal advice. |

A148

Case 8:20-cv-01502-PJM    Document 238-2    Filed 01/25/23    Page 48 of 71

## Rock Spring Plaza II - Privilege Log

| Item # | Control Number | Bates Range | Document Type | Email From | Email To | Email CC | Email Subject | Document Date | File Name | Privilege | Privilege Type | Privilege Description |
|---|---|---|---|---|---|---|---|---|---|---|---|---|
| 245 | 0649001:00078972 | | Attachment | | | | Robert W. Barron, Esq. Ltr re 6560 Rockledge 2.22.18.docx | 1/1/1900 | Robert W. Barron, Esq. Ltr re 6560 Rockledge 2.22.18.docx | Withheld | Attorney-Client Communication | Attachment to communication to counsel seeking legal advice. |
| 246 | 0649001:00078964 | | email | bosch, william m. (william.bosch@arnol dporter.com) | roger frankel (rfrankel@frankelwyr on.com) | camailer, charles a. (ccamailer@wilkesarti s.com);goodwin, michael d. (michael.goodwin@ar noldporter.com) | Re: Robert W. Barron, Esq. Ltr re 6560 Rockledge 2.22.18.docx | 2/21/2018 | 00000000351FA91CE2AAD0E5 48810A823F0F40850E24B1 000.MSG | Withheld | Attorney-Client Communication | Counsel providing legal advice regarding contract. |
| 247 | 0649001:00078974 | | email | roger frankel (rfrankel@frankelwyr on.com) | bosch, william m. (william.bosch@arnol dporter.com);camaille (camailer@wilkesarti r, charles a. s.com) | goodwin, michael d. (michael.goodwin@ar noldporter.com);[ rfrankel@frankelwyr on.com] | RE: Robert W. Barron, Esq. Ltr re 6560 Rockledge 2.22.18.docx | 2/21/2018 | 00000000351FA91CE2AAD0E5 48810A823F0F40850E445C 1000.MSG | Withheld | Attorney-Client Communication | Counsel providing legal advice regarding contract. |
| 248 | 0649001:00078970 | | email | roger frankel (rfrankel@frankelwyr on.com) | camailer, charles a. (ccamailer@wilkesarti s.com);goodwin, michael d. (michael.goodwin@ar noldporter.com);[ rfrankel@frankelwyr on.com] | bosch, william m. (william.bosch@arnol dporter.com) | RE: Robert W. Barron, Esq. Ltr re 6560 Rockledge 2.22.18.docx | 2/22/2018 | 00000000351FA91CE2AAD0E5 48810A823F0F40850E8643 1000.MSG | Withheld | Attorney-Client Communication | Counsel providing legal advice regarding contract. |
| 249 | 0649001:00244173 | Camailer0003951- Camailer0003951 | email | bosch, william m. (william.bosch@arnol dporter.com) | camailer, charles a. (ccamailer@wilkesarti s.com);goodwin, michael d. (michael.goodwin@ar noldporter.com);[roge r frankel [rfrankel@frankelwyr on.com] | [michael.goodwin@ar noldporter.com];[roge r frankel [rfrankel@frankelwyr on.com] | FW: Rock Springs Drive LLC - Your letter dated February 22, 2018 | 3/6/2018 | 00000000704F8CAAFE21A3 4B8B6FD3D8F056F438425 3000.MSG | Redacted | Attorney Work Product; Attorney-Client Communication | Communications between counsel and client concerning assignment of ground lease in anticipation of litigation. |
| 250 | Camailer0000970- Camailer0000970 | | email | bosch, william m. (william.bosch@arnol dporter.com) | camailer, charles a. (ccamailer@wilkesarti s.com);goodwin, michael d. (michael.goodwin@ar noldporter.com);[roge r frankel [rfrankel@frankelwyr on.com] | | FW: Response Letter - Rock Springs Drive, LLC | 3/30/2018 | 00000000704F8CAAFE21A3 4B8B6FD3D8F056F438490 3C00.MSG | Redacted | Attorney Work Product; Attorney-Client Communication | Communications between counsel and client concerning assignment of ground lease in anticipation of litigation. |
| 251 | 0649001:00244691 | Camailer0003960- Camailer0003961 | email | bosch, william m. (william.bosch@arnol dporter.com) | camailer, charles a. (ccamailer@wilkesarti s.com) | goodwin, michael d. (michael.goodwin@ar noldporter.com);[john.robinson@arnol dporter.com];[roger frankel [rfrankel@frankelwyr on.com] | RE: Response Letter - Rock Springs Drive, LLC | 4/2/2018 | 00000000704F8CAAFE21A3 4B8B6FD3D8F056F438491 3C00.MSG | Redacted | Attorney Work Product; Attorney-Client Communication | Communications between counsel and client concerning assignment of ground lease in anticipation of litigation. |

**Rock Spring Plaza II - Privilege Log**

| Item # | Control Number | Bates Range | Document Type | Email From | Email To | Email CC | Email Subject | Document Date | File Name | Privilege | Privilege Type | Privilege Description |
|---|---|---|---|---|---|---|---|---|---|---|---|---|
| 253 | 0649001.00246571 | Camaliei0003953 Camaliei0003954 | email | roger frankel (rfrankel@frankelwgon.com) | bosch, william m. (william.bosch@amol dporter.com) camalier, charles a. (ccamalier@willkeanti s.com) jgoodwin, michael d. (michael.goodwin@ar noldporter.com) robi nson, john (john.robinson@amol dporter.com) | camalier, charles a. (ccamalier@willkeanti s.com) jgoodwin, michael d. (michael.goodwin@ar noldporter.com) robi nson, john (john.robinson@amol dporter.com) | RE: Response Letter - Rock Springs Drive, LLC | 4/2/2018 | 00000000704F8CA4FE21A3 4888EF3D3E8F05643EC491 3C00.MSG | Redacted | Attorney Work Product; Attorney-Client Communication | Communications between counsel and client concerning assignment of ground lease in anticipation of litigation. |
| | 0649001.00244606 | Camaliei0003952 Camaliei0003952 | | | | | RE: Response Letter - Rock Springs Drive, LLC | 4/2/2018 | 00000000704F8CA4FE21A3 4888EF3D3E8F05643E491491 3C00.MSG | Redacted | Attorney Work Product; Attorney-Client Communication | Communications between counsel and client concerning assignment of ground lease in anticipation of litigation. |
| 254 | 0649001.00244506 | Camaliei0003966 Camaliei0003968 | email | roger frankel (rfrankel@frankelwgon.com) | bosch, william m. (william.bosch@amol dporter.com camalier, charles a. (ccamalier@willkeanti s.com) | bell, larissa (lbell@willkeanti s.co m) goodwin, michael d. (michael.goodwin@ar noldporter.com) robi nson, john (john.robinson@amol dporter.com) | RE: Response Letter - Rock Springs Drive, LLC | 4/2/2018 | 00000000704F8CA4FE21A3 4888EF3D3E8F05643E4B8B 3C00.MSG | Redacted | Attorney Work Product; Attorney-Client Communication | Communications between counsel and client concerning assignment of ground lease in anticipation of litigation. |
| 255 | 0649001.00244512 | Camaliei0003964 Camaliei0003965 | email | bosch, william m. (william.bosch@amol dporter.com) | camalier, charles a. (ccamalier@willkeanti s.com) jroger frankel (rfrankel@frankelwgon.com) | goodwin, michael d. (michael.goodwin@ar noldporter.com) robi nson, john (john.robinson@amol dporter.com) | RE: Response Letter - Rock Springs Drive, LLC | 4/3/2018 | 00000000704F8CA4FE21A3 4888EF3D3E9F05643243C 3C00.MSG | Redacted | Attorney Work Product; Attorney-Client Communication | Communications between counsel and client concerning assignment of ground lease in anticipation of litigation. |
| 256 | 0649001.00244511 | Camaliei0003962 Camaliei0003963 | email | roger frankel (rfrankel@frankelwgon.com) | bosch, william m. (william.bosch@amol dporter.com camalier, charles a. (ccamalier@willkeanti s.com) | goodwin, michael d. (michael.goodwin@ar noldporter.com) robi nson, john (john.robinson@amol dporter.com) | RE: Response Letter - Rock Springs Drive, LLC | 4/3/2018 | 00000000704F8CA4FE21A3 4888EF3D3E8F05643644EC 3C00.MSG | Redacted | Attorney Work Product; Attorney-Client Communication | Communications between counsel and client concerning assignment of ground lease in anticipation of litigation. |
| 257 | 0649001.00242834 | Camaliei0000975 Camaliei0000975 | email | bosch, william m. (william.bosch@amol dporter.com) | camalier, charles a. (ccamalier@willkeanti s.com) jgoodwin, michael d. (michael.goodwin@ar noldporter.com) jroge frankel (rfrankel@frankelwgon.com) | robinson, john (john.robinson@amol dporter.com) | 2018.4.23 Letter to Robert W. Barron re Ground Lease (6560)_(US_14255759 4_3).DOCX | 4/23/2018 | 2018.4.23 Letter to Robert W. Barron re Ground Lease (6560)_(US_14255759 4_3).DOCX | Withheld | Attorney Work Product; Attorney-Client Communication | Communications between counsel and client concerning assignment of ground lease in anticipation of litigation. |
| 258 | 0649001.00242840 | Camaliei0000976 Camaliei0000976 | attachment | | | | 2018.4.23 Letter to Robert W. Barron re Ground Lease (6560)_(US_14255759 4_3).DOCX | 1/1/1900 | 2018.4.23 Letter to Robert W. Barron re Ground Lease (6560)_(US_142557594_3) .DOCX | Withheld | Attorney Work Product; Attorney-Client Communication | Attachment to above email containing draft letter regarding ground lease created in anticipation of litigation. |

A150

Rock Spring Plaza II - Privilege Log

| Item # | Control Number | Bates Range | Document Type | Email From | Email To | Email CC | Email Subject | Document Date | File Name | Privilege | Privilege Type | Privilege Description |
|---|---|---|---|---|---|---|---|---|---|---|---|---|
| 259 | 0649001.00242724 | | email | bosch, william m. (william.bosch@arnol dporter.com) | camalier, charles a. (ccamalier@willseanti s.com)goodwin, michael d. (michael.goodwin@ar noldporter.com)jobi nson, john (john.robinson@arnol dporter.com)roger frankel (rfrankel@frankelwyr on.com) | | 2018.4.23 Letter to Robert W. Barron re Ground Lease (6560)_(US_16255759 4_3).DOCX | 4/25/2018 | 0000000070A9ECAAFE21A3 4888&F3D3E8F05&FA30&F9 3900.MSG | Withheld | Attorney Work Product; Attorney-Client Communication | Communications between counsel and client concerning assignment of ground lease in anticipation of litigation. |
| 260 | 0649001.00242728 | | Attachment | | camalier, charles a. (ccamalier@willseanti s.com)goodwin, michael d. (michael.goodwin@ar noldporter.com)jobi nson, john (john.robinson@arnol dporter.com)roger frankel (rfrankel@frankelwyr on.com) | | 2018.4.23 Letter to Robert W. Barron re Ground Lease (6560)_(US_16255759 4_3).DOCX | 1/1/1900 | 2018.4.23 Letter to Robert W. Barron re Ground Lease (6560)_(US_16255594_3). DOCX | Withheld | Attorney Work Product; Attorney-Client Communication | Attachment to above email containing draft letter regarding ground lease created in anticipation of litigation. |
| 261 | 0649001.00242737 | | email | bosch, william m. (william.bosch@arnol dporter.com) | bosch, william m. (william.bosch@arnol dporter.com)camalie r, charles a. (ccamalier@willseanti s.com)goodwin, michael d. (michael.goodwin@ar noldporter.com)roger frankel (rfrankel@frankelwyr on.com) | robinson, john (john.robinson@arnol dporter.com) | RE: 2018.4.23 Letter to Robert W. Barron re Ground Lease (6560)_(US_16255759 4_3).DOCX | 4/25/2018 | 0000000070A9ECAAFE21A3 4888&F3D3E8F05&FA30&F9 3900.MSG | Withheld | Attorney Work Product; Attorney-Client Communication | Communications between counsel and client concerning assignment of ground lease in anticipation of litigation. |
| 262 | 0649001.00242745 | | email | goodwin, michael d. (michael.goodwin@ar noldporter.com) | bosch, william m. (william.bosch@arnol dporter.com)camalie r, charles a. (ccamalier@willseanti s.com)roger frankel (rfrankel@frankelwyr on.com) | robinson, john (john.robinson@arnol dporter.com)roger frankel (rfrankel@frankelwyr on.com) | RE: 2018.4.23 Letter to Robert W. Barron re Ground Lease (6560)_(US_16255759 4_3).DOCX | 4/25/2018 | 0000000070A9ECAAFE21A3 4888&F3D3E8F05&FA30&F9 3900.MSG | Withheld | Attorney Work Product; Attorney-Client Communication | Communications between counsel and client concerning assignment of ground lease in anticipation of litigation. |
| 263 | 0649001.00242787 | | email | roger frankel (rfrankel@frankelwyr on.com) | bosch, william m. (william.bosch@arnol dporter.com)camalie r, charles a. (ccamalier@willseanti s.com)goodwin, michael d. (michael.goodwin@ar noldporter.com)rice | robinson, john (john.robinson@arnol dporter.com)roger frankel (rfrankel@frankelwyr on.com) | RE: 2018.4.23 Letter to Robert W. Barron re Ground Lease (6560)_(US_16255759 4_3).DOCX | 4/25/2018 | 0000000070A9ECAAFE21A3 4888&F3D3E8F05&FA30&F9 3900.MSG | Withheld | Attorney Work Product; Attorney-Client Communication | Communications between counsel and client concerning assignment of ground lease in anticipation of litigation. |
| 264 | 0649001.00242935 (Camalier000373 ); (Camalier000374 ) | | email | bosch, william m. (william.bosch@arnol dporter.com) | camalier, charles a. (ccamalier@willseanti s.com)goodwin, michael d. (michael.goodwin@ar noldporter.com)jody rice (jody.rice@nglimited. com) | robinson, john (john.robinson@arnol dporter.com) | RE: 6560 Rock Spring Drive | 5/2/2018 | 0000000070A9ECAAFE21A3 4888&F3D3E8F05&FA54C4C1 3900A.MSG | Redacted | Attorney Work Product; Attorney-Client Communication | Communications between counsel and client concerning assignment of ground lease in anticipation of litigation. |

A151

Rock Spring Plaza II - Privilege Log

| Item # | Control Number | Bates Range | Document Type | Email From | Email To | Email CC | Email Subject | Document Date | File Name | Privilege | Privilege Type | Privilege Description |
|---|---|---|---|---|---|---|---|---|---|---|---|---|
| 266 | 064.6501.00242146 | C#m#.er0003970 C#m#.er0003970 | email | jody rice [jody.rice@nip.limited.com] | booch, william m. [william.booch@pisk.com];camalier, charles a. [ccamalier@wilkeams.com];goodwin, michael d. [michael.goodwin@pks.com] | | 6560 Rock Spring Drive | 5/3/2018 | 000000070AF8CAAFE21A3 4B886FE03E8F056F43C4C2 B00.MSG | Redacted | Attorney Work Product; Attorney-Client Communication | Communications between counsel and client concerning assignment of ground lease in anticipation of litigation. |
| 266 | 064.6501.00242037 | C#m#.er0003975 C#m#.er0003976 | email | booch, william m. [william.booch@mol dporter.com] | camalier, charles a. [ccamalier@wilkeams.com];goodwin, michael d. [michael.goodwin@pks.com];michael d. [michael.goodwin@ar noldporter.com];roger frankel [rfrankel@frankelawy ers.com] | robinson, john [john.robinson@mol dporter.com] | RE: 6560 Rock Spring Drive | 5/3/2018 | 000000070AF8CAAFE21A3 4B886FE03E8F056F434484 B00.MSG | Redacted | Attorney Work Product; Attorney-Client Communication | Communications between counsel and client concerning assignment of ground lease in anticipation of litigation. |
| 267 | 064.6501.00241955 | C#m#.er0003968.1 C#m#.er0003981 | email | roger frankel [rfrankel@frankelawy ers.com] | booch, william m. [william.booch@mol dporter.com] | camalier, charles a. [ccamalier@wilkeams.com];goodwin, michael d. [michael.goodwin@ar noldporter.com];robinson, john [john.robinson@mol dporter.com];roger frankel [rfrankel@frankelawy ers.com];goodwin, michael d. [michael.goodwin@ar noldporter.com] | Re: 6560 Rock Spring Drive | 5/3/2018 | 000000070AF8CAAFE21A3 4B886FE03E8F056F43C4A4 B00.MSG | Redacted | Attorney Work Product; Attorney-Client Communication | Communications between counsel and client concerning assignment of ground lease in anticipation of litigation. |
| 268 | 064.6501.00241939 | C#m#.er0003984.1 C#m#.er0003987 | email | booch, william m. [william.booch@mol dporter.com] | camalier, charles a. [ccamalier@wilkeams.co m] | robinson, john [john.robinson@mol dporter.com];roger frankel | Re: 6560 Rock Spring Drive | 5/3/2018 | 000000070AF8CAAFE21A3 4B886FE03E8F056F430480 B00.MSG | Redacted | Attorney Work Product; Attorney-Client Communication | Communications between counsel and client concerning assignment of ground lease in anticipation of litigation. |
| 269 | 064.6501.00241926 | C#m#.er0003981.1 C#m#.er0003983 | email | roger frankel [rfrankel@frankelawy ers.com] | booch, william m. [william.booch@mol dporter.com] | camalier, charles a. [ccamalier@wilkeams.co m];goodwin, michael d. [michael.goodwin@ar noldporter.com];robinson, john [john.robinson@mol dporter.com] | Re: 6560 Rock Spring Drive | 5/3/2018 | 000000070AF8CAAFE21A3 4B886FE03E8F056F434680 B00.MSG | Redacted | Attorney Work Product; Attorney-Client Communication | Communications between counsel and client concerning assignment of ground lease in anticipation of litigation. |
| 270 | 064.6501.00241918 | C#m#.er0003979 C#m#.er0003980 | email | booch, william m. [william.booch@mol dporter.com] | roger frankel [rfrankel@frankelawy ers.com] | camalier, charles a. [ccamalier@wilkeams.co m];goodwin, michael d. [michael.goodwin@ar noldporter.com];robinson, john [john.robinson@mol dporter.com] | Re: 6560 Rock Spring Drive | 5/3/2018 | 000000070AF8CAAFE21A3 4B886FE03E8F056F434E80 B00.MSG | Redacted | Attorney Work Product; Attorney-Client Communication | Communications between counsel and client concerning assignment of ground lease in anticipation of litigation. |

A152

Rock Spring Plaza II - Privilege Log

| Item # | Control Number | Bates Range | Document Type | Email From | Email To | Email CC | Email Subject | Document Date | File Name | Privilege | Privilege Type | Privilege Description |
|---|---|---|---|---|---|---|---|---|---|---|---|---|
| 275 | 8649001.00241692 | Camaier0003977 - Camaier0003978 | email | roger frankel (rfrankel@frankelwynton.com) | booth, william m. (william.booth@arnoldporter.com) | camaiier, charles a. (ccamaier@wilkesartisan.com); goodwin, michael d. (michael.goodwin@arnoldporter.com); robinson, john (john.robinson@arnoldporter.com) | RE: 6560 Rock Spring Drive | 5/6/2018 | 0000000007DAFBCAAFE21A3 4B8B6F3D1E8FD56F432481.MSG.MSG | Redacted | Attorney Work Product; Attorney-Client Communication | Communications between counsel and client concerning assignment of ground lease in anticipation of litigation. |
| 276 | 8649001.00227243 | Camaier0004003 - Camaier0004006 | email | booth, william m. (william.booth@arnoldporter.com) | roger frankel (rfrankel@frankelwynton.com) | camaiier, charles a. (ccamaier@wilkesartisan.com); goodwin, michael d. (michael.goodwin@arnoldporter.com); robinson, john (john.robinson@arnoldporter.com) | RE: 6560 Rock Spring Drive | 1/2/2018 | 0000000007DAFBCAAFE21A3 4B8B6F3D1E8FD56F430460.MSG.MSG | Redacted | Attorney Work Product; Attorney-Client Communication | Communications between counsel and client concerning assignment of ground lease in anticipation of litigation. |
| 277 | 8649001.00227228 | Camaier0003999 - Camaier0004002 | email | roger frankel (rfrankel@frankelwynton.com) | booth, william m. (william.booth@arnoldporter.com) | camaiier, charles a. (ccamaier@wilkesartisan.com); goodwin, michael d. (michael.goodwin@arnoldporter.com); robinson, john (john.robinson@arnoldporter.com) | RE: 6560 Rock Spring Drive | 1/2/2018 | 0000000007DAFBCAAFE21A3 4B8B6F3D1E8FD56F434046.MSG.MSG | Redacted | Attorney Work Product; Attorney-Client Communication | Communications between counsel and client concerning assignment of ground lease in anticipation of litigation. |
| 278 | 8649001.00227200 | Camaier0003996 - Camaier0003998 | email | booth, william m. (william.booth@arnoldporter.com) | roger frankel (rfrankel@frankelwynton.com) | camaiier, charles a. (ccamaier@wilkesartisan.com); goodwin, michael d. (michael.goodwin@arnoldporter.com); robinson, john (john.robinson@arnoldporter.com) | RE: 6560 Rock Spring Drive | 1/2/2018 | 0000000007DAFBCAAFE21A3 4B8B6F3D1E8FD56F430472.MSG.MSG | Redacted | Attorney Work Product; Attorney-Client Communication | Communications between counsel and client concerning assignment of ground lease in anticipation of litigation. |
| 279 | 8649001.00227229 | Camaier0003993 - Camaier0003995 | email | roger frankel (rfrankel@frankelwynton.com) | booth, william m. (william.booth@arnoldporter.com) | camaiier, charles a. (ccamaier@wilkesartisan.com); goodwin, michael d. (michael.goodwin@arnoldporter.com); robinson, john (john.robinson@arnoldporter.com) | RE: 6560 Rock Spring Drive | 1/2/2018 | 0000000007DAFBCAAFE21A3 4B8B6F3D1E8FD56F430472.MSG.MSG | Redacted | Attorney Work Product; Attorney-Client Communication | Communications between counsel and client concerning assignment of ground lease in anticipation of litigation. |
| 280 | 8649001.00224635 | Camaier0004007 - Camaier0004010 | email | booth, william m. (william.booth@arnoldporter.com) | camaiier, charles a. (ccamaier@wilkesartisan.com); roger frankel (rfrankel@frankelwynton.com) | goodwin, michael d. (michael.goodwin@arnoldporter.com); robinson, john (john.robinson@arnoldporter.com); roger frankel | RE: 6560 Rock Spring Drive | 2/11/2019 | 0000000007DAFBCAAFE21A3 4B8B6F3D1E8FD56F434482.MSG.MSG | Redacted | Attorney-Client Communication | Communications between counsel and client regarding ground lease payments. |

A153

Case 8:20-cv-01502-PJM   Document 238-2   Filed 01/25/23   Page 53 of 71

## Rock Spring Plaza II - Privilege Log

| Item # | Control Number | Bates Range | Document Type | Email From | Email To | Email CC | Email Subject | Document Date | File Name | Privilege | Privilege Type | Privilege Description |
|---|---|---|---|---|---|---|---|---|---|---|---|---|
| 237 | 0649001-00324532 | Camailer0004016 - Camailer0004031 | email | beach, william m. (william.bosoki@mologdporter.com) | jody rice (jody.rice@rngjmiimed.com) | camailer, charles a. (ccamailer@wilieaartisscom),goodwin, michael d. (michael.goodwin@landporter.com),robinson, john (john.robinson@moldporter.com),rager frankel (rfrankel@frankelawyeron.com) | Re: 6560 Rock Spring Drive | 2/12/2019 | 0000000070AFBCAAEF21A3 4888EF3D3E8F05646364E79 3500.MSG | Redacted | Attorney-Client Communication | Communications between counsel and client regarding ground lease payments |
| 238 | 0649001-00324559 | Camailer0004011 - Camailer0004015 | email | jody rice (jody.rice@rngjmiimed.com) | camailer, charles a. (ccamailer@wilieaartisscom) | beach, william m. (william.bosoki@mologdporter.com),goodwin, michael d. (michael.goodwin@landporter.com),robinson, john (john.robinson@moldporter.com),rager frankel (rfrankel@frankelawyeron.com) | 6560 Rock Spring Drive | 2/12/2019 | 0000000070AFBCAAEF21A3 4888EF3D3E8F05645CA7A 3500.MSG | Redacted | Attorney-Client Communication | Communications between counsel and client regarding ground lease payments |
| 239 | 0649001-00318184 | | email | beach, william m. (william.bosoki@mologdporter.com) | camailer, charles a. (ccamailer@wilieaartisscom) | goodwin, michael d. (michael.goodwin@landporter.com),robinson, john (john.robinson@moldporter.com) | 6S4 deal update | 5/13/2019 | 0000000070AFBCAAEF21A3 4888EF3D3E8F0564E8E49k 3300.MSG | Withheld | Attorney Work Product, Attorney Client Communication | Counsel communications concerning assignment of ground lease in anticipation of litigation. |
| 240 | 0649001-00318051 | | email | beach, william m. (william.bosoki@mologdporter.com) | roger frankel (rfrankel@frankelawyeron.com) | | RE: Robert W. Barron, Esq. Ltr re 6560 Rockledge 5.30.19 | 5/30/2019 | 0000000070AFBCAAEF21A3 4888EF3D3E8F05645F5C4E 3300.MSG | Withheld | Attorney Work Product, Attorney Client Communication | Counsel communications concerning litigation strategy in anticipation of litigation. |
| 241 | 0649001-00318044 | | email | roger frankel (rfrankel@frankelawyeron.com) | beach, william m. (william.bosoki@mologdporter.com),camailer, charles a. (ccamailer@wilieaartisscom),goodwin, michael d. (michael.goodwin@landporter.com),robinson, john (john.robinson@moldporter.com) | roger frankel (rfrankel@frankelawyeron.com) | RE: Robert W. Barron, Esq. Ltr re 6560 Rockledge 5.30.19 | 5/30/2019 | 0000000070AFBCAAEF21A3 4888EF3D3E8F0564324E7 3300.MSG | Withheld | Attorney Work Product, Client Communication | Counsel communications concerning assignment of ground lease in anticipation of litigation. |

A154

**Rock Spring Plaza II - Privilege Log**

| Item # | Control Number | Bates Range | Document Type | Email From | Email To | Email CC | Email Subject | Document Date | File Name | Privilege | Privilege Type | Privilege Description |
|---|---|---|---|---|---|---|---|---|---|---|---|---|
| 283 | 064-9001.00218697 | | email | bosch, william m. (william.bosch@arnoldporter.com) | samailer, charles a. (ccsmailer@wilkesartisan.com)goodwin, michael d. (michael.goodwin@arnoldporter.com)job, nason, john (john.robinson@arnoldporter.com)roger frankel (rfrankel@frankelwyron.com) | | Robert W. Barron, Esq. Ltr re 6560 Rockledge 5.30.19 | 5/30/2019 | 00000000700045EA4EE21AB 488B6F3D3E8FD56F43C451 3300.MSG | Withheld | Attorney Work Product; Attorney-Client Communication | Counsel communications concerning assignment of ground lease in anticipation of litigation |
| 283 | | Camailer000694 - Camailer000694 | Attachment | | | | Robert W. Barron, Esq. Ltr re 6560 Rockledge 5.30.19.docx | 7/1/2009 | Robert W. Barron, Esq. Ltr re 6560 Rockledge 5.30.19.docx | Withheld | Attorney Work Product; Attorney-Client Communication | Attachment to above email containing draft letter regarding ground lease created in anticipation of litigation. |
| 284 | 064-9001.00217520 | | email | bosch, william m. (william.bosch@arnoldporter.com) | samailer, charles a. (ccsmailer@wilkesartisan.com)roger frankel (rfrankel@frankelwyron.com) | bosch, william m. (william.bosch@arnoldporter.com)robinson, john (john.robinson@arnoldporter.com)robino | Letter to Barron | 6/6/2019 | 00000000700045EA4EE21AB 488B6F3D3E8FD56F43AA02 3300.MSG | Withheld | Attorney Work Product; Attorney-Client Communication | Counsel communications concerning litigation strategy in anticipation of litigation. |
| 285 | 064-9001.00217523 | | email | roger frankel (rfrankel@frankelwyron.com) | samailer, charles a. (ccsmailer@wilkesartisan.com) | bosch, william m. (william.bosch@arnoldporter.com)robinson, john (john.robinson@arnoldporter.com) | Re: Robert W. Barron Esq. Ltr re 6560 Rockledge 6.6.2019 | 6/6/2019 | 00000000700045EA4EE21AB 488B6F3D3E8FD56F43E002 3300.MSG | Withheld | Attorney Work Product; Attorney-Client Communication | Counsel communications concerning litigation strategy in anticipation of litigation. |
| 286 | 064-9001.00217526 | | email | roger frankel (rfrankel@frankelwyron.com) | | | Fwd: Robert W. Barron Esq. Ltr re 6560 Rockledge 6.6.2019 | 6/6/2019 | 00000000700045EA4EE21AB 488B6F3D3E8FD56F43D003 3300.MSG | Withheld | Attorney Work Product; Attorney-Client Communication | Counsel communications concerning litigation strategy in anticipation of litigation. |
| 287 | | | Attachment | | | | Robert W. Barron, Esq. Ltr re 6560 Rockledge 6.6.2019 | 1/1/2009 | Robert W. Barron Esq. Ltr re 6560 Rockledge 6.6.2018.docx | Withheld | Attorney Work Product; Attorney-Client Communication | Attachment to email containing counsel communications concerning litigation strategy in present litigation. Draft of letter created in anticipation of litigation. |
| 288 | 064-9001.00217546 | | Attachment | | | | ATT00001.htm | 6/6/2019 | ATT00001.htm | Withheld | Attorney Work Product; Attorney-Client Communication | Attachment to email containing counsel communications concerning litigation strategy in present litigation. Draft of letter created in anticipation of litigation. |
| 289 | 064-9001.00217551 | | email | bosch, william m. (william.bosch@arnoldporter.com) | samailer, charles a. (ccsmailer@wilkesartisan.com)roger frankel (rfrankel@frankelwyron.com) | robinson, john (john.robinson@arnoldporter.com) | Robert W. Barron Esq. Ltr re 6560 Rockledge 6.6.2019 | 6/6/2019 | 00000000700045EA4EE21AB 488B6F3D3E8FD56F43B403 3300.MSG | Withheld | Attorney Work Product; Attorney-Client Communication | Counsel communications concerning litigation strategy in anticipation of litigation. |

A155

## Rock Spring Plaza II - Privilege Log

| Item # | Control Number | Bates Range | Document Type | Email From | Email To | Email CC | Email Subject | Document Date | File Name | Privilege | Privilege Type | Privilege Description |
|---|---|---|---|---|---|---|---|---|---|---|---|---|
| 290 | 064.0001.00217548 | | Attachment | | | | Robert W. Barron Esq. ltr re 6560 Rockledge 6.6.2018.docx | 1/1/1800 | Robert W. Barron Esq. ltr re 6560 Rockledge 6.6.2018.docx | Withheld | Attorney Work Product; Attorney Client Communication | Attachments to email containing counsel communications concerning litigation strategy in present litigation. Draft of letter created in anticipation of litigation |
| 291 | 064.0001.00216939 | Camaier000450-Camaier000450 | email | booch, william m. (william.booch@arnol dporter.com) | camaier, charles a. (ccamaier@wilkasart s.com); goodwin, michael d [michael.goodwin@ar noldporter.com]; robi nson, john (john.robinson@arnol dporter.com);roger frankel [rfrankel@frankelwr an.com] | goodwin, michael d [michael.goodwin@ar noldporter.com]; robi nson, john (john.robinson@arnol dporter.com);roger frankel [rfrankel@frankelwr an.com] | FW 6560 Rockledge Drive, Bethesda, Maryland | 6/17/2018 | 00000000704F8CAAFE21A3 4B886F303EBF056F4324C8 .MSG | Redacted | Attorney-Client Communication | Counsel communications providing legal advice regarding ground lease. |
| 292 | 064.0001.00216931 | Camaier000429-Camaier000429 | email | booch, william m. (william.booch@arnol dporter.com) | camaier, charles a. (ccamaier@wilkasart s.com); goodwin, michael d [michael.goodwin@ar noldporter.com]; robi nson, john (john.robinson@arnol dporter.com);roger frankel [rfrankel@frankelwr an.com] | | FW 6560 Rockledge Drive, Bethesda, Maryland | 6/17/2018 | 00000000704F8CAAFE21A3 4B886F303EBF056F4324C9 .MSG | Redacted | Attorney Work Product; Attorney-Client Communication | Counsel communications concerning litigation strategy in anticipation of litigation. |
| 293 | 064.0001.00216938 | | email | booch, william m. (william.booch@arnol dporter.com) | roger frankel [rfrankel@frankelwr an.com] | camaier, charles a. (ccamaier@wilkasart s.com); goodwin, michael d [michael.goodwin@ar noldporter.com]; robi nson, john (john.robinson@arnol dporter.com);roger frankel [rfrankel@frankelwr an.com] | RE: Heard anything? | 6/17/2018 | 00000000704F8CAAFE21A3 4B886F303EBF056F438AC9 .MSG | Withheld | Attorney Work Product; Attorney-Client Communication | Counsel communications concerning litigation strategy in anticipation of litigation. |
| 294 | 064.0001.00216940 | | email | booch, william m. (william.booch@arnol dporter.com) | roger frankel [rfrankel@frankelwr an.com] | camaier, charles a. (ccamaier@wilkasart s.com); goodwin, michael d [michael.goodwin@ar noldporter.com]; robi nson, john (john.robinson@arnol dporter.com);roger frankel [rfrankel@frankelwr an.com] | RE: Heard anything? | 6/17/2018 | 00000000704F8CAAFE21A3 4B886F303EBF056F438EC9 .MSG | Withheld | Attorney Work Product; Attorney-Client Communication | Counsel communications concerning litigation strategy in anticipation of litigation. |
| 295 | 064.0001.00216929 | | email | roger frankel [rfrankel@frankelwr an.com] | booch, william m. (william.booch@arnol dporter.com);[camaier, charles a. (ccamaier@wilkasart s.com]; goodwin, michael d [michael.goodwin@ar noldporter.com] | robinson, john (john.robinson@arnol dporter.com) | RE: Heard anything? | 6/17/2018 | 00000000704F8CAAFE21A3 4B886F303EBF056F4324C4 .MSG | Withheld | Attorney Work Product; Attorney-Client Communication | Counsel communications concerning litigation strategy in anticipation of litigation. |

A156

**Rock Spring Plaza II - Privilege Log**

| Item # | Control Number | Bates Range | Document Type | Email From | Email To | Email CC | Email Subject | Document Date | File Name | Privilege | Privilege Type | Privilege Description |
|---|---|---|---|---|---|---|---|---|---|---|---|---|
| 296 | 0649001.00216942 | Camailer0001002 Camailer0001002 | email | bosch, william m. (william.bosch@arnoldporter.com) | camailer, charles a. (ccamailer@wilkasright... michael d. (michael.goodwin@arnoldporter.com); roger frankel (rfrankel@frankelwch.com) | robinson, john (john.robinson@arnoldporter.com) | RE: Heard anything? | 6/17/2019 | 0000000007DAF8CAAFE21A3488B6F3D3EBF056F43E4CA3200.MSG | Withheld | Attorney Work Product; Attorney-Client Communication | Counsel communications concerning litigation strategy in anticipation of litigation. |
| 297 | 0649001.00216934 | Camailer0000972 | email | roger frankel (rfrankel@frankelwch.com) | bosch, william m. (william.bosch@arnoldporter.com); camailer, charles a. (ccamailer@wilkasright... michael d. (michael.goodwin@arnoldporter.com) | robinson, john (john.robinson@arnoldporter.com) | RE: Heard anything? | 6/17/2019 | 0000000007DAF8CAAFE21A3488B6F3D3EBF056F432ACB3200.MSG | Withheld | Attorney Work Product; Attorney-Client Communication | Counsel communications concerning litigation strategy in anticipation of litigation. |
| 298 | 0649001.00216933 | Camailer0000977 | email | roger frankel (rfrankel@frankelwch.com) | camailer, charles a. (ccamailer@wilkasright.com) | | FW: Heard anything? | 6/17/2019 | 0000000007DAF8CAAFE21A3488B6F3D3EBF056F43A4C03200.MSG | Withheld | Attorney Work Product; Attorney-Client Communication | Counsel communications concerning litigation strategy in anticipation of litigation. |
| 299 | 0649001.00216956 | Camailer0001000 Camailer0001001 | Attachment | | | | Letter to Robert W. Barron re 6560 Ground Lease (06-06-19).pdf | 6/17/2019 | Letter to Robert W. Barron re 6560 Ground Lease (06-06-19).pdf | Withheld | Attorney-Client Communication | Communication from counsel providing legal advice regarding contract. |
| 300 | 0649001.00216970 | Camailer0004024 Camailer0004024 | email | roger frankel (rfrankel@frankelwch.com) | camailer, charles a. (ccamailer@wilkasright... michael d. (michael.goodwin@arnoldporter.com) | robinson, john (john.robinson@arnoldporter.com); camailer, charles a. (ccamailer@wilkasright... michael d. (michael.goodwin@arnoldporter.com); noon, john (john.noon@arnoldporter.com) | RE: Heard anything? | 6/17/2019 | 0000000007DAF8CAAFE21A3488B6F3D3EBF056F436AC63200.MSG | Withheld | Attorney Work Product; Attorney-Client Communication | Counsel communications concerning litigation strategy in anticipation of litigation. |
| 301 | 0649001.00216827 | Camailer0004034 | email | bosch, william m. (william.bosch@arnoldporter.com) | camailer, charles a. (ccamailer@wilkasright.com); roger frankel (rfrankel@frankelwch.com) | | Re: 6560 Rockledge Drive, Bethesda, Maryland | 6/18/2019 | 0000000007DAF8CAAFE21A3488B6F3D3EBF056F43E08E3200.MSG | Redacted | Attorney-Client Communication | Counsel communications providing legal advice regarding ground lease. |
| 302 | 0649001.00216856 | Camailer0004032 | email | bosch, william m. (william.bosch@arnoldporter.com) | camailer, charles a. (ccamailer@wilkasright.com); roger frankel (rfrankel@frankelwch.com) | goodwin, michael d. (michael.goodwin@arnoldporter.com); john (john.robinson@arnoldporter.com) | FW: 6560 Rockledge Drive, Bethesda, Maryland | 6/18/2019 | 0000000007DAF8CAAFE21A3488B6F3D3EBF056F43A4C03200.MSG | Redacted | Attorney-Client Communication | Counsel communications providing legal advice regarding ground lease. |
| 303 | 0649001.00216638 | Camailer0004040 Camailer0004042 | email | bosch, william m. (william.bosch@arnoldporter.com) | camailer, charles a. (ccamailer@wilkasright.com); roger frankel (rfrankel@frankelwch.com) | goodwin, michael d. (michael.goodwin@arnoldporter.com); john (john.robinson@arnoldporter.com) | RE: 6560 Rockledge Drive, Bethesda, Maryland | 6/20/2019 | 0000000007DAF8CAAFE21A3488B6F3D3EBF056F432AAE3200.MSG | Redacted | Attorney-Client Communication | Counsel communications providing legal advice regarding ground lease. |

A157

**Rock Spring Plaza II - Privilege Log**

| Item # | Control Number | Bates Range | Document Type | Email From | Email To | Email CC | Email Subject | Document Date | File Name | Privilege | Privilege Type | Privilege Description |
|---|---|---|---|---|---|---|---|---|---|---|---|---|
| 306 | 864-5001.00116653 | Camailer004038 - Camailer004039 | email | roger frankel [rfrankel@frankelyon.com] | bosch, william m. [william.bosch@arnoldporter.com] | camailer, charles a. [ccamailer@wilaers.com] goodwin, michael d. [michael.goodwin@arnoldporter.com] robinson, john [john.robinson@arnoldporter.com] | RE: 6560 Rockledge Drive, Bethesda, Maryland | 6/20/2019 | 00000007DA9ECAAFE21A3 4B8B6F3D3EBFD56F43CAAE B3200.MSG | Redacted | Attorney-Client Communication | Counsel communications providing legal advice regarding ground lease. |
| 307 | 864-5001.00116658 | Camailer004036 - Camailer004037 | email | bosch, william m. [william.bosch@arnoldporter.com] | roger frankel [rfrankel@frankelyon.com] | camailer, charles a. [ccamailer@wilaers.com] goodwin, michael d. [michael.goodwin@arnoldporter.com] robinson, john [john.robinson@arnoldporter.com] | RE: 6560 Rockledge Drive, Bethesda, Maryland | 6/20/2019 | 00000007DA9ECAAFE21A3 4B8B6F3D3EBFD56F43BAAF 3200.MSG | Redacted | Attorney-Client Communication | Counsel communications providing legal advice regarding ground lease. |
| 308 | 864-5001.00116651 | Camailer004047 - Camailer004048 | email | bosch, william m. [william.bosch@arnoldporter.com] | camailer, charles a. [ccamailer@wilaers.com] bosch, william m. [william.bosch@arnoldporter.com] robinson, john [john.robinson@arnoldporter.com] charles a. roger frankel [rfrankel@frankelyon.com] | | RE: 6560 Rockledge Drive, Bethesda, Maryland | 6/24/2019 | 00000007DA9ECAAFE21A3 4B8B6F3D3EBFD56F43C49B 3200.MSG | Redacted | Attorney-Client Communication | Counsel communications providing legal advice regarding ground lease. |
| 309 | 864-5001.00116651 | Camailer004055 - Camailer004056 | email | roger frankel [rfrankel@frankelyon.com] | bosch, william m. [william.bosch@arnoldporter.com] robinson, john [john.robinson@arnoldporter.com] roger frankel [rfrankel@frankelyon.com] | camailer, charles a. [ccamailer@wilaers.com] | RE: 6560 Rockledge Drive, Bethesda, Maryland | 6/24/2019 | 00000007DA9ECAAFE21A3 4B8B6F3D3EBFD56F43640D 3200.MSG | Redacted | Attorney-Client Communication | Counsel communications providing legal advice regarding ground lease. |
| 310 | 864-5001.00116499 | Camailer004043 - Camailer004044 | email | bosch, william m. [william.bosch@arnoldporter.com] | goodwin, michael d. [michael.goodwin@arnoldporter.com] bosch, william m. [william.bosch@arnoldporter.com] camailer robinson, john [john.robinson@arnoldporter.com] | goodwin, michael d. [michael.goodwin@arnoldporter.com] lee, me wah [me-wah.lee@arnoldporter.com] robinson, john [john.robinson@arnoldporter.com] | FW: 6560 Rockledge Drive, Bethesda, Maryland | 6/24/2019 | 00000007DA9ECAAFE21A3 4B8B6F3D3EBFD56F43040E 3200.MSG | Redacted | Attorney-Client Communication | Counsel communications providing legal advice regarding ground lease. |
| 311 | 864-5001.00115577 | | email | roger frankel [rfrankel@frankelyon.com] | camailer [ccamailer@wilaers.com] | | RE: Rockledge Ground Lease | 7/10/2019 | 00000007DA9ECAAFE21A3 4B8B6F3D3EBFD56F43C440 3200.MSG | Withheld | Attorney Work Product; Attorney-Client Communications | Counsel communications concerning litigation strategy in anticipation of litigation. |

A158

## Rock Spring Plaza II - Privilege Log

| Item # | Control Number | Bates Range | Document Type | Email From | Email To | Email CC | Email Subject | Document Date | File Name | Privilege | Privilege Type | Privilege Description |
|---|---|---|---|---|---|---|---|---|---|---|---|---|
| 310 | 0649001.00132553 | | email | booth, william m. [william.booth@arnol dporter.com] | roger frankel [rfrankel@frankelwp en.com] | camalier, charles a. [ccamalier@wilkisantl o.com],goodwin, michael d. [michael.goodwin@ar noldporter.com],robi nson, john [john.robinson@arnol dporter.com] | RE: Message from User 5541259900 (+15541259900) | 8/15/2019 | 000000070AF8CAAFE21A3 4B886F03E8F056F435CF39 3100.MSG | Withheld | Attorney Work Product; Attorney-Client Communication | Counsel communications concerning litigation strategy in anticipation of litigation. |
| 311 | 0649001.00132102 | | email | booth, william m. [william.booth@arnol dporter.com] | camalier, charles a. [ccamalier@wilkisantl o.com],roger frankel [rfrankel@frankelwp en.com] | goodwin, michael d. [michael.goodwin@ar noldporter.com],bee, mei-wah [mei-wah.bee@arnoldporte r.com],robinson, john [john.robinson@arnol dporter.com] | Rock Spring Plaza (A&P draft 8.19) | 8/19/2019 | 000000070AF8CAAFE21A3 4B886F03E8F056F43A46A 3100.MSG | Withheld | Attorney Work Product; Attorney-Client Communication | Counsel communications concerning litigation strategy in present litigation. |
| 312 | 0649001.00131341 | | Attachment | | | | Rock Spring Plaza (A&P draft 8.19).docx | 1/1/1900 | Rock Spring Plaza (A&P draft 8.19).docx | Withheld | Attorney Work Product; Attorney-Client Communication | Attachment to above email containing draft of complaint in present litigation. |
| 313 | 0649001.00132663 | | email | booth, william m. [william.booth@arnol dporter.com] | camalier, charles a. [ccamalier@wilkisantl o.com],roger frankel [rfrankel@frankelwp en.com] | goodwin, michael d. [michael.goodwin@ar noldporter.com],robi nson, john [john.robinson@arnol dporter.com] | Rock Spring Plaza - Draft Complaint (revised) | 9/25/2019 | 000000070AF8CAAFE21A3 4B886F03E8F056F43447A 3000.MSG | Withheld | Attorney Work Product; Attorney-Client Communication | Counsel communications concerning litigation strategy in present litigation. |
| 314 | 0649001.00132667 | | Attachment | robert braunohler [robert.braunohler@ splmiteed.com] | robert braunohler [robert.braunohler@ splmiteed.com] | | Rock Spring Plaza - Complaint_US_165827833 29783_61.DOCX | 1/1/1900 | Rock Spring Plaza - Complaint_US_165827833 61.DOCX | Withheld | Attorney Work Product; Attorney-Client Communication | Attachment to above email containing draft of complaint in present litigation. |
| 315 | 0649001.00109872 | | email | booth, william m. [william.booth@arnol dporter.com] | robert braunohler [robert.braunohler@ splmiteed.com] | camalier, charles a. [ccamalier@wilkisantl o.com],goodwin, michael d. [michael.goodwin@ar noldporter.com],robi nson, john [john.robinson@arnol dporter.com],roger frankel [rfrankel@frankelwp en.com] | RE: 6560 Rockledge Drive | 10/7/2019 | 000000070AF8CAAFE21A3 4B886F03E8F056F43E438 3000.MSG | Withheld | Attorney Work Product; Attorney-Client Communication | Counsel communications concerning litigation strategy in present litigation. |
| 316 | 0649001.00109900 | | Attachment | bill booch [william.booch@arnol dporter.com] | | | Rock Spring Plaza - Complaint_US_165827833 29783_61.DOCX | 1/1/1900 | Rock Spring Plaza - Complaint_US_165827833 61.DOCX | Withheld | Attorney Work Product; Attorney-Client Communication | Attachment to above email containing draft of complaint in present litigation. |
| 317 | 0649001.00109916 | | email | robert braunohler [robert.braunohler@ splmiteed.com] | bill booch [william.booch@arnol dporter.com] | camalier, charles a. [ccamalier@wilkisantl o.com],goodwin, michael d. [michael.goodwin@ar noldporter.com],roge r frankel [rfrankel@frankelwp en.com] | 6560 Rockledge Drive | 10/7/2019 | 000000070AF8CAAFE21A3 4B886F03E8F056F43A439 3000.MSG | Withheld | Attorney Work Product; Attorney-Client Communication | Counsel communications concerning litigation strategy in present litigation. |

A159

Rock Spring Plaza II - Privilege Log

| Item # | Control Number | Bates Range | Document Type | Email From | Email To | Email CC | Email Subject | Document Date | File Name | Privilege | Privilege Type | Privilege Description |
|---|---|---|---|---|---|---|---|---|---|---|---|---|
| 318 | 064/001.00209244 | | email | roger frankel (rfrankel@frankelwrison.com) | bosch, william m. (william.bosch@arnoldporter.com) | camaller, charles a. (ccamaller@wilkeaursion.com)goodwin, michael d. (michael.goodwin@arnoldporter.com)jobert braunober (robert.braunober@splimted.com)jobinaon, john | RE: 6560 Rockledge Drive | 10/16/2019 | 000000007DAF8CAAFE21A3 488B6F3D3EBF056F43B4F7 2950.MSG | Withheld | Attorney Work Product; Attorney-Client Communications | Counsel communications concerning litigation strategy in present litigation. |
| 319 | 064/001.00209250 | | email | bosch, william m. (william.bosch@arnoldporter.com) | robert braunober (robert.braunober@splimted.com)roger frankel (rfrankel@frankelwrison.com) | camaller, charles a. (ccamaller@wilkeaursion.com)goodwin, michael d. (michael.goodwin@arnoldporter.com)jobinaon, john | RE: 6560 Rockledge Drive | 10/16/2019 | 000000007DAF8CAAFE21A3 488B6F3D3EBF056F43A4F7 2950.MSG | Withheld | Attorney Work Product; Attorney-Client Communication | Counsel communications concerning litigation strategy in present litigation. |
| 320 | 064/001.00209225 | | email | roger frankel (rfrankel@frankelwrison.com) | robert braunober (robert.braunober@splimted.com)roger frankel | camaller, charles a. (ccamaller@wilkeaursion.com)goodwin, michael d. (michael.goodwin@arnoldporter.com)jobinaon, john (john.robinaon@amoldporter.com)jobert braunober (robert.braunober@splimted.com)roger frankel | RE: 6560 Rockledge Drive | 10/16/2019 | 000000007DAF8CAAFE21A3 488B6F3D3EBF056F43A4FB 2950.MSG | Withheld | Attorney Work Product; Attorney-Client Communication | Counsel communications concerning litigation strategy in present litigation. |
| 321 | 064/001.00209279 | | email | robert braunober (robert.braunober@splimted.com) | bosch, william m. (william.bosch@arnoldporter.com) | camaller, charles a. (ccamaller@wilkeaursion.com)goodwin, michael d. (michael.goodwin@arnoldporter.com)jobinaon, john | RE: 6560 Rockledge Drive | 10/16/2019 | 000000007DAF8CAAFE21A3 488B6F3D3EBF056F43D4F0 2950.MSG | Withheld | Attorney Work Product; Attorney-Client Communication | Counsel communications concerning litigation strategy in present litigation. |
| 322 | 064/001.00207609 | | email | bosch, william m. (william.bosch@arnoldporter.com) | camaller, charles a. (ccamaller@wilkeaursion.com) | | RE: 6560 | 11/7/2019 | 000000007DAF8CAAFE21A3 488B6F3D3EBF056F432A5A 2950.MSG | Withheld | Attorney Work Product; Attorney-Client Communication | Counsel communications concerning litigation strategy in present litigation. |
| 323 | 064/001.00207692 | | email | bosch, william m. (william.bosch@arnoldporter.com) | camaller, charles a. (ccamaller@wilkeaursion.com) | | 6560 | 11/7/2019 | 000000007DAF8CAAFE21A3 488B6F3D3EBF056F430460 2950.MSG | Withheld | Attorney Work Product; Attorney-Client Communication | Counsel communications concerning litigation strategy in present litigation. |
| 324 | 064/001.00206481 | | email | bosch, william m. (william.bosch@arnoldporter.com) | robert braunober (robert.braunober@splimted.com) | camaller, charles a. (ccamaller@wilkeaursion.com) | RE: 6560 Rockledge Drive | 11/25/2019 | 000000007DAF8CAAFE21A3 488B6F3D3EBF056F432A4D 2950.MSG | Withheld | Attorney Work Product; Attorney-Client Communication | Counsel communications concerning litigation strategy in present litigation. |
| 325 | 064/001.00206511 | | email | robert braunober (robert.braunober@splimted.com) | bosch, william m. (william.bosch@arnoldporter.com) | camaller, charles a. (ccamaller@wilkeaursion.com) | RE: 6560 Rockledge Drive | 11/25/2019 | 000000007DAF8CAAFE21A3 488B6F3D3EBF056F43A4ED 2950.MSG | Withheld | Attorney Work Product; Attorney-Client Communication | Counsel communications concerning litigation strategy in present litigation. |

A160

## Rock Spring Plaza II - Privilege Log

| Item # | Control Number | Bates Range | Document Type | Email From | Email To | Email CC | Email Subject | Document Date | File Name | Privilege | Privilege Type | Privilege Description |
|---|---|---|---|---|---|---|---|---|---|---|---|---|
| 326 | 0649001:00203621 | | email | booh, william m. (william.bosch@morrisondorter.com) | robert braunoher (robert.braunoher@splimited.com) | camalier_charles a. (ccamalier@willkieassnt.scom) | RE: 6560 Rockledge Drive | 1/13/2020 | 00000007046F6AAFE21A3 488B6F3D3EBF056F43E4CA 2000.MSG | Withheld | Attorney Work Product, Attorney-Client Communication | Counsel communications concerning litigation strategy in present litigation. |
| 327 | 0649001:00197358 | | email | booh, william m. (william.bosch@morrisondorter.com) | robert braunoher (robert.braunoher@splimited.com) jroger frankel (jfrankel@frankelawyi on.com) | camalier_charles a. (ccamalier@willkieassnt.scom) | RE: Conf. Call re: Aegon Complaint | 4/1/2020 | 00000007046F6AAFE21A3 488B6F3D3EBF056F43A46F 2800.MSG | Withheld | Attorney Work Product, Attorney-Client Communication | Counsel communications concerning litigation strategy in present litigation. |
| 328 | 0649001:00197339 | | Attachment | | camalier_charles a. (ccamalier@willkieassnt.scom) jrobert braunoher (robert.braunoher@splimited.com) jroger frankel (jfrankel@frankelawyi on.com) | | Rock Spring Plaza - Complaint_US_165829783_71.DOCX | 1/1/1900 | Rock Spring Plaza - Complaint_US_165829783 71.DOCX | Withheld | Attorney Work Product, Attorney-Client Communication | Attachment to above email containing draft of complaint in present litigation. |
| 329 | 0649001:00196127 | | email | booh, william m. (william.bosch@morrisondorter.com) | camalier_charles a. (ccamalier@willkieassnt.scom) jrobert braunoher (robert.braunoher@splimited.com) jroger frankel (jfrankel@frankelawyi on.com) | | Revised Rockledge Complaint | 4/10/2020 | 00000007046F6AAFE21A3 488B6F3D3EBF056F43A46F9 2400.MSG | Withheld | Attorney Work Product, Attorney-Client Communication | Counsel communications concerning litigation strategy in present litigation. |
| 330 | 0649001:00196126 | | Attachment | | | ccamalier@wmplic.c om,goodwin, michael d. (michael.goodwin@gr noldporter.com),roge r frankel esquire (rfrankel@frankelawyi on.com) | Rock Spring Plaza - Complaint_US_1658 29783_81.DOCX | 1/1/1900 | Rock Spring Plaza - Complaint_US_165829783_81.DOCX | Withheld | Attorney Work Product, Attorney-Client Communication | Attachment to above email containing draft of complaint in present litigation. |
| 331 | 0649001:00191367 | | email | booh, william m. (william.bosch@morrisondorter.com) | | ccamalier@wmplic.c om,goodwin, michael d. (michael.goodwin@gr noldporter.com),roge r frankel esquire (rfrankel@frankelawyi on.com) | RE: lawsuit | 5/22/2020 | 00000007046F6AAFE21A3 488B6F3D3EBF056F43244O 2900.MSG | Withheld | Attorney Work Product, Attorney-Client Communication | Counsel communications concerning litigation strategy in present litigation. |
| 332 | 0649001:00191362 | | Attachment | roger frankel (rfrankel@frankelawyi on.com) | booh, william m. (william.bosch@morrisondorter.com) jcamalier_charles a. (ccamalier@willkieassnt.scom) | ccamalier@wmplic.c om,goodwin, michael d. (michael.goodwin@gr noldporter.com),robe rt.braunoher@splimited.com | Rock Spring Plaza - Complaint_US_1658 29783_81.DOCX | 1/1/1900 | Rock Spring Plaza - Complaint_US_165829783_81.DOCX | Withheld | Attorney Work Product, Attorney-Client Communication | Attachment to above email containing draft of complaint in present litigation. |
| 333 | 0649001:00191337 | | email | robert braunoher (robert.braunoher@splimited.com) | booh, william m. (william.bosch@morrisondorter.com) | camalier_charles a. (ccamalier@willkieassnt.scom) | RE: lawsuit | 5/23/2020 | 00000007046F6AAFE21A3 488B6F3D3EBF056F43464C 2900.MSG | Withheld | Attorney Work Product, Attorney-Client Communication | Counsel communications concerning litigation strategy in present litigation. |
| 334 | 0649001:00191134 | | email | robert braunoher (robert.braunoher@splimited.com) | booh, william m. (william.bosch@morrisondorter.com) jcamalier_charles a. (ccamalier@willkieassnt.scom) | goodwin, michael d. (michael.goodwin@gr noldporter.com),robi nson, john (john.robinson@arnol dporter.com),sophia hoppies (sophia@splimited.c on) | FW: lawsuit | 5/27/2020 | 00000007046F6AAFE21A3 488B6F3D3EBF056F43D623 2900.MSG | Withheld | Attorney Work Product, Attorney-Client Communication | Counsel communications concerning litigation strategy in present litigation. |
| 335 | 0649001:00190757 | | email | robert braunoher (robert.braunoher@splimited.com) | booh, william m. (william.bosch@morrisondorter.com) jcamalier_charles a. (ccamalier@willkieassnt.scom) | | RE: lawsuit | 5/29/2020 | 00000007046F6AAFE21A3 488B6F3D3EBF056F43A404 2900.MSG | Withheld | Attorney Work Product, Attorney-Client Communication | Counsel communications concerning litigation strategy in present litigation. |

## Rock Spring Plaza II - Privilege Log

| Item # | Control Number | Bates Range | Document Type | Email From | Email To | Email CC | Email Subject | Document Date | File Name | Privilege | Privilege Type | Privilege Description |
|---|---|---|---|---|---|---|---|---|---|---|---|---|
| 336 | 0649001.00190170 | | email | booch, william m. [william.booch@meldporter.com] | camiller, charles a. [ccamiller@wilcoxattll]; a.con1jp.godwin, michael d. [michael.goodwin@meldporter.com]; robert brauncher [robert.brauncher@meldporter.com]; roger frankel esquire [rfrankel@tankelwren.com] | robinson, john [john.robinson@meldporter.com] | Final Complaint | 6/4/2020 | 00000000704F8CAAFE21A3 4B886F3D3E8F056F434ACA | Withhold | Attorney Work Product; Attorney-Client Communication | Counsel communications concerning litigation strategy in present litigation. |
| 337 | 0649001.00190168 | | Attachment | | | | Rock Spring Plaza - Complaint_(US_16583783_3).DOCX | 1/1/1900 | Rock Spring Plaza - Complaint_(US_16583783_3).DOCX | Withhold | Attorney Work Product; Attorney-Client Communication | attachment to above email regarding draft of complaint in present litigation. |
| 338 | 0649001.00190118 | | email | roger frankel [rfrankel@tankelwren.com] | booch, william m. [william.booch@meldporter.com]; camiller, charles a. [ccamiller@wilcoxattll]; a.con1jp.godwin, michael d. [michael.goodwin@meldporter.com]; roger frankel esquire [rfrankel@tankelwren.com]; robert brauncher [robert.brauncher@meldporter.com] | robinson, john [john.robinson@meldporter.com] | RE: Final Complaint | 6/4/2020 | 00000000704F8CAAFE21A3 4B886F3D3E8F056F434ACG | | | Counsel communications concerning litigation strategy in present litigation. |
| 339 | | Plaza.I.e0004049 - Plaza.I.e0004050 | email | booch, william m. [william.booch@meldporter.com] | camiller, charles a. [ccamiller@wilcoxattll]; robert brauncher [robert.brauncher@meldporter.com]; roger frankel esquire [rfrankel@tankelwren.com] | goodwin, michael d. [michael.goodwin@meldporter.com]; robinson, john [john.robinson@meldporter.com] | FW: Activity in Case 8:20-cv-01502-PJM Rock Spring Plaza II, LLC Complaint | 6/6/2020 | 4B886F3D3E8F056F434E4D0 | Withhold | Attorney Work Product; Attorney-Client Communication | Counsel communications concerning litigation strategy in present litigation related. |
| 340 | 0649001.00189685 | | email | booch, william m. [william.booch@meldporter.com] | camiller, charles a. [ccamiller@wilcoxattll]; robert brauncher [robert.brauncher@meldporter.com]; roger frankel esquire [rfrankel@tankelwren.com] | goodwin, michael d. [michael.goodwin@meldporter.com]; robinson, john [john.robinson@meldporter.com] | FW: Rockledge Complaint Service | 6/8/2020 | 00000000704F8CAAFE21A3 4B886F3D3E8F056F434C4A0 | | | Counsel communications concerning litigation strategy in present litigation. |
| 341 | 0649001.00189230 | | email | booch, william m. [william.booch@meldporter.com] | camiller, charles a. [ccamiller@wilcoxattll] | | RE: 6650 | 6/11/2020 | 00000000704F8CAAFE21A3 4B886F3D3E8F056F434A78 | Withhold | Attorney Work Product; Attorney-Client Communication | Counsel communications concerning litigation strategy in present litigation. |

A162

Case 8:20-cv-01502-PJM   Document 238-2   Filed 01/25/23   Page 62 of 71

## Rock Spring Plaza II - Privilege Log

| Item # | Control Number | Bates Range | Document Type | Email From | Email To | Email CC | Email Subject | Document Date | File Name | Privilege | Privilege Type | Privilege Description |
|---|---|---|---|---|---|---|---|---|---|---|---|---|
| 341 | 064-9001.00185147 | Camaire0005093 - Camaire0005094 | email | bosch, william m. (william.bosch@mail doporter.com) | camailer, charles a. (ccamailer@wilkesart t.com,) roger frankel esquire (rfrankel@frankelawy er.com) | robinson, john (john.robinson@mol doporter.com) | FW: Activity in Case 8:20-cv-01502-PJM Rock Spring Plaza II, LLC v. Investors Warranty of America, LLC et al Motion to Appear Pro Hac Vice | 6/22/2020 | 000000007DAF8CAAFE21A3 48BB6F3D3E8F05EAF3AE470.2800.MSG | Redacted | Attorney Work Product; Attorney-Client Communication | Counsel communications concerning litigation strategy in present litigation. |
| 342 | 064-9001.00188206 | Camaire0005897 - Camaire0005901 | email | m. scott dezun (sdezun@bakdeapo antners.com) | camailer, charles a. (ccamailer@wilkesart t.com,) roger frankel (rfrankel@frankelawy er.com) | davis camailer (dcamailer@wreplic.c om,) roger frankel (rfrankel@frankelawy er.com) | Re: 6560 Rock Spring Ground Lease | 6/23/2020 | 000000007DAF8CAAFE21A3 48BB6F3D3E8F05EAF3AD40C.2800.MSG | Redacted | Attorney Work Product; Attorney-Client Communication | Counsel communications concerning contracts. |
| 343 | 064-9001.00188217 | Camaire0005894 - Camaire0005896 | email | roger frankel (rfrankel@frankelawy er.com) | camailer, charles a. (ccamailer@wilkesart t.com,) m. scott dezun (sdezun@bakdeapo antners.com) | davis camailer (dcamailer@wreplic.c om,) | RE: 6560 Rock Spring Ground Lease | 6/23/2020 | 000000007DAF8CAAFE21A3 48BB6F3D3E8F05EAF3A640C.2800.MSG | Redacted | Attorney Work Product; Attorney-Client Communication | Counsel communications concerning contracts. |
| 344 | 064-9001.00187166 | | email | robinson, john (john.robinson@mol doporter.com) | camailer, charles a. (ccamailer@wilkesart t.com) | bosch, william m. (william.bosch@mol doporter.com) robert braunoherjbr splimited.com) roger frankel esquire (rfrankel@frankelawy er.com) | RE: Extension request from Rock Springs Drive LLC | 6/28/2020 | 000000007DAF8CAAFE21A3 48BB6F3D3E8F05EAF3A648F.2700.MSG | Withheld | Attorney Work Product; Attorney-Client Communication | Counsel communications concerning litigation strategy in present litigation. |
| 345 | 064-9001.00187218 | | email | roger frankel (rfrankel@frankelawy er.com) | robinson, john (john.robinson@mol doporter.com) | bosch, william m. (william.bosch@mol doporter.com) charles a. (ccamailer@wilkesart t.com,) robert braunoher braunoher splimited.com) robert braunoherjbr splimited.com) | RE: Extension request from Rock Springs Drive LLC | 6/28/2020 | 000000007DAF8CAAFE21A3 48BB6F3D3E8F05EAF3A648F.2700.MSG | Withheld | Attorney Work Product; Attorney-Client Communication | Counsel communications concerning litigation strategy in present litigation. |
| 346 | 064-9001.00187214 | | email | robinson, john (john.robinson@mol doporter.com) | camailer, charles a. (ccamailer@wilkesart t.com,) roger frankel (rfrankel@frankelawy er.com) | bosch, william m. (william.bosch@mol doporter.com) | Extension request from Rock Springs Drive LLC | 6/28/2020 | 000000007DAF8CAAFE21A3 48BB6F3D3E8F05EAF3A648F.2700.MSG | Withheld | Attorney Work Product; Attorney-Client Communication | Counsel communications concerning litigation strategy in present litigation. |
| 347 | 064-9001.00187200 | | email | bosch, william m. (william.bosch@mol doporter.com) | camailer, charles a. (ccamailer@wilkesart t.com,) roger frankel esquire (rfrankel@frankelawy er.com) robert braunoherjbr splimited.com) roger frankel esquire (rfrankel@frankelawy er.com) | goodwin, michael d. (michael.goodwin@gar moldporter.com) robinson, john (john.robinson@mol doporter.com) | show_temp[1] | 6/30/2020 | 000000007DAF8CAAFE21A3 48BB6F3D3E8F05EAF3A6683.2700.MSG | Withheld | Attorney Work Product; Attorney-Client Communication | Counsel communications concerning litigation strategy in present litigation. |

A163

Rock Spring Plaza II - Privilege Log

| Item # | Control Number | Bates Range | Document Type | Email From | Email To | Email CC | Email Subject | Document Date | File Name | Privilege | Privilege Type | Privilege Description |
|---|---|---|---|---|---|---|---|---|---|---|---|---|
| 349 | 064900100187090 | | Attachment | | | | show_temp[1].pdf | 6/30/2020 | show_temp[1].pdf | | Attorney Work Product; Attorney-Client Communication | Counsel communications concerning litigation strategy in present litigation |
| 350 | 064900100187085 | | email | robinson, john (john.robinson@amd porter.com) | gamalier, charles a (ccamalier@wilezantis.com);robert braunohler (robert.braunohler@rgalim ted.com);roger frankel esquire (rfrankel@frankelwr on.com) | bosch, william m. (william.bosch@amo dporter.com);jacober m.michael d. (michael.goodwin@arn nold porter.com) | RE_IWA's motion to dismiss | 6/30/2020 | 0000000070AF8CAAFE21A3 48B86F3D18BF056F43E486 3700.MSG | Withheld | Attorney Work Product; Attorney-Client Communication | Counsel communications concerning litigation strategy in present litigation |
| 351 | 064900100187029 | | Attachment | | | | Motion to dismiss.pdf | 6/30/2020 | Motion to dismiss.pdf | Withheld | Attorney Work Product; Attorney-Client Communication | Attachment to counsel communications concerning litigation strategy in present litigation |
| 352 | 064900100187089 | | email | robinson, john (john.robinson@amd porter.com) | gamalier, charles a (ccamalier@wilezantis.com);robert braunohler (robert.braunohler@rgalim ted.com);roger frankel esquire (rfrankel@frankelwr on.com) | bosch, william m. (william.bosch@amo dporter.com);jacober m.michael d. (michael.goodwin@arn nold porter.com) | IWA's motion to dismiss | 6/30/2020 | 0000000070AF8CAAFE21A3 48B86F3D18BF056F43D487 3700.MSG | Withheld | Attorney Work Product; Attorney-Client Communication | Counsel communications concerning litigation strategy in present litigation |
| 353 | 064900100187152 | | Attachment | | | | Motion to dismiss.pdf | 6/30/2020 | Motion to dismiss.pdf | Withheld | Attorney Work Product; Attorney-Client Communication | Attachment to counsel communications concerning litigation strategy in present litigation |
| 354 | 064900100186219 | | email | robinson, john (john.robinson@amd porter.com) | gamalier, charles a (ccamalier@wilezantis.com);robert braunohler (robert.braunohler@rgalim ted.com);roger frankel esquire (rfrankel@frankelwr on.com) | bosch, william m. (william.bosch@amo dporter.com);jacober m.michael d. (michael.goodwin@arn nold porter.com) | Draft opposition to motions to dismiss | 7/8/2020 | 0000000070AF8CAAFE21A3 48B86F3D18BF056F43E464 3700.MSG | Withheld | Attorney Work Product; Attorney-Client Communication | Counsel communications concerning litigation strategy in present litigation |
| 355 | 064900100186240 | | Attachment | | | | Rock Spring Plaza - Opposition to IWA_s motion to dismiss_IWG_1658297 83_121.DOCX | 1/1/1900 | Rock Spring Plaza - Opposition to IWA_s motion to dismiss_IWG_165829783_12 1.DOCX | Withheld | Attorney Work Product; Attorney-Client Communication | Attachment to above email containing draft of opposition to motion to dismiss. |
| 356 | 064900100186206 | | Attachment | | | | IWA's motion.pdf | 7/8/2020 | IWA's motion.pdf | Withheld | Attorney Work Product; Attorney-Client Communication | Attachment to above email containing draft of opposition to motion to dismiss. |
| 357 | 064900100186213 | | Attachment | | | | RSD's motion.pdf | 7/8/2020 | RSD's motion.pdf | Withheld | Attorney Work Product; Attorney-Client Communication | Attachment to above email containing draft of opposition to motion to dismiss. |

A164

Case 8:20-cv-01502-PJM   Document 238-2   Filed 01/25/23   Page 64 of 71

**Rock Spring Plaza II - Privilege Log**

| Item # | Control Number | Bates Range | Document Type | Email From | Email To | Email CC | Email Subject | Document Date | File Name | Privilege | Privilege Type | Privilege Description |
|---|---|---|---|---|---|---|---|---|---|---|---|---|
| 558 | 064-9001.00186101 | (Kamaie)00004095 - (Kamaie)00004095 | email | robinson, john [john.robinson@amol dporter.com] | xamailer, charles a [ccamaier@wilkearstrik.com] robert braunoher [robert.braunoher@rigolimted.com] roger frankel [rfrankel@frankewynon.com] | booch, william m. [william.booch@amol dporter.com] goodwin, michael d [michael.goodwin@amol dporter.com] | RE: Draft opposition to motions to dismiss | 7/8/2020 | 00000000704F8CAAFE21A3 4888EF3D3E8F05EF434457 2700.MSG | Withheld | Attorney Work Product; Attorney-Client Communication | Counsel communications concerning litigation strategy in present litigation. |
| 559 | 064-9001.00186135 | | email | robert braunoher [robert.braunoher@rigolimted.com] | booch, william m. [william.booch@amol dporter.com] xamailer, charles a [ccamaier@wilkearstrik.com] roger frankel [rfrankel@frankewynon.com] | goodwin, michael d [michael.goodwin@amol dporter.com] robinson, john [john.robinson@amol dporter.com] | RE: Draft opposition to motions to dismiss | 7/8/2020 | 00000000704F8CAAFE21A3 4888EF3D3E8F05EF43845A 2700.MSG | Withheld | Attorney Work Product; Attorney-Client Communication | Counsel communications concerning litigation strategy in present litigation. |
| 560 | 064-9001.00186149 | | email | roger frankel [rfrankel@frankewynon.com] | booch, william m [william.booch@amol dporter.com] | xamailer, charles a [ccamaier@wilkearstrik.com] goodwin, michael d [michael.goodwin@amol dporter.com] robe rt braunoher [maurta.braunoher@rigolimted.com] robinson, john [john.robinson@amol...] | Re: Draft opposition to motions to dismiss | 7/8/2020 | 00000000704F8CAAFE21A3 4888EF3D3E8F05EF43C450 2700.MSG | Withheld | Attorney Work Product; Attorney-Client Communication | Counsel communications concerning litigation strategy in present litigation. |
| 561 | 064-9001.00186937 | | email | robinson, john [john.robinson@amol dporter.com] | xamailer, charles a [ccamaier@wilkearstrik.com] robert braunoher [robert.braunoher@rigolimted.com] roger frankel [rfrankel@frankewynon.com] | booch, william m. [william.booch@amol dporter.com] goodwin, michael d [michael.goodwin@amol dporter.com] | Re: Draft opposition to motions to dismiss | 7/10/2020 | 00000000704F8CAAFE21A3 4888EF3D3E8F05EF43C44C 2700.MSG | Withheld | Attorney Work Product; Attorney-Client Communication | Counsel communications concerning litigation strategy in present litigation. |
| 562 | 064-9001.00186939 | | email | robinson, john [john.robinson@amol dporter.com] | xamailer, charles a [ccamaier@wilkearstrik.com] robert braunoher [robert.braunoher@rigolimted.com] roger frankel [rfrankel@frankewynon.com] | booch, william m [william.booch@amol dporter.com] goodwin, michael d [michael.goodwin@amol dporter.com] | RE: Draft opposition to motions to dismiss | 7/10/2020 | 00000000704F8CAAFE21A3 4888EF3D3E8F05EF43844D 2700.MSG | Withheld | Attorney Work Product; Attorney-Client Communication | Counsel communications concerning litigation strategy in present litigation. |
| 563 | 064-9001.00186941 | | Attachment | | | | | 1/1/1900 | Rock Spring Plaza - Opposition to IWA_3 motion to dismiss_JUL_1658297 3B3_14.DOCX | Withheld | Attorney Work Product; Attorney-Client Communication | attachment to email containing draft of opposition to motion to dismiss in present litigation. |

**Rock Spring Plaza II - Privilege Log**

| Item # | Control Number | Bates Range | Document Type | Email From | Email To | Email CC | Email Subject | Document Date | File Name | Privilege | Privilege Type | Privilege Description |
|---|---|---|---|---|---|---|---|---|---|---|---|---|
| 364 | 064901.00185979 | | email | robert braunohler [robert.braunohler@splimited.com] | camalier, charles a. [ccamalier@wilwarsi s.com];robinson, john [john.robinson@amol dporter.com];roger frankel esquire [rfrankel@frankelwarr en.com] | bosch, william m. [william.bosch@amol dporter.com];roger m.richard d. [rfrankel@frankelwarr en.com] | RE: Draft opposition to motions to dismiss | 7/10/2020 | 00000000704F8CA4EE21A3 4886EF3D1E8F0S6F43AA4E 2700.MSG | Withheld | Attorney Work Product; Attorney-Client Communication | Counsel communications concerning litigation strategy in present litigation. |
| 365 | 064901.00185933 | | email | bosch, william m. [william.bosch@amol dporter.com] | camalier, charles a. [ccamalier@wilwarsi s.com];robinson, john [john.robinson@amol dporter.com];roger frankel [rfrankel@frankelwarr en.com] | goodwin, michael d. [michael.goodwin@ar noldporter.com];roger m.richard d. [rfrankel@frankelwarr en.com] | RE: Draft opposition to motions to dismiss | 7/12/2020 | 00000000704F8CA4EE21A3 4886EF3D1E8F0S6F43D449 2700.MSG | Withheld | Attorney Work Product; Attorney-Client Communication | Counsel communications concerning litigation strategy in present litigation. |
| 366 | 064901.00185931 | | email | roger frankel [rfrankel@frankelwarr en.com] | camalier, charles a. [ccamalier@wilwarsi s.com];robinson, john [john.robinson@amol dporter.com];roger frankel [rfrankel@frankelwarr en.com] | bosch, william m. [william.bosch@amol dporter.com];goodwin, michael d. [michael.goodwin@ar noldporter.com];roger m.richard d. [rfrankel@frankelwarr en.com] | RE: Draft opposition to motions to dismiss | 7/12/2020 | 00000000704F8CA4EE21A3 4886EF3D1E8F0S6F43D449 2700.MSG | Withheld | Attorney Work Product; Attorney-Client Communication | Counsel communications concerning litigation strategy in present litigation. |
| 367 | 064901.00185932 | | Attachment | | | | CAM Opp MTD 071220.pdf | 7/12/2020 | CAM Opp MTD 071220.pdf | Withheld | Attorney Work Product; Attorney-Client Communication | Attachment to email concerning litigation strategy containing document regarding motion to dismiss in present litigation. |
| 368 | 064901.00184253 | | email | bosch, william m. [william.bosch@amol dporter.com] | camalier, charles a. [ccamalier@wilwarsi s.com];robert braunohler [robert.braunohler@splimited.com];roger frankel [rfrankel@frankelwarr en.com] | goodwin, michael d. [michael.goodwin@ar noldporter.com];roger m.richard d. [rfrankel@frankelwarr en.com] | FW: Activity in Case 8:20-cv-01502-PJM Rock Spring Plaza II, LLC v. Investors Warranty of America, LLC et al Reply in Response to Motion | 7/27/2020 | 00000000704F8CA4EE21A3 4886EF3D1E8F0S6F432A4E 2600.MSG | Withheld | Attorney Work Product; Attorney-Client Communication | Counsel communications concerning litigation strategy in present litigation. |
| 369 | 064901.00184240 | | Attachment | | | | 6500 Rock Spring-IWA Reply in Support of AMTD.pdf | 7/27/2020 | 6500 Rock Spring-IWA Reply in Support of MTD.pdf | Withheld | Attorney Work Product; Attorney-Client Communication | Attachment to counsel communications concerning litigation strategy in present litigation. |
| 370 | 064901.00184241 | | Attachment | | | | 6500 Rock Spring-Rock Springs Drive Reply in Support of MTD.pdf | 7/27/2020 | 6500 Rock Spring-Rock Springs Drive Reply in Support of MTD.pdf | Withheld | Attorney Work Product; Attorney-Client Communication | Attachment to counsel communications concerning litigation strategy in present litigation. |
| 371 | 064901.00183674 | Cmail-e0004114 - Cmail-e0004115 | email | bosch, william m. [william.bosch@amol dporter.com] | camalier, charles a. [ccamalier@wilwarsi s.com];robert braunohler [robert.braunohler@splimited.com];roger frankel [rfrankel@frankelwarr en.com] | goodwin, michael d. [michael.goodwin@ar noldporter.com];robinson, john [john.robinson@amol dporter.com];roger m.richard d. [rfrankel@frankelwarr en.com];preston [preston.smith@amol dporter.com] | RE: Activity in Case 8:20-cv-01502-PJM Rock Spring Plaza II, LLC v. Investors Warranty of America, LLC et al Hearing/trial date - setting | 8/3/2020 | 00000000704F8CA4EE21A3 4886EF3D1E8F0S6F43C479 2600.MSG | Reduced | Attorney Work Product; Attorney-Client Communication | Counsel communications concerning litigation strategy in present litigation related. |

## Rock Spring Plaza II - Privilege Log

| Item # | Control Number | Bates Range | Document Type | Email From | Email To | Email CC | Email Subject | Document Date | File Name | Privilege | Privilege Type | Privilege Description |
|---|---|---|---|---|---|---|---|---|---|---|---|---|
| 372 | 0649001.00170723 | | email | roger frankel [rfrankel@frankelwon.com] | camalier, charles a. [ccamalier@willkear1s.com] | bosch, william m. [william.bosch@arnold porter.com]; preston [preston.smith@arnold porter.com]; smith, | Re: Rock Spring Plaza litigation tc | 11/24/2020 | 000000007DAF8CAAFE21A3 4B8B6F3D3E8F056F438A6F 2100.MSG | Withheld | Attorney Work Product; Attorney-Client Communication | Counsel communications concerning litigation strategy in present litigation. |
| 373 | 0649001.00170694 | | email | roger frankel [rfrankel@frankelwon.com] | camalier, charles a. [ccamalier@willkear1s.com] | bosch, william m. [william.bosch@arnold porter.com]; preston [preston.smith@arnold porter.com]; smith, | Re: Rock Spring Plaza litigation tc | 11/24/2020 | 000000007DAF8CAAFE21A3 4B8B6F3D3E8F056F432A40 2100.MSG | Withheld | Attorney Work Product; Attorney-Client Communication | Counsel communications concerning litigation strategy in present litigation. |
| 374 | 0649001.00170480 | | email | bosch, william m. [william.bosch@arnold porter.com] | camalier, charles a. [ccamalier@willkear1s.com] juger/roger frankel esquire [rfrankel@frankelwon.com] | smith, preston [preston.smith@arnold porter.com] | RE: 6560 Rock Spring | 11/25/2020 | 000000007DAF8CAAFE21A3 4B8B6F3D3E8F056F434C00 2100.MSG | Withheld | Attorney Work Product; Attorney-Client Communication | Counsel communications concerning litigation strategy in present litigation. |
| 375 | 0649001.00170493 | | email | bosch, william m. [william.bosch@arnold porter.com] | camalier, charles a. [ccamalier@willkear1s.com] juger/roger frankel esquire [rfrankel@frankelwon.com] | smith, preston [preston.smith@arnold porter.com] | RE: 6560 Rock Spring dr | 11/25/2020 | 000000007DAF8CAAFE21A3 4B8B6F3D3E8F056F434E0D 2100.MSG | Withheld | Attorney Work Product; Attorney-Client Communication | Counsel communications concerning litigation strategy in present litigation. |
| 376 | 0649001.00169694 | | email | roger frankel [rfrankel@frankelwon.com] | camalier, charles a. [ccamalier@willkear1s.com] | bosch, william m. [william.bosch@arnold porter.com]; preston [preston.smith@arnold porter.com]; smith, | Re: MTD Denied | 12/2/2020 | 000000007DAF8CAAFE21A3 4B8B6F3D3E8F056F434999 2100.MSG | Withheld | Attorney Work Product; Attorney-Client Communication | Counsel communications concerning litigation strategy in present litigation. |
| 377 | 0649001.00169732 | | email | bosch, william m. [william.bosch@arnold porter.com] | camalier, charles a. [ccamalier@willkear1s.com] | preston [preston.smith@arnold porter.com] smith, | RE: MTD Denied | 12/2/2020 | 000000007DAF8CAAFE21A3 4B8B6F3D3E8F056F43249B 2100.MSG | Withheld | Attorney Work Product; Attorney-Client Communication | Counsel communications concerning litigation strategy in present litigation. |
| 378 | 0649001.00169723 | | Attachment | | | | Rock Spring Plaza-IWA Scheduling Order.pdf | 12/2/2020 | Rock Spring Plaza - IWA Scheduling Order.pdf | Withheld | Attorney Work Product; Attorney-Client Communication | Attachment to counsel communications concerning litigation strategy in present litigation. |
| 379 | 0649001.00169722 | | Attachment | | | | Rock Spring Plaza - IWA Order on MTD.pdf | 12/2/2020 | Rock Spring Plaza - IWA Order on MTD.pdf | Withheld | Attorney Work Product; Attorney-Client Communication | Attachment to counsel communications concerning litigation strategy in present litigation. |
| 380 | 0649001.00168811 | | email | smith, preston [preston.smith@arnold porter.com] | camalier, charles a. [ccamalier@willkear1s.com] | bosch, william m. [william.bosch@arnold porter.com] roger frankel esquire [rfrankel@frankelwon.com] | RE: GSA deadline | 12/10/2020 | 000000007DAF8CAAFE21A3 4B8B6F3D3E8F056F43C454 2100.MSG | Withheld | Attorney Work Product; Attorney-Client Communication | Counsel communications concerning discovery requests in present litigation. |
| 381 | 0649001.00168604 | | Attachment | | | | Rock Spring Plaza-First Set of RFPs for IWA_PS Edit.DOCX | 1/1/1900 | Rock Spring Plaza—First Set of RFPs for IWA_PS Edit.DOCX | Withheld | Attorney Work Product; Attorney-Client Communication | Attachment to email containing draft of discovery requests. |

A167

Rock Spring Plaza II - Privilege Log

| Item # | Control Number | Bates Range | Document Type | Email From | Email To | Email CC | Email Subject | Document Date | File Name | Privilege | Privilege Type | Privilege Description |
|---|---|---|---|---|---|---|---|---|---|---|---|---|
| 382 | 0649001.00168602 | | Attachment | | | | | 1/1/1900 | Rock Spring Plaza–First Set of Rogs for RSD_PS Edits.DOCX | Withheld | Attorney Work Product; Attorney-Client Communication | Attachment to email containing draft of discovery requests. |
| 383 | 0649001.00168662 | | email | smith, preston [preston.smith@ap                                      dporter.com] | camailer, charles a [ccamailer@wiliwartl.scom] | bosch, william m. [william.bosch@ap                                      dporter.com];roger frankel [rfrankel@frankelwur on.com] | RE: GSA deadline | 12/1/2020 | 000000007DAF8CAAFE21A3 488B6F3D3E8F056F45C4A3 2100.MSG | Withheld | Attorney Work Product; Attorney-Client Communication | Counsel communications concerning discovery requests in present litigation. |
| 384 | 0649001.00168670 | | Attachment | | | | Rock Spring Plaza–First Set of RFPs for IWA_12-10-20 4pm.DOCX | 1/1/1900 | Rock Spring Plaza–First Set of RFPs for IWA_12-10-20 4pm.DOCX | Withheld | Attorney Work Product; Attorney-Client Communication | Attachment to email containing draft of discovery requests. |
| 385 | 0649001.00168727 | | email | bosch, william m. [william.bosch@ap                                      dporter.com] | camailer, charles a [ccamailer@wiliwartl.scom] | roger frankel esquire [rfrankel@frankelwur on.com];smith, preston [preston.smith@ap                                      dporter.com] | RE: GSA deadline | 12/20/2020 | 000000007DAF8CAAFE21A3 488B6F3D3E8F056F4141C4E | Withheld | Attorney Work Product; Attorney-Client Communication | Counsel communications concerning discovery requests in present litigation. |
| 386 | 0649001.00168676 | | email | roger frankel [rfrankel@frankelwur on.com] | smith, preston [preston.smith@ap                                      dporter.com] | bosch, william m. [william.bosch@ap                                      dporter.com];camaila r, charles a. [ccamaila@wiliwartl.scom] | Re: GSA deadline | 12/21/2020 | 000000007DAF8CAAFE21A3 488B6F3D3E8F056F434429 2100.MSG | Withheld | Attorney Work Product; Attorney-Client Communication | Counsel communications concerning discovery requests and counterclaims in present litigation. |
| 387 | 0649001.00168674 | | email | smith, preston [preston.smith@ap                                      dporter.com] | camaila r, charles a. [ccamaila@wiliwartl.scom];roger frankel [rfrankel@frankelwur on.com] | bosch, william m. [william.bosch@ap                                      dporter.com] | RE: GSA deadline | 12/21/2020 | 000000007DAF8CAAFE21A3 488B6F3D3E8F056F43642D 2100.MSG | Withheld | Attorney Work Product; Attorney-Client Communication | Counsel communications concerning discovery requests and counterclaims in present litigation. |
| 388 | 0649001.00168491 | | Attachment | | | | Rock Spring Plaza–First Set of RFPs for IWA.pdf | 12/21/2020 | Rock Spring Plaza–First Set of RFPs for IWA.pdf | Withheld | Attorney Work Product; Attorney-Client Communication | Attachments to counsel communications concerning discovery requests and counterclaims in present litigation. |
| 389 | 0649001.00168483 | | Attachment | | | | Rock Spring Plaza–First Set of RFPs for RSD.pdf | 12/21/2020 | Rock Spring Plaza–First Set of RFPs for RSD.pdf | Withheld | Attorney Work Product; Attorney-Client Communication | Attachments to counsel communications concerning discovery requests and counterclaims in present litigation. |
| 390 | 0649001.00168442 | | Attachment | | | | Rock Spring Plaza–First Set of Rogs for IWA.pdf | 12/21/2020 | Rock Spring Plaza–First Set of Rogs for IWA.pdf | Withheld | Attorney Work Product; Attorney-Client Communication | Attachments to counsel communications concerning discovery requests and counterclaims in present litigation. |
| 391 | 0649001.00168484 | | Attachment | | | | Rock Spring Plaza–First Set of Rogs for RSD.pdf | 12/21/2020 | Rock Spring Plaza–First Set of Rogs for RSD.pdf | Withheld | Attorney Work Product; Attorney-Client Communication | Attachments to counsel communications concerning discovery requests and counterclaims in present litigation. |
| 392 | 0649001.00168658 | | email | smith, preston [preston.smith@ap                                      dporter.com] | roger frankel [rfrankel@frankelwur on.com] | bosch, william m. [william.bosch@ap                                      dporter.com];camaila r, charles a. [ccamaila@wiliwartl.scom] | RE: GSA deadline | 12/21/2020 | 000000007DAF8CAAFE21A3 488B6F3D3E8F056F43842C 2100.MSG | Withheld | Attorney Work Product; Attorney-Client Communication | Counsel communications concerning discovery requests in present litigation. |
| 393 | 0649001.00168547 | | Attachment | | | | Rock Spring Plaza–First Set of RFPs for RSD_US_169052007_ 11.DOCX | 1/1/1900 | RSD_US_169052007_1100 CX | Withheld | Attorney Work Product; Attorney-Client Communication | Attachment to email containing draft of discovery requests. |

A168

**Rock Spring Plaza II - Privilege Log**

| Item # | Control Number | Bates Range | Document Type | Email From | Email To | Email CC | Email Subject | Document Date | File Name | Privilege | Privilege Type | Privilege Description |
|---|---|---|---|---|---|---|---|---|---|---|---|---|
| 394 | 0649001:00165548 | | Attachment | | | | Rock Spring Plaza—First Set of RFPs for IWA_US_169052798_41).DOCX | 1/1/1900 CX | Rock Spring Plaza—First Set of RFPs for IWA_US_169052798_41).DOCX | Withheld | Attorney Work Product; Attorney-Client Communication | Attachment to email containing draft of discovery requests. |
| 395 | 0649001:00165545 | | Attachment | | | | Rock Spring Plaza—First Set of Rogs for IWA_US_169037600_31)DOCX | 1/1/1900 CX | Rock Spring Plaza—First Set of Rogs for IWA_US_169037600_31)DOCX | Withheld | Attorney Work Product; Attorney-Client Communication | Attachment to email containing draft of discovery requests. |
| 396 | 0649001:00165538 | | Attachment | | | | Rock Spring Plaza—First Set of Rogs for RSD_US_169052740_21)DOCX | 1/1/1900 CX | Rock Spring Plaza—First Set of Rogs for RSD_US_169052740_21)DOCX | Withheld | Attorney Work Product; Attorney-Client Communication | Attachment to email containing draft of discovery requests. |
| 397 | 0649001:00165539 | | Attachment | | | | Rock Spring Plaza—MTD Hearing Transcript 12-1-20_US_169052913_1).PDF | 12/1/2020 | Rock Spring Plaza—MTD Hearing Transcript 12-1-20_US_169052913_1).PDF | Withheld | Attorney Work Product; Attorney-Client Communication | Attachment to email containing draft of discovery requests. |
| 398 | 0649001:00165595 | | email | roger frankel [rfrankel@frankelwar on.com] | camailer, charles a. [ccamailer@wilksaxtl dporter.com];smith, preston [preston.smith@arnol dporter.com] | bosch, william m. [william.bosch@arnol dporter.com];roger frankel [rfrankel@frankelwar on.com] | RE: GSA deadline | 12/1/2020 | 000000007DAF8CAAFE21A3 4B8B6F3D3EBF05E6F430A5B 2100.MSG | Withheld | Attorney Work Product; Attorney-Client Communication | Counsel communications concerning discovery requests in present litigation. |
| 399 | 0649001:00168037 | | email | bosch, william m. [william.bosch@arnol dporter.com] | camailer, charles a. [ccamailer@wilksaxtl dporter.com];roger frankel [rfrankel@frankelwar on.com] | smith, preston [preston.smith@arnol dporter.com] | RSD and IWA Answers and (D)I Counterclaims | 12/15/2020 | 000000007DAF8CAAFE21A3 4B8B6F3D3EBF05EF6412A01 2100.MSG | Withheld | Attorney Work Product; Attorney-Client Communication | Counsel communications concerning discovery requests and counterclaims in present litigation. |
| 400 | 0649001:00165045 | | Attachment | | | | Rock Spring Plaza—RSD Answer and Counterclaim 12-15-20.pdf | 12/15/2020 | Rock Spring Plaza—RSD Answer and Counterclaim 12-15-20.pdf | Withheld | Attorney Work Product; Attorney-Client Communication | Attachment to counsel communications concerning discovery requests and counterclaims in present litigation. |
| 401 | 0649001:00168029 | | Attachment | | | | Rock Spring Plaza—IWA Answer and Counterclaim 12-15-20.pdf | 12/15/2020 | Rock Spring Plaza—IWA Answer and Counterclaim 12-15-20.pdf | Withheld | Attorney Work Product; Attorney-Client Communication | Attachment to counsel communications concerning discovery requests and counterclaims in present litigation. |
| 402 | 0649001:00165982 | Camailer004167 - Camailer004169 | email | bosch, william m. [william.bosch@arnol dporter.com] | camailer, charles a. [ccamailer@wilksaxtl dporter.com];roger frankel [rfrankel@frankelwar on.com] | roger frankel [rfrankel@frankelwar on.com] | Re: Investors Warranty of America, LLC's Discovery Requests | 12/23/2020 | 000000007DAF8CAAFE21A3 4B8B6F3D3EBF05EF43E69F 2000.MSG | Withheld | Attorney Work Product; Attorney-Client Communication | Counsel communications concerning discovery requests in present litigation. |
| 403 | 0649001:00165967 | Camailer004165 - Camailer004166 | email | roger frankel [rfrankel@frankelwar on.com] | bosch, william m. [william.bosch@arnol dporter.com];camailer, charles a. [ccamailer@wilksaxtl dporter.com] | smith, preston [preston.smith@arnol dporter.com] | RE: Investors Warranty of America, LLC's Discovery Requests | 12/23/2020 | 000000007DAF8CAAFE21A3 4B8B6F3D3EBF05EF43A4AA0 2000.MSG | Withheld | Attorney Work Product; Attorney-Client Communication | Counsel communications concerning discovery requests in present litigation reducted. |
| 404 | 0649001:00167009 | Camailer004160 - Camailer004164 | email | bosch, william m. [william.bosch@arnol dporter.com] | camailer, charles a. [ccamailer@wilksaxtl dporter.com];roger frankel [rfrankel@frankelwar on.com] | smith, preston [preston.smith@arnol dporter.com] | FW: Investors Warranty of America, LLC's Discovery Requests | 12/23/2020 | 000000007DAF8CAAFE21A3 4B8B6F3D3EBF05EF4304A4 2000.MSG | Withheld | Attorney Work Product; Attorney-Client Communication | Counsel communications concerning discovery requests in present litigation redacted. |
| 405 | 0649001:00167008 | Camailer004153 - Camailer004154 | email | bosch, william m. [william.bosch@arnol dporter.com] | camailer, charles a. [ccamailer@wilksaxtl dporter.com];roger frankel [rfrankel@frankelwar on.com] | smith, preston [preston.smith@arnol dporter.com] | FW: Investors Warranty of America, LLC's Discovery Requests | 12/23/2020 | 000000007DAF8CAAFE21A3 4B8B6F3D3EBF05EF432A4A 2000.MSG | Withheld | Attorney Work Product; Attorney-Client Communication | Counsel communications concerning subpoena in present litigation redacted. |

A169

Rock Spring Plaza II - Privilege Log

| Item # | Control Number | Bates Range | Document Type | Email From | Email To | Email CC | Email Subject | Document Date | File Name | Privilege | Privilege Type | Privilege Description |
|---|---|---|---|---|---|---|---|---|---|---|---|---|
| 406 | 0649001.00167040 | | email | smith, preston [preston.sm ith@nel dporter.com] | zamailler, charles a. [ccamailer@wilkesarti s.com] juger frankel [jfrankel@frankelm an.com] | booch, william m. [william.booch@nel dporter.com] | Rock Springs Plaza II Update December 23, 2020 | 12/23/2020 | 0000000070AF8CA4EF21A3 4B8B6F3D3E8F056F43E4A6 2000 MSG | Withheld | Attorney Work Product; Attorney-Client Communication | Counsel communications concerning discovery requests in present litigation. |
| 407 | 0649001.00167051 | | Attachment | | | | 2020-12-22 Investors Warranty of America, LLC_s First Continuing Interrogatories to Rock Springs Plaza II, LLC(0732635dcx).] PDF | 12/23/2020 | 2020-12-22 Investors Warranty of America, LLC_s First Continuing Interrogatories to Rock Springs Plaza II, | Withheld | Attorney Work Product; Attorney-Client Communication | Attachment to counsel communications concerning discovery requests in present litigation. |
| 408 | 0649001.00167054 | | Attachment | | | | 2020-12-22 Investors Warranty of America, LLC_s First Requests for Production of Documents to Rock Springs Plaza II, LLC(0732636).docx.] PDF | 12/23/2020 | 2020-12-22 Investors Warranty of America, LLC_s First Requests for Production of Documents to Rock Springs Plaza II, | Withheld | Attorney Work Product; Attorney-Client Communication | Attachment to counsel communications concerning discovery requests in present litigation. |
| 409 | 0649001.00166234 | | email | roger frankel [jfrankel@frankelman on.com] | zamailler, charles a. [ccamailer@wilkesarti s.com] smith, preston [preston.sm ith@nel dporter.com] | booch, william m. [william.booch@nel dporter.com] | Re: Rock Spring Drive - Answers to Counterclaims (Due 1/3) | 1/3/2021 | 0000000070AF8CA4EF21A3 4B8B6F3D3E8F056F43DC458 2000 MSG | Withheld | Attorney Work Product; Attorney-Client Communication | Counsel communications concerning answers to counterclaims prepared for present litigation. |
| 410 | 0649001.00166261 | | email | booch, william m. [william.booch@nel dporter.com] | zamailler, charles a. [ccamailer@wilkesarti s.com] smith, preston [preston.sm ith@nel dporter.com] | smith, preston [preston.sm ith@nel dporter.com] | Rock Spring Drive - Motion to Strike Affirmative Defenses | 1/3/2021 | 0000000070AF8CA4EF21A3 4B8B6F3D3E8F056F43A459 2000 MSG | Withheld | Attorney Work Product; Attorney-Client Communication | Counsel communications concerning motion to strike affirmative defenses prepared for present litigation. |
| 411 | 0649001.00166366 | | Attachment | | | | Rock Spring Plaza-Motion to Strike_Mem in Support_JA&P Draft 1.31.docx | 1/3/2021 | Rock Spring Plaza-Motion to Strike_Mem in Support_JA&P Draft 1.31.docx | Withheld | Attorney Work Product; Attorney-Client Communication | Attachment to email containing draft of MTS, in support of motion to strike affirmative defenses |
| 412 | 0649001.00166357 | | Attachment | | | | Rock Spring Plaza-Cover Motion to Strike_JA&P Draft 1.31.docx | 1/3/2021 | Rock Spring Plaza-Cover Motion to Strike 1.3 | Withheld | Attorney Work Product; Attorney-Client Communication | Attachment to email containing draft of motion to strike affirmative defenses |
| 413 | 0649001.00166358 | | Attachment | | | | Rock Spring Plaza-Proposed Order_Motion to Strike_JA&P Draft 1.31.docx | 1/3/2021 | Rock Spring Plaza-Proposed Order_Motion to Strike_JA&P Draft 1.31.docx | Withheld | Attorney Work Product; Attorney-Client Communication | Attachment to email containing draft of order to motion to strike affirmative defenses |
| 414 | 0649001.00166272 | | email | booch, william m. [william.booch@nel dporter.com] | zamailler, charles a. [ccamailer@wilkesarti asqu.re jfrankel@frankelm an.com] | smith, preston [preston.sm ith@nel dporter.com] | Rock Spring Plaza-Answer to IWA Counterclaim (Due 1/3) | 1/3/2021 | 0000000070AF8CA4EF21A3 4B8B6F3D3E8F056F43DC459 2000 MSG | Withheld | Attorney Work Product; Attorney-Client Communication | Counsel communications concerning answers to counterclaims prepared for present litigation. |
| 415 | 0649001.00166270 | | Attachment | | | | Rock Spring Plaza-Answer to IWA Counterclaim_JA&P Draft 1.31.docx | 1/3/2021 | Rock Spring Plaza-Answer to IWA Counterclaim_JA&P Draft 1.31.docx | Withheld | Attorney Work Product; Attorney-Client Communication | Attachment to email containing draft of answer to counterclaims |
| 416 | 0649001.00166259 | | Attachment | | | | Rock Spring Plaza-Answer to RSD Counterclaim_JA&P Draft 1.31.docx | 1/3/2021 | Rock Spring Plaza-Answer to RSD Counterclaim_JA&P Draft 1.31.docx | Withheld | Attorney Work Product; Attorney-Client Communication | Attachment to email containing draft of answer to the counterclaim |

A170

Rock Spring Plaza II - Privilege Log

| Item # | Control Number | Bates Range | Document Type | Email From | Email To | Email CC | Email Subject | Document Date | File Name | Privilege | Privilege Type | Privilege Description |
|---|---|---|---|---|---|---|---|---|---|---|---|---|
| 417 | 064-9001-00166262 | | Attachment | | | | Rock Spring Plaza-RSD Answer and Counterclaim 12-15-20.pdf | 1/4/2021 | Rock Spring Plaza-RSD Answer and Counterclaim 12-15-20.pdf | Withheld | Attorney Work Product; Attorney-Client Communication | Attachment to email containing draft of answer to counterclaim. |
| 418 | 064-9001-00166278 | | Attachment | | | | Rock Spring Plaza-IWA Answer and Counterclaim 12-15-20.pdf | 1/4/2021 | Rock Spring Plaza-IWA Answer and Counterclaim 12-15-20.pdf | Withheld | Attorney Work Product; Attorney-Client Communication | Attachment to email containing draft of answer to counterclaim. |
| 419 | 064-9001-00166109 | | Email | bosch, william m. [william.bosch@arnol dporter.com] | gemiller, charles a. [ccamiller@wilsonelli s.com];krieger frankel esquire [dfrankel@frankelwyr on.com] | smith, preston [preston.smith@arnol dporter.com] | RE: Rock Spring-Drive Answers to Counterclaims (Due 1/4) | 1/4/2021 | 00000000007DAF8CAAFE21A3 4888BF3D3E8F056F438A6C2000.MSG | Withheld | Attorney Work Product; Attorney-Client Communication | Counsel communications concerning answers to counterclaims prepared for present litigation. |
| 420 | 064-9001-00166407 | | Attachment | | | | Rock Spring Plaza-Answer to IWA Counterclaim_JUS_16314063_1.DOCX | 1/4/2021 | Rock Spring Plaza-Answer to IWA Counterclaim_JUS_16314063_1.DOCX | Withheld | Attorney Work Product; Attorney-Client Communication | Attachment to email containing draft of answer to counterclaim. |
| 421 | 064-9001-00166407 | | Attachment | | | | Rock Spring Plaza-Answer to RSD Counterclaim_JUS_16314062_1.DOCX | 1/4/2021 | Rock Spring Plaza-Answer to RSD Counterclaim_JUS_16314062_1.DOCX | Withheld | Attorney Work Product; Attorney-Client Communication | Attachment to email containing draft of answer to counterclaim. |
| 422 | 064-9001-00166088 | | Attachment | | | | Rock Spring Plaza-IWA Answer and Counterclaim 12-15-20.pdf | 1/4/2021 | Rock Spring Plaza-IWA Answer and Counterclaim 12-15-20.pdf | Withheld | Attorney Work Product; Attorney-Client Communication | Attachment to email containing draft of answer to counterclaim. |
| 423 | 064-9001-00166092 | | Attachment | | | | Rock Spring Plaza-RSD Answer and Counterclaim 12-15-20.pdf | 1/4/2021 | Rock Spring Plaza-RSD Answer and Counterclaim 12-15-20.pdf | Withheld | Attorney Work Product; Attorney-Client Communication | Attachment to email containing draft of answer to counterclaim. |
| 424 | 064-9001-00165989 | | Email | smith, preston [preston.smith@arnol dporter.com] | gemiller, charles a. [ccamiller@wilsonelli s.com];krieger frankel esquire [dfrankel@frankelwyr on.com] | bosch, william m. [william.bosch@arnol dporter.com] | RE: Rock Spring-Drive Answers to Counterclaims (Due 1/4) | 1/6/2021 | 00000000007DAF8CAAFE21A3 4888BF3D3E8F056F438A6C2000.MSG | Withheld | Attorney Work Product; Attorney-Client Communication | Counsel communications concerning answers to counterclaims prepared for present litigation. |
| 425 | 064-9001-00165983 | | Attachment | | | | Rock Spring Plaza-RSP Motion to Strike Aff Deft 1-5-21.pdf | 1/6/2021 | Rock Spring Plaza-RSP Motion to Strike Aff Deft 1-5-21.pdf | Withheld | Attorney Work Product; Attorney-Client Communication | Attachments to counsel communications concerning answers to counterclaims prepared for present litigation. |
| 426 | 064-9001-00165015 | | Attachment | | | | Rock Spring Plaza-RSP Answer to RSD CC 1-5-21.pdf | 1/6/2021 | Rock Spring Plaza-RSP Answer to RSD CC 1-5-21.pdf | Withheld | Attorney Work Product; Attorney-Client Communication | Attachments to counsel communications concerning answers to counterclaims prepared for present litigation. |
| 427 | 064-9001-00166046 | | Attachment | | | | Rock Spring Plaza-RSP Answer to IWA CC 1-5-21.pdf | 1/6/2021 | Rock Spring Plaza-RSP Answer to IWA CC 1-5-21.pdf | Withheld | Attorney Work Product; Attorney-Client Communication | Attachments to counsel communications concerning answers to counterclaims prepared for present litigation. |

A171

Rock Spring Plaza II - Privilege Log

| Item # | Control Number | Bates Range | Document Type | Email From | Email To | Email CC | Email Subject | Document Date | File Name | Privilege | Privilege Type | Privilege Description |
|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | 0049001 00165765 | | email | cheryl koch [cheryl@rsplimited.com] | kanailer, charles a. [ccanailer@wilkesartic.com] | preston smith [preston.smith@arnolddorter.com] franse roger [rfranse@frankewyron.com] | RE: Rock Springs Drive - Answers to Counterclaims (Due 1/6) | 1/7/2021 | 0000000704F8CAAFE21A3 4888E5F3D1E8F056F43E428 2001.MSG | Withheld | Attorney Work Product, Attorney-Client Communication | Counsel communications concerning Answers to counterclaims in present litigation. |
| | 0049001 00165759 | | email | cheryl koch [cheryl@rsplimited.com] | kanailer, charles a. [ccanailer@wilkesartic.com] | | RE: Rock Springs Drive - Answers to Counterclaims (Due 1/6) | 1/7/2021 | 0000000704F8CAAFE21A3 4888E5F3D1E8F056F43042A 2001.MSG | Withheld | Attorney Work Product, Attorney-Client Communication | Counsel communications concerning Answers for present litigation. |
| | 0049001 00165756 | | email | roger franse [rfranse@frankewyron.com] | smith, preston [preston.smith@arnolddorter.com] | bosch, william m. [william.bosch@arnolddorter.com] kanailer, charles a. [ccanailer@wilkesartic.com] | Re: Rock Springs Drive - Answers to Counterclaims (Due 1/6) | 1/7/2021 | 0000000704F8CAAFE21A3 4888E5F3D1E8F056F43A42B 2001.MSG | Withheld | Attorney Work Product, Attorney-Client Communication | Counsel communications concerning Answers to counterclaims prepared for present litigation. |
| | 0049001 00021600 | Camaliver0001426 - Camaliver0001426 | Attachment | | | | | 12/14/2020 | 6560 ROCK SPRING LOI 5-29-18.pdf | Withheld | Attorney-Client Communication | Attachment to communication from counsel to client providing legal advice. Attachment contains mark up writings from counsel to client. |
| | 0049001 00056639 | Camaliver0002655 - Camaliver0002655 | Attachment | | | | | 12/14/2020 | Office Space Leasing RFP 04 12 10.pdf | Withheld | Attorney-Client Communication | Attachment to communication from counsel to client providing legal advice. Attachment contains mark up writings from counsel to client. |
| | 0049001 00056649 | Camaliver0002653 - Camaliver0002663 | Attachment | | | | | 12/14/2020 | Office Space Leasing RFP 04 12 10.pdf | Withheld | Attorney-Client Communication | Attachment to communication from counsel to client providing legal advice. Attachment contains mark up writings from counsel to client. |
| | 0049001 00005267 | Camaliver0003310 | Attachment | | | | | 12/14/2020 | BOIGO04.PDF | Redacted | Attorney-Client Communication | Communication from counsel providing advice regarding contract. |

A172

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF MARYLAND**

| | |
|---|---|
| ROCK SPRING PLAZA II, LLC<br><br>        Plaintiff,<br><br>    v.<br><br>INVESTORS WARRANTY OF AMERICA,<br>LLC, et al.,<br>        Defendants. | Civil Action No. 8:20-cv-01502-PJM |

**PLAINTIFF ROCK SPRING PLAZA II, LLC'S REPLY IN SUPPORT OF ITS MOTION TO COMPEL AGAINST DEFENDANT INVESTORS WARRANTY OF AMERICA, LLC AND REQUEST FOR *IN CAMERA* REVIEW**

Plaintiff Rock Spring Plaza II, LLC ("Plaintiff") submits this reply in support of its Motion to Compel Against Defendant Investors Warranty of America, LLC ("IWA") and Request for *In Camera* Review ("Motion and Request").[1]

In its Opposition to Plaintiff's Motion and Request ("Opposition"), IWA cherry-picks just a subset of the evidence of its fraudulent conveyance to present fragments as meritless, but this briefing on a discovery motion is not a substitute for trial. If the Court would like to see a proffer of some of the evidence Plaintiff already has developed on fraud, even before Plaintiff has had an opportunity to depose a single IWA witness (given Defendants' coordinated effort to avoid discovery on the core issues in this case), Plaintiff would be delighted to do so. What that evidence shows is far more than an "exit strategy" concocted by IWA to walk away from its financial obligations of the Ground Lease. It is a coordinated effort implemented by principals at

---

[1]  Plaintiff notes that IWA filed its opposition to Plaintiff's motion as Exhibit B to IWA's Motion for Protective Order (Dkt. 226-2), before Plaintiff's motion was fully briefed, without including Plaintiff's motion, and without submitting to the meet and confer required under Local Rule 104.7 and 104.8(b). It is evident that any further efforts to compromise on this privilege issue would be futile, and the issue is now ripe for submission to the Court.

IWA with the assistance of in-house counsel Gregg Snitker at AEGON[2] (IWA's affiliate, and the real entity making decisions in connection with IWA's acquisition of the Ground Lease and subsequent creation of RSD to attempt the fraudulent conveyance of the Ground Lease) and at least one external lawyer, James B. Sowka of Seyfarth Shaw LLP (the law firm that is representing IWA in this litigation).

With the involvement of these attorneys, IWA and Algon Group ("Algon"), the outside entity that contributed no capital to RSD and now holds a 2% interest in the entity that purports to hold the Ground Lease, agreed that no one from Algon (or RSD) could even communicate with Plaintiff (without IWA's prior written consent) about the terms of the Ground Lease or about RSD until the statute of limitations on a fraudulent conveyance claim had run. There is no legitimate business purpose for this agreement other than to put IWA in a position where it could cause RSD to walk away from the Ground Lease after three years of funding ground rent — which, not coincidentally, is all the capital that IWA contractually committed to RSD. Until written discovery forced Defendants to produce some of this documentation, Plaintiff could only suspect the real purpose behind IWA's formation of RSD and its purported assignment of the Ground Lease to that sham entity. Now Plaintiff knows and the Court will soon enough see the absurdity of Defendants' continued posturing and deflection. Through deposition testimony, including the testimony of the lawyers who helped concoct IWA's "exit strategy," Plaintiff intends to prove Count II of its Second Amended Complaint — should that be necessary to secure adequate relief in this action.

---

[2]  It is unclear which AEGON entity Mr. Snitker works for, and Plaintiff's efforts to have IWA counsel explain the corporate structure have been rebuffed.

A174

The documents IWA is improperly withholding go to the heart of this case, and, accordingly, the Court should grant Plaintiff's Motion and Request.

## I.    Argument

### A.    Taken Together, the Facts Offer Ample Evidence for the Court to Exercise its Discretion to Conduct *In Camera* Review

IWA bends over backwards to deny the obvious — that the facts as a whole point to fraud — and in doing so misconstrues both the law governing application of the crime-fraud exception and the facts uncovered to date.

While the court in *United Bank v. Buckingham* found that the specific badges of fraud presented in the case were insufficient, it did not rule that badges of fraud, categorically, cannot amount to prima facie showing of wrongful intent. 301 F. Supp. 3d 547, 557 (2018). Instead, *Buckingham* clearly instructs, "It is the court's duty to consider **all of the circumstances** in determining whether a sufficient showing of intent has been made" *Id.* (emphasis added).

IWA ignores the legal standard and pages of factual evidence presented by Plaintiff. Motion and Request, at 5-9. The circumstances, and Plaintiff's evidence, are not limited to the fact that "IWA owned an underperforming asset and sought legal advice to evaluate its options to dispose of it." Opposition, at 9. This underperforming asset had long-term financial obligations and despite *already holding it, and already attempting and failing to sell it to a bona fide purchaser,* IWA formed a new joint venture and committed to fund it only long enough to get past the statute of limitations for a fraudulent conveyance claim. IWA sought legal advice to "dispose of it" fraudulently under the guise of a legitimate assignment. IWA also tried to cover its tracks by deciding not to record the deed reflecting the purported Assignment (*see* Exhibit O to Motion and Request) and by preventing a bid for a sublease because it would have required IWA to disclose its ownership interests in Defendant Rock Springs Drive, LLC ("RSD") (*see*

3

A175

Exhibit P to Motion and Request). As Plaintiff highlighted, *Buckingham* also noted that "[a] failure to disclose…comfortably fits within the definition of misrepresentation, dishonesty, and deception." 301 F. Supp. 3d at 557 (internal citation and quotations omitted).

### B.   IWA's Emails Indicate it Engaged Counsel in Furtherance of Fraud

Although IWA's piecemeal analysis of the facts misses the mark, even more puzzling is IWA's attempt to dismiss emails discussing the Ground Lease as "unrelated to the Assignment or any other issue in this litigation." Opposition, at 10.

One email establishes that IWA had concluded prior to the purported assignment to RSD that the Ground Lease was "worthless" and that it needed an "exit strategy" to "get it off the books" and that it had "engaged outside counsel to explore an exit which would stop the monthly losses **and any future liability**." Exhibit H to Motion and Request (emphasis added). IWA does not refute that the email is about the Ground Lease.  Instead, it argues "[t]here is no link" to the Assignment because IWA had no plan to assign the Ground Lease at the time of the email and no "plan contemplated in the email was carried out." Opposition, at 12.

Again, IWA impermissibly presents the evidence in a vacuum. Regardless of when IWA and its outside counsel devised the specific plan, the email indicates there was *a* plan to "walk away from the [Ground Lease]" (Ex. H to Motion and Request) in place and this plan was ultimately carried out with a sham assignment to RSD. Prior to devising the plan to dump the Ground Lease through a purported Assignment, IWA was aware of the "need to be mindful of defending against the fraudulent transfer claim during negotiations [with a potential buyer]." Exhibit I to Motion and Request.  And this is just a snippet of the evidence Plaintiff has developed, but it is very telling as to IWA's motivation behind the formation of RSD and the purported assignment of the Ground Lease to RSD – (i) which is indisputably funded solely and entirely by IWA, (ii) in which IWA retained a 98% membership interest, (iii) which IWA (and

4

A176

RSD) agreed would hide IWA's involvement until the statute of limitations had run on a

fraudulent conveyance claim (which they anticipated), and (iv) which IWA could recapture

merely by paying Algon a nominal fee of approximately one hour of its lawyer's billing rate.

Further, IWA does not refute that James Sowka was the "outside counsel" referred to in

the email cited in Plaintiff's motion but oddly argues that Mr. Sowka is not linked to the

formation of RSD because "he was IWA's attorney not RSD's attorney." Opposition, at 14. But

it was IWA that entered into an agreement with Algon to create RSD, in which IWA would

retain a 98% interest (but would not disclose that fact to Plaintiff until the statute of limitations

had run on a fraudulent conveyance claim), to get the Ground Lease "off the books" and *engaged

Mr. Sowka to do it*. If the Court needs additional evidence of Mr. Sowka's direct involvement in

IWA's formation of RSD, with Algon, as part of its exit strategy, yet another email (which IWA

designated Confidential, and therefore will be submitted under seal) shows that Mr. Sowka

marked up the "6560 Rock Springs Term Sheet (IWA-Algon)" on or about May 12, 2017, which

he forwarded to AEGON attorney Mr. Snitker. *See* Exhibit A. This email confirms that Mr.

Sowka participated in negotiating that term sheet directly with Algon and its outside counsel, not

only by reviewing and revising drafts but also by engaging in direct negotiations with Algon by

telephone.[3]

---

[3] Drafts of that term sheet were produced by IWA in discovery. The term sheet was followed just a few weeks later by drafts of the RSD Operating Agreement that implemented IWA's exit strategy. Plaintiff is unable to discern which drafts (if any) that were produced reflect Mr. Sowka's edits. All of these term sheets for the IWA-Algon exit strategy were designated "Attorneys' Eyes Only" by IWA (improperly, as they do not contain competitively sensitive information). One example is submitted herewith under seal, Exhibit B. The substance and duration of the "gag order" in paragraph 6 of the term sheet is further **direct** evidence of IWA's fraudulent intent.

A177

**C.    IWA Cannot Invoke the Common Interest Privilege While Using Corporate Separateness as a Liability Shield**

Plaintiff has implored IWA to explain the corporate relationship between and among IWA and Transamerica Corporation ("Transamerica"), AEGON NV, and AEGON USA Realty, but IWA has not been forthcoming. Rather than conceding anything (as IWA contends), Plaintiff has now dismissed Transamerica without prejudice pursuant to a tolling agreement to streamline the case (ECF No. 227). The Court should not be surprised to learn that despite its protestations to the contrary, Transamerica's fingerprints are all over IWA's exit strategy. For example, two more documents that IWA improperly designated as Attorney's Eyes Only, provided under seal as Exhibit C and Exhibit D, show the involvement of Neal Hutchinson **of Transamerica**. Clearly Transamerica was pressing for more information about the "exit strategy" for which IWA engaged outside counsel (*i.e.*, **Mr. Sowka of Seyfarth**), and expected their strategy could entail "litigation outflows."[4]

However, IWA continues to play fast and loose with corporate separateness by relying on corporate *relatedness* to use privilege as a shield but at the same time insisting that Transamerica, AEGON, IWA, and RSD are completely separate when considering the financial responsibility under the Ground Lease. IWA cannot have it both ways. To invoke the common interest privilege, "common ownership or control" or jointly anticipating litigation is not enough: IWA and RSD must share "an identical, and not merely similar, legal interest." *Neuberger Berman Real Est. Income Fund, Inc. v. Lola Brown Trust No. 1B*, 230 F.R.D. 398, 416 (D. Md. 2005). They do not. As IWA has pointed out, if IWA's exit strategy fails, millions of dollars in ground rent and continuing maintenance obligations return as a liability to its books. On the other

---

[4]  Throughout the relevant time period, Neal Hutchinson held and continues to hold himself out as being an employee of Transamerica.  *See* https://www.linkedin.com/in/neal-hutchinson-6433b036.

hand, RSD — if it is *separate* from its owners, IWA and Longshore Ventures LLC

("Longshore") — loses nothing, and Longshore presumably has the same opportunity to find "a

possible solution" for the Ground Lease whether IWA or RSD remains financially obligated to

Plaintiff.

### D.    Plaintiff is Entitled to IWA's Relevant Post-Complaint Documents

Prior to initiating this action, Plaintiff *suspected* fraud when IWA's purported assignee

RSD failed to respond in good faith over the course of almost three years. However, Plaintiff did

not formally *allege* fraud until it filed the Complaint in June 2020. Even if it were true, which it

is not, that Plaintiff does not log post-Complaint documents – it is still irrelevant. Plaintiff's

counsel was retained to advise and assist in challenging the Assignment, not to perpetrate a fraud

through a sham assignment of the Ground Lease. Furthermore, any defense IWA may be

asserting relating to the *borrower's default on a loan in 2011* relates to a different party (i.e., a

joint venture with Lockheed Martin), is too late, and does not pertain to any advice of litigation

counsel in this case.

IWA's conduct, by contrast, after the lawsuit was filed is directly germane to Defendants'

efforts to conceal the fraud between and among the members of RSD (*i.e.*, IWA and Algon) and

is highly relevant to Plaintiff's claims that the formation of RSD was a sham and was intended to

permit IWA to execute its "exit strategy" to avoid further financial losses by walking away from

the Ground Lease. Plaintiff is entitled to obtain discovery regarding the execution of this "exit

strategy," and Defendants should not be permitted to withhold highly pertinent discovery merely

because it pertains to documents that were created after this lawsuit was filed.

## II.    Conclusion

For the foregoing reasons, Plaintiff respectfully requests that the Court grant Plaintiff's

Motion and Request and order the relief detailed in it.

A179

Dated:  January 25, 2023

Respectfully submitted,

*/s/ William M. Bosch*
William M. Bosch
Alvin Dunn
Katherine Danial
Pillsbury Winthrop Shaw Pittman LLP
1200 Seventeenth Street NW
Washington, DC 20036
Telephone: 202-663-8000
Facsimile: 202-663-8007
william.bosch@pillsburylaw.com
alvin.dunn@pillsburylaw.com
katherine.danial@pillsburylaw.com

*Attorneys for Plaintiff Rock Spring Plaza II, LLC*

**<u>CERTIFICATE OF SERVICE</u>**

I hereby certify that on this 25th day of January, 2023, I caused a copy of the foregoing

Plaintiff Rock Spring Plaza II, LLC's Reply in Support of Its Motion to Compel Against

Defendant Investors Warranty of America, LLC and Request for *In Camera* Review to be served

via email on all counsel of record.

Respectfully submitted,

*/s/ Katherine T. Danial*

9

A181

## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF MARYLAND

| | |
|---|---|
| **Rock Spring Plaza II, LLC,** | |
| **Plaintiff,** | |
| **v.** | **Civil Action No. 8:20-cv-01502-PJM** |
| **Investors Warranty of America, LLC, et al.,** | |
| **Defendants.** | |

### DEFENDANT INVESTORS WARRANTY OF AMERICA, LLC'S MOTION TO STRIKE PLAINTIFF ROCK SPRING PLAZA II, LLC'S MOTION TO COMPEL AGAINST IWA AND REQUEST FOR IN CAMERA REVIEW FOR FAILURE TO COMPLY WITH LOCAL RULE 104.8

Defendant Investors Warranty of America, LLC ("IWA") hereby submits this Motion to Strike (the "Motion to Strike") asking the Court to strike Plaintiff Rock Spring Plaza II, LLC's Motion to Compel Against IWA and Request for *In Camera* Review (the "Motion to Compel") (Dkt. 238), stating as follows:

Plaintiff served IWA with its Motion to Compel on December 23, 2022.  Plaintiff and IWA did not meet and confer regarding most of the matters raised in the Motion to Compel before it was served as required under Fed. R. Civ. P. 37.  Nevertheless, IWA filed an Opposition to the Motion to Compel on January 13, 2022.  On January 25, 2023, IWA was served Plaintiff's Reply at the same time it was filed with the Court. Local Rule 104.8(b) requires the moving party to have a meet and confer with the nonmoving party after serving the reply brief and before the motion is filed on the Court's docket. Contrary to this rule, Plaintiff never proposed or attempted to hold a meet and confer before filing the Motion to Compel was filed, and Plaintiff did not seek IWA's consent to file the Motion to Compel without a meet and

confer.  Local Rule 104.8 does not make a meet and confer an option – it is a requirement.
Under Local Rule 104.8 the Court may not consider a motion to compel until a meet and confer
between the parties occurs.

Here, had there been a meet and confer between Plaintiff and IWA to discuss this
discovery dispute, the issues, even if not all resolved, would likely have been narrowed.  Further
still, IWA has not had a chance to address the purported evidence of fraud, raised for the first
time in the Reply, that Plaintiff contends it has with respect to the crime-fraud exception.
Plaintiff is now seeking to make a proffer to the Court based on evidence that IWA has never
seen, had a chance to brief, or had opportunity to address during a meet and confer.

For the reasons set forth herein, IWA respectfully requests that the Court grant this
Motion to Strike.

Dated: February 1, 2023                             Respectfully Submitted,

                                                    SEYFARTH SHAW LLP

                                                    By: /s/Rebecca Davis
                                                    Rebecca A. Davis, Bar No. 23183
                                                    rdavis@seyfarth.com
                                                    1075 Peachtree Street NE Suite 2500
                                                    Atlanta, Georgia 30309
                                                    Telephone: 404-885-1500
                                                    Facsimile: 404-892-7056

                                                    *Counsel for Defendant Investors
                                                    Warranty of America, LLC*

## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF MARYLAND

| | |
|---|---|
| **Rock Spring Plaza II, LLC,** | |
| **Plaintiff,** | |
| **v.** | **Civil Action No. 8:20-cv-01502-PJM** |
| **Investors Warranty of America, LLC, et al.,** | |
| **Defendants.** | |

### CERTIFICATE OF SERVICE

I hereby certify that on February 1, 2023, I electronically filed the foregoing **DEFENDANT INVESTORS WARRANTY OF AMERICA, LLC'S MOTION TO STRIKE PLAINTIFF ROCK SPRING PLAZA II, LLC'S MOTION TO COMPEL AGAINST IWA AND REQUEST FOR IN CAMERA REVIEW** via the Court's CM/ECF system, which will automatically provide electronic service copies to all counsel of record.

| | |
|---|---|
| William Bosch, Esq.<br>Alvin Dunn, Esq.<br>Katherine Danial, Esq.<br>Pillsbury Winthrop Shaw Pittman LLP<br>1200 Seventeenth Street, N.W.<br>Washington, DC  20036<br>william.bosch@pillsburylaw.com<br>alvin.dunn@pillsburylaw.com<br>katherine.danial@pillsburylaw.com<br><br>*Attorney for Rock Springs Plaza II, LLC* | Sara E. Kropf, Esq.<br>Kropf Moseley PLLC<br>1100 H Street NW, Suite 1220<br>Washington, DC  20005<br>sara@kmlawfirm.com<br><br>*Counsel for Defendant Rock Springs Drive LLC* |

Dated: February 1, 2023

By: */s/ Rebecca A. Davis*
Rebecca A. Davis, Bar No. 23183

3

A184

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF MARYLAND**

| | |
|---|---|
| ROCK SPRING PLAZA II, LLC | |
| Plaintiff, | |
| v. | Civil Action No. 20-cv-01502-PJM |
| INVESTORS WARRANTY OF AMERICA, LLC, et al., | |
| Defendants. | |

**PLAINTIFF ROCK SPRING PLAZA II, LLC's**
**OPPOSITION TO IWA'S MOTION TO STRIKE**

IWA has filed a motion to strike [ECF 253] that simply turns reality on its head.

IWA notes that "Local Rule 104.8(b) requires the moving party to have a meet and confer with the nonmoving party after serving the reply brief and before the motion is filed on the Court's docket." ECF 253 at 1. But IWA itself pre-empted this requirement; on January 16, 2023, IWA **_filed_** as exhibits to its motion for a protective order two IWA opposition briefs to Plaintiffs' motions to compel that Plaintiff had only served – and had not filed – due to Local Rule 104.8's requirements.[1]  ECF 226.  IWA did not at the same time file Plaintiffs' motions, so on January 16, 2023, the Court had only IWA's arguments – not Plaintiff's.

On January 25, 2023, after serving its reply brief in support of its Motion to Compel Against IWA and Request for *In Camera* Review, Plaintiff filed its motion, IWA's opposition,

---

[1]  This is not the first time IWA disregarded Local Rule 104.8(b).  On November 10, 2022, IWA filed its motion to compel without having the final meet and confer required by Local Rule 104.8(b) or even acknowledging that the requirement exists.  ECF 182.  In response, Plaintiff notified IWA of its error.

and its reply, with a notice explaining that ***IWA*** had already ***filed*** its opposition and that, as such, the final meet and confer required by Local Rule 104.8(b) would be futile.  ECF 238.

IWA did not reach out to Plaintiff to ask that Plaintiff withdraw it motion or have a meet and confer.  Instead, IWA filed its motion to strike.

IWA's motion to strike is not about Local Rule 104.8 but about IWA's concern that the Court will realize that IWA has used its attorneys to plan and execute a fraudulent conveyance – such that the crime-fraud exception requires that IWA produce documents it has improperly withheld as privileged.  IWA in its motion to strike makes the baffling assertion that Plaintiff proffered to the Court in its reply brief "evidence that IWA has never seen."  ECF 253 at 2.  Yet each of the four exhibits Plaintiff attached to its reply brief is a document ***IWA*** produced.  No evidence Plaintiff submitted or referred to in its reply brief was new to IWA.

The evidence that Plaintiff cited in its reply brief for the most part concerned the role of James Sowka, a partner in the Seyfarth law firm (which is representing IWA in this case), who IWA in its opposition brief falsely stated had nothing to do with the assignment from IWA to RSD.  Pl.'s Reply at 5.  The documents produced by IWA in this case already establish that to be a misrepresentation.  Even without access to the documents IWA is improperly withholding as privileged, Plaintiff has established its right to obtain full discovery regarding the planning and execution of the assignment – including the involvement of Mr. Sowka.[2]

---

[2]  Surprisingly, IWA's counsel has refused to accept service of Plaintiff's deposition subpoena to Mr. Sowka, who is – again – a partner in the Seyfarth law firm, IWA's counsel in this case.  *See* Exhibit A, January 19, 2023, Email between R. Davis and W. Bosch.

IWA asserts that if the parties had conducted a meet and confer, "the issues, even if not all resolved, would likely have been narrowed."  ECF 253 at 2.  If IWA is prepared to compromise on its opposition to Plaintiff's motion and now will agree to produce documents withheld on privilege and purported "common interest" grounds, which seems unlikely based on its opposition, Plaintiff certainly is prepared to listen.  Plaintiff has reached out to IWA to schedule a meet and confer and will supplement its Motion to Compel Against IWA and Request for In Camera Review [ECF 238] if the parties are able to resolve or narrow the issues raised in that motion.  Tellingly, however, IWA does not give any indication ***how*** the issues would be narrowed, which suggests that a meet and confer would be futile.  Regardless, the substance of Plaintiff's motion has now been fully briefed, and any unresolved issues will be presented at the hearing on February 16, 2023, in accordance with this Court's Order.  Jan. 27, 2023, Memo. Order at 1, ECF 251.

Accordingly, the Court should deny IWA's motion to strike.

Dated:  February 2, 2023

Respectfully submitted,

 */s/ William M. Bosch*
William M. Bosch
Alvin Dunn
Katherine Danial
Pillsbury Winthrop Shaw Pittman LLP
1200 Seventeenth Street NW
Washington, DC 20036
Telephone:  202-663-8000
Facsimile:  202-663-8007
william.bosch@pillsburylaw.com
alvin.dunn@pillsburylaw.com
katherine.danial@pillsburylaw.com

*Attorneys for Plaintiff Rock Spring Plaza II*

3

A187

**<u>CERTIFICATE OF SERVICE</u>**

I hereby certify that on this 2nd day of February, 2023, I caused a copy of the foregoing

Plaintiff's Opposition to Defendant Investors Warranty of America, LLC's Motion to Strike to

be served ECF email on all counsel of record.


_/s/ Katherine T. Danial_

# Exhibit A

| | |
|---|---|
| **From:** | Davis, Rebecca |
| **To:** | Bosch, William M. |
| **Cc:** | Dunn, Alvin; Danial, Katherine T. |
| **Subject:** | RE: Greg Dryden |
| **Date:** | Thursday, January 19, 2023 1:11:21 PM |
| **Attachments:** | image001.png |
| | image002.png |
| | image003.png |


Bill,

I will look into your questions below.

In the meantime, regarding the subpoenas for Nick Koluch and James Sowka, please note that we will not be accepting be accepting service of those subpoenas.

Thank you,
Rebecca

**Rebecca Davis** | Partner | Seyfarth Shaw LLP
1075 Peachtree Street, N.E. | Suite 2500 | Atlanta, Georgia 30309-3958
Direct: +1-404-888-1874 | Fax: +1-404-724-1574
rdavis@seyfarth.com | www.seyfarth.com



CONFIDENTIALITY WARNING: This email may contain privileged or confidential information and is for the sole use of the intended recipient(s). Any unauthorized use or disclosure of this communication is prohibited. If you believe that you have received this email in error, please notify the sender immediately and delete it from your system.

**From:** Bosch, William M. <william.bosch@pillsburylaw.com>
**Sent:** Thursday, January 19, 2023 11:02 AM
**To:** Davis, Rebecca <RDavis@seyfarth.com>
**Cc:** Dunn, Alvin <alvin.dunn@pillsburylaw.com>; Danial, Katherine T. <katherine.danial@pillsburylaw.com>
**Subject:** Greg Dryden

Rebecca –

Good morning. During our call yesterday I asked whether Greg Dryden is still employed by Aegon and, if so, whether we'd need to serve him with a subpoena. You indicated that you are unfamiliar with Mr. Dryden and would check. Mr. Dryden was identified in the RSD Operating Agreement as the "Independent Member" appointed by the IWA Member. My understanding is that he has since left Aegon and was replaced in his capacity as Independent Member. Would you kindly advise who

the Independent Members are/have been and whether any of them remain employed by
Aegon/IWA?  And would you kindly provide dates of availability for their deposition?

Thank you in advance -- Bill

**William M. Bosch** | Partner
Pillsbury Winthrop Shaw Pittman LLP
1200 Seventeenth Street NW | Washington, DC 20036-3006
t +1.202.663.9392 | m +1.703.407.9448
william.bosch@pillsburylaw.com | website bio [pillsburylaw.com]

AUSTIN   BEIJING   HONG KONG   HOUSTON   LONDON   LOS ANGELES
MIAMI   NASHVILLE   NEW YORK   NORTHERN VIRGINIA   PALM BEACH
SACRAMENTO   SAN DIEGO   SAN FRANCISCO   SHANGHAI
SILICON VALLEY   TAIPEI   TOKYO   WASHINGTON, DC



[pillsburylaw.com]        [gravel2gavel.com]

The contents of this message, together with any attachments, are intended only for the use of the
individual or entity to which they are addressed and may contain information that is legally
privileged, confidential and exempt from disclosure. If you are not the intended recipient, you are
hereby notified that any dissemination, distribution, or copying of this message, or any attachment,
is strictly prohibited. If you have received this message in error, please notify the original sender or
the Pillsbury Winthrop Shaw Pittman Service Desk at Tel: 800-477-0770, Option 1, immediately by
telephone and delete this message, along with any attachments, from your computer. Nothing in
this message may be construed as a digital or electronic signature of any employee of Pillsbury
Winthrop Shaw Pittman. Thank you.

**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND
(Greenbelt Division)**

| | |
|---|---|
| ROCK SPRING PLAZA II, LLC | |
| **Plaintiff,** | |
| **v.** | Civil Action No. 20-cv-01502-PJM |
| INVESTORS WARRANTY OF AMERICA, LLC, et al., | |
| **Defendants.** | |

**<u>DEFENDANT INVESTORS WARRANTY OF AMERICA, LLC'S REPLY IN SUPPORT
OF ITS MOTION TO STRIKE PLAINTIFF ROCK SPRING PLAZA II, LLC'S
MOTION TO COMPEL AGAINST IWA AND REQUEST FOR IN CAMERA REVIEW
FOR FAILURE TO COMPLY WITH LOCAL RULE 104.8</u>**

As noted in IWA's Motion to Strike, and also in its Opposition to Plaintiff's Motion to

Compel (ECF 238-2), Plaintiff did not ***ever*** seek to meet and confer about its request for the

Court to conduct an *in camera* review of any privileged documents, including as to James

Sowka, prior to serving it Motion to Compel.[1]  Moreover, Plaintiff did not seek to meet and

confer with IWA about its attempt to obtain communications withheld under the common

interest privilege, whether by virtue of IWA's interest in RSD (RSD is a joint venture between

IWA and Longshore Ventures, LLC, and RSD is represented by the firm of Berger Singerman),

or its accountants.  Plaintiff's Motion to Compel violates Fed. R. Civ. P. 37 ("The motion must

include a certification that the movant has in good faith conferred or attempted to confer with the

person or party failing to make disclosure or discovery in an effort to obtain it without court

action."), and Local Rule 104.7 (requiring counsel to confer and provide a certificate detailing

---

[1] Plaintiff notes that IWA did, in error, file its motion to compel (ECF 182) without conducting a
meet and confer.  IWA conceded the potential error and filed a notice advising the Court of this
concern (ECF 183), and IWA filed a corrected certificate after a meet and confer was held.  The
difference here is that Plaintiff admits in was aware of the requirements and acknowledged in its
actual filing that it chose not to comply with the rules.

the "(a) the date, time, and place of the discovery conference, and the names of all persons

participating therein, or (b) counsel's attempts to hold such a conference without success; and (c)

an itemization of the issues requiring resolution by the Court.") and Local Rule 104.8

("[C]ounsel must hold the conference required by L.R. 104.7 after serving upon one another all

of the documents relating to the motion to compel.")  These conferences are not optional, they

are requirements.  *See Madison v. Harford County, MD*, 268 F.R.D. 563 (D. Md. 2010)

(denying motion to compel and affirming meet and confer requirements.)

Plaintiff contends that it was not obligated to comply with the discovery rules based on

IWA's Motion for Protective Order, but there is not support for that position.  First, IWA's

Motion for Protective Order was filed on an emergency basis because Plaintiff elected to proceed

with a deposition of IWA's corporate witness knowing that it had served on IWA a motion to

compel seeking confidential and proprietary business information and a separate motion to

compel hundreds of privileged documents.  The attached email unequivocally confirms that

Plaintiff intended to proceed with depositions knowing that its decision to do so was creating

inefficiencies and that the Court needed to rule on these motions.  *See* correspondence between

counsel dated January 23, 2022, attached hereto as Ex. A.

Second, although IWA filed its Response in Opposition to the Motion to Compel with the

Motion for Protective Order, IWA had not yet received Plaintiff's Reply.  Indeed, it is at the very

least the false statements made in the Reply that IWA would have wanted to address had IWA

been given the opportunity.

    **I.**    **Plaintiff Offers a Proffer of Its Evidence of Fraud, Yet has Refused to Identify That Evidence in Its Discovery Responses.**

Plaintiff continues to take a "do as I say, not as I do" approach in this litigation.  Plaintiff

offers in its Reply to the Motion to Compel to make a proffer to the Court of its evidence of

fraud.  Had the parties conducted a meet and confer, IWA would have reminded Plaintiff that

there are two Interrogatories that IWA served on December 12, 2020 (more than two years ago),

to which Plaintiff still has not responded, which specifically ask Plaintiff for its evidence to

support the (i) allegation that the Assignment was a fraudulent conveyance and (ii) contention

that IWA committed any fraudulent act or made any misrepresentation.[2]  (See Pl.'s Resp. and

Obj. to IWA.'s First Continuing Interrog, attached hereto as Ex. B.)  As recently as September

19, 2022, and prior to IWA's own Motion to Compel filed against Plaintiff on November 10,

2022 (ECF-182), Plaintiff doubled-down on its refusal to provide a response to IWA's inquiries

as to what evidence Plaintiff is relying on.  See Pl.'s Supp. Resp. and Objections to IWA's First

Continuing Interrog., attached hereto as Exhibit C.  Accordingly, Plaintiff's offer to now make a

proffer to the Court in the Reply is highly inappropriate considering it has refused for two years

respond to discovery requests seeking that same information.[3]

---

[2] Plaintiff has generally refused to respond to the discovery that both IWA and RSD have served.
The following two interrogatories, to which Plaintiff has refused to respond, are on point with
the proffer that Plaintiff stated in its Reply it is willing to make to the Court:

> Interrogatory No. 1:  Describe all facts and circumstances (including the identity of
> Persons with knowledge of such facts and documents relating to such facts) that
> support Your contention that the Assignment is a fraudulent conveyance.

> Interrogatory No. 2: If You contend that IWA committed any fraudulent act or
> made any misrepresentation, describe all facts and circumstances (including the
> identity of Persons with knowledge of such facts and documents relating to such
> facts) that support Your contention, and include with specificity when the alleged
> fraudulent act or misrepresentation occurred and when You learned of the
> fraudulent act or misrepresentation.

[3] Plaintiff has further stated that it has evidence of "deception, dishonesty, and misrepresentation
already gathered through discovery," yet refuses to explain what that evidence is. Mot. to
Compel at 8 (ECF-238-1)  Similar broad statements have been made in other motions, without
any supporting evidence.

As to the new documents that were attached to the Reply, if Plaintiff's evidence of fraud is what is contained in Plaintiff's Exhibits A – D, those documents do not demonstrate fraud, and already have been addressed on multiple occasions. Indeed, these emails do not even relate to the Assignment. If anything, they confirm only that IWA was seeking legal advice to make sure it complied with the Ground Lease, which IWA has done. Plaintiff acknowledges that there has been no default.

No evidence offed by Plaintiff supports its claims to privileged documents, and they do not demonstrate Mr. Sowka furthered or conceived of some fraudulent scheme. It is obvious Mr. Sowka was IWA's outside counsel, and on behalf of IWA, and he was involved in the negotiation of the Operating Agreement. IWA's privilege log contains numerous documents that relate to Mr. Sowka's negotiation of the Operating Agreement, and IWA has produced a number of documents that relate to Mr. Sowka. But Mr. Sowka was not RSD's attorney and did not form RSD. As detailed in the Declaration of David Feltman, filed with this Court almost a year-and-a-half ago, Mr. Feltman came up with the idea of the joint venture in February 2017, after Plaintiff's "smoking gun" emails, dated July 8, 2016, and January 5, 2017, were sent. These dates confirm that these emails were in no way related to the Assignment. And further relevant to those dates, the email referencing "outside counsel" is dated July 8, 2016, and the privilege log confirms that Mr. Sowka was not contacted by IWA until months later. Plaintiff claims IWA bends over backwards to avoid the obvious as to James Sowka – but the exact documents relied on by Plaintiff prove its allegations are wrong.

Notwithstanding the above, in no way does IWA suggest that it has engaged in any fraudulent activity. Adopting Plaintiff's own words, the Property was worthless, and IWA wanted to find a solution for it. IWA is not obligated to merely exist for the purpose of paying

rent to Plaintiff for the remaining 67 years on the Ground Lease. No company is obligated to sit on its hands and do nothing about an underperforming asset for decades. That certainly was not the position Plaintiff itself took – Charles Camalier, who has been held out as the primary decision maker for Plaintiff, himself caused the original tenant to default on the Ground Lease and a $30 million loan, which spurred the instant litigation. IWA has taken a different path than Plaintiff, and instead of defaulting, complied with the Ground Lease and has established a structure that has been beneficial to everyone, including Plaintiff since Plaintiff is still getting paid. Consequentially, IWA's privileged communications, and its proprietary and confidential records, including as it relates to IWA's accounting records, assets, liabilities and investments are not relevant.

## II.     Plaintiff's Reply Now Claims the Attorney at Issue to an In-House Attorney

Plaintiff served a Motion to Compel arguing that it was entitled to an *in camera* review of privileged documents because fraud was perpetrated by a Seyfarth Shaw attorney, James Sowka. Then Plaintiff filed a Reply stating for the first time that the fraud was conducted by in-house attorney, Gregg Snitker and other attorneys. Again, this was never addressed in any meet and confer required under Fed. R. Civ. P. 37 or the Local Rules. Since this argument was not raised in the opening brief, the Court should not consider it. *EEOC v. Freeman*, 961 F. Supp. 2d 783, 801 (D. Md. 2013) , *aff'd in part sub nom. E.E.O.C. v. Freeman*, 778 F.3d 463 (4th Cir. 2015) (noting the "ordinary rule in federal courts ... that an argument raised for the first time in a reply brief or memorandum will not be considered' " to "avoid prejudice to the party who is not afforded a chance to rebut a new argument"), (*quoting Clawson v. FedEx Ground Package Sys., Inc.*, 451 F.Supp.2d 731, 734–35 (D. Md. 2006)).

A196

II      **The Reply Addresses Questions About Corporate Structure That Could Have Been Addressed**

As noted in Plaintiff's Motion to Strike, Plaintiff raises for the first time that it has "implored IWA to explain the corporate relationship between and among IWA and Transamerica, AEGON NV, and AEGON USA Realty." Reply at 6. That statement is false. IWA would have liked to have fully addressed this before having to brief a Motion to Strike and before this type of inflammatory (and false) information was put before the Court, again.

A.  **Plaintiff knows exactly who AEGON USA Realty**

**As a starting point, Plaintiff knows exactly who AURA is, and Plaintiff has been communicating with AURA about this Property for approximately 20 years, going back at least to 2006.** AURA serviced the Camalier Family's loan and was the asset manager. It is also a company under the AEGON NV umbrella, which includes Transamerica Life Insurance Company and Transamerica Corporation. Just examples of that evidence and communications that confirm Plaintiff's understanding of AURA include: Declaration of David Feltman ("Feltman Decl.") dated October 11, 2021, at 1, 5 (attached hereto as Exhibit D); letter dated May 31, 2006, from AURA, copying Rock Spring Properties' General Counsel, regarding loan commitment on behalf of lender, which confirms funds are to be paid to an AURA account (attached hereto as Exhibit E); email dated June 1, 2006, to Rock Spring Properties and Charles Camalier, regarding loan closing and directing payments to AURA managed account (attached hereto as Exhibit F); letter from Mr. Camalier to AURA and Transamerica Life Insurance Company c/o AURA, dated September 22, 2011, regarding Camalier Family defaults of Ground Lease and Loan Agreements (attached hereto as Exhibit G); letter dated August 31, 2017 from David Feltman of AURA to Mr. Camalier regarding the Assignment (attached hereto as Exhibit H); email correspondence dated January 30, 2018, from Jim Cahill to Mr. Camalier, discussing

A197

Algon and AURA (which further confirms that Plaintiff knew who RSD was and its purpose, yet was still sending letters saying RSD was withholding that information.) (attached hereto as Exhibit I); email correspondence from February 6, 2018, from Steve Silberberg to Mr. Camalier, forwarding v-cards for AURA and Longshore contacts, again confirming knowledge of AURA and RSD (attached hereto as Exhibit J).

Plaintiff also communicated directly with AURA in connection with other properties, including 6610 Rockledge, which was the property at issue in a prior case, *Rockledge Associates LLC v. Transamerica Life Insurance Company*, 8:16-cv-00710-PWG. Indeed, William Bosch, Plaintiff's current counsel, deposed Gregory Voss, formerly of AURA, in the *Rockledge* case and questioned him extensively on the services that AURA provides regarding lending, special services and asset management, and its relationship with AEGON NV and its subsidiary companies. *See* Deposition Transact Excerpts of Gregory Voss dated June 14, 2016, attached hereto as Ex. K. As evidenced by the attached exhibits, Plaintiff has ***always*** known what AURA does and its function, and even has known AURA's relationship to AEGON NV. Indeed, since March 2020, IWA has produced thousands of documents received or sent by AURA.

### B. Plaintiff knows exactly who AEGON NV is

As part of its initial disclosures, IWA disclosed that IWA's sole member is "RCC North America LLC. RCC North America LLC is a subsidiary of AEGON N.V., ticker symbol AEG, which is a publicly traded holding company with its headquarters in The Hague, the Netherlands." (ECF-18) On December 15, 2020, Plaintiff served discovery requests, which included interrogatories asking for information as to the corporate relationship between IWA, AEGON N.V., Transamerica, and RCC. IWA responded on January 1, 2021, that:

> IWA states that IWA [was] an Iowa domestic corporation that was originally formed on December 12, 1980. Investors Warranty of America, Inc. was converted

to Investors Warranty of America, LLC on September 21, 2015. The member of IWA is RCC North America LLC. RCC North America LLC is a Delaware limited liability company formed on February 26, 2002. RCC North America LLC's sole member is Transamerica Corporation. Transamerica Corporation is a Delaware corporation formed on August 15, 2003. The sole shareholder of Transamerica Corporation is the AEGON Trust, which is located in The Hague, The Netherlands. The AEGON Trust is owned by AEGON International B.V., which is owned by AEGON N.V., both of The Hague, The Netherlands. AEGON N.V. is a publicly traded entity.

*See* excerpt of IWA's Resp. to Interrog. 1-4, attached hereto as Exhibit L.

### C.    Plaintiff Knows Who Transamerica Is

Plaintiff also knows who Transamerica is and that it plays it is not relevant to the Assignment.[4]

As noted in the Motion to Strike, had a meet and confer taken place, there could have potentially been a narrowing of the issues.[5] This relates to the question of Plaintiff's ongoing and disingenuous statements that Transamerica is relevant to this litigation. Transamerica responded to discovery requests served by Plaintiff. Responses to those requests, served on September 30, 2022, confirmed that Transamerica does not have any documents relevant to the Property, or any information relevant to this litigation. It is IWA's understanding that Transamerica had additional conversations about any employees, and further advised Plaintiff that it had no knowledge of the Assignment.

---

[4] As the Court may recall, similar allegations were made with respect to "basic information," and Defendants filed a Motion for Clarification showing that the information has been provided at least a year before. (ECF-155) Plaintiff then claimed it still did not have information that it was entitled to receive, and Defendants were ordered to file with the Court responses to information requests. In their responses, Defendants confirmed that they had already provided all the information requestion. (ECF-158) Plaintiff also has claimed in its Complaint that it did not have information about RSD and continued to send letters to RSD demanding information it had already possessed, in some instances for years.

[5] IWA notes that the Feltman Declaration mistakenly asserts that Neal Hutchinson, an accountant that services IWA, was mistakenly identified as a Transamerica employee. Mr. Hutchinson is actually a employed by Transamerica Life Insurance Company ("TLIC") employee. Certain employees of TLIC are loaned to IWA and AURA to serve as their accountants.

Yet Plaintiff continues to try to muddy the waters by suggesting that IWA uses Transamerica accountants.  Plaintiff further claims IWA has not been forthcoming about who these "Transamerica" individuals are.  But Plaintiff has never asked IWA, and it was IWA's belief that Transamerica had already addressed this question.  IWA attempted to meet and confer on this single issue after the Motion to Strike was filed, and asked that Plaintiff produce even a single discovery request or even an email asking about these same individuals that it claims are at the heart of its purported fraud evidence.   Plaintiff has not done so.  IWA has requested that if Transamerica would like information about these individual that it make an actual inquiry, rather than filing a motion suggesting IWA is withholding information.

### III.    Conclusion

For the reasons set forth herein, IWA respectfully requests that the Court grant IWA's Motion to Strike and strike Plaintiff's Motion to Compel Against IWA and Request for In Camera Review.

Dated:  February 13, 2023             Respectfully Submitted,

SEYFARTH SHAW LLP


By: */s/ Rebecca A. Davis*
    Rebecca A. Davis, Bar No. 23183
    rdavis@seyfarth.com
    1075 Peachtree Street NE, Suite 2500
    Atlanta, Georgia 30309
    Telephone: (404) 885-1500
    Facsimile: (404) 892-7056

*Counsel for Defendant Investors Warranty   of America, LLC*

A200

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF MARYLAND**

| | |
|---|---|
| **Rock Spring Plaza II, LLC,** | |
| **Plaintiff,** | |
| **v.** | **Civil Action No. 8:20-cv-01502-PJM** |
| **Investors Warranty of America, LLC, et al.,** | |
| **Defendants.** | |

**CERTIFICATE OF SERVICE**

I hereby certify that on February 13, 2023, I electronically filed the foregoing **DEFENDANT INVESTORS WARRANTY OF AMERICA, LLC'S REPLY IN SUPPORT OF ITS MOTION TO STRIKE PLAINTIFF ROCK SPRING PLAZA II, LLC'S MOTION TO COMPEL AGAINST IWA AND REQUEST FOR IN CAMERA REVIEW FOR FAILURE TO COMPLY WITH LOCAL RULE 104.8** via the Court's CM/ECF system, which will automatically provide electronic service copies to all counsel of record.

| | |
|---|---|
| William Bosch, Esq. | Sara E. Kropf, Esq. |
| Alvin Dunn, Esq. | Kropf Moseley PLLC |
| Katherine Danial, Esq. | 1100 H Street NW, Suite 1220 |
| Pillsbury Winthrop Shaw Pittman LLP | Washington, DC 20005 |
| 1200 Seventeenth Street, N.W. | sara@kmlawfirm.com |
| Washington, DC 20036 | |
| william.bosch@pillsburylaw.com | *Counsel for Defendant Rock Springs* |
| alvin.dunn@pillsburylaw.com | *Drive LLC* |
| katherine.danial@pillsburylaw.com | |
| | |
| *Attorney for Rock Springs Plaza II, LLC* | |

Dated: February 13, 2023

By: */s/ Rebecca A. Davis*
Rebecca A. Davis, Bar No. 23183

A201

# EXHIBIT A

**Davis, Rebecca**

| | |
|---|---|
| **From:** | Davis, Rebecca |
| **Sent:** | Monday, January 23, 2023 5:57 PM |
| **To:** | 'Bosch, William M.'; 'Sara Kropf' |
| **Cc:** | Dunn, Alvin; Danial, Katherine T.; Steinberg, Nicole |
| **Subject:** | RE: Rock Spring Plaza v. IWA - extension of time |

Hi Bill,

Your email is not accurate, and I think you are confusing the calls we had. We did not, as you suggest in your email, discuss me sending you advance information as to certain individuals during our meet and confer on January 9, 2023. What we discussed were the objections to the topics, and what you were trying to discern from those topics. As you are aware, prior to the meet and confer I did not even know which Aegon or Transamerica you were referring to in the topics (e.g., Transamerica Corporation v. Transamerica Life Insurance Company). Also, as you know, many of my objections were taken from Plaintiff's objections to the same terms and phrases when IWA served its discovery. Nevertheless, there was no discussion whatsoever about me providing any information about individuals in advance of the deposition on January 9, and I am not sure where that would have come up during that discussion. I can't speak to whether I would have declined to share that information, as you allege, because I was never asked for it. During that call I did raise that I would be filing something with the Court - probably a motion for protective order, and that I would communicate with Alvin about how I would be doing that since I was not sure whether I would need to meet and confer, or what the process would be under Local Rule 104.8. You even followed up via email on January 11, outlining what you viewed as outstanding from that meet and confer: "I'm just touching base after our meet and confer on Monday to see when you'll be able to get back to me about: (i) the clarifications we discussed; (ii) to confirm who will be presented on behalf of IWA; (iii) on which topics; and (iv) where/when."

I did indeed send an email to both you and Alvin on January 12, 2022, stating that I would be supplementing objections, and that I was proceeding with a motion for protective order and wanted to confirm you did not "have any concerns with me including the statement as to the parties' agreement to file the motion directly with the Court." You responded on that same day stating that the motion was supposed to be filed directly with the Court, and that regardless, you had no objections. At no time, from January 9-12, 2022, was there discussion of any potential deponents, or individuals with any specific knowledge, other than IWA's 30(b)(6) witness. Also, there was no discussion as to interrogatories or other written discovery.

Three days after the January 9, 2022, meet and confer, on January 12, 2022, Plaintiff served a subpoena for Nick Koluch and James Sowka, and a "Notice" for Tom Schechter's and Francis Minchella's depositions. I have no idea why you would have selected these deponents, but your reference to the need for supplemental discovery as it relates to your selection makes no sense. The parties were advised over a year and a half ago through a declaration that Tom Schechter was deceased, and Francis Minchella retired in 2016. Mr. Schechter passed away in 2018, years before the documents were collected and produced. Also, you have never served any written discovery asking for this information - RSD on the other hand, did request that Plaintiff identify individuals with knowledge and Plaintiff refused to provide that information until September, 2022. So, there was never an obligation to serve supplemental responses to information you never requested (also, Mr. Schechter and Mr. Minchella, both were gone before 2020, regardless - so there was nothing to supplement regarding them anyway). Moreover, I have confirmed to you that Blaine Shaeffer is on the Management Committee - that was even recently provided in a declaration. He further explained that he reviewed RSD's supplemental productions and he has nothing new, additional, information to produce. There is no supplemental discovery whatsoever that would address the concerns you have raised. And again, IWA fully stands behind its response to its motion to compel. I further note that Plaintiff has still not completed even its original productions, much less its supplemental productions.

1

A203

With respect to the subpoenas to James Sowka and Nick Koluch, you state that I told you that I would not be accepting service of those subpoenas before I moved for a protective order. I am not sure it matters, but that is not accurate. Katherine emailed me subpoenas on Thursday, January 12, 2022, asking if I would accept service. Consistent with our email exchange that very same day, I drafted the motion for protective order and filed it on Monday, January 16, 2022, and then I advised you that I would not be accepting the subpoenas. You yourself are not accepting subpoenas for Rock Spring Properties, so I am not following your do as I say not as I do argument here.

During our call on January 18, 2023, per my email dated January 16, 2023, we were going to further discuss deposition topics. We ultimately did not. During that call, you asked me about Greg Dryden. As I was looking into Mr. Dryden, consistent with an email you sent me, I learned that he had resigned in fall 2022. I responded to your email and asked you if you would be willing to identify the members of Rock Spring Plaza II LLC. You did not even respond.

Your email answers my question as to your intention to move forward with deposition of Mr. Feltman on Feb. 3, 2023. We have served our objections to your topics, and those objections are proper.

Regards,

Rebecca

**From:** Bosch, William M. <william.bosch@pillsburylaw.com>
**Sent:** Monday, January 23, 2023 3:03 PM
**To:** Davis, Rebecca <RDavis@seyfarth.com>; 'Sara Kropf' <sara@kmlawfirm.com>
**Cc:** Dunn, Alvin <alvin.dunn@pillsburylaw.com>; Danial, Katherine T. <katherine.danial@pillsburylaw.com>; Steinberg, Nicole <nicole.steinberg@pillsburylaw.com>
**Subject:** RE: Rock Spring Plaza v. IWA - extension of time

---

**This Message Is From an External Sender**
This message came from outside your organization.

---

Rebecca –

During our meet and confer on January 9, 2023, in connection with Plaintiff's Rule 30b6 notice to IWA, we discussed your objections to several topics that pertain to the organization of IWA, including who in the Aegon-Transamerica-IWA corporate family is involved in making business decisions pertaining to IWA's continued investment in the Ground Lease (through RSD), who specifically in those entities is involved, and where they fall in decision-making hierarchy. I said that it would helpful if IWA would just tell us that, which we also could pursue by way of interrogatory, but you evidently have declined to share such information. We note that the identity of the IWA Member and the Independent Member appointed by IWA has shifted from time to time; we do not know who presently serves in those roles, in part because IWA has refused to supplement its discovery responses.

In that context, we were forced to issue discovery notices to several IWA witnesses without knowing whether they're still involved or even employed by IWA (or its affiliates). During our meet and confer on January 19, 2023, in connection with IWA's responses to RFAs, you advised the one deponent (Mr. Schefter) is deceased, and that another (Mr. Minchella) has long since retired. You also indicated that we would need to subpoena the other witnesses, including an attorney in your own law firm, before you confirmed that you intend to move for a protective order (which you had not yet filed at the time).

Our objective remains to complete discovery by the February 24, 2023 deadline, and to that end want to commence our depositions with a corporate representative for IWA in accordance with our Notice on February 3, 2023, which is the

2

date you indicated you would make Mr. Feltman available as IWA's corporate representative. We will reevaluate the other depositions once we have secured IWA's testimony, which obviously is the most germane to the issues the Court needs to address. I appreciate that there are several motions outstanding, most of which were filed by IWA, but none of these (with the exception of your motion for protective order) impact this deposition of IWA. We are moving forward with that deposition as scheduled, unless the Court orders us not to, and anticipate that you will have Mr. Feltman prepared to testify on all topics in the notice.

Regards -- Bill

**William M. Bosch** | Partner
Pillsbury Winthrop Shaw Pittman LLP
1200 Seventeenth Street NW | Washington, DC 20036-3006
t +1.202.663.9392 | m +1.703.407.9448
william.bosch@pillsburylaw.com | website bio [pillsburylaw.com]

AUSTIN  BEIJING  HONG KONG  HOUSTON  LONDON  LOS ANGELES
MIAMI  NASHVILLE  NEW YORK  NORTHERN VIRGINIA  PALM BEACH
SACRAMENTO  SAN DIEGO  SAN FRANCISCO  SHANGHAI
SILICON VALLEY  TAIPEI  TOKYO  WASHINGTON, DC

 [pillsburylaw.com]  [gravel2gavel.com]

**From:** Davis, Rebecca <RDavis@seyfarth.com>
**Sent:** Monday, January 23, 2023 1:14 PM
**To:** 'Sara Kropf' <sara@kmlawfirm.com>; Bosch, William M. <william.bosch@pillsburylaw.com>
**Cc:** Dunn, Alvin <alvin.dunn@pillsburylaw.com>; Danial, Katherine T. <katherine.danial@pillsburylaw.com>
**Subject:** RE: Rock Spring Plaza v. IWA - extension of time

Bill,

Regarding the deposition of Francis Minchella, do you still intend to proceed with that deposition next month? If so, I will work on confirming dates. I am not aware of any other depositions that are planned for any IWA witnesses at this time. As you know, we did not accept service of the subpoenas for Nick Koluch or James Sowka, and to my knowledge those have not been served. As for IWA's Feb. 3 deposition, there are a number of motions that are material to IWA's 30(b)(6) deposition that the Court has not decided. Nevertheless, I understand that Plaintiff wishes to proceed with that deposition, regardless of the outstanding motions and the potential risk of a second deposition. Please let me know if there is any change as to your position regarding the Feb. 3 deposition.

Thank you,
Rebecca

**Rebecca Davis** | Partner | Seyfarth Shaw LLP
1075 Peachtree Street, N.E. | Suite 2500 | Atlanta, Georgia 30309-3958
Direct: +1-404-888-1874 | Fax: +1-404-724-1574
rdavis@seyfarth.com | www.seyfarth.com



3

A205

CONFIDENTIALITY WARNING: This email may contain privileged or confidential information and is for the sole use of the intended recipient(s). Any unauthorized use or disclosure of this communication is prohibited. If you believe that you have received this email in error, please notify the sender immediately and delete it from your system.

**From:** Sara Kropf <sara@kmlawfirm.com>
**Sent:** Sunday, January 22, 2023 7:08 PM
**To:** Bosch, William M. <william.bosch@pillsburylaw.com>
**Cc:** Dunn, Alvin <alvin.dunn@pillsburylaw.com>; Danial, Katherine T. <katherine.danial@pillsburylaw.com>; Davis, Rebecca <RDavis@seyfarth.com>
**Subject:** RE: Rock Spring Plaza v. IWA - extension of time

Bill

We are going to file the motion tomorrow morning because we need to get our position in writing on the docket. We cannot wait any longer as we do not know when the Court will have time in its schedule for a hearing.

However, we can discuss a joint request for a status conference tomorrow if you would like. This is the first time you've suggested this idea even though we've exchanged several emails and had a call about our request for an extension of time. Before we agree to a joint filing asking for a conference, I would like to understand what you propose suggesting to the court. I'm available in the late afternoon for a call, as I have a court hearing midday.

Sara

**From:** Bosch, William M. <william.bosch@pillsburylaw.com>
**Sent:** Sunday, January 22, 2023 6:03 PM
**To:** Sara Kropf <sara@kmlawfirm.com>
**Cc:** Dunn, Alvin <alvin.dunn@pillsburylaw.com>; Danial, Katherine T. <katherine.danial@pillsburylaw.com>; Davis, Rebecca <RDavis@seyfarth.com>
**Subject:** Re: Rock Spring Plaza v. IWA - extension of time

Sara -

I think it makes more sense to request a status conference with the Court. I would consent to a joint request.

Regards - Bill

**William M. Bosch** | Partner
Pillsbury Winthrop Shaw Pittman LLP
1200 Seventeenth Street NW | Washington, DC 20036-3006
t +1.202.663.9392 | m +1.703.407.9448
william.bosch@pillsburylaw.com | website bio [pillsburylaw.com]

AUSTIN BEIJING HONG KONG HOUSTON LONDON LOS ANGELES
MIAMI NASHVILLE NEW YORK NORTHERN VIRGINIA PALM BEACH
SACRAMENTO SAN DIEGO SAN FRANCISCO SHANGHAI
SILICON VALLEY TAIPEI TOKYO WASHINGTON, DC

 [pillsburylaw.com]    Gravel2Gavel VISIT OUR BLOG >    [gravel2gavel.com]

4

On Jan 22, 2023, at 2:31 PM, Sara Kropf <sara@kmlawfirm.com> wrote:

Bill

To be clear, we intend to ask for a 90-day extension of the discovery deadline. We believe that would be the simpler course. The proposed schedule is below. We plan to file the motion tomorrow morning but if you change your mind about consenting to the extension of time, please let me know. The IWA corporate deposition would be delayed so those motions could be decided, but we can proceed with the RSD corporate depositions as scheduled.

| Event | Current Schedule | Proposed Schedule |
|---|---|---|
| Deadline for written discovery requests | Not in schedule | March 24, 2023 |
| Discovery deadline; parties submit status report | February 24, 2023 | May 25, 2023 |
| Dispositive motions deadline | April 25, 2023 | July 25, 2023 |
| Hearing on dispositive motions | To be set | To be set |

Regards,
Sara

**From:** Sara Kropf
**Sent:** Sunday, January 22, 2023 2:42 PM
**To:** Bosch, William M. <william.bosch@pillsburylaw.com>
**Cc:** Dunn, Alvin <alvin.dunn@pillsburylaw.com>; Danial, Katherine T. <katherine.danial@pillsburylaw.com>; Davis, Rebecca <RDavis@seyfarth.com>
**Subject:** RE: Rock Spring Plaza v. IWA - extension of time

Bill

Thank you for your response.

As I understand it, you have not consented to an extension of the discovery deadline. I'm not sure I understand the basis of your request to see an advance copy of a motion to which you do not consent.

Sara

**From:** Bosch, William M. <william.bosch@pillsburylaw.com>
**Sent:** Sunday, January 22, 2023 2:24 PM
**To:** Sara Kropf <sara@kmlawfirm.com>
**Cc:** Dunn, Alvin <alvin.dunn@pillsburylaw.com>; Danial, Katherine T. <katherine.danial@pillsburylaw.com>; Davis, Rebecca <RDavis@seyfarth.com>
**Subject:** Re: Rock Spring Plaza v. IWA - extension of time

Sara -

Thank you for your message. ███████████████████████████

5

A207

Will you be sharing a draft of the motion?

Regards - Bill


**William M. Bosch** | Partner
Pillsbury Winthrop Shaw Pittman LLP
1200 Seventeenth Street NW | Washington, DC 20036-3006
t +1.202.663.9392 | m +1.703.407.9448
william.bosch@pillsburylaw.com | website bio [pillsburylaw.com]
<image001.png>
[pillsburylaw.com]
<image002.png> [pillsburylaw.com]
[gravel2gavel.com]
<image003.png> [gravel2gavel.com]



On Jan 22, 2023, at 9:55 AM, Sara Kropf <sara@kmlawfirm.com> wrote:


Bill

We will plan to proceed with the deposition of Scott Decain on Jan 30 by Zoom and with
Diane Dantagnan on Feb. 13 by Zoom. However, if the court grants our motion for an
extension, then we will delay Mr. Decain's deposition until we receive all your
communications with him, including the ones that were improperly placed on your
privilege log. If you provide them by January 26, then we can proceed with his
deposition on the 30th, regardless of the Court's ruling.

We have not yet scheduled any of the brokers because I'm still working with JLL and
CBRE about them. If we can schedule them in mid-February, I will let you know. We may
proceed on them but only if plaintiff provides its communications with the brokers as
Katherine promised over a month ago. We discussed your position about waiver, but
you have not provided us with language about it. Rebecca has already served one
motion to compel for them, and we cannot proceed until you provide those documents.
I am sure you would not want to burden third parties with multiple depositions.

Assuming the Court grants our motion for an extension, we would likely delay Mr.
Camalier's Feb. 20 deposition until the motions to compel are decided and we have
obtained all documents that should have produced in discovery. I suggest we keep it on
the calendar until we know about the extension of time, however. If the motion is
denied, then we will move forward his individual deposition that day.

RSD's corporate depositions are confirmed for Feb. 23 and Feb. 24. Mr. Taylor's
deposition will need to be Friday, Feb 24 as he must leave by 5 pm on Thursday. So, Mr.
Rubin will be made available for his deposition on Feb. 23. These will be in Miami at
Berger Singerman's office. You said you would send revised notices that make clear that

6

A208

these depositions will be for their individual and Rule 30(b)6) capacity. I understand that you will not be taking Mr. Barron's deposition on either of those two days.

As for IWA's Feb. 3 deposition, one of the points of this motion is to delay that deposition until the Court decides the outstanding motions. So, it would not go forward on Feb. 3. As for other IWA depositions, I understand that Rebecca will address those matters with you.



We are working with our experts to get dates for you for their depositions. Mr. Bregman would prefer to have his deposition via Zoom.

A logistical question: Mr. Rubin and Mr. Taylor would like to participate in in-person depositions by phone if they are not able to travel for the deposition due to other commitments. Do you have any issue with this? We do not object if Mr. Camalier wishes to do the same thing.

I don't know what you mean by "query what your intentions are with written discovery…" If you'd like to clarify that statement, I can respond to it.

Sara


**From:** Bosch, William M. <william.bosch@pillsburylaw.com>
**Sent:** Friday, January 20, 2023 1:33 PM
**To:** Sara Kropf <sara@kmlawfirm.com>; Dunn, Alvin <alvin.dunn@pillsburylaw.com>; Danial, Katherine T. <katherine.danial@pillsburylaw.com>
**Cc:** Davis, Rebecca <RDavis@seyfarth.com>
**Subject:** RE: Rock Spring Plaza v. IWA - extension of time

Sara –

We discussed this in depth during our call yesterday afternoon. I explained that I would need to see the motion as we both acknowledged that there are some depositions that can and should go forward, whereas it may make sense to defer some (e.g., the depositions of Robert Barron and Jim Sowka) until (for example) the privilege issue gets resolved. You were going to discuss this with Rebecca; is it Defendants' expectation that we would hold off on deposing **any** IWA witnesses until the Court resolves the motions, most of which were filed by IWA and RSD and relate to non-party discovery about other properties? I'm hopeful we'll be able to consent, so please send me the specifics and I'll review it promptly. Query what your intentions are with respect to written discovery….

In advance of reviewing your draft, please let me confirm a few things:

1. You indicated that Defendants would like to proceed with their depositions of non-parties Scott DeCain of Bald Eagle Partners, Diane Dantagnan – formerly of Rock Spring Properties, Ltd. , and the three brokers.  I understand that Mr. DeCain's deposition is scheduled to proceed on the date set forth in the subpoena you issued, commencing at 2pm, by Zoom.  I also understand that you communicated with Ms. Dantagnan and arranged for her to appear on February 13th (also via Zoom), time to be confirmed.  You will keep us apprised of arrangements with the brokers; thus far you have communicated only with a lawyer for JLL.  I also understand that you will seek to serve subpoenas on Jody Rice and Cyndi Kunze, who also are former employees of a non-party.

2. We will be making Mr. Camalier available as Plaintiff's 30b6 witness and in his personal capacity on February 22, 2023.

3. We are proceeding with our Rule 30b6 deposition of IWA on February 3rd, and with our 30b6/individual depositions of RSD and Messrs. Taylor/Rubin on February 23 and 24.  You were going to get back to me with the cutoff time for Mr. Taylor, so we can send out revised notices putting the right RSD corporate representatives on the right dates.  We need dates of availability for the two expert witnesses.

4. 

Regards - Bill

**William M. Bosch** | Partner
Pillsbury Winthrop Shaw Pittman LLP
1200 Seventeenth Street NW | Washington, DC 20036-3006
t +1.202.663.9392 | m +1.703.407.9448
william.bosch@pillsburylaw.com | website bio [pillsburylaw.com]
<image001.png>
<image002.png> [pillsburylaw.com]
<image003.png> [gravel2gavel.com]

**From:** Sara Kropf <sara@kmlawfirm.com>
**Sent:** Friday, January 20, 2023 7:02 AM
**To:** Bosch, William M. <william.bosch@pillsburylaw.com>; Dunn, Alvin <alvin.dunn@pillsburylaw.com>; Danial, Katherine T. <katherine.danial@pillsburylaw.com>
**Cc:** Davis, Rebecca <RDavis@seyfarth.com>
**Subject:** Rock Spring Plaza v. IWA - extension of time

Bill

I write to seek your consent to a motion to extend time for discovery. We propose an extension of time until 60 days after the pending motions are decided. RSD will agree to have its Rule 30(b)(6) deposition on Feb. 23 and 24 as we discussed today. If you choose to go forward with those depositions without waiting for the motions to compel are decided, then RSD will object to a second deposition of Mr. Rubin or Mr. Taylor (either individually or as a corporate representative). We think the better course is to wait for the key depositions until after we have the written discovery.

As I understand it, IWA's recent motion for a protective order seeks to have its Rule 30(b)(6) deposition delayed until the motions to compel are decided and we would include that point in our motion as well.

Please let me know if you consent. Given that the Rule 30(b)(6) deposition for IWA is scheduled for February 3, we will file this as an emergency motion.

Thanks

Sara

Sara Kropf

Kropf Moseley PLLC

1100 H Street NW

Suite 1220

Washington, DC 20005

(202) 627-6900

sara@kmlawfirm.com

www.kmlawfirm.com [kmlawfirm.com]

9

A211

# EXHIBIT B

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF MARYLAND**
**GREENBELT DIVISION**

| | |
|---|---|
| ROCK SPRING PLAZA II, LLC,    ) | |
|    ) | |
| Plaintiff,    ) | |
|    ) | |
|    ) | Civil Action No. 8:20-cv-01502-PJM |
| v.    ) | |
|    ) | |
| INVESTORS WARRANTY OF AMERICA,    ) | |
| LLC, et al.,    ) | |
|    ) | |
| Defendants.    ) | |
|    ) | |

**PLAINTIFF'S RESPONSES AND OBJECTIONS TO DEFENDANT INVESTORS**
**WARRANTY OF AMERICA, LLC'S FIRST CONTINUING INTERROGATORIES**

Pursuant to Rules 26 and 33 of the Federal Rules of Civil Procedure and the Rules of this

Court, Plaintiff Rock Spring Plaza II, LLC ("Rock Spring Plaza" or "Plaintiff"), through its

undersigned counsel, hereby submits the following Responses and Objections to Defendant

Investors Warranty of America, LLC's ("IWA" or "Defendant") First Continuing Interrogatories

(the "Interrogatories"):

**OBJECTIONS TO DEFINITIONS AND INSTRUCTIONS**

1.      Plaintiff objects to Instruction Number 5, which asserts that the relevant time period

for the Requests is from January 1, 2005 until the date of this response, on the ground that it seeks

information not relevant to any party's claim or defense and is overbroad and not proportional to

the needs of the case.  Unless otherwise specified in response to a particular request for production,

Plaintiff will construe the requests to seek information and documents from the period from August

31, 2017 until the date of this response.

2.      Plaintiff objects to the definition of "Identify" at Instruction Number 8, subsection

(H) as overly broad, unduly burdensome, and disproportionate to the needs of the case.

A213

## GENERAL OBJECTIONS

The following General Objections apply to each Interrogatory and shall have the same force and effect as if fully set forth in each of Plaintiff's specific responses.

1.    Plaintiff provides these responses without conceding the relevancy, materiality, or admissibility of the subject matter of any Interrogatory, and without prejudice to its right to object to further discovery or to the admission of any evidence or proof concerning the subject matter of any Interrogatory, and also without prejudice to Plaintiff's right to rely on other facts and documents at trial.

2.    Plaintiff objects to each Interrogatory and the preceding Definitions and Instructions to the extent they purport to require Plaintiff to provide information broader than, inconsistent with, not authorized under, or not reasonable pursuant to the Federal Rules of Civil Procedure or any order of the Court.

3.    Plaintiff objects to each Interrogatory to the extent it calls for information not within Plaintiff's knowledge, possession, custody, or control.

4.    Plaintiff objects to each Interrogatory and the preceding Instructions and Definitions to the extent they seek information protected by the attorney-client privilege, the work product protection doctrine, and/or any other applicable privilege, rule, doctrine, or immunity, whether created by statute or common law. Any response shall not be deemed to be a waiver of any objection set forth in the response, and Plaintiff reserves the right to raise any applicable objections at any time. Similarly, any response will be made without waiving or intending to waive any privilege or other applicable protection or grounds for objection concerning the use or admissibility of any information provided in that response.

5.    Plaintiff objects to each Interrogatory to the extent it seeks a legal conclusion or requires Plaintiff to formulate a legal conclusion in order to fully respond.

2

A214

6.    Plaintiff objects to each Interrogatory to the extent the discovery sought is not relevant, overly broad, unduly burdensome, vexatious, oppressive, designed to harass or to annoy, redundant, cumulative, duplicative, vague, ambiguous, and/or disproportionate to the needs of the case, taking into account "the importance of the issues at stake in the action, the amount in controversy, the parties' relative access to relevant information, the parties' resources, the importance of the discovery in resolving the issues, and whether the burden or expense of the proposed discovery outweighs its likely benefit." *See* Fed. R. Civ. P. 26(b)(1).  This objection extends to situations where documents produced (or to be produced) in this litigation will more efficiently provide the requested information.  Unless otherwise indicated, Plaintiff will limit its responses accordingly.

7.    Plaintiff objects to each Interrogatory to the extent it seeks identification of "all" facts or individuals relating to any conversations or other events, a "full and complete account" of any conversations or other events, or is otherwise overbroad and unduly burdensome.  Moreover, Plaintiff has never known and cannot possibly know all facts relating to any conversation or event.  Pursuant to the Federal Rules of Civil Procedure and the Rules of this Court, Plaintiff reserves the right to supplement and amend its responses and any production of documents, if necessary, in the event that it locates additional responsive information.

8.    Plaintiff objects to each Interrogatory to the extent it seeks information that is already in Defendant's possession, publicly available, already produced (or subject to Requests for Production), or which is otherwise as available to Defendant as it is to Plaintiff.  Such Interrogatories are unduly burdensome, oppressive, and harassing.  Plaintiff will provide information only to the extent that such information is in the knowledge, possession, custody, or control of Plaintiff and not publicly available or otherwise already in Defendant's possession.

3

A215

9.      No incidental or implied admissions are intended by the responses herein.  The fact that Plaintiff has responded to any individual Interrogatory should not be taken as an admission that Plaintiff accepts or admits the existence of any "facts" set forth or assumed by such Interrogatory.  The fact that Plaintiff has answered part or all of any individual Interrogatory, and/or produced documents in response, is not intended to be, and shall not be construed to be, a waiver by Plaintiff of any part of any objection to such Interrogatory.

10.     Plaintiff does not waive any General Objections by providing specific responses to Defendant's Interrogatories.  To the extent that a particular objection is asserted in response to a particular Interrogatory, that objection is considered particularly relevant to that Interrogatory and is not to be considered as excluding other objections that may be applicable.

11.     Plaintiff made diligent and reasonable efforts to respond to each and every one of the Interrogatories to the extent it has not been objected to, and as Plaintiff understood and interpreted the Interrogatory.  If Defendant subsequently asserts an interpretation of any Interrogatory that differs from that of Plaintiff, Plaintiff reserves the right to supplement its objection(s) and/or response(s).

**SPECIFIC RESPONSES AND OBJECTIONS TO INTERROGATORIES**

**Interrogatory No. 1:**

*Describe all facts and circumstances (including the identity of Persons with knowledge of such facts and documents relating to such facts) that support Your contention that the Assignment is a fraudulent conveyance.*

**Response to Interrogatory No. 1:**

Plaintiff objects to this Interrogatory to the extent that it seeks information protected by the attorney-client privilege or the work product doctrine, and calls for a legal conclusion.

4

A216

Plaintiff objects to this Interrogatory as disproportionate to the needs of the case, overbroad, unduly burdensome, redundant, cumulative, and duplicative to the extent that it seeks information regarding "all" individuals with potentially relevant knowledge.

Plaintiff specifically objects to this Interrogatory as unduly burdensome to the extent it calls for Plaintiff to recapitulate, in narrative answer format, facts alleged in the Complaint and/or described in documents that are (or will be) otherwise available to Defendant. Plaintiff will produce any related non-privileged (and otherwise non-protected) documents in its possession, custody, or control that are responsive to Defendant's pending or forthcoming document requests, as can be located through a reasonable search (subject to the objections above and those made in response to the document requests).

Plaintiff further specifically objects to this Interrogatory to the extent that it is premature, as it seeks information that is not known to and will not be known to Plaintiff until discovery is produced by the Defendants and third parties. As discovery is ongoing, and information pertaining to this Interrogatory was requested from Rock Springs Drive, LLC ("RSD") but was withheld before the Complaint was filed, Plaintiff specifically reserves its right to amend its response as necessary and appropriate.

**Interrogatory No. 2:**

*If You contend that IWA committed any fraudulent act or made any misrepresentation, describe all facts and circumstances (including the identity of Persons with knowledge of such facts and documents relating to such facts) that support Your contention, and include with specificity when the alleged fraudulent act or misrepresentation occurred and when You learned of the fraudulent act or misrepresentation.*

**Response to Interrogatory No. 2:**

Plaintiff objects to this Interrogatory to the extent that it seeks information protected by the attorney-client privilege or the work product doctrine, and calls for a legal conclusion.

5

A217

Plaintiff specifically objects to this Interrogatory as unduly burdensome to the extent it calls for Plaintiff to recapitulate, in narrative answer format, facts alleged in the Complaint and/or described in documents that are (or will be) otherwise available to Defendant.  Plaintiff will produce any related non-privileged (and otherwise non-protected) documents in its possession, custody, or control that are responsive to Defendant's pending or forthcoming document requests, as can be located through a reasonable search (subject to the objections above and those made in response to the document requests).

Plaintiff further specifically objects to this Interrogatory to the extent that it seeks information that is not known to and will not be known to Plaintiff until after additional discovery is completed.

Moreover, Plaintiff objects on the basis that this is a premature contention Interrogatory that is more appropriately addressed when discovery is complete.  As discovery is ongoing, and information pertaining to this Interrogatory was requested from RSD but was withheld before the Complaint was filed, Plaintiff specifically reserves its right to amend its response as necessary and appropriate.

**Interrogatory No. 3:**

*If You contend that IWA ever defaulted under the Ground Lease, describe the nature of the default, including in Your response when the default occurred.*

**Response to Interrogatory No. 3:**

Plaintiff objects to this Interrogatory to the extent that it seeks information protected by the attorney-client privilege or the work product doctrine, and calls for a legal conclusion.

Plaintiff specifically objects to this Interrogatory because the requested information is neither relevant nor proportional to the needs of the case, taking into account "the importance of the issues at stake in the action, the amount in controversy, the parties' relative access to relevant

6

A218

information, the parties' resources, the importance of the discovery in resolving the issues, and whether the burden or expense of the proposed discovery outweighs its likely benefit." Fed. R. Civ. P. 26(b)(1). As discovery is ongoing, and information pertaining to this Interrogatory was requested from RSD but was withheld before the Complaint was filed, Plaintiff specifically reserves its right to amend its response as necessary and appropriate.

**Interrogatory No. 4:**

*If You contend that RSD ever defaulted under the Ground Lease, describe the nature of the default, including in Your response when the default occurred.*

**Response to Interrogatory No. 4:**

Plaintiff objects to this Interrogatory to the extent that it seeks information protected by the attorney-client privilege or the work product doctrine, and calls for a legal conclusion.

Plaintiff specifically objects to this Interrogatory because the requested information is neither relevant nor proportional to the needs of the case, taking into account "the importance of the issues at stake in the action, the amount in controversy, the parties' relative access to relevant information, the parties' resources, the importance of the discovery in resolving the issues, and whether the burden or expense of the proposed discovery outweighs its likely benefit." Fed. R. Civ. P. 26(b)(1). As discovery is ongoing, and information pertaining to this Interrogatory was requested from RSD but was withheld before the Complaint was filed, Plaintiff specifically reserves its right to amend its response as necessary and appropriate.

**Interrogatory No. 5:**

*Describe in detail any communications and related documents between and among You and any Person (including the Original Tenant and/or IWA) regarding the Loan.*

**Response to Interrogatory No. 5:**

Plaintiff objects to this Interrogatory to the extent that it seeks information protected by the attorney-client privilege or the work product doctrine.

A219

Plaintiff further objects to this Interrogatory because the requested information is neither relevant nor proportional to the needs of the case, taking into account "the importance of the issues at stake in the action, the amount in controversy, the parties' relative access to relevant information, the parties' resources, the importance of the discovery in resolving the issues, and whether the burden or expense of the proposed discovery outweighs its likely benefit." Fed. R. Civ. P. 26(b)(1).

Subject to the General and Specific Objections above, Plaintiff responds as follows: Plaintiff does not recall any communications regarding the Loan.

**Interrogatory No. 6:**

*Describe in detail any communications and related documents between and among You and any Person regarding any default of the Ground Lease by Original Tenant.*

**Response to Interrogatory No. 6:**

Plaintiff objects to this Interrogatory to the extent that it seeks information protected by the attorney-client privilege or the work product doctrine, and calls for a legal conclusion.

Plaintiff specifically objects to this Interrogatory because the requested information is neither relevant nor proportional to the needs of the case, taking into account "the importance of the issues at stake in the action, the amount in controversy, the parties' relative access to relevant information, the parties' resources, the importance of the discovery in resolving the issues, and whether the burden or expense of the proposed discovery outweighs its likely benefit." Fed. R. Civ. P. 26(b)(1). Any default under the Ground Lease by the Original Tenant is irrelevant to the subject matter, claims, or defenses at issue in this litigation.

**Interrogatory No. 7:**

*Identify all of Rock Spring's members, including the amount of voting shares in Rock Spring held by each member. In the event that any member of Rock Spring is a limited liability company or partnership, identify all members of each individual limited liability company or partnership down to the level of all actual individual members or partners.*

8

A220

**Response to Interrogatory No. 7:**

Plaintiff objects to this Interrogatory to the extent that it seeks information protected by the attorney-client privilege or the work product doctrine.  Plaintiff further objects to this Interrogatory because it is unduly burdensome and because the requested information is neither relevant nor proportional to the needs of the case, taking into account "the importance of the issues at stake in the action, the amount in controversy, the parties' relative access to relevant information, the parties' resources, the importance of the discovery in resolving the issues, and whether the burden or expense of the proposed discovery outweighs its likely benefit." Fed. R. Civ. P. 26(b)(1).

Subject to the General and Specific Objections above, Plaintiff responds as follows: Plaintiff will produce a document sufficient to show the members of RSD.

**Interrogatory No. 8:**

*Describe in detail Rock Spring's corporate relationship with Original Tenant.*

**Response to Interrogatory No. 8:**

Plaintiff objects to this Interrogatory to the extent that it seeks information protected by the attorney-client privilege or the work product doctrine, and calls for a legal conclusion.

Plaintiff specifically objects to this Interrogatory because the requested information is neither relevant nor proportional to the needs of the case, taking into account "the importance of the issues at stake in the action, the amount in controversy, the parties' relative access to relevant information, the parties' resources, the importance of the discovery in resolving the issues, and whether the burden or expense of the proposed discovery outweighs its likely benefit." Fed. R. Civ. P. 26(b)(1).  Rock Spring's relationship with the Original Tenant is irrelevant to the subject matter, claims, or defenses at issue in this litigation.

Subject to the General and Specific Objections above, Plaintiff responds as follows:  There is no corporate relationship between Rock Spring and Original Tenant.

A221

**Interrogatory No. 9:**

*Describe in detail why Rock Spring did not cure or waive Original Tenant's default under the Ground Lease.*

**Response to Interrogatory No. 9:**

Plaintiff objects to this Interrogatory to the extent that it seeks information protected by the attorney-client privilege or the work product doctrine, and calls for a legal conclusion.

Plaintiff specifically objects to this Interrogatory because the requested information is neither relevant nor proportional to the needs of the case, taking into account "the importance of the issues at stake in the action, the amount in controversy, the parties' relative access to relevant information, the parties' resources, the importance of the discovery in resolving the issues, and whether the burden or expense of the proposed discovery outweighs its likely benefit." Fed. R. Civ. P. 26(b)(1). Rock Spring's relationship with the Original Tenant, including as that relationship pertains to any alleged defaults under the Ground Lease, is irrelevant to the subject matter, claims, or defenses at issue in this litigation.

Subject to the General and Specific Objections above, Plaintiff responds as follows: Plaintiff had no obligation to cure or waive any default by Original Tenant under the Ground Lease.

**Interrogatory No. 10:**

*Describe in detail why Rock Spring did not cure Original Tenant's default under the Loan.*

**Response to Interrogatory No. 10:**

Plaintiff objects to this Interrogatory to the extent that it seeks information protected by the attorney-client privilege or the work product doctrine, and calls for a legal conclusion.

Plaintiff specifically objects to this Interrogatory because the requested information is neither relevant nor proportional to the needs of the case, taking into account "the importance of the issues at stake in the action, the amount in controversy, the parties' relative access to relevant

10

A222

information, the parties' resources, the importance of the discovery in resolving the issues, and whether the burden or expense of the proposed discovery outweighs its likely benefit." Fed. R. Civ. P. 26(b)(1).  Rock Spring's relationship with the Original Tenant, including as it relates to any alleged default under the Loan, is irrelevant to the subject matter, claims, or defenses at issue in this litigation.

Subject to the General and Specific Objections above, Plaintiff responds as follows: Plaintiff had no obligation to cure any default by Original Tenant under the Loan.

**Interrogatory No. 11:**

*Describe in detail any communications and related documents between and among You and any Person (including the Original Tenant and/or IWA) regarding the Estoppel Agreement.*

**Response to Interrogatory No. 11:**

Plaintiff specifically objects to this Interrogatory to the extent that it seeks information protected by the attorney-client privilege or the work product doctrine.

Plaintiff further objects to this Interrogatory because the requested information is neither relevant nor proportional to the needs of the case, taking into account "the importance of the issues at stake in the action, the amount in controversy, the parties' relative access to relevant information, the parties' resources, the importance of the discovery in resolving the issues, and whether the burden or expense of the proposed discovery outweighs its likely benefit." Fed. R. Civ. P. 26(b)(1).

Subject to the General and Specific Objections above, Plaintiff responds as follows: Plaintiff has no specific recollection of any communications regarding the Estoppel Agreement, but notes that discovery and the collection of documents is ongoing, and therefore reserves the right to supplement its response as necessary and appropriate.

**Interrogatory No. 12:**

*If You contend that the Estoppel Agreement, or any provision therein is not enforceable, describe in detail all facts and circumstances that support Your contention.*

11

A223

**Response to Interrogatory No. 12:**

Plaintiff objects to this Interrogatory to the extent that it seeks information protected by the attorney-client privilege or the work product doctrine, and calls for a legal conclusion.

Plaintiff specifically objects to this Interrogatory because the requested information is neither relevant nor proportional to the needs of the case, taking into account "the importance of the issues at stake in the action, the amount in controversy, the parties' relative access to relevant information, the parties' resources, the importance of the discovery in resolving the issues, and whether the burden or expense of the proposed discovery outweighs its likely benefit." Fed. R. Civ. P. 26(b)(1). The enforceability of the Estoppel Agreement is irrelevant to the subject matter, claims, or defenses at issue in this litigation.

Moreover, Plaintiff objects on the basis that this is a premature contention Interrogatory that is more appropriately addressed when discovery is complete.

**Interrogatory No. 13:**

*If You contend that IWA did not have the right or ability to assign its interest in the Leasehold Estate to RSD, describe in detail all facts and circumstances that support Your contention.*

**Response to Interrogatory No. 13:**

Plaintiff objects to this Interrogatory to the extent that it seeks information protected by the attorney-client privilege or the work product doctrine, and calls for a legal conclusion.

Plaintiff specifically objects to this Interrogatory as unduly burdensome to the extent it calls for Plaintiff to recapitulate, in narrative answer format, facts alleged in the Complaint and/or described in documents that are (or will be) otherwise available to Defendant. Moreover, Plaintiff objects on the basis that this is a premature contention Interrogatory that is more appropriately addressed when discovery is complete.

12

A224

Subject to the General and Specific Objections above, Plaintiff responds as follows:  The right or ability to legally assign the lease is distinct from the issue of whether a fraudulent conveyance occurred.  As discovery is ongoing, and information pertaining to this Interrogatory was requested from RSD but was withheld before the Complaint was filed, Plaintiff specifically reserves its right to amend its response as necessary and appropriate.

**Interrogatory No. 14:**

*If You contend that Rock Spring should be able to collect future rent under the Ground Lease from IWA, describe in detail all facts and circumstances that support Your contention.*

**Response to Interrogatory No. 14:**

Plaintiff objects to this Interrogatory to the extent that it seeks information protected by the attorney-client privilege or the work product doctrine and calls for a legal conclusion.

Plaintiff specifically objects to this Interrogatory as unduly burdensome to the extent it calls for Plaintiff to recapitulate, in narrative answer format, facts alleged in the Complaint and/or described in documents that are (or will be) otherwise available to Defendant.  Plaintiff will produce any related non-privileged (and otherwise non-protected) documents in its possession, custody, or control that are responsive to Defendant's pending or forthcoming document requests, as can be located through a reasonable search (subject to the objections above and those made in response to the document requests).

Plaintiff further specifically objects to this Interrogatory to the extent that it seeks information that is not known to and will not be known to Plaintiff until discovery is completed.

Moreover, Plaintiff objects on the basis that this is a premature contention Interrogatory that is more appropriately addressed when discovery is complete.  As discovery is ongoing, and information pertaining to this Interrogatory was requested from RSD but was withheld before the

13

A225

Complaint was filed, Plaintiff specifically reserves its right to amend its response as necessary and appropriate.

**Interrogatory No. 15:**

*Describe in detail all facts and circumstances that support Your contention that RSD is not engaged in any commercial activities with respect to the Premises.*

**Response to Interrogatory No. 15:**

Plaintiff objects to this Interrogatory to the extent that it seeks information protected by the attorney-client privilege or the work product doctrine.

Plaintiff specifically objects to this Interrogatory as unduly burdensome to the extent it calls for Plaintiff to recapitulate, in narrative answer format, facts alleged in the Complaint and/or described in documents that are (or will be) otherwise available to Defendant. Plaintiff will produce any related non-privileged (and otherwise non-protected) documents in its possession, custody, or control that are responsive to Defendant's pending or forthcoming document requests, as can be located through a reasonable search (subject to the objections above and those made in response to the document requests).

Plaintiff further specifically objects to this Interrogatory to the extent that it seeks information that is not known to and will not be known to Plaintiff until discovery is completed.

Moreover, Plaintiff objects on the basis that this is a premature contention Interrogatory that is more appropriately addressed when discovery is complete.

Subject to the General and Specific Objections above, Plaintiff responds as follows: Since August 31, 2017, there have been no employees or visitors entering or exiting the Property. There is also a sign on one of the doors of Property warning of the presence of dogs. As discovery is ongoing, and information pertaining to this Interrogatory was requested from RSD but was

14

A226

withheld before the Complaint was filed, Plaintiff specifically reserves its right to amend its response as necessary and appropriate.

**Interrogatory No. 16:**

*If You contend that RSD is not a "third party" under the Estoppel Agreement, describe in detail all facts and circumstances that support Your contention.*

**Response to Interrogatory No. 16:**

Plaintiff objects to this Interrogatory as it is vague, seeks information protected by the attorney-client privilege or the work product doctrine, and calls for a legal conclusion.

Subject to the General and Specific Objections above, Plaintiff responds as follows: RSD is not a third party as RSD and IWA are both controlled by the same entity—RCC North America—whose parent is Transamerica.

RSD's members are RCC North America LLC (98% voting interest) and Longshore Ventures LLC (2% voting interest). RCC North America LLC's sole member is Transamerica Corporation. With respect to IWA, its sole member is RCC North America. Thus, RSD and IWA share a common parent and RSD is not a separate and distinct third party. As discovery is ongoing, and information pertaining to this Interrogatory was requested from RSD but was withheld before the Complaint was filed, Plaintiff specifically reserves its right to amend its response as necessary and appropriate.

**Interrogatory No. 17:**

*If You contend that any other Person should be joined in this litigation or added as a defendant, identify such Person and describe all facts and circumstances that support Your contention.*

**Response to Interrogatory No. 17:**

Plaintiff objects to this Interrogatory as vague, overly broad, and disproportionate to the needs of the case.

15

A227

Subject to the General Objections above, Plaintiff responds as follows:  Plaintiff refers Defendant to Plaintiff's Motion for Leave to File Amended Complaint & Joinder (ECF Nos. 39-41) filed on January 15, 2021.  As discovery is ongoing, and information pertaining to this Interrogatory was requested from RSD but was withheld before the Complaint and Motion for Leave to File Amended Complaint & Joinder were filed, Plaintiff specifically reserves its right to amend its response as necessary and appropriate.

**Interrogatory No. 18:**

*If You contend that Rock Spring is entitled to information regarding RSD's future plans for the Premises, describe in detail all facts and circumstances that support Your contention.*

**Response to Interrogatory No. 18:**

Plaintiff objects to this Interrogatory as vague, overly broad, disproportionate to the needs of the case, and calls for a legal conclusion.

Subject to the General and Specific Objections above, Plaintiff responds as follows:  The notion that a ground tenant has no obligation to communicate with its landlord, especially given the tenant's on-going obligations to maintain the premises and ground lessor's reversionary interest, is commercially unreasonable and manifests a disregard for ground tenant's implied duties of good faith and faith dealing, at a minimum.  That said, Plaintiff did not learn of RSD's affiliation with IWA and Transamerica without engaging in sleuthing that could have been readily avoided by more forthcoming responses by RSD to Plaintiff's reasonable inquiries (through legal counsel).  Given the facts alleged in the Complaint, including RSD's furtiveness, Rock Spring is manifestly entitled to information regarding "RSD's future plans for the Premises," especially as it pertains to RSD's intention to honor the terms of the Ground Lease.

16

A228

January 25, 2021                          Respectfully submitted,


                                         /s/ William M. Bosch
                                         William M. Bosch (D. Md. Bar No. 16017)
                                         Preston Smith (D. Md. Bar No. 21232)
                                         ARNOLD & PORTER KAYE SCHOLER LLP
                                         601 Massachusetts Ave., N.W.
                                         Washington, D.C.  20001-3743
                                         Telephone:  +1 202.942.5000
                                         Facsimile:  +1 202.942.5999
                                         E-mail:  william.bosch@arnoldporter.com
                                         E-mail:  preston.smith@arnoldporter.com

                                         *Counsel for Plaintiff*

17

A229

## <u>VERIFICATION</u>

I, Charles A. Camalier, have reviewed the foregoing and certify that the responses provided herein are true and correct to the best of my knowledge, information, and belief.

January 25, 2021                                    Respectfully submitted,

Charles A. Camalier

A230

<u>**CERTIFICATE OF SERVICE**</u>

    I hereby certify that on January 25, 2021, I served a copy of the foregoing via e-mail on

IWA's counsel per the prior agreement of the parties.

                        Respectfully submitted,

                        /s/ Preston Smith
                        Preston Smith (D. Md. Bar No. 21232)
                        ARNOLD & PORTER KAYE SCHOLER LLP
                        601 Massachusetts Ave., N.W.
                        Washington, D.C.  20001-3743
                        Telephone:  +1 202.942.6544
                        Facsimile:  +1 202.942.5999
                        E-mail:  preston.smith@arnoldporter.com

A231

# EXHIBIT C

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF MARYLAND**
**GREENBELT DIVISION**

| | |
|---|---|
| ROCK SPRING PLAZA II, LLC, <br><br> Plaintiff, <br><br> v. <br><br> INVESTORS WARRANTY OF AMERICA, LLC, et al., <br><br> Defendants. | ) <br> ) <br> ) <br> ) <br> ) <br> )   Civil Action No. 8:20-cv-01502-PJM <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) |

**PLAINTIFF'S RESPONSES AND OBJECTIONS TO DEFENDANT INVESTORS**
**WARRANTY OF AMERICA, LLC'S FIRST CONTINUING INTERROGATORIES**

      Pursuant to Rules 26 and 33 of the Federal Rules of Civil Procedure and the Rules of this Court, Plaintiff Rock Spring Plaza II, LLC ("Rock Spring Plaza" or "Plaintiff"), through its undersigned counsel, hereby submits the following Supplemental Responses and Objections to Defendant Investors Warranty of America, LLC's ("IWA" or "Defendant") First Continuing Interrogatories (the "Interrogatories"):

**OBJECTIONS TO DEFINITIONS AND INSTRUCTIONS**

      1.    Plaintiff objects to Instruction Number 5, which asserts that the relevant time period for the Requests is from January 1, 2005 until the date of this response, on the ground that it seeks information not relevant to any party's claim or defense and is overbroad and not proportional to the needs of the case. Unless otherwise specified in response to a particular request for production, Plaintiff will construe the requests to seek information and documents from the period from August 31, 2017 until the date of this response.

A233

2.     Plaintiff objects to the definition of "Identify" at Instruction Number 8, subsection (H) as overly broad, unduly burdensome, and disproportionate to the needs of the case.

## GENERAL OBJECTIONS

The following General Objections apply to each Interrogatory and shall have the same force and effect as if fully set forth in each of Plaintiff's specific responses.

1.     Plaintiff provides these responses without conceding the relevancy, materiality, or admissibility of the subject matter of any Interrogatory, and without prejudice to its right to object to further discovery or to the admission of any evidence or proof concerning the subject matter of any Interrogatory, and also without prejudice to Plaintiff's right to rely on other facts and documents at trial.

2.     Plaintiff objects to each Interrogatory and the preceding Definitions and Instructions to the extent they purport to require Plaintiff to provide information broader than, inconsistent with, not authorized under, or not reasonable pursuant to the Federal Rules of Civil Procedure or any order of the Court.

3.     Plaintiff objects to each Interrogatory to the extent it calls for information not within Plaintiff's knowledge, possession, custody, or control.

4.     Plaintiff objects to each Interrogatory and the preceding Instructions and Definitions to the extent they seek information protected by the attorney-client privilege, the work product protection doctrine, and/or any other applicable privilege, rule, doctrine, or immunity, whether created by statute or common law. Any response shall not be deemed to be a waiver of any objection set forth in the response, and Plaintiff reserves the right to raise any applicable objections at any time. Similarly, any response will be made without waiving or

2

A234

intending to waive any privilege or other applicable protection or grounds for objection concerning the use or admissibility of any information provided in that response.

5.    Plaintiff objects to each Interrogatory to the extent it seeks a legal conclusion or requires Plaintiff to formulate a legal conclusion in order to fully respond.

6.    Plaintiff objects to each Interrogatory to the extent the discovery sought is not relevant, overly broad, unduly burdensome, vexatious, oppressive, designed to harass or to annoy, redundant, cumulative, duplicative, vague, ambiguous, and/or disproportionate to the needs of the case, taking into account "the importance of the issues at stake in the action, the amount in controversy, the parties' relative access to relevant information, the parties' resources, the importance of the discovery in resolving the issues, and whether the burden or expense of the proposed discovery outweighs its likely benefit." *See* Fed. R. Civ. P. 26(b)(1). This objection extends to situations where documents produced (or to be produced) in this litigation will more efficiently provide the requested information. Unless otherwise indicated, Plaintiff will limit its responses accordingly.

7.    Plaintiff objects to each Interrogatory to the extent it seeks identification of "all" facts or individuals relating to any conversations or other events, a "full and complete account" of any conversations or other events, or is otherwise overbroad and unduly burdensome. Moreover, Plaintiff has never known and cannot possibly know all facts relating to any conversation or event. Pursuant to the Federal Rules of Civil Procedure and the Rules of this Court, Plaintiff reserves the right to supplement and amend its responses and any production of documents, if necessary, in the event that it locates additional responsive information.

8.    Plaintiff objects to each Interrogatory to the extent it seeks information that is already in Defendant's possession, publicly available, already produced (or subject to Requests

3

A235

for Production), or which is otherwise as available to Defendant as it is to Plaintiff. Such Interrogatories are unduly burdensome, oppressive, and harassing. Plaintiff will provide information only to the extent that such information is in the knowledge, possession, custody, or control of Plaintiff and not publicly available or otherwise already in Defendant's possession.

9.      No incidental or implied admissions are intended by the responses herein. The fact that Plaintiff has responded to any individual Interrogatory should not be taken as an admission that Plaintiff accepts or admits the existence of any "facts" set forth or assumed by such Interrogatory. The fact that Plaintiff has answered part or all of any individual Interrogatory, and/or produced documents in response, is not intended to be, and shall not be construed to be, a waiver by Plaintiff of any part of any objection to such Interrogatory.

10.      Plaintiff does not waive any General Objections by providing specific responses to Defendant's Interrogatories. To the extent that a particular objection is asserted in response to a particular Interrogatory, that objection is considered particularly relevant to that Interrogatory and is not to be considered as excluding other objections that may be applicable.

11.      Plaintiff made diligent and reasonable efforts to respond to each and every one of the Interrogatories to the extent it has not been objected to, and as Plaintiff understood and interpreted the Interrogatory. If Defendant subsequently asserts an interpretation of any Interrogatory that differs from that of Plaintiff, Plaintiff reserves the right to supplement its objection(s) and/or response(s).

## SPECIFIC RESPONSES AND OBJECTIONS TO INTERROGATORIES

### Interrogatory No. 1:

*Describe all facts and circumstances (including the identity of Persons with knowledge of such facts and documents relating to such facts) that support Your contention that the Assignment is a fraudulent conveyance.*

4

A236

### Initial Responses and Objections to Interrogatory No. 1:

Plaintiff objects to this Interrogatory to the extent that it seeks information protected by the attorney-client privilege or the work product doctrine and calls for a legal conclusion.

Plaintiff objects to this Interrogatory as disproportionate to the needs of the case, overbroad, unduly burdensome, redundant, cumulative, and duplicative to the extent that it seeks information regarding "all" individuals with potentially relevant knowledge.

Plaintiff specifically objects to this Interrogatory as unduly burdensome to the extent it calls for Plaintiff to recapitulate, in narrative answer format, facts alleged in the Complaint and/or described in documents that are (or will be) otherwise available to Defendant. Plaintiff will produce any related non-privileged (and otherwise non-protected) documents in its possession, custody, or control that are responsive to Defendant's pending or forthcoming document requests, as can be located through a reasonable search (subject to the objections above and those made in response to the document requests).

Plaintiff further specifically objects to this Interrogatory to the extent that it is premature, as it seeks information that is not known to and will not be known to Plaintiff until discovery is produced by the Defendants and third parties. As discovery is ongoing, and information pertaining to this Interrogatory was requested from Rock Springs Drive, LLC ("RSD") but was withheld before the Complaint was filed, Plaintiff specifically reserves its right to amend its response as necessary and appropriate.

### Supplemental Responses and Objections to Interrogatory No. 1:

Plaintiff objects to this Interrogatory to the extent that it seeks information protected by the attorney-client privilege or the work product doctrine and calls for a legal conclusion.

5

A237

Plaintiff objects to this Interrogatory as disproportionate to the needs of the case, overbroad, unduly burdensome, redundant, cumulative, and duplicative to the extent that it seeks information regarding "all" individuals with potentially relevant knowledge.

Plaintiff specifically objects to this Interrogatory as unduly burdensome to the extent it calls for Plaintiff to recapitulate, in narrative answer format, facts alleged in the Complaint and/or described in documents that are (or will be) otherwise available to Defendant. Plaintiff will produce any related non-privileged (and otherwise non-protected) documents in its possession, custody, or control that are responsive to Defendant's pending or forthcoming document requests, as can be located through a reasonable search (subject to the objections above and those made in response to the document requests).

Plaintiff further specifically objects to this contention interrogatory on the grounds that it is premature, as it seeks information that is not known to and will not be known to Plaintiff until discovery is produced and completed by the Defendants (IWA, RSD, and Transamerica) and non-parties (Algon). As discovery is ongoing, and information pertaining to this Interrogatory was requested from other parties and non-parties but was withheld before the Complaint was filed, Plaintiff specifically reserves its right to amend its response as necessary and appropriate.

**Interrogatory No. 2:**

*If You contend that IWA committed any fraudulent act or made any misrepresentation, describe all facts and circumstances (including the identity of Persons with knowledge of such facts and documents relating to such facts) that support Your contention, and include with specificity when the alleged fraudulent act or misrepresentation occurred and when You learned of the fraudulent act or misrepresentation.*

**Initial Responses and Objections to Interrogatory No. 2:**

Plaintiff objects to this Interrogatory to the extent that it seeks information protected by the attorney-client privilege or the work product doctrine and calls for a legal conclusion.

6

A238

Plaintiff specifically objects to this Interrogatory as unduly burdensome to the extent it calls for Plaintiff to recapitulate, in narrative answer format, facts alleged in the Complaint and/or described in documents that are (or will be) otherwise available to Defendant. Plaintiff will produce any related non-privileged (and otherwise non-protected) documents in its possession, custody, or control that are responsive to Defendant's pending or forthcoming document requests, as can be located through a reasonable search (subject to the objections above and those made in response to the document requests).

Plaintiff further specifically objects to this Interrogatory to the extent that it seeks information that is not known to and will not be known to Plaintiff until after additional discovery is completed.

Moreover, Plaintiff objects on the basis that this is a premature contention Interrogatory that is more appropriately addressed when discovery is complete. As discovery is ongoing, and information pertaining to this Interrogatory was requested from RSD but was withheld before the Complaint was filed, Plaintiff specifically reserves its right to amend its response as necessary and appropriate.

**Supplemental Responses and Objections to Interrogatory No. 2**:

See supplemental response to Interrogatory No. 1.

**Interrogatory No. 3:**

*If You contend that IWA ever defaulted under the Ground Lease, describe the nature of the default, including in Your response when the default occurred.*

**Initial Responses and Objections to Interrogatory No. 3:**

Plaintiff objects to this Interrogatory to the extent that it seeks information protected by the attorney-client privilege or the work product doctrine and calls for a legal conclusion.

A239

Plaintiff specifically objects to this Interrogatory because the requested information is neither relevant nor proportional to the needs of the case, taking into account "the importance of the issues at stake in the action, the amount in controversy, the parties' relative access to relevant information, the parties' resources, the importance of the discovery in resolving the issues, and whether the burden or expense of the proposed discovery outweighs its likely benefit." Fed. R. Civ. P. 26(b)(1). As discovery is ongoing, and information pertaining to this Interrogatory was requested from RSD but was withheld before the Complaint was filed, Plaintiff specifically reserves its right to amend its response as necessary and appropriate.

**Supplemental Responses and Objections to Interrogatory No. 3:**

Plaintiff objects to this Interrogatory to the extent that it seeks information protected by the attorney-client privilege or the work product doctrine and calls for a legal conclusion.

Plaintiff specifically objects to this Interrogatory because the requested information is neither relevant nor proportional to the needs of the case, taking into account "the importance of the issues at stake in the action, the amount in controversy, the parties' relative access to relevant information, the parties' resources, the importance of the discovery in resolving the issues, and whether the burden or expense of the proposed discovery outweighs its likely benefit." Fed. R. Civ. P. 26(b)(1).

Subject to the General and Specific Objections above, Plaintiff responds as follows: Plaintiff takes no position as to whether IWA defaulted under the Ground Lease, which is in any event irrelevant to the issues being presented to the Court in this Litigation.

**Interrogatory No. 4:**

*If You contend that RSD ever defaulted under the Ground Lease, describe the nature of the default, including in Your response when the default occurred.*

8

A240

**Initial Responses and Objections to Interrogatory No. 4:**

Plaintiff objects to this Interrogatory to the extent that it seeks information protected by the attorney-client privilege or the work product doctrine and calls for a legal conclusion.

Plaintiff specifically objects to this Interrogatory because the requested information is neither relevant nor proportional to the needs of the case, taking into account "the importance of the issues at stake in the action, the amount in controversy, the parties' relative access to relevant information, the parties' resources, the importance of the discovery in resolving the issues, and whether the burden or expense of the proposed discovery outweighs its likely benefit." Fed. R. Civ. P. 26(b)(1). As discovery is ongoing, and information pertaining to this Interrogatory was requested from RSD but was withheld before the Complaint was filed, Plaintiff specifically reserves its right to amend its response as necessary and appropriate.

**Supplemental Responses and Objections to Interrogatory No. 4**

Plaintiff objects to this Interrogatory to the extent that it seeks information protected by the attorney-client privilege or the work product doctrine, and calls for a legal conclusion.

Plaintiff specifically objects to this Interrogatory because the requested information is neither relevant nor proportional to the needs of the case, taking into account "the importance of the issues at stake in the action, the amount in controversy, the parties' relative access to relevant information, the parties' resources, the importance of the discovery in resolving the issues, and whether the burden or expense of the proposed discovery outweighs its likely benefit." Fed. R. Civ. P. 26(b)(1).

Subject to the General and Specific Objections above, Plaintiff responds as follows: Plaintiff takes no position as to whether IWA defaulted under the Ground Lease, which is in any

9

A241

event irrelevant to the issues being presented to the Court in this Litigation.

September 19, 2022                    Respectfully submitted,


                                     /s/ Katherine Danial
                                     Katherine Danial (D. Md. Bar No. 21270)
                                     William M. Bosch (D. Md. Bar No. 16017)
                                     Alvin Dunn (D. Md. Bar No. 29068)
                                     PILLSBURY WINTHROP SHAW PITTMAN
                                     LLP
                                     1200 Seventeenth St. NW.
                                     Washington, D.C. 20036
                                     Telephone: +1 202.663.8000
                                     Facsimile: +1 202.663.8007
                                     E-mail: william.bosch@pillsburylaw.com
                                     E-mail: alvin.dunn@pillsburylaw.com
                                     E-mail: katherine.danial@pillsburylaw.com

                                     *Counsel for Plaintiff*

10

A242

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on September 19, 2022, I served a copy of the foregoing via e-mail on IWA's counsel per the prior agreement of the parties.

Respectfully submitted,

/s/ Katherine Danial

# EXHIBIT F

**To:** 'Hays, Mary[mthays@Aegonusa.com]; Whittington, Gary[gwhitin@Aegonusa.com]; Bill Wrench[bwrench@phillipsrc.com]; Camalier, Charles A.[ccamalier@wilkesartis.com]; Robert.gorham@hklaw.com[Robert.gorham@hklaw.com]; diane@rsplimited.com[diane@rsplimited.com]; jmullen@phillipsrc.com[jmullen@phillipsrc.com]; Camalier, Charles A. [ccamalier@wilkesartis.com]; diane@rsplimited.com[diane@rsplimited.com]; Walter, Wendy[wendy.walter@lnco.com]; Barbara Kemp[bkemp@tri-statecommercialclosings.com]; Robert Gorham Esq. (E-mail)[rgorham@hklaw.com]; Pamela McDade Johnson (E-mail)[pam.johnson@dlapiper.com]; jmullen@phillipsrc.com[jmullen@phillipsrc.com]; jbarringer@phillipsre.com
jbarringer@phillipsrc.com]; Pat Haggerty[phaggerty@tri-statecommercialclosings.com]

**Cc:** Tenley, Sarah[STenley@Aegonusa.com]; Pitts, Christopher[CPitts@Aegonusa.com]

**From:** Karen Galyen[kgalyen@tri-statecommercialclosings.com]

**Sent:** Thur 6/1/2006 3:22:24 PM Eastern Daylight Time

**Subject:** RE: STATUS UPDATE 6/1 - Rock Springs II refi

**Attachment:** rock.spring.II.MSDAT.pdf

UCC Search results attached. The oldest F.S. is on order and I will froward upon receipt. The rest are attached.

Let me know if you need anything further.

Karen S. Galyen
Vice President
Tri-State Commercial Closings, Inc.
1150 18th Street, N.W., Suite 575
Washington, D.C. 20036
Tel: (202) 463-1150
Fax: (202) 955-5646
E-Mail: kgalyen@tri-statecommercialclosings.com

-----Original Message-----
**From:** Hays, Mary [mailto:mthays@Aegonusa.com]
**Sent:** Thursday, June 01, 2006 2:53 PM
**To:** Hays, Mary; Whittington, Gary; Bill Wrench; ccamalier@wilkesartis.com; Robert.gorham@hklaw.com; diane@rsplimited.com; jmullen@phillipsrc.com; Charles A. Camalier III Esq. (E-mail); diane@rsplimited.com; Walter, Wendy; Barbara Kemp; Robert Gorham Esq. (E-mail); Pamela McDade Johnson (E-mail); jmullen@phillipsrc.com; Karen Galyen
**Cc:** Tenley, Sarah; Pitts, Christopher
**Subject:** STATUS UPDATE 6/1 - Rock Springs II refi

Good Afternoon Everyone!

This Refinance has a commitment expiration date and a tentative closing date of **June 2, 2006**. The first P&I payment will be due on August 1, 2006. As you may or may not know, due to conflicts of interest Jack Machen of DLA Piper Rudnick will no longer be representing us. All questions/comments should be directed to both Gary Whittington (in-house counsel) and me. I need the following items for this refinance to close:

1. Proforma -Under review
2. UCC Searches for **Rock Springs II Limited Partnership** - Karen at Tri-State is working on this
3. Entity documents for:
   - ☐ Camalier/Fernwood Limited Partnership; Limited Partnership Agreement, (I believe this should be included in the package from Lockheed Martin, but it has not arrived yet.)
4. Ground Lessor Estoppel (need from Lockheed Martin then I will overnight to Tri-State)
5. Signed Escrow Instruction Letter
6. Signed Settlement Statement

**I am waiting to receive the package from FedEx for the Lockheed documents. They should be here within the hour.

**PLEASE NOTE THAT DUE TO AEGON'S ELECTRONIC WIRING SYSTEM ALL SUBMITTAL ITEMS NEED TO BE RECEIVED AND APPROVED BY AEGON AND/OR AEGON'S COUNSEL BY 12:00 CENTRAL ON THE DATE PRIOR TO FUNDING. IF THIS DEADLINE IS NOT MET THE LOAN FUNDING WILL AUTOMATICALLY MOVE TO THE FOLLOWING DAY.**

Thanks-Mary

Mary Hays
Mortgage Loan Closing Specialist
AEGON USA Realty Advisors, Inc.
319-398-8951 ph
319-298-4471 fax
mthays@aegonusa.com

Camalier0001130

A245

# EXHIBIT H


USA Realty Advisors, LLC

August 31, 2017

**Via Federal Express**
Tracking No. 7701 4324 3157

Rock Spring Place II, LLC
c/o Rock Spring Properties
6500 Rock Spring Drive, Suite 500
Bethesda, Maryland 20817

RE:     Amended and Restated Ground Lease Indenture dated November 14, 1990 (the "**Lease**") between Anne D. Camalier (the "**Landlord**") and Investors Warranty of America, LLC (formerly known as Investors Warranty of America, Inc.), as successor-in-interest to Rock Spring II Limited Partnership (the "**Tenant**")

To Whom It May Concern:

Pursuant to Sections 12 and 19 of the Ground Lessor Estoppel and Non-Disturbance Agreement dated June 2, 2006, Tenant has entered into an Assumption and Assignment of Ground Lease, dated August 31, 2017, with Rock Springs Drive, LLC, a Maryland limited liability company.

If you have any questions, please contact Robert Barron at the following:

Berger Singerman
350 East Las Olas Boulevard, Suite 1000
Fort Lauderdale, FL 33301
Phone 954-712-5145

Sincerely,

Investors Warranty of America, LLC

By _____
Typed name _____
Its _____
David Feltman
Authorized Signatory

Aegon USA Realty Advisors, LLC
4333 Edgewood Road, N.E.          P +1 319 355-8511
Cedar Rapids, IA 52499          www.aegonrealty.com

Camalier0000853

A247

# EXHIBIT I

**To:** Jody Rice (jody.rice@ssplimited.com)[jody.rice@ssplimited.com]; Camalier, Charles A.[ccamalier@wilkmartis.com]
**Cc:** Silverberg, Steve @ Bethesda[Steve.Silverberg@cbre.com]
**From:** Cahill, Jim @ Bethesda[Jim.Cahill@cbre.com]
**Sent:** Tue 1/30/2018 2:36:22 PM Eastern Standard Time
**Subject:** FW: GSA Update

Here is the update on GSA , (1) 6610 is OASH  have a offer from us balls in their court    (2)   Be nice to figure out how we can respond to 6560 ,( waiting on RFP) ,   because we don't believe Aegon/Algon is capable of responding

James G. Cahill | Senior Vice President
CBRE | Brokerage
7501 Wisconsin Avenue | Suite 820E | Bethesda, Maryland 20814
T +1 301 215 4111 | F +1 301 654 7848 | C +1 301 943 2843
jim.cahill@cbre.com

Follow CBRE: Facebook | twitter | Google+

Please consider the environment before printing this e-mail

This message and any attachments may be privileged, confidential or proprietary.  If you are not the intended recipient of this email or believe you have received this correspondence in error, please contact the sender through the information provided above and permanently delete this message

The 90,000 footer is OASH (Office of Assistant to the Secretary of Health) and GSA is claiming it still intends to award to whomever submitted the lowest bid in their initial offer back in September but I gotta think they will ask for another round of bidding due to so much time elapsing.

The 190,000 footer is the consolidation that was advertised and we responded to for 6560.  Its been the Governments intention from the get go to not start that procurement until March or even April.  They needed to advertise before the end of the last fiscal year in order to keep the funding for the deal but they were not ready to actually start the procurement then.

Camalier0004830

A249

# EXHIBIT J

**To:** Camalier, Charles A.[ccamalier@wilkesartis.com]; Jody Rice (jody.rice@splimited.com)[jody.rice@rsplimited.com]
**Cc:** Thau, Larry @ Bethesda[Larry.Thau@cbre.com]; Cahill, Jim @ Bethesda[Jim.Cahill@cbre.com]; Silverberg, Steve @ Bethesda[Steve.Silverberg@cbre.com]
**From:** Stabb, Alden @ Bethesda[Alden.Stabb@cbre.com]
**Sent:** Tue 2/6/2018 6:04:30 PM Eastern Standard Time
**Subject:** RE: 6610 & 6560 Follow Up

Chris and Jody,

Contacts for Total Wine & More:

Tom Haubenstricker - CFO
thaubenstricker@totalwineandmore.com

Deborah Kasmir – Director of Facilities Management
dkasmir@totalwineandmore.com

We do not have their direct dials, however, the main number for their corporate office in Rock Spring Park is (301) 795-1000 and the dial by name directory is extension "3". Just say their names when you are prompted and it will automatically connect you to their direct dial.

Best Regards,
Alden

Alden Stabb | Associate
CBRE | Advisory & Transaction Services
7501 Wisconsin Avenue | Suite 820E | Bethesda, MD 20814
T +1 301 215 4126 | F +1 301 654 7842 | C +1 301 795 8995
alden.stabb@cbre.com | www.cbre.com/alden.stabb

Follow CBRE: Facebook | @cbre | Google+

[illegible disclaimer text]

---

**From:** Silverberg, Steve @ Bethesda
**Sent:** Tuesday, February 06, 2018 3:58 PM
**To:** Camalier, Charles A. <ccamalier@wilkesartis.com>; Jody Rice (jody.rice@rsplimited.com) <jody.rice@rsplimited.com>
**Cc:** Thau, Larry @ Bethesda <Larry.Thau@cbre.com>; Cahill, Jim @ Bethesda <Jim.Cahill@cbre.com>; Stabb, Alden @ Bethesda <Alden.Stabb@cbre.com>
**Subject:** 6610 & 6560 Follow Up

| Koluch, Nick | Paul Rubin | Troy Taylor |
|---|---|---|
| Aegon USA Realty Advisors, LLC | Algon Group | Algon Group |
| Vice President | | |
| [illegible] Work | [illegible] Mobile | [illegible] Mobile |
| [illegible] Mobile | prubin@algongroup.com | ttaylor@algongroup.com |
| nicholas.koluch@aegonusa.com | www.algongroup.com | |
| 90 Park Avenue, 28th Floor | | |
| New York, NY 10016 | | |

1. Requested contact info above for AEGON and Algon
2. Marriott parking requirement is 100 spaces now and may need up to 200 total at some point

We are working on getting you the additional info we discussed.

Steven Silverberg | First Vice President
CBRE | Brokerage Services
7501 Wisconsin Avenue Suite 820E | Bethesda, MD 20814
T 301 215 4122 | C 240 447 8515
steve.silverberg@cbre.com | www.cbre.com

[illegible disclaimer text]

Camalier0004835

# EXHIBIT K

Case 8:16-cv-00710-PWG   Document 34-1   Filed 09/19/16   Page 136 of 236
Gregory Voss 30(b)(6)
June 14, 2016                                          1

Page 1

1              UNITED STATES DISTRICT COURT
               FOR THE DISTRICT OF MARYLAND
2                   (GREENBELT DIVISION)

3

4   ROCKLEDGE ASSOCIATES, LLC.,)
                               )
5        Plaintiff,            )
                               )
6     v.                       )   Civil Action No.
                               )   8:16-cv-00710 PWG
7   TRANSAMERICA LIFE          )
    INSURANCE COMPANY,         )
8                              )
         Defendant.            )
9   ---------------------------x

10

11

12            30(b)(6) DEPOSITION OF
       TRANSAMERICA LIFE INSURANCE COMPANY,
13             BY AND THROUGH
            CORPORATE DESIGNEE,
14          GREGORY A. VOSS

15

16

17            SEYFARTH SHAW LLP
         975 F Street, Northwest
18        Washington, D.C.  20006

19

20

21

22

23   Reported by:  Lori J. Goodin, RPR, CLR, CRR

24          Realtime Systems Administrator

25   Assignment Number:  174161

U.S. LEGAL SUPPORT
(877) 479-2484

A253

APPEARANCES OF COUNSEL

For the Plaintiff:

ARNOLD AND PORTER, LLP

WILLIAM M. BOSCH, ESQUIRE

601 Massachusetts Avenue, Northwest

Washington, D.C.  20001

202-942-5906

william.bosch@aporter.com


For the Defendant:

SEYFARTH SHAW, LLP

REBECCA A. DAVIS, ESQUIRE

1075 Peachtree Street

Suite 2500

Atlanta, Georgia  30309

404-885-1500

rdavis@seyfarth.com


Also Present:

Charlie Widner, videographer

Page 3

INDEX OF EXAMINATION

WITNESS    GREGORY A. VOSS, CORPORATE DESIGNEE,

TRANSAMERICA LIFE INSURANCE COMPANY

6    EXAMINATION                                    PAGE

8

9                            -o0o-

10

INDEX OF EXHIBITS

EXHIBITS          DESCRIPTION                     PAGE

Exhibit     Ground lease for property at

6610 Rockledge Dr., Bethesda,

Maryland

Exhibit TA-2  LinkedIn bio of Gregory Voss      10

Exhibit TA-3  Aegon organization website        21

page

Exhibit TA-   About Aegon Americas website       24

page

Exhibit TA-   Notice of 30(b)(6) deposition      53

Transamerica Life Insurance Co.

Exhibit TA-6  TLIC001210, telephone call log     60

12/10/2012-11/6/2014

1                    EXHIBITS CONTINUED

2    EXHIBIT              DESCRIPTION                    PAGE

3    Exhibit TA-7   TLIC002191, Letter to               78

4                   Mr. Camalier from

5                   Mr. Castelluccio, 5/22/2014

6    Exhibit TA-8   Notice of Default from              83

7                   Mr. Castelluccio to borrower,

8                   6/2/2014

9    Exhibit TA-9   TLIC002204, Notice of Default       92

10                  from landlord to tenant,

11                  7/12/2014

12   Exhibit TA-10  TLIC001191-92, Letter from          94

13                  Mr. Gorham to Rockledge

14                  Associates, 7/14/2014

15   Exhibit TA-11  TLIC001476, e-mail letter from 103

16                  Mr. Whittington to Mr. Gorham,

17                  7/15/2014

18   Exhibit TA-12  TLIC004582, e-mail exchange    104

19                  between G. Voss and K. Bendlage,

20                  1/26/2015

21   Exhibit TA-13  TLIC003617-18 and 3619-3629,    120

22                  E-mails between F. Minchella

23                  And G. Voss, 11/19-11/20/2014

24

25

1                           EXHIBITS CONTINUED

2    EXHIBIT             DESCRIPTION                    PAGE

3    Exhibit TA-14 TLIC00011-39, cover e-mail and   140
                     Agreement to consent to
                     Foreclosure sale, 5/8/2015

6    Exhibit TA-15 TLIC002365-66, Affidavit of      164
                     Purchaser Pursuant to MD
8                    Rule 14-305(b)

9    Exhibit TA-16 TLIC002371-77, Report of Sale    166

10   Exhibit TA-17 TLIC002238-2243, Memorandum of   165
                     Sale

12   Exhibit TA-18 TLIC002244-2248, Deed to         167
                     Transfer title, 10/19/2015

14   Exhibit TA-19 TLIC003408-3416, Memo from
                     G. Voss to Executive Real
                     Estate Committee,

17   Exhibit TA-20 TLIC003401-3407, draft version   180
18                   Of Loan Management Plan,
                     12/27/2021

                 TA-21 Loan Management Plan          181

                 TA-22 TLIC004576-4581, Emails/Corr. 221
                     J. Eggleston to M. Kinne,
                     07/2012

            (Original exhibits attached to
            Required Exhibits #1

1                    PROCEEDINGS

2              THE VIDEOGRAPHER:  This is the

3    videotaped deposition of Greg Voss taken by

4    the plaintiff in the matter of Rockledge

5    Associates, LLC, versus Transamerica Life

6    Insurance Company in the United States

7    District Court for the District of Maryland,

8    Greenbelt Division.  Civil Action Number

9    816-CV-00710 PWG.

10             This deposition is being held at

11   Seyfarth Shaw, LLP on 6/14/2016.  My name is

12   Charlie Widner from the U.S. Legal Support,

13   and I am the video specialist.  The court

14   reporter today is Lori Goodin also from U.S.

15   Legal Support.

16             We are going on the record at

17   10:17 a.m.

18             Counsel will now state their

19   appearances for the record.

20             MR. BOSCH:  Bill Bosch from the law

21   firm of Arnold & Porter on behalf of the

22   Plaintiff.

23             MS. DAVIS:  Rebecca Davis from

24   Seyfarth Shaw on behalf of the Defendant.

25             THE VIDEOGRAPHER:  Will the court

```
 1          reporter please swear in the witness and we
 2          can proceed.
 3                          GREGORY A. VOSS,
 4      a witness called for examination, having been
 5      first duly sworn, was examined and testified as
 6      follows:
 7                          EXAMINATION
 8      BY MR. BOSCH:
 9          Q.      Good morning, sir.  How are you?
10          A.      Good.
11          Q.      Welcome to Washington.
12          A.      Thanks.
13          Q.      Would you please state your full
14      name.
15          A.      Gregory Alan Voss.
16          Q.      By whom are you employed?
17          A.      Aegon USA Realty Advisors.
18          Q.      What is your current business
19      address?
20          A.      That is a good question.  4300
21      Edgewood Road in Cedar Rapids, Iowa.
22          Q.      Did you just move to that address?
23          A.      Well, we have a few different
24      buildings.  And so I was, that is our main
25      address.  I am in a separate building from that.
```

A259

1        Q.    Thank you.  By way of introduction,

2  as you heard my name is Bill Bosch, I represent

3  the plaintiffs in this case, Rockledge Associates

4  LLC, which I will refer to as Rockledge or the

5  landlord, okay?

6        A.    Okay.

7        Q.    You understand that you are

8  appearing today as a corporate representative of

9  Transamerica Life Insurance Company?

10       A.    Yes.

11       Q.    And, you understand that

12  Transamerica Life Insurance Company is the

13  defendant in a lawsuit brought by Rockledge in

14  connection with a nonpayment of ground rent.

15       A.    Yes.

16       Q.    All right.

17            Mr. Voss, let me hand you a document

18  that I have marked as TA Exhibit 1.  All of the

19  exhibits will be marked TA as Transamerica.  This

20  is a document marked TA-1?

21               (Exhibit Number TA-1

22               marked for identification.)

23  BY MR. BOSCH:

24       Q.    And, do you recognize Exhibit 1 as

25  the ground lease for the property located at 6610

1    Rockledge Drive in Bethesda, Maryland.

2         A.    Yes, it looks like the ground lease.

3         Q.    So, when I refer to the ground lease

4    you will understand that I'm referring to the

5    legal document that I have identified as

6    Exhibit 1.

7         A.    Okay.

8         Q.    And when I refer to the property,

9    you will understand that I'm referring to the

10   property at 6610 Rockledge Drive in Bethesda,

11   Maryland.

12        A.    Correct.

13        Q.    Mr. Voss, have you been deposed

14   before?

15        A.    I have not.

16        Q.    Welcome to the show.  Let me just

17   explain a few ground rules.  I'm sure your

18   attorney has gone over some of them with you.

19             But, the purpose of this deposition

20   is to take your testimony, and as you see to your

21   right, is a court reporter.  So, I would ask you

22   to allow me to finish asking my question before

23   you begin answering.

24        A.    Okay.

25        Q.    If you need a break, please let me

1    know and we can go ahead and take breaks.  Okay?

2                If you don't understand a question,

3    will you let me know?

4            A.    Okay.

5            Q.    Are you aware of any reason today

6    why you cannot testify fully and truthfully?

7            A.    No.

8            Q.    Is there -- all right.

9                Well, why don't you describe for me

10   briefly what your educational background is.

11           A.    I graduated from Drake University in

12   Des Moines, Iowa with a business major in finance

13   and insurance.

14           Q.    Do you have any education beyond

15   your degree from Drake?

16           A.    I do not.

17           Q.    You got a Bachelor of Arts?

18           A.    Yes.

19           Q.    Do you have any professional

20   certifications?

21           A.    No.

22           Q.    I'm going to mark as Exhibit 2 -- my

23   apologies.  I thought I had some extra copies of

24   this, but I do not.

25                (Exhibit Number TA-2

1          marked for identification.)

2    BY MR. BOSCH:

3          Q.    -- a document that I will identify

4    as your LinkedIn bio.  Will you just confirm that

5    Exhibit 2 is a copy of your LinkedIn bio?

6          A.    Yes, it looks like one that I --

7    yes.

8          Q.    Does this document accurately

9    reflect your work history since graduating from

10   Drake?

11         A.    Yes.

12         Q.    You graduated in 1989?

13         A.    Yes.

14         Q.    I see on the LinkedIn bio there is

15   reference to your employment by NBD Bank and then

16   Brenton Bank?

17         A.    Correct.

18         Q.    Can you describe generally what your

19   responsibilities were as the assistant vice

20   president for each of those banks?

21         A.    They were commercial banks.  So it

22   was commercial lending to businesses, lines of

23   credit, term loans, real estate, making loans,

24   handling deposit relationships.

25         Q.    You were a loan officer?

1        A.      Uh-huh.

2        Q.      I'm sorry, you have to verbalize it.

3        A.      Yes, sorry.

4        Q.      Thank you.  And what types of banks
5    were those?

6        A.      Commercial banks.

7        Q.      And then you joined Aegon Asset
8    Management in October of 1998?

9        A.      Yes.  Like I said, my employer is
10   really Aegon USA Realty Advisors which is kind of
11   under the Aegon Asset Management umbrella.

12       Q.      And you joined Aegon U.S. Realty.
13   How do we refer to that?  Is there a --

14       A.      If you want, AURA, A-U-R-A.

15       Q.      That makes it a lot easier.

16       A.      It is easier for me, too.

17       Q.      So, you joined AURA in October of
18   1998?

19       A.      Correct.

20       Q.      As a portfolio manager?

21       A.      At that time my title would have
22   been, I don't actually recall what my title was
23   when I joined.  I became a portfolio manager
24   maybe five years ago.

25       Q.      You are a portfolio manager today?

A264

1      A.     Correct.

2      Q.     What are your responsibilities as a
3  portfolio manager?

4      A.     Handle all sorts of activities
5  related to the loans that we make.

6              It would be anything from handling
7  an easement transaction, a, maybe a review of a
8  key lease on a property to anywhere up to when a
9  company has nonpayment of their loan payments.
10  Potential modifications and the like.

11      Q.     Can you recall any other
12  responsibilities in your capacity as portfolio
13  manager?

14      A.     I mean it is a wide range.  So, it
15  is a general summary of what I would do or
16  handle.

17      Q.     Is that general summary
18  representative of your responsibilities from the
19  time you became a portfolio manager about five
20  years ago through today?

21      A.     Yes.

22      Q.     And when we say five years ago just
23  to be clear, are we talking 2012, 2011?

24      A.     Well, i I, when I originally
25  joined, I was actually on the loan production

```
 1    Special Servicing Group, you were given those
 2    responsibilities by Mr. Randy Smith?
 3           A.    Correct.
 4           Q.    I take it from your answer there was
 5    a time when Mr. Smith no longer was your boss?
 6           A.    He is now retired.
 7           Q.    When did Mr. Smith have the good
 8    fortune to retire?
 9           A.    About a year ago.  Maybe a little
10    over a year.
11           Q.    Sometime in 2015?
12           A.    Yes.  Early 2015.
13           Q.    Was it before or after Transamerica
14    acquired title to the leasehold interest at issue
15    in this lawsuit?
16           A.    It would have been before.
17           Q.    Who assumed Mr. Smith's
18    responsibilities as your boss?
19           A.    David Feltman.
20           Q.    What is Mr. Feltman's title?
21           A.    He is an executive vice president.
22           Q.    Of AURA?
23           A.    I believe so, yes.
24           Q.    Is he located in Cedar Rapids?
25           A.    Yes.
```

1        Q.    Do you know if Mr. Smith has

2   remained in Cedar Rapids since his retirement?

3        A.    Yes, he has.

4        Q.    Have you had occasion to speak with

5   Mr. Smith in preparing for your deposition today?

6        A.    No.

7        Q.    Have you had occasion to speak with

8   Mr. Feltman in preparing for your deposition

9   today?

10       A.    No.

11       Q.    Do your responsibilities as part of

12   the Special Servicing Group include retaining

13   legal counsel?

14       A.    Yes.

15       Q.    The responsibilities you identified

16   in connection with th  property, do you have and

17   continue to have those responsibilities through

18   today?

19       A.    No.

20       Q.    Does anyone have those

    responsibilities?

         A.    Yes.  It, after we take title to a

    property, the asset then moves to our asset

    management group.

              Q.    Who has responsibility for this

```
 1    property within the asset management group?

 2         A.    Frank Minchella.

 3         Q.    Is Mr. Minchella located in Cedar

 4    Rapids?

 5         A.    He is actually in New York.

 6         Q.    Is he employed by AURA?

 7         A.    Correct.

 8         Q.    Did you have occasion to speak with

 9    Mr. Minchella in preparing for your deposition

10    today?

11         A.    I have not.

12         Q.    Do you know to whom Mr. Minchella

13    reports?

14         A.    Tom Schefter.

15         Q.    What was his title?

16         A.    I don't know his actual title.

17         Q.    Is he with AURA?

18         A.    Yes.

19         Q.    Where is he located?

20         A.    Cedar Rapids.

21         Q.    Is the asset management group

22    physically located in New York?

23         A.    We have two individuals in New York

24    and the rest in Cedar Rapids.

25         Q.    Do you have any understanding why
```

A268

```
1    Mr. Minchella specifically is responsible for the

2    asset management of this property?

3            A.    I do not.  That was Tom's decision.

4            Q.    I want to make sure I understand a

5    little bit more about the organization here,

6    because as you can tell --

7            A.    Sure.

8            Q.    -- I'm sure you probably know a

9    little more than I do.

10                 And Rebecca, you will have to

11   forgive me.  I thought I had a number of copies

12   of this.  I will show it to you before I show it

13   to the witness?

14                 I'm going to mark as Exhibit 3 a

15   page from the Aegon website.

16                     (Exhibit Number TA-3

17                     marked for identification.)

18   BY MR. BOOTH:

19           Q.    Do you recognize this document, sir?

20           A.    I really, to be honest don't go to

21   our website very frequently --

22           Q.    You see that it is a page from the

23   Aegon website with the heading Our Organization?

24           A.    Yes.

25           Q.    Does this document accurately
```

A269

1    reflect your understanding of the relationship

2    between Aegon Asset Management and Aegon USA

3    Realty Advisors LLC, the latter being the company

4    to which you are referring as AURA?

5         A.    Yes.

6         Q.    So, as described here, "Aegon Asset

7    Management is a business unit that brings

8    together the investment divisions of the Aegon

9    group"?

10        A.    Yes.

11        Q.    And Aegon USA Realty Advisors, LLC,

12   that is the company that employs you?

13        A.    Yes.

14        Q.    That company, your employer is a

15   wholly owned subsidiary of Aegon NV?

16        A.    Yes.

17        Q.    Aegon NV is an international

18   insurance and financial services organization

19   based in The Hague, Netherlands?

20        A.    Yes.

21        Q.    The defendant in this case is

22   Transamerica Life Insurance Company, correct?

23        A.    Yes.

24        Q.    Can you explain to me the corporate

25   relationship between your employer, Aegon USA

A270

1     Realty Advisors, LLC, and Transamerica Life

2     Insurance Company.

3         A.     We act as the, we use asset manager

4     for various assets of Transamerica.

5         I will refer to Transamerica Life

6     Investors as Transamerica if that is okay.

7         Q.     That is fine. And you say you act

8     as asset manager. Does that mean that AURA has

9     been hired by Transamerica to perform asset

10     management functions?

11         A.     Yes.

12         Q.     Can you describe to me what you mean

13     by asset management functions?

14         A.     We manage the real estate

15     investments that Transamerica has, in addition to

16     various bond portfolios and any, any of the

17     assets that Transamerica has, again asset

18     management or AURA managed those assets.

19         Q.     Do you have any understanding as to

20     whether there was a corporate relationship

21     between AURA and Transamerica Life Insurance

22     Company? Other than as an asset manager?

23         A.     Other than, it is all under one

24     umbrella so to speak, of ownership. Everything

25     rolls up into Aegon.

1      Q.    So, AURA is a corporate affiliate of

2  Transamerica?

3      A.    Correct.

4      Q.    Which rolls up into Aegon, the big

5  holding company in the Netherlands?

6      A.    Yes.

7      Q.    Let me hand you what I will mark as

8  TA Exhibit 4.  Which again is a website page,

9  that I took, I will represent that I took from

10  the Aegon website.

11           Rebecca, I'll let you see it first.

12             (Exhibit Number TA-4

13               marked for identification.)

14  BY MR. BOSCH:

15      Q.    Have you seen this document before,

16  Exhibit 4?

17      A.    Not this one specifically.  But,

18  something similar.

19      Q.    And you recognize this is a fact

20  sheet that was taken off of Aegon's website?

21      A.    It looks like it would be, yes.

22      Q.    It's titled About Aegon America,

23  dated April of 2016?

24      A.    Yes.

25      Q.    Is the description given by this

1    Aegon fact sheet, if you look at it in the upper
2    right-hand, upper left-hand corner, is that
3    description given generally consistent with your
4    understanding of Aegon's operations in the
5    Americas?
6          A.    Yes.
7          Q.    So, Aegon operates in the Americas
8    under the Transamerica brand?
9          A.    Yes.
10         Q.    Transamerica Life Insurance Company,
     that is the parent companies of the Aegon
12   companies that make up the Transamerica brand?
13         A.    Yes, Transamerica is kind of the
14   brand name for all of the companies.
15         Q.    And Transamerica is the company, at
16   least by reference to this fact sheet, that had
17   earnings before tax in 2015 of $1.332 billion?
18         A.    That is what it says down here.
19         Q.    And you don't have any reason to
20   dispute that, do you?
           A.    No.
22         Q.    Mr. Vos, going forward, I will try
23   to refer to Aegon USA Realty Advisors as AURA.
24         A.    Okay.
           Q.    And the Transamerica Life Insurance

Page 222

1    e-mail and then behind the cover e-mail are three

2    pages bearing Bates Numbers 4579 to 4581,

3    correct?

4         A.    Correct.

5         Q.    What are the three pages that I have

6    just identified?

7         A.    I have actually not seen these,

8    so --

9         Q.    Do they appear to you to be invoices

10   from the landlord for payment of the ground rent?

11        A.    It says Invoice on it.  I don't know

12   who prepared it or, but, yes, it is an invoice

13   for the ground rent.

14        Q.    Have you reviewed this, just looking

15   back at the cover e-mails, have you seen this

16   document before?  The e-mails with the

17   attachment?

18        A.    I don't remember the attachment.  I

19   don't know specifically if I remember this,

20   looking at this e-mail.

21        Q.    In the e-mails reflect a stream of

22   e-mails between and among Heather Boughey,

23   B-O-U-G-H-E-Y, forgive me if I have mispronounced

24   her name, and Frank Minchella, and then Jeff Bohr

25   is copied in, B-O-H-R, and Mary Kinne.

```
 1                   Do you know who Jeff Bohr is?

 2          A.      He is in our asset management group.

 3          Q.      And Mary Kinne?

 4          A.      She is in accounting.

 5          Q.      And we have spoken already about

 6   Frank Minchella.  You see that Heather is with

 7   CBRE; they were the receiver?

 8          A.      At this point she would have been

 9   the property manager.

10          Q.      Because at this point Transamerica

11   had acquired title to the leasehold interest?

12          A.      Correct.

13          Q.      And you haven't seen this e-mail

14   before?

15          A.      I don't recall seeing this, no.

16          Q.      And you see by reference to the

17   first page that Mary Kinne is asking Connie to

18   reply to your property manager with all of the

19   monthly ground rent for 6610 Rockledge.

20          A.      Okay.

21          Q.      And you see that then Connie, the

22   lead accountant for AURA provides the attachments

23   and also in her cover e-mail iden

     rent as being $94,877.69 monthly unti

25          A.
```

1      Q.    And when it increases to $97,877.69

2  for the next 12 months.

3      A.    Correct.

4      Q.    So, this represents AURA's, or I

5  should say Transamerica's understanding of what

6  the amount of ground rent is through the end of

7  May, 2016, does it not?

8      A.    I guess that is what Connie has

9  said.

10     Q.    And the attachments, they would

11  appear to be documents evidencing what the amount

12  of monthly rent has been historically under this

13  leasehold interest?

14     A.    That is what it looks like, yes.

15     Q.    And so the three documents would be

16  the amount of rent payable in October of 2015,

17  November of 2015, and then December of 2015?

18     A.    Yes.  I'm assuming because we would

19  have different accounting groups that would have

20  taken over once we owned title, or once we took

21  title.

22         It would have been Servicing's

23  accounting group that handled all of the payments

24  when I was still managing it, and then asset

25  management has their own accounting, accountants

Page 225

1    that would have processed payments.

2         Q.    And your understanding is that this

3    document, Exhibit 22, evidences accounting,

4    accounting for AURA asset management handling

5    payment of the ground rent?

6         A.    That is what it looks like, yes.

7         Q.    When did Transamerica decide to stop

8    paying ground rent?

9         A.    I believe in January.

10        Q.    January of 2016?

11        A.    I believe they did not make the

12   January 2016 payment.

13        Q.    Who made that decision?

14        A.    I believe it was Frank along with

15   Tom and Dave.

16        Q.    Can you be more specific?

17        A.    Frank Minchella, Tom Schefter and

18   Dave Feltman.

19        Q.    And you said I believe.  Do you know

20   that for a fact?

21        A.    I don't know that for a fact.

22        Q.    So, you are speculating that they

     were the ones who made the decision to stop

     paying ground rent?

          A.    Correct.

A277

# EXHIBIT L

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND
(Greenbelt Division)

| | |
|---|---|
| ROCK SPRING PLAZA II, LLC, <br><br> Plaintiff, <br><br> v. <br><br> INVESTORS WARRANTY OF AMERICA, LLC, et al., <br><br> Defendants. | Civil Action No. 8:20-cv-01502-PJM |

## DEFENDANT INVESTORS WARRANTY OF AMERICA, LLC'S <u>ANSWER TO PLAINTIFF'S FIRST SET OF INTERROGATORIES</u>

Defendant Investors Warranty of America, LLC ("IWA"), pursuant to Rule 33 of the Federal Rules of Civil Procedure, submits the following answers to Plaintiff Rock Spring Plaza II, LLC's First Set of Interrogatories (the "Interrogatories"), as follows:

### <u>OBJECTIONS TO INSTRUCTIONS AND DEFINITIONS</u>

1.      IWA objects to Plaintiff's Definitions to the extent they exceed the scope of discovery permitted by the Federal Rules of Civil Procedure and the Local Rules of the US District Court for the District of Maryland.

2.      IWA objects to Instruction 4 to the extent that it seeks information or documents protected by the attorney-client privilege, the work product doctrine, or any other applicable immunity, privilege, law, or rule.  Nothing contained in these responses or any production of documents by IWA is intended to be or may be construed as a waiver of the attorney-client privilege, the work product doctrine, or any other applicable immunity, privilege, law, or rule.

A279

3.      IWA objects to the definitions of "IWA," "RSD," "Assignee," "Transamerica," "RCC North America," "AEGON N.V" to the extent that such definitions purport to suggest that any such entity is not a lawfully formed legal entity, and that each entity is not a separate and distinct entity from any parent, subsidiary, or affiliate.  Accordingly, all responses to any interrogatory herein, when it refers to "IWA," "RSD," "Assignee," "Transamerica," "RCC North America," "AEGON N.V." shall not include or refer to any parent, subsidiary, or affiliate of the company identified.

4.      IWA objects to Plaintiff's Interrogatories, including the definitions and instructions, because they are not limited to matters at issue in or relevant to this litigation.

## RESERVATION OF RIGHTS

Any response to these Interrogatories is made subject to IWA's right to object to the admission of any and all such responses on the grounds they are irrelevant to the issues in this action or are otherwise inadmissible.  IWA responds to these Interrogatories subject to the accompanying objections, without waiving and expressly preserving all such objections.  IWA also submits these responses subject to, without intending to waive, and expressly preserving (a) any objection as to privilege or work product; and (b) the right to object to other discovery procedures concerning the subject matter of the interrogatories to which it responds herein.  These responses are based on IWA's present knowledge, information, and belief and are subject to amendment and supplementation as IWA acquires additional information or documents and completes its discovery of the facts underlying this case.

67409401v.2

A280

## SPECIFIC OBJECTIONS AND ANSWERS

## INTERROGATORIES

### INTERROGATORY NO. 1:

Identify in detail IWA's corporate members, including the amount of voting shares in IWA held by each member.

### ANSWER:

IWA objects to Interrogatory No. 1 because it seeks information that is not relevant to any party's claim or defense. IWA further objects to the interrogatory to the extent it presumes that IWA is not a discrete and separate legal entity from any parent, subsidiary, or affiliate of IWA. Subject to and without waiving its objections, IWA states that IWA is an Iowa domestic corporation that was originally formed on December 12, 1980. Investors Warranty of America, Inc. was converted to Investors Warranty of America, LLC on September 21, 2015. The member of IWA is RCC North America LLC. RCC North America LLC is a Delaware limited liability company formed on February 26, 2002. RCC North America LLC's sole member is Transamerica Corporation. Transamerica Corporation is a Delaware corporation formed on August 15, 2003. The sole shareholder of Transamerica Corporation is the AEGON Trust, which is located in The Hague, The Netherlands. The AEGON Trust is owned by AEGON International B.V., which is owned by AEGON N.V., both of The Hague, The Netherlands. AEGON N.V. is a publicly traded entity.

### INTERROGATORY NO. 2:

Describe in detail IWA's corporate relationship with AEGON N.V.

### ANSWER:

IWA objects to Interrogatory No. 2 because it seeks information that is not relevant to any party's claim or defense. IWA further objects to the interrogatory to the extent that it presumes that there is a direct relationship between IWA and AEGON N.V., or a direct

- 3 -

67409401v.2

A281

relationship between IWA and any other separate legal entity.  IWA further objects to the interrogatory to the extent it presumes that IWA is not a discrete and separate legal entity from any other corporate entity, including any parent, subsidiary, or affiliate of IWA.  Subject to and without waiving the preceding objections, IWA incorporates by reference its response to Interrogatory No. 1.

**INTERROGATORY NO. 3:**

Describe in detail IWA's corporate relationship with Transamerica.

**ANSWER:**

IWA objects to Interrogatory No. 3 because it seeks information that is not relevant to any party's claim or defense.  IWA further objects to the interrogatory to the extent that it presumes that there is a direct relationship between IWA and Transamerica, or a direct relationship between IWA and any other separate legal entity.  IWA further objects to the interrogatory to the extent it presumes that IWA is not a discrete and separate legal entity from any other corporate entity, including any parent, subsidiary, or affiliate of IWA.  Subject to and without waiving the preceding objections, IWA incorporates by reference its response to Interrogatory No. 1.

**INTERROGATORY NO. 4:**

Describe in detail IWA's corporate relationship with RCC North America.

**ANSWER:**

IWA objects to Interrogatory No. 4 because it seeks information that is not relevant to any party's claim or defense.  IWA further objects to the interrogatory to the extent that it presumes that there is a direct relationship between IWA and RCC North America, or a direct relationship between IWA and any other separate legal entity.  IWA further objects to the interrogatory to the extent it presumes that IWA is not a discrete and separate legal entity from

- 4 -

67409401v.2

A282

any other corporate entity, including any parent, subsidiary, or affiliate of IWA. Subject to and without waiving the preceding objections, IWA incorporates by reference its response to Interrogatory No. 1.

**INTERROGATORY NO. 5:**

Identify any and all persons from IWA who communicated with Transamerica, AEGON N.V., or RCC North America from June 1, 2006, to present in connection with the Ground Lease, Estoppel Agreement, or the Property, and describe when each communication occurred.

**ANSWER:**

IWA objects to Interrogatory No. 5 because it lacks a relevant temporal limitation since IWA had not association with the Property on June 1, 2006. IWA also objects to Interrogatory No. 5 because it is overly broad, unduly burdensome, and disproportionate to the issues presented in this litigation. IWA also objects to Interrogatory No. 5 to the extent that it seeks information or documents protected by the attorney-client privilege, the work product doctrine, or any other applicable immunity, privilege, law, or rule. IWA further objects to Interrogatory No. 5 because it is not one interrogatory, but three separate interrogatories. Subject to and without waiving the preceding objections, IWA is not presently aware of any communications with Transamerica, AEGON N.V., or RCC North America from June 1, 2006, to prior to the commencement of the litigation, in connection with the Ground Lease, Estoppel Agreement, or the Property. Transamerica was alerted to the litigation after it was filed. IWA is a separate legal entity that is distinct from Transamerica, AEGON N.V., and RCC North America, and day-to-day operations and assets are not directly controlled, managed, operated, maintained, or serviced by Transamerica, AEGON N.V., or RCC North America. IWA is still reviewing documents, and if any communications responsive to this Interrogatory are identified, IWA reserves the right to supplement its response to Interrogatory No. 5, and also reserves its rights

67409401v.2

under Rule 33(d) to refer Plaintiff to documents produced by IWA, any co-defendant, or any non-party.

**INTERROGATORY NO. 6:**

Describe in detail any IWA documents or communications concerning the financial performance of the Property, including any amounts due under the Ground Lease, IWA's ability to satisfy monthly rent payments under the Ground Lease from June 1, 2006 to September 1, 2017, and any efforts to sublease the Property or assign Tenant's interest in the Property.

**ANSWER:**

IWA objects to Interrogatory No. 6 on the grounds that it is overly broad, unduly burdensome, and disproportionate to the issues presented in this litigation because, among other reasons, IWA did not foreclose on the Ground Lease until 2012. IWA also objects to Interrogatory No. 6 because it seeks information that is equally, if not more available, to Landlord than IWA. Specifically, and as Landlord is aware, its affiliate, Original Tenant was responsible for payment of rent under the Ground Lease up until the foreclosure in 2012. Moreover, as Landlord also is aware, IWA paid rent when it was the tenant under the Ground Lease. IWA also objects to Interrogatory No. 6 to the extent that it seeks information or documents protected by the attorney-client privilege, the work product doctrine, or any other applicable immunity, privilege, law, or rule. Subject to and without waiving the preceding objections, pursuant to Rule 33(d) of the Federal Rules of Civil Procedure, IWA refers Landlord to documents produced by IWA containing information as to attempts to market and lease the Property to potential tenants and the financial performance of the Property.

**INTERROGATORY NO. 7:**

Identify each person or entity, including IWA, who communicated with Attorney Robert W. Barron concerning the August 31, 2017 Letter from Tenant to Landlord regarding Tenant's assignment of its interest in the Ground Lease to RSD.

67409401v.2

A284

**ANSWER:**

IWA objects to Interrogatory No. 7 on the grounds that it is overly broad, unduly burdensome, and disproportionate to the issues presented in this litigation in that it seeks to place an impermissible burden on IWA to respond on behalf of other parties.  IWA further objects to this interrogatory to the extent it suggests that Robert W. Barron represents, or has represented IWA.  The letter was issued by IWA to Landlord on August 31, 2017, and directs that Landlord contact Mr. Barron, counsel for RSD, with any post-assignment questions.  Subject to and without waiving the preceding objections, IWA is not represented by Mr. Barron, and IWA is not aware of any communications directly between IWA and Mr. Barron regarding the August 31, 2017 letter, but to the extent there were any communications, they likely would have been between Mr. Barron and counsel for IWA.  IWA is still reviewing documents, and if any communications responsive to this request are identified, IWA reserves the right to supplement its response to Interrogatory No. 7, and also reserves its rights under Rule 33(d) to refer Plaintiff to documents produced by IWA, any co-defendant, or any non-party.

**INTERROGATORY NO. 8:**

Describe in detail the business reasons surrounding the creation of, and acquisition of voting shares in, RSD, including the purposes and objectives of RSD and the purposes for which RSD intends to use the Property, and identify all related documents and communications.

**ANSWER:**

IWA objects to Interrogatory No. 8 on the grounds that it is overly broad, unduly burdensome, and disproportionate to the issues presented in this litigation.  IWA further objects as to relevance, and to the extent that it seeks confidential and proprietary business and financial information.  Also, IWA object on the grounds that RSD and IWA are separate legal entities, and that to the extent it seeks communications from RSD that are better obtained through requests to RSD.  IWA also objects to this interrogatory to the extent that it seeks information or documents

- 7 -

67409401v.2

protected by the attorney-client privilege, the work product doctrine, or any other applicable immunity, privilege, law, or rule.

Subject to and without waiving the preceding objections, when Original Tenant was the tenant and before the foreclosure in 2012, the tenant vacated the Property. As such, prior to the 2012 foreclosure, the Property was vacant. After foreclosing on the Property in 2012, IWA made necessary repairs to the improvements and multiple systems, and sought assistance from multiple commercial real estate professionals to lease the Property. IWA also tried to work with Landlord to adjust the ground rent under the Ground Lease to help make the Property more marketable. Landlord, an affiliate of Original Tenant, declined to assist IWA with any efforts to increase the marketability or appeal of the Property.

In 2017, IWA began discussions with Algon Group, LLC ("Algon"), regarding a possible relationship to facilitate the marketing and leasing, and possibly even the sale, of the leasehold interest created by the Ground Lease. Algon has substantial expertise relevant to the Property, including expertise in financial restructuring and maximizing value of real estate assets. After arms-length negotiations, Algon and IWA formed a new company, RSD, which has an IWA member and Longshore Ventures, LLC. Longshore Ventures contributes and is compensated for its asset management, accounting, operational, and restructuring expertise, and Longshore is further compensated through the proceeds through its membership interest. Longshore Ventures, LLC also was retained to perform property management services, and is paid a monthly management fee for those services.

Subject to and without waiving the preceding objections, pursuant to Rule 33(d) of the Federal Rules of Civil Procedure, IWA refers Landlord to documents produced by IWA

A286

containing information responsive to Interrogatory No. 8, including the Operating Agreement for

RSD, RSD's Articles of Incorporation, and the Management Agreement.

**INTERROGATORY NO. 9:**

Describe in detail the circumstances surrounding Original Tenant assigning its interest in
the Property to IWA.

**ANSWER:**

IWA also objects to Interrogatory No. 9 because it seeks information that is equally, if

not more available, to Landlord than IWA,  IWA further objects because Interrogatory No. 9

relies on a false premise that Original Tenant simply assigned its interest in the Property to IWA.

Subject to and without waiving the preceding objections, IWA responds that on January

13, 2012, Investors Warranty of America, Inc. and Original Tenant entered into an Agreement to

Consent to Foreclosure Sale ("Foreclosure Agreement").    Pursuant to the Foreclosure

Agreement, Original Tenant agreed that Investors Warranty of America, Inc., as beneficiary

under that certain Amended and Restated Deed of Trust, Security Agreement and Fixture Filing

dated June 2, 2006, could proceed with a foreclosure sale.   Thereafter, by virtue of foreclosure

proceedings commenced in the Circuit Court for Montgomery County, Maryland in Civil Action

No. 358310V, the leasehold interest created by the Ground Lease was sold on February 28, 2012,

to Investors Warranty of America, Inc. for $3,700,000.  The Circuit Court for Montgomery

County, Maryland ratified the aforesaid foreclosure sale by Order entered August 24, 2012.  By

that certain Trustee's Deed of Assignment dated August 28, 2012, by and between John P.

Machen, as Trustee and Investors Warranty of America, Inc., the Original Tenant's leasehold

interest was conveyed to Investors Warranty of America, Inc.  Investors Warranty of America,

Inc. was then converted to IWA via Articles of Conversion to a Limited Liability Company dated

September 15, 2015.

67409401v.2

A287

**INTERROGATORY NO. 10:**

Describe in detail any and all consideration received by RSD from IWA related to the assignment of the Ground Lease to RSD and identify all documents demonstrating that consideration was received.

**ANSWER:**

IWA objects to Interrogatory No. 10 on the grounds that it is overly broad, unduly burdensome, and disproportionate to the issues presented in this litigation. IWA further objects to this interrogatory on the basis of relevance, and to the extent that it seeks confidential and proprietary business and financial information. IWA also objects to Interrogatory No. 10 to the extent that it seeks information or documents protected by the attorney-client privilege, the work product doctrine, or any other applicable immunity, privilege, law, or rule. Also, IWA objects to Interrogatory No. 10 on the basis that it seeks an improper legal conclusion.

Subject to and without waiving the preceding objections, IWA incorporates by reference its response to Interrogatory No. 8. Responding further, among other consideration, RSD received from IWA all rights to the Property created by the Ground Lease, and the opportunity to lease, and realize profits from either the lease or the Property or sale of the leasehold interest created by Ground Lease. RSD also has received consideration in the form of cash for asset management.

Subject to and without waiving the preceding objections, pursuant to Rule 33(d) of the Federal Rules of Civil Procedure, IWA refers Landlord to documents produced by IWA containing information responsive to Interrogatory No. 10, including the Operating Agreement for RSD and the Management Agreement.

**INTERROGATORY NO. 11:**

Describe in detail the business reasons concerning IWA's assignment of its interest in the Ground Lease to RSD.

- 10 -

67409401v.2

A288

**ANSWER:**

IWA objects to Interrogatory No. 11 on the grounds that it is overly broad, unduly burdensome, and disproportionate to the issues presented in this litigation. IWA further objects to this interrogatory on the basis of relevance, and to the extent that it seeks confidential and proprietary business and financial information. Also, IWA objects to the use of the term "business reasons" because the term is vague and ambiguous, and could be interpreted to have various meanings. IWA also objects to this interrogatory to the extent that it seeks information or documents protected by the attorney-client privilege, the work product doctrine, or any other applicable immunity, privilege, law or rule.

Assuming that the interrogatory is requesting information as to why IWA assigned its interest in the Ground Lease to RSD, subject to and without waiving the preceding objections, IWA incorporates by reference its responses to Interrogatory Nos. 8 and 10. Also, the assignment was made because the manager of RSD has particular expertise in maximizing the value of underperforming real estate assets. The business relationship between IWA and RSD was negotiated at arms-length, and both members of RSD are receiving mutual benefits from the current arrangement.

**INTERROGATORY NO. 12:**

Describe in detail any communications and related documents between IWA, RSD, and Transamerica regarding IWA's assignment of its interest in the Ground Lease to RSD.

**ANSWER:**

IWA objects to Interrogatory No. 12 on the grounds that it is overly broad, unduly burdensome, and disproportionate to the issues presented in this litigation. IWA further objects as to relevance, and to the extent that it seeks confidential and proprietary business and financial information. IWA further objects on the grounds that it presumes certain communications took

- 11 -

67409401v.2

A289

place or existed. Furthermore, IWA objects to Interrogatory No. 12 on the basis that it seeks to

place an impermissible burden on IWA to respond on behalf of other parties. Also, IWA objects

to this interrogatory to the extent that it seeks information or documents protected by the

attorney-client privilege, the work product doctrine, or any other applicable immunity, privilege,

law or rule.

Subject to and without waiving the preceding objections, pursuant to Rule 33(d) of the

Federal Rules of Civil Procedure, IWA refers Landlord to documents produced by IWA

containing information responsive to Interrogatory No. 12.

**INTERROGATORY NO. 13:**

Describe in detail why IWA failed to record the assignment of the Ground Lease as
required by Maryland law.

**ANSWER:**

IWA further objects to this interrogatory on the basis of relevance, and to the extent that

it seeks confidential and proprietary business and financial information. IWA also objects to

Interrogatory No. 13 to the extent that it seeks information or documents protected by the

attorney-client privilege, the work product doctrine, or any other applicable immunity, privilege,

law, or rule. Also, IWA objects to Interrogatory No. 13 on the basis that it seeks an improper

legal conclusion.

Subject to and without waiving the preceding objections, IWA does not believe it was

required to record the assignment of the Ground Lease.

**INTERROGATORY NO. 14:**

Identify any and all persons and entities that IWA considered as a potential subtenant or
assignee to the Property and describe in detail any communications concerning each person or
entity.

67409401v.2

A290

**ANSWER:**

IWA objects to Interrogatory No. 14 on the grounds that it is overly broad, unduly burdensome, and disproportionate to the issues presented in this litigation.  IWA further objects as to relevance, and to the extent that it seeks confidential and proprietary business and financial information.  IWA also objects to this interrogatory to the extent it relies on a false premise that the tenant under the Ground Lease is required or obligated to consider potential subtenants or assignees.   Also, IWA objects to this interrogatory to the extent that it seeks information or documents protected by the attorney-client privilege, the work product doctrine, or any other applicable immunity, privilege, law, or rule.  Subject to and without waiving the preceding objections, prior to the assignment, IWA investigated the possibility of leasing space through multiple real estate brokers, including CBRE, Cushman & Wakefield, and Jones Lang LaSalle.  RSD has communicated with multiple high-end brokers that service Bethesda, and has also considered requests for proposals from Marriott and the General Services Administration.  Pursuant to Rule 33(d) of the Federal Rules of Civil Procedure, IWA refers Landlord to documents produced by IWA containing information responsive to Interrogatory No. 14, including the March 30, 2018 letter from Berger Singerman attached as Exhibit D to the Complaint.

**INTERROGATORY NO. 15:**

Identify the sources of all funds used in connection with the operation, maintenance, and payment of ground rent for the Property, including the identity of the owners of any accounts used to fund the operation, maintenance, and payment of ground rent for the Property.

**ANSWER:**

IWA objects to Interrogatory 15 on the basis of relevance, and to the extent that it seeks confidential and proprietary business and financial information.  Subject to and without waiving the preceding objection, sources of the funding for the operation, maintenance, and payment of

- 13 -

67409401v.2

A291

ground rent for the Property are considered membership contributions of IWA, as described in

that certain Operating Agreement, as amended.  Pursuant to Rule 33(d) of the Federal Rules of

Civil Procedure, IWA also refers Landlord to documents produced by IWA containing

information responsive to Interrogatory No. 15.

**INTERROGATORY NO. 16:**

Identify the date and time you first contacted an attorney to represent you concerning the underlying allegations in this case and identify the name, address, and telephone number of the attorney.

**ANSWER:**

IWA objects to this Interrogatory as to relevance, and also to the extent that it seeks

confidential and proprietary business and financial information.  Also, IWA objects to this

interrogatory to the extent that it seeks information or documents protected by the attorney-client

privilege, the work product doctrine, or any other applicable immunity, privilege, law or rule.

Subject to and without waiving the preceding objections, IWA believes it was first represented

concerning the underlying allegations in this case in 2012, and that such representation related to

Original Tenant's default of its loan obligations, and the subsequent foreclosure on the Property.

67409401v.2

A292

## VERIFICATION

I, Gregory Voss, Senior Director at AEGON USA Realty Advisors, LLC, have read the foregoing responses to interrogatories.  The information in these responses has been obtained from persons familiar with the subject matter of the litigation, whom I believe reliable and capable of ascertaining the facts stated therein.  As to those matters set forth in the responses about which I have personal knowledge, I believe these answers to be true; as to those matters on which I have no personal knowledge and am relying upon those who have prepared those answers, I have no reason to believe those answers are not true.

Gregory Voss

67409401 v.2

A293

DATED: January 13, 2020

Respectfully submitted,

SEYFARTH SHAW LLP

By: */s/ Anthony J. LaPlaca*
    Edward V. Arnold, Bar No. 29401
    earnold@seyfarth.com
    Anthony J. LaPlaca, Bar No. 20885
    alaplaca@seyfarth.com
    975 F Street, NW
    Washington, D.C. 20004
    Telephone:  (202) 463-2400
    Facsimile:  (202) 828-5393

    Rebecca A. Davis (*admitted pro hac vice*)
    (Georgia Bar No. 141711)
    rdavis@seyfarth.com
    1075 Peachtree Street NE, Suite 2500
    Atlanta, Georgia 30309
    Telephone:  (404) 885-1500
    Facsimile:  (404) 892-7056

    *Counsel for Defendant Investors Warranty*
    *of America, LLC*

- 16 -

A294

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND
(Greenbelt Division)

| | |
|---|---|
| ROCK SPRING PLAZA II, LLC,    ) | |
| )  | |
| Plaintiff,    ) | |
| )  | |
| v.    ) | Civil Action No. 20-cv-01502-PJM |
| )  | |
| INVESTORS WARRANTY OF AMERICA,    ) | |
| LLC, et al.    ) | |
| )  | |
| Defendants.    ) | |
| )  | |

## CERTIFICATE OF SERVICE

I hereby certify that on this day, a true and accurate copy of the foregoing was served via

U. S. Mail, proper postage affixed, and electronic mail on Plaintiff's counsel of record, addressed

as follows:

Preston Smith
ARNOLD & PROCTER KAYE SCHOLER LLP
601 Massachusetts Avenue, N.W.
Washington, DC  20001-3743
preston.smith@arnoldporter.com

This 13th day of January, 2021.

Respectfully Submitted,

SEYFARTH SHAW LLP

By:  _/s/ Edward V. Arnold_
Edward V. Arnold, Bar No. 29401
earnold@seyfarth.com
Anthony J. LaPlaca, Bar No. 20885
alaplaca@seyfarth.com
975 F Street, NW
Washington, D.C. 20004
Telephone:  (202) 463-2400
Facsimile:  (202) 828-5393

- 17 -

67409401v.2

A295

Rebecca A. Davis (*admitted pro hac vice*)
(Georgia Bar No. 141711)
rdavis@seyfarth.com
1075 Peachtree Street NE, Suite 2500
Atlanta, Georgia 30309
Telephone:  (404) 885-1500
Facsimile:   (404) 892-7056

*Counsel for Defendant Investors Warranty of*
*America, LLC*

**UNITED STATES DISTRICT COURT**
**DISTRICT OF MARYLAND**

PETER J. MESSITTE
UNITED STATES DISTRICT JUDGE

6500 CHERRYWOOD LANE
GREENBELT, MARYLAND 20770
301-344-0632

## MEMORANDUM

To:        Counsel of Record

From:      Judge Peter J. Messitte

Re:        Rock Spring Plaza II, LLC v. Investors Warranty of Am., LLC
           Civil No. 20-1502 PJM

Date:      March 15, 2023

********

Plaintiff Rock Spring Plaza II, landlord on a ground lease in Montgomery County, has sued Defendant Investors Warranty of America ("IWA") as tenant under the ground lease, alleging among other things that IWA has attempted to break the lease by assigning it to Defendant Rock Springs Drive ("RSD"), who Plaintiff suggests is essentially a sham entity. Plaintiff has argued, for example, that the purported assignment was made in secret; that the proposed assignee RSD only came into existence at virtually the same time the assignment to it was made; that RSD refused to provide basic information to Plaintiff, such as who its principals were and what its capitalization was; and that no deed of assignment was ever filed in the land records of the County.

Plaintiff contends that IWA's actions suggest that it has acted fraudulently in the transaction.

As part of the discovery in the case, Plaintiff, invoking the crime-fraud exception to the rule of attorney-client privilege, is seeking to discover correspondence between IWA and its attorneys that might buttress its claim of fraud (the Court does not understand that Plaintiff is alleging any crime on IWA's part).

The parties have already briefed, to a fair extent, the issue of the crime – fraud exception. At an oral hearing held on February 16, 2023, the Court ordered IWA's counsel submit to chambers for *in camera* review approximately 190 attorney-client exchanges. Upon review of the documents, the Court identified three (3) exchanges that it determined might be relevant to Plaintiff's fraud theory. However, before ordering release of the documents, the Court gave IWA's counsel ten (10) days to respond to the Court's tentative view by filing an appropriate *ex parte* pleading.

IWA's counsel did so, in the form of an eight-page single-spaced letter.

In their response, IWA's counsel went well beyond what the Court had in mind. In a form which was as much a stern lecture to the Court as conventional argument, IWA's counsel in effect re-argued the law of the crime – fraud exception and suggested that the Court could not "release" the documents but that it could only order counsel to "produce" the documents, which IWA's

1

counsel would only do in accord with what they took to be their client's rights under certain case law. Further, IWA's counsel made mention of seeking "mandamus" review if the Court failed to act in accordance with their wishes.

Importantly, IWA's counsel devoted only a small section of their submission to the actual documents the Court determined might be relevant. The vast bulk of the submission was, and is, exclusively legal in nature. Counsel to IWA's argument, in essence, urges the Court to reconsider the crime-fraud exception issue. But counsel to IWA's view of the law is no more than that – their view. In fairness, Plaintiff's counsel are entitled to respond to and, to the extent they wish or are able to do so, to rebut counsel to IWA's legal submissions.

The Court will not consider counsel for IWA's arguments on an *ex parte* basis.

That leaves IWA's counsel with but a few options. Allowing that IWA's counsel were told they might proceed *ex parte* they can:

1. Agree that the Court, after redacting the small section of their submission discussing the questioned documents, may deliver the full contents of their submission to Plaintiff's counsel;

2. Withdraw the submission and file a more conventional legal brief, seeking reconsideration of the crime-fraud exception, copy to Plaintiff's counsel, setting forth the legal argument they have sought to make *ex parte*;

3. Proceed, as in Item 2, but agree to have their original submission remain under seal.

IWA's counsel shall have five (5) days from the date of this Order to choose which option they wish to pursue. They shall make their decision in writing, copy to Plaintiff's counsel.

Despite the informal nature of this ruling, it shall constitute an Order of the Court and the Clerk is directed to docket it accordingly.

Peter J. Messitte
United States District Judge

CC:    Court File

2

A298

 **Seyfarth**

**Seyfarth Shaw LLP**
1075 Peachtree Street, N.E.
Suite 2500
Atlanta, Georgia  30309-3958
**T** (404) 885-1500
**F** (404) 892-7056

rdavis@seyfarth.com
T (404) 888-1874

www.seyfarth.com

<u>**FILED VIA ECF**</u>

March 20, 2023

Hon. Peter J. Messitte
U.S. District Court for the District of Maryland
6500 Cherrywood Lane
Greenbelt, MD 20770

   Re:  *Rock Spring Plaza II, LLC v. Investors Warranty of America, LLC*, No. 20-cv-1502 PJM

Dear Judge Messitte:

   Defendant Investors Warranty of America, LLC ("IWA") has reviewed the Court's Memorandum Order dated March 15, 2023 (the "Order"), in which the Court directed IWA to elect, within five (5) days of the Order, one of three options under which IWA will proceed.  IWA has chosen Option 3, and thus elects to allow its original submission to remain under seal and IWA will file a legal brief setting forth the legal argument made in its original submission.

   Plaintiff Rock Spring Plaza II, LLC ("Plaintiff") took the deposition of IWA's corporate witness pursuant to Fed. R. Civ. P. 30(b)(6) on March 16 and 17, 2023.  Since Plaintiff's corporate witness is being deposed on March 21 and 22, 2023, for purposes of a briefing schedule, unless the Court directs otherwise, IWA proposes to file its brief on Monday, March 27, 2023.

Respectfully,

SEYFARTH SHAW LLP

/s/*Rebecca A. Davis*

Rebecca A. Davis


cc:  Counsel of Record

A299

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND
GREENBELT DIVISION

| | |
|---|---|
| ROCK SPRING PLAZA II, LLC, | |
| Plaintiff, | |
| v. | Civil Action No.  8:20-cv-01502-PJM |
| INVESTORS WARRANTY OF AMERICA, LLC, et al., | |
| Defendants. | |

**DEFENDANT INVESTORS WARRANTY OF AMERICA, LLC'S BRIEF, PURSUANT TO THE COURT'S MARCH 15, 2023 ORDER, IN SUPPORT OF RECONSIDERATION OF THE APPLICABILITY OF THE CRIME-FRAUD EXCEPTION**

Defendant Investors Warranty of America, LLC ("IWA"), by and through its attorneys, and pursuant to the Court's March 15, 2023 Order, hereby files this brief responding to, and seeking reconsideration of, the Court's preliminary determination that three of IWA's privileged documents are relevant to Plaintiff's fraud claim and may be subject to production.  For the reasons set forth herein, IWA requests that the Court reconsider and reverse its preliminary determination.

**FACTUAL BACKGROUND**

Plaintiff Rock Spring Plaza II, LLC ("Plaintiff") filed its Motion to Compel and Request for In Camera Review (ECF-238), and by the motion sought the Court's review of IWA's privileged communications based on Plaintiff's theory that the documents would expose a "fraudulent scheme" by IWA to convey the Ground Lease[1] to Rock Springs Drive, LLC ("RSD") to avoid future liability and thus subject the otherwise clearly privileged communications to

---

[1] Capitalized terms not otherwise defined herein shall have the meanings ascribed to them in IWA's Memorandum of Points and Authorities in Support of IWA's Motion to Dismiss Count I of Plaintiff's Second Amended Complaint (ECF-208-1).

A300

production and discovery.  However, there has never been any fraudulent scheme by IWA, and moreover IWA has never hidden why it made the Assignment.

As IWA has already extensively briefed, there are two relevant contracts between the parties - the Ground Lease and the Estoppel Agreement – both of which expressly authorized the Assignment.  Moreover, both contracts specifically state that in the event of the Assignment, IWA is relieved from any further obligations under the Ground Lease.  Plaintiff executed both of these contracts, and in fact drafted the language in the Ground Lease that authorized the Assignment.

IWA also has repeatedly acknowledged that it had legal counsel review the relevant contracts prior to making the Assignment, and IWA has acknowledged that it reasonably anticipated litigation would result from the Assignment, regardless of the clear terms of the agreements, based on prior experience with the Camalier family and their litigious nature.

Given that Plaintiff's litigation counsel immediately communicated with RSD after the assignment, it is clear that Plaintiff also anticipated litigation regarding the Ground Lease.  *See*, *e.g*, Compl. Ex. C.

Given the reasonable expectation of litigation, IWA identified and analyzed potential claims Plaintiff would likely assert, including a potential fraudulent conveyance claim, and sought the advice of outside counsel regarding those issues.  The Court has already noted Plaintiff's actual awareness of IWA's attorney's analysis of the contract, and  identification and analysis of potential claims.  Hr'g. Tr. 66:21-23 ("Well, wait a minute now.  You have this information.  You can use it to make your argument, can't you?    I mean, what more do you get if I look at in camera documents?")

Nevertheless, at the February 16, 2023, hearing (the "Hearing"), over Defendants' objections, the Court stated that it would review in camera certain of IWA's privileged

2

A301

communications characterized by Plaintiff as being potentially "relevant" to Plaintiff's frivolous theory that the documents would show that IWA's attorneys were instructing IWA to hide that IWA was a partner in the RSD joint venture and that IWA's attorneys told IWA not to record the Assignment.  Hr'g  Tr. 65:13-68:16.

First, even if Plaintiff's allegations were true, the conduct alleged would not give rise to a cause of action for fraudulent conveyance under Maryland Law.  *See* MD COML § 15-207.

Second, Plaintiff's theory is frivolous, simply wrong, and Plaintiff knows it.

Multiple times during the Hearing, the Court acknowledged that it did not see fraud, and although the Court identified no criminal activity by IWA, it nonetheless believed that IWA "remained on the hook" after the assignment as a surety for the liabilities of RSD.[2]  Given that the Court did not find tortious or criminal activity that would warrant application of the crime-fraud exception, IWA is left with the conclusion that the Court is proceeding to review IWA's privileged documents only on a contract-based theory, buttressed by its view that IWA remains liable for RSD's obligations under the assigned Ground Lease.[3]

_____

[2] Hr'g Tr.: 10:11-22; 13:1-5; 16:6-14; 18:23-19:24; 20:12-19; and 28:1-19.

[3] The Court suggested that its decision was based largely on the transaction stating there was:

> [A] lot of hidden dealing going on defendants' side and clearly they were trying to hide information from the landlord about what they were trying to accomplish. Presumably, I don't know that this is absolutely the inference, but presumably to think they could walk away unscathed from this which I don't think they could. But that was what was going on. Was it fraudulent? Well, I don't know whether it's fraudulent or not. It does fortify the conclusion that they would be on the hook anyway because they were so intimately involved in trying to engineer this kind of transaction.

(Hr'g Tr. 78:18-79:4)

A302

After IWA delivered the privileged and attorney work product documents for the Court to review, IWA exchanged ex parte communications with the Court (ECF-288 and 289). On March 15, 2023, the Court filed its Memorandum Order (the "March 15 Order") stating that it reviewed 190 documents, and determined that three (3) exchanges may be "relevant" to and "might buttress" Plaintiff's fraud theory. (ECF-290). The Court did not, however, explain how the documents are "relevant," and most certainly did not explain why they should be produced pursuant to the crime-fraud exception to the attorney client privilege and the attorney work product protection.

## **INTRODUCTION**

Plaintiff cannot and has not demonstrated actual fraudulent intent required for the crime-fraud exception to apply, and there is nothing in the documents that meets that standard. Moreover, and equally fatal to the Court's proposal to release IWA's privileged documents (containing the protected legal advice of IWA' outside legal counsel), is the denial of substantive and procedural due process to Defendants because they have not been afforded an opportunity to present evidence in defense of the attorney-client privilege. Defendants were not given an opportunity at the Hearing to explain or properly contextualize the documents that Plaintiff knowingly mischaracterized as evidence of a nonexistent fraud.

Moreover, IWA's corporate witness, David Feltman, has now given testimony which refutes the contentions that Plaintiff offers as the basis of its fraud claim. But even still, IWA is also very troubled by the fact that the Court disregarded and did not consider the only sworn testimony adduced at the time of the Hearing that explained why the documents that Plaintiff relied on in its arguments do not demonstrate fraud. The overlooked testimony at the Hearing, a declaration by David Feltman, explains the reasons behind the Assignment and refutes Plaintiff's baseless contentions of fraud.

A303

Since the Hearing, during IWA's corporate deposition, Mr. Feltman also addressed some of the reasons that the Assignment was not recorded, and why IWA did not want to share its proprietary and confidential information with a company that IWA knew would ultimately sue it. Mr. Feltman also confirmed that IWA had anticipated litigation between IWA and Plaintiff as early as 2016, which is why IWA sought legal advice from its outside counsel, including as to potential defenses to expected fraudulent conveyance claims. In other words, IWA did exactly what it was supposed to do - it sought legal interpretations of contracts and advice as to potential litigation concerns.

The Court now has reviewed many of IWA's attorney-client privileged communications, and has not identified any tortious or criminal activity for which legal advice was sought, has not identified legal advice given to perpetrate the unidentified tortious or criminal activity, nor has the Court identified any legal advice given that goes beyond what would reasonably be expected for a party anticipating litigation. Nevertheless, citing to mere "relevance", the Court has warned of its intent to release to Plaintiff certain communications that include IWA's communications with its attorneys. Given the absolute irreparable harm that the Court's release to Plaintiff of IWA's privileged documents will have on Defendants, given the absence of substantive and procedural due process in the Court's manner of stripping IWA of its attorney-client privilege, and given the increased probability of reversible error embedded in the Court's proposed release of IWA's attorney-client privileged documents, IWA respectfully requests that the Court reconsider and reverse its position and not release IWA's privileged communications.

First, placing such communications in the hands of Plaintiff would be highly prejudicial to Defendants, would do irreparable harm to Defendants, and would wrongly reward Plaintiff with an unfair advantage, but at the same time would not advance the case. As detailed further below,

A304

the parties in this case knew even before the privileged communications were drafted that the Ground Lease would be the subject of litigation, and the legal advice received by IWA merely supports the decision to assign the Ground Lease based on the legal interpretation of two contracts.

Second, although the Court agreed to conduct an in camera review of IWA's privileged documents, Plaintiff has not demonstrated the prima facie case of fraud or criminal conduct necessary to authorize a crime-fraud hearing, and the Court has not conducted a crime-fraud hearing nor made findings of fact and conclusions of law that would support an order that attorney-client privileged and attorney-work product documents be produced under the crime-fraud exception.

Third, beyond stating that the documents may be "relevant" to Plaintiff's fraud case, the Court has not articulated its analysis and conclusions for its intended release of IWA's attorney-client privileged and attorney work product communications. Again IWA is denied substantive and procedural due process in that IWA has not been afforded a fair opportunity to address the Court's concerns, nor has the Court fairly and clearly articulated its outcome determinative analysis.[4]

The Court has already stated how it believes it will rule in this case and has suggested that it intends to hold IWA liable for the payment of ground rent over the next 67 years, despite contracts that Plaintiff executed that provided advance assent to the Assignment. Plaintiff does

---

[4] The Court should also refrain from causing the production of or releasing IWA's privileged documents based on IWA's Motion to Strike (ECF-132). On December 23, 2022, Plaintiff SERVED IWA with Plaintiff's Motion to Compel and Request for In Camera Review (the "Motion"), but did not prior to serving the Motion seek to meet and confer with IWA as to Plaintiff's request for in camera review. Thereafter, Plaintiff FILED the Motion and Plaintiff's Reply in Support of the Motion, again without ever seeking to meet and confer with IWA. IWA filed a Motion to Strike the Motion based on Fed. R. Civ. P. 37 and L.R. 104.7 and 104.8, which each make clear that a meet and confer among the parties is not an election, but a requirement, and that the Court cannot hear the Motion if the procedures are not followed.

A305

not need any further advantage in this case, and the wrongful release by the Court of IWA's attorney-client privileged and attorney work product documents, especially in a case where the elements of fraud cannot be met, is a bell that cannot be unrung. However, if the Court refuses to reconsider and reverse its position on the release to Plaintiff of IWA's privileged and work product documents, IWA requests that the Court not participate in the exchange of documents , but instead issue a formal order directing IWA to produce its own documents so that IWA may follow the instructions of the United States Supreme Court in *Mohawk Industries, Inc. v. Carpenter*, 558 U.S. 100 (2009).[5]

## ARGUMENT

### I.    The Crime-Fraud Exception is a Three-Step Process

#### a.    Plaintiff has Not Established a Prima Facie Case of Fraud

As noted, the Court should not cause the production of IWA's privileged communications because their prejudicial value outweighs their probative value. Indeed, there is nothing in the documents that demonstrates any fraud on the part of IWA or the advice or assistance by IWA's counsel in furtherance of fraud. It is unclear what purpose these documents serve as far as advancing either a fraud claim or a contract-based claim. Yet, if the Court believes that the exception could apply to the three documents it has selected, only the first step of a three step process is arguably satisfied. The second step of the crime-fraud process requires that "after a party challenging the privilege succeeds in its request for in camera review, the party must make

---

[5] *Mohawk* instructs that there are three ways to address a court's disclosure order directed at attorney-client privileged information, including giving the party being directed to disclosed privileged information time to pursue a writ of mandamus. *Mohawk*, 558 U.S. at 101. This is the procedure followed in *Koch v. Specialized Care Servs., Inc., 437 F. Supp. 2d 362, 388 (D. Md. 2005)* ("In order to allow the parties to present objections to this decision, the Court will place both this opinion and the responsive documents under seal pending the outcome of any appeal in a separate sealing order."). The Fourth Circuit has granted petitions for mandamus over privilege rulings. *See, e.g.*, *In re Fluor Intercontinental, Inc.*, 803 F. App'x 697, 700 (4th Cir. 2020).

A306

a prima facie showing that the crime-fraud exception applies." *Koch*, 437 F. Supp. 2d. at 378.  The Court cannot excuse Plaintiff from meeting this heavy burden nor can it rely on Plaintiff's argument to do so.  Following *United States v. Zolin*, 491 U.S. 554 (1989), "it is clear that mere allegations of fraud or crimes are not sufficient to overcome the privilege." *Koch*, 437 F. Supp. 2d at 378.  In *United Bank v. Buckingham*, 301 F. Supp. 3d 547, 555 (D. Md. 2018), this Court held that a complaint's inclusion of a fraudulent conveyance claim - and legal advice related to the conveyance - is not sufficient; "there still needs to be a showing that the alleged fraud was more than implied fraud, i.e., that it included wrongful intent."  Moreover, because Plaintiff seeks the opinion work product of lawyers, Plaintiff "must make an additional showing" that the lawyer was aware of the fraudulent conduct. *Koch*, 437 F. Supp. 2d. at 384 ("If the attorney was not aware of the criminal or fraudulent conduct, the court should redact any opinion work product from the documents at issue.")

So far, Plaintiff, has offered only three documents in support of its fraud claim.  As to those documents, Plaintiff continues to argue to the Court that two emails, one in July 2016 and one in January 2017, support its fraud case.  Those two emails had nothing to do with the Assignment, and one of them pre-dates the documents that Plaintiff wants released.  The third document was a term sheet prepared in advance of the RSD Operating Agreement, and the terms that Plaintiff argues are evidence of fraud were never agreed to by either party.[6]

These documents alone are insufficient to demonstrate a prima facie case of fraud, especially given that Plaintiff has brought its case under Md. Comm. L. Code § 15-207, which requires a showing of actual fraud.  Indeed, Plaintiff itself recognized that it could not merely seek

---

[6] Plaintiff further argues that IWA should have recorded the Assignment.  However, IWA disputes this allegation and contends that it was not required to record the Assignment.

A307

a waiver of privilege, and that the evidence necessary to demonstrate a prima face case of fraud to meet the second step in the crime-fraud analysis is a higher burden than what is necessary to request an in camera review under the first step. *See* Tr. 54:8-19.[7]

To make a prima facie demonstration of fraud, the elements that Plaintiff must show include, *inter alia*, a false statement, reasonable reliance on that statement and damages. *See generally Sass v. Andrew*, 152 Md. App. 406 (Md. Spec. App. 2003). Here, Plaintiff does not argue that the actual Assignment was hidden, but only that it did not know IWA was the 98% owner of RSD. Moreover, Plaintiff has repeatedly confirmed it did not rely on any statements made by either of the Defendants regarding the Assignment. Also, Plaintiff has admitted that its arguments as to damages are purely speculative. The Court itself also has stated that it is likely to find that IWA is a surety of the Ground Lease, which eliminates any possibility of an argument in this case as to fraud damages. Further still, it is difficult to fathom how there can be a finding of fraud, when two different contracts state that IWA could make the Assignment, which is the exact independent conclusion drawn by multiple law firms that have reviewed the contract. For the forgoing reasons, and others, Plaintiff cannot make a showing of fraud under Maryland law, and thus cannot meet the crime-fraud exception.

Further still, even if the documents that were presented at the Hearing could potentially establish the framework of a prima facie case of fraud, the Court must also give Defendants a chance to rebut Plaintiff's evidence. IWA has not been afforded an opportunity to do so. The

---

[7] ("Now we're not here asking for a waiver of privilege. We're not asking defendants to disclose those documents to us. All we're doing is asking the Court to evaluate the substantive documents in camera. . . [T]o determine whether in camera inspection is warranted, the threshold need not be a stringent one and less than is required to ultimately overcome the privilege. All we need is a factual basis to show adequate support or a good faith belief by a reasonable person that in camera review may reveal evidence to establish the claim that the crime fraud exception exists, applies.")

A308

Court also has refused to give counsel the opportunity at an ex parte hearing to explain their work product documents.   Accordingly, given the extraordinary relief that Plaintiff seeks, and the Court appears ready to give, IWA renews its request for an ex parte hearing to address Plaintiff's evidence with the Court.

### b.  IWA's Privileged Documents Do Not Demonstrate Fraud

The third step of the crime-fraud exception requires a demonstration that the lawyer was aware of fraudulent conduct to which he/she lent their assistance.  First, IWA assigned the Ground Lease because Plaintiff said it could do so without Plaintiff's consent.  That is not fraudulent. Second, now that IWA's corporate witness has been deposed, it is clear that no attorney advised IWA to engage in any conduct that the Court has identified as questionable.  Indeed, Feltman's testimony is consistent with the arguments that Defendants have been making to the Court for two years.  *See* IWA's Motion to Dismiss and its Response in Opposition to Plaintiff's Motion for Summary Judgement (ECF-13 and 132, respectively).  These facts include that:

• By 2016 (before IWA received legal advice), IWA and Plaintiff knew that there would be litigation regarding the Ground Lease.  Plaintiff's affiliate and another Camalier family business, Rockledge Associates, and IWA's affiliate, Transamerica Life Insurance Company, were already in contentious litigation regarding a property in the same office park as the property in this case.  As noted, Plaintiff of course also knew that this Ground Lease would be the subject of litigation, and that Plaintiff would likely pursue a fraudulent conveyance claim.  Plaintiff was also aware of the potential litigation risk, which is why Plaintiff's first communication to RSD, only days after the Notice of the Assignment was served, was from Plaintiff's litigation counsel.

A309

• The Ground Lease is not only worthless but had a negative value. The Property could not be leased because the market has been bad for a number of years and the ground rent was too high, so IWA was exploring options of what to do.

• IWA wanted to find a solution for the underperforming Ground Lease because it was costing it money and it was impacting its reserves (IWA at the time was a subsidiary of a life insurance company and sought to remove the Property from its books because of the reserve accounting requirements).

• The Ground Lease and Estoppel Agreement both allow for unrestricted assignment of the Ground Lease, and it is customary for a lender to require that a landlord grant broad and unrestricted rights of assignment before making a loan on a ground lease. It is worth recalling that Plaintiff drafted the Ground Lease and the assignment language contained therein, and Plaintiff's affiliates were both the landlord and tenant under the Ground Lease.

Knowing already the above facts, and that this case would proceed to litigation, IWA sought legal advice from its outside counsel to comply with the contracts. Therefore it is beyond dispute that IWA was not asking what it could do to evade the law, but to comply with the law.

This is exactly what the Court suspected would be found. *See* Tr. 59:15-19 ("But they aren't hiding behind privilege as to what you've just shown me. . . . They are trying to hide and so on, but what more do I get by looking at all the correspondence? It's going to say the same thing, isn't it? It's going to essentially say the same thing: Let's try and get out of this deal and walk away from it.")

**II.     "Sharp dealings" permitted by contracts do not equate to fraud.**

Finally, during the Hearing, the Court made clear it intends to rule that IWA is a surety of the Ground Lease, regardless of the contracts, the presentation of evidence not yet reviewed or

11

A310

consideration of Defendants' arguments.  On such a basis, IWA is concerned that the Court is conflating its view that IWA should remain "on the hook" under a contract claim with Plaintiff's fraud tort claim. *See*, *e.g*., Hrg. Tr. at 74 ("all this evidence certainly does tend to show that [IWA] should be on the hook."); *id*. at 79 ("Was it fraudulent? Well, I don't know whether it's fraudulent or not. It does fortify the conclusion that they would be on the hook anyway because they were so intimately involved in trying to engineer this kind of transaction"); *id*. at 80 ("You don't see that very often, why a deal doesn't get recorded. And so it's worth arguing, what's going on here? Is it fraudulent?  I don't know. Does it matter? Probably not, based on my view  of the case it's not going to matter. It does fortify more and more in my view why IWA should stay in this case, whether we call them a surety or not because they are clearly trying to avoid responsibility under the lease, minimize their liability by dealing their liability, their responsibility, their duty to perform to some entity which has at least some questionable sustainability.")  The Court's position that IWA should remain liable for RSD, whether based on an equitable remedy or the Restatement of Contracts, is not a basis for providing Plaintiff with IWA's privileged and attorney work product documents under the crime-fraud exception.

### III.    Conclusion

Plaintiff seeks an extraordinary level of discovery that is far from typical in a civil case. Without taking a single deposition, Plaintiff asked to obtain the privileged communications, containing litigation advice and strategy, between lawyers and clients.  This intrusion on the attorney-client privilege cannot be treated lightly or like any other run-of-the-mill discovery request. *See Duplan Corp. v. Moulinage et Retorderie de Chavanoz*, 509 F.2d 730, 736 (4th Cir. 1974) ("[I]f attorneys may not freely and privately express and record mental impressions, opinions, conclusions, and legal theories, in writing, and clients may not freely seek them, then

there is justice for no one, and truth, instead of being more readily ascertainable, will become lost in the murky recesses of the memory in the minds of men, who, after all, are human and subject to the human frailty of rationalization.").

For the reasons set forth above, Plaintiff has not demonstrated any prima facie case of fraud, as necessary to obtain IWA's privileged documents.  Further still, the prejudice that would result in the production of IWA's privileged communications will be irreparable.  Accordingly, IWA requests that the Court not release the documents.

However, if the Court does determine that the crime-fraud exception applies to IWA's privileged documents, IWA requests that the Court should issue a written order containing findings of Fact and Conclusions of Law, directing IWA to produce its own documents so that IWA may follow the instructions provided in *Mohawk*.

DATED:  March 27, 2023                Respectfully submitted,

                                      SEYFARTH SHAW LLP


                                      By:  */s/ Rebecca A. Davis*
                                           Rebecca A. Davis, Bar No. 141711
                                           rdavis@seyfarth.com


SEYFARTH SHAW LLP
1075 Peachtree Street, N.E.
Suite 2500
Atlanta, Georgia  30309-3958
Telephone:  (404) 885-1500
Facsimile:  (404) 892-7056

Attorneys for Defendant
INVESTORS WARRANTY OF AMERICA,
LLC

13

A312

# IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF MARYLAND

ROCK SPRING PLAZA II, LLC

       Plaintiff,

    v.

INVESTORS WARRANTY OF AMERICA,
LLC, et al.,

       Defendants.

Civil Action No. 8:20-cv-01502-PJM

**PLAINTIFF'S RESPONSE TO DEFENDANT INVESTORS WARRANTY OF
AMERICA, LLC'S BRIEF SEEKING RECONSIDERATION OF
THE APPLICABILITY OF THE CRIME-FRAUD EXCEPTION**

# TABLE OF CONTENTS

Page

I.   SUMMARY OF ARGUMENT ................................................................. 1

II.   ARGUMENT ......................................................................................... 5

   A.   The Court's In Camera Review and Isolation of Three Documents Suggestive of Fraud Was Entirely Proper ........................................ 5

      1.   Applying the crime-fraud exception to the attorney-client privilege promotes a just and fair resolution ............................ 5

      2.   The documents reviewed in camera provided the requisite prima facie evidence to apply the crime-fraud exception ........................ 6

      3.   IWA invites error when it suggests that Plaintiff must prove fraud for the crime-fraud exception to apply ............................... 8

      4.   The Court has ample evidentiary support for applying the crime-fraud exception in the exercise of its discretion ...................... 9

      5.   IWA has been given all process that is due before the documents may be disclosed to Plaintiff ................................ 10

   B.   Witness Testimony After the Feb. 16th Hearing Belies IWA's Argument that the Crime-Fraud Exception Should Not Apply ........................ 13

      1.   The Assignment was negotiated with the intention that IWA would walk away, leaving Plaintiff to chase an empty shell once the statute of limitations ran on a fraudulent conveyance claim ................ 13

      2.   IWA, through RSD, intended to hinder, delay, or frustrate Plaintiff's rights under the Ground Lease ............................. 16

      3.   Key parts of the exit strategy were designed to keep Plaintiff in the dark about the assignment until the SOL had run. ................... 18

      4.   The lawyers clearly were involved in structuring this fraudulent conveyance ............................................................... 20

      5.   The reason Defendants are hiding behind privilege is because there was never any intention for RSD to honor the Tenant's long-term obligations under the Ground Lease ............................... 23

   C.   The Court has Discretion to Order the Three Documents to be Released ................... 26

   D.   Any Relief Sought by IWA From the Court's Order Should Occur within a Reasonable Time ............................................................ 27

III.   CONCLUSION ..................................................................................... 28

i

# TABLE OF AUTHORITIES

**Page(s)**

<u>Cases</u>

*Ardrey v. United Parcel Service,*
    798 F.2d 679 (4th Cir. 1986) ................................................................26

*Chaudhry v. Gallerizzo,*
    174 F.3d 394 (4th Cir. 1999) ..................................................................8

*Clark v. United States,*
    289 U.S. 1 (1933)...........................................................................5, 6, 7

*ContraVest Inc. v. Mt. Hawley Ins. Co.,*
    No. 20-1915, 2021 WL 4782687 (4th Cir. Oct. 13, 2021) .....................27

*Fed. Election Comm'n v. Christian Coal.*
    178 F.R.D. 456 (E.D. Va 1998) ............................................................12

*Gutter v. E.I. Dupont De Nemours,*
    124 F. Supp. 2d 1291 (S.D. Fla. 2000) ..................................................11

*Haines v. Liggett Grp. Inc.,*
    975 F.2d 81 (3d Cir. 1992)....................................................................11

*In re Grand Jury Proc. #5 Empanelled Jan. 28, 2004,*
    401 F.3d 247 (4th Cir. 2005) ........................................................8, 9, 26

*In re Grand Jury Subpoena,*
    642 Fed. Appx. 223 (4th Cir. 2016)..................................................11, 12

*In re Grand Jury Subpoena,*
    884 F.2d 124 (4th Cir. 1989) ..........................................................11, 26

*In re Grand Jury Subpoenas,*
    144 F.3d 653 (10th Cir. 1998) ..............................................................11

*In re Napster, Inc. Copyright Litig.,*
    479 F.3d 1078 (9th Cir. 2007) ..............................................................11

*Mohawk Indus., Inc. v. Carpenter,*
    558 U.S. 100 (2009)........................................................................27, 28

*Rowland v. Am. Gen. Fin., Inc.,*
    340 F.3d 187 (4th Cir. 2003) ................................................................27

A315

*United Bank v. Buckingham*,
    301 F.Supp.3d 547 (D. Md. 2018) .......................................................................9

*United States v. Zolin*,
    491 U.S. 554 (1989) .......................................................................... passim

<u>Statutes and Codes</u>

United States Code
    Title 28, Section 1292(b) ........................................................................28

<u>Rules and Regulations</u>

Federal Rules of Evidence
    Rule 503 ..................................................................................................5, 6

<u>Other Authorities</u>

Christopher B. Mueller, et al., EVIDENCE §5.22 (6th ed. 2018) .......................................7

John W. Gergacz, ATTORNEY-CORPORATE CLIENT PRIVILEGE § 4:16 (Spring Ed. 2023) ............7

Lynn McLain, 6 MARYLAND EVIDENCE, § 503:17 (Aug. 2022) .......................................5

iii

A316

**PLAINTIFF'S RESPONSE TO DEFENDANT INVESTORS WARRANTY OF
AMERICA, LLC'S BRIEF SEEKING RECONSIDERATION OF
THE APPLICABILITY OF THE CRIME-FRAUD EXCEPTION**

In accordance with the Court's March 28, 2023, Memorandum Order (ECF No. 297),

Plaintiff Rock Spring Plaza II, LLC ("Plaintiff") hereby submits this Response to Defendant

Investors Warranty of America, LLC's ("IWA") Brief, by which IWA seeks "Reconsideration of

the Applicability of the Crime-Fraud Exception" (ECF No. 294) (the "Brief").

The Court has broad discretion in how it resolves the crime-fraud issues presented in this

case, which extends not only to deciding whether the documents at issue should continue to be

withheld from discovery on privilege grounds but also to the process by which documents are

disclosed. Plaintiff hereby requests that the Court order IWA to release the three documents in

question within ten (10) calendar days of the order, which should allow more than sufficient time

for IWA to request a stay and to pursue whatever relief it may seek from the U.S. Court of

Appeals for the Fourth Circuit.

## I.    SUMMARY OF ARGUMENT

After the in-depth hearing on February 16, 2023 (the "Feb. 16th Hearing"), the Court

issued its Order (ECF No. 286), by which the Court exercised its discretion to conduct an in

camera review of a subset of 190 documents of the more than 1,190 documents IWA has

withheld on privilege grounds. The sheer volume of privileged documents, in the context of what

IWA and Rock Springs Drive LLC ("RSD," collectively with IWA, "Defendants") contend was

a good faith, "ordinary course" assignment, is preposterously large.

From Plaintiff's perspective, what followed the Court's review is opaque given IWA's

exchange of ex parte communications with the Court (ECF Nos. 288, 289). What is clear,

however, as manifested in the Court's March 15, 2023, Memorandum (ECF No. 290), is that

IWA is trying to avoid the disclosure of at least three attorney-client "exchanges" that "might be

1

A317

relevant to Plaintiff's fraud theory."[1] Plaintiff does not know what these three documents reveal, but Defendants should not be permitted to hide evidence of a fraudulent conveyance behind tenuous assertions of privilege.

IWA asks the Court to "reconsider and reverse its preliminary determination" and dedicates the first half of its Brief to arguing the evidence in a way that does nothing to aid the Court in resolving the procedural questions presented.[2] For example, IWA continues to ignore Plaintiff's fraud evidence and what the burden of proof is at this preliminary stage (e.g., by contending that "the Court did not find tortious or criminal activity," and thus "IWA is left with the conclusion that the Court is proceeding to review IWA's privileged documents only on a contract-based theory"). Brief at 3. The fact that the Court already has identified three "privileged" documents that appear to support Plaintiff's fraud theories and the incredible lengths to which IWA is going to prevent disclosure — including threatening to pursue mandamus relief — undermine Defendants' continued refrain that "there's nothing to see here."

RSD is plainly a manufactured construct, designed by IWA in concert with its lawyers to facilitate an "exit" from the worthless Ground Lease it needed to get off its books. The more evidence Plaintiff discovers that IWA intended to hinder, delay, and defraud Plaintiff by walking away from the Ground Lease after the statute of limitations ran on its fraudulent conveyance to

---

[1] Although it clearly is seeking reconsideration, IWA does not style its submission as a "motion for reconsideration," and the Court did not invite such a motion in its March 15, 2023, Memorandum (ECF No. 290). If IWA is requesting "reconsideration" of the Court's prior rulings through its Brief, that request is untimely, given that the Court made its ruling on February 16, 2023, and issued its order directing IWA to produce to the Court its privileged documents for in camera review on February 21, 2023 (ECF No. 286).

[2] IWA in several instances argues in circles. For example, IWA contends "there is nothing in the documents that demonstrates any fraud on the part of IWA or the advice or assistance by IWA's counsel in furtherance of the fraud," Brief at 7, but then complains that "placing such communications in the hands of Plaintiff would be highly prejudicial" and would "further advantage [Plaintiff] in this case." Brief at 5, 7.

2

RSD, the more furtive and obstructionist Defendants become.[3] Fraudulent intent is inherently difficult to prove, and Plaintiff is building its case. IWA, for its part, should not be allowed to hide the evidence of its fraudulent intent behind privilege, as that is precisely why the crime-fraud exception exists.

When IWA finally reaches its "Argument," IWA repeats the mistake it made with its ex parte submission, where IWA evidently "devoted only a small section of [its] submission to the actual documents" (ECF No. 290), by again using its Brief to chastise the Court and trumpet cherry-picked, mischaracterized precedent. The gist of IWA's argument is that the Court's exercise of its discretion in reviewing a subset of documents that IWA withheld on privilege grounds was an "outcome determinative analysis" based "only on a contract-based theory" that "disregarded" sworn testimony and would lead to an "increased probability of reversible error." Brief at 3-6.

But the only thing evidently "outcome determinative" about the disclosure of these documents is that they will help establish that the assignment to RSD was a fraudulent conveyance. Defendants offer nothing specific to refute the Court's assertion that the three documents in question support Plaintiff's fraud theory and are properly disclosed under the crime-fraud exception. Protesting that the documents help Plaintiff prove its case is not a legal argument against disclosure under the crime-fraud exception. If that were so, disclosure would *never* be permitted under the crime-fraud exception.

---

[3] Just last week, for example, Plaintiff learned that RSD is relying on the *accountant-client privilege* to withhold evidence that its auditors are delaying issuance of RSD's 2022 financial statements (which are months overdue) because of changes to reporting standards that would show RSD is a worthless shell under generally accepted accounting principles ("GAAP").

IWA's due process concerns similarly have no basis in law or fact. Plaintiff has made both a threshold and a prima facie showing sufficient to invoke the crime-fraud exception, and Defendants now have had three occasions to attempt to rebut this showing.[4] They have not done so because they cannot do so. For example, IWA props up its corporate witness, David Feltman, as "evidence" against fraud but tellingly fails to cite **any** of his testimony. Even though Plaintiff has already met its burden for the Court to apply the crime-fraud exception, Plaintiff will share some of Mr. Feltman's testimony in this responsive Brief, as it not only validates the Court's initial decision to conduct the in camera review but also provides a compelling evidentiary basis for applying the crime-fraud exception to **more** than just the three documents already identified by the Court.

Furthermore, threatening mandamus (which is granted only in the most extraordinary circumstances, not present here) merely confirms that Defendants know their assertions that IWA made a bona fide assignment to a third party in good faith are demonstrably false. Indeed, the issue here is not whether disclosure of the three documents in question will vitiate the attorney-client privilege. Rather, it is whether Defendants can hide documents supporting Plaintiff's contention that IWA worked in concert with its lawyers to perpetrate a fraudulent conveyance as part of IWA's efforts to get out from under its financial obligations to Plaintiff when the documents are not privileged as a matter of Maryland law *in the first place*. The Court is certainly acting well within its discretion, on the record already before the Court, to disclose at least the three documents that support Plaintiff's fraud theories.

---

[4]  At the Feb. 16th Hearing, Defendants' counsel feigned ignorance about Plaintiff's fraud claims and clung to the "badges of fraud" alleged in the complaint. Even now, after Plaintiff has several times laid out in detail its theories and evidence supporting its fraudulent conveyance claim, Defendants refuse to address straight on what this case is about.

4

A320

## II.     ARGUMENT

### A.     The Court's In Camera Review and Isolation of Three Documents Suggestive of Fraud Was Entirely Proper

Despite appearing at the Feb. 16th Hearing, communicating with the Court ex parte, and citing the seminal case in its Motion,[5] IWA misses the fact that that the Court has already found that Plaintiff made a prima facie showing sufficient to trigger the crime-fraud exception to the attorney-client privilege. The Court has broad discretion in resolving questions pertaining to discovery and privilege, including application of the crime-fraud exception. IWA has not pointed and cannot point to anything even remotely constituting an abuse of discretion by the Court.

#### 1.     Applying the crime-fraud exception to the attorney-client privilege promotes a just and fair resolution

The attorney-client privilege is not absolute. As expressed by the Supreme Court in 1933, "[a] client who consults an attorney for advice that will serve him in the commission of a fraud will have no help from the law. He must let the truth be told." *Clark v. United States*, 289 U.S. 1, 15 (1933). The crime-fraud exception, as it is known, is not codified in the Federal Rules of Evidence but is governed by common law. Lynn McLain, 6 MARYLAND EVIDENCE, § 503:17 (Aug. 2022).

Rule 503 of the Federal Rules of Evidence, proposed by the Supreme Court in the early 1970's, provides that "there is no privilege under this rule…if the services of the lawyer were sought or obtained to enable or aid anyone to commit or plan to commit what the client knew or reasonably should have known to be a crime or fraud." *Id*. While Congress did not adopt the rule, when it was proposed it "was declarative of common law" and still "provides a useful summary and starting point for federal courts, which look to it for guidance." *Id*. The Advisory Committee

---

[5] *United States v. Zolin,* 491 U.S. 554 (1989).

5

A321

Notes to Fed. R. Evid. 503 cite *Clark* when speaking to the showing required, stating: "No preliminary finding that sufficient evidence aside from the communication has been introduced to warrant a finding that the services were sought to enable the commission of a wrong is required." 56 F.R.D. 183, 239-40.

Over 50 years after *Clark* was decided, the Supreme Court further expounded upon the crime-fraud exception and the limits of the attorney-client privilege in *United States v. Zolin*, stating:

> The attorney-client privilege is not without its costs. Cf. *Trammel v. United States*, 445 U.S. 40, 50 (1980). "[S]ince the privilege has the effect of withholding relevant information from the factfinder, it applies only where necessary to achieve its purpose." *Fisher v. United States*, 425 U.S. 391, 403 (1976). The attorney-client privilege must necessarily protect the confidences of wrongdoers, but the reason for that protection—the centrality of open client and attorney communication to the proper functioning of our adversary system of justice—"ceas[es] to operate at a certain point, namely, where the desired advice refers not to prior wrongdoing, but to future wrongdoing." 8 Wigmore, § 2298, p. 573 (emphasis in original); *see also Clark v. United States*, 289 U.S. 1, 15, (1933). **It is the purpose of the crime-fraud exception to the attorney-client privilege to assure that the "seal of secrecy," *ibid*., between lawyer and client does not extend to communications "made for the purpose of getting advice for the commission of a fraud" or crime**. *O'Rourke v. Darbishire*, [1920] A.C. 581, 604 (P.C.).

*Zolin*, 491 U.S. at 562-63 (1989) (emphasis added). Here, there is no question that IWA is hiding evidence of its lawyer-guided strategy behind privilege to hinder, delay, or defraud Plaintiff.

> **2.      The documents reviewed in camera provided the requisite prima facie evidence to apply the crime-fraud exception**

Courts have broad discretion to determine whether a privilege is properly asserted. *Zolin*, 491 U.S. at 569-70 ("This Court has approved the practice of requiring parties who seek to avoid disclosure of documents to make the documents available for in camera inspection ... and the practice is well established in federal courts."). In *Clark*, the Supreme Court held that a prima facie showing was necessary to invoke the crime-fraud exception:

6

> The privilege takes as its postulate a genuine relation, honestly created and
> honestly maintained. If that condition is not satisfied, if the relation is merely a
> sham and a pretense, the juror may not invoke a relation dishonestly assumed as a
> cover and cloak for the concealment of the truth. In saying this we do not mean
> that a mere charge of wrongdoing will avail without more to put the privilege to
> flight. There must be a showing of a prima facie case sufficient to satisfy the
> judge that the light should be let in …. It is obvious that it would be absurd to say
> that the privilege could be got rid of merely by making a charge of fraud…To
> drive the privilege away, there must be something to give colour to the charge;
> there must be prima facie evidence that it has some foundation in fact….When
> that evidence is supplied, the seal of secrecy is broken.

289 U.S. 1, 14-15 (1933) (internal citations and quotations omitted).

In *Zolin*, the Supreme Court held that "in camera review may be used to determine whether allegedly privileged attorney-client communications fall within the crime-fraud exception," after the moving party meets a threshold showing. 491 U.S. 554, 574 (1989). The threshold showing requires less than the prima facie showing, of "evidence sufficient to support a reasonable belief that in camera review may yield evidence that establishes the exception's applicability." *Id. at* 574-75. To meet the threshold showing necessary for in camera review, a party may offer any relevant evidence that has been "lawfully obtained" and that has not already been adjudicated to be privileged. *Id.* at 575.

*Zolin* "integrated an in camera inspection of materials with an initial showing that would be less than that required to establish the crime-fraud exception." John W. Gergacz, Attorney-Corporate Client Privilege § 4:16 (Spring Ed. 2023). "Thus a communication can be found within the exception **based on the content of the communication itself**": after a threshold showing, *in camera* review of the purportedly privileged materials may be used to establish the prima facie showing sufficient to invoke the crime-fraud exception. Christopher B. Mueller, et al., Evidence §5.22 (6th ed. 2018) (emphasis added).

The Fourth Circuit has "held that the party invoking the crime-fraud exception must make a prima facie showing that (1) the client was engaged in or planning a criminal or

7

A323

fraudulent scheme when he sought the advice of counsel to further the scheme, and (2) the documents containing the privileged materials bear a close relationship to the client's existing or future scheme to commit a crime or fraud." *In re Grand Jury Proc. #5 Empanelled Jan. 28, 2004*, 401 F.3d 247, 251 (4th Cir. 2005) (citing *Chaudhry v. Gallerizzo*, 174 F.3d 394, 403 (4th Cir. 1999)). When the Court examines in camera "the actual documents for which privilege is claimed" to meet the prima facie showing, *Zolin* controls. *Id. at* 252.

Here, the Court determined that Plaintiff met the threshold showing to proceed to in camera review at the Feb. 16th Hearing (Feb. 16 Hr'g Tr. 81: 16-18) ("I think there's enough that a reasonable person could conclude that possibly there's been a fraud exception"). After reviewing the selected documents in camera, the Court isolated three documents "that it determined might be relevant to Plaintiff's fraud theory." ECF No. 290. Plaintiff has neither seen the three documents nor was it privy to the ex parte communications with IWA that led to the current briefing. Notably, if the Court determined that the documents reviewed in camera did not make the prima facie showing, it could have requested additional evidence from Plaintiff, or it could have denied the applicability of the crime-fraud exception. Instead, and consistent with *Zolin*, the Court isolated three documents that evidently bear a close relationship to IWA's existing or future scheme to commit a fraud and gave IWA multiple opportunities to respond. The Court clearly has exercised its discretion and may properly rule now that the documents must be disclosed under the crime-fraud exception.

### 3. IWA invites error when it suggests that Plaintiff must prove fraud for the crime-fraud exception to apply

IWA simply gets it wrong when it contends "Plaintiff cannot make a showing of fraud under Maryland law, and thus cannot meet the crime-fraud exception." Brief at 9. At this stage, to invoke the crime-fraud exception and require production of the three documents identified by

8

A324

the Court, the Plaintiff "does not have to conclusively prove the elements of the purported crime or fraud." *United Bank v. Buckingham*, 301 F.Supp.3d 547, 555 (D. Md. 2018) (citation omitted). The Court explained this to IWA at the Feb. 16th Hearing:

> I don't think you – maybe we misapprehend what happens at this point. **I don't make a finding that there's fraud based on what I review in your documents.** I mean, I might find some further questionable practices let's say. I don't make that finding. All I say is it's out there to be argued. Plaintiffs get a chance to see it, you get a chance to oppose it. But I don't make that finding as a finder of fact. I suppose **it's a tentative finding that I make in my discretionary authority that there's a reason to pierce the privilege because there looks like there's some badge of fraud here.** That's all I'm making, but it's not definitive. It's not final. **It's just a matter of putting it out there in the pool for discovery.** So I think there's a subtle, but important difference here that I am not finding finally that there's fraud.

Feb. 16 Hr'g Tr. 93: 5-19 (emphasis added). The stakes are high, but that is no excuse for ignoring established law under the Supreme Court's *Zolin* decision, the Fourth Circuit authority of *Chaudry* and *Grand Jury Proc. #5,* and this Court's proper application of that law during the Feb. 16th Hearing.

### 4.    The Court has ample evidentiary support for applying the crime-fraud exception in the exercise of its discretion

IWA argues that its documents withheld on privilege grounds do not demonstrate fraud, claiming that "no attorney advised IWA to engage in any conduct that the Court has identified as questionable." Brief at 10. IWA continues to feign ignorance of Plaintiff's evidence that the assignment of the Ground Lease from IWA to RSD was a fraudulent conveyance and was more than "sharp dealing." The Court saw through the same argument at the Feb. 16th Hearing[6] and is now well aware of documentary evidence that the purported assignment is a fraudulent exit strategy by IWA to get a worthless ground lease with long-term obligations off its books by assigning it to a sham entity:

---

[6]  Feb. 16 Hr'g Tr. 141:18-19 ("Now I don't think you don't know what's going on. You do.").

Right now it is clear to me from what you have said, Mr. Bosch, that there was some -- a lot of hidden dealing going on on defendants' side and clearly they were trying to hide information from the landlord about what they were trying to accomplish. Presumably, I don't know that this is absolutely the inference, but presumably to think they could walk away unscathed from this which I don't think they could.

Feb. 16 Hr'g Tr. 78:18-24.

In both its briefing and hearing testimony, Plaintiff presented evidence that IWA was exploring with counsel how to walk away from the Ground Lease as early as July 2016 (Feb. 16 Hr'g Tr. 56:1-10), was aware of the risk of a fraudulent conveyance claim (Feb. 16 Hr'g Tr. 61:4 - 65:6), created a new entity and did not commit to fund it even though it had no income and no source of funding apart from IWA (Feb. 16 Hr'g Tr. 58:9 - 59:6), and not only dodged Plaintiff's inquiries for months but prohibited communication with Plaintiff until the statute of limitations had run. Feb. 16 Hr'g Tr. 71:20 -72: 8. This is a far cry from the "three documents" to which IWA seeks to reduce Plaintiff's evidence establishing a threshold showing (Brief at 8). The Court also recognized that IWA, with its attorney's blessing, tried to cover its tracks by failing to record the deed reflecting the purported transfer of ownership.[7] Tellingly, both Defendant's argument that Plaintiff "has offered only three documents in support of its fraud claim" and its bald assertion the Assignment was done in good faith are made without citation to record evidence.

**5.    IWA has been given all process that is due before the documents may be disclosed to Plaintiff**

The Court offered IWA a fair opportunity at the Feb. 16th Hearing to refute the threshold showing made by Plaintiff and then gave IWA an opportunity to specifically address the Court's

---

[7]  *See also* Feb. 16 Hr'g Tr. 80:7-9 ("The fact that you say, Ms. Kropf, you've got an explanation for not recording the deed, it is questionable. I mean, I've been doing appellate law and judging for many years now and it's questionable. You don't see that very often, why a deal doesn't get recorded.").

10

A326

preliminary finding that there are three documents that bear a close relationship to the alleged

fraudulent conveyance and therefore establish a prima facie basis for applying the crime-fraud

exception. The Fourth Circuit has expressly held that in camera review "of evidence supporting

applicability of the crime-fraud exception" does not violate due process. *In re Grand Jury

Subpoena*, 884 F.2d 124, 126 (4th Cir. 1989). Even now, with its third bite at that apple, IWA

does not and cannot rebut Plaintiff's showing. Nor can it establish any genuine due process

violation.

Once the Court exercises its discretion to conduct an in camera review, the question then

becomes what process is due before documents may be disclosed. Despite IWA's threats to seek

a writ of mandamus, the Fourth Circuit has made clear that "the determination of whether a

privilege applies [is] reserved for the trial judge." *In re Grand Jury Subpoena*, 642 Fed. Appx.

223, 227 (4th Cir. 2016); *see also In re Grand Jury Subpoena*, 884 F.2d at 127.[8]

An earlier decision by the Eastern District of Virginia confirms that the Court has

properly and reasonably exercised its discretion here by giving IWA many opportunities to

specifically address the three documents the Court evidently believes are not privileged under the

---

[8] The Tenth Circuit has discouraged the district courts from "allow[ing] the determination of the applicability of the crime-fraud exception to turn into mini-trials that would waste resources and delay the [] proceedings." *In re Grand Jury Subpoenas*, 144 F.3d 653, 661 (10th Cir. 1998). On the other side of the spectrum, the Third Circuit has recognized the right in civil cases of the non-moving party to be heard after the prima facie showing has been established. *Haines v. Liggett Grp. Inc.*, 975 F.2d 81, 96-97 (3d Cir. 1992), as amended (Sept. 17, 1992). In practice, courts have interpreted *Haines* to require a burden-shifting process. *See, e.g., Gutter v. E.I. Dupont De Nemours*, 124 F. Supp. 2d 1291, 1307 (S.D. Fla. 2000) (explaining that the party opposing disclosure must submit evidence sufficient to rebut the prima facie showing or the privilege is lost). While the Ninth Circuit agreed that "the party seeking to preserve the privilege has the right to introduce countervailing evidence," it clarified that it was "not convinced that in all cases it is necessary for the district court to conduct a live hearing with oral argument; in appropriate cases, the court may decide the matter on the papers." *In re Napster, Inc. Copyright Litig.*, 479 F.3d 1078, 1093 (9th Cir. 2007).

crime-fraud exception. In *Fed. Election Comm'n v. Christian Coal.*, the court reviewed a

magistrate judge's **unsolicited** order in a subpoena enforcement action that the defendant

produce certain documents withheld as privileged. The court found that, even though "it may be

unusual for a court to conduct an in camera review of documents other than those specifically

objected…once a court makes a determination that it will conduct an in camera review, it must

be afforded a certain degree of leeway and discretion." 178 F.R.D. 456, 462 (E.D. Va. 1998).

After it submitted the purportedly privileged documents, the defendant requested "to file an ex

parte explanatory declaration under seal for in camera review" to provide "an amplified

explanation regarding the grounds for characterization of each document as protected by the

attorney client privilege and/or the work product doctrine." *Id.* at 263. The magistrate judge

permitted this submission, which led the reviewing district court to find that allowing the

defendant "multiple opportunities to be heard" satisfied the defendant's due process rights. *Id.*

 Here, the Court has provided IWA "a chance to rebut Plaintiff's evidence" at the Feb

16th Hearing, through ex parte communications, and now through its Brief. Brief at 9. The

Court's identification of three documents that "might be relevant to Plaintiff's fraud theory" and

invitation for IWA to "respond to the Court's tentative view by filing an appropriate ex parte

pleading" (ECF No. 290) (emphasis added) was a "fair opportunity to address the Court's

concerns." Brief at 6. If the three documents do not indicate fraud and Plaintiff's claim is so

"frivolous," IWA has had ample opportunity to explain why. Brief at 3.

 Of course, Plaintiff presently has no way of directly responding, as the contents of the

three documents are known only to the Court and to IWA. But IWA does not and cannot

establish that it is entitled to an ex parte hearing so it can present an argument it failed to present

at the Feb. 16th Hearing or in its ex parte written submissions to the Court. Brief 9-10. The Court

12

A328

asked IWA for authority to support this contention when it was first raised at the Feb. 16th

Hearing, but IWA has come up empty.

**B.    Witness Testimony After the Feb. 16th Hearing Belies IWA's Argument that the Crime-Fraud Exception Should Not Apply**

What neither the Court nor Plaintiff had available at the time of the Feb. 16th Hearing,

and which ultimately renders any challenge by IWA to the application of the crime-fraud

exception futile, was the compelling and ultimately damning deposition testimony of the two

business principals who negotiated the transaction (David Feltman for the IWA Member of RSD

and Troy Taylor for the Algon Member of RSD) and of the lawyer who represented the Algon

Member in that transaction (Robert Barron, Esq., who also became RSD's mouthpiece when the

Ground Lease was assigned in August 2017 and then, in March 2018, was officially retained as

RSD's lawyer). As the Court (1) has already determined that Plaintiff has met the threshold

showing, (2) evidently has concluded that the three documents in question satisfy the prima facie

showing required under *Zolin,* and (3) has given Defendants a chance to rebut such showing,

Plaintiff now provides additional evidence gathered since the Feb. 16th Hearing. The purpose of

submitting this additional evidence is not to try the case in this briefing but rather to confirm that

the Court is on **extremely strong grounds** in applying the crime-fraud exception.

**1.    The Assignment was negotiated with the intention that IWA would walk away, leaving Plaintiff to chase an empty shell once the statute of limitations ran on a fraudulent conveyance claim**

IWA's corporate representative David Feltman, who was the primary architect of the

RSD transaction, said out loud in the very first deposition in this case what Defendants' attorneys

have been adamantly (and falsely) denying:

> **Q. (By Mr. Bosch)** Did IWA ever develop an exit
> strategy that would stop monthly losses and any
> future liability, Mr. Feltman?
> **MS. DAVIS**: Objection as to form.

13

A329

> **THE WITNESS**: We developed the concept
> together with Algon and the JV.
> * * *
> **Q.** So your understanding is that one of the reasons
> for assigning the ground lease for this newly formed
> entity, RSD, was to stop any future liability of IWA
> under the ground lease?
> **MS. DAVIS**: Objection as to the form.
> **THE WITNESS**: I would phrase it differently. I
> would say the effect was to stop future liability
> under the ground lease.

Feltman Dep. 246:8-247:10 [Danial Decl. Ex. A].[9]

The testimony from Defendants' key principals confirms that IWA had no intention of

having RSD exist indefinitely (much less for the remaining term of the Ground Lease, if

necessary). IWA was only looking to get past the statute of limitations ("SOL") on a fraudulent

transfer claim. The formation of RSD was a sham transaction to give IWA leverage over Plaintiff

after the SOL expired by leaving Plaintiff with an undercapitalized single-purpose entity to chase

for ground rent that RSD had no independent ability to pay without "voluntary" funding from

IWA.

For example, IWA's Mr. Feltman was focused on trying to get past the SOL on a

fraudulent conveyance claim, at which point IWA could "force" a sale or consider alternative

exit strategies:

> **Q. (By Mr. Bosch)** At any time, had there been
> discussions about the statute of limitations on a
> fraudulent transfer claim?
> **A.** I believe so.
> **Q.** What do you understand the term statute of
> limitations to mean?
> **A.** The period of time following a transfer when a
>  claim can be made as to a fraudulent transfer.
> * * *

---

[9] Citations in the form "Danial Decl. __" are to the accompanying declaration of Katherine T. Danial.

14

A330

> **Q.** Do you recall having any discussions with Mr. Taylor about the statute of limitations?
> **A.** Probably.
> **Q.** Why would you probably have discussed the statute of limitations with Mr. Taylor on a fraudulent conveyance claim?
> **A.** Because if I was -- if we were having a discussion about fraudulent conveyance, we probably would have had also a discussion about the statute of limitations. But I don't recall that specifically.
> **Q.** Did you keep notes of your discussions with Mr. Taylor?
> **A.** I don't think so.
> **Q.** Do you recall, as you sit here today, what period of time the statute of limitations is for a fraudulent conveyance claim?
> **A.** No.
> **Q.** Did you, at any point, know the statute of limitations period for a fraudulent conveyance claim?
> **A.** I have a vague recollection. 36 months, 3 years.

Feltman Dep. 360:16-363:15 [Danial Decl. Ex. A]. On the Algon side of the transaction, attorney

Robert Barron confirmed that when he initially heard Mr. Feltman outline the structure and

purpose of the transaction, it was clear that IWA was looking for an exit and needed to get past

the SOL:

> **Q.** All right. You understood from the beginning, based on your initial conversation with Mr. Feltman, that IWA's objective, in forming this new entity and assigning the ground lease to the new entity was to get IWA off the hook?
> **MS. KROPF**: Objection as to form.
> **THE WITNESS:** That was part of the mission. That was part of the plan, because -- based upon the terms of the lease. The other part of the plan was the reason why Algon was involved, was the hope that the landlord would negotiate at some point with the tenant, and they would actually make it economically viable.
> Because they were in the business to make money. So if you could make the asset economically viable,

15

A331

that's why Algon was involved as people that have
done that in the past.
…
**Q.** So, Mr. Barron, do you recall there being any
discussion as to when Algon would begin having
these discussions with the landlord?
**A.** I knew there was a -- there was a discussion of a
delay, to delay negotiations for a time period.
**Q.** Do you recall what that time period was?
**A.** I went back and looked at the documents. I think
the term sheet had something like 36 months or 38
months. It was some "month" time period.
**Q.** Do you recall there being any discussion as to
why Mr. Feltman and IWA wanted to delay Algon
from having discussions with the landlord for 36
months or so?
**MS. KROPF**: Objection as to form.
**THE WITNESS**: My understanding was a
combination of the lack -- severe lack of trust with
the landlord based upon this other litigation,
concern that the landlord would not honor the terms
of the lease. And so the concept of getting beyond
the time period for -- to try to attack the agreement
based upon transfer.

Barron Dep. 64:2-66:12 [Danial Decl. Ex. B].

> 2.    **IWA, through RSD, intended to hinder, delay, or frustrate Plaintiff's
> rights under the Ground Lease**

Mr. Feltman's testimony indicates that once Defendants got past the SOL, they were

planning to put the screws to the landlord, perhaps by having RSD (which IWA controls and

funds at its discretion) walk away, as an IWA affiliate (Transamerica) had done at the 6610

Rockledge Drive property owned by a Camalier-family affiliate:

**Q.** And if you didn't get it done in three years, then
what?
**A.** Then we would have the opportunity to revisit
the arrangement.
**Q.** And what does that mean?
**A.** Well, it means either force the sale of the
property or find some other exit plan for the
property.

16

A332

Feltman Dep. 373:21-374:6 [Danial Decl. Ex. A].

On the Algon side of the transaction, Attorney Robert Barron's testimony confirms that "walking away" or "giving back" the Ground Lease was contemplated from the very beginning of the RSD transaction:

> **Q.** Was there any discussion of what would happen if the market didn't turn and if the landlord did not agree to modify the terms of the ground lease?
> **A.** Not in great detail. But I think at some point, there may be a situation where we have to give back the interest to the landlord, which is frankly what the prior tenant, the Camalier entity did when they were tenant.
> **Q.** What do you mean by "give back the interest to the landlord"?
> **A.** You basically say that we can't make this a going concern -- I don't know. Whatever --it's the same thing that the Camalier tenant did on the original loan, that they -- they couldn't make a go of it. They defaulted, and they gave back the interest through foreclosure. They would -- they would, I assume, talk to the landlord and say, it's not working. You are not renegotiating. The market is not turning, so tell us what you want to do with your interest.
> **Q.** I want to understand more of what you mean by giving it back to the landlord. I don't understand that. Can you explain what that, what -- how -- as a sophisticated lawyer, what does that mean to give the ground lease interest back to the landlord?
> **A.** Yeah. So -- well, I mean, you're sophisticated. Your client did this in connection with the predecessor to the lender; right? It was a joint venture between the Camaliers and -- it's written down here. It's Lockheed Martin. Lockheed Martin and the Camaliers were joint ventures as the tenant. They borrowed money, and they were unable to make it work for whatever reason. And they effectively gave back the interest. And now the landlord didn't take it back, because I guess it was encumbered by a mortgage. So the lender foreclosed it. So here we have a situation where it's free and clear. There's no third-party mortgage. So

17

A333

> if there's no third-party mortgage, the tenant would
> say, landlord, if you're not going to renegotiate and
> we cannot find tenants, we need to negotiate a -- an
> orderly turning over the keys. I mean, that's just --
> that's one of the options in a workout situation
> when the parties can't reach a win-win situation.
> **Q.** Meaning that ground lease tenant would walk
> away from its obligations under the ground lease?
> **A.** Correct. Or the landlord could get a judgment
> against the entity. They could sue in court and get a
> judgment against the entity.

Barron Dep. 79:21-82:9 [Danial Decl. Ex. B].

> **3.      Key parts of the exit strategy were designed to keep Plaintiff in the
> dark about the assignment until the SOL had run.**

The witnesses confirmed that there were several terms of the transaction that were driven

by the objective of getting past the SOL. For example, IWA's Mr. Feltman specifically

contemplated that the new entity (RSD) would make no efforts to sell the ground lease interest

until they got past the SOL:

> **Q.** Directing your attention to paragraph 4D, which
> is the disposition agreement. You see there, there
> was an insertion for after 38 months if the Algon
> member opts to sell the property?
> **A.** Yes.
> * * * * *
> **Q.** And do you know how 38 months was
> determined as the appropriate period of time for
> Algon to consider a disposition?
> **A. I think at that point, the litigation risk would
> go away because we'd be beyond the fraudulent
> transfer date, and also our expectation was that
> there would be leasing activity, and by then the
> property would be in a position to be sold.**

Feltman Dep. 406:7-22 (emphasis added) [Danial Decl. Ex. A]. This is also the reason why no

one from IWA's new sham entity (RSD) would be allowed to even communicate with Plaintiff:

> **Q. (By Mr. Bosch)** Why not have Algon
> communicate with the landlord on behalf of RSD
> for three years?

18

A334

**MS. DAVIS**: Objection as to form.

**MS. KROPF**: Misstate -- well, misstates the facts.

**THE WITNESS**: One, we knew there was this risk of a fraudulent transfer claim.

**Q. (By Mr. Bosch)** And so why would communicating between Algon and landlord give rise or increase the risk of a fraudulent transfer?

**A.** I was concerned that Algon might disclose things to the landlord that we didn't think the landlord needed -- information the landlord didn't need and wasn't entitled to.

**Q.** All right. So what was the consideration? What was it that Algon might say to the landlord that you thought the landlord had no right to know that could give rise to a fraudulent transfer claim?

**THE WITNESS**: Mostly surrounding Algon to disclose, for example, IWA's interest in the Partnership.

**MS. DAVIS**: Objection as to form. Misstates evidence.

**Q. (By Mr. Bosch)** That was one of the considerations?

**A.** And other factors.

**Q.** Yeah, so one of -- one of the factors for restricting Algon's discussions with the landlord, is you were concerned that Algon would disclose IWA's interest in RSD, correct?

**MS. DAVIS**: Objection as to form. Misstates evidence.

**THE WITNESS**: A factor, yes.

**Q. (By Mr. Bosch)** And another factor was you were concerned that Algon would disclose the capitalization of RSD?

**A.** Yes.

**Q.** Which was limited to $3.9 million?

**A.** Yes. In a short capitalization, yes.

Feltman Dep. 384:15-387:20 [Danial Decl. Ex. A].

The testimony of the two Algon business principals (Troy Taylor and Paul Rubin), who David Feltman brought in to execute on his exit strategy, confirms that IWA drove the transaction and that Defendants had no expectation that they would need to do anything for the first three years while the SOL ran; their 'expertise' as restructuring professionals would not

19

A335

become relevant until they got past the three-year SOL – and then would be used only to permit

Defendants to walk away from the Ground Lease, not to exert bona fide efforts to perform. *See*

Taylor Dep. 177-180; 281-284 [Danial Decl. Ex. C].

> **4.    The lawyers clearly were involved in structuring this fraudulent conveyance**

The lawyers were directly and materially involved in structuring and executing on this

fraudulent conveyance, and thus there is now even more than ample evidence to support

application of the crime-fraud exception. Mr. Feltman's testimony confirms that Defendants' in-

house and outside counsel not only were aware of but actively participated in formulating and

executing the fraudulent conveyance:

> **Q:** And do you recall there being any discussion
> among the business principals involved in making
> decisions for IWA's interest with respect to what
> they needed to avoid in connection with pursuing a
> transaction over this – for this ground lease to avoid
> a fraudulent conveyance claim?
> **A.** Discussion with outside counsel and in-house
> counsel, but I don't recall any discussion among the
> business people.

Feltman Dep. 293:4-12 [Danial Decl. Ex. A].

Mr. Barron confirmed that IWA's in-house counsel, Gregg Snitker, was involved in

discussing and planning this exit strategy:

> **Q.** But who raised this possibility of walking away
> if the ground lease was not modified or if the
> market didn't improve?
> **A.** Well, it's just logic. I don't remember if there's a
> -- you know, if there's a who, but that's the options
> when you go forward in a distressed asset.
> **Q.** Yes, I understand. But you said that there were
> conversations, and I want to know who participated
> in those conversations.
> **MS. KROPF**: And I'll caution you if they are
> conversations with your clients, then you should not
> reveal them. But if they're conversations with Mr.

20

> Feltman or IWA or somebody else, you can talk
> about them.
> **THE WITNESS**: I don't -- I don't recall
> conversations -- it would be really with
> Mr. Snitker -- on long-term, at the end of the day.

Barron Dep. 83:2-21 [Danial Decl. Ex. B].

Algon's Troy Taylor confirmed that his lawyers (Robert Barron and Jori Guso) were

directly involved in negotiating the term sheets with IWA that included not only restrictions on

communications and funding but also contemplated "burying the entity" (RSD) before it was

even formed.[10] When asked why RSD did not record the assignment, which is evidence of

Defendants' fraudulent intent, Mr. Taylor and Mr. Rubin hid behind privilege (and their

counsel's instructions not to answer).[11]

Even the decision to have Attorney Robert Barron serve as the mouthpiece for RSD after

the assignment was directed by IWA's in-house counsel Mr. Snitker, who evidently wanted to

---

[10] **Q.** All right. And do you see the term there, "How do we bury
the entity?"
  **A.** Uh-huh.
  **Q.** Yes?
  **A.** Yes. Yes, sir.
  **Q.** What does that meant to you?
  **A.** I think the – what I – in our terminology, we'd use that to
mean what do we do at the end of the day if it doesn't work out.
You know, if we can't lease it out, if the landlord will not
negotiate, how do we resolve this?
  **Q.** And why were you considering burying the entity before the
entity was even formed?
  **Ms. Kropf**: so objection to the extent that gets to this
conversations with his clients about what they were doing on
their side. If you want to talk about IWA requirement
negotiations, that's fine. But to the extent you're asking about his
communications with his we object on privilege grounds.

Barron Dep. 202:2-203:1 [Danial Decl. Ex. B].

[11] Plaintiff refers to and incorporates herein its Reply to RSD's Letter to the Court (ECF No.
303), which lays out several of RSD Counsel's improper instructions.

A337

control the disclosure of information about IWA's involvement until the SOL ran. As Mr. Barron

testified:

> **Q.** All right. And is it your understanding that the
> only reason you were identified as the person to
> whom questions should be directed is because you
> were going to be the lawyer for RSD?
> **A.** Well, I was the lawyer for the managing
> member. Managing member runs the entity. So I
> was – at that point, I was lawyer for the managing
> member. And I would also be legal counsel for our
> company – our Firm, of the legal entity itself.
> **Q.** Who decided that you would be the person to
> whom questions should be directed?
> **A.** I believe it was probably Snitker.
> **Q.** Gregg Snitker, the in-house counsel for IWA?
> **A.** Correct.

Barron Dep. 239:5-21 [Danial Decl. Ex. B].

When asked why RSD never responded to the Landlord's inquiries concerning the names

of RSD's principals and its wherewithal to satisfy Tenant's financial obligations under the

Ground Lease, and not once responded favorably to Landlord's repeated requests to meet with

RSD's business principals, RSD and attorney Robert Barron hid behind privilege:[12]

> **Q.** On August 30, 2017, as the person to whom
> questions were to be directed, what did you
> understand you were authorized to disclose?
> **Ms. Kropf**: Let me just – Mr. Bosch, I'm sorry to
> be frustrating here, but I need to interpose an
> objection. Because he's stated repeatedly that he's
> the lawyer for the entity who can only be authorized
> by his clients. And to the extent any authority

---

[12] The only non-privileged explanation given is that Landlord reached out through a litigator.
Obviously prepped to offer this "excuse," Defendants are seemingly oblivious to the fact that
RSD knew how to contact Mr. Camalier, but Mr. Camalier's only point of contact with RSD
up to the date this lawsuit was filed almost three (3) years after the Assignment was a lawyer
(Mr. Barron). Defendants' refusal to allow Mr. Barron to provide any substantive testimony on
the facts (and factual omissions) in his correspondence on behalf of RSD will be addressed in
a forthcoming motion, as anticipated by the Court. *See* April 13, 2023, Order, ECF No. 309.

22

A338

comes from your clients, I instruct you not to
answer.
**The Witness**: Okay.
**Ms. Kropf**: Whoever the client is, that would be
privileged. We'd object to it. And I instruct you not
to answer.
**The Witness**: Okay. Thank you.
**Mr. Bosch**: So were you advised by your client as
to what information you could disclose?
**Mr. Kropf**: Objection. And I instruct you not to
answer.
**The Witness**: Understood.
**Mr. Bosch**: So you can't say what information you
were permitted to disclose or were not permitted to
disclose without you divulging attorney-client
communications?
**Ms. Kropf**: You can – object to form. You can
answer.
**The Witness**: I don't know how I could
**Ms. Kropf**: Yes. Object to form. You can answer.
**The Witness**: I don't know to answer that question
without discussing communication with my client.
**Mr. Bosch**: And Ms. Kropf, so it's clear, you're
saying all communications with his client about the
information that he could or could not disclose is
privileged?
**Ms. Kropf**: Yes.

Barron Dep. 247:16-249:14 [Danial Decl. Ex. B].

> 5. **The reason Defendants are hiding behind privilege is because there
> was never any intention for RSD to honor the Tenant's long-term
> obligations under the Ground Lease**

The reason Defendant's witnesses are all hiding behind privilege is obvious from the

terms of the RSD Operating Agreement, which reveal that the parties to that agreement never

intended that RSD would continue to keep, perform, and observe all of Tenant's obligations for

the remaining term of the Ground Lease. Indeed, they had already agreed to dissolve the entity

no later than nine (9) years after its formation if the exit strategy failed (or even sooner if IWA so

elected as the 98% member). RSD attorney Robert Barron confirmed that at the time of

23

A339

formation, the parties not only contemplated but contracted to leave the landlord high and dry by

no later than August 1, 2026, with more than six decades left on the Ground Lease:

> **Q.** Mr. Barron, I want to go back to the discussions
> you recall having with IWA concerning what to do
> if RSD, this Newco, could not lease up the property
> or get the landlord to modify the terms of the
> ground lease. Do you recall that discussion we had
> earlier?
> **A.** Yes, sir.
> **Q.** You talked about the possibility of walking away
> from the ground lease. Do you recall that?
> **A.** Yes.
> **Q.** And you recall also, you refer to that as maybe
> giving back the ground lease to the landlord?
> **A.** Yes.
> **Q.** By which you meant that the landlord would
> have nobody to look to for the payment of rent?
> **A.** Or they would get a judgement against the –
> RSD.

Barron Dep. 212:4-213:1 [Danial Decl. Ex. B].

***

> **Q**. All right. Well, let's go back to the operating
> agreement that you negotiated.
> **A.** Uh-huh.
> **Q.** …. Just scroll down to page 33. There we go.
> Right there. Do you see Article 10?
> **A.** Yes.

***

> **Q.** So at the time of its formation, RSD
> contemplated dissolving and winding up just under
> nine years after the date of the assignment, did it
> not?
> **A.** That was the earliest date, yes. Yes.
> **Q.** So this was an entity that already contemplated
> its dissolution at the time of its formation; isn't that
> right?
> **A.** It contemplated a date that it would be dissolved.
> **Q.** Right. Which was just nine years after the date
> of its formation; right?
> **A.** I haven't counted the years, but, it's, what --
> yeah, nine years.

Barron Dep. 215:4-216:17 [Danial Decl. Ex. B].

24

A340

***

**Q:** All right. So that's not my question. You recall under the assignment provision – under the assignment, the assignee agreed to keep, perform, and observe all of the terms, conditions of the ground lease, do you not?
**A.** I do.
**Q.** And yet here, as of the date of the formation of that assignee, it already contemplated it would be dissolved years before the ground lease expired; isn't that right?
**A.** That's correct.

Barron Dep. 217:7 – 217:17 [Danial Decl. Ex. B].

***

**Q.** Right. **So let's say after the dissolution event, when the company is wound up, after the winding-up process, what happens to the company's ability to keep, observe and perform the tenant's obligations under the ground lease? A. At that point, they would be turning the keys over to the landlord.**

Barron Dep. 219:14 – 219:20 (emphasis added) [Danial Decl. Ex. B].

IWA can no longer deny what happened, what the documents show, and what the testimony proves – that the attorneys were directly involved in the initial creation and perpetuation of the fraudulent scheme to assign the Ground Lease to RSD so that Plaintiff would have nothing to chase but a shell when (inevitably) IWA decided not to continue to fund this "worthless" Ground Lease interest. There is no other plausible explanation for why, even now, IWA refuses to commit to fund RSD for as long as necessary for RSD to become self-sufficient. The evidence demonstrates that it was never anticipated or intended that RSD **independently** would be able to fulfill Tenant's obligations under the Ground Lease. Accordingly, the crime-fraud exception applies, not just plausibly but compellingly.

25

A341

**C.      The Court has Discretion to Order the Three Documents to be Released**

The Court has broad and well-established discretion to determine how and when any documents are released. *See Ardrey v. United Parcel Service*, 798 F.2d 679, 682 (4th Cir. 1986) ("The latitude given the district court extends as well to the manner in which it orders the course and scope of discovery."). Despite this settled law, IWA complains about the "prejudice" that will occur if the Court releases on its own the three documents it has identified from its in camera inspection, arguing that "placing such communication in the hands of Plaintiff would be highly prejudicial to Defendants, and would do irreparable harm," and that the Court is "stripping IWA of its attorney-client privilege." Brief at 5. IWA's efforts to sway the Court's approach to disclosure has no legal support – prejudice cannot be a basis for gutting the crime-fraud exception, *especially* where that prejudice arises because the documents tend to substantiate Plaintiff's allegations of fraud.

On the record before this Court, IWA's threatened challenge is futile. The Fourth Circuit has already established that a district court's determination that there is a prima facie basis for applying the crime fraud exception will be upheld "absent a clear showing of abuse of discretion." *In re Grand Jury Proceedings #5*, 401 F.3d at 254. Weighing prejudice is an evidentiary consideration for trial, not a consideration where, as here, the Court is determining if these documents should be disclosed in discovery. Furthermore, IWA's assertion that the Court would "strip" IWA of the attorney-client privilege by disclosing the three documents also manifests a misapprehension of the law; under the crime-fraud exception, the privilege never existed. *See In re Grand Jury Subpoena*, 884 F.2d 124, 127 (4th Cir.1989) ("The crime-fraud exception to the attorney-client privilege provides that a client's communications with an attorney will not be privileged if made for the purpose of committing or furthering a crime or

26

fraud."). Plaintiff is entitled to these documents because they are not privileged and should have been produced in discovery.[13]

Once the Court determines that documents withheld on privilege grounds are subject to the crime fraud exception, it is also squarely within the Court's discretion to determine how and when the three documents are disclosed to Plaintiff. *See Rowland v. Am. Gen. Fin., Inc.,* 340 F.3d 187, 195 (4th Cir. 2003) (recognizing the court's "wide latitude in controlling discovery and ... its rulings will not be overturned absent a showing of clear abuse of discretion."); *ContraVest Inc. v. Mt. Hawley Ins. Co.,* No. 20-1915, 2021 WL 4782687, at *3 (4th Cir. Oct. 13, 2021). While IWA may not like the outcome, its continued cries of prejudice at the pre-trial stage cannot and should not limit the Court's "wide latitude in controlling discovery." *See Rowland,* 340 F.3d at 195.

> **D.    Any Relief Sought by IWA From the Court's Order Should Occur within a Reasonable Time**

This lawsuit has been in the throes of protracted discovery for over two and a half years, and it is in the interest of everyone to continue moving this case toward final resolution. If IWA chooses to appeal an Order to release the three documents, it should do so promptly.

The United States Supreme Court has made it abundantly clear that "collateral order appeals are not necessary to ensure effective review of orders adverse to the attorney-client privilege." *Mohawk Indus., Inc. v. Carpenter*, 558 U.S. 100, 108 (2009). The Supreme Court explained that "[p]ermitting piecemeal, prejudgment appeals . . . undermines efficient judicial administration and encroaches upon the prerogatives of district court judges, who play a special role in managing ongoing litigation." *Id*. at 106. Nor is there any genuine concern here that

---

[13] Plaintiff's access to the relevant documents also is essential to the parties' ability to fully and fairly brief the issue to the Court of Appeals if that is how Defendants elect to proceed.

disclosure would have a chilling effect on attorney-client communications, as the *Mohawk* Court noted that "in deciding how freely to speak, clients and counsel are unlikely to focus on the remote prospect of an erroneous disclosure order, let alone on the timing of a possible appeal." *Id.* at 110.

Consistent with this binding precedent, IWA has two options if it wishes to avoid facing sanctions and being held in contempt if faced with an order to disclose the three documents: it may seek permission to file an interlocutory appeal pursuant to 28 U.S.C. § 1292(b); or it may seek mandamus review. *Id* at 110-111. Either path is likely futile, but it is IWA's decision to make.

In an effort to maintain the current schedule, Plaintiff respectfully requests that if the Court decides to release the documents, whether it does so directly or orders IWA to do so, that its order should also direct IWA – if it so chooses – to pursue a stay and seek relief within ten (10) calendar days of the Court's order. While Plaintiff is confident that the Court's crime-fraud application is proper, IWA's stated desire to challenge any such determination should not be allowed to delay the lawsuit unnecessarily.

## III.   CONCLUSION

For the above reasons, and without waiving the right to seek additional disclosures of documents under the crime-fraud exception, Plaintiff respectfully requests that the Court deny IWA's untimely request for reconsideration and order the disclosure of the three documents identified during the Court's in camera inspection under the crime-fraud exception.

A344

Dated: April 18, 2023                   Respectfully submitted,

                                        _/s/ William M. Bosch_____
                                        William Bosch
                                        Anthony Cavanaugh
                                        Alvin Dunn
                                        Katherine Danial
                                        Pillsbury Winthrop Shaw Pittman LLP
                                        1200 Seventeenth Street NW
                                        Washington, DC 20036
                                        Telephone: 202-663-8000
                                        Facsimile: 202-663-8007
                                        william.bosch@pillsburylaw.com
                                        alvin.dunn@pillsburylaw.com
                                        katherine.danial@pillsburylaw.com

                                        *Attorneys for Plaintiff Rock Spring Plaza II,
                                        LLC*

29

A345

**<u>CERTIFICATE OF SERVICE</u>**

I hereby certify that on April 18, 2023, I caused a copy of the foregoing Plaintiff Rock Spring Plaza II, LLC's Response in Opposition to Defendant Investor's Warranty of America, LLC's Brief Seeking Reconsideration of the Applicability of the Crime-Fraud Exception to be served via email on all counsel of record.

Respectfully submitted,

*<u>Katherine T. Danial</u>*

30

## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF MARYLAND

**ROCK SPRING PLAZA II, LLC**

            **Plaintiff,**

– v. –

**INVESTORS WARRANTY OF
AMERICA, LLC,** *et al,*

            **Defendants.**

**Case No. 8:20-cv-01502-PJM**

### DECLARATION OF KATHERINE T. DANIAL

I, Katherine T. Danial, do hereby state under oath that I am over eighteen years of age and that I have personal knowledge of, and am competent to testify to, the following:

1.     I am senior associate with the law firm Pillsbury Winthrop Shaw Pittman LLP. My principal office is located at 1200 Seventeenth Street NW, Washington, DC 20036.

2.     I am a counsel of record for Plaintiff Rock Spring Plaza II, LLC in the above-styled action.

3.     Attached hereto as **Exhibit A** are excerpts from a true and correct copy of the deposition transcript of David Feltman, Investors Warranty of America, LLC's ("IWA") corporate designee, taken on March 16, 2023, and March 17, 2023, in the above-styled action. Subject to review and signature, **Exhibit A** includes excerpts from a certified reporter transcript.

4.     Attached hereto as **Exhibit B** are excerpts from a true and correct copy of the deposition transcript of Robert Barron taken on April 14, 2023, in the above-styled action. Subject to review and signature, **Exhibit B** includes excerpts from a certified reporter transcript.

5.     Attached hereto as **Exhibit C** are excerpts from a true and correct copy of the deposition transcript of Troy Taylor, one of Rock Springs Drive LLC's ("RSD") corporate

A347

designees, taken on April 6, 2023, in the above-styled action.  Subject to review and signature,

**Exhibit C** includes excerpts from a certified reporter transcript.

### <u>OATH</u>

I SOLEMNLY AFFIRM under the penalties of perjury and upon personal knowledge that

the contents of the foregoing Declaration are true and correct to the best of my knowledge,

information and belief.

Executed this 18th day of April, 2023.

_____

Katherine Danial

2

A348

# EXHIBIT A



# Transcript of David Feltman, Designated Representive, Volume 1

**Date:** March 16, 2023
**Case:** Rock Spring Plaza II LLC -v- Investors Warranty of America LLC, et al.

**Planet Depos**
**Phone:** 888.433.3767
**Email::** transcripts@planetdepos.com
**www.planetdepos.com**

A350

1       IN THE UNITED STATES DISTRICT COURT
          FOR THE DISTRICT OF MARYLAND

2

3  ROCK SPRING PLAZA, II,   )
                     )
       Plaintiff,     )
                     )

4    vs.           )  CIVIL ACTION FILE
                     )  NO. 8:20-CV-01502-PJM
  INVESTORS WARRANTY OF   )
  AMERICA, LLC, et al.,    )
                     )
       Defendants.    )
                     )

5

6

7

8

9

10      VIDEOTAPED 30(b)(6) DEPOSITION OF

11    INVESTORS WARRANTY OF AMERICA, LLC

12   Represented by: DAVID FELTMAN

13
        March 10, 2023
14        9:00 a.m.

15   1075 Peachtree Street, NE
         Suite 2500
16     Atlanta, Georgia

17

18   Lamarra George, CCR-2582

19

20

21

22

```
 1                    APPEARANCES OF COUNSEL
        On behalf of the Plaintiff:
 2           ROCK SPRING PLAZA, II

 3           WILLIAM M. BOSCH, ESQ.
             KATHERINE DANIAL
 4           Pillsbury Winthrop Shaw Pittman, LLP
             1200 Seventeenth Street, NW
 5           Washington, DC 20036-3006
             202-663-8000
 6           William.bosch@pillsburylaw.com
             Katherine.danial@pillsburylaw.com
        On behalf of the Defendant:
 7           INVESTORS WARRANTY OF AMERICA, LLC

 8           REBECCA A. DAVIS, ESQ.
             Seyfarth Shaw, LLP
 9           1075 Peachtree Street, NE
             Suite 2500
10           Atlanta, Georgia 30309
             404-888-1874
11           Rdavis@seyfarth.com

12      On behalf of the Defendant:
             ROCK SPRINGS DRIVE, LLC
13
             SARA KROPF, ESQ.
14           Kropf Moseley
             1100 H Street, NW
15           Suite 1220
             Washington, DC 20005
16           202-627-6900
             Sara@kmlawfirm.com
17

18      Also Present:

19           Emily Dunn, Videographer

20           Troy Taylor, Algon Group

21           Paul Rubin, Rock Springs Drive, LLC
             (Via Telephone)
22
```

A352

```
 1          VIDEOGRAPHER:  Here begins Media

 2   No. 1 in the videotaped deposition of David

 3   Feltman in the matter of Rock Spring Plaza,

 4   II, LLC, vs. Investors Warranty of America,

 5   LLC, et al., in the United States District

 6   Court for the District of Maryland, Case

 7   No. 20-CV-01502 PJM.  Today's date is

 8   3/16/23, and the time on the video monitor

 9   is 9:03 a.m., Eastern Standard.  The

10   videographer today is Emily Dunn

11   representing Planet Depos.

12          This video deposition is taking

13   place at 1075 Peachtree Street, NE, Suite

14   2500, Atlanta, Georgia 30309.

15          Would counsel please voice identify

16   themselves and state whom they represent.

17          MR. BOSCH:  William Bosch from the

18   law firm of Pillsbury Winthrop Shaw

19   Pittman, on behalf of the plaintiff.

20          MS. DANIAL:  Katherine Danial with

21   Pillsbury Winthrop Shaw Pittman, on behalf

22   of the plaintiff.
```

A353

```
 1        MS. DAVIS:  Rebecca Davis with

 2   Seyfarth Shaw, LLP, on behalf of Investors

 3        Warranty of America, LLC.

 4             MS. KROPF:  And Sara Kropf from

 5        Kropf Moseley, on behalf of Rock Springs

 6        Drive, LLC.

 7             MR. BOSCH:  Can we also identify

 8        that Mr. Rubin is on, as well?

 9             MS. KROPF:  And on the phone is Paul

10        Rubin, who's one of the principals of Rock

11        Springs Drive.

12             VIDEOGRAPHER:  The court reporter

13        today is Lamarra George, representing

14        Planet Depos.  Would the court reporter

15        please swear in the witness?

16                  DAVID FELTMAN,

17   having been first duly sworn, was examined and

18   testified as follows:

19                  EXAMINATION

20   By Mr. Bosch:

21        Q.   Good morning, sir.  Would you please state

22   your full name?
```

A354

USCA4 Appeal: 23-1928    Doc: 29    Filed: 01/11/2024    Pg: 361 of 557

Transcript of David Feltman, Designated Representive, Volume 1
Conducted on March 16, 2023                          246

```
 1          the video record.  The time is 3:00 p.m.
 2          Q.   (By Mr. Bosch) Did IWA ever develop an
 3   exit strategy that would stop monthly losses and any
 4   future liability, Mr. Feltman?
 5               MS. DAVIS:  Objection as to form.
 6               THE WITNESS:  We developed the
 7          concept together with Algon and the JV.
 8          Q.   (By Mr. Bosch) And was that a concept to
 9   stop monthly losses of any future liability?
10          A.   Not specifically, no.
11          Q.   Is that one of the effects of that JV?
12          A.   I think under the operating agreement, IWA
13   funded the JV.  So from a standpoint of monthly
14   losses, I think the answer is no.  And I can't really
15   speak to future liability.
16          Q.   Why is that?
17          A.   Well, I guess, the lease, the ground lease
18   and the estoppel agreement clearly indicate that a
19   transfer by the tenant of the tenant under the ground
20   lease, the liability for the -- for IWA, under the
21   ground lease, stops when they transfer -- they assign
22   the ground lease to another party.
```

A355

1      Q.    So your understanding is that one of the

2    reasons for assigning the ground lease for this newly

3    formed entity, RSD, was to stop any future liability

4    of IWA under the ground lease?

5              MS. DAVIS:  Objection as to the

6         form.

7              THE WITNESS:  I would phrase it

8         differently.  I would say the effect was to

9         stop future liability under the ground

10        lease.

11     Q.    (By Mr. Bosch) And that was part of the

12   exit strategy?

13             MS. DAVIS:  Objection as to form.

14             THE WITNESS:  No.  The exit strategy

15        was to bring in a qualified partner to turn

16        around the property.

17     Q.    (By Mr. Bosch) And the effect was to stop

18   future liability for IWA under the ground lease?

19     A.    I believe that's right.

20     Q.    And what's the basis for that

21   understanding?

22     A.    The language of the ground lease and the

A356

 1      Q.    So all -- your understanding is it's a

 2  complex legal issue?

 3      A.    Yes.

 4      Q.    And do you recall there being any

 5  discussion among the business principals involved in

 6  making decisions for IWA's interest with respect to

 7  what they needed to avoid in connection with pursuing

 8  a transaction over this -- for this ground lease to

 9  avoid a fraudulent conveyance claim?

10      A.    Discussion with outside counsel and

11  in-house counsel, but I don't recall any discussion

12  among the business people.

13      Q.    I'll hand you now what I'll mark as

14  Exhibit 28.  This is a series of e-mail exchanges

15  bearing Bates No. IWA3137.

16          (Exhibit No. 28 was marked for

17      identification.)

18      Q.    (By Mr. Bosch) And this is a continuation

19  of the e-mail chain we were just looking at in IWA

20  27.  You see at the bottom of the first page, this is

21  where you say, We confirm the appraisal will come in

22  at minus $3 million?

A357

1　There was no existing fraudulent transfer risk at

2　that time.

3　　　　Q.　　Right.　But there was -- there was a risk

4　if they engaged in a transfer of the ground lease

5　interest.

6　　　　A.　　I was aware of that, yes.

7　　　　Q.　　And that was a risk of a fraudulent

8　conveyance or fraudulent transfer claim?

9　　　　A.　　I was aware that was a risk.

10　　　　Q.　　And so, also at -- in or around

11　January 2017, IWA knew that forming an SPE to take a

12　transfer of IWA's interest in the ground lease might

13　give rise to a fraudulent transfer claim?

14　　　　　　　MS. DAVIS:　Objection as to form.

15　　　　　　　THE WITNESS:　Claim, yes.

16　　　　Q.　　(By Mr. Bosch) At any time, had there been

17　discussions about the statute of limitations on a

18　fraudulent transfer claim?

19　　　　A.　　I believe so.

20　　　　Q.　　What do you understand the term statute of

21　limitations to mean?

22　　　　A.　　The period of time following a transfer

A358

1    when a claim can be made as to a fraudulent transfer.

2        Q.    When do you recall there being discussion

3    about a statute of limitations -- the statute of

4    limitations on a fraudulent transfer claim?

5        A.    I don't recall specifically, but I'm sure

6    there was when we had a discussion with counsel or

7    advice from counsel about the fraudulent transfer

8    issue -- sorry I'm getting into --

9              MS. DAVIS:  You're getting -- yeah.

10             THE WITNESS:  Sorry.

11             MS. DAVIS:  You can answer the

12        question, but don't discuss privileged

13        information --

14             THE WITNESS:  Right.

15             MS. DAVIS:  -- or advice of counsel.

16       Q.    (By Mr. Bosch) Yeah, so I'm not asking

17   what the advice was, I'm asking when did you receive

18   this advice about the statute of limitation --

19       A.    I don't recall when.

20       Q.    Sorry, sir, let me just finish the

21   question.

22       A.    Sorry.

A359

```
 1        Q.    When did you receive this advice on the

 2   statute of limitations on a fraudulent transfer

 3   claim?

 4        A.    I don't recall.

 5        Q.    It was before January 2017?

 6        A.    I believe so.

 7        Q.    You just don't recall as you sit here

 8   today how much before that -- before January 2017?

 9        A.    Correct.

10        Q.    And you don't recall the specific context

11   in which the statute out of limitations was

12   discussed?

13        A.    Correct.

14        Q.    Do you recall having any discussions with

15   Mr. Taylor about the statute of limitations?

16        A.    Probably.

17        Q.    And you say "probably."  Do you have any

18   specific recollection?

19        A.    No.

20        Q.    Why would you probably have discussed the

21   statute of limitations with Mr. Taylor on a

22   fraudulent conveyance claim?
```

A360

```
 1        A.    Because if I was -- if we were having a

 2   discussion about fraudulent conveyance, we probably

 3   would have had also a discussion about the statute of

 4   limitations.  But I don't recall that specifically.

 5        Q.    Did you keep notes of your discussions

 6   with Mr. Taylor?

 7        A.    I don't think so.

 8        Q.    Do you recall, as you sit here today, what

 9   period of time the statute of limitations is for a

10   fraudulent conveyance claim?

11        A.    No.

12        Q.    Did you, at any point, know the statute of

13   limitations period for a fraudulent conveyance claim?

14        A.    I have a vague recollection.  36 months,

15   3 years.

16        Q.    And -- so, that recollection would be

17   consistent with what you probably discussed with

18   Mr. Taylor?

19              MS. DAVIS:  Objection to form.

20        Q.    (By Mr. Bosch) 36 months, statute of

21   limitations.

22              MS. DAVIS:  Objection as to form.
```

A361

1    that's what happened.  And probably because it was

2    considered unnecessary.

3         Q.    It was unnecessary to create a single

4    purpose LLC affiliate of IWA to be a non-managing

5    member of New Co?

6         A.    Yeah, but I'd like to review the operating

7    agreement to be sure that's not where we ended up.

8         Q.    Okay.  We'll get to it.

9         A.    Okay.

10        Q.    The partnership term, do you see that it

11   says three years?

12        A.    Yes.

13        Q.    Why that period of time?

14        A.    I think we felt initially that that was

15   sufficient time to get the property leased up.

16        Q.    On what basis?

17        A.    Just our thoughts about if we didn't get

18   it done in three years, were we going to get it done.

19   It was just -- I think for the purposes of this, it

20   was just to pick a term.

21        Q.    And if you didn't get it done in three

22   years, then what?

A362

1      A.    Then we would have the opportunity to

2  revisit the arrangement.

3      Q.    And what does that mean?

4      A.    Well, it means either force the sale of

5  the property or find some other exit plan for the

6  property.

7      Q.    And when you say "force the sale," what

8  does that mean?

9      A.    Meaning, sell the property even -- even if

10 it hadn't been leased.  But there was a -- yeah, go

11 ahead.  I'm sorry.

12     Q.    IWA had already held the ground lease for

13 five years at that point; is that right?

14     A.    Yes.

15     Q.    So on what basis did you conclude it would

16 only take three years to lease it up?

17     A.    We expected Algon to be more successful.

18     Q.    And did Algon give you any reason to

19 believe that they could be more successful?

20     A.    Well, we discussed -- yeah.

21     Q.    Did they give you a leasing plan?

22     A.    Not specifically, no.

A363

1     Q.    Right.  And so is there any reason not to

2  allow -- why you would not want Algon to communicate

3  with the landlord about the terms of the ground

4  lease?

5     A.    If there was a conversation about

6  modifying the ground lease, it would have to involve

7  a conversation about leasing.  And we didn't want to

8  disclose any leasing issues to the ground lessor

9  because they were a competitor in the market.  And

10  two, we were in litigation with the Camaliers, and we

11  did not have a good relationship, a relationship on

12  which a fruitful discussion could be held.

13     Q.    So why three years?

14          MS. KROPF:  Objection as to form.

15     Q.    (By Mr. Bosch) Why not have Algon

16  communicate with the landlord on behalf of RSD for

17  three years?

18          MS. DAVIS:  Objection as to form.

19          MS. KROPF:  Misstate -- well,

20       misstates the facts.

21          THE WITNESS:  One, we knew there was

22       this risk of a fraudulent transfer claim.

A364

1      Q.    (By Mr. Bosch) And so why would

2  communicating between Algon and landlord give rise or

3  increase the risk of a fraudulent transfer?

4      A.    I was concerned that Algon might disclose

5  things to the landlord that we didn't think the

6  landlord needed -- information the landlord didn't

7  need and wasn't entitled to.

8      Q.    Did that include the fact that IWA

9  remained a 90 percent member in RSD?

10         MS. DAVIS:  Objection as to form.

11         THE WITNESS:  I don't recall whether

12      that was a consideration.

13      Q.    (By Mr. Bosch) So as you sit here today,

14  is it your testimony that it was not a consideration?

15      A.    No.  I just don't recall that being a

16  consideration.

17      Q.    All right.  So what was the consideration?

18  What was it that Algon might say to the landlord that

19  you thought the landlord had no right to know that

20  could give rise to a fraudulent transfer claim?

21         MS. KROPF:  Objection.  Form.

22         THE WITNESS:  Mostly surrounding

A365

```
 1          competitive issues with the building.
 2          Q.    (By Mr. Bosch) How would that give rise to
 3     a fraudulent transfer claim?
 4          A.    Oh, I'm sorry.  As to the fraudulent
 5     transfer claim.  I think that there was a risk that
 6     the landlord would look at the transaction and make a
 7     fraudulent transfer claim.
 8          Q.    And what was it about the transaction that
 9     you thought should not be disclosed to the landlord
10     because it increased the risk of a fraudulent
11     transfer claim?
12               MS. DAVIS:  Objection as to form.
13               THE WITNESS:  Subject to
14          capitalization, the presence of IWA in the
15          partnership, I think there were a number of
16          factors that could have been a concern with
17          respect to the fraudulent transfer claim.
18          That said, I'm not a lawyer, and I don't
19          know the details of a fraudulent transfer
20          claim.  I just thought, in general, it was
21          best to keep Algon and the lessor apart.
22          Q.    (By Mr. Bosch) Because you didn't want
```

A366

1    Algon to disclose, for example, IWA's interest in the

2    partnership?

3              MS. DAVIS:  Objection as to form.

4        Misstates evidence.

5        Q.    (By Mr. Bosch) That was one of the

6    considerations?

7        A.    And other factors.

8        Q.    Yeah, so one of -- one of the factors for

9    restricting Algon's discussions with the landlord, is

10   you were concerned that Algon would disclose IWA's

11   interest in RSD, correct?

12             MS. DAVIS:  Objection as to form.

13       Misstates evidence.

14             THE WITNESS:  A factor, yes.

15       Q.    (By Mr. Bosch) And another factor was you

16   were concerned that Algon would disclose the

17   capitalization of RSD?

18       A.    Yes.

19       Q.    Which was limited to $3.9 million?

20       A.    Yes.  In a short capitalization, yes.

21       Q.    Which you testify --

22       A.    However --

A367

1     Q.    -- term sheet.  So does that suggest to

2   you that that's Version 3 of the term sheet?

3     A.    I don't know whether that's what .3 means.

4     Q.    And the changes reflected in this markup

5   were all made by Algon; is that correct?

6     A.    I don't know.

7     Q.    Directing your attention to paragraph 4D,

8   which is the disposition agreement.  You see there,

9   there was an insertion for after 38 months if the

10  Algon member opts to sell the property?

11    A.    Yes.

12    Q.    Was that Algon's insertion, or was that

13  your proposal?

14    A.    Don't know.

15    Q.    And do you know how 38 months was

16  determined as the appropriate period of time for

17  Algon to consider a disposition?

18    A.    I think at that point, the litigation risk

19  would go away because we'd be beyond the fraudulent

20  transfer date, and also our expectation was that

21  there would be leasing activity, and by then the

22  property would be in a position to be sold.

A368

# EXHIBIT B



**Planet Depos**
We Make It *Happen*™

# Transcript of Robert W. Barron

**Date:** April 14, 2023
**Case:** Rock Spring Plaza II LLC -v- Investors Warranty of America LLC, et al.

**Planet Depos**
**Phone:** 888.433.3767
**Email:** transcripts@planetdepos.com
**www.planetdepos.com**

WORLDWIDE COURT REPORTING & LITIGATION TECHNOLOGY



1          IN THE UNITED STATES DISTRICT COURT
              FOR THE DISTRICT OF MARYLAND
2

ROCK SPRING PLAZA II, LLC,
3
            Plaintiff,
4
-vs-
5
INVESTORS WARRANTY OF AMERICA, LLC, et al.,
6
            Defendants.
7  _____/

8

9

10

11

12      VIDEOTAPED DEPOSITION OF ROBERT W. BARRON

13

                Friday, April 14, 2023
14              9:04 a.m. - 5:42 p.m.

15              (Conducted Remotely)

16

17

18

19  Stenographically Reported By
    Pamela J. Pelino, RPR, FPR, CLR
20  Notary Public, State of Florida
    PLANET DEPOS
21                      -  -  -

22

A371

```
1    APPEARANCES:

2    On behalf of the Plaintiff:

3        WILLIAM BOSCH, ESQUIRE
         PILLSBURY WINTHROP SHAW PITTMAN, LLP
4        1200 Seventeenth Street, NW
         Washington, DC 20036-3006
5        202.663.8142
         anthony.cavanaugh@pillsburylaw.com
6

7
     On behalf of the Rock Springs Drive, LLC:
8
         SARA KROPH, ESQUIRE
9        KROPH MOSELEY
         1100 H Street NW
10       Suite 1220
         Washington, DC 20005
11       202.627.6899
         sara@kmlawfirm.com
12

13
     On behalf of Investors Warranty of America, LLC:
14
         REBECCA A. DAVIS, ESQUIRE
15       SEYFARTH SHAW LLP
         1075 Peachtree Street NE
16       Suite 2500
         Atlanta, Georgia 30309
17       404.885.1500
         rdavis@seyfarth.com
18

19                    -Continued-

20

21

22
```

A372

Transcript of Robert W. Barron
Conducted on April 14, 2023                    3

```
 1    APPEARANCES CONTINUED:

 2    On behalf of the Witness:

 3         ANTHONY CARRIUOLO, ESQUIRE
           BERGER SINGERMAN, LLP
 4         201 East Las Olas Boulevard
           Fort Lauderdale, Florida 33301
 5         954.712.5146
           acarriuolo@bergersingerman.com
 6

 7    Present:

 8         PAUL RUBIN

 9         TROY TAYLOR

10

11    Videographer:

           MICHAEL PIETANZA
12

13

14

15

16

17

18

19

20

21

22
```

A373

Transcript of Robert W. Barron
Conducted on April 14, 2023                          6

```
 1              P R O C E E D I N G S

 2                      - - -

 3        Deposition taken before Pamela J. Pelino,

 4   Registered Professional Court Reporter and Notary Public

 5   in and for the State of Florida at Large, in the above

 6   cause.

 7                      - - -

 8        THE VIDEOGRAPHER:  Here begins media          09:04:43

 9   Number 1 in the videotaped deposition of            09:04:44

10   Robert Barron in the matter of Rock Spring          09:04:46

11   Plaza II, LLC, versus Investors Warranty of         09:04:48

12   America, LLC, in the court -- in the United         09:04:53

13   States District Court for the District of           09:04:57

14   Maryland, Case Number 20-cv-01502-PJM.              09:04:59

15        Today's date is Friday, April 14th,           09:05:07

16   2023.  The time on the video monitor is 9:05        09:05:11

17   a.m. Eastern Standard Time.                         09:05:16

18        The remote videographer is                    09:05:19

19   Michael Pietanza, representing Planet Depos.        09:05:21

20   All parties at this video deposition are            09:05:25

21   attending remotely.                                 09:05:26

22        Would counsel please voice identify           09:05:27
```

A374

Transcript of Robert W. Barron
Conducted on April 14, 2023                          7

```
 1          themselves and state who they represent.          09:05:27

 2               MR. BOSCH:  William Bosch, from the law       09:05:33

 3          firm of Pillsbury Winthrop Shaw Pittman, on        09:05:34

 4          behalf of the plaintiff.                           09:05:36

 5               MS. KROPF:  Sara Kropf from                   09:05:38

 6          Kropf Moseley on behalf of Rock Springs            09:05:40

 7          Drive, LLC, and also from Rock Springs Drive       09:05:43

 8          are Troy Taylor and Paul Rubin.                    09:05:47

 9               MR. CARRIUOLO:  Anthony Carriuolo from        09:05:52

10          Berger Singerman, LLP for the witness,            09:05:53

11          Robert Barron.                                     09:05:56

12               MS. DAVIS:  Rebecca Davis from Seyfarth       09:05:56

13          Shaw for Investors Warranty of America LLC.        09:05:56

14               THE VIDEOGRAPHER:  The deposition             09:06:07

15          officer today is Pamela Pelino, representing       09:06:08

16          Planet Depos.  The witness will now be sworn.      09:06:11

17                        -  -  -

18     Thereupon,

19               ROBERT W. BARRON,

20     having been first duly sworn or affirmed, was

21     examined and testified as follows:

22               THE WITNESS:  I do.
```

A375

Transcript of Robert W. Barron
Conducted on April 14, 2023                          8

```
 1            COURT REPORTER:  Thank you.                 09:06:29
 2                 DIRECT EXAMINATION                     09:06:29
 3    BY MR. BOSCH:                                       09:06:30
 4        Q.    Good morning, Mr. Barron.  How are you?   09:06:31
 5        A.    Good morning.  Good.                       09:06:35
 6        Q.    Would you please state your full name?    09:06:36
 7        A.    Sure.  Robert Wallace Barron.             09:06:38
 8        Q.    Mr. Barron, you're a partner with the     09:06:42
 9    Berger Singerman firm?                              09:06:43
10        A.    Yes.                                      09:06:45
11            MR. BOSCH:  I'd like to have the court      09:06:45
12        reporter pull up tab A, please, which we will  09:06:46
13        mark as IWA Exhibit 96.                         09:06:51
14            (Reporter clarifies.)                       09:07:08
15            MR. BOSCH:  Thank you.                       09:07:09
16            (Exhibit IWA 96 was marked for              09:07:10
17    identification.)                                    09:07:10
18    BY MR. BOSCH:                                       09:07:11
19        Q.    Mr. Barron, I'm just going to ask if      09:07:13
20    you would kindly identify and confirm for me that  09:07:15
21    Exhibit 96, IWA96, is a true and correct copy of   09:07:19
22    your bio?                                           09:07:23
```

A376

Transcript of Robert W. Barron
Conducted on April 14, 2023                    64

1   assignment."                                          10:06:11

2        Q.    All right.  You understood from the        10:06:11

3   beginning, based on your initial conversation with    10:06:13

4   Mr. Feltman, that IWA's objective, in forming this    10:06:17

5   new entity and assigning the ground lease to the      10:06:22

6   new entity was to get IWA off the hook?               10:06:25

7            MS. KROPF:  Objection as to form.            10:06:28

8            THE WITNESS:  That was part of the           10:06:34

9        mission.  That was part of the plan,             10:06:35

10       because -- based upon the terms of the lease.    10:06:37

11           The other part of the plan was the           10:06:39

12       reason why Algon was involved, was the hope      10:06:41

13       that the landlord would negotiate at some        10:06:45

14       point with the tenant, and they would            10:06:50

15       actually make it economically viable.            10:06:53

16           Because they were in the business to         10:06:56

17       make money.  So if you could make the asset      10:06:57

18       economically viable, that's why Algon was        10:07:00

19       involved, as people that have done that in       10:07:04

20       the past.                                        10:07:07

21   BY MR. BOSCH:                                         10:07:08

22       Q.   Do you recall there being any               10:07:10

A377

Transcript of Robert W. Barron
Conducted on April 14, 2023                    65

| | | |
|---|---|---|
| 1 | discussion as to when Algon would begin having | 10:07:11 |
| 2 | these discussions with the landlord? | 10:07:14 |
| 3 | A.    I remember there was a delay in -- can | 10:07:18 |
| 4 | I have a request that -- I don't -- I can't see | 10:07:21 |
| 5 | you.  Could we take down this document?  I just | 10:07:23 |
| 6 | see a document. | 10:07:26 |
| 7 | Q.    Ah, yes, we can take this document | 10:07:28 |
| 8 | down. | 10:07:30 |
| 9 | A.    Okay.  Thank you. | 10:07:31 |
| 10 | Q.    So, Mr. Barron, do you recall there | 10:07:32 |
| 11 | being any discussion as to when Algon would begin | 10:07:40 |
| 12 | having these discussions with the landlord? | 10:07:43 |
| 13 | A.    I knew there was a -- there was a | 10:07:45 |
| 14 | discussion of a delay, to delay negotiations for a | 10:07:49 |
| 15 | time period. | 10:07:56 |
| 16 | Q.    Do you recall what that time period | 10:07:57 |
| 17 | was? | 10:08:02 |
| 18 | A.    I went back and looked at the | 10:08:02 |
| 19 | documents.  I think the term sheet had something | 10:08:04 |
| 20 | like 36 months or 38 months.  It was some "month" | 10:08:05 |
| 21 | time period. | 10:08:08 |
| 22 | Q.    Do you recall there being any | 10:08:10 |

A378

Transcript of Robert W. Barron
Conducted on April 14, 2023                          66

| | | |
|---|---|---|
| 1 | discussion as to why Mr. Feltman and IWA wanted to | 10:08:11 |
| 2 | delay Algon from having discussions with the | 10:08:14 |
| 3 | landlord for 36 months or so? | 10:08:17 |
| 4 | MS. KROPF:  Objection as to form. | 10:08:20 |
| 5 | THE WITNESS:  My understanding was a | 10:08:21 |
| 6 | combination of the lack -- severe lack of | 10:08:25 |
| 7 | trust with the landlord based upon this other | 10:08:30 |
| 8 | litigation, concern that the landlord would | 10:08:35 |
| 9 | not honor the terms of the lease.  And so the | 10:08:36 |
| 10 | concept of getting beyond the time period | 10:08:42 |
| 11 | for -- to try to attack the agreement based | 10:08:49 |
| 12 | upon transfer. | 10:08:53 |
| 13 | BY MR. BOSCH: | 10:08:55 |
| 14 | Q.    That was one of the purposes for | 10:08:56 |
| 15 | structuring this transaction that Mr. Feltman | 10:08:57 |
| 16 | identified from the beginning? | 10:08:59 |
| 17 | MS. KROPF:  Objection as to form. | 10:09:02 |
| 18 | THE WITNESS:  I don't know if -- I | 10:09:02 |
| 19 | don't know if in that call, that was | 10:09:10 |
| 20 | discussed.  But we got a term sheet later. | 10:09:12 |
| 21 | So I don't know if -- and, again, to me, that | 10:09:15 |
| 22 | call with him was very high level. | 10:09:17 |

A379

```
 1        A.    The hope -- the hope was that the        10:30:27

 2   parties would negotiate.                            10:30:33

 3        Q.    I understand.                            10:30:36

 4              And was there any discussion of what     10:30:38

 5   would happen if the landlord did not agree to       10:30:39

 6   modify the terms of the ground lease?               10:30:43

 7        A.    Not a lot of discussion.  But at some    10:30:51

 8   point, if there's -- there was great unknown with   10:30:56

 9   the market turn, if the market didn't turn.         10:31:00

10   Because my understanding just generally was that    10:31:04

11   the ground rent was too high for the current        10:31:07

12   market of rent, you know, subleases for renting     10:31:11

13   the building.                                       10:31:15

14              So either the market would turn, or the  10:31:16

15   landlord would decide to renegotiate the ground     10:31:20

16   lease.  And so they -- you know, they didn't know.  10:31:26

17   That's why part of our negotiation of the           10:31:32

18   operating agreement was an upside for Algon if      10:31:37

19   they could -- if they could turn this thing         10:31:41

20   around.                                             10:31:42

21        Q.    Was there any discussion of what would   10:31:43

22   happen if the market didn't turn and if the         10:31:45
```

A380

Transcript of Robert W. Barron
Conducted on April 14, 2023                    80

| | | |
|---|---|---|
| 1 | landlord did not agree to modify the terms of the | 10:31:47 |
| 2 | ground lease? | 10:31:50 |
| 3 | A.    Not in great detail.  But I think at | 10:31:54 |
| 4 | some point, there may be a situation where we have | 10:31:57 |
| 5 | to give back the interest to the landlord, which | 10:32:00 |
| 6 | is frankly what the prior tenant, the Camalier | 10:32:03 |
| 7 | entity did when they were tenant. | 10:32:07 |
| 8 | Q.    What do you mean by "give back the | 10:32:09 |
| 9 | interest to the landlord"? | 10:32:11 |
| 10 | A.    You basically say that we can't make | 10:32:12 |
| 11 | this a going concern -- I don't know.  Whatever -- | 10:32:15 |
| 12 | it's the same thing that the Camalier tenant did | 10:32:17 |
| 13 | on the original loan, that they -- they couldn't | 10:32:21 |
| 14 | make a go of it.  They defaulted, and they gave | 10:32:25 |
| 15 | back the interest through foreclosure. | 10:32:30 |
| 16 | They would -- they would, I assume, | 10:32:32 |
| 17 | talk to the landlord and say, it's not working. | 10:32:33 |
| 18 | You are not renegotiating.  The market is not | 10:32:35 |
| 19 | turning, so tell us what you want to do with your | 10:32:40 |
| 20 | interest. | 10:32:43 |
| 21 | Q.    I want to understand more of what you | 10:32:50 |
| 22 | mean by giving it back to the landlord.  I don't | 10:32:51 |

A381

| | | |
|---|---|---|
| 1 | understand that.  Can you explain what that, | 10:32:56 |
| 2 | what -- how -- as a sophisticated lawyer, what | 10:33:00 |
| 3 | does that mean to give the ground lease interest | 10:33:03 |
| 4 | back to the landlord? | 10:33:05 |
| 5 | A.    Yeah.  So -- well, I mean, you're | 10:33:07 |
| 6 | sophisticated.  Your client did this in connection | 10:33:12 |
| 7 | with the predecessor to the lender; right?  It was | 10:33:15 |
| 8 | a joint venture between the Camaliers and -- it's | 10:33:20 |
| 9 | written down here.  It's Lockheed Martin. | 10:33:24 |
| 10 | Lockheed Martin and the Camaliers were | 10:33:30 |
| 11 | joint ventures as the tenant.  They borrowed | 10:33:32 |
| 12 | money, and they were unable to make it work for | 10:33:34 |
| 13 | whatever reason.  And they effectively gave back | 10:33:37 |
| 14 | the interest.  And now the landlord didn't take it | 10:33:40 |
| 15 | back, because I guess it was encumbered by a | 10:33:43 |
| 16 | mortgage.  So the lender foreclosed it. | 10:33:46 |
| 17 | So here we have a situation where it's | 10:33:49 |
| 18 | free and clear.  There's no third-party mortgage. | 10:33:51 |
| 19 | So if there's no third-party mortgage, the tenant | 10:33:53 |
| 20 | would say, landlord, if you're not going to | 10:33:57 |
| 21 | renegotiate and we cannot find tenants, we need to | 10:33:59 |
| 22 | negotiate a -- an orderly turning over the keys. | 10:34:02 |

Transcript of Robert W. Barron
Conducted on April 14, 2023                    82

| | | |
|---|---|---|
| 1 | I mean, that's just -- that's one of | 10:34:09 |
| 2 | the options in a workout situation when the | 10:34:10 |
| 3 | parties can't reach a win-win situation. | 10:34:12 |
| 4 | Q.    Meaning that ground lease tenant would | 10:34:16 |
| 5 | walk away from its obligations under the ground | 10:34:18 |
| 6 | lease? | 10:34:20 |
| 7 | A.    Correct.  Or the landlord could get a | 10:34:21 |
| 8 | judgment against the entity.  They could sue in | 10:34:24 |
| 9 | court and get a judgment against the entity. | 10:34:26 |
| 10 | That -- I don't know, I don't know the | 10:34:28 |
| 11 | facts of what happened with the Camalier/Lockheed | 10:34:31 |
| 12 | tenant.  Did they get a judgment against that | 10:34:35 |
| 13 | tenant?  Because they obviously walked away.  How | 10:34:37 |
| 14 | did they walk away? | 10:34:40 |
| 15 | Q.    Mr. Barron, I want to go to your | 10:34:42 |
| 16 | discussions with Mr. Feltman, where this was -- | 10:34:44 |
| 17 | this possibility was discussed. | 10:34:47 |
| 18 | Was it something Mr. Feltman discussed? | 10:34:52 |
| 19 | A.    No, sir.  This was a very big, big high | 10:34:55 |
| 20 | level conversation of -- as I said, we had -- we | 10:34:57 |
| 21 | have a ground lease.  The lease documents say we | 10:35:03 |
| 22 | can transfer the document, the lease, and be | 10:35:05 |

A383

Transcript of Robert W. Barron
Conducted on April 14, 2023                    83

| | | |
|---|---|---|
| 1 | released, very, very high level. | 10:35:10 |
| 2 | Q.    But who raised this possibility of | 10:35:12 |
| 3 | walking away if the ground lease was not modified | 10:35:13 |
| 4 | or if the market didn't improve? | 10:35:17 |
| 5 | A.    Well, it's just logic.  I don't | 10:35:19 |
| 6 | remember if there's a -- you know, if there's a | |
| 7 | who, but that's the options when you go forward in | |
| 8 | a distressed asset. | |
| 9 | Q.    Yes, I understand. | 10:35:34 |
| 10 | But you said that there were | 10:35:35 |
| 11 | conversations, and I want to know who participated | 10:35:36 |
| 12 | in those conversations. | 10:35:38 |
| 13 | MS. KROPF:  And I'll caution you if | 10:35:42 |
| 14 | they are conversations with your clients, | 10:35:45 |
| 15 | then you should not reveal them.  But if | 10:35:47 |
| 16 | they're conversations with Mr. Feltman or IWA | 10:35:49 |
| 17 | or somebody else, you can talk about them. | 10:35:51 |
| 18 | THE WITNESS:  I don't -- I don't recall | 10:35:57 |
| 19 | conversations -- it would be really with | 10:35:58 |
| 20 | Mr. Snitker -- on long-term, at the end of | 10:36:05 |
| 21 | the day. | 10:36:08 |
| 22 | My thought was they were hoping that | 10:36:15 |

A384

Transcript of Robert W. Barron
Conducted on April 14, 2023                    202

| | | |
|---|---|---|
| 1 | BY MR. BOSCH: | 12:55:42 |
| 2 | Q.    All right.  And do you see the term | 12:55:42 |
| 3 | there, "How do we bury the entity"? | 12:55:44 |
| 4 | A.    Uh-huh. | 12:55:47 |
| 5 | Q.    Yes? | 12:55:48 |
| 6 | A.    Yes.  Yes, sir. | 12:55:48 |
| 7 | Q.    What does that mean to you? | 12:55:49 |
| 8 | A.    I think the -- what I -- in our | 12:55:52 |
| 9 | terminology, we'd use that to mean what do we do | 12:55:56 |
| 10 | at the end of the day if this doesn't work out. | 12:56:02 |
| 11 | You know, if we can't lease it out, if the | 12:56:04 |
| 12 | landlord will not negotiate, how do we resolve | 12:56:06 |
| 13 | this? | 12:56:11 |
| 14 | Q.    And why were you considering burying | 12:56:11 |
| 15 | the entity before the entity was even formed? | 12:56:13 |
| 16 | MS. KROPF:  So objection to the extent | 12:56:18 |
| 17 | that gets to his conversations with his | 12:56:19 |
| 18 | clients about what they were doing on their | 12:56:22 |
| 19 | side.  If you want to talk about IWA | 12:56:24 |
| 20 | requirement negotiations, that's fine.  But | 12:56:25 |
| 21 | to the extent you're asking about his | 12:56:27 |
| 22 | communications with his clients we object on | 12:56:29 |

A385

| | | |
|---|---|---|
| 1 | privilege grounds. | 12:56:31 |
| 2 | BY MR. BOSCH: | 12:56:33 |
| 3 | Q.    Can you answer that question without | 12:56:33 |
| 4 | revealing privileged communications with Algon? | 12:56:34 |
| 5 | A.    No, sir, I don't -- I just don't recall | 12:56:37 |
| 6 | this.  I didn't recall -- I don't recall this, and | 12:56:39 |
| 7 | I just saw it again when I reviewed the document. | 12:56:44 |
| 8 | Q.    So you don't have any specific | 12:56:48 |
| 9 | recollection of there being discussion about how | 12:56:50 |
| 10 | to bury the entity even before it was formed? | 12:56:52 |
| 11 | A.    No, sir. | 12:56:56 |
| 12 | Q.    May I direct your attention to | 12:57:02 |
| 13 | IWA Exhibit 38.  And then after this, we'll break | 12:57:04 |
| 14 | for lunch if that's okay. | 12:57:07 |
| 15 | A.    Sure. | 12:57:09 |
| 16 | Q.    All right.  And while you're grabbing | 12:57:24 |
| 17 | control of IWA 38, I'll identify it for the record | 12:57:26 |
| 18 | as an email from Troy Taylor to David Feltman, and | 12:57:29 |
| 19 | it's copied to Paul Rubin, Jordi Guso and | 12:57:32 |
| 20 | yourself, Robert Barron.  And the subject is "6560 | 12:57:36 |
| 21 | Rock Springs Term Sheet IWA-Algon," and it's dated | 12:57:40 |
| 22 | May 5th, 2017. | 12:57:45 |

A386

Transcript of Robert W. Barron
Conducted on April 14, 2023                     212

1    testimony with anyone during the lunch break?          14:03:04

2         A.    I don't believe we discussed substance.     14:03:07

3         Q.    All right.  Fair enough.                     14:03:10

4               Mr. Barron, I want to go back to the         14:03:12

5    discussions you recall having with IWA concerning      14:03:14

6    what to do if RSD, this Newco, could not lease up       14:03:18

7    the property or get the landlord to modify the         14:03:24

8    terms of the ground lease.  Do you recall that         14:03:27

9    discussion we had earlier?                              14:03:31

10        A.    Yes, sir.                                     14:03:32

11        Q.    You talked about the possibility of          14:03:33

12   walking away from the ground lease.  Do you recall     14:03:35

13   that?                                                   14:03:40

14        A.    Yes.                                          14:03:41

15        Q.    And you recall also, you refer to that       14:03:41

16   as maybe giving back the ground lease to the           14:03:43

17   landlord?                                               14:03:46

18        A.    Yes.                                          14:03:47

19        Q.    By which you meant that the landlord         14:03:47

20   would have nobody to look to for the payment of        14:03:49

21   rent?                                                   14:03:52

22        A.    Or they would get a judgment against        14:03:53

A387

| | | |
|---|---|---|
| 1 | the -- RSD. | 14:03:54 |
| 2 | Q. Okay. And was there any timeline | 14:03:57 |
| 3 | discussed between the parties for when that might | 14:03:59 |
| 4 | occur? | 14:04:01 |
| 5 | A. No, sir. | 14:04:02 |
| 6 | Q. So let's say after nine years, was | 14:04:04 |
| 7 | there a discussion of what to do then if RSD still | 14:04:06 |
| 8 | was unable to generate income to cover its | 14:04:09 |
| 9 | financial obligations? | 14:04:12 |
| 10 | A. I don't recall a discussion of when, | 14:04:16 |
| 11 | because I think the whole issue was the market | 14:04:20 |
| 12 | and -- and/or willingness of landlord to | 14:04:22 |
| 13 | negotiate. | 14:04:27 |
| 14 | Q. Well, let me ask: Was it contemplated | 14:04:28 |
| 15 | at the time of formation of RSD that the entity, | 14:04:31 |
| 16 | RSD, could be dissolved before the expiration of | 14:04:34 |
| 17 | the ground lease? | 14:04:38 |
| 18 | A. I don't -- I don't -- I don't know -- | 14:04:41 |
| 19 | not dissolved, but I think it was contemplated | 14:04:44 |
| 20 | that at some point, there would either be a | 14:04:47 |
| 21 | negotiation with the landlord or other decisions | 14:04:50 |
| 22 | would be made. | 14:04:53 |

A388

| | | |
|---|---|---|
| 1 | said that it -- I didn't suggest it would be | 14:05:49 |
| 2 | dissolved.  Why are you asking me a question that | 14:05:52 |
| 3 | is so obviously a made-up question? | 14:05:55 |
| 4 | Q.    All right.  Well, let's go back to the | 14:05:59 |
| 5 | operating agreement that you negotiated. | 14:06:02 |
| 6 | A.    Uh-huh. | 14:06:04 |
| 7 | Q.    This is Exhibit IWA 5.  If you don't | 14:06:05 |
| 8 | mind calling that up. | 14:06:16 |
| 9 | Please scroll down to page 33.  You're | 14:06:25 |
| 10 | at 31 now.  Just scroll down to page 33.  There we | 14:06:27 |
| 11 | go.  Right there.  Do you see Article 10? | 14:06:47 |
| 12 | A.    Yes. | 14:06:49 |
| 13 | Q.    "Dissolution and Winding Up"? | 14:06:51 |
| 14 | A.    Yes. | 14:06:53 |
| 15 | Q.    So Section 10.1, which is the | 14:06:55 |
| 16 | subsection for dissolution, it says, "The company | 14:06:57 |
| 17 | shall be dissolved, its assets shall be disposed | 14:07:01 |
| 18 | of, and its affairs wound up on the first to occur | 14:07:06 |
| 19 | of the following" -- and that's -- the following | 14:07:10 |
| 20 | are identified as "the dissolution events." | 14:07:12 |
| 21 | Do you see that? | 14:07:14 |
| 22 | A.    I do. | 14:07:19 |

A389

Transcript of Robert W. Barron
Conducted on April 14, 2023                    216

| | | |
|---|---|---|
| 1 | Q.    And so here the very first event was a | 14:07:19 |
| 2 | date, August 1st, 2026.  Do you see that? | 14:07:22 |
| 3 | A.    I do. | 14:07:26 |
| 4 | Q.    So at the time of its formation, RSD | 14:07:27 |
| 5 | contemplated dissolving and winding up just under | 14:07:29 |
| 6 | nine years after the date of the assignment, did | 14:07:35 |
| 7 | it not? | 14:07:37 |
| 8 | A.    That was the earliest date, yes. | 14:07:40 |
| 9 | Q.    So this was an entity that already | 14:07:42 |
| 10 | contemplated its dissolution at the time of its | 14:07:43 |
| 11 | formation; isn't that right? | 14:07:46 |
| 12 | A.    It contemplated a date that it would be | 14:07:47 |
| 13 | dissolved. | 14:07:50 |
| 14 | Q.    Right.  Which was just nine years after | 14:07:51 |
| 15 | the date of its formation; right? | 14:07:53 |
| 16 | A.    I haven't counted the years, but, it's, | 14:07:59 |
| 17 | what -- yeah, nine years. | 14:08:00 |
| 18 | Q.    Approximately nine years. | 14:08:04 |
| 19 |     All right.  So going back to my | 14:08:06 |
| 20 | question:  How could RSD keep, observe and perform | 14:08:08 |
| 21 | all of the terms, covenants, conditions and | 14:08:11 |
| 22 | provisions of the ground lease if it was to be | 14:08:13 |

A390

Transcript of Robert W. Barron
Conducted on April 14, 2023                    217

| | | |
|---|---|---|
| 1 | dissolved at least by August 1st, 2026? | 14:08:15 |
| 2 | MS. KROPF:  Objection as to form. | 14:08:21 |
| 3 | THE WITNESS:  It would need to either | 14:08:25 |
| 4 | renegotiate with the landlord or modify this | 14:08:27 |
| 5 | provision. | 14:08:31 |
| 6 | BY MR. BOSCH: | 14:08:31 |
| 7 | Q.    All right.  So that's not my question. | 14:08:32 |
| 8 | You recall under the assignment | 14:08:35 |
| 9 | provision -- under the assignment, the assignee | 14:08:37 |
| 10 | agreed to keep, perform, and observe all of the | 14:08:43 |
| 11 | terms, conditions of the ground lease, do you not? | 14:08:45 |
| 12 | A.    I do. | 14:08:48 |
| 13 | Q.    And yet here, as of the date of the | 14:08:48 |
| 14 | formation of that assignee, it already | 14:08:50 |
| 15 | contemplated it would be dissolved years before | 14:08:54 |
| 16 | the ground lease expired; isn't that right? | 14:08:56 |
| 17 | A.    That's correct. | 14:08:59 |
| 18 | Q.    So by its terms, RSD never intended to | 14:09:00 |
| 19 | keep, observe and perform all of the terms, | 14:09:07 |
| 20 | covenants, conditions and provisions of the ground | 14:09:10 |
| 21 | lease the remainder of the term of the ground | 14:09:12 |
| 22 | lease; isn't that right? | 14:09:14 |

PLANET DEPOS
888.433.3767 | WWW.PLANETDEPOS.COM

A391

Transcript of Robert W. Barron
Conducted on April 14, 2023                    219

1          which could require a long time period as to          14:10:07

2          wind up the affairs of the entity.                    14:10:10

3    BY MR. BOSCH:                                                14:10:13

4          Q.   All right.  But what happens to the              14:10:13

5    entity's ability to satisfy the tenant's                    14:10:15

6    obligations under the ground lease once it's                14:10:19

7    dissolved?                                                  14:10:22

8               MS. KROPF:  Objection as to form.                14:10:23

9               THE WITNESS:  If it's dissolved, they            14:10:25

10         still can wind up their affairs.  The issue           14:10:26

11         is, is that when do they end their affairs            14:10:29

12         post-dissolution, end the wind up.                    14:10:36

13   BY MR. BOSCH:                                                14:10:41

14         Q.   Right.  So let's say after the                   14:10:41

15   dissolution event, when the company is wound up,            14:10:42

16   after the winding-up process, what happens to the           14:10:45

17   company's ability to keep, observe and perform the          14:10:49

18   tenant's obligations under the ground lease?                14:10:53

19         A.   At that point, they would be turning             14:10:57

20   the keys over to the landlord.                              14:10:59

21         Q.   All right.  So at the time of its                14:11:02

22   formation, RSD anticipated turning the keys over            14:11:03

A392

| | | |
|---|---|---|
| 1 | member.  And the understanding would be that our | 14:29:29 |
| 2 | firm would be the lawyer for the entity as well. | 14:29:33 |
| 3 | But at that point -- I guess, at that point, we're | 14:29:37 |
| 4 | lawyer for Algon. | 14:29:41 |
| 5 | Q.    All right.  And is it your | 14:29:45 |
| 6 | understanding that the only reason you were | 14:29:47 |
| 7 | identified as the person to whom questions should | 14:29:49 |
| 8 | be directed is because you were going to be the | 14:29:51 |
| 9 | lawyer for RSD? | 14:29:54 |
| 10 | A.    Well, I was the lawyer for the managing | 14:29:57 |
| 11 | member.  Managing member runs the entity.  So I | 14:29:59 |
| 12 | was -- at that point, I was lawyer for the | 14:30:05 |
| 13 | managing member.  And I would also be legal | 14:30:07 |
| 14 | counsel of our company -- our firm, of the legal | 14:30:11 |
| 15 | entity itself. | 14:30:16 |
| 16 | Q.    Who decided that you would be the | 14:30:19 |
| 17 | person to whom questions should be directed? | 14:30:21 |
| 18 | A.    I believe it was probably Snitker. | 14:30:31 |
| 19 | Q.    Gregg Snitker, the in-house counsel for | 14:30:37 |
| 20 | IWA? | 14:30:39 |
| 21 | A.    Correct. | 14:30:40 |
| 22 | Q.    Did you have any discussions with him | 14:30:40 |

A393

Transcript of Robert W. Barron
Conducted on April 14, 2023                247

| | | |
|---|---|---|
| 1 | MS. KROPF:  Objection as to form. | 14:36:59 |
| 2 | THE WITNESS:  Read the terms of the | 14:36:59 |
| 3 | lease.  I think part of the -- part of the -- | 14:37:02 |
| 4 | part of the challenge is is that I looked you | 14:37:09 |
| 5 | up when you can -- contacted me, and I found | 14:37:13 |
| 6 | out that you were the head of the litigation | 14:37:20 |
| 7 | of your prior firm. | 14:37:22 |
| 8 | BY MR. BOSCH: | 14:37:23 |
| 9 | Q.    Not my question, sir. | 14:37:24 |
| 10 | A.    Yes, it is. | 14:37:25 |
| 11 | Q.    I'm asking what you understood you were | 14:37:26 |
| 12 | authorized to disclose -- | 14:37:28 |
| 13 | A.    To keep -- | 14:37:29 |
| 14 | (Simultaneous speakers.) | 14:37:30 |
| 15 | Q.    Mr. Barron, let me finish. | 14:37:30 |
| 16 | On August 30, 2017, as the person to | 14:37:32 |
| 17 | whom questions were to be directed, what did you | 14:37:35 |
| 18 | understand you were authorized to disclose? | 14:37:38 |
| 19 | MS. KROPF:  Let me just -- Mr. Bosch, | 14:37:41 |
| 20 | I'm sorry to be frustrating here, but I need | 14:37:42 |
| 21 | to interpose an objection.  Because he's | 14:37:45 |
| 22 | stated repeatedly that he's the lawyer for | 14:37:47 |

A394

Transcript of Robert W. Barron
Conducted on April 14, 2023                    248

```
 1        the entity who can only be authorized by his      14:37:48
 2        clients.                                           14:37:52
 3              And to the extent any authority comes        14:37:52
 4        from your clients, I instruct you not to           14:37:54
 5        answer.                                            14:37:56
 6              THE WITNESS:  Okay.                           14:37:56
 7              MS. KROPF:  Whoever the client is, that      14:37:57
 8        would be privileged.  We'd object to it.           14:37:58
 9              And I instruct you not to answer.            14:38:01
10              THE WITNESS:  Okay.  Thank you.              14:38:04
11  BY MR. BOSCH:                                            14:38:05
12        Q.   So were you advised by your client as        14:38:06
13  to what information you could disclose?                  14:38:08
14              MS. KROPF:  Objection.                        14:38:11
15              And I instruct you not to answer.            14:38:11
16              THE WITNESS:  Understood.                     14:38:13
17  BY MR. BOSCH:                                            14:38:14
18        Q.   So you can't say what information you         14:38:15
19  were permitted to disclose or were not permitted        14:38:16
20  to disclose without you divulging attorney-client       14:38:20
21  communications?                                          14:38:26
22              MS. KROPF:  You can -- object to form.       14:38:29
```

A395

Transcript of Robert W. Barron
Conducted on April 14, 2023                    249

| | | |
|---|---|---|
| 1 | But you can answer. | 14:38:34 |
| 2 | THE WITNESS:  I don't know how I | 14:38:37 |
| 3 | could -- | 14:38:37 |
| 4 | (Reporter clarifies.) | 14:38:38 |
| 5 | MS. KROPF:  Yes.  Object to form. | 14:38:38 |
| 6 | You can answer. | 14:38:38 |
| 7 | THE WITNESS:  I don't know to answer | 14:38:38 |
| 8 | that question without discussing | 14:38:38 |
| 9 | communication with my client. | 14:38:39 |
| 10 | MR. BOSCH:  And, Ms. Kropf, so it's | 14:38:44 |
| 11 | clear, you're saying that all communications | 14:38:46 |
| 12 | with his client about the information that he | 14:38:48 |
| 13 | could or could not disclose is privileged? | 14:38:49 |
| 14 | MS. KROPF:  Yes. | 14:38:53 |
| 15 | BY MR. BOSCH: | 14:38:57 |
| 16 | Q.   Were you involved in any discussions | 14:38:59 |
| 17 | concerning what information to disclose to | 14:39:01 |
| 18 | landlord about the assignment at the time of this | 14:39:03 |
| 19 | notice, August 30th, 2017? | 14:39:09 |
| 20 | MS. KROPF:  You can answer that to the | 14:39:12 |
| 21 | extent it's not disclosing communications | 14:39:13 |
| 22 | with your client. | 14:39:15 |

A396

# EXHIBIT C



# Transcript of Troy Taylor

**Date:** April 6, 2023
**Case:** Rock Spring Plaza II LLC -v- Investors Warranty of America LLC, et al.

**Planet Depos**
**Phone:** 888.433.3767
**Email:** transcripts@planetdepos.com
**www.planetdepos.com**

WORLDWIDE COURT REPORTING & LITIGATION TECHNOLOGY

1          IN THE UNITED STATES DISTRICT COURT

2            FOR THE DISTRICT OF MARYLAND

3                CIVIL ACTION FILE

4              NO: 8:20-CV-01502-PJM

5    ---------------------------------------x
     ROCK SPRING PLAZA II, LLC,
6                        Plaintiff,

7

8    INVESTORS WARRANTY OF AMERICA, LLC,

9    et al.

10                       Defendants.
     ---------------------------------------x
11

12

13        VIDEOTAPED DEPOSITION OF TROY TAYLOR

14                Miami, Florida

15            Thursday, April, 6, 2023

16

17   REPORTED BY:
                 BOBBIE ZELTMAN
18               Professional Realtime Court Reporter
                 and Notary for New York and Florida
19

20

21

22   Job Number    484448

USCA4 Appeal: 23-1928     Doc: 29     Filed: 01/11/2024     Pg: 406 of 557

```
 1                                April 6, 2023
 2                                9:22 a.m.
 3
 4          Videotaped deposition of Troy Taylor taken
 5   by Plaintiff, pursuant to Notice, taken in Miami,
 6   Florida before BARBARA R. ZELTMAN, a Professional
 7   Realtime Court Reporter and Notary Public within and
 8   for the State of Florida.
 9
10
11
12
13
14
15
16
17
18
19
20
21
22
```

A400

Transcript of Troy Taylor
April 6, 2023                                    4

```
1    A P P E A R A N C E S:

2

3    On behalf of the Plaintiff Rock Spring Plaza II:

4    PILLSBURY WINTHROP SHAW PITTMAN, LLP

5         1200 Seventeenth Street, N.W.

6         Washington, D.C.  20036

7         (202) 663-8000

8         BY:  WILLIAM BOSCH, ESQ.

9         e-mail:  william.bosch@pillsburylaw.com

10        BY: KATHERINE DANIAL, ESQ.

11        e-mail:  katherine.danial@pillsburylaw.com

12

13

14

15   On behalf of the Defendant Investors Warranty of
     America, LLC:

16   SEYFARTH SHAW, LLP

17        1075 Peachtree Street, N.E.

18        Suite 2500

19        Atlanta, Georgia 30309

20        (404) 885-1500

21        BY:  REBECCA A. DAVIS, ESQ.

22        e-mail:  rdavis@seyfarth.com
```

A401

Transcript of Troy Taylor
April 6, 2023                                              5

```
1     A P P E A R A N C E S: (Cont'd)

2

3     On behalf of the Defendant Rock Spring Drive LLC:

4     KROPF MOSELEY PLLC

5              1100 H Street NW

6              Suite 1220

7              Washington, DC  20005

8              (202) 627-6900

9              BY:  SARA KROPF, ESQ.

10             sara@kropf-law.com

11

12

13    ALSO PRESENT:   Paul Rubin, RSD

14                    Michael Pietanza, Videographer

15

16

17

18

19

20

21

22
```

A402

1

2              IT IS HEREBY STIPULATED AND AGREED

3      by and between the attorneys for the respective

4      parties herein that filing and sealing be and

5      the same are hereby waived.

6              IT IS FURTHER STIPULATED AND AGREED

7      that all objections, except as to the form of

8      the question, shall be reserved to the time

9      of trial.

10             IT IS FURTHER STIPULATED AND AGREED

11     that the within deposition may be signed and

12     sworn to before any officer authorized to

13     administer an oath with the same force and

14     effect as if signed and sworn to before

15     the Court.

16

17

18

19

20

21

22

A403

Transcript of Troy Taylor
April 6, 2023                                    10

```
1          THE VIDEOGRAPHER:  Here begins        09:22:11

2    Media Number 1 in the videotaped            09:22:11

3    deposition of Troy Taylor, in the           09:22:13

4    matter of Rock Spring Plaza II, LLC,        09:22:16

5    versus Investors Warranty of America,       09:22:21

6    LLC, et al., in the United States           09:22:23

7    District Court for the District of          09:22:25

8    Maryland.                                   09:22:29

9          Case No. 20-cv-01502-PJM.             09:22:29

10         Today's date is Thursday, April 6,    09:22:37

11   2023.  The time on the video monitor is     09:22:40

12   9:21 a.m. Eastern Standard Time.            09:22:44

13         The videographer today is Michael     09:22:47

14   Pietanza representing Planet Depos.         09:22:49

15         This video deposition is taking       09:22:51

16   place at 1450 Brickell Avenue, Miami,       09:22:54

17   Florida.                                    09:22:58

18         Would counsel please voice-identify   09:22:58

19   themselves and state whom they represent.   09:23:01

20         MR. BOSCH:  William Bosch from        09:23:04

21   the law firm of Pillsbury Winthrop          09:23:05

22   Shaw Pittman on behalf of the               09:23:05
```

A404

Transcript of Troy Taylor
April 6, 2023                                11

| | | |
|---|---|---|
| 1 | Plaintiff. | 09:23:07 |
| 2 | MS. KROPF:  Sara Kropf from | 09:23:09 |
| 3 | Kropf Moseley on behalf of Rock | 09:23:11 |
| 4 | Springs Drive LLC. | 09:23:15 |
| 5 | MS. DAVIS:  Rebecca Davis from | 09:23:17 |
| 6 | the law firm of Seyfarth Shaw LLP, on | 09:23:19 |
| 7 | behalf of Investors Warranty of | 09:23:20 |
| 8 | America, LLC. | 09:23:22 |
| 9 | MR. BOSCH:  And also with us is | 09:23:24 |
| 10 | Paul Rubin. | 09:23:26 |
| 11 | MS. KROPF:  Yes.  Paul Rubin is | 09:23:27 |
| 12 | also here, who is one of the | 09:23:29 |
| 13 | principals of Rock Springs Drive. | 09:23:31 |
| 14 | THE VIDEOGRAPHER:  Thank you. | 09:23:35 |
| 15 | The court reporter today is Barbara | 09:23:35 |
| 16 | Zeltman representing Planet Depos. | 09:23:37 |
| 17 | Would the reporter please swear in | 09:23:37 |
| 18 | the witness. | 09:23:37 |
| 19 | THE REPORTER:  Raise your right | 09:23:37 |
| 20 | hand, please, sir. | 09:23:37 |
| 21 | Do you solemnly swear that the | 09:23:37 |
| 22 | testimony you're about to give will be | 09:23:37 |

A405

Transcript of Troy Taylor
April 6, 2023                              12

| | | |
|---|---|---|
| 1 | the truth, the whole truth and nothing | 09:23:37 |
| 2 | but the truth, so help you God? | 09:23:37 |
| 3 | THE WITNESS:  I do. | 09:23:37 |
| 4 | THE REPORTER:  Very good. | 09:23:37 |
| 5 | Thank you. | 09:23:37 |
| 6 | TROY TAYLOR, | 09:23:37 |
| 7 | having been first duly sworn by | 09:23:37 |
| 8 | Barbara R. Zeltman, Notary Public, | 09:23:37 |
| 9 | was examined and testified as follows: | 09:23:37 |
| 10 | EXAMINATION | 09:23:37 |
| 11 | BY MR. BOSCH: | 09:23:45 |
| 12 | Q    Good morning, Mr. Taylor. | 09:23:47 |
| 13 | How are you? | 09:23:47 |
| 14 | A    Good morning, Mr. Bosch. | 09:23:47 |
| 15 | How are you? | 09:23:48 |
| 16 | Q    Doing well.  Thank you. | 09:23:49 |
| 17 | Please state your full name. | 09:23:49 |
| 18 | A    Sure.  Troy Theodore Taylor. | 09:23:53 |
| 19 | Q    You know I am one of the attorneys | 09:23:56 |
| 20 | representing the plaintiff.  First time we | 09:23:57 |
| 21 | met was when you were present for the | 09:23:58 |
| 22 | deposition of Mr. David Feltman, correct? | 09:24:00 |

A406

| | | |
|---|---|---|
| 1 | relevance to me signing bad boy guarantees. | 12:01:52 |
| 2 | BY MR. BOSCH: | 12:01:54 |
| 3 | Q     So you and Mr. Rubin, as the sole | 12:01:55 |
| 4 | members of Longshore Ventures, took an | 12:01:56 |
| 5 | interest in a ground lease without having | 12:01:57 |
| 6 | conducted any due diligence as to the value | 12:01:59 |
| 7 | of that ground lease? | 12:02:01 |
| 8 | A     Correct. | 12:02:02 |
| 9 | Q     But you knew that the building was | 12:02:10 |
| 10 | vacant? | 12:02:11 |
| 11 | A     I believe I did, yes. | 12:02:13 |
| 12 | Q     Had been for several years? | 12:02:15 |
| 13 | A     Which means big opportunity to get | 12:02:17 |
| 14 | something done. | 12:02:19 |
| 15 | Q     And you knew there was no source of | 12:02:20 |
| 16 | income? | 12:02:22 |
| 17 | MS. KROPF:  Objection as to | 12:02:22 |
| 18 | form. | 12:02:22 |
| 19 | A     I was basically told that we had a | 12:02:23 |
| 20 | commitment from IWA to fund for some period | 12:02:26 |
| 21 | of time, and like every other situation, we | 12:02:30 |
| 22 | figured that we would figure out how to | 12:02:33 |

A407

USCA4 Appeal: 23-1928    Doc: 29    Filed: 01/11/2024    Pg: 414 of 557

| | | |
|---|---|---|
| 1 | maximize the value of the project.  And the | 12:02:35 |
| 2 | understanding that I had was that IWA would | 12:02:40 |
| 3 | fund this until such time as we had a | 12:02:42 |
| 4 | consensual resolution of what we should do. | 12:02:46 |
| 5 | BY MR. BOSCH: | 12:02:49 |
| 6 | Q    For what period of time did IWA | 12:02:49 |
| 7 | commit to fund RSD? | 12:02:51 |
| 8 | MS. KROPF:  Objection as to | 12:02:53 |
| 9 | form. | 12:02:53 |
| 10 | A    They didn't.  They committed | 12:02:54 |
| 11 | ultimately $3.9 million -- up to | 12:02:57 |
| 12 | 3.9 million, which -- just so we're clear, | 12:03:01 |
| 13 | because I've heard in some other testimony | 12:03:04 |
| 14 | and in your questions, that's 18 months of | 12:03:05 |
| 15 | operating costs.  And talking about how much | 12:03:09 |
| 16 | the ground lease is covered is irrelevant | 12:03:12 |
| 17 | because you can't pay the ground lease if | 12:03:14 |
| 18 | you don't pay the operating costs. | 12:03:16 |
| 19 | So basically 3.9 million is | 12:03:18 |
| 20 | approximately 18 months of runway.  However, | 12:03:20 |
| 21 | they weren't obligated to fund 3.9 million. | 12:03:24 |
| 22 | They agreed to fund up to 3.9 million, which | 12:03:26 |

A408

| | | |
|---|---|---|
| 1 | meant candidly any time they could have | 12:03:33 |
| 2 | stopped. | 12:03:33 |
| 3 | Basically I was told that they | 12:03:35 |
| 4 | would continue to fund this until we had a | 12:03:35 |
| 5 | successful resolution. | 12:03:37 |
| 6 | And one of the things we did -- and | 12:03:38 |
| 7 | you asked a question earlier on and I -- | 12:03:41 |
| 8 | shame on me with due diligence -- we | 12:03:44 |
| 9 | asked -- I asked Mr. Feltman why he wanted | 12:03:47 |
| 10 | us to do this versus somebody that was just | 12:03:49 |
| 11 | a property management company. | 12:03:51 |
| 12 | And I can't remember the exact | 12:03:53 |
| 13 | wording and I can't remember the exact | 12:03:56 |
| 14 | discussion, but that he felt that at some | 12:03:58 |
| 15 | point in time down the road that our | 12:04:00 |
| 16 | restructuring experience would be an | 12:04:05 |
| 17 | important component to facilitating whatever | 12:04:07 |
| 18 | the final outcome was, and there would be | 12:04:11 |
| 19 | some of period of time while we sat and | 12:04:12 |
| 20 | watched things and then at some point in | 12:04:15 |
| 21 | time our restructuring expertise would be | 12:04:17 |
| 22 | very valuable and that was probably one of | 12:04:20 |

A409

Transcript of Troy Taylor
April 6, 2023                                          180

| | | |
|---|---|---|
| 1 | my early questions to him as part of my due | 12:04:22 |
| 2 | diligence. | 12:04:25 |
| 3 | BY MR. BOSCH: | 12:04:25 |
| 4 | Q    For what period of time did you | 12:04:26 |
| 5 | understand you were going to sit and watch | 12:04:27 |
| 6 | this? | 12:04:29 |
| 7 | A    We never discussed time period. | 12:04:29 |
| 8 | Q    So the $3.9 million capital | 12:04:36 |
| 9 | funding, was that number determined by IWA? | 12:04:39 |
| 10 | A    Yes. | 12:04:41 |
| 11 | Q    You had nothing to do with it? | 12:04:41 |
| 12 | A    No.  I think originally it was less | 12:04:42 |
| 13 | and I think they came back and decided to do | 12:04:45 |
| 14 | more. | 12:04:48 |
| 15 | Q    At the time you were negotiating | 12:04:49 |
| 16 | with Mr. Feltman, did you understand from | 12:04:50 |
| 17 | him that there were no prospects for the | 12:04:52 |
| 18 | sale of this ground lease interest? | 12:04:54 |
| 19 | A    I don't understand the question. | 12:04:59 |
| 20 | Q    Did Mr. Feltman tell you that they | 12:05:00 |
| 21 | had been trying to sell this ground lease | 12:05:02 |
| 22 | interest? | 12:05:04 |

A410

1       release transfer or termination of the                    02:22:21

2       ground lease?                                              02:22:23

3              MS. KROPF:  Objection as to                         02:22:25

4          form.                                                   02:22:25

5          A     We had discussions after Mr.                      02:22:34

6       Feltman left in 2019 about amending the                    02:22:37

7       scope of the assignment to potentially                     02:22:51

8       consider approaching the ground lessor and                 02:22:54

9       opening up some dialogue.                                  02:23:05

10   BY MR. BOSCH:                                                 02:23:07

11         Q     That was not within the scope of                  02:23:07

12      your engagement?                                           02:23:10

13         A     We didn't think so.                               02:23:15

14         Q     And why did you think that you were               02:23:17

15      not supposed to approach the landlord?                     02:23:19

16         A     We thought that basically there                   02:23:23

17      would need to be -- in spite of the fact                   02:23:25

18      that -- here is the problem we had -- and we               02:23:27

19      discussed this earlier in the day.                         02:23:31

20             But IWA and the management                          02:23:33

21      committee felt that the Camaliers were, as                 02:23:35

22      we discussed, dishonest, untrustworthy                     02:23:37

A411

Transcript of Troy Taylor
April 6, 2023                                                    282

1    litigious, etc cetera, et cetera, et cetera.                02:23:41

2            And after -- you know, as I                         02:23:43

3    mentioned, after you reached out, there was                 02:23:44

4    a litigator reaching out.  I didn't push                    02:23:46

5    them on basically us going to sit down and                  02:23:49

6    talk to the ground lessor.                                  02:23:51

7            I can tell you that in every                        02:23:53

8    assignment I've ever had in the past, we                    02:23:54

9    would have basically gone to sit down with                  02:23:57

10   Mr. Camalier.  But the fact that he didn't                  02:24:01

11   reach out to me, the fact that you were                     02:24:03

12   reaching out to us as a litigator, your                     02:24:05

13   letters were very -- looked like they were                  02:24:08

14   building a litigation file versus just kind                 02:24:12

15   of a business discussion.  That had me sit                  02:24:14

16   back.                                                       02:24:19

17           However, when we got to 2019, we                    02:24:20

18   had been in this thing, like, you know,                     02:24:23

19   several years, and my feeling was, you know                 02:24:25

20   what, it's time we basically go down and sit                02:24:27

21   down with these guys and have a discussion.                 02:24:30

22   And this was I think after the GSA lease                     02:24:33

PLANET DEPOS
888.433.3767 | WWW.PLANETDEPOS.COM

A412

Transcript of Troy Taylor
April 6, 2023                                    283

| | | |
|---|---|---|
| 1 | situation in early 2019 and kind of take | 02:24:36 |
| 2 | everybody's temperature of what do they | 02:24:41 |
| 3 | really want to do, what don't they want to | 02:24:45 |
| 4 | do, not what they were willing to do, not | 02:24:47 |
| 5 | that we were told what they would do, and | 02:24:52 |
| 6 | see if there was any kind of rational | 02:24:54 |
| 7 | business discussion that doesn't involve the | 02:24:57 |
| 8 | lawyers sitting around this table. | 02:25:00 |
| 9 | Q    And you understood that you would | 02:25:02 |
| 10 | need to revise the scope of your -- | 02:25:03 |
| 11 | A    And -- | 02:25:07 |
| 12 | MS. KROPF:  Let him finish his | 02:25:07 |
| 13 | question. | 02:25:07 |
| 14 | Q    And you understood that you would | 02:25:07 |
| 15 | need to revise the scope of your engagement | 02:25:07 |
| 16 | on behalf of RSD to allow you to sit down | 02:25:08 |
| 17 | with a landlord to take everybody's | 02:25:11 |
| 18 | temperature? | 02:25:13 |
| 19 | MS. KROPF:  Objection as to | 02:25:14 |
| 20 | form. | 02:25:14 |
| 21 | A    When we initially got involved, at | 02:25:15 |
| 22 | some point Mr. Feltman insinuated -- and | 02:25:17 |

A413

Transcript of Troy Taylor
April 6, 2023                                    284

1      again not guaranteed, not written, that the          02:25:20

2      reason he got us involved was that at some           02:25:23

3      point there would be some type of situation          02:25:24

4      that required us to play restructuring               02:25:27

5      adviser, not property manager and that               02:25:30

6      basically if we were going to now put our            02:25:32

7      restructuring hat on, candidly we wanted to          02:25:35

8      get paid.                                            02:25:39

9   BY MR. BOSCH:                                           02:25:39

10      Q     But as of 2019 that hat was not               02:25:40

11      going to be put on just yet?                        02:25:42

12      A     That hat was not to be put on                 02:25:44

13      because we needed to have the approval of           02:25:45

14      the management committee to have                    02:25:48

15      conversations, let alone toss ideas back and        02:25:51

16      forth, et cetera, et cetera.                        02:25:53

17      Q     So by 2019, after the                         02:25:55

18      correspondence that had been engaged with          02:25:58

19      Mr. Barron, you decided that it was time to         02:25:59

20      revisit the scope of your engagement?               02:26:02

21      A     More importantly we thought that it           02:26:05

22      was time to go proactively sit down and talk        02:26:08

A414

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF MARYLAND**
**GREENBELT DIVISION**

**ROCK SPRING PLAZA II, LLC,**

          **Plaintiff,**

    **v.**                                        **Civil Action No. 8:20-cv-01502-PJM**

**INVESTORS WARRANTY OF**
**AMERICA, LLC, et al.,**

          **Defendants.**

**DEFENDANT INVESTORS WARRANTY OF AMERICA, LLC'S REPLY**
**IN SUPPORT OF ITS BRIEF, PURSUANT TO THE COURT'S MARCH 15, 2023**
**ORDER, IN SUPPORT OF RECONSIDERATION OF THE APPLICABILITY**
**OF THE CRIME-FRAUD EXCEPTION**

**TABLE OF CONTENTS**

ARGUMENT ............................................................................................................. 2

I.      Plaintiff's Arguments Rely on Proposed Rules and Purposefully
        Ambiguous Legal Standards ........................................................................ 3

II.     Plaintiff Has Not and Cannot Demonstrate a Prima Facie Case for Fraud............. 5

        A.      Plaintiff Did Not Establish a Prima Facie Case of Fraud in its
                Motion or at the Hearing........................................................... 6

        B.      An Assignment Made Pursuant to Two Different Contracts
                Negotiated and Executed by Plaintiff is Not Fraud. ................... 6

        C.      Plaintiff Cannot Rely on RSD's Election Not to Record the
                Assignment as Evidence of Fraud.............................................. 11

        D.      There Was No Fraudulent "Exit Strategy" ............................... 13

                1.      Consideration of an "Exit Strategy" and Trying to Find a
                        Profitable Solution for an Underperforming Asset is not
                        Fraudulent. ................................................................... 13

                        a.      RSD is not a sham............................................. 14

                        b.      An "Exit Strategy" is simply a disposition strategy
                                to obtain a positive result. ................................ 15

        E.      Plaintiff's Explanations of the Deposition Testimony Are False. ............ 16

III.    If the Court has Determined that Plaintiffs Have Made a Prima Facie
        Showing, IWA is Entitled to an Ex Parte Hearing............................... 17

CONCLUSION............................................................................................... 20

i

A416

## TABLE OF AUTHORITIES

Page(s)

**Cases**

*CBM One Hotels, L.P. v. Maryland State Dep't of Assessments & Tax'n*,
  No. 2451, Sept. term, 2014, 2017 WL 1788465 (Md. Ct. Spec. App. May 5,
  2017) .................................................................................................................12

*Clark v. United States*,
  289 U.S. 1, 53 S. Ct. 465, 77 L. Ed. 993 (1933) ..................................................3, 4

*In re Gen. Motors Corp.*,
  153 F.3d 714 (8th Cir. 1998) ...................................................................19

*In re Grand Jury Proc. #5 Empanelled Jan . 28, 2004*,
  401 F.3d 247 (4th Cir. 2005) ....................................................................4

*In re Grand Jury Proc.*,
  417 F.3d 18 (1st Cir. 2005) ...................................................................4, 18

*In re Grand Jury Proc., Thursday Special Grand Jury Sept. Term, 1991*,
  33 F.3d 342 (4th Cir. 1994) .....................................................................19

*In re Grand Jury Subpoena*,
  642 Fed. Appx. 223 (4th Cir. 2016) ..........................................................18

*Haines v. Liggett Group, Inc.*,
  975 F.2d 81 (3d Cir. 1992) ......................................................................19

*In re Napster Inc. Copyright Litig.*,
  479 F.3d 1078 (9th Cir. 2007) .................................................................19

*In re Richard Roe, Inc.*,
  168 F.3d 69 (2d Cir. 1999)........................................................................4

*Townsend Baltimore Garage, LLC v. Supervisor of Assessments of Baltimore
  City*,
  215 Md. App. 133, 79 A.3d 960 (2013)......................................................13

*United Bank v. Buckingham*,
  301 F. Supp. 3d 547 (D. Md. 2018) ....................................................3, 5, 6

*United States v. Zolin*,
  491 U.S. 554, 109 S. Ct. 2619, 105 L. Ed. 2d 469 (1989)............................ *passim*

ii

A417

**Statutes**

Maryland Code, § 3-101(a)...................................................................................11

Maryland Code, § 3-101(d).........................................................................11, 12, 13

Md. Code Ann., Cts. & Jud. Proc. § 9–108 .............................................................3

**Other Authorities**

FRE 501 ....................................................................................................................3

FRE 502 ....................................................................................................................3

FRE 503 ....................................................................................................................3

John W. Gergacz, ATTORNEY-CORPORATE CLIENT PRIVILEGE § 4:16
    (Spring Ed. 2023).............................................................................................17

Mueller, et al., Federal Evidence § 5.22 Shareholder litigation (4th Ed. 2022) .............................3

A418

Supreme Court precedent provides a narrow crime-fraud exception, which is that the attorney-client privilege protection "does not extend to communications made for the purpose of getting advice *for* the commission of a fraud or crime." *United States v. Zolin*, 491 U.S. 554, 563, 109 S. Ct. 2619, 2626, 105 L. Ed. 2d 469 (1989) (quotations omitted). IWA did not seek advice *for* a fraud but instead sought to avoid any inkling of fraud by strictly adhering to the governing contract terms, in prudent consultation with its counsel. IWA has never hidden why it made the Assignment and has never hidden behind its lawyers.[1] IWA assigned the Ground Lease to RSD, and then immediately provided proper notice to Plaintiff about the Assignment. Plaintiff ignores that the Assignment was openly made pursuant to two separate contracts, and instead asserts the extraordinary allegation that an established lending institution and well-regarded real estate experts hid behind multiple lawyers from at least four different law firms to commit fraud.

Plaintiff's contrived characterization of facts does not make the crime-fraud exception any more applicable, nor is it a basis for obtaining the three *privileged* communications (identified by the Court). Obtaining legal advice about what a party may do under a contract and what claims may be filed by parties whose affiliates are already engaged in litigation is not fraudulent. Attorneys are hired to give just that advice. If Plaintiff is able to obtain privileged communications on no more than a standard of "relevance," this Court will essentially be holding a client cannot evaluate a *compliant* and *legal* course of action to *avoid* falling victim to

---

[1] Plaintiff argues the number of documents on IWA's privilege log indicates that IWA is trying to hide behind its attorneys. Plaintiff produced 1,723 documents and withheld an additional 434 documents as privileged. IWA produced 4,713 documents, and IWA identified 1,192 documents as privileged. Both Plaintiff and IWA claim 20% of their documents are privileged. The Court has now reviewed approximately 16% of IWA's privileged documents and determined that just three are even "relevant".

its adversary's litigious antics without risking losing its attorney-client protections.  That's a problematic precedent to set.

## **ARGUMENT**

Plaintiff has not established a prima facie case of fraud, and there are no factual or legal grounds for ordering the production of IWA's privileged communications to Plaintiff.  However, if the Court remains inclined to find that Plaintiff should obtain three of IWA's privileged communications, IWA should be given a fair opportunity to explain that evidence through an *ex parte* hearing.

The Court believes there are three privileged documents that are "relevant" to Plaintiff's fraud claim, yet the Court (i) has not given IWA any insight into why the Court believes the speculative argument of Plaintiff's counsel and gives no credit to the testimony of multiple witnesses and other documentary evidence, which fully refute Plaintiff's fraud claims; (ii) has not explained why it believes that the legal advice of IWA's attorneys as to compliance with contracts (which allow the Assignment) is "relevant;" and (iii) did not at the hearing give IWA an opportunity to respond to Plaintiff's speculative theories about its purported fraud evidence (which theories have been disproven).  Indeed, as to the third point, counsel for RSD even raised concerns at the hearing that Plaintiff's counsel had over an hour to argue about the meaning of IWA's documents that neither IWA nor RSD had an opportunity to address.  *See* February 16, 2023 Hearing Transcript ("Hr'g Tr.") at 85:1-94:6, attached as Exhibit A.  IWA tried to address both that evidence and the privileged documents in its *ex parte* letter, but that letter is not being considered.  Now, IWA cannot address the communications without disclosing their content.

Nevertheless, for the reasons set forth below, even if Plaintiff did have some credible evidence on which it could base its fraud claim (and it does not) Plaintiff's legal arguments are still fatally flawed and erroneous.

2

A420

I.    **Plaintiff's Arguments Rely on *Proposed* Rules and Purposefully Ambiguous Legal Standards**

Plaintiff's chief argument in opposition is premised on *proposed* Federal Rule of Evidence ("FRE") 503, which Congress never enacted and this Court has never relied on to support a crime-fraud exception.  (Pl.'s Br. at 5).  *Proposed* FRE 503 is neither instructive nor controlling in this case, or in any other case.  Yet even if it had been enacted, it is not relevant here because (i) there has been no crime or fraud and (ii) any legal advice was given to interpret a legal contract so that a client could understand its contractual rights and obligations in light of anticipated litigation.  See IWA's Brief at 2 (ECF-294).  IWA thought it would be sued, and that is exactly what happened.[2]

As it stands, FRE 501 and 502 control privilege.  Rule 501 states that common law governs the claim of privilege, except if rules prescribed by the Supreme Court provide otherwise.  "The common law privilege has been codified under Maryland law."  *United Bank v. Buckingham*, 301 F. Supp. 3d 547, 552 (D. Md. 2018) (citing Md. Code Ann., Cts. & Jud. Proc. § 9–108 ("A person may not be compelled to testify in violation of the attorney-client privilege.")).  Common law also does not recognize the crime-fraud exception in cases, like here, where the communications relate to compliance, rather than avoidance, of the law.  *See Buckingham*, 301 F. Supp. 3d at 552 (recognizing that '[a] communication is not privileged if it was made for the purpose of seeking advice or aid in furtherance of a crime or fraud.").

No rule or case suggested by Plaintiff supports divergence from upholding IWA's privilege.  First, Plaintiff's reliance on the ambiguous prima facie standard set forth in *Clark v.*

---

[2] Plaintiff also relies on other purported authority that is not relevant.  For example, Mueller, et al., Federal Evidence § 5.22 Shareholder litigation (4th Ed. 2022) actually discusses the crime-fraud exception from the context of derivative actions and the relevance to the to *Garner* rule, which is a different standard.

A421

*United States*, 289 U.S. 1, 53 S. Ct. 465, 77 L. Ed. 993 (1933) is fatal.  Specifically, Plaintiff suggests that "no preliminary finding … aside from the communication" itself is necessary to warrant implication of the crime-fraud exception.  Pl.'s Br. at 6.  But, the Supreme Court criticized this standard set forth in *Clark* due to the confusion and ambiguity that it created, as critiqued by legal scholars.  *Zolin*, 491 U.S. at 563 n. 7 (1989).  In *Zolin*, the Court ultimately concluded that the vague standard set by Clark "remains subject to question."  *Id*. at 563; *see also In re Grand Jury Proc*., 417 F.3d 18, 22 (1st Cir. 2005) ("The process of development is far from over" with respect to the standard.)

Second, *Zolin* did not clarify the "quantum of proof necessary ultimately needed to establish the applicability of the crime-fraud exception." *Zolin*, 491 U.S. at 564.  However, *Zolin* also did not give unbridled discretion to courts to disregard the importance of attorney-client privilege, well-grounded in common law, and to allow scant evidence to pierce this protection.  Indeed, the importance of the attorney-client privilege is difficult to overstate, and it is for this reason that the crime-fraud exception "should not be framed so broadly as to vitiate much of the protection [it intends to afford]." *In re Richard Roe, Inc*., 168 F.3d 69, 71 (2d Cir. 1999).

Finally, the Fourth Circuit has interpreted the crime-fraud exception to mean that it is the client's knowledge and intentions that are of paramount concern because the client is the holder of the privilege.  *In re Grand Jury Proc. #5 Empanelled Jan . 28, 2004*, 401 F.3d 247, 251 (4th Cir. 2005) (finding that the district court abused its discretion because the district court simply could not have concluded that any sort of relationship exists between the allegedly privileged documents and the alleged crime.)  That is, the court cannot single-handedly look at the communication and the discovery-seeking party's interests in the privileged documents.  Indeed, "[i]t is the court's duty to consider all of the circumstances in determining whether a sufficient

4

A422

showing of intent has been made." *Buckingham*, 301 F. Supp. 3d at 557.

Here, only Plaintiff's speculative arguments, which are based on the cherry-picking of language from various emails (including from individuals who are not even parties to this case) serve as a basis for IWA's alleged "sharp trading." However, as expressed in both briefing and oral argument to date, and further summarized herein, IWA, acknowledges that it consulted with its counsel before making any decisions about the Assignment at issue and has been transparent about its intentions, none of which include engaging in a fraud. Setting aside the public policy interest to allow an attorney an unencumbered ability to provide pre-litigation advice, if IWA is ordered to produce the documents, it would be irreparably harmed by providing attorney work product and privileged communications regarding the defenses that have arisen in this lawsuit. Pairing these facts against the common law and Supreme Court framework set forth above, Plaintiff has not overcome the protections afforded by the attorney-client privilege.

**II.    <u>Plaintiff Has Not and Cannot Demonstrate a Prima Facie Case for Fraud.</u>**

Regardless of what standard the Court decides Plaintiff must follow to demonstrate a prima facie case of fraud, Plaintiff has not met its burden and cannot use contested documents only to meet it. In *Zolin*, the Supreme Court held that the documents at issue in a claim for the crime-fraud exception cannot be used as the sole basis for applying the exception. *See Zolin*, 491 U.S. at 568–72. In other words, Plaintiff cannot rely on the confidential documents themselves to open the door to a fraud claim— the prima facie showing must exist independently of the contested documents. *See id.* "A blanket rule allowing in camera review as a tool for determining the applicability of the crime-fraud exception . . . would place the policy of protecting open and legitimate disclosure between attorneys and clients at undue risk." *Id.* at 571. It follows that a cause of action for fraud by itself is insufficient to establish the crime-fraud exception. "There is no reason to permit opponents of the privilege to engage in

A423

groundless fishing expeditions, with the district courts as their unwitting (and perhaps unwilling) agents." *Id*. Thus, the test is not whether there may be documents that may be "relevant to" or that would bolster a fraud theory. Rather, the test is whether the evidence presented by the Plaintiff can independently establish a fraud claim without use of the privileged documents. Moreover, this Court has established that "[f]or an alleged conveyance deemed fraudulent" under Maryland statute or another basis, "to trigger application of the [crime-fraud] exception, the allegations must present sufficient evidence of deception, dishonesty, misrepresentation, falsification, or forgery." *Buckingham*, 301 F. Supp. 3d at 554. Plaintiff has utterly failed to make such a showing.

> **A.    Plaintiff Did Not Establish a Prima Facie Case of Fraud in its Motion or at the Hearing.**

As a starting point, Plaintiff falsely argues that IWA has not responded to its purported evidence, and in response IWA incorporates and reasserts all of its arguments already presented in its Response in Opposition to Plaintiff's Motion to Compel and Request for In Camera Review of Privileged Documents (ECF-238-2). Although the explanation of Plaintiff's purported fraud evidence in that brief alone sufficiently refuted Plaintiff's speculative theories, so now has the testimony of the witnesses. To ignore such case evidence is of course not justice – it is advocacy.

> **B.    An Assignment Made Pursuant to Two Different Contracts Negotiated and Executed by Plaintiff is Not Fraud.**

Plaintiff has now deposed eight witnesses, and each witness confirmed exactly what IWA and RSD have been arguing for three years: IWA foreclosed on a leasehold interest and then assigned that leasehold interest to RSD. The Ground Lease and Estoppel Agreement – which both expressly authorized the Assignment – were negotiated and executed by Plaintiff. Upon the Assignment, IWA was released from all obligations under the Ground Lease. There is nothing

6

fraudulent about doing exactly what two different contracts authorized IWA to do.  *See* Deposition of Paul Rubin dated April 7, 2023 ("Rubin Dep") at 291:16-17, excerpts of which are attached as Ex. 1 to Declaration of Rebecca Davis, which is attached as Ex. B ("The Estoppel Agreement permits the assignment."); Deposition of Robert Barron dated April 14, 2023 ("Barron Dep.") at 38:7-10, excerpts of which are attached as Ex. 2 to Ex. B  ("And in this situation, the landlord agreed that the lender had the absolute right to assign to a third party and be automatically released."); Deposition of Troy Taylor dated April 6, 2023 ("Taylor Dep.) at 80:11-22, excerpts of which are attached as Ex. 3 to Ex. B  ("I don't understand how there could be a fraud claim when in the Estoppel Agreement . . . it says, the absolute right to transfer to any third-party."); *see also* Barron Dep. 23:15-22.

A number of these witnesses were asked, and denied, that they ever committed *nor intended to* commit any act of fraud.  *See, e.g,*, Rubin Dep. 293:6-9 ("I can tell you that Longshore[, the joint venture partner,] had no intent to defraud the landlord when it entered into the joint venture with Rock Springs Drive.").  To the contrary, each of these witnesses explained how they complied with Plaintiff's contracts, and relied on Plaintiff's promises to allow the Assignment.  As Robert Barron, counsel for RSD explained (and one of three attorneys that Plaintiff seeks to depose, Plaintiff:

> [A]greed with the lender in order to induce them to make the loan – if you look at the recital B [of the Estoppel Agreement], the lender said, I will not make the loan unless you let the landlord sign this document. So [Plaintiff] signed this document. And in paragraph 19 [of the Estoppel Agreement], [Plaintiff] said, lender, and I quote, you have the absolute right to assign this lease if you foreclose. Absolute right to any third party. Any third party is what [Plaintiff] agreed to.

Barron Dep. 24:1-11.  Based on Plaintiff's express promises, IWA and RSD, and their respective counsel, negotiated and closed on the Assignment.  IWA notified Plaintiff of the Assignment

7

A425

after it was made, pursuant to the Estoppel Agreement, and Plaintiff's response was to immediately begin setting up its litigation strategy.[3]

As explained by Mr. Barron—a business attorney with significant experience with real estate asset and financing transactions, corporate acquisition and disposition transactions, and business and debt restructurings—neither the assignment rights in the Estoppel Agreement nor the Assignment itself were wrong or unusual.[4]  Rather, it was Plaintiff's response that was atypical.  Mr. Barron exchanged multiple communications with Plaintiff's counsel, William Bosch, prior to the filing of the Complaint, and during the deposition noted, "I've been doing this for 30 years.  And for an officer of the court to tell another officer of the court that it's fraudulent conduct, when your client absolutely agreed to permit this transaction, I'm – you know, I'm disappointed.  I'm just disappointed."  Barron Dep. 27:5-11.  Mr. Barron also testified:

> So it is very common in my practice for a lender to foreclose. They either put the
> loan in a shell and have the shell foreclose.  Or, you know, if they look at the
> document and say, look, the landlord has agreed that after we foreclose, we have
> the absolute right to assign to a third party. And the lease says, this estoppel, you
> are automatically released from any further liability, except, of course, the liability
> that you had when you were lender and you were the tenant for that period of time,
> which I totally get. This is very common in my world, that the landlord, in order to
> get financing, will tell the lender, look, if this fails, we won't go after you, lender.
> And so this structure is very common.  And what I don't understand is we have --
> this provision says they have the absolute right to assign to any third party, and they
> are automatically released. And in all your correspondence to me, you throw around
> the "fraud" word in a way that is very odd for a lawyer of your stature, when you
> have a right given to this borrower, this lender -- that's from the -- from your client
> that says absolute, and automatically released. So, yes, sir, I have seen this before.
> I have never seen a landlord renege on such a clear covenant. It's so clear. I've never
> seen that before in my career. I've done this for 30 years. I've never seen that before.

---

[3] Again, the Estoppel Agreement provides that IWA was only required to provide notice of an assignment to Plaintiff within ten days after the assignment was made, thus again confirming that Plaintiff had no right to object to evaluate any assignee or object to the Assignment.  *See* Estoppel Agreement at ¶12.

[4] Mr. Barron's professional and community activities and accomplishments (of which there are many), are presented in Ex. 4 to Ex. B.

Barron Dep. 25:1 - 26:13.  Mr. Barron also then explained his responses to Mr. Bosch's demands

for information, which are the same communications that Plaintiff has repeatedly argued are

evidence of fraud and subterfuge, stating, "[O]ne of the disagreements that you and I had is that

you assume that if someone does not answer a question that you ask, it is by definition either in

bad faith or fraud."  Barron Dep. 345:18-22.

     As to Mr. Bosch's own conduct and Plaintiff's demands for information, which Plaintiff

had no right to request or receive, Mr. Barron noted:

> One of the sad things about this engagement, this interaction that I had with you
> with letters is that you presuppose that if I exercise that discretion and choose not
> to answer, you call it fraud. And with respect, I bet if I followed you around every
> day and watched lawyers ask you questions, with respect, I could bet you a dollar
> that you'd choose, in your discretion, not to answer questions. And with respect, if
> those lawyers called your conduct fraudulent, you might get a little aggravated.  So
> with respect, just because you have the right to ask a question doesn't mean you
> have the right to require an answer.

Barron Dep. 257:1-16.  *See also* Barron Dep. 362:1-8 (stating that the communications

from Mr. Bosch were "litigation setup letters[s]."  Mr. Barron also testified:

> [L]ife does not happen in a vacuum, and we're dealing with letters written by the
> head of a major, big law firm, the head of litigation, from a landlord whose affiliate
> has been in years in litigation with this same company.  And so is it reasonable for
> the parties to not trust and be concerned with litigator letters? Absolutely. It's
> reasonable to be concerned and not to give them anything that you don't have to
> because we've already gone through -- not we. But they've already gone through
> litigation with you. I think it's incredibly reasonable. In fact, if you were counsel,
> you would be giving the same legal advice. That's what so sad about this.

Baron Dep. 346:22 - 347:15.

     Mr. Barron's testimony is consistent with IWA's concerns dating back to at least 2016,

that Plaintiff was litigious and would file a lawsuit no matter what course of action IWA took to

find a profitable solution for the Ground Lease.  Accordingly, IWA sought legal counsel to

interpret and comply with the contracts.  Moreover, consistent with what the documents, and also

the privilege log, reflect, IWA sought counsel to evaluate the potential claims that IWA felt

Plaintiff would inevitably bring, including an obvious claim for fraudulent conveyance.

David Feltman, IWA's corporate witness, testified that IWA analyzed fraudulent conveyance concerns with respect to the Ground Lease as a litigation concern well in advance of conceiving of the Assignment, and then again at the time of the Assignment.  Feltman Dep. 290:3-291:22.  Seeking such advice was a reasonable business decision because IWA anticipated litigation, and the risk of litigation with the Camalier family was a real concern that was discussed with IWA's joint venture partner.  *See* Deposition of David Feltman dated March 16, 2023 ("Feltman Dep.") 350:1-22, excerpts of which are attached as Ex. 5 to Ex. B. ("I discussed that with Troy [Taylor], and the fact that the Camaliers were litigious and that this was clearly a possibility. . . generally, I was just looking at what had happened on [Rockledge] and saying, hey, you know, these guys were litigious, and there's a possibility that they're going to sue.")

 As IWA has also repeatedly explained, it is beyond dispute that Plaintiff's litigious behavior also had an impact on IWA's willingness to share information.  *See* Barron 66:5-12. "My understanding was a combination of the lack -- severe lack of trust with the landlord based upon this other litigation, concern that the landlord would not honor the terms of the lease. And so the concept of getting beyond the time period for -- to try to attack the agreement based upon transfer."  Troy Taylor further testified:

> One of the things -- when we first got brought into this, we were told that the Camaliers were very litigious. I knew there was existing litigation going on. Didn't know anything about the specifics. I knew there was existing litigation and I knew that there was -- that at least IWA's perception was that the Camaliers were very litigious I took that to say, okay. And after the assignment, what happened was that Mr. Bosch, you were the one that initially reached out to Robert Barron. And in my 25-plus years of experience, I've never seen any first chair litigator be the first person to respond in what should be a commercial business situation.  So it made me basically say, okay, I understand now why my joint venture partner thinks that these folks are litigious in nature, because why would the litigator be responding? I mean, you know, it kind of muddied the waters.  So it made me think that basically that the Camaliers were not interested in a real conversation; otherwise, they would

10

A428

have called directly, they would have had maybe one of your real estate partners call, but the fact that it was a litigator reaching out, that sent red flags to me. So in the back of my mind, it gave more credence to the fact of what IWA had been telling me. But I didn't -- but just to finish, I didn't know any specifics, I didn't know -- but it made me understand that, okay, these guys approach everything from a litigation angle versus from what I call a business angle. I said it reinforced to me that basically what my joint venture partner was saying had some credence. I typically have partners and clients that have preconceived notions that are often conspiracy theories that they've worked up in their minds that tend not to be reality, but in this particular case, it reinforced what their reality was telling me.

(Taylor Dep. 74:6-78:16).  Ultimately, the litigation concerns that multiple witnesses testified about is exactly what transpired.  Barron testified:

[N]otwithstanding that [Plaintiff] coveted it, to let [IWA] do this, [Plaintiff is] now going to sue [] for fraudulent conveyance, which is exactly what everyone was concerned, that these people do not operate in good faith. They will not honor the covenant they have in the plain language of the lease. But instead, they're litigious. And bingo, on June 6th, 2019, you came out and did it. And here we go.

Barron Dep. 380:20 - 381:7.

In summary, IWA anticipated litigation and the potential claims that Plaintiff would file, which formed its decision-making before and after the Assignment.  Disclosure of that analysis, or communications relating to the possibility of those claims, including any steps taken to avoid or defendant against such claims, is not contemplated under the crime-fraud exception or Maryland law.

**C.    Plaintiff Cannot Rely on RSD's Election Not to Record the Assignment as Evidence of Fraud**

Plaintiff's argument that IWA's election not to record the Ground Lease is evidence of fraud is completely without merit.  Maryland Code, § 3-101(a) provides that no "estate above seven years . . . may pass or take effect unless the deed granting it is executed and recorded." However, Maryland Code, § 3-101(d) then goes on to spell out the following:

If a lease required to be executed and recorded under the provisions of subsection (a) of this section is executed but not recorded, the lease is valid and fully effective both at law and in equity (i) between the original parties to the lease and their

11

A429

> personal representatives, (ii) against their creditors, and (iii) against and for the benefit of any other person who claims by, through, or under an original party and who acquires the interest claimed with actual notice of the lease or at a time when the tenant, or anyone claiming by, through, or under the tenant, is in such actual occupancy as to give reasonable notice to the person.

Md. Code Ann., Real Prop. § 3-101(d) (West). In other words, pursuant to Section 3-101(d), an executed, unrecorded ground lease interest for a duration of more than seven years is "valid and fully effective both at law and in equity" between the parties to the ground lease interest, against their creditors, and against any other person who has actual notice of the ground lease interest, or reasonable notice of the ground lease interest based upon the circumstances. As such, it is not uncommon for parties to forego assigning subsequent conveyances.

In this particular situation, the original Ground Lease was already recorded in the Land Records - IWA's purchase of the Leasehold was also recorded in the Land Records through the Trustee's Deed of Assignment. *See* Ex. C. Thus, any potential third party would be put on notice that the land was subject to the 99-year Ground Lease and that IWA acquired the Leasehold in 2012. In addition, Plaintiff was specifically advised of the Assignment through a notice sent on the exact date of the Assignment, and thus would not be impacted by any election not to record. *See* Barron Dep. 232:1-7. Also, the Assignment was not hidden from Montgomery County, and in fact RSD called Montgomery County to discuss whether the tax bill could be changed without recording the Assignment. Rubin Dep. 265:3-22.

Nevertheless, IWA considered whether recording the Assignment was legally required. RSD's counsel investigated the requirement to record the Assignment, and determined that recording assignments was not customary in Maryland, and that larger commercial owners typically do not record an assignment of a ground lease because it attributes a tax. Barron Dep 325:1-327:9; *see, e.g., CBM One Hotels, L.P. v. Maryland State Dep't of Assessments & Tax'n,*

12

No. 2451, Sept. term, 2014, 2017 WL 1788465, at *1 (Md. Ct. Spec. App. May 5, 2017) (noting in tax dispute the recorded documents, included *inter alia* the Memorandum of Lease, but did not include assignment of ground lease between affiliated parties, Marriott Corporation and Courtyard by Marriott); *see also Townsend Baltimore Garage, LLC v. Supervisor of Assessments of Baltimore City*, 215 Md. App. 133, 145, 79 A.3d 960, 967 (2013) (distinguishing that recorded documents establish title or record ownership, while unrecorded documents show a contractual ownership of the property interests).  Further still, the decision not to record the Assignment was implicitly approved by Wilkes Artis, Chtd. ("Wilkes Artis"), a law firm in the Washington, DC region that focuses on real estate tax issues (and is the firm at which Plaintiff's representative, Charles A. Camalier, III is a Shareholder).  Wilkes Artis represented RSD after the Assignment in a tax appeal, and knowing RSD was the tenant and that IWA was still identified as the taxpayer, it never advised RSD to record the Assignment.  *See* Taylor Dep. 258-261.

But again, any indicia of *fraud* is belied by IWA providing notice of the Assignment on the same day that the Ground Lease was conveyed, thereby satisfying any notice considerations of Section 3-101(d).  And deciding not to record a document (in this case, an Assignment of an already recorded Ground Lease) that is not *legally* required to be recorded, is not fraudulent.

**D.    There Was No Fraudulent "Exit Strategy"**

**1.    Consideration of an "Exit Strategy" and Trying to Find a Profitable Solution for an Underperforming Asset is not Fraudulent.**

Plaintiff has consistently relied on rhetoric it has created by combining cherry-picked language from multiple emails to argue that RSD is a sham entity created as an exit strategy for a worthless asset.  There is no merit to these allegations.  What IWA did is create a partnership that it hoped would lease up an underperforming asset so that it could sell it.

13

A431

a.    RSD is not a sham.

As a starting point, the inflammatory allegation that RSD is a "sham" was dispelled long ago.  IWA has repeatedly explained the purpose of RSD - RSD was NOT formed "so that IWA would no longer have responsibility for fulfilling tenant's financial obligations under the Ground Lease."  Feltman Dep. 127:8-12.  Rather, it was formed because IWA "had been unsuccessful at leasing it up. [IWA] thought that the Algon folks could do, frankly a better job."  Feltman Dep. 127:16-22.  Moreover, "by 2017 IWA's resources were constrained and IWA was cutting staff, and the creation of a joint venture was a way to add more resources."  Feltman Dep. 128:1-6.

Furthermore, IWA:

> [W]anted a party who was incentivized properly to add value.  And [IWA] knew that that skill set existed within Algon.  And that Algon also had strong capital markets relationships so that, to the extent we were able -- they were able to identify a tenant and tenant the property, that they could, through their capital markets relationships, find ways to finance the cost associated with that. And ultimately sell the property, once it had been leased up and improved.

Feltman Dep. 128:13-22.[5]

Witness after witness has confirmed what Defendants have been saying for three years.  Nevertheless, if the Court remains inclined to rely on Plaintiff's disproven "sham" argument as a basis for allowing Plaintiff to review privileged communications, IWA again asserts that it is entitled to an *ex parte* hearing to address the meaning of any documents that are relevant to this unsupportable sham theory.

---

[5] Barron 60:17-61:1 ("Algon – Troy Taylor and Paul Rubin, Algon is – has the – a lot of experience trying to work out situation and try to find win-win situations for transactions that need that professional input.  And he's got-they have tremendous experience in troubled assets."

14

b.  <u>An "Exit Strategy" is simply a disposition strategy to obtain a positive result.</u>

Plaintiff has relied heavily on an email sent on July 8, 2016, more than a year before the Assignment, in which an accountant asked whether IWA had an "exit strategy" for the Ground Lease.  First, the person who sent the email is irrelevant to the transaction at issue, as he was not an employee of IWA, and was instead an employee of a third party.  Moreover, he was an accountant that had no decision-making power with respect to the Property.  Second, an "exit strategy" is not a negative event, but is a positive outcome.  It is simply a disposition, and IWA views it as "the sale of a property."  Feltman Dep.  142:4-8.  *See also* Deposition of Matt Pithan Dep. 38:18-22, attached as Ex. 6 to Ex. B ("My understanding of exit strategy is the plan to sell an asset.").  As Mr. Feltman further explained, IWA was always thinking about exit strategies because:

> IWA wasn't in the business of being a long-term owner of real estate. And generally in real estate the benefits, the economic benefits, are both cash flow during the term of ownership but also the residual value and benefiting ultimately from the sale of the property, appreciation of the property and residual value. So when we talk about exit, you know, we're really talking about disposition of a property at the end of its -- whatever its appropriate life cycle is based on maximizing value at that time.

Feltman Dep. 684:8-22.

There was no exit strategy being considered in 2016, beyond leasing up and then selling the Property.  Feltman Dep. 222:1-223:4.  In fact, IWA never had a disposition strategy, or "exit strategy" for the Property, and the Assignment was not in itself an "exit strategy."  *See* Feltman Dep. 182:4–186:15.  Rather, "to the extent [the Assignment] was a disposition by IWA . . . it was just one step in what needed to occur to execute what we would think of as a disposition exit strategy, so that RSD could then sell the property and monetize the proceeds."  186:8-15.

There is simply nothing about any "exit strategy" referenced in any communication that was wrong, and certainly nothing fraudulent.

15

A433

**E.      Plaintiff's Explanations of the Deposition Testimony Are False.**

Despite Plaintiff's attempts to recharacterize witness testimony in this case, each witness confirmed that there was no fraud, and certainly no fraudulent intent related to the Assignment. Yet, Plaintiff still asserts a litany of false statements in its Opposition that if, the full transcript is considered, are easily disproven.  These false statements are identified below, and the actual testimony of the witnesses, in context, is attached hereto.[6]  The testimony speaks for itself, and Plaintiff's attempts to restate that testimony should be disregarded.

i.      No witness confirmed that the Assignment was for purposes of a simple "walkaway" and there has never been any discussion as to using RSD as an "exit strategy" to walk away from the Ground Lease.  Indeed, Mr. Feltman testified that the Assignment was not done so IWA could avoid responsibility for fulfilling any obligations under the Ground Lease. Feltman Dep. 127:8-15.  Mr. Barron actually testified that he could see a hypothetical scenario where RSD would have to give back the interest in the Ground Lease to the Camalier entity, but he also testified that he never had any discussions with  IWA or anyone else about that.  *See* Barron Dep. 78:11-85:4.  Mr. Taylor has testified that he understood that RSD would be funded for as long at it took to get a resolution, which is the exact opposite of a belief that the parties orchestrated this transaction as a walkaway.  *See* Taylor Dep. 223:2-21.

ii.      The three-year statute of limitations had no bearing on the formation of RSD, nor has it had any relevance to RSD's ownership of the Property.  Also, Mr. Feltman did not testify that he was trying to get past the three-year statute of limitations to force a sale, or that he planned on "putting the screws to the landlord."  Rather Mr. Feltman testified that there was actually, in a draft term sheet, a partnership term of three years, and Mr. Feltman believed it was

---

[6] If the Court requests, IWA will also provide full transcripts of all depositions taken in the case.

16

A434

sufficient time to get the Property leased up and sold.  Feltman Dep. 273:10-22.  Mr. Feltman

also testified: "I [thought] at that point, the litigation risk would go away because we'd be beyond

the fraudulent transfer date, and also our expectation was that there would be leasing activity,

and by then the property would be in a position to be sold."  Feltman Dep. 406:15-22.  Nowhere

does Mr. Feltman's statement suggest he intended for RSD to walkaway form the Ground Lease

after the statute of limitations period.  Mr. Feltman's testimony also mirrors the testimony of Mr.

Barron, who did not know the statute of limitations was three years for fraudulent conveyance

but knew that there was distrust with landlord, which is why certain provisions were in the first

draft of the term sheet, but were ultimately removed by IWA anyway.  Barron Dep. 197:8-198:8.

      iii.    Also, as discussed above, RSD did not share information that it was not

required to share with Plaintiff because Plaintiff made clear very quickly that it was setting up a

lawsuit.  IWA did not want to share information with Plaintiff because it was already in a lawsuit

with Plaintiff's affiliate and it also anticipated getting sued by Plaintiff.

      iv.    Finally, IWA has never denied that it retained counsel to review and draft

documents, which is established by the thousands of documents already produced and the

parties' privilege logs.  Obtaining legal advice through attorneys is not fraud.  Similarly,

asserting attorney client privilege over conversations between attorneys and clients does not

demonstrate fraud.

### III.   If the Court has Determined that Plaintiffs Have Made a Prima Facie Showing, IWA is Entitled to an Ex Parte Hearing

Plaintiff incorrectly states that "Courts have broad discretion to determine whether a

privilege is properly asserted."  Pl's Br. at 6.  Seemingly, Plaintiff has confused the lower

threshold for the in camera review of privileged documents and the standard for determining

whether to uphold that privilege.  *See* John W. Gergacz, ATTORNEY-CORPORATE CLIENT

17

A435

PRIVILEGE § 4:16 (Spring Ed. 2023) (*Zolin* "integrated an in camera inspection of materials with an initial showing that would be *less than* that required to establish the crime-fraud exception.") (emphasis added). The standards are not the same, nor are they similar because the intrusion upon the confidentiality of the attorney-client relationship is much greater in the latter. *Zolin*, 491 U.S. at 572. A lesser evidentiary showing is needed to trigger an in camera review than is required to ultimately overcome the privilege. *Id.*; *see also In re Grand Jury Proceedings*, 417 F.3d at 22 (Noting that the standard for in camera review requires a lesser evidentiary showing than what is ultimately needed to pierce the privilege). Thus, while the Court has more discretion in determining whether to conduct an in camera review, which it exercised in this case, it does not have the same liberal discretion in its determination to apply the crime-fraud exception.[7]

What is exceptionally troubling here is that IWA has not been afforded an opportunity to refute Plaintiff's assertions of fraud or the Court's determination that the contested documents "might be relevant." ECF No. 290. There remains a due process concern in this case, including as to how the evidence was addressed at the February 16, 2023, hearing. *See* Ex. A. Indeed, even then the Court did not give either IWA or RSD an opportunity to address Plaintiff's spin on purported evidence, and the Court has thus far not given any weight to what the actual authors of that purported evidence have said Plaintiff's purported evidence means.

To ignore the explanations of the evidence by the very individuals that drafted, reviewed, or used the actual evidence invites error. This is in part because if the Court concludes that Plaintiffs have made a prima facie showing, then the burden shifts to IWA to refute such showing.

---

[7] Even the authority cited by Plaintiff makes clear that the discretion the trial judge has as to whether privilege applies is still limited by the framework of binding Supreme Court and Fourth Circuit precedent. *See In re Grand Jury Subpoena*, 642 Fed. Appx. 223, 227 (4th Cir. 2016).

A436

*In re Grand Jury Proc., Thursday Special Grand Jury Sept. Term, 1991*, 33 F.3d 342, 351 (4th Cir. 1994). This burden shifting standard contemplates the opportunity for rebuttal. *Id.* ("The crime-fraud standard does seem to contemplate the possibility that the party asserting the privilege may respond with evidence to explain why the vitiating party's evidence is not persuasive"); *see also In re Gen. Motors Corp.*, 153 F.3d 714, 716 (8th Cir. 1998) ("This being a civil case, the district court may not, however, compel production without permitting the party asserting the privilege, to present evidence and argument"); *Haines v. Liggett Group, Inc.*, 975 F.2d 81, 97 (3d Cir. 1992) ([the] "importance of the privilege, … as well as fundamental concepts of due process require that the party defending the privilege be given the opportunity to be heard, by evidence and argument, at the hearing seeking an exception to the privilege."); *see also In re Napster Inc. Copyright Litig.*, 479 F.3d 1078, 1093 (9th Cir. 2007) ("[I]n civil cases where outright disclosure is requested[,] the party seeking to preserve the privilege has the right to introduce countervailing evidence"). Even Plaintiff admits the Court should allow for a process for the Parties to submit additional information for the Court to make a determination that a prima facie case has been shown. Pl.'s Br. at 8. ("Notably, if the Court determined that the documents reviewed in camera did not make the prima facie showing, it could have requested additional evidence from Plaintiff").

Given the forgoing, and the need to address Plaintiff's "prima facie case" against the documents the Court has selected, if the Court concludes that Plaintiff has met its burden, IWA is entitled to an ex parte hearing to present evidence to the contrary. Moreover, to the extent that Plaintiff is arguing that IWA has had an opportunity to address the three documents that the Court is considering releasing, IWA asserts that it attempted to do so, and that such attempt was rejected by the Court. The Court instead directed the parties to brief the issue to give Plaintiff a chance to respond, which altogether eliminated IWA's ability to address the documents at all.

A437

## **CONCLUSION**

IWA did only what Plaintiff agreed it could do, in not one, but two different contracts. Adhering to the terms of a negotiated contract is not fraud, and absent fraud, there is no basis for ordering that Plaintiff is entitled to review IWA's privilege documents under the crime-fraud exception. Accordingly, given the absolute irreparable harm that the Court's release to Plaintiff of IWA's privileged documents will have on Defendants, given the absence of substantive and procedural due process in the Court's manner of stripping IWA of its attorney-client privilege, and given the increased probability of reversible error embedded in the Court's proposed release of IWA's attorney-client privileged documents, IWA respectfully requests that the Court reconsider and reverse its position as to the release of IWA's privileged communications.

However, if the Court remains intent on allowing Plaintiff to obtain the three documents containing IWA's privileged information, then the Court should order the release of the three documents rather than release the documents itself, as not even the cases cited by Plaintiff allow or even suggest such a result, and give IWA <u>sufficient</u> time, as allotted by established procedures, to pursue whatever relief IWA may seek from the U.S. Court of Appeals for the Fourth Circuit. IWA requests that the Court not limit IWA's right to any of its remedies, as to timing or election.

DATE:  April 25, 2023

Respectfully submitted.

SEYFARTH SHAW LLP

By: <u>/s/*Rebecca Davis*</u>
Rebecca A. Davis, Bar No. 23183
1075 Peachtree St., N.E., Ste 2500
Atlanta, GA  30209
Telephone:  (404) 885-1500
rdavis@seyfarth.com

A438

## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF MARYLAND

**ROCK SPRING PLAZA II, LLC,**

         **Plaintiff,**

    **v.**

**INVESTORS WARRANTY OF
AMERICA, LLC, et al.,**

         **Defendants.**

**Civil Action No. 8:20-cv-01502-PJM**

### CERTIFICATE OF SERVICE

I hereby certify that on April 25, 2023, I electronically filed the foregoing **DEFENDANT INVESTORS WARRANTY OF AMERICA, LLC'S REPLY IN SUPPORT OF ITS BRIEF, PURSUANT TO THE COURT'S MARCH 15, 2023 ORDER, IN SUPPORT OF RECONSIDERATION OF THE APPLICABILITY OF THE CRIME-FRAUD EXCEPTION** via the Court's CM/ECF system, which will automatically provide electronic service copies to all counsel of record.

| | |
|---|---|
| William Bosch, Esq.<br>Alvin Dunn, Esq.<br>Katherine Danial, Esq.<br>Pillsbury Winthrop Shaw Pittman LLP<br>1200 Seventeenth Street, N.W.<br>Washington, DC  20036<br>william.bosch@pillsburylaw.com<br>alvin.dunn@pillburylaw.com<br>katherine.danial@pillsburylaw.com<br><br>*Attorney for Rock Springs Plaza II, LLC* | Sara E. Kropf, Esq.<br>Kropf Moseley PLLC<br>1100 H Street NW, Suite 1220<br>Washington, DC  20005<br>sara@kmlawfirm.com<br><br>*Counsel for Defendant Rock Springs Drive LLC* |

Dated: April 25, 2023

        By: */s/ Rebecca A. Davis*
          Rebecca A. Davis, Bar No. 23183

# EXHIBIT A

1        **MS. KROPF:** Your Honor, just two very short
2    preliminary matters.  With respect to the ex parte process,
3    you had said we should submit the documents in ten days so
4    should we submit them in hardcopy to chambers or
5    electronically?
6        **THE COURT:**  No, hardcopy. I mean, you do the work.
7        **MS. KROPF:** Sure.  We'll kill the trees on our side.
8        **THE COURT:**  Right.
9        **MS. KROPF:**  And then, Your Honor, if you do have any
10   inclination to find the crime-fraud exception, we would ask
11   for an ex parte hearing before that happens so we can address
12   any of those issues and a chance to brief them, for Your Honor
13   to identify just to us what documents you think might fit into
14   it and why -- or maybe not why, and allow us to brief it and
15   have an ex parte hearing about them before any of them be
16   released to the plaintiff.
17       **THE COURT:**  Okay in part.  I'm not sure how it
18   becomes ex parte.  That's where we are.
19       **MS. KROPF:**  Well, in order to discuss the issue we'd
20   have to be talking about the substance of the e-mails which
21   are privileged.  And so we certainly couldn't do that with
22   plaintiff's counsel there. So we'd need it to be an ex parte
23   hearing until Your Honor decides that for some reason the
24   privilege is not there and they're entitled to see it. It
25   would be impossible to address it otherwise.

**Nadine M. Bachmann, RMR, CRR - Federal Official Court Reporter**

A441

1          **THE COURT:** All right, well are you agreeable to

2     that, Mr. Bosch?

3          **MR. BOSCH:** No, Your Honor. I'd like to know. I

4     think if the Court concludes that privilege does not apply or

5     there's an exception, that's for the Court and the Court's

6     discretion. It's not something that only one party gets to

7     advocate for.

8          **THE COURT:** That's a little unusual, I guess. If I

9     make a determination that there's a basis to look at the

10    communications, and not necessarily conclude that they are

11    elements of fraud, I'm not sure how you can come in ex parte

12    and try and tell me you get -- I don't see that as part of the

13    procedure to tell me why I shouldn't release them.

14         **MS. KROPF:** Well, Your Honor, I think we should be

15    permitted -- if you're going to look at these e-mails and for

16    some reason decide based solely on e-mails without any

17    testimony, without having heard from anyone -- evidentiary,

18    not just arguments of counsel -- that we should be permitted

19    to come in ex parte to explain those documents through it --

20    we can do it by having witnesses testify through them, but our

21    concern -- I see the hesitation on your face, Your Honor.

22         **THE COURT:** Well, I'm just trying to think through

23    practically how this works.

24         **MS. KROPF:** Well, I think the problem, Your Honor,

25    is what's happened here today is that Mr. Bosch stood up for

1    half an hour and went through several documents and provided

2    his personal characterization of why those documents appear to

3    be fraudulent. And Your Honor's made several statements during

4    that argument of yes, it does look suspicion or it looks like

5    it is unusual.

6       And our concern is one, we haven't had a chance to do

7    that and we would like the opportunity and we can do that

8    today, but you're taking their representation without

9    evidence, without any depositions and without any witnesses to

10    establish or considering establishing crime fraud. And if

11    that's going to happen, Your Honor, we should be permitted to

12    provide evidence to you ex parte of what the lawyers were

13    saying. And it shouldn't simply be counsel's representation of

14    here are the facts and this equates to fraud. I mean, that is

15    putting aside the seriousness of the allegations against

16    lawyers, well-regarded lawyers, putting that aside it's an

17    evidentiary issue. It's not a matter to be decided based on

18    what counsel says these documents mean.

19       And our concern is that if Your Honor sees something that

20    you're concerned about, that you think might look

21    questionable, we need to be able to respond to that.  And the

22    only way we can respond effectively is to have the lawyer or

23    the client explain it --

24       **THE COURT:**  Well, let's talk about what you're

25    accomplishing by that. I look at the documents -- first of

88

1    all, it may be academic because I don't find any fraud.

2            **MS. KROPF:** Then we don't need that.

3            **THE COURT:** I find what I call sharp dealing at

4    most. All right, but I find something and you're saying you

5    should come in and ask me to reconsider whether I should

6    reveal it to plaintiff because you have an alternate

7    explanation; is that right?

8            **MS. KROPF:** Yes, Your Honor.

9            **THE COURT:** The problem with that is that I'm not

10    saying necessarily that it does conclusively demonstrate one

11    thing or another. They would have to argue that it does and

12    then you would respond I think ordinarily it doesn't. Suppose

13    you give me an alternate explanation. Is that going to

14    effectively ask me to reconsider whether I should release it

15    or not?  And I assume you'll come up with something that will

16    make it not implausible as to why you don't think it should be

17    released, but I look at it and think well, but it probably

18    should be. Not that I make a conclusion about it that it

19    definitely demonstrates fraud if it even gets to that point,

20    but simply that it's out there for argument.

21            **MS. KROPF:** Except, Your Honor, this isn't the

22    question of law. So this is a question of fact. This is a

23    question of whether or not they've met -- if you get to the

24    second stage. I agree, Your Honor. We can look at these

25    documents and I think that's what will happen and find that

1    there's nothing out of the ordinary here. There are clients

2    talking to their lawyers about what to do about a complicated

3    issue. That is normal. That is not fraud. Just because they've

4    alleged a fraudulent conveyance does not mean that --

5            **THE COURT:**  No, I accept that.

6            **MS. KROPF:**  So I think it's quite possible we never

7    get to this. But if Your Honor -- and we're just at that first

8    stage of the in camera review. If from that in camera review

9    you are inclined to believe plaintiff's characterization that

10   there might be evidence of fraud, we're entitled to counter

11   that with evidence. That would be an evidentiary hearing and

12   that's what I've seen other Courts do if they're going to do

13   crime fraud.

14        There's two steps here.  It isn't just you do an in

15   camera review, you think something looks suspicious, ergo it

16   gets released to plaintiff. I believe there would need to be

17   an evidentiary hearing on whether the crime-fraud exception

18   applies.

19            **THE COURT:**  Have you got any precedent for that

20   practice?  It's really complicating this action. We are just

21   off into mini-hearing after mini-hearing.

22            **MS. KROPF:**  Well, they are asking for an absolutely

23   extraordinary relief. This is to waive -- they want the

24   attorney/client privileged communications, Your Honor. This is

25   not regular discovery. This is not a minor issue. What they

**Nadine M. Bachmann, RMR, CRR - Federal Official Court Reporter**

1  are --

2      **THE COURT:** No, I'm asking a specific question

3  because I've never had this come up where they're asking me to

4  make an in camera review having made whatever you call it, a

5  prima facia showing or the first threshold is passed and you

6  saying before I make any determination, I need to hear from

7  you ex parte as to whether I should disclose it or not. I'm

8  not going to make a final determination about whether

9  something is or is not relevant to fraud. It would be out

10  there and then you can argue against it.

11      **MS. KROPF:** So maybe I just misunderstood what Your

12  Honor proposes to do. So we will provide the documents to you.

13  We will do an in camera review and what will happen next?

14      **THE COURT:** Well, let me see whether it does end up

15  being academic anyway, then I'm not going to release anything.

16  I think maybe -- well, let's see where we are at that point. I

17  don't want to make a definitive statement if I'm not going to

18  find anything. There's no point in setting up ground rules.

19      I'm a little resistant, not finally, to your suggestion

20  that there needs to be an ex parte presentation by you with

21  witnesses as to why I shouldn't release certain information. I

22  mean, I can make certain determinations myself, but let's

23  reserve on that. I don't need to get there until I find that

24  there really is a document that's going to raise an issue.

25      **MS. KROPF:** That's fine, Your Honor.

**Nadine M. Bachmann, RMR, CRR - Federal Official Court Reporter**

1          **THE COURT:** Let's just say you produce them and let

2     me see where I come out, then we'll revisit.

3          **MS. KROPF:** That's fine. And the only other thing

4     I'll say just for the record, Your Honor, is you made some

5     statements this morning that raised some concerns for us as to

6     whether or not you're going to listen to our side.

7          **THE COURT:** What? I'm sorry.

8          **MS. KROPF:** Whether or not you're going to listen to

9     our side. In other words, plaintiffs have characterized

10    certain facts or certain e-mails as evidence of fraud and Your

11    Honor said this morning that they're right. It looks like this

12    is suspicious or unusual. Your Honor, we have not presented

13    our case.

14         **THE COURT:** I understand.

15         **MS. KROPF:** I know, but I would just like to put

16    briefly on the record, we have not presented our case. They

17    have not deposed a single witness. All of these e-mails about

18    exit strategy, all of these things, let them depose the person

19    and then come to you and say, this is evidence of fraud. We're

20    just concerned, Your Honor, that the path you headed down this

21    morning saying "I'm very close to this, I'm very close to

22    making this decision" --

23         **THE COURT:** Not about fraud, not about fraud. I

24    never said that. I think there's evidence out there from which

25    they can argue whatever they want to argue. Of course you're

1  going to be heard. I know you haven't been heard on that.

2           **MS. KROPF:** I just want to make sure Your Honor --

3           **THE COURT:** No, I'm prepared to hear from you on

4  your motion, but my comment really went to this issue. How

5  much more do you expect to get out of these documents anyway?

6  To the extent that you're alleging that there was an exit

7  strategy, that you were trying to keep it secret, it's all

8  there. That's what he talked about. That you didn't record the

9  deed and then all of those things are suspect.  Are they

10  fraudulent?  Not necessarily, maybe not at all. It's just as I

11  say, a sharp trading, sharp strategy. That's what you've done

12  and that's what I say. But it was more going to the issue of

13  what more do you expect me to look at other than what you've

14  said here now?  That, in fact, this is what -- this is why we

15  are not recording the deed because we're going to give rise to

16  what, something or other on plaintiff's part.

17           **MS. KROPF:** We just want to make sure that Your

18  Honor --

19           **THE COURT:** No, I haven't conclusively decided it,

20  but I want to be very clear: My comments went solely to the

21  issue of do I even need to look at this document beyond.  To

22  the extent that you, plaintiff, want to make the argument,

23  you've made it here. Have you conclusively won it?  No.

24           **MS. KROPF:** And we would get to respond with

25  evidence. When we get to the fraud issues, Your Honor, the

1    concern is that would be a fact-finding mission. That would be

2    you sitting in your fact-finding role and we would be able to

3    put on evidence, not arguments of counsel; witnesses,

4    documents, and have the trial on those matters.

5          **THE COURT:** I don't think you -- maybe we

6    misapprehend what happens at this point. I don't make a

7    finding that there's fraud based on what I review in your

8    documents. I mean, I might find some further questionable

9    practices let's say. I don't make that finding. All I say is

10   it's out there to be argued. Plaintiffs get a chance to see

11   it, you get a chance to oppose it. But I don't make that

12   finding as a finder of fact. I suppose it's a tentative

13   finding that I make in my discretionary authority that there's

14   a reason to pierce the privilege because there looks like

15   there's some badge of fraud here.  That's all I'm making, but

16   it's not definitive.  It's not final.  It's just a matter of

17   putting it out there in the pool for discovery.

18        So I think there's a subtle, but important difference

19   here that I am not finding finally that there's fraud.  And

20   frankly, I'm not sure that there will be. I just don't see it.

21   As I say, there's issues, things that defendant IWA and RSD

22   did there that are questionable. But they're not necessarily

23   illegal and they're not fraudulent necessarily. Could be, I

24   don't know.

25          **MS. KROPF:**  And that's exactly what we want to make

**Nadine M. Bachmann, RMR, CRR - Federal Official Court Reporter**

A449

94

1  sure before Your Honor makes any decisions on that, we

2  actually get to respond to it. Because --

3          **THE COURT:**  Well, let me see whether it isn't an

4  academic point anyway. I may not find anything that requires

5  disclosure.

6          **MS. KROPF:**  Understood, Your Honor.

7          **THE COURT:**  Where are we now then?  We're at 7?

8          **MS. KROPF:**  Number 7, Your Honor, which is Rock

9  Springs Drive's motion to quash the deposition subpoena on our

10  lawyer, Robert Barren. And I believe we've narrowed the issue

11  considerably. The plaintiffs are no longer arguing that

12  there's not a common interest between IWA and between Rock

13  Springs Drive, so that eliminates one whole category of

14  topics.

15          **THE COURT:**  Is that agreed, Mr. Bosch?

16          **MR. BOSCH:**  As of the date of formation of RSD,

17  correct. Anything predating the formation there's no common

18  interest because they're not--

19          **THE COURT:** All right.

20          **MS. KROPF:**  And that's why we've already produced

21  those documents, so there's really no question here.

22          **THE COURT:**  What remains?

23          **MS. KROPF:**  So what remains is they want to ask Rock

24  Springs Drive's lawyer about the conversations he had with his

25  clients or with his joint venture partners about why he did or

**Nadine M. Bachmann, RMR, CRR - Federal Official Court Reporter**

A450

1   chose -- why they did or did not decide to disclose

2   information to the plaintiff. So I'm sure Mr. Bosch is going

3   to stand up and repeat the mantra that this is a sham and that

4   we didn't share any information. It is completely false. If

5   you look at the communications that Mr. Barren sent to Mr.

6   Bosch, not privileged, they disclose a litany of information

7   about what Rock Springs Drive was doing.  He was the contact

8   person, there were public documents about it. It asks them

9   some questions. A whole bunch of information, efforts to

10  sublease. Many of the things that they say we didn't disclose.

11  But what they fundamentally want to get to is they wanted him

12  to disclose more. So plaintiff, even though there's no legal

13  obligation or there wasn't until Your Honor created one in

14  this case, any legal obligation contract or in Maryland law as

15  you recognized in your opinion to make these disclosures. And

16  so -- but what they say is that it was wrong for him not to.

17  They want to pierce the veil, pierce the privilege there and

18  ask Mr. Barren, the lawyer, about his communications with his

19  client, or with the joint venture partner about why those

20  decisions were made. That is the heart of attorney/client

21  privilege.

22         It's important to keep in mind here that Mr. Barren was

23  --

24              THE COURT:  Is he the attorney for both entities,

25  both your client and a partner or --

1       **MS. KROPF:** So he was originally the lawyer for

2  Longshore Ventures which is the managing member of Rock

3  Springs Drive. And then his same firm was retained to

4  represent Rock Springs Drive. And he sent a letter to Mr.

5  Bosch saying, "I'm the lawyer for Rock Springs Drive."

6       **THE COURT:** Okay.

7       **MS. KROPF:** And so one of the primary issues seems

8  to be what he decided to disclose and why he perhaps didn't.

9  Now in that role, Your Honor, he's acting as the lawyer. The

10  first reach out that my client got wasn't from Mr. Camalier,

11  wasn't from someone who wanted to see what was going on. It

12  wasn't business person to business person. Mr. Bosch, the

13  litigation counsel, reached out.

14       **THE COURT:** May I stop you for a minute? I need to

15  know what more you're trying to find out. I'm vague since I

16  just started representation that everything you need to know

17  was already out there. What more do you want to find out

18  about, Mr. Bosch?

19       **MR. BOSCH:** Well, first of all Mr. -- there is no

20  prohibition against deposing counsel when the counsel is not

21  serving in a legal capacity. As you recall Mr. Barren is a

22  person who --

23       **THE COURT:** Wait, you're not opposing his being

24  deposed in any respect, are you?

25       **MR. BOSCH:** They are.

EXHIBIT B

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

Rock Spring Plaza II, LLC,

        Plaintiff,

v.

Investors Warranty of America, LLC,
et al.,

        Defendants.

Civil Action No. 8:20-cv-01502-PJM

## DECLARATION OF REBECCA DAVIS

I, REBECCA DAVIS, based on my personal knowledge and pursuant to 28 U.S.C. § 1746, declare that I have the legal capacity to give the within declaration from personal knowledge for all purposes permitted under law, and state that:

1.     My name is Rebecca A. Davis. I am over the age of 21 and I am competent to make this declaration. I have personal knowledge of all the facts stated here, all of which are true and correct.

2.     I am a Partner in the Atlanta office of the law firm of Seyfarth Shaw, LLP. Seyfarth Shaw is counsel of record for Investors Warranty of America, LLC in the above-referenced proceeding.

3.     I am familiar with the discovery proceedings and depositions taken in this case.

4.     Attached hereto as <u>Exhibit 1</u> is a true and correct copy of the Deposition Transcript for the Deposition of Paul Rubin, as the 30(b)(6) witness for Rock Springs Drive, LLC, taken on April 7, 2023.

5.     Attached hereto as <u>Exhibit 2</u> is a true and correct copy of the Deposition Transcript for the Deposition of Robert Barron, taken on April 14, 2023.

76218161v.1

A454

6.      Attached hereto as <u>Exhibit 3</u> is a true and correct copy of the Deposition Transcript for the Deposition of Troy Taylor, taken on April 6, 2023.

7.      Attached hereto as <u>Exhibit 4</u> is a true and correct copy of Robert Barron's resume, which I obtained online from Berger Singerman LLPs' website.

8.      Attached hereto as <u>Exhibit 5</u> is a true and correct copy of the Deposition Transcript for the Deposition of David Feltman, as the 30(b)(6) witness for Investors Warranty of America, LLC, taken on March 16, 2023.

9.      Attached hereto as <u>Exhibit 6</u> is a true and correct copy of the Deposition Transcript for the Deposition of Matt Pithan, taken on March 30, 2023.

10.     Pursuant to 28 U.S.C. § 1746, I declare under penalty of perjury that the foregoing is true and correct.

Executed on this the 25th day of April, 2023.


/s/*Rebecca A. Davis*
Rebecca A. Davis

76218161v.1

2

A455

EXHIBIT 1



# Transcript of Paul Rubin, Designated Representative

**Date:** April 7, 2023
**Case:** Rock Spring Plaza II LLC -v- Investors Warranty of America LLC, et al.

**Planet Depos**
**Phone:** 888.433.3767
**Email:** transcripts@planetdepos.com
**www.planetdepos.com**

WORLDWIDE COURT REPORTING & LITIGATION TECHNOLOGY

Transcript of Paul Rubin, Designated Representative
April 7, 2023                                                         291

| | | |
|---|---|---|
| 1 | So I object and I instruct him not | 02:11:34 |
| 2 | to answer.  He's not here to testify | 02:11:36 |
| 3 | about defenses to fraud.  If you want to | 02:11:38 |
| 4 | identify the claim in the case and ask | 02:11:40 |
| 5 | the question correctly, identifying the | 02:11:42 |
| 6 | claim that's here and our defenses to it, | 02:11:44 |
| 7 | he's prepared to testify. | 02:11:46 |
| 8 | (Directive.) | 02:11:47 |
| 9 | MR. BOSCH:  Fair enough. | 02:11:48 |
| 10 | BY MR. BOSCH: | 02:13:10 |
| 11 | Q    Mr. Rubin, what facts can you | 02:13:10 |
| 12 | provide to support RSD's defense that the | 02:13:14 |
| 13 | assignment was not a fraudulent conveyance? | 02:13:19 |
| 14 | MS. KROPF:  You can answer | 02:13:22 |
| 15 | that. | 02:13:22 |
| 16 | A    The estoppel agreement permits the | 02:13:25 |
| 17 | assignment. | 02:13:28 |
| 18 | BY MR. BOSCH: | 02:13:31 |
| 19 | Q    Anything else? | 02:13:31 |
| 20 | A    I'm sure there are other defenses, | 02:13:37 |
| 21 | but that's the defense I remember right at | 02:13:39 |
| 22 | the moment. | 02:13:43 |

A458

Transcript of Paul Rubin, Designated Representative
April 7, 2023                                                    293

| | | |
|---|---|---|
| 1 | understanding of the defenses. | 02:15:10 |
| 2 | I'm asking for you to testify as to | 02:15:10 |
| 3 | any facts in support of RSD's defense that | 02:15:13 |
| 4 | the assignment was not a fraudulent | 02:15:16 |
| 5 | conveyance. | 02:15:18 |
| 6 | A    I can tell you that Longshore had | 02:15:25 |
| 7 | no intent to defraud the landlord when it | 02:15:34 |
| 8 | entered into the joint venture with | 02:15:37 |
| 9 | Rock Springs Drive. | 02:15:40 |
| 10 | Q    And what's the basis for that | 02:15:42 |
| 11 | testimony? | 02:15:43 |
| 12 | A    I don't know how I can give you a | 02:15:48 |
| 13 | basis for a negative. | 02:15:50 |
| 14 | Q    Prove it. | 02:15:53 |
| 15 | MS. KROPF:  Objection as to | 02:15:57 |
| 16 | form. | 02:15:57 |
| 17 | A    Because I'm here to tell you. | 02:15:57 |
| 18 | BY MR. BOSCH: | 02:15:59 |
| 19 | Q    Can you testify to that on behalf | 02:15:59 |
| 20 | of RSD? | 02:16:03 |
| 21 | MS. KROPF:  Objection as to | 02:16:09 |
| 22 | form. | 02:16:09 |

A459

Transcript of Paul Rubin, Designated Representative
April 7, 2023                                                    265

```
 1    become aware that it was not recorded until        01:50:13
 2    after the fact.                                    01:50:15
 3        Q     I got that.                              01:50:17
 4            When did you first learn that the          01:50:19
 5    transfer or your assignment of the                 01:50:20
 6    ground lease had not been recorded?                01:50:21
 7        A     I'm not sure.  I either learned of       01:50:27
 8    it -- became aware of it either when your          01:50:30
 9    letter came or it's also possible -- when I        01:50:35
10    paid the real estate tax bill, either in          01:50:42
11    2017 or 2018, my recollection is not firm on       01:50:45
12    it, I called the County and I asked them,          01:50:49
13    could they redirect real estate bill to           01:50:55
14    Rock Springs Drive, and they said the             01:50:58
15    assignment was not recorded, you'd have to        01:51:00
16    record it.                                         01:51:03
17        Q     I missed that.  They said what?          01:51:05
18        A     That the name in the records for        01:51:08
19    the leasehold was IWA and it had not --            01:51:11
20    nobody had recorded an assignment, so as          01:51:15
21    long as that was the case, they were going        01:51:18
22    to continue to send the real estate tax bill      01:51:20
```

PLANET DEPOS
888.433.3767 | WWW.PLANETDEPOS.COM

EXHIBIT 2



# Transcript of Robert W. Barron

**Date:** April 14, 2023
**Case:** Rock Spring Plaza II LLC -v- Investors Warranty of America LLC, et al.

**Planet Depos**
**Phone:** 888.433.3767
**Email:** transcripts@planetdepos.com
**www.planetdepos.com**

WORLDWIDE COURT REPORTING & LITIGATION TECHNOLOGY

A462

Transcript of Robert W. Barron
Conducted on April 14, 2023                                23

| | | |
|---|---|---|
| 1 | facts were that the present landlord is the | 09:23:41 |
| 2 | landlord, and the tenant was an affiliate of | 09:23:44 |
| 3 | the landlord.  So y'all were on both -- your | 09:23:48 |
| 4 | client was on both sides of landlord and | 09:23:52 |
| 5 | tenant. | 09:23:54 |
| 6 | As I understand it, your client's | 09:23:56 |
| 7 | tenant breached or failed to pay back the | 09:23:58 |
| 8 | loan.  They walked away from the loan.  They | 09:24:01 |
| 9 | defaulted.  So they were the defaulting | 09:24:04 |
| 10 | borrower and didn't pay their loan.  And so | 09:24:07 |
| 11 | the lender had a choice.  They could either | 09:24:10 |
| 12 | foreclose directly, or they could assign the | 09:24:12 |
| 13 | loan into a shell and have the shell | 09:24:14 |
| 14 | foreclose. | 09:24:16 |
| 15 | Instead, what they did, as understand | 09:24:19 |
| 16 | it -- I wasn't counsel for them, but I read | 09:24:22 |
| 17 | the documents.  And there's a document -- I | 09:24:24 |
| 18 | don't know.  In all your letters to me, you | 09:24:26 |
| 19 | never mentioned this document.  But it's | 09:24:29 |
| 20 | called the Ground Lessor Estoppel and | 09:24:30 |
| 21 | Nondisturbance Agreement. | 09:24:32 |
| 22 | And in that agreement, in paragraph 19, | 09:24:35 |

Transcript of Robert W. Barron
Conducted on April 14, 2023                            24

| | | |
|---|---|---|
| 1 | your client agreed with the lender in order | 09:24:38 |
| 2 | to induce them to make the loan -- if you | 09:24:40 |
| 3 | look at the recital B, the lender said, I | 09:24:44 |
| 4 | will not make the loan unless you let the | 09:24:48 |
| 5 | landlord sign this document.  So your client | 09:24:51 |
| 6 | signed this document. | 09:24:54 |
| 7 | And in paragraph 19, your client said, | 09:24:55 |
| 8 | lender:  And I quote, you have the absolute | 09:24:57 |
| 9 | right to assign this lease if you foreclose. | 09:25:04 |
| 10 | Absolute right to any third party.  Any third | 09:25:07 |
| 11 | party is what your client agreed to. | 09:25:11 |
| 12 | And then they thought and said, wait a | 09:25:14 |
| 13 | minute, that's too broad.  Let's have a | 09:25:16 |
| 14 | condition, so the next sentence, your client | 09:25:18 |
| 15 | said -- and by the way, your client is also | 09:25:22 |
| 16 | the tenant.  So you both, together, did this | 09:25:24 |
| 17 | to encourage the lender to make the loan. | 09:25:26 |
| 18 | So then your client said, so long as -- | 09:25:29 |
| 19 | there's a condition.  There's a condition to | 09:25:31 |
| 20 | this assignment.  So long as such third party | 09:25:34 |
| 21 | assumes all the tenant's obligations under | 09:25:38 |
| 22 | the lease. | 09:25:40 |

**PLANET DEPOS**
888.433.3767 | WWW.PLANETDEPOS.COM

A464

Transcript of Robert W. Barron
Conducted on April 14, 2023                               25

| | | |
|---|---|---|
| 1 | So it is very common in my practice for | 09:25:41 |
| 2 | a lender to foreclose.  They either put the | 09:25:44 |
| 3 | loan in a shell and have the shell foreclose. | 09:25:47 |
| 4 | Or, you know, if they look at the document | 09:25:50 |
| 5 | and say, look, the landlord has agreed that | 09:25:54 |
| 6 | after we foreclose, we have the absolute | 09:25:58 |
| 7 | right to assign to a third party.  And the | 09:26:00 |
| 8 | lease says, this estoppel, you are | 09:26:05 |
| 9 | automatically released from any further | 09:26:08 |
| 10 | liability, except, of course, the liability | 09:26:11 |
| 11 | that you had when you were lender and you | 09:26:13 |
| 12 | were the tenant for that period of time, | 09:26:15 |
| 13 | which I totally get. | 09:26:17 |
| 14 | This is very common in my world; that | 09:26:20 |
| 15 | the landlord, in order to get financing, will | 09:26:22 |
| 16 | tell the lender, look, if this fails, we | 09:26:25 |
| 17 | won't go after you, lender.  And so this | 09:26:29 |
| 18 | structure is very common. | 09:26:32 |
| 19 | And what I don't understand is we | 09:26:35 |
| 20 | have -- this provision says they have the | 09:26:40 |
| 21 | absolute right to assign to any third party, | 09:26:43 |
| 22 | and they are automatically released.  And in | 09:26:45 |

A465

Transcript of Robert W. Barron
Conducted on April 14, 2023                                   26

| | | |
|---|---|---|
| 1 | all your correspondence to me, you throw | 09:26:49 |
| 2 | around the "fraud" word in a way that is very | 09:26:52 |
| 3 | odd for a lawyer of your stature, when you | 09:26:55 |
| 4 | have a right given to this borrower, this | 09:27:00 |
| 5 | lender -- that's from the -- from your client | 09:27:04 |
| 6 | that says absolute, and automatically | 09:27:07 |
| 7 | released. | 09:27:11 |
| 8 | So, yes, sir, I have seen this before. | 09:27:15 |
| 9 | I have never seen a landlord renege on such a | 09:27:16 |
| 10 | clear covenant. It's so clear. I've never | 09:27:20 |
| 11 | seen that before in my career. I've done | 09:27:22 |
| 12 | this for 30 years. I've never seen that | 09:27:25 |
| 13 | before. | 09:27:28 |
| 14 | BY MR. BOSCH: | 09:27:29 |
| 15 | Q.    So, Mr. Barron, you have a document in | 09:27:29 |
| 16 | front of you that you were just referring to? | 09:27:32 |
| 17 | A.    Yes, sir.  Sure.  It's -- the document | 09:27:34 |
| 18 | is "Ground Lessor Estoppel and Nondisturbance | 09:27:35 |
| 19 | Agreement."  The parties are -- | 09:27:40 |
| 20 | Q.    I know who they are.  I just want to | 09:27:42 |
| 21 | make sure. | 09:27:44 |
| 22 | So do you have other documents in front | 09:27:45 |

A466

Transcript of Robert W. Barron
Conducted on April 14, 2023                                27

| | | |
|---|---|---|
| 1 | of you presently? | 09:27:47 |
| 2 | A.    No, sir, this is it. | 09:27:48 |
| 3 | Q.    So you were prepared to give that | 09:27:50 |
| 4 | little speech, were you not? | 09:27:51 |
| 5 | A.    I am prepared to respond to you, sir. | 09:27:53 |
| 6 | Because I've been doing this for 30 years.  And | 09:27:55 |
| 7 | for an officer of the court to tell another | 09:27:58 |
| 8 | officer of the court that it's fraudulent conduct, | 09:28:01 |
| 9 | when your client absolutely agreed to permit this | 09:28:05 |
| 10 | transaction, I'm -- you know, I'm disappointed. | 09:28:09 |
| 11 | I'm just disappointed. | 09:28:14 |
| 12 | Q.    Okay.  Have you been deposed before, | 09:28:18 |
| 13 | Mr. Barron? | 09:28:20 |
| 14 | A.    Yes, sir -- no, never deposed.  I've | 09:28:21 |
| 15 | been a witness. | 09:28:23 |
| 16 | Q.    Okay.  So as you know, I will be asking | 09:28:25 |
| 17 | you questions.  I'd ask you to wait for me to | 09:28:28 |
| 18 | finish and then give a verbal so the Court | 09:28:34 |
| 19 | Reporter can record what we both say.  If you | 09:28:38 |
| 20 | don't understand a question, will you tell me? | 09:28:41 |
| 21 | A.    Yes. | 09:28:43 |
| 22 | Q.    If you answer, I'll assume you | 09:28:45 |

A467

Transcript of Robert W. Barron
Conducted on April 14, 2023                                    38

| | | |
|---|---|---|
| 1 | perform? | 09:39:01 |
| 2 | MS. KROPF:  Objection as to form. | 09:39:02 |
| 3 | THE WITNESS:  And the issue is, what's | 09:39:07 |
| 4 | the terms of the lease.  Because that | 09:39:09 |
| 5 | question, there is no absolute answer.  The | 09:39:10 |
| 6 | issue is what does the lease say. | 09:39:13 |
| 7 | And in this situation, the landlord | 09:39:19 |
| 8 | agreed that the lender had the absolute right | 09:39:21 |
| 9 | to assign to a third party and be | 09:39:23 |
| 10 | automatically released.  So whether | 09:39:26 |
| 11 | generally, there may be a general rule, we | 09:39:30 |
| 12 | have an agreement between sophisticated | 09:39:32 |
| 13 | parties that provide for an automatic | 09:39:35 |
| 14 | release. | 09:39:37 |
| 15 | BY MR. BOSCH: | 09:39:38 |
| 16 | Q.   That's your understanding? | 09:39:38 |
| 17 | A.   That's what the words say. | 09:39:40 |
| 18 | Q.   Meaning it's an automatic release even | 09:39:41 |
| 19 | if the assignee cannot perform or fulfill the | 09:39:44 |
| 20 | tenant's obligations under the ground lease? | 09:39:47 |
| 21 | MS. KROPF:  Objection as to form. | 09:39:49 |
| 22 | THE WITNESS:  My answer would be that | 09:39:51 |

A468

Transcript of Robert W. Barron
Conducted on April 14, 2023                                          60

| | | |
|---|---|---|
| 1 | that worked with Algon on that transaction. | 10:00:56 |
| 2 | Q. That was the Traditions project in | 10:01:03 |
| 3 | Florida? | 10:01:07 |
| 4 | A. Yes, sir. | 10:01:08 |
| 5 | Q. Where you were actually adverse to IWA? | 10:01:09 |
| 6 | A. We were adverse, yes, sir. Our client | 10:01:13 |
| 7 | was. | 10:01:16 |
| 8 | Q. So at this initial discussion with | 10:01:22 |
| 9 | Mr. Feltman, did you understand that the | 10:01:24 |
| 10 | transaction that Mr. Feltman was proposing was in | 10:01:26 |
| 11 | the nature of a workout? | 10:01:29 |
| 12 | MS. KROPF: Objection as to form. | 10:01:30 |
| 13 | THE WITNESS: Yes, sir, I think that's | 10:01:34 |
| 14 | part of the issue of getting Algon involved. | 10:01:36 |
| 15 | BY MR. BOSCH: | 10:01:39 |
| 16 | Q. Explain to me why. | 10:01:39 |
| 17 | A. Well, Algon -- Troy Taylor and | 10:01:40 |
| 18 | Paul Rubin, Algon is -- has the a lot of | 10:01:54 |
| 19 | experience trying to work out situations and try | 10:01:57 |
| 20 | to find win-win situations for transactions that | 10:02:03 |
| 21 | need that professional input. And he's got -- | 10:02:10 |
| 22 | they have tremendous experience in troubled | 10:02:15 |

A469

Transcript of Robert W. Barron
Conducted on April 14, 2023                            61

| | | |
|---|---|---|
| 1 | assets. | 10:02:20 |
| 2 | Q.    Mr. Barron, I thought I understood you | 10:02:22 |
| 3 | to say earlier that it's very common in this | 10:02:24 |
| 4 | industry for a lender to assign or to take an | 10:02:27 |
| 5 | interest in property through a shell.  So what was | 10:02:30 |
| 6 | it about this particular transaction that | 10:02:33 |
| 7 | Mr. Feltman was proposing that required Algon and | 10:02:35 |
| 8 | the involvement of Jordi Gusso, your restructuring | 10:02:37 |
| 9 | and bankruptcy partner? | 10:02:44 |
| 10 | A.    My memory was they -- they, IWA, had | 10:03:00 |
| 11 | been in some litigation with the Camalier family. | 10:03:04 |
| 12 | It was apparently very acrimonious.  And there was | 10:03:07 |
| 13 | a worry that -- notwithstanding the fact that they | 10:03:16 |
| 14 | had a provision in the lease or the lease | 10:03:18 |
| 15 | documents at that time, they would say, that | 10:03:20 |
| 16 | allowed the lender to assign and be released from | 10:03:24 |
| 17 | all liability. | 10:03:27 |
| 18 | There was a high sense of lack of trust | 10:03:31 |
| 19 | that the landlord would comply with the terms of | 10:03:36 |
| 20 | the lease. | 10:03:40 |
| 21 | Q.    All right.  So at this initial meeting | 10:03:45 |
| 22 | with Mr. Feltman, it was Mr. Feltman who laid out | 10:03:47 |

A470

Transcript of Robert W. Barron
Conducted on April 14, 2023                    66

| | | |
|---|---|---|
| 1 | discussion as to why Mr. Feltman and IWA wanted to | 10:08:11 |
| 2 | delay Algon from having discussions with the | 10:08:14 |
| 3 | landlord for 36 months or so? | 10:08:17 |
| 4 | MS. KROPF:  Objection as to form. | 10:08:20 |
| 5 | THE WITNESS:  My understanding was a | 10:08:21 |
| 6 | combination of the lack -- severe lack of | 10:08:25 |
| 7 | trust with the landlord based upon this other | 10:08:30 |
| 8 | litigation, concern that the landlord would | 10:08:35 |
| 9 | not honor the terms of the lease.  And so the | 10:08:36 |
| 10 | concept of getting beyond the time period | 10:08:42 |
| 11 | for -- to try to attack the agreement based | 10:08:49 |
| 12 | upon transfer. | 10:08:53 |
| 13 | BY MR. BOSCH: | 10:08:55 |
| 14 | Q.   That was one of the purposes for | 10:08:56 |
| 15 | structuring this transaction that Mr. Feltman | 10:08:57 |
| 16 | identified from the beginning? | 10:08:59 |
| 17 | MS. KROPF:  Objection as to form. | 10:09:02 |
| 18 | THE WITNESS:  I don't know if -- I | 10:09:02 |
| 19 | don't know if in that call, that was | 10:09:10 |
| 20 | discussed.  But we got a term sheet later. | 10:09:12 |
| 21 | So I don't know if -- and, again, to me, that | 10:09:15 |
| 22 | call with him was very high level. | 10:09:17 |

A471

Transcript of Robert W. Barron
Conducted on April 14, 2023                              78

| | | |
|---|---|---|
| 1 | BY MR. BOSCH: | 10:29:22 |
| 2 | Q.    Who was advising Berger Singerman in | 10:29:23 |
| 3 | connection with the allegations that the | 10:29:26 |
| 4 | transaction you helped structure was a fraudulent | 10:29:29 |
| 5 | conveyance? | 10:29:32 |
| 6 | MS. KROPF:  Objection as to form. | 10:29:34 |
| 7 | THE WITNESS:  We are a law firm.  I'm | 10:29:38 |
| 8 | not aware of any outside counsel for our firm | 10:29:43 |
| 9 | for this matter. | 10:29:49 |
| 10 | BY MR. BOSCH: | 10:29:54 |
| 11 | Q.    You testified earlier about the | 10:29:55 |
| 12 | conversations and your understanding of | 10:29:57 |
| 13 | Mr. Feltman about the desire to have Algon delay | 10:30:00 |
| 14 | reaching out to the landlord to discuss the ground | 10:30:07 |
| 15 | lease.  Do you recall that testimony? | 10:30:11 |
| 16 | A.    Yes, sir. | 10:30:12 |
| 17 | Q.    Did you discuss the substance of that | 10:30:13 |
| 18 | testimony with anyone during the break? | 10:30:17 |
| 19 | A.    No, sir. | 10:30:20 |
| 20 | Q.    Do you recall there being any | 10:30:20 |
| 21 | discussion, what would happen next when Algon did | 10:30:21 |
| 22 | reach out to the landlord? | 10:30:24 |

A472

Transcript of Robert W. Barron
Conducted on April 14, 2023                    79

| | | |
|---|---|---|
| 1 | A.    The hope -- the hope was that the | 10:30:27 |
| 2 | parties would negotiate. | 10:30:33 |
| 3 | Q.    I understand. | 10:30:36 |
| 4 | And was there any discussion of what | 10:30:38 |
| 5 | would happen if the landlord did not agree to | 10:30:39 |
| 6 | modify the terms of the ground lease? | 10:30:43 |
| 7 | A.    Not a lot of discussion.  But at some | 10:30:51 |
| 8 | point, if there's -- there was great unknown with | 10:30:56 |
| 9 | the market turn, if the market didn't turn. | 10:31:00 |
| 10 | Because my understanding just generally was that | 10:31:04 |
| 11 | the ground rent was too high for the current | 10:31:07 |
| 12 | market of rent, you know, subleases for renting | 10:31:11 |
| 13 | the building. | 10:31:15 |
| 14 | So either the market would turn, or the | 10:31:16 |
| 15 | landlord would decide to renegotiate the ground | 10:31:20 |
| 16 | lease.  And so they -- you know, they didn't know. | 10:31:26 |
| 17 | That's why part of our negotiation of the | 10:31:32 |
| 18 | operating agreement was an upside for Algon if | 10:31:37 |
| 19 | they could -- if they could turn this thing | 10:31:41 |
| 20 | around. | 10:31:42 |
| 21 | Q.    Was there any discussion of what would | 10:31:43 |
| 22 | happen if the market didn't turn and if the | 10:31:45 |

A473

Transcript of Robert W. Barron
Conducted on April 14, 2023                    80

| | | |
|---|---|---|
| 1 | landlord did not agree to modify the terms of the | 10:31:47 |
| 2 | ground lease? | 10:31:50 |
| 3 |     A.   Not in great detail.  But I think at | 10:31:54 |
| 4 | some point, there may be a situation where we have | 10:31:57 |
| 5 | to give back the interest to the landlord, which | 10:32:00 |
| 6 | is frankly what the prior tenant, the Camalier | 10:32:03 |
| 7 | entity did when they were tenant. | 10:32:07 |
| 8 |     Q.   What do you mean by "give back the | 10:32:09 |
| 9 | interest to the landlord"? | 10:32:11 |
| 10 |     A.   You basically say that we can't make | 10:32:12 |
| 11 | this a going concern -- I don't know.  Whatever -- | 10:32:15 |
| 12 | it's the same thing that the Camalier tenant did | 10:32:17 |
| 13 | on the original loan, that they -- they couldn't | 10:32:21 |
| 14 | make a go of it.  They defaulted, and they gave | 10:32:25 |
| 15 | back the interest through foreclosure. | 10:32:30 |
| 16 |       They would -- they would, I assume, | 10:32:32 |
| 17 | talk to the landlord and say, it's not working. | 10:32:33 |
| 18 | You are not renegotiating.  The market is not | 10:32:35 |
| 19 | turning, so tell us what you want to do with your | 10:32:40 |
| 20 | interest. | 10:32:43 |
| 21 |     Q.   I want to understand more of what you | 10:32:50 |
| 22 | mean by giving it back to the landlord.  I don't | 10:32:51 |

Transcript of Robert W. Barron
Conducted on April 14, 2023                                          81

| | | |
|---|---|---|
| 1 | understand that.  Can you explain what that, | 10:32:56 |
| 2 | what -- how -- as a sophisticated lawyer, what | 10:33:00 |
| 3 | does that mean to give the ground lease interest | 10:33:03 |
| 4 | back to the landlord? | 10:33:05 |
| 5 | A.    Yeah.  So -- well, I mean, you're | 10:33:07 |
| 6 | sophisticated.  Your client did this in connection | 10:33:12 |
| 7 | with the predecessor to the lender; right?  It was | 10:33:15 |
| 8 | a joint venture between the Camaliers and -- it's | 10:33:20 |
| 9 | written down here.  It's Lockheed Martin. | 10:33:24 |
| 10 | Lockheed Martin and the Camaliers were | 10:33:30 |
| 11 | joint ventures as the tenant.  They borrowed | 10:33:32 |
| 12 | money, and they were unable to make it work for | 10:33:34 |
| 13 | whatever reason.  And they effectively gave back | 10:33:37 |
| 14 | the interest.  And now the landlord didn't take it | 10:33:40 |
| 15 | back, because I guess it was encumbered by a | 10:33:43 |
| 16 | mortgage.  So the lender foreclosed it. | 10:33:46 |
| 17 | So here we have a situation where it's | 10:33:49 |
| 18 | free and clear.  There's no third-party mortgage. | 10:33:51 |
| 19 | So if there's no third-party mortgage, the tenant | 10:33:53 |
| 20 | would say, landlord, if you're not going to | 10:33:57 |
| 21 | renegotiate and we cannot find tenants, we need to | 10:33:59 |
| 22 | negotiate a -- an orderly turning over the keys. | 10:34:02 |

A475

Transcript of Robert W. Barron
Conducted on April 14, 2023                    82

1          I mean, that's just -- that's one of          10:34:09

2     the options in a workout situation when the        10:34:10

3     parties can't reach a win-win situation.           10:34:12

4          Q.    Meaning that ground lease tenant would  10:34:16

5     walk away from its obligations under the ground    10:34:18

6     lease?                                             10:34:20

7          A.    Correct.  Or the landlord could get a   10:34:21

8     judgment against the entity.  They could sue in    10:34:24

9     court and get a judgment against the entity.       10:34:26

10         That -- I don't know, I don't know the        10:34:28

11    facts of what happened with the Camalier/Lockheed  10:34:31

12    tenant.  Did they get a judgment against that      10:34:35

13    tenant?  Because they obviously walked away.  How  10:34:37

14    did they walk away?                                10:34:40

15         Q.    Mr. Barron, I want to go to your        10:34:42

16    discussions with Mr. Feltman, where this was --    10:34:44

17    this possibility was discussed.                    10:34:47

18         Was it something Mr. Feltman discussed?       10:34:52

19         A.    No, sir.  This was a very big, big high 10:34:55

20    level conversation of -- as I said, we had -- we   10:34:57

21    have a ground lease.  The lease documents say we   10:35:03

22    can transfer the document, the lease, and be       10:35:05

PLANET DEPOS
888.433.3767 | WWW.PLANETDEPOS.COM

A476

Transcript of Robert W. Barron
Conducted on April 14, 2023                    83

| | | |
|---|---|---|
| 1 | released, very, very high level. | 10:35:10 |
| 2 | Q.    But who raised this possibility of | 10:35:12 |
| 3 | walking away if the ground lease was not modified | 10:35:13 |
| 4 | or if the market didn't improve? | 10:35:17 |
| 5 | A.    Well, it's just logic.  I don't | 10:35:19 |
| 6 | remember if there's a -- you know, if there's a | |
| 7 | who, but that's the options when you go forward in | |
| 8 | a distressed asset. | |
| 9 | Q.    Yes, I understand. | 10:35:34 |
| 10 | But you said that there were | 10:35:35 |
| 11 | conversations, and I want to know who participated | 10:35:36 |
| 12 | in those conversations. | 10:35:38 |
| 13 | MS. KROPF:  And I'll caution you if | 10:35:42 |
| 14 | they are conversations with your clients, | 10:35:45 |
| 15 | then you should not reveal them.  But if | 10:35:47 |
| 16 | they're conversations with Mr. Feltman or IWA | 10:35:49 |
| 17 | or somebody else, you can talk about them. | 10:35:51 |
| 18 | THE WITNESS:  I don't -- I don't recall | 10:35:57 |
| 19 | conversations -- it would be really with | 10:35:58 |
| 20 | Mr. Snitker -- on long-term, at the end of | 10:36:05 |
| 21 | the day. | 10:36:08 |
| 22 | My thought was they were hoping that | 10:36:15 |

A477

Transcript of Robert W. Barron
Conducted on April 14, 2023                    84

| | | |
|---|---|---|
| 1 | when the landlord saw that the release is | 10:36:18 |
| 2 | effective under the estoppel, that they would | 10:36:20 |
| 3 | come to the table, and they'd work out | 10:36:23 |
| 4 | something. | 10:36:25 |
| 5 | Or the Camaliers would say -- and I say | 10:36:25 |
| 6 | that colloquially -- the landlord would say, | 10:36:27 |
| 7 | no, we'd rather have the property back | 10:36:33 |
| 8 | ourselves and we'll run it. I think that was | 10:36:35 |
| 9 | the hope. But I don't recall detailed | 10:36:37 |
| 10 | discussions about it. | 10:36:40 |
| 11 | BY MR. BOSCH: | 10:36:41 |
| 12 | Q. Right. But the discussions about | 10:36:41 |
| 13 | walking away from the ground lease were between | 10:36:42 |
| 14 | you and Mr. Snitker? | 10:36:44 |
| 15 | A. I don't even know if we even got that | 10:36:48 |
| 16 | far. I think -- that was just general discussions | 10:36:49 |
| 17 | about, you know, hopefully, they'll negotiate. | 10:36:53 |
| 18 | But, again, not -- strong -- strong concern that | 10:37:01 |
| 19 | the landlord would not negotiate, based upon the | 10:37:10 |
| 20 | other litigation. | 10:37:13 |
| 21 | Q. And then what? I want to get into the | 10:37:14 |
| 22 | conversations about what if the landlord would not | 10:37:16 |

Transcript of Robert W. Barron
Conducted on April 14, 2023                          85

| | | |
|---|---|---|
| 1 | renegotiate? | 10:37:19 |
| 2 | A.    Yeah, and I don't -- I don't recall | 10:37:20 |
| 3 | details about that.  I don't really think they | 10:37:22 |
| 4 | went that far in discussing. | 10:37:26 |
| 5 | Q.    You referenced earlier the -- what | 10:37:31 |
| 6 | happened at -- with the borrower and the lender. | 10:37:34 |
| 7 | And you said that the borrower gave back the | 10:37:38 |
| 8 | property to the lender?  Is that correct? | 10:37:41 |
| 9 | A.    Well, this whole situation happened | 10:37:44 |
| 10 | because of Camalier/Lockheed Martin; right?  A | 10:37:47 |
| 11 | Camalier, Lockheed Martin tenant reached their | 10:37:51 |
| 12 | loan with IWA.  So they, for whatever reason, | 10:37:57 |
| 13 | elected not to pay their loan is my understanding. | 10:38:02 |
| 14 | That's why you have a foreclosure; right? | 10:38:06 |
| 15 | MS. KROPF:  So he's not going to answer | 10:38:14 |
| 16 | your questions.  You just give your answers. | 10:38:15 |
| 17 | THE WITNESS:  Okay.  I just gave him -- | 10:38:18 |
| 18 | I'm sorry. | 10:38:18 |
| 19 | Yes, sir.  That's what I was referring | 10:38:20 |
| 20 | to. | 10:38:21 |
| 21 | BY MR. BOSCH: | 10:38:21 |
| 22 | Q.    And do you have any understanding of | 10:38:22 |

PLANET DEPOS
888.433.3767 | WWW.PLANETDEPOS.COM

USCA4 Appeal: 23-1928    Doc: 29    Filed: 01/11/2024    Pg: 486 of 557

Transcript of Robert W. Barron
Conducted on April 14, 2023                              197

| | | |
|---|---|---|
| 1 | would occur. | 12:50:40 |
| 2 | Q.    And that space in time was -- | 12:50:41 |
| 3 | A.    Unless they agreed otherwise. | 12:50:44 |
| 4 | Q.    And that space of time was the first | 12:50:47 |
| 5 | 38 months of the term of Newco? | 12:50:51 |
| 6 | A.    Yes, sir.  At least of the term sheet | 12:50:55 |
| 7 | stage. | 12:50:56 |
| 8 | Q.    Right.  And do you recall there being | 12:50:58 |
| 9 | any discussion of that time as it relates to the | 12:50:58 |
| 10 | statute of limitations on a fraudulent conveyance | 12:51:02 |
| 11 | claim? | 12:51:05 |
| 12 | A.    Generally, I heard that number but | 12:51:06 |
| 13 | didn't really understand it because my | 12:51:08 |
| 14 | understanding that time is longer.  So I never | 12:51:10 |
| 15 | really understood that 38 number. | 12:51:12 |
| 16 | Q.    But you understood that the 38 month | 12:51:15 |
| 17 | number from IWA came in the context of their | 12:51:18 |
| 18 | understanding of the statute of limitations? | 12:51:21 |
| 19 | MS. KROPF:  Objection as to form. | 12:51:23 |
| 20 | THE WITNESS:  My understanding from | 12:51:25 |
| 21 | Snitker is that, again, they were worried | 12:51:25 |
| 22 | about the acrimony with the landlord, and | 12:51:29 |

PLANET DEPOS
888.433.3767 | WWW.PLANETDEPOS.COM

A480

Transcript of Robert W. Barron
Conducted on April 14, 2023                    198

| | | |
|---|---|---|
| 1 | they were worried that the -- notwithstanding | 12:51:32 |
| 2 | the provision that said you could assign to a | 12:51:38 |
| 3 | third party and be released from all | 12:51:39 |
| 4 | liabilities, they didn't trust the landlord | 12:51:42 |
| 5 | and didn't think that they would stick with | 12:51:44 |
| 6 | that provision.  And so they wanted extra | 12:51:46 |
| 7 | defenses because of their prior acrimony with | 12:51:50 |
| 8 | the affiliated entities of the landlord. | 12:51:58 |
| 9 | BY MR. BOSCH: | 12:52:00 |
| 10 | Q.    So don't talk to the landlord for at | 12:52:01 |
| 11 | least three years and two months? | 12:52:02 |
| 12 | MS. KROPF:  Objection as to form. | 12:52:05 |
| 13 | THE WITNESS:  That's what the term | 12:52:07 |
| 14 | sheet said, unless they otherwise grant their | 12:52:08 |
| 15 | written consent. | 12:52:11 |
| 16 | BY MR. BOSCH: | 12:52:14 |
| 17 | Q.    Directing your attention, please, to | 12:52:14 |
| 18 | the next page, this is paragraph 18.  And, | 12:52:15 |
| 19 | actually, there's a second 18.  And I'm sure | 12:52:21 |
| 20 | you've seen this one before.  Do you see this | 12:52:24 |
| 21 | language here, "Jordi-ABC process.  How do we bury | 12:52:27 |
| 22 | the entity?" | 12:52:34 |

PLANET DEPOS
888.433.3767 | WWW.PLANETDEPOS.COM

A481

Transcript of Robert W. Barron
Conducted on April 14, 2023                           232

```
 1        A.    No, sir.  Because the reason why I        14:21:54
 2   believe that is because we sent you a copy of the    14:21:56
 3   assignment, or you were given notice of the          14:21:58
 4   assignment.  We notified the landlord of the         14:22:01
 5   assignment, so it wasn't like we were trying to      14:22:04
 6   hide the assignment from the landlord.  So it was    14:22:06
 7   another reason.  It was a tax reason or something.   14:22:11
 8        Q.    Well, you understand that there are       14:22:13
 9   other creditors of this property, do you not?        14:22:15
10           MS. KROPF:  Objection as to form.            14:22:18
11           THE WITNESS:  Yes.                           14:22:21
12   BY MR. BOSCH:                                        14:22:23
13        Q.    So why not give notice to other           14:22:23
14   creditors?                                           14:22:25
15           MS. KROPF:  Objection as to form.            14:22:27
16           THE WITNESS:  The decision was made not      14:22:29
17   to do so.                                            14:22:34
18   BY MR. BOSCH:                                        14:22:35
19        Q.    And that was IWA's decision?              14:22:36
20        A.    Yes.                                      14:22:37
21        Q.    Was it made on your advice?               14:22:38
22           MS. KROPF:  Objection as to form.  IWA       14:22:42
```

PLANET DEPOS
888.433.3767 | WWW.PLANETDEPOS.COM

A482

Transcript of Robert W. Barron
Conducted on April 14, 2023                              257

| | | |
|---|---|---|
| 1 | that one of the sad things about this | 14:44:53 |
| 2 | engagement, this interaction that I had with | 14:44:57 |
| 3 | you with letters is that you presuppose that | 14:44:59 |
| 4 | if I exercise that discretion and choose not | 14:45:02 |
| 5 | to answer, you call it fraud. | 14:45:06 |
| 6 | And with respect, I bet if I followed | 14:45:12 |
| 7 | you around every day and watched lawyers ask | 14:45:15 |
| 8 | you questions, with respect, I could bet you | 14:45:18 |
| 9 | a dollar that you'd choose, in your | 14:45:20 |
| 10 | discretion, not to answer questions.  And | 14:45:23 |
| 11 | with respect, if those lawyers called your | 14:45:25 |
| 12 | conduct fraudulent, you might get a little | 14:45:29 |
| 13 | aggravated. | 14:45:32 |
| 14 | So with respect, just because you have | 14:45:33 |
| 15 | the right to ask a question doesn't mean you | 14:45:36 |
| 16 | have the right to require an answer. | 14:45:38 |
| 17 | BY MR. BOSCH: | 14:45:44 |
| 18 | Q.    All right.  Thank you.  But I'd like to | 14:45:44 |
| 19 | come back to my question, Mr. Barron. | 14:45:46 |
| 20 | A.    Uh-huh. | 14:45:48 |
| 21 | Q.    Your testimony is that there was no | 14:45:49 |
| 22 | discussion about sharing information with the | 14:45:52 |

A483

Transcript of Robert W. Barron
Conducted on April 14, 2023                    345

| | | |
|---|---|---|
| 1 | BY MR. BOSCH: | 16:19:20 |
| 2 | Q.    So you see in this letter -- and if you | 16:19:21 |
| 3 | look, it's the second paragraph on the first page, | 16:19:22 |
| 4 | where in the middle of the paragraph, there's some | 16:19:27 |
| 5 | appearance of furtiveness on your client's part. | 16:19:30 |
| 6 | That was the concern being expressed in this | 16:19:34 |
| 7 | letter?  Do you see that, Mr. Barron? | 16:19:37 |
| 8 | A.    Yes, sir.  This, is what, again, I | 16:19:39 |
| 9 | would call a litigation letter. | 16:19:40 |
| 10 | Q.    Fair. | 16:19:44 |
| 11 | A.    Very self-serving. | 16:19:46 |
| 12 | Q.    Whatever you want to call it. | 16:19:47 |
| 13 | But, you know, so here, the landlord is | 16:19:48 |
| 14 | expressing concern, because there was the | 16:19:51 |
| 15 | appearance of furtiveness. | 16:19:54 |
| 16 | Was that unreasonable given that you | 16:19:56 |
| 17 | had refused to identify any of the principals? | 16:19:59 |
| 18 | A.    Sir, with all due respect, one of the | 16:20:04 |
| 19 | disagreements that you and I had is that you | 16:20:06 |
| 20 | assume that if someone does not answer a question | 16:20:10 |
| 21 | that you ask, it is by definition either in bad | 16:20:13 |
| 22 | faith or fraud, which if I placed this standard | 16:20:18 |

PLANET DEPOS
888.433.3767 | WWW.PLANETDEPOS.COM

A484

Transcript of Robert W. Barron
Conducted on April 14, 2023                              346

| 1  | upon you in your practice, you would be in deep | 16:20:21 |
| 2  | water really fast. | 16:20:26 |
| 3  | Otherwise, you're not a very good | 16:20:27 |
| 4  | lawyer.  And I'm sure you're an excellent lawyer. | 16:20:29 |
| 5  | So I'm disappointed in someone at your stature | 16:20:33 |
| 6  | suggesting that the very, just the bare minimum of | 16:20:36 |
| 7  | asking me a question, if I don't answer your | 16:20:41 |
| 8  | question, I'm somehow in a category of bad faith | 16:20:43 |
| 9  | or fraudulent. | 16:20:47 |
| 10 | Sir, honestly, ethically, I cannot | 16:20:49 |
| 11 | believe that is the proper tact to take in | 16:20:53 |
| 12 | litigation.  Perhaps it is because I'm not a | 16:20:56 |
| 13 | litigator.  But I can't believe that is the proper | 16:20:58 |
| 14 | tact for lawyers to treat other lawyers in | 16:21:01 |
| 15 | litigation.  Maybe it is.  This is not my area. | 16:21:04 |
| 16 | But I can't believe that's the case.  Maybe it is. | 16:21:07 |
| 17 | I'm just not a litigator. | 16:21:17 |
| 18 | Q.    My question, sir:  Was it unreasonable | 16:21:19 |
| 19 | for the landlord to express that there was the | 16:21:21 |
| 20 | appearance of furtiveness, given that you had | 16:21:23 |
| 21 | refused to identify any of the principals of RSD? | 16:21:27 |
| 22 | A.    Sir, with respect, this -- life does | 16:21:30 |

A485

Transcript of Robert W. Barron
Conducted on April 14, 2023                      347

| | | |
|---|---|---|
| 1 | not happen in a vacuum, and we're dealing with | 16:21:34 |
| 2 | letters written by the head of a major, big law | 16:21:38 |
| 3 | firm, the head of litigation, from a landlord | 16:21:42 |
| 4 | whose affiliate has been in years in litigation | 16:21:46 |
| 5 | with this same company. | 16:21:50 |
| 6 | And so is it reasonable for the parties | 16:21:52 |
| 7 | to not trust and be concerned with litigator | 16:21:55 |
| 8 | letters?  Absolutely.  It's reasonable to be | 16:22:00 |
| 9 | concerned and not to give them anything that you | 16:22:03 |
| 10 | don't have to because we've already gone | 16:22:06 |
| 11 | through -- not we.  But they've already gone | 16:22:08 |
| 12 | through litigation with you.  I think it's | 16:22:12 |
| 13 | incredibly reasonable.  In fact, if you were | 16:22:15 |
| 14 | counsel, you would be giving the same legal | 16:22:19 |
| 15 | advice.  That's what so sad about this. | 16:22:20 |
| 16 | Q.    Mr. Barron, again, you've missed my | 16:22:24 |
| 17 | question. | 16:22:26 |
| 18 | Was it unreasonable for the landlord to | 16:22:27 |
| 19 | be concerned about the appearance of furtiveness, | 16:22:29 |
| 20 | given that you had refused to identify any of the | 16:22:32 |
| 21 | principals? | 16:22:35 |
| 22 | MS. KROPF:  Objection as to form. | 16:22:36 |

A486

Transcript of Robert W. Barron
Conducted on April 14, 2023                    348

```
 1              THE WITNESS:  Objection.  I've already        16:22:39
 2      answered the question, sir.                           16:22:40
 3   BY MR. BOSCH:                                            16:22:42
 4      Q.    No.  I think you were trying to                 16:22:42
 5   rationalize IWA or RSD's conduct.                        16:22:44
 6              I'm asking you as the person to whom          16:22:54
 7   questions about the assignment were to be                16:22:57
 8   directed, when the litigator for the landlord           16:22:59
 9   writes you and says that there's concern about the      16:23:02
10   appearance of furtiveness, was that unreasonable        16:23:04
11   given that you had refused to identify any of the       16:23:08
12   principals?                                             16:23:11
13      A.    And my response would be, sir, that            16:23:12
14   it -- that whether you're reasonable or not, I'm        16:23:14
15   not obligated to provide that information to you.       16:23:18
16   So just because I don't provide the information to      16:23:22
17   you doesn't mean that you have the right to get         16:23:25
18   it.                                                     16:23:31
19      Q.    It might mean, however, that you're            16:23:32
20   acting in bad faith; isn't that right?                  16:23:34
21      A.    It may mean a lot of things.  You have         16:23:36
22   to know the facts.                                      16:23:38
```

**PLANET DEPOS**
888.433.3767 | WWW.PLANETDEPOS.COM

A487

Transcript of Robert W. Barron
Conducted on April 14, 2023                              362

| | | |
|---|---|---|
| 1 | A.     This is -- this is writing a letter, so | 16:41:22 |
| 2 | that one day when you depose someone, you can say, | 16:41:24 |
| 3 | I said this, and you didn't respond to me, as if | 16:41:26 |
| 4 | we have to respond to you. | 16:41:30 |
| 5 |         It's a litigation setup letter.  And | 16:41:32 |
| 6 | it's -- it's an old game, and it's not -- I don't | 16:41:34 |
| 7 | know.  It may work -- it may work, sir.  But, you | 16:41:37 |
| 8 | know, it's very self-serving. | 16:41:41 |
| 9 | Q.    Are you saying that if this letter had | 16:41:43 |
| 10 | come from Mother Teresa, you were authorized to | 16:41:45 |
| 11 | have a sitdown between the landlord and the | 16:41:49 |
| 12 | tenant? | 16:41:51 |
| 13 |         MS. KROPF:  Objection as to form. | 16:41:53 |
| 14 | BY MR. BOSCH: | 16:41:55 |
| 15 | Q.    All right.  Let me rephrase that. | 16:41:55 |
| 16 |         If this letter had come from a | 16:41:57 |
| 17 | transactional lawyer like yourself, were you | 16:41:59 |
| 18 | authorized to have a sitdown between the landlord | 16:42:01 |
| 19 | and the tenant? | 16:42:07 |
| 20 | A.    It's privileged. | 16:42:08 |
| 21 | Q.    Was there any consideration to doing | 16:42:09 |
| 22 | that but for the fact that there was a litigator | 16:42:11 |

A488

Transcript of Robert W. Barron
Conducted on April 14, 2023                           380

| | | |
|---|---|---|
| 1 | A.    I do. | 16:59:08 |
| 2 | Q.    And that language? | 16:59:09 |
| 3 | A.    I do. | 16:59:10 |
| 4 | Q.    Did you share it with anybody? | 16:59:11 |
| 5 | MS. KROPF:  Objection.  I instruct him | 16:59:13 |
| 6 | not to answer. | 16:59:13 |
| 7 | BY MR. BOSCH: | 16:59:15 |
| 8 | Q.    Wasn't RSD, in fact, hiding behind you | 16:59:15 |
| 9 | and your law firm? | 16:59:18 |
| 10 | A.    No, sir.  But this letter really | 16:59:19 |
| 11 | revealed that the landlord was going to renege on | 16:59:21 |
| 12 | their covenant. | 16:59:24 |
| 13 | Once again, the landlord covenant that | 16:59:25 |
| 14 | we -- not us, but the lender had the absolute | 16:59:28 |
| 15 | right -- not just the right, but absolute right, | 16:59:31 |
| 16 | to transfer to a third party, and so long as -- if | 16:59:33 |
| 17 | they transferred, as long as the assignee assumed | 16:59:38 |
| 18 | the obligations, they would be released.  Not just | 16:59:42 |
| 19 | released, but automatically released. | 16:59:46 |
| 20 | So here you are in your letter saying, | 16:59:48 |
| 21 | notwithstanding that we coveted it, to let you do | 16:59:51 |
| 22 | this, we're now going to sue you for fraudulent | 16:59:55 |

PLANET DEPOS
888.433.3767 | WWW.PLANETDEPOS.COM

A489

Transcript of Robert W. Barron
Conducted on April 14, 2023                     381

| | | |
|---|---|---|
| 1 | conveyance, which is exactly what everyone was | 16:59:57 |
| 2 | concerned, that these people do not operate in | 17:00:00 |
| 3 | good faith.  They will not honor the covenant they | 17:00:03 |
| 4 | have in the plain language of the lease.  But | 17:00:06 |
| 5 | instead, they're litigious.  And bingo, on | 17:00:08 |
| 6 | June 6th, 2019, you came out and did it.  And here | 17:00:13 |
| 7 | we go. | 17:00:16 |
| 8 |     Q.    Let me go back to my question, | 17:00:17 |
| 9 | Mr. Barron.  Was RSD hiding behind you and your | 17:00:19 |
| 10 | law firm? | 17:00:22 |
| 11 |     A.    No, sir. | 17:00:23 |
| 12 |     Q.    So RSD was prepared to come forward and | 17:00:23 |
| 13 | say, We are IWA and the Longshore member? | 17:00:26 |
| 14 |         MS. KROPF:  Objection.  And I instruct | 17:00:33 |
| 15 |     him not to answer. | 17:00:34 |
| 16 | BY MR. BOSCH: | 17:00:35 |
| 17 |     Q.    Well, hold on a second, now, | 17:00:35 |
| 18 | Mr. Barron.  Were you doing something that was not | 17:00:36 |
| 19 | consistent with what your client had instructed? | 17:00:40 |
| 20 |         MS. KROPF:  Objection.  And I instruct | 17:00:44 |
| 21 |     him not to answer. | 17:00:45 |
| 22 | | |

PLANET DEPOS
888.433.3767 | WWW.PLANETDEPOS.COM

A490

EXHIBIT 3



# Transcript of Troy Taylor

**Date:** April 6, 2023
**Case:** Rock Spring Plaza II LLC -v- Investors Warranty of America LLC, et al.

**Planet Depos**
**Phone:** 888.433.3767
**Email:** transcripts@planetdepos.com
**www.planetdepos.com**

WORLDWIDE COURT REPORTING & LITIGATION TECHNOLOGY

Transcript of Troy Taylor
April 6, 2023                                      74

| | | |
|---|---|---|
| 1 | revealing privileged communications? | 10:27:59 |
| 2 | A     Actually I can.  I take that back. | 10:28:01 |
| 3 | Q     You had conversations with Mr. | 10:28:03 |
| 4 | Feltman about that, did you not? | 10:28:04 |
| 5 | A     No, I did not. | 10:28:05 |
| 6 | One of the things -- when we first | 10:28:09 |
| 7 | got brought into this, we were told that the | 10:28:23 |
| 8 | Camaliers were very litigious. | 10:28:28 |
| 9 | I knew there was existing | 10:28:33 |
| 10 | litigation going on.  Didn't know anything | 10:28:35 |
| 11 | about the specifics.  I knew there was | 10:28:37 |
| 12 | existing litigation and I knew that there | 10:28:38 |
| 13 | was -- that at least IWA's perception was | 10:28:42 |
| 14 | that the Camaliers were very litigious. | 10:28:47 |
| 15 | I took that to say, okay. | 10:28:53 |
| 16 | And after the assignment, what | 10:28:57 |
| 17 | happened was that Mr. Bosch, you were the | 10:29:03 |
| 18 | one that initially reached out to Robert | 10:29:08 |
| 19 | Barron.  And in my 25-plus years of | 10:29:11 |
| 20 | experience, I've never seen any first chair | 10:29:15 |
| 21 | litigator be the first person to respond in | 10:29:18 |
| 22 | what should be a commercial business | 10:29:22 |

PLANET DEPOS
888.433.3767 | WWW.PLANETDEPOS.COM

A493

Transcript of Troy Taylor
April 6, 2023                                          75

| | | |
|---|---|---|
| 1 | situation. | 10:29:25 |
| 2 | So it made me basically say, okay, | 10:29:25 |
| 3 | I understand now why my joint venture | 10:29:28 |
| 4 | partner thinks that these folks are | 10:29:31 |
| 5 | litigious in nature, because why would the | 10:29:35 |
| 6 | litigator be responding?  I mean, you know, | 10:29:37 |
| 7 | it kind of muddied the waters. | 10:29:41 |
| 8 | So it made me think that basically | 10:29:42 |
| 9 | that the Camaliers were not interested in a | 10:29:44 |
| 10 | real conversation; otherwise, they would | 10:29:49 |
| 11 | have called directly, they would have had | 10:29:50 |
| 12 | maybe one of your real estate partners call, | 10:29:52 |
| 13 | but the fact that it was a litigator | 10:29:54 |
| 14 | reaching out, that sent red flags to me. | 10:29:57 |
| 15 | So in the back of my mind, it gave | 10:30:01 |
| 16 | more credence to the fact of what IWA had | 10:30:04 |
| 17 | been telling me.  But I didn't -- but just | 10:30:06 |
| 18 | to finish, I didn't know any specifics, I | 10:30:08 |
| 19 | didn't know -- but it made me understand | 10:30:12 |
| 20 | that, okay, these guys approach everything | 10:30:14 |
| 21 | from a litigation angle versus from what I | 10:30:16 |
| 22 | call a business angle. | 10:30:18 |

A494

USCA4 Appeal: 23-1928     Doc: 29     Filed: 01/11/2024     Pg: 501 of 557

Transcript of Troy Taylor
April 6, 2023                                                76

| 1 | Q     So at the time that you were | 10:30:20 |
|---|---|---|
| 2 | negotiating the formation of RSD and | 10:30:22 |
| 3 | the assignment of the ground lease, you | 10:30:27 |
| 4 | understood from Mr. Feltman that the Camas | 10:30:29 |
| 5 | were litigious from that respect? | 10:30:31 |
| 6 | A     I think the general concept, yes. | 10:30:34 |
| 7 | Q     And so in connection with | 10:30:37 |
| 8 | negotiating, you understand there was a risk | 10:30:39 |
| 9 | of litigation pertaining to this property, | 10:30:41 |
| 10 | 6560 Rock Springs Drive? | 10:30:44 |
| 11 | MS. KROPF:  Objection as to | 10:30:47 |
| 12 | form. | 10:30:47 |
| 13 | A     Yes. | 10:30:47 |
| 14 | BY MR. BOSCH: | 10:30:47 |
| 15 | Q     And did you have any discussions | 10:30:47 |
| 16 | with Mr. Feltman about the types of claims | 10:30:49 |
| 17 | that this transaction might give rise to as | 10:30:53 |
| 18 | you were negotiating the transaction? | 10:30:59 |
| 19 | A     None. | 10:31:00 |
| 20 | Q     You just knew there was a general | 10:31:05 |
| 21 | risk of litigation? | 10:31:06 |
| 22 | A     I just knew that the ground lessor | 10:31:08 |

A495

Transcript of Troy Taylor
April 6, 2023                                          77

| | | |
|---|---|---|
| 1 | was very litigious and they made -- that was | 10:31:12 |
| 2 | their MO of how they did business, and that | 10:31:15 |
| 3 | was it. | 10:31:17 |
| 4 | Q    And you understood -- that's the | 10:31:18 |
| 5 | understanding you got from Mr. Feltman? | 10:31:19 |
| 6 | A    I got that understanding, so I | 10:31:22 |
| 7 | assume came from Mr. Feltman.  I can't | 10:31:24 |
| 8 | imagine where else it could have come from. | 10:31:26 |
| 9 | Q    And had Mr. Feltman told you that | 10:31:29 |
| 10 | they had previously walked away from a | 10:31:31 |
| 11 | different ground lease in which the | 10:31:34 |
| 12 | Camaliers had an interest? | 10:31:35 |
| 13 | MS. KROPF:  Objection as to | 10:31:38 |
| 14 | form. | 10:31:38 |
| 15 | A    No. | 10:31:38 |
| 16 | BY MR. BOSCH: | 10:31:39 |
| 17 | Q    Had he told you there was a lawsuit | 10:31:39 |
| 18 | pending involving that other ground lease? | 10:31:41 |
| 19 | A    I don't know if he told me -- I | 10:31:45 |
| 20 | knew at some point I became aware of it.  I | 10:31:46 |
| 21 | don't know where I became aware it. | 10:31:49 |
| 22 | Q    And your testimony is you didn't | 10:31:52 |

PLANET DEPOS
888.433.3767 | WWW.PLANETDEPOS.COM

A496

USCA4 Appeal: 23-1928    Doc: 29    Filed: 01/11/2024    Pg: 503 of 557

Transcript of Troy Taylor
April 6, 2023                                            78

| # | | |
|---|---|---|
| 1 | think about the risk of litigation again | 10:31:54 |
| 2 | until I sent a letter to Mr. Barron after | 10:31:55 |
| 3 | the assignment? | 10:31:57 |
| 4 | MS. KROPF:  Objection as to | 10:31:59 |
| 5 | form. | 10:31:59 |
| 6 | A     That's not what I said. | 10:32:00 |
| 7 | I said it reinforced to me that | 10:32:01 |
| 8 | basically what my joint venture partner was | 10:32:02 |
| 9 | saying had some credence. | 10:32:04 |
| 10 | I typically have partners and | 10:32:06 |
| 11 | clients that have preconceived notions that | 10:32:08 |
| 12 | are often conspiracy theories that they've | 10:32:10 |
| 13 | worked up in their minds that tend not to be | 10:32:17 |
| 14 | reality, but in this particular case, it | 10:32:19 |
| 15 | reinforced what their reality was telling | 10:32:22 |
| 16 | me. | 10:32:25 |
| 17 | BY MR. BOSCH: | 10:32:25 |
| 18 | Q     You said it "sent up red flags," so | 10:32:26 |
| 19 | what did you do after the red flags went up? | 10:32:28 |
| 20 | MS. KROPF:  Objection as to | 10:32:31 |
| 21 | form. | 10:32:31 |
| 22 | A     It made us basically conduct | 10:32:32 |

A497

Transcript of Troy Taylor
April 6, 2023                                                    80

| | | |
|---|---|---|
| 1 | today, you have no understanding of what the | 10:33:11 |
| 2 | fraud claims are about? | 10:33:14 |
| 3 | A     I don't understand -- and again I'm | 10:33:15 |
| 4 | not a lawyer.  I didn't go to one of those | 10:33:16 |
| 5 | fancy law schools. | 10:33:20 |
| 6 | I don't understand how -- again, | 10:33:22 |
| 7 | from kind of a simple boy from | 10:33:23 |
| 8 | Philadelphia -- | 10:33:26 |
| 9 | Q     With two Wharton degrees, right? | 10:33:29 |
| 10 | A     -- I got lost. | 10:33:32 |
| 11 | I don't understand how there could | 10:33:34 |
| 12 | be a fraud claim when in the estoppel | 10:33:35 |
| 13 | agreement -- which I read before the | 10:33:39 |
| 14 | assignment and candidly I read numerous | 10:33:40 |
| 15 | times since this litigation began -- that | 10:33:44 |
| 16 | says -- and I may paraphrase it wrong -- but | 10:33:46 |
| 17 | it says, the absolute right to transfer to | 10:33:49 |
| 18 | any third-party, it doesn't say "a | 10:33:52 |
| 19 | third-party," it doesn't say "a | 10:33:55 |
| 20 | well-capitalized third party," it doesn't | 10:33:58 |
| 21 | say "an unrelated third party," it says | 10:33:59 |
| 22 | "any." | 10:34:01 |

USCA4 Appeal: 23-1928      Doc: 29      Filed: 01/11/2024      Pg: 505 of 557

Transcript of Troy Taylor
April 6, 2023                                          223

| | | |
|---|---|---|
| 1 | Q      Fair enough. | 01:28:37 |
| 2 | Did you have any discussions with | 01:28:37 |
| 3 | anyone from the management committee about | 01:28:40 |
| 4 | how long the IWA member would continue to | 01:28:43 |
| 5 | fund RSD? | 01:28:45 |
| 6 | A      At what point in time are you | 01:28:47 |
| 7 | asking?  Any time? | 01:28:48 |
| 8 | Q      At any time prior to the filing of | 01:28:49 |
| 9 | this lawsuit. | 01:28:51 |
| 10 | A      I had the impression -- though | 01:28:54 |
| 11 | there's nothing guaranteed -- I had the | 01:28:57 |
| 12 | impression from Mr. Feltman that IWA would | 01:29:00 |
| 13 | fund this until such time that we had a -- | 01:29:04 |
| 14 | I'll call it "resolution" of this situation. | 01:29:08 |
| 15 | Q      How was "resolution" defined? | 01:29:12 |
| 16 | A      We never defined it, but it was | 01:29:15 |
| 17 | basically -- let me back up. | 01:29:17 |
| 18 | There was nothing ever promised, | 01:29:25 |
| 19 | but my understanding was that basically they | 01:29:26 |
| 20 | would be willing to fund this thing as long | 01:29:30 |
| 21 | as it took them. | 01:29:33 |
| 22 | Q      As long as what took? | 01:29:34 |

PLANET DEPOS
888.433.3767 | WWW.PLANETDEPOS.COM

A499

Transcript of Troy Taylor
April 6, 2023

258

| | | |
|---|---|---|
| 1 | it's legally required to record the | 01:55:48 |
| 2 | transcript of this ground lease? | 01:55:50 |
| 3 | MS. KROPF:  Objection as to | 01:55:54 |
| 4 | form.  I'm going to instruct him not | 01:55:54 |
| 5 | to answer. | 01:55:55 |
| 6 | I think getting into the substance | 01:55:56 |
| 7 | of his communications with Berger | 01:55:58 |
| 8 | Singerman in any way is privileged, and | 01:56:00 |
| 9 | I'll instruct him not to answer. | 01:56:02 |
| 10 | You've gotten -- I'll instruct him | 01:56:04 |
| 11 | not to answer. | 01:56:08 |
| 12 | (Directive.) | 01:56:04 |
| 13 | BY MR. BOSCH: | 01:56:08 |
| 14 | Q    Which lawyer is providing counsel | 01:56:09 |
| 15 | to you on whether or not to record the | 01:56:10 |
| 16 | ground lease? | 01:56:12 |
| 17 | A    Mr. Barron. | 01:56:14 |
| 18 | Q    Anyone else? | 01:56:14 |
| 19 | A    No. | 01:56:15 |
| 20 | Q    You testified that you had retained | 01:56:17 |
| 21 | a law firm, Wilkes Artis, in connection with | 01:56:22 |
| 22 | the property taxes? | 01:56:27 |

A500

USCA4 Appeal: 23-1928    Doc: 29    Filed: 01/11/2024    Pg: 507 of 557

Transcript of Troy Taylor
April 6, 2023                                          259

| | | |
|---|---|---|
| 1 | A    Yes. | 01:56:28 |
| 2 | Q    And was the payment of transfer and | 01:56:30 |
| 3 | recordation taxes within the scope of their | 01:56:34 |
| 4 | engagement? | 01:56:37 |
| 5 | A    Mr. Rubin handled all of the stuff | 01:56:38 |
| 6 | with Wilkes Artis, so you would have to ask | 01:56:41 |
| 7 | him.  I don't know. | 01:56:43 |
| 8 | Q    You testified that Wilkes Artis was | 01:56:44 |
| 9 | unaware or confirmed that there was no need | 01:56:47 |
| 10 | to record this ground lease, or wouldn't? | 01:56:50 |
| 11 | A    No, I said that they never alerted | 01:56:52 |
| 12 | us that there was a problem, that this was a | 01:56:55 |
| 13 | problem. | 01:56:56 |
| 14 | Q    And why would they be aware of this | 01:56:56 |
| 15 | issue of the transfer and recordation taxes? | 01:57:00 |
| 16 | A    Because they basically were the -- | 01:57:04 |
| 17 | handled the property tax issue when it was | 01:57:05 |
| 18 | Aegon.  They saw the paperwork when it was | 01:57:09 |
| 19 | Aegon.  They were being retained by RSD and | 01:57:13 |
| 20 | being paid by RSD.  They never raised it. | 01:57:15 |
| 21 | The exact scope of what our | 01:57:18 |
| 22 | engagement with them is, is something you | 01:57:22 |

PLANET DEPOS
888.433.3767 | WWW.PLANETDEPOS.COM

A501

Transcript of Troy Taylor
April 6, 2023                                              260

| | | |
|---|---|---|
| 1 | would have to ask Mr. Rubin.  I don't know. | 01:57:24 |
| 2 | Q    But as a restructuring expert, you | 01:57:27 |
| 3 | do understand the difference between | 01:57:29 |
| 4 | property taxes and transfer and recordation | 01:57:31 |
| 5 | taxes; do you not? | 01:57:34 |
| 6 | A    As a restructuring expert, I know | 01:57:34 |
| 7 | you hire a first class law firm and they | 01:57:36 |
| 8 | spot a problem, even if it's not exactly the | 01:57:39 |
| 9 | scope of what it is, they come raising their | 01:57:42 |
| 10 | hands and they say, You have a problem.  You | 01:57:42 |
| 11 | didn't engage us for this, but you have a | 01:57:45 |
| 12 | problem.  You should fix it. | 01:57:48 |
| 13 | I know your law firm would do that. | 01:57:49 |
| 14 | All the law firms I've ever worked with have | 01:57:51 |
| 15 | done that. | 01:57:55 |
| 16 | So basically, if they thought it | 01:57:55 |
| 17 | was a problem -- the assumption is if they | 01:57:57 |
| 18 | would have spotted it, they would have told | 01:58:00 |
| 19 | us there was a problem. | 01:58:01 |
| 20 | Q    And earlier you testified that the | 01:58:03 |
| 21 | reason you wouldn't want to record this | 01:58:05 |
| 22 | ground lease is you didn't want to have to | 01:58:07 |

A502

USCA4 Appeal: 23-1928     Doc: 29     Filed: 01/11/2024     Pg: 509 of 557

Transcript of Troy Taylor
April 6, 2023                                    261

| | | |
|---|---|---|
| 1 | pay the costs? | 01:58:09 |
| 2 | MS. KROPF:  Objection as to | 01:58:10 |
| 3 | form. | 01:58:10 |
| 4 | A    I didn't want to do anything I | 01:58:11 |
| 5 | didn't have to do, and especially if I had | 01:58:14 |
| 6 | to pay a cost. | 01:58:15 |
| 7 | BY MR. BOSCH: | 01:58:15 |
| 8 | Q    And the cost you understood would | 01:58:15 |
| 9 | be for transfer and recordation taxes? | 01:58:15 |
| 10 | A    I don't know what they're called, | 01:58:17 |
| 11 | but I assume that's the right definition. | 01:58:18 |
| 12 | But I don't know -- I know there's | 01:58:22 |
| 13 | a cost around recording, and I don't know | 01:58:23 |
| 14 | what it's called. | 01:58:27 |
| 15 | Q    So you don't know there's a tax? | 01:58:28 |
| 16 | A    I know there is a tax, I just don't | 01:58:29 |
| 17 | know what the legal term of the tax is. | 01:58:31 |
| 18 | Q    Is it your testimony that you have | 01:58:33 |
| 19 | received counsel about whether a transfer | 01:58:35 |
| 20 | and recordation tax was payable on this | 01:58:39 |
| 21 | transfer? | 01:58:42 |
| 22 | MS. KROPF:  So I'm going to | 01:58:43 |

PLANET DEPOS
888.433.3767 | WWW.PLANETDEPOS.COM

A503

Transcript of Troy Taylor
April 6, 2023                                                262

| | | |
|---|---|---|
| 1 | instruct you not to answer. | 01:58:44 |
| 2 | That gets into privileged | 01:58:45 |
| 3 | communications. | 01:58:46 |
| 4 | (Directive.) | 01:58:47 |
| 5 | BY MR. BOSCH: | 01:58:48 |
| 6 | Q    So is one of the reasons you did | 01:58:48 |
| 7 | not want to record this ground lease is to | 01:58:50 |
| 8 | avoid paying transfer and recordation tax? | 01:58:54 |
| 9 | MS. KROPF:  Object to form. | 01:58:57 |
| 10 | A    Why would I want to do something | 01:58:59 |
| 11 | that's going to create a cost if I'm not | 01:59:00 |
| 12 | required to it? | 01:59:04 |
| 13 | Q    And the sole basis for your | 01:59:04 |
| 14 | understanding that you're not required to | 01:59:05 |
| 15 | pay those taxes is on the advice of | 01:59:05 |
| 16 | Mr. Barron? | 01:59:07 |
| 17 | A    Yes. | 01:59:07 |
| 18 | MS. KROPF:  Objection as to | 01:59:08 |
| 19 | form. | 01:59:08 |
| 20 | BY MR. BOSCH: | 01:59:09 |
| 21 | Q    I'm going to hand you now what has | 01:59:09 |
| 22 | been previously marked as IWA 36. | 01:59:16 |

A504

# EXHIBIT 4

# ☰ BERGER SINGERMAN
### FLORIDA'S BUSINESS LAW FIRM



# ROBERT W. BARRON

**Partner**

954-712-5145
rbarron@bergersingerman.com

201 East Las Olas Boulevard
Suite 1500
Fort Lauderdale, FL 33301

Robert W. Barron is a Florida-based business attorney with significant experience with real estate asset and financing transactions, corporate acquisition and disposition transactions, and business and debt restructurings.

Robert has significant experience in real estate asset transactions involving multifamily/apartments, condominium projects, shopping centers, office buildings, hotels, industrial properties, undeveloped land, and trading in debt secured by these types of assets. Robert represents borrowers and lenders in real estate mortgage financing transactions, including representing borrowers in commercial mortgage-backed securities (CMBS) loans. He also represents buyers and sellers in the acquisition and disposition of commercial real estate assets.

Within the commercial real estate industry, Robert represents clients with the acquisition and disposition of office, industrial, multifamily properties, luxury and near-luxury hotel properties and the negotiation of leases, property management agreements and hotel management contracts. He represents lenders and borrowers in commercial real estate loan transactions and workouts (including defeasance opportunities) as well as owners and developers in connection with leasing transactions, construction projects and related construction and architect agreements.

Robert assists clients with the negotiation, formation, and restructuring of complex corporate, limited partnership and LLC structures for corporate and real estate asset transactions, including and the structuring and negotiation of shareholder agreements, limited partnership agreements and LLC operating agreements and the negotiation and settlement of internal disputes among shareholders, partners and LLC members. Robert has significant experience with acquisitions and dispositions of corporate businesses (including portfolio

**bergersingerman.com**

A506

companies and subsidiaries), venture capital investment and investment partnership transactions, formation and capitalization of corporations, limited partnerships or limited liability companies and asset-based corporate financing for businesses. Robert represents corporate clients with their on-going corporate and operational matters, including corporate governance issues and the structuring, preparation and negotiation of employment agreements, non-competition agreements, severance agreements, confidentiality, distribution, sales, license, manufacturing and other general business contracts.

He represents clients involved in distressed corporate and partnership restructuring transactions – representing from time to time either the buy-side or the sell-side – whether in connection with a bankruptcy proceeding (including the representation of debtors or purchasers in Section 363 asset auction transactions in connection with a bankruptcy proceeding) or outside of the bankruptcy process. Robert works closely with the Business Reorganization Team of the Berger Singerman in connection with such restructuring matters. He has worked with borrowers, guarantors, and lenders to work out or restructure distressed loans with an aggregate outstanding balance in excess of a billion dollars.

Robert also advises not-for-profit companies, educational organizations and other charities in connection with the use of entrepreneurial strategies to obtain capital and to accomplish their mission and purpose, including through the use of program-related investments provided by private foundations and funds provided by donor-advised funds.

## Education

J.D., Louisiana State University Law Center, 1987

- 1984 *Valedictorian, Candidate for LSU Law Review, Chancellor's List*, the LSU Law Center Hall of Fame and the Louisiana Law Institute in 1987.
- Order of the Coif

B.S., Oral Roberts University, 1984

## Bar Admissions

Florida
Louisiana
Texas

## Practice Teams

Business, Finance & Tax

## Practice Areas

Corporate
Distressed M&A & Restructuring
Healthcare
Hospitality & Leisure
Mergers & Acquisitions
Real Estate
Securities & Capital Markets

## Representative Matters

bergersingerman.com

A507

- Representation of venture capital funds with respect to investments in early stage financial services, artificial intelligence and other emerging technology companies.
- Representation of the sale of a medical products company with medical clinics in multiple locations with overseas manufacturing facility for medical products.
- Representation of the sale of a manufacturing facility with operating business structured as a Section 363 sale in a Chapter 11 proceeding.
- Representation of the owners of civil engineering and surveying company in the sale of their business to a private equity firm.
- Representation of the owners of a medical products company in the sale of their business to a private equity firm.
- Representation of large tract real property developers in the negotiation of operating agreements with private equity firms and other investors.
- Representation of the purchasers of multi-family apartment projects in various southern states, including negotiation of the acquisition financing for such acquisitions.
- Representation of land owner in the negotiation and sale of 3,700 continuous acres in Palm Beach County, Florida.
- Representation of the owner of approximate 2,300 acre resort property located in Costa Rica in connection with modification of its existing financing arrangements.
- Representation of physician medical practice in connection with the sale of the practice through an asset transaction and the negotiation of a physician employment agreement.
- Representation of beneficial owners of Texas refinery in connection with the sale of the refinery.
- Representation of real estate partnerships and LLCs in connection with the refinance of various mortgage loans using CMBS lenders for the refinancing.
- Representation of owner of commercial office/retail building in connection with the refinance of its existing mortgage financing using a CMBS mortgage loan.
- Representation of property owners obtaining "hard money" loans to facilitate the quick refinancing of real property to meet the time constraint requirements of the existing lenders.
- Representation of lender providing construction and mini-permanent financing for the construction of a commercial office building.
- Representation of owner in connection with the construction of a port facility in Barbados using FIDIC construction contracts.
- Representing of owner in connection with a port dredging contract off the coast of Bermuda using FIDIC construction contracts.
- Representation of owners in the negotiation and drafting of AIA construction contracts with contractors and construction managers in connection with a construction project.
- Representation of owners in the negotiation and drafting of AIA architect agreements with architects in connection with a construction project.
- Representation of development company and property owner in connection with the negotiation of a development agreement with an investor to locate, develop, construct, lease and sell apartment communities.
- Representation of distributor in connection with the negotiation and drafting of a distribution agreement.
- Representation of licensee in connection with the negotiation and drafting of a license agreement.
- Representation of borrowers, sellers and/or buyers as local Florida counsel to provide local Florida law assistance for the transaction.
- Representation of borrowers in connection with the review of loan documents to provide Florida third party legal opinions in connection with the closing of loan transactions to the extent appropriate under applicable Florida Bar customary practice.

**bergersingerman.com**

A508

- Modification of existing Florida limited liability company operating agreements to address issued presented by the new Revised Florida Limited Liability Company Act.
- Representation of various homebuilders and real property developers with indebtedness exceeding hundreds of millions of dollars in connection with restructuring transactions.
- Serve as title agent for major title insurance companies to arrange for the provision of title insurance in connection with the closing of real estate transactions.

## Awards & Honors

- *The Best Lawyers in America®*, 2013-2023
  - *Best Lawyers'* 2022 Corporate Law Lawyer of the Year, Fort Lauderdale
  - *Best Lawyers'* 2019 Corporate Law Lawyer of the Year, Fort Lauderdale
- *Florida Super Lawyers,* 2007-2020, 2022
- *South Florida Legal Guide*, Top Lawyer, Commercial Real Estate and Corporate Transactions, 2007-2016
- *Daily Business Review*
  - Winner, Top Dealmaker Award: Leasing, 2014
  - Finalist,Top Dealmaker Award, 2013
  - Finalist, Most Effective Lawyer Award in Bankruptcy, 2011
- *Martindale-Hubbell*, AV® Preeminent™ rated
  - Top Rated Lawyer in Corporate Restructuring and Bankruptcy, 2013
- Chapter 11 Reorganization of the Year (Middle Market) for HearUSA, *M&A Advisor's* 6th Annual Turnarounds Awards (2012)
- *Florida Trend,* Legal Elite, 2006 – 2008, 2010-2011, 2013
- *Real Estate Florida*, Top Real Estate Lawyer in the State of Florida, 2008
- Salute to Business Award from the Chamber for activities related to Leadership Fort Lauderdale, 2006

## Community Activities / Associations

- Member of the Board of Trustees, Oral Roberts University, Tulsa, Oklahoma (2015 to present)
- Chairman of Finance Committee; Member of the Executive Committee of Oral Roberts University (2016 to present)
- Member of the Board of Directors, Henderson Behavioral Health, the largest, community-based not-for-profit behavioral healthcare system in South Florida
- Board of Governors, Health Professions Division, Nova Southeastern University; Dean's Leadership Council, Nova Southeastern University College of Osteopathic Medicine (2011 to present)
- Member of the Ambassadors Board - Nova Southeastern University (2013- present)
- Business Law Section of The Florida Bar
  - Executive Council (2006-present)
  - Chair of Corporations, Securities and Financial Services Committee of the Business Law Section of the Florida Bar - (2016-2017)
  - Chair or Co-Chair of Opinion Standards Committee of Business Law Section of the Florida Bar (2013 to present)  and Vice Chair of Opinion Standards Committee of Business Law Section of Florida Bar - (2006-2013)
  - Second Vice Chair of Legislation Committee of Business Law Section of the Florida Bar (2021-present)
- Member of the Board of Directors of Habitat for Humanity of Broward, Inc.

**bergersingerman.com**

A509

- Member of the Advisory Board of Jim Moran Institute for Global Entrepreneurship at Florida State University
- Gamma Beta Phi Society
- Member of the Board of Directors of Tower Forum
- Member of Board of Elders - Two Rivers Church of South Florida - Cooper City, FL
- Former Chairman of the Board of the Greater Fort Lauderdale Chamber of Commerce (2010) Former Member of the Board of Greater Fort Lauderdale Chamber of Commerce
- Former Member of the Executive Committee and Finance Committee of the Chamber Leadership Florida Class XXI
- Leadership Fort Lauderdale - Curriculum Chair Class X Leadership Fort Lauderdale - Class VII
- Former Chair of the Advisory Committee, Leadership Fort Lauderdale Lifework Leadership
- Former Chairman of the Board of Directors of Sheridan Family Ministries, Inc.
- Former Member of the Board of Directors of Sheridan House Family Members, Inc.
- Former Member, Community Engagement Advisory Board, Trinity International University - Florida Former Member, Children's Bereavement Center Broward Advisory Board
- Former Member of the Board of Trustees, South Florida Chapter of Leukemia and Lymphoma Society

## In the News

Forty-Three Berger Singerman Attorneys Recognized in the 2023 Edition of Best Lawyers In America
August 18, 2022

Twenty-three Berger Singerman Attorneys Recognized in 2022 Edition of Florida Super Lawyers
June 27, 2022

M&A Advisor Recognizes Berger Singerman LLP for its Work on the Chapter 11 Bankruptcy Case of Unipharma
June 15, 2022

39 Berger Singerman Attorneys Recognized in the 2022 Edition of Best Lawyers In America
August 19, 2021

Thirty-Five Berger Singerman Attorneys Recognized in the 2021 Edition of Best Lawyers In America
August 19, 2020

Twenty-Seven Berger Singerman Attorneys Recognized in 2020 Edition of Florida Super Lawyers
June 8, 2020

Thirty Berger Singerman Attorneys Recognized in the 2020 Edition of Best Lawyers In America
August 14, 2019

Twenty-Eight Berger Singerman Attorneys Recognized in 2019 Edition of Florida Super Lawyers
May 29, 2019

Thirty Berger Singerman Attorneys Recognized in the 2019 Edition of Best Lawyers In America
August 14, 2018

Thirty-One Berger Singerman Attorneys Recognized in 2018 Edition of Florida Super Lawyers
June 17, 2018

Thirty Berger Singerman Attorneys Recognized in the 2018 Edition of Best Lawyers In America
August 14, 2017

REH Capital Partners, Algon Group and Berger Singerman Win M&A Advisor Latin America Deal of the Year
July 5, 2017

**bergersingerman.com**

Thirty-Two Berger Singerman Attorneys Recognized in the 2017 Super Lawyers Florida Edition
June 8, 2017

Berger Singerman Attorneys Help Land $247 Million Loan for PortMiami Terminal
September 12, 2016

Twenty-Eight Berger Singerman Attorneys Recognized in the 2017 Edition of Best Lawyers In America
August 14, 2016

Thirty-Six Berger Singerman Attorneys Recognized in the 2016 Super Lawyers Florida Edition
June 13, 2016


## Publications

Berger Singerman's Real Estate Team Authors Chambers and Partners' 2022 Florida-US Regional Real Estate Chapter
August 11, 2022

Steering Committee Member and Vice Chair of Legal Opinion Standards Committee of the Business Law Section of the Florida Bar with respect to "Third Party Legal Opinion Customary Practice in Florida", Report of the Legal Opinion Standards Committee of The Florida Bar Business Law Section and the Legal Opinions Committee of The Florida Bar Real Property, Probate and Trust Law Section.

Contributing Author of "Laws Commonly Excluded from the Coverage of Third-Party Legal Opinions in U.S. Commercial Loan Transactions", The Business Lawyer
July 30, 2021

Contributing Author of "Common Qualifications to a Remedies Opinion in U.S. Commercial Loan Transactions," The Business Lawyer, Volume 70, Issue 1
Winter 2014-2015

Co-Chair of the Legal Opinion Standards Committee of the Business Law Section of the Florida Bar with respect to the "First Supplement to the Third Party Legal Opinion Customary Practice in Florida, November 11, 2019", Report of the Legal Opinion Standards Committee of The Florida Bar Business Law Section and the Legal Opinions Committee of The Florida Bar Real Property, Probate and Trust Law Section
December 3, 2011


## Events & Speaking Engagements

Robert Barron, Speaker, Greater Fort Lauderdale Chamber of Commerce Annual Meeting
February 9, 2017


## Doing Business in Florida Blog

Public-Private Partnerships: An Alternative to Tax-funded Infrastructure
May 24, 2021


## Prior Affiliations

- Thompson & Knight LLLP - Dallas, Texas
- Weil, Gotshal & Manges - Dallas, Texas


**bergersingerman.com**

A511

# EXHIBIT 5



# Transcript of David Feltman, Designated Representive

**Date:** March 16, 2023

**Case:** Rock Spring Plaza II LLC -v- Investors Warranty of America LLC, et al.

**Planet Depos**
**Phone:** 888.433.3767
**Email:** transcripts@planetdepos.com
**www.planetdepos.com**

WORLDWIDE COURT REPORTING & LITIGATION TECHNOLOGY

Transcript of David Feltman, Designated Representative
Conducted on March 16, 2023                              290

1    But I don't think it was that early.

2          Q.    At this time --

3          A.    January of 2017.

4          Q.    At this time, January 2017, did IWA

5    understand that there was the potential for

6    litigation involving the transfer of IWA's ground

7    lease interest?

8          A.    I don't know.

9          Q.    Was there any discussion in and around

10   this time about a potential fraudulent conveyance or

11   fraudulent transfer claim?

12               MS. DAVIS:  Objection as to form.

13               THE WITNESS:  I don't know.

14         Q.    (By Mr. Borsch) You have -- do you have

15   any recollection of there ever being discussion about

16   a potential fraudulent conveyance claim in connection

17   with the transfer of IWA's ground lease interest?

18         A.    Yes.

19         Q.    When was that?

20         A.    Oh, I think at various points it came up

21   in our analysis.

22         Q.    Prior to the assignment to RSD?

A514

Transcript of David Feltman, Designated Representative
Conducted on March 16, 2023                                    291

1          A.      Yes.

2          Q.      And did it come up a multitude of times?

3          A.      Couple of times, I think.

4          Q.      And do you recall when?

5          A.      I think maybe as early as 2016, but

6    certainly in advance of the operating agreement with

7    RSD, and in an analysis of risks associated with the

8    operating agreement.

9          Q.      Who performed that analysis of the risks

10   associated with the operating agreement?

11         A.      Well, conceptually, I think it was

12   probably Seyfarth, along with our in-house counsel.

13   And then we had some discussion around that and other

14   risks.

15         Q.      What other risks?

16         A.      Bankruptcy risk, counter-party risk.

17         Q.      And was the Seyfarth counsel Mr. Sowka?

18         A.      Yes.

19         Q.      Do you recall anybody else from Seyfarth

20   being involved in advising IWA about the risks of a

21   potential fraudulent conveyance claim in connection

22   with the transfer of IWA's ground lease interest?

A515

Transcript of David Feltman, Designated Representative
Conducted on March 16, 2023                              350

1   it.

2          Q.     And what specifically did you discuss?

3          A.     Well, we had already -- we had already, I

4   think, been sued on the Rock Ledge matter, I think,

5   at that time.  And I discussed that with Troy, and

6   the fact that the Camaliers were litigious and that

7   this was clearly a possibility.

8          Q.     So at the time of your negotiations with

9   Algon, specifically with Mr. Taylor, you were mindful

10  of the risk of a fraudulent transfer claim, correct?

11         A.     Yes.

12         Q.     And you were mindful of the risk of

13  litigation with the landlord?

14         A.     Very much so.

15         Q.     And was part of the concern of the risk of

16  litigation with the landlord a fraudulent transfer

17  claim?

18         A.     That was a little more in the weeds than

19  my legal understanding, but, generally, I was just

20  looking at what had happened on Rock Ledge and

21  saying, hey, you know, these guys were litigious, and

22  there's a possibility that they're going to sue.

A516

Transcript of David Feltman, Designated Representative
Conducted on March 16, 2023                          127

1    lease and the estoppel agreement that supports your

2    understanding that IWA has no obligation or no

3    responsibility for fulfilling tenant's financial

4    obligations following the assignment?

5         A.    No.

6         Q.    So it's just those two documents?

7         A.    Yes.

8         Q.    Was one of the reasons for the assignment

9    so that IWA would no longer have responsibility for

10   fulfilling tenant's financial obligations under the

11   ground lease?

12        A.    No.

13        Q.    That was not one of the reasons for the

14   assignment?

15        A.    No.

16        Q.    So what were the reasons for the

17   assignment?

18        A.    There were several.  We had had the

19   property in our system for some time by 2017.  We had

20   been unsuccessful at leasing it up.  We thought that

21   the Algon folks could do, frankly, a better job.  We

22   were resource constrained.  We were cutting staff.

A517

Transcript of David Feltman, Designated Representative
Conducted on March 16, 2023                                    128

```
 1    And this was a way of adding more skilled resources
 2    to the task.
 3          Q.    That the assignment was the way to add
 4    more --
 5          A.    The --
 6          Q.    -- resources?
 7          A.    -- the formation of RSD and the assignment
 8    to RSD, yes.
 9          Q.    To bring more resources to the task?
10          A.    Yeah.  More skilled resources, yes.
11          Q.    And were there any other reasons?
12          A.    Sort of along the same lines, we wanted a
13    party who was incentivized properly to add value.
14    And we knew that that skill set existed within Algon.
15    And that Algon also had strong capital markets
16    relationships so that, to the extent we were able --
17    they were able to identify a tenant and tenant the
18    property, that they could, through their capital
19    markets relationships, find ways to finance the cost
20    associated with that.  And ultimately sell the
21    property, once it had been leased up and improved.
22          Q.    And your testimony here is that there were
```

A518

Transcript of David Feltman, Designated Representative
Conducted on March 16, 2023                              182

```
 1              THE WITNESS:  I don't know that I've
 2         heard it specifically in terms of a ground
 3         lease.
 4         Q.     (By Mr. Bosch) What do you understand the
 5    term "exit strategy" to mean generally?
 6         A.     In real estate?
 7         Q.     Sure.
 8         A.     A disposition of some sort.
 9         Q.     And what do you mean disposition?
10         A.     Sale of the property, a -- some other
11    outcome that's a disposition outcome.
12         Q.     What other outcome would be a disposition
13    outcome other than a sale?
14         A.     I think it primarily focuses on a sale as
15    an exit.
16         Q.     I'm asking you is there anything other
17    than a sale?
18         A.     No.  Not really.  When I think of exit
19    strategy for real estate, I think of a disposition.
20    That's what we talk about when we talk about plans
21    for a property, outcomes, it's a sale of a property.
22         Q.     Was there ever a determination made by IWA
```

A519

USCA4 Appeal: 23-1928      Doc: 29      Filed: 01/11/2024      Pg: 526 of 557

Transcript of David Feltman, Designated Representative
Conducted on March 16, 2023                                     183

```
 1    that the disposition of the ground lease would be its

 2    exit strategy?

 3               MS. DAVIS:  Objection as to form.

 4               THE WITNESS:  I don't understand

 5         what you mean when you say "disposition of

 6         the ground lease."  You mean the -- the

 7         property, the leasehold, the improvements?

 8         Q.    (By Mr. Bosch) I am using your

 9    understanding of the term exit strategy in the

10    context of real estate.  And I'm asking you was IWA

11    -- did IWA ever adopt, as an exit strategy, the

12    disposition of the ground lease, using your

13    definition of disposition?

14         A.    We didn't --

15               MS. KROPF:  Objection to form.

16               THE WITNESS:  -- own the ground

17         lease.  We owned the improvements, so.

18         Q.    (By Mr. Bosch) What is the basis for your

19    understanding that IWA didn't own the ground lease?

20         A.    Well, the ground lease is an instrument.

21    What we owned were -- was a leasehold interest

22    through the ground lease and the improvements.
```

A520

Transcript of David Feltman, Designated Representative
Conducted on March 16, 2023                                    184

```
 1        Q.     All right.  So let me rephrase my
 2    question, then.
 3               Was -- did IWA ever adopt as an exit
 4    strategy from its leasehold interest the disposition
 5    of that leasehold interest?
 6               MS. DAVIS:  Object as to form.
 7               THE WITNESS:  We did not adopt an
 8        exit strategy for this property.
 9        Q.     (By Mr. Bosch) Did you adopt an exit
10    strategy for this leasehold interest?
11        A.     No, I don't think we actually adopted an
12    exit strategy.
13        Q.     And you say --
14        A.     When you say "adopted," what do you mean
15    by adopted?
16        Q.     What do you understand by the term
17    adopted, Mr. Feltman?
18        A.     Did we -- okay.  So, let's do that.  So, a
19    plan, written or otherwise, to dispose of the
20    property.  We did not have a written plan to dispose
21    of the property.  Our assumption was, at some point
22    in the future, when the property was leased up, and
```

A521

Transcript of David Feltman, Designated Representative
Conducted on March 16, 2023                                    185

```
1    created value, that we would ultimately sell the

2    leasehold interest on the property that we held.

3         Q.    So, IWA never had a plan to dispose of its

4    leasehold interest by selling it?

5         A.    We did not have a written plan for that

6    effect, and we didn't really have a conceptual plan

7    because we did not know what the numbers were going

8    to look like because we didn't have the plan.

9         Q.    So, I think I heard you say there was

10   never any written plan encompassing an exit strategy

11   for IWA's leasehold interest, correct?

12        A.    Yes.

13        Q.    There was no written plan?

14        A.    Until the memo and the formation of the

15   joint venture and that plan.  I guess that would be

16   considered a plan.

17        Q.    Was that considered the exit strategy for

18   IWA's leasehold interest?

19             MS. DAVIS:  Objection as to form.

20             THE WITNESS:  Not the ultimate exit

21        strategy, no.  Because at the end of the

22        day, RSD -- we were going to be a member of
```

PLANET DEPOS
888.433.3767 | WWW.PLANETDEPOS.COM

A522

Transcript of David Feltman, Designated Representative
Conducted on March 16, 2023                                    186

```
1          RSD; we still had an economic interest in

2          RSD.  And ultimately, we wanted see RSD

3          lease up the property and sell the

4          property.

5          Q.   (By Mr. Bosch) So the formation of RSD and

6     the assignment of the ground lease to RSD was part of

7     IWA's exit strategy?

8              MS. KROPF:  Objection.  Form.

9              THE WITNESS:  To the extent that it

10         was a disposition by IWA, yes.  But that

11         was just one step in what needed to occur

12         to execute what we would think of as a

13         disposition exit strategy, so that RSD

14         could then sell the property and monetize

15         the proceeds.

16         Q.   (By Mr. Bosch) All right.  So, other than

17    the assignment of the leasehold interest, RSD, were

18    any other exit strategies considered conceptually.

19         A.   Oh, I'm sure we had discussion about

20    selling the property outright.

21         Q.   Anything else?

22         A.   I can't think of any other exit strategy
```

A523

Transcript of David Feltman, Designated Representative
Conducted on March 16, 2023                                    222

```
1    that you'd want to share with corporate.  Do you

2    recall sharing any?

3          A.    I don't recall.

4          Q.    Do you recall what exit strategies were

5    being considered at this time, July of 2016?

6          A.    I think we were continuing to consider a

7    lease up of the property.  And upon lease up, a sale

8    of the property.

9          Q.    Were you considering a sale before lease

10   up?

11         A.    We would have been willing to contemplate

12   that if someone were willing.

13         Q.    And when you say lease up, you mean lease

14   up to the point where the ground lease becomes

15   self-sustaining?

16         A.    Whatever the market would accept to create

17   value to sell the property.

18         Q.    All right.  So you said exit strategies

19   being considered at this time, July 2016, were

20   leasing up the property for potential sale to a

21   buyer?

22         A.    Right.  Or a sale to a buyer if a buyer
```

PLANET DEPOS
888.433.3767 | WWW.PLANETDEPOS.COM

A524

Transcript of David Feltman, Designated Representative
Conducted on March 16, 2023                                      223

1   were willing to buy it as it is.

2          Q.    Were there any other exit strategies being

3   considered?

4          A.    Not at that time, no.

5          Q.    Were other exit strategies considered

6   thereafter?

7          A.    Yes.

8          Q.    And what were they?

9          A.    Forming a joint venture.  And contributing

10  the property to the joint venture so that the joint

11  venture could lease up and sell the property.

12         Q.    Why form a joint venture to lease up and

13  sell the property when IWA already held the property?

14         A.    Couple of reasons.  The group that I

15  manage, the asset management group, had not succeeded

16  in leasing up the property, so I was concerned about

17  whether we had the right skill set internally to do

18  this.  And so that kind of goes back to what we were

19  kind of talking about earlier, about bringing a third

20  party in, someone else, who had the right skills to

21  turn the property around, and was properly

22  incentivized to do so.

A525

USCA4 Appeal: 23-1928    Doc: 29    Filed: 01/11/2024    Pg: 532 of 557

Transcript of David Feltman, Designated Representive
Conducted on March 16, 2023                                     273

1    cover page.  And this is the appraiser report as of

2    December -- well, the date of the report is

3    December 22nd, 2016.  Do you see that?

4         A.    Yes.

5         Q.    And it's as stabilized December 1, 2020,

6    but as-is November 29th, 2016.

7         A.    Okay.

8         Q.    And on the third page, IWA17100, you see

9    that the as-is value indication is negative four

10   point eight million, eight hundred thousand dollars?

11        A.    Yes.

12        Q.    And you recall this is the MPV appraisal

13   that was initially provided by that entity?

14        A.    By what entity?

15        Q.    MPV.

16        A.    Yes.

17        Q.    Who selected MPV?

18        A.    Probably Don Guarino, because all of our

19   appraisals were typically ordered through our

20   appraisal department.

21        Q.    I'm going to hand you now what I'll mark

22   as IWA 24, which is an e-mail bearing Bates No.

A526

Transcript of David Feltman, Designated Representative
Conducted on March 16, 2023                          406

1       Q.    -- term sheet.  So does that suggest to

2   you that that's Version 3 of the term sheet?

3       A.    I don't know whether that's what .3 means.

4       Q.    And the changes reflected in this markup

5   were all made by Algon; is that correct?

6       A.    I don't know.

7       Q.    Directing your attention to paragraph 4D,

8   which is the disposition agreement.  You see there,

9   there was an insertion for after 38 months if the

10  Algon member opts to sell the property?

11      A.    Yes.

12      Q.    Was that Algon's insertion, or was that

13  your proposal?

14      A.    Don't know.

15      Q.    And do you know how 38 months was

16  determined as the appropriate period of time for

17  Algon to consider a disposition?

18      A.    I think at that point, the litigation risk

19  would go away because we'd be beyond the fraudulent

20  transfer date, and also our expectation was that

21  there would be leasing activity, and by then the

22  property would be in a position to be sold.

A527

CONFIDENTIAL - CONTAINS ATTORNEYS' EYES ONLY TESTIMONY
Transcript of David Feltman, Designated Representative, Volume 2
Conducted on March 17, 2023                                    684

```
1    exercising -- or evaluating exit strategies.  Do you       02:05:26
2    remember saying that?                                      02:05:29
3         A    I did, yes.                                      02:05:31
4         Q    Could you explain why IWA is always              02:05:32
5    evaluating exit strategies with respect to                 02:05:35
6    properties?                                                02:05:40
7              MR. BOSCH:  Objection to form.                   02:05:40
8              THE WITNESS:  Sure.  IWA wasn't in               02:05:41
9         the business of being a long-term owner               02:05:42
10        of real estate.  And generally in real                02:05:44
11        estate the benefits, the economic                     02:05:46
12        benefits, are both cash flow during the               02:05:49
13        term of ownership but also the residual               02:05:53
14        value and benefiting ultimately from the              02:05:55
15        sale of the property, appreciation of the             02:05:57
16        property and residual value.                          02:06:00
17             So when we talk about exit, you                  02:06:02
18        know, we're really talking about                      02:06:05
19        disposition of a property at the end of               02:06:07
20        its -- whatever its appropriate life                  02:06:10
21        cycle is based on maximizing value at                 02:06:13
22        that time.                                            02:06:16
```

A528

EXHIBIT 6

A529



# Transcript of Matt Pithan

**Date:** March 30, 2023

**Case:** Rock Spring Plaza II LLC -v- Investors Warranty of America LLC, et al.

**Planet Depos**
**Phone:** 888.433.3767
**Email:** transcripts@planetdepos.com
**www.planetdepos.com**

WORLDWIDE COURT REPORTING & LITIGATION TECHNOLOGY

Transcript of Matt Pithan
March 30, 2023                                    38

| | | |
|---|---|---|
| 1 | only person you recall receiving authorization | 14:10:33 |
| 2 | from is Mr. Shaffer? | 14:10:35 |
| 3 |     MS. DAVIS:  Objection to form. | 14:10:37 |
| 4 |   A  The current ones, yes. | 14:10:39 |
| 5 |   Q  I'm saying at any point in time, can you | 14:10:42 |
| 6 | identify anyone other than Mr. Shaffer who | 14:10:46 |
| 7 | authorized a capital contribution to RSD? | 14:10:48 |
| 8 |   A  I don't recall. | 14:10:51 |
| 9 |   Q  Mr. Pithan, do you recall hearing the term | 14:10:55 |
| 10 | exit strategy in the context of this property? | 14:11:02 |
| 11 |     MS. DAVIS:  Objection to form. | 14:11:05 |
| 12 |   A  I recognize exit strategy. | 14:11:06 |
| 13 |   Q  My question was:  Do you recall hearing | 14:11:13 |
| 14 | the term exit strategy in the context of this | 14:11:15 |
| 15 | property? | 14:11:17 |
| 16 |     MS. DAVIS:  Objection to form. | 14:11:18 |
| 17 |   A  With specific to what? | 14:11:23 |
| 18 |   Q  Well, why don't you explain to me what you | 14:11:27 |
| 19 | understand the term exit strategy to mean. | 14:11:30 |
| 20 |     MS. DAVIS:  Objection to form. | 14:11:33 |
| 21 |   A  My understanding of exit strategy is the | 14:11:33 |
| 22 | plan to sell an asset. | 14:11:38 |

PLANET DEPOS
888.433.3767 | WWW.PLANETDEPOS.COM

A531

EXHIBIT C

44799  238

THIS PROPERTY IS TRANSFERRED PURSUANT TO A FORECLOSURE AND IS, THEREFORE, EXEMPT FROM THE REQUIREMENTS OF SECTION 10-912 OF THE TAX-GENERAL ARTICLE, ANNOTATED CODE OF MARYLAND.

### TRUSTEE'S DEED OF ASSIGNMENT

THIS TRUSTEE'S DEED OF ASSIGNMENT (this "Deed") is made as of the 28th day of August , 2012, by and between JOHN P. MACHEN, as Trustee (and not personally) having an address c/o DLA Piper LLP (US), 6225 Smith Avenue, Baltimore, MD 21209 ("Grantor"), and INVESTORS WARRANTY OF AMERICA, INC., an Iowa corporation having an address at 4333 Edgewood Road NE, Cedar Rapids, Iowa 52499-5223 ("Grantee").

WHEREAS, the leasehold land and premises hereinafter described was encumbered by a certain Amended and Restated Leasehold Deed of Trust, Security Agreement and Fixture Filing dated June 2, 2006, to John P. Machen, trustee, recorded among the land records of Montgomery County, Maryland (the "Land Records") in Liber 32428, folio 434, as assigned by Assignment and Assumption of Amended and Restated Leasehold Deed of Trust, Security Agreement and Fixture Filing and Other Loan Documents effective as of October 1, 2007, recorded among the Land Records in Liber 35110, folio 082, as further assigned by Assignment and Assumption of Amended and Restated Leasehold Deed of Trust, Security Agreement and Fixture Filing and Other Loan Documents effective as of January 2, 2009, recorded among the Land Records in Liber 36463, folio 202, as further assigned by Assignment and Assumption of Amended and Restated Leasehold Deed of Trust, Security Agreement and Fixture Filing and Other Loan Documents effective as of December 28, 2011, recorded among the Land Records in Liber 43011, folio 224, (collectively, the "Deed of Trust"), securing an Amended and Restated Promissory Note dated June 2, 2006 by Rock Spring II Limited Partnership, a Maryland limited partnership to Monumental Life Insurance Company in the original principal amount of $30,000,000; and

WHEREAS, by virtue of foreclosure proceedings commenced in the Circuit Court for Montgomery County, Maryland in Civil Action No. 358310V, the leasehold land and premises hereinafter described was sold on February 28, 2012 to Investors Warranty of America, Inc., the Grantee for Three Million Seven Hundred Thousand and 00/100 Dollars ($3,700,000); and

WHEREAS, the Circuit Court for Montgomery County, Maryland ratified the aforesaid foreclosure sale by Order entered August 24, 2012.

NOW, THIS DEED WITNESSETH, that in consideration of the payment of THREE MILLION SEVEN HUNDRED THOUSAND AND 00/100 DOLLARS ($3,700,000); receipt of which is hereby acknowledged, the Grantor grants and conveys to Investors Warranty of America, Inc., a Iowa corporation, all of that leasehold land and premises situated in Montgomery County, Maryland, and more particularly described as follows:

See attached Exhibit A

MONTGOMERY COUNTY, MD

APPROVED BY bb

SEP 1 2 2012

EAST\49952047.1

$35450 - RECORDATION TAX PAID

$37000 - TRANSFER TAX PAID

After Recording Return To:
Commonwealth Land Title Insurance Co.
Fidelity National Title Insurance Co.
1015 15th Street, NW, Suite 300
Washington, DC 20005 DPN    / of /
File No. 11-002087

2012 SEP 12  PM 2: 05

IWA0010702

A533

44799   239

TOGETHER WITH all right, title, interest, and privileges of the grantor of the Deed of Trust in and to all streets, ways, roads, and alleys used in connection with or pertaining to such real property, all development rights or credits, air rights and water rights related to the applicable real property, and all rights, title and interest of the applicable grantor in and to all minerals, oil and gas, and other hydrocarbon substances in, on or under the real property, and all appurtenances, easements, rights and rights of way appurtenant or related thereto; all buildings, other improvements and fixtures located on the applicable real property on the date of sale and owned by the applicable grantor, including, but not limited to, all apparatus, equipment, and appliances used in the operation or occupancy of the real property.

TO HAVE AND TO HOLD said leasehold land and premises, together with all right, title, interest, and privileges of the grantor of the Deed of Trust in and to all streets, ways, roads, and alleys used in connection with or pertaining to such real property, all development rights or credits, air rights and water rights related to the applicable real property, and all rights, title and interest of the applicable grantor in and to all minerals, oil and gas, and other hydrocarbon substances in, on or under the real property, and all appurtenances, easements, rights and rights of way appurtenant or related thereto; all buildings, other improvements and fixtures located on the applicable real property on the date of sale and owned by the applicable grantor, including, but not limited to, all apparatus, equipment, and appliances used in the operation or occupancy of the real property, unto the Grantee, its successors and assigns, the leasehold estate as provided in the Ground Lease as described in Exhibit A.

THE FOREGOING DESCRIBED PROPERTY IS CONVEYED SUBJECT TO all matters known and unknown, in "AS IS, WHERE IS" condition, without representation or warranty of any kind whatsoever, subject to all recorded and unrecorded easements, agreements, covenants, restrictions, rights-of-way, reservations, encumbrances, liens and other matters, any existing code violations and environmental and other conditions, and all applicable federal, state, and local laws, ordinances and regulations.

Without limiting the foregoing, the Grantor makes no warranty or representation, either expressed or implied, of any kind or nature regarding the foregoing described property, including, without limitation, the description, use, structural integrity, physical condition, construction, extent of construction, workmanship, materials, habitability, subdivision, zoning, environmental condition, compliance with building codes or other laws, ordinances, or regulations, fitness for a particular purpose or merchantability of all or any part of the foregoing described property.

The Grantor makes no representations or warranties concerning title to the foregoing described property and disclaims any and all implied warranties with respect thereto.

- 2 -

IWA0010703

A534

44759    240

WITNESS the hand and seal of the said party of the Grantor on the day and the year first above written.

_John P. Machen_ Trustee (SEAL)
John P. Machen, Trustee

STATE OF MARYLAND                )
                                 ) SS:
CITY/COUNTY OF _Baltimore_       )

I HEREBY CERTIFY that on this _28th_ day of _Aug_, 2012, before me, the undersigned officer, personally appeared John P. Machen, Trustee, known to me (or satisfactorily proven) to be the person whose name is subscribed to this Trustee's Deed of Assignment and acknowledged that he executed the same for the purposes therein contained, giving oath under penalties of perjury that the consideration recited herein is correct.

IN WITNESS WHEREOF, I hereunto set my hand and Notarial Seal.

_Karen Suzanne Benser_
Notary Public

My Commission expires: _4-5-2015_

## ATTORNEY CERTIFICATION

I hereby certify that I am an attorney admitted to practice before the Court of Appeals of the State of Maryland and that this Trustee's Deed of Assignment was prepared under my supervision.

_Christina Pappas_
Christina Pappas

RETURN TO:
Melissa L. White
DLA Piper LLP (US)
6225 Smith Avenue
Baltimore, MD 21209

EAST\49952047.1

- 3 -

IWA0010704



44799   241

## Exhibit A

### Legal Description

Leasehold interest in that real property located in Montgomery County, Maryland and more particularly described as follows:

All that certain lot or parcel of land situate and lying in Montgomery County, Maryland, and more particularly described as follows:

PARCEL I:

BEING part of Parcel 13, Rock Spring Park as recorded in Plat Book 148 as Plat No. 16968 among the Land Records of Montgomery County, Maryland and being more particularly described as follows:

BEGINNING at a point lying on the northeasterly right-of-way line of Fernwood Road as dedicated in Plat Book 88 as Plat No. 9340, said point also being a corner common to the property herein described and Parcel 14, Rock Spring Park as recorded in as Plat No. 21681; thence running with the northeasterly right-of-way line of Fernwood Road the following two (2) courses and distances:

I.   391.19 feet along the arc of a non-tangent curve to the left having a radius of 1,590.00 feet and a chord bearing and distance of North 38 degrees 29' 06" West, 390.20 feet to a point; thence
2.   North 04 degrees 24' 43" West, 32.88 feet to a point of intersection with the southeasterly right-of-way line of Rock Spring Drive; thence running with the southeasterly right-of-way line of Rock Spring Drive
3.   North 36 degrees 42' 33" East, 218.26 feet to a point; thence leaving said right-of-way line and running through Parcel 13, Rock Spring Park the following eight (8) courses and distances
4.   26.76 feet along the arc of a tangent curve to the right having a radius of 29.33 feet and a chord bearing and distance of South 79 degrees 25' 34" East, 25.84 feet to a point; thence
5.   South 53 degrees 17' 27" East, 14.01 feet to a point; thence
6.   71.19 feet along the arc of a tangent curve to the left having a radius of 100.67 feet and a chord bearing and distance of South 73 degrees 33' 02" East, 69.72 feet to a point; thence
7.   North 86 degrees 11' 23" East, 123.28 feet to a point; thence
8.   North 41 degrees 11' 23" East, 55.08 feet to a point; thence
9.   South 48 degrees 48' 37" East, 143.09 feet to a point; thence
10.  South 41 degrees 11' 23" West, 35.53 feet to a point; thence
11.  South 03 degrees 48' 38" East, 166.21 feet to a point lying on the northerly line of the aforementioned Parcel 14, Rock Spring Park; thence running with the lines of Parcel 14, Rock Spring Park the following three (3) courses and distances
12.  North 87 degrees 05' 27" West, 211.25 feet to a point; thence
13.  South 02 degrees 54' 33" West, 242.00 feet to a point; thence
14.  South 58 degrees 33' 48" West, 23.39 feet to the point of beginning, containing 135,277 square feet or 3.10553 acres of land, more or less.

PARCEL II:

Easements granted by (i) Declaration of Covenants and Reciprocal Easement Agreements recorded in Liber 5263 at folio 351 and in Liber 8351 at folios 516, 543, 571, 602 and 626, and (ii) Sanitary Sewer

EAST\49952047.1                                   4

IWA0010705

A536

44799   242

Easements recorded in Liber 8351 at folio 683 and in Liber 8351 at folio 699, among the Land Records of Montgomery County, Maryland, and the reversionary interest in all improvements located on the property pursuant to the terms of the Amended and Restated Ground Lease as disclosed by Memorandum of Lease dated November 14, 1990 and recorded November 26, 1991 in Liber 10040 at folio 857.

NOTE FOR INFORMATIONAL PURPOSES ONLY: Tax Map No. 4-1-2785885

The Property is leasehold pursuant to an Amended and Restated Ground Lease Indenture dated as of November 14, 1990 between Rock Spring Plaza II, LLC as Landlord ("Landlord") and the grantor of the Deed of Trust, as Tenant, as evidenced by a Memorandum of Lease dated November 14, 1990 and recorded among the Land records in Liber 10040 at Folio 857, as amended by First Amendment to Amended and Restated Ground Lease Indenture dated September 1, 2002 between Landlord and the grantor of the Deed of Trust, as Tenant, as effected by Ground Lessor Estoppel and Non-Disturbance Agreement dated June 2, 2006 and recorded among the Land Records in Liber 32427, at Folio 523.

IWA0010706

A537

44799   243

## Certification of Exemption from Withholding Upon Disposition of Maryland Real Estate
## Affidavit of Residence or Principal Residence

Based on the certification below, Transferor claims exemption from the tax withholding requirements of § 10-912 of Maryland's Tax General Article.  Section 10-912 states that certain tax payments must be withheld when a deed or other instrument that affects a change in ownership of real property is recorded.  The requirements of § 10-912 do not apply when a transferor provides a certification of Maryland residence or certification that the transferred property is the transferor's principal residence.

### 1. Transferor Information

Name of Transferor

**John J. Machen, Substitute Trustee**

### 2. Reason for Exemption

| Resident Status | ☒ | I, Transferor, am a resident of the State of Maryland. |
| | ☐ | Transferor is a resident entity as defined in Code of Maryland Regulations (COMAR) 03.04.12.02B(11).  I am an agent of Transferor, and I have authority to sign this document on Transferor's behalf. |
| Principal Residence | ☐ | Although I am no longer a resident of the State of Maryland, the Property is my principal residence as defined in IRC § 121. |

**Under penalty of perjury, I certify that I have examined this declaration and that, to the best of my knowledge, it is true, correct, and complete.**

### 3a. Individual Transferors

Witness

Name   John J. Machen, Substitute Trustee

Witness

### 3b. Entity Transferors

Witness/Attest

Name of Entity

By:
Name and Title

EAST\50877060.1 8/28/12

6

IWA0010707

A538

44799 244

### State of Maryland Land Instrument Intake Sheet

☐ Baltimore City    ☑ County: Montgomery

*Information provided is for the use of the Clerk's Office, State Department of Assessments and Taxation, and County Finance Office Only.*
*(Type or Print in Black Ink Only—All Copies Must be Legible)*

**1 Type(s) of Instruments** — ( Check Box if addendum Intake Form is Attached )

| | | | |
|---|---|---|---|
| X Deed | Mortgage | Other | Other |
| Deed of Trust | Lease | | |

**2 Conveyance Type Check Box**

| | | | |
|---|---|---|---|
| Improved Sale Arms-Length [1] | Unimproved Sale Arms-Length [2] | Multiple Accounts Arms-Length [3] | Not an Arms-Length Sale [9] |

**3 Tax Exemptions** (if applicable) Cite or Explain Authority

| | |
|---|---|
| Recordation | |
| State Transfer | |
| County Transfer | |

**4 Consideration and Tax Calculations**

| Consideration Amount | | Finance Office Use Only — Transfer and Recordation Tax Consideration | |
|---|---|---|---|
| Purchase Price/Consideration | $ 3,700,000.00 | Transfer Tax Consideration | $ |
| Any New Mortgage | $ 0.00 | X ( ) % | $ |
| Balance of Existing Mortgage | $ 0.00 | Less Exemption Amount | $ |
| Other: | $ 0.00 | Total Transfer Tax | $ |
| Other: | $ 0.00 | Recordation Tax Consideration | $ |
| Full Cash Value: | $ 3,700,000.00 | X ( ) per $500 | $ |
| | | TOTAL DUE | $ |

**5 Fees**

| Amount of Fees | Doc. 1 | Doc. 2 | |
|---|---|---|---|
| Recording Charge | $ 20.00 | $ | Agent: |
| Surcharge | $ 40.00 | $ | |
| State Recordation Tax | $ 35,450.00 | $ | Tax Bill: |
| State Transfer Tax | $ 18,500.00 | $ | |
| County Transfer Tax | $ 37,000.00 | $ | C.B. Credit: |
| Other | $ | $ | |
| Other | $ | $ | Ag. Tax/Other: |

**6 Description of Property** — SDAT requires submission of all applicable information. A maximum of 40 characters will be indexed in accordance with the priority cited in Real Property Article Section 3-104(g)(3)(i).

| District | Property Tax ID No. (1) | Grantor Liber/Folio | Map | Parcel No. | Var. LOG |
|---|---|---|---|---|---|
| 04 | 001-2785885 | | | 13 | (5) |

| Subdivision Name | Lot (3a) | Block (3b) | Sect/AR (3c) | Plat Ref. | SqFt/Acreage (4) |
|---|---|---|---|---|---|
| Rock Spring Park | | | | | |

Location/Address of Property Being Conveyed (2)
6560 Rock Spring Drive, Bethesda, MD 20817

| Other Property Identifiers (if applicable) | Water Meter Account No. |
|---|---|
| | |

| Residential or Non-Residential ☐ | Fee Simple ☑ or Ground Rent ☐ | Amount: |
|---|---|---|
| Partial Conveyance? Yes ☐ / No ☑ | Description/Amt. of SqFt/Acreage Transferred: | |

If Partial Conveyance, List Improvements Conveyed:

**7 Transferred From**

| Doc. 1 – Grantor(s) Name(s) | Doc. 2 – Grantor(s) Name(s) |
|---|---|
| John P. Machen, Trustee | |
| Machen, John P. | |

| Doc. 1 – Owner(s) of Record, if Different from Grantor(s) | Doc. 2 – Owner(s) of Record, if Different from Grantor(s) |
|---|---|
| Rock Spring Plaza II, LLC | |

**8 Transferred To**

| Doc. 1 – Grantee(s) Name(s) | Doc. 2 – Grantee(s) Name(s) |
|---|---|
| Investors Warranty of America, Inc. | |

New Owner's (Grantee) Mailing Address
4333 Edgewood Road NE, Cedar Rapids, IA 52499

**9 Other Names to Be Indexed**

| Doc. 1 – Additional Names to be Indexed (Optional) | Doc. 2 – Additional Names to be Indexed (Optional) |
|---|---|
| | |

**10 Contact/Mail Information**

| | |
|---|---|
| Instrument Submitted By or Contact Person | ☑ Return to Contact Person |
| Name: Michael A. Segal | |
| Firm: Commonwealth Land Title Insurance Company | ☐ Hold for Pickup |
| Address: 1015 15th Street, N.W., Suite 300 | |
| Washington, DC 20005   Phone: (202) 312-5115 | ☐ Return Address Provided |

**11 Assessment Information** — IMPORTANT: *BOTH THE ORIGINAL DEED AND A PHOTOCPY MUST ACCOMPANY EACH TRANSFER*

| | | |
|---|---|---|
| Yes ☑ No | Will the property being conveyed be the grantee's principal residence? | |
| Yes ☑ No | Does transfer include personal property? If yes, identify: | |
| Yes ☑ No | Was property surveyed? If yes, attach copy of survey (if recorded, no copy required). | |

**Assessment Use Only – Do Not Write Below This Line**

| Terminal Verification | Agricultural Verification | Whole   Part | Tran. Process Verification |
|---|---|---|---|
| Transfer Number | Date Received: | Deed Reference: | Assigned Property No.: |
| Year | 20 | 20 | Geo. | Map | Sub | Block |
| | | | Land | Zoning | Grid | Plat | Lot |
| | | | Buildings | Use | Parcel | Section | Occ. Cd. |
| | | | Total | Town Cd. | Ex. St. | Ex. Cd. |

REMARKS:

Distribution:   White – Clerk's Office    Canary – SDAT
Pink – Office of Finance    Goldenrod – Preparer
AOC-CC 300 (4/05)

IWA0010708

A539

## UNITED STATES DISTRICT COURT
## DISTRICT OF MARYLAND

PETER J. MESSITTE
UNITED STATES DISTRICT JUDGE

6500 CHERRYWOOD LANE
GREENBELT, MARYLAND 20770
301-344-0632

May *18*, 2023

| | | | |
|---|---|---|---|
| Anne Dunne | Anthony LaPlaca | Rebecca Davis | Renee Appel |
| Seyfarth Shaw LLP | Seyfarth Shaw LLP | Seyfarth Shaw LLP | Seyfarth Shaw LLP |
| Suite 300 | 2 Seaport Lane | 1075 Peachtree Street NE | 975 F Street NW |
| 2 Seaport Lane | Boston, MA 02110 | Suite 2500 | Washington, DC 20006 |
| Boston, MA 02210 | | Atlanta, GA 30309 | |

Re:   Rock Spring Plaza II, LLC v. Investors Warranty of America, LLC, No. 20-cv-
1502 PJM

Dear counsel:

The Court has reviewed Defendant Investors Warranty of America, LLC's Brief, Pursuant to the Court's March 15, 2023 Order, in Support of Reconsideration of the Applicability of the Crime-Fraud Exception (ECF No. 294); Plaintiff's opposition thereto (ECF No. 310); and Defendant IWA's Reply (ECF No. 312).

The Court has chosen to hold an ex parte hearing at which IWA will have the opportunity to address the documents that the Court has deemed potentially relevant. The hearing will last for approximately one (1) hour. Chambers will reach out to IWA to set a date for the hearing.

Despite the informal nature of this ruling, it shall constitute an Order of the Court and the Clerk is directed to docket it accordingly.

Sincerely,

Peter J. Messitte
United States District Judge

CC:   Counsel of Record
Court File

A540

## IN THE UNITED STATES DISTRICT COURT
### FOR THE DISTRICT OF MARYLAND

**ROCK SPRING PLAZA II, INC.,**

Plaintiff,

v.

**INVESTORS WARRANTY OF AMERICA, LLC, *et al.*,**

Defendants.

Civil No. **PJM-20-1502**

## ORDER

Having considered "Defendant Investors Warranty Of America, LLC's Brief, Pursuant to the Court's March 15, 2023 Order, in Support of Reconsideration of the Applicability of the Crime-Fraud Exception" (ECF No. 294), Plaintiff's response thereto (ECF No. 310), and IWA's Reply (ECF No. 312); an *ex parte* hearing having been conducted with counsel for IWA on June 20, 2023; it is, this 17 day of August 2023, for the reasons stated in the accompanying Memorandum Opinion:

**ORDERED**

1. Within ten (10) days of this Order, IWA and its counsel **SHALL** produce to Plaintiff the three documents docketed in this case as ECF No. 288-1. Should IWA and counsel refuse to comply, the Court **WILL** entertain a Motion from Plaintiff to hold IWA and/or its counsel in contempt, and a substantial fine and possible incarceration of IWA's principals or its counsel will be in the mix.

2. Pursuant to Paragraph 1, the following Motions are **DENIED**:

1

A541

     a.  The unresolved portion of IWA's Motion for Protective Order (ECF No. 226), which addresses the production of IWA's privileged communications; and

     b.  IWA's "Brief, Pursuant to the Court's March 15, 2023 Order, in Support of Reconsideration of the Applicability of the Crime-Fraud Exception" (ECF No. 294).

3.  The unresolved portions of the following Motions on which the Court deferred ruling during the February 16, 2023 discovery hearing are hereby **DENIED WITHOUT PREJUDICE**:

     a.  RSD's Motion to Quash Non-Party Deposition Subpoena on Counsel for Rock Springs Drive, or, In the Alternative, For a Protective Order (ECF No. 255); and

     b.  Plaintiff's Motion to Compel Supplemental RSD Privilege Log (ECF No. 277).

4.  The accompanying Memorandum Opinion **SHALL** remain **SEALED** and be made available only to Defendants and their counsel pending further order of the Court.

_____
PETER J. MESSITTE
UNITED STATES DISTRICT JUDGE

2

A542

### UNITED STATES DISTRICT COURT
### DISTRICT OF MARYLAND

PETER J. MESSITTE
UNITED STATES DISTRICT JUDGE

6500 CHERRYWOOD LANE
GREENBELT, MARYLAND 20770
301-344-0632

<u>MEMORANDUM</u>

To:        Counsel of Record

From:    Judge Peter J. Messitte

Re:       <u>Rock Spring Plaza II, LLC v. Investors Warranty of Am., LLC</u>
           Civil No. 20-1502 PJM

Date:    August *17*, 2023

********

The Court has today filed under seal (available at this point only to Defendants and their counsel) a Memorandum Opinion finding that Plaintiff has satisfied the "fraud" prong of the crime-fraud exception to the attorney-client privilege with respect to three documents originally identified in IWA's privilege log and which the Court has reviewed *in camera*.

Accordingly, the Court has **ORDERED** IWA and its counsel to produce those three documents to Plaintiff within ten (10) days.

Should Plaintiff advise the Court that IWA or its counsel have failed to do so, the Court will entertain from Plaintiff a Motion to hold IWA and/or its counsel in contempt, subject to possible sanctions, including a substantial fine or incarceration.

Despite the informal nature of this ruling, it shall constitute an Order of the Court and the Clerk is directed to docket it accordingly.

Peter J. Messitte
United States District Judge

CC:    Court File

1

A543

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF MARYLAND**

| | |
|---|---|
| **Rock Spring Plaza II, LLC,** | |
| **Plaintiff,** | |
| **v.** | **Civil Action No. 8:20-cv-01502-PJM** |
| **Investors Warranty of America, LLC, et al.,** | |
| **Defendants.** | |

**EMERGENCY MOTION FOR EXTENSION OF TIME TO RESPOND TO COURT'S AUGUST 17, 2023 ORDER [ECF 340]**

Defendant Investors Warranty of America, LLC ("IWA"), by and through its attorneys, pursuant to Rule 6 of the Federal Rules of Civil Procedure and Local Rule 105.9, moves on an emergency basis for an Order extending the time to produce documents pursuant to the Court's August 17, 2023 Order [ECF 340] (the "Order").

The Discovery Order provides that "[w]ithin ten (10) days of the Order, that IWA and its counsel are to produce to Plaintiff the documents docketed in the case as ECF No. 288-1." Accordingly, IWA would need to either produce documents or seek relief from the appellate court by Monday, August 28, 2023. The Order further provides that if the documents are not produced, Plaintiff then may file a motion to hold IWA and/or its counsel in contempt.

IWA plans to file a Petition for Writ of Mandamus with the Fourth Circuit of Appeal, and therefore respectfully requests a ten (10) day extension so that it may properly brief the matter and not file an emergency motion to stay with the appellate court. The extension would further avoid the inefficiency of unnecessary motions if the appellate court did decide to consider the petition.

A544

Pursuant to Rule 105.9, IWA has received the consent of Defendant Rock Springs Drive, LLC for the requested extension. IWA received the attached response from Plaintiff Rock Spring Plaza II, LLC's counsel (which it requested that IWA include), who has advised that Plaintiff does not consent to this motion, but will not file a response to this motion.

This is the first request for an extension of time to respond to the Order. No prejudice will result to any party from the requested extension of time. This motion is filed in good faith and not for purposes of delay.

WHEREFORE, IWA respectfully requests an Order extending the time to respond to the August 17, 2023 Order to up and through September 7, 2023.

Dated:  August 22, 2023

Respectfully Submitted,

ARNALL GOLDEN GREGORY LLP

*/s/Rebecca A. Davis*
Rebecca A. Davis, Bar No. 23183
Rebecca.davis@agg.com
171 17th Street NE, Suite 2100
Atlanta, Georgia 30363
Telephone:  (404) 873-8768
Facsimile:  (404) 873-8769

*Counsel for Defendant Investors Warranty of America, LLC*

A545

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF MARYLAND**

| | |
|---|---|
| **Rock Spring Plaza II, LLC,** | |
| **Plaintiff,** | |
| **v.** | **Civil Action No. 8:20-cv-01502-PJM** |
| **Investors Warranty of America, LLC, et al.,** | |
| **Defendants.** | |

**CERTIFICATE OF SERVICE**

I hereby certify that on April 16, 2023, I served the foregoing EMERGENCY MOTION

FOR EXTENSION OF TIME TO RESPOND TO COURT'S AUGUST 17, 2023 ORDER [ECF

340] via the electronic email to  all counsel of record.

Dated:  August 22, 2023                         */s/Rebecca A. Davis*
                                                          Rebecca A. Davis

A546

**Davis, Rebecca A.**

---

| | |
|---|---|
| **From:** | Bosch, William M. <william.bosch@pillsburylaw.com> |
| **Sent:** | Tuesday, August 22, 2023 5:07 PM |
| **To:** | Davis, Rebecca A.; Steinberg, Nicole |
| **Cc:** | Sara Kropf; Rebecca Guiterman; Cavanaugh, Anthony F.; Dunn, Alvin; Danial, Katherine T. |
| **Subject:** | [EXTERNAL] RE: 8:20-cv-01502-PJM Rock Spring Plaza II, LLC v. Investors Warranty of America, LLC et al - Motion for Extension of Time to Respond to August 17, 2023 Order |

Thanks for sharing, Rebecca. I'd just ask that you insert the word "defendant" before RSD in this sentence:

Pursuant to Rule 105.9, IWA has received the consent of defendant Rock Springs Drive, LLC for the requested extension.

With that change, we do not consent but will not submit an opposition.

Regards -- BB


**William M. Bosch | Partner**
Pillsbury Winthrop Shaw Pittman LLP
1200 Seventeenth Street NW | Washington, DC 20036-3006
t +1.202.663.9392 | m +1.703.407.9448
william.bosch@pillsburylaw.com | website bio

AUSTIN   BEIJING   HONG KONG   HOUSTON   LONDON   LOS ANGELES
MIAMI   NASHVILLE   NEW YORK   NORTHERN VIRGINIA   PALM BEACH
SACRAMENTO   SAN DIEGO   SAN FRANCISCO   SHANGHAI
SILICON VALLEY   TAIPEI   TOKYO   WASHINGTON, DC




---

**From:** Davis, Rebecca A. <Rebecca.Davis@AGG.com>
**Sent:** Tuesday, August 22, 2023 4:58 PM
**To:** Bosch, William M. <william.bosch@pillsburylaw.com>; Steinberg, Nicole <nicole.steinberg@pillsburylaw.com>
**Cc:** Sara Kropf <sara@kmlawfirm.com>; Rebecca Guiterman <rebecca@kmlawfirm.com>; Cavanaugh, Anthony F. <anthony.cavanaugh@pillsburylaw.com>; Dunn, Alvin <alvin.dunn@pillsburylaw.com>; Danial, Katherine T. <katherine.danial@pillsburylaw.com>
**Subject:** RE: 8:20-cv-01502-PJM Rock Spring Plaza II, LLC v. Investors Warranty of America, LLC et al - Motion for Extension of Time to Respond to August 17, 2023 Order

Bill, please see attached and let me know if you are in agreement. Thank you.


**Rebecca A. Davis**
**Partner**

Arnall Golden Gregory LLP

Arnall Golden Gregory LLP
171 17th Street NW, Suite 2100
Atlanta, GA 30363
p: 404.873.8768

1

A547

Rebecca.Davis@agg.com | bio | linkedin | vcard | website

---

**From:** Bosch, William M. <william.bosch@pillsburylaw.com>
**Sent:** Tuesday, August 22, 2023 4:48 PM
**To:** Davis, Rebecca A. <Rebecca.Davis@AGG.com>; Steinberg, Nicole <nicole.steinberg@pillsburylaw.com>
**Cc:** Sara Kropf <sara@kmlawfirm.com>; Rebecca Guiterman <rebecca@kmlawfirm.com>; Cavanaugh, Anthony F. <anthony.cavanaugh@pillsburylaw.com>; Dunn, Alvin <alvin.dunn@pillsburylaw.com>; Danial, Katherine T. <katherine.danial@pillsburylaw.com>
**Subject:** [EXTERNAL] RE: 8:20-cv-01502-PJM Rock Spring Plaza II, LLC v. Investors Warranty of America, LLC et al - Motion for Extension of Time to Respond to August 17, 2023 Order

Dear Counsel –

I am confirming receipt of the following filings and demands that came in within minutes of each other this afternoon:

- At 3:53pm, we received notice that defendants filed a motion seeking leave to take the deposition of William Bosch, lead counsel for plaintiff (i.e., me);

- At 3:56pm, we received notice that IWA will be seeking a 10-day extension from the District Court so that it can pursue a writ of mandamus with respect to the Court's August 17, 2023, order directing disclosure of documents bearing on the fraudulent conveyance from IWA to RSD, and requesting our consent "within the hour;"

- At 3:59 pm, we received notice that defendants have reneged on their agreement to rely on a Rule 31 deposition upon written questions directed to 90-year old Ann Camalier (which was never actually noticed), notwithstanding the physician's letter we sent several months ago and her submission of a declaration making clear she has no information bearing on the topics you identified, and now seek to subpoena her to appear for cross-examination several weeks **after** the close of discovery; and

- At 4:09 pm, we received additional written discovery from RSD on irrelevant topics, weeks (if not months) after the issue had been exhaustively discussed and (we thought) put to bed.

A548

We will address the substance of these Rambo-style litigation tactics in due course.  For the time being, I wish to advise that Plaintiff does not consent to the requested motion for extension, and subject to its review of said motion likely will not be filing a response provided that IWA submits this email with its motion to the Court.

– Bill Bosch

**William M. Bosch | Partner**
Pillsbury Winthrop Shaw Pittman LLP
1200 Seventeenth Street NW | Washington, DC 20036-3006
t +1.202.663.9392 | m +1.703.407.9448
william.bosch@pillsburylaw.com | website bio

AUSTIN   BEIJING   HONG KONG   HOUSTON   LONDON   LOS ANGELES
MIAMI   NASHVILLE   NEW YORK   NORTHERN VIRGINIA   PALM BEACH
SACRAMENTO   SAN DIEGO   SAN FRANCISCO   SHANGHAI
SILICON VALLEY   TAIPEI   TOKYO   WASHINGTON, DC

 

**From:** Davis, Rebecca A. <Rebecca.Davis@AGG.com>
**Sent:** Tuesday, August 22, 2023 3:56 PM
**To:** Steinberg, Nicole <nicole.steinberg@pillsburylaw.com>
**Cc:** Sara Kropf <sara@kmlawfirm.com>; Rebecca Guiterman <rebecca@kmlawfirm.com>; Bosch, William M. <william.bosch@pillsburylaw.com>; Cavanaugh, Anthony F. <anthony.cavanaugh@pillsburylaw.com>; Dunn, Alvin <alvin.dunn@pillsburylaw.com>; Danial, Katherine T. <katherine.danial@pillsburylaw.com>
**Subject:** RE: 8:20-cv-01502-PJM Rock Spring Plaza II, LLC v. Investors Warranty of America, LLC et al - Motion for Extension of Time to Respond to August 17, 2023 Order

Counsel, IWA will be filing a petition for writ of mandamus with respect to the August 17, 2023, and intends to file a motion for a 10-day extension with the District Court.  Can you please advise within the hour whether you will consent to that 10-day extension?  Thank you, Rebecca

The contents of this message, together with any attachments, are intended only for the use of the individual or entity to which they are addressed and may contain information that is legally privileged, confidential and exempt from disclosure. If you are not the intended recipient, you are hereby notified that any dissemination, distribution, or copying of this message, or any attachment, is strictly prohibited. If you have received this message in error, please notify the original sender or the Pillsbury Winthrop Shaw Pittman Service Desk at Tel: 800-477-0770, Option 1, immediately by telephone and delete this message, along with any attachments, from your computer. Nothing in this message may be construed as a digital or electronic signature of any employee of Pillsbury Winthrop Shaw Pittman. Thank you.

The contents of this message, together with any attachments, are intended only for the use of the individual or entity to which they are addressed and may contain information that is legally privileged, confidential and exempt from

A549

disclosure. If you are not the intended recipient, you are hereby notified that any dissemination, distribution, or copying of this message, or any attachment, is strictly prohibited. If you have received this message in error, please notify the original sender or the Pillsbury Winthrop Shaw Pittman Service Desk at Tel: 800-477-0770, Option 1, immediately by telephone and delete this message, along with any attachments, from your computer. Nothing in this message may be construed as a digital or electronic signature of any employee of Pillsbury Winthrop Shaw Pittman. Thank you.

A550

## IN THE UNITED STATES DISTRICT COURT
### FOR THE DISTRICT OF MARYLAND

Rock Spring Plaza II, LLC,

        Plaintiff,

     v.

Investors Warranty of America, LLC,
et al.,

        Defendants.

Civil Action No. 8:20-cv-01502-PJM

### ORDER

Upon consideration of Defendant Investors Warranty of America, LLC's ("IWA")

Emergency Motion for Extension of Time to Respond to Court's August 17, 2023 Order [ECF

340], it is this 23 day of Aug , 2023, by the District Court for the District of Maryland

hereby,

ORDERED, that the Motion is Granted; and it is further

ORDERED, that IWA's deadline to respond to the August 17, 2023 Order is extended to

up and through September 7, 2023.

_____
Judge Peter J. Messitte